Eric D. Miller, Bar No. 218416
EMiller@perkinscoie.com
Michael A. Sussmann, D.C. Bar No. 433100
(*pro hac vice to follow*)
MSussmann@perkinscoie.com
James G. Snell, Bar No. 173070
JSnell@perkinscoie.com
Hayley L. Berlin, D.C. Bar No. 1011549
(*pro hac vice to follow*)
HBerlin@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Tel:  650-838-4300
Fax:  650-838-4350

Attorneys for Plaintiff
Twitter, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TWITTER, INC.,<br><br>               Plaintiff,<br><br>    v.<br><br>ERIC HOLDER, Attorney General of the United States,<br><br>THE UNITED STATES DEPARTMENT OF JUSTICE,<br><br>JAMES COMEY, Director of the Federal Bureau of Investigation, and<br><br>THE FEDERAL BUREAU OF INVESTIGATION,<br><br>               Defendants. | Case No. 14-cv-4480<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT, 28 U.S.C. §§ 2201 and 2202** |

COMPLAINT FOR DECLARATORY JUDGMENT

1

## I.      NATURE OF THE ACTION

2

1.      Twitter brings this action for declaratory judgment pursuant to 28 U.S.C. §§ 2201

3

and 2202, requesting relief from prohibitions on its speech in violation of the First Amendment.

4

2.      The U.S. government engages in extensive but incomplete speech about the scope

5

of its national security surveillance activities as they pertain to U.S. communications providers,

6

while at the same time prohibiting service providers such as Twitter from providing their own

7

informed perspective as potential recipients of various national security-related requests.

8

3.      Twitter seeks to lawfully publish information contained in a draft Transparency

9

Report submitted to the Defendants on or about April 1, 2014.  After five months, Defendants

10

informed Twitter on September 9, 2014 that "information contained in the [transparency] report is

11

classified and cannot be publicly released" because it does not comply with their framework for

12

reporting data about government requests under the Foreign Intelligence Surveillance Act

13

("FISA") and the National Security Letter statutes.  This framework was set forth in a January 27,

14

2014 letter from Deputy Attorney General James M. Cole to five Internet companies (not

15

including Twitter) in settlement of prior claims brought by those companies (also not including

16

Twitter) (the "DAG Letter").

17

4.      The Defendants' position forces Twitter either to engage in speech that has been

18

preapproved by government officials or else to refrain from speaking altogether.  Defendants

19

provided no authority for their ability to establish the preapproved disclosure formats or to

20

impose those speech restrictions on other service providers that were not party to the lawsuit or

21

settlement.

22

5.      Twitter's ability to respond to government statements about national security

23

surveillance activities and to discuss the actual surveillance of Twitter users is being

24

unconstitutionally restricted by statutes that prohibit and even criminalize a service provider's

25

disclosure of the number of national security letters ("NSLs") and court orders issued pursuant to

26

FISA that it has received, if any.  In fact, the U.S. government has taken the position that service

27

28

-1-

COMPLAINT FOR DECLARATORY JUDGMENT

providers like Twitter are even prohibited from saying that they have received zero national security requests, or zero of a particular *type* of national security request.

6.     These restrictions constitute an unconstitutional prior restraint and content-based restriction on, and government viewpoint discrimination against, Twitter's right to speak about information of national and global public concern. Twitter is entitled under the First Amendment to respond to its users' concerns and to the statements of U.S. government officials by providing more complete information about the limited scope of U.S. government surveillance of Twitter user accounts—including what types of legal process have *not* been received by Twitter—and the DAG Letter is not a lawful means by which Defendants can seek to enforce their unconstitutional speech restrictions.

## II.     PARTIES

7.     Plaintiff Twitter, Inc. ("Twitter") is a corporation with its principal place of business located at 1355 Market Street, Suite 900, San Francisco, California. Twitter is a global information sharing and distribution network serving over 271 million monthly active users around the world. People using Twitter write short messages, called "Tweets," of 140 characters or less, which are public by default and may be viewed all around the world instantly. As such, Twitter gives a public voice to anyone in the world—people who inform and educate others, who express their individuality, who engage in all manner of political speech, and who seek positive change.

8.     Defendant Eric Holder is the Attorney General of the United States and heads the United States Department of Justice ("DOJ"). He is sued in his official capacity only.

9.     Defendant DOJ is an agency of the United States. Its headquarters are located at 950 Pennsylvania Avenue, NW, Washington, D.C.

10.    Defendant James Comey is the Director of the Federal Bureau of Investigation ("FBI"). He is sued in his official capacity only.

COMPLAINT FOR DECLARATORY JUDGMENT

1       11.     Defendant FBI is an agency of the United States.  Its headquarters are located at

2  935 Pennsylvania Avenue, NW, Washington, D.C.

### III.     JURISDICTION

12.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1331, as this matter arises under the Constitution, laws, or treaties of the United States.  More specifically, this Court is authorized to provide declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, relating to, among other things, Twitter's contention that certain nondisclosure requirements and related penalties concerning the receipt of NSLs and court orders issued under FISA, as described below, are unconstitutionally restrictive of Twitter's First Amendment rights, either on their face or as applied to Twitter, and Twitter's contention that Defendants' conduct violates the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*

### IV.     VENUE

13.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the action occurred in this judicial district, Twitter resides in this district, Twitter's speech is being unconstitutionally restricted in this district, and the Defendants are officers and employees of the United States or its agencies operating under the color of law.

### V.     FACTUAL BACKGROUND

**A.**     **NSL and FISA Provisions Include Nondisclosure Obligations**

*i.*     *The NSL Statute*

14.     Section 2709 of the federal Stored Communications Act authorizes the FBI to issue NSLs to electronic communication service ("ECS") providers, such as Twitter, compelling them to disclose "subscriber information and toll billing records information" upon a certification by the FBI that the information sought is "relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities."  18 U.S.C. § 2709(a), (b).

15.     Section 2709(c)(1) provides that, following certification by the FBI, the recipient of the NSL shall not disclose "to any person (other than those to whom such disclosure is necessary to comply with the request or an attorney to obtain legal advice or legal assistance with respect to the request) that the Federal Bureau of Investigation has sought or obtained access to information or records." 18 U.S.C. § 2709(c)(1). This nondisclosure obligation is imposed upon an ECS by the FBI unilaterally, without prior judicial review. At least two United States district courts have found the nondisclosure provision of § 2709 unconstitutional under the First Amendment. *In re Nat'l Sec. Letter*, 930 F. Supp. 2d 1064 (N.D. Cal. 2013); *Doe v. Gonzales*, 500 F. Supp. 2d 379 (S.D.N.Y. 2007), *affirmed in part, reversed in part, and remanded by Doe, Inc. v. Mukasey*, 549 F.3d 861 (2d Cir. 2008).

16.     Any person or entity that violates a NSL nondisclosure order may be subject to criminal penalties. 18 U.S.C. §§ 793, 1510(e).

ii.      *The Foreign Intelligence Surveillance Act*

17.     Five subsections ("Titles") of FISA permit the government to seek court-ordered real-time surveillance or disclosure of stored records from an ECS: Title I (electronic surveillance of the content of communications and all communications metadata); Title III (disclosure of stored content and noncontent records); Title IV (provisioning of pen register and trap and trace devices to obtain dialing, routing, addressing and signaling information); Title V (disclosure of "business records") (also referred to as "Section 215 of the USA Patriot Act"); and Title VII (surveillance of non-U.S. persons located beyond U.S. borders).

18.     A number of authorities restrict the recipient of a FISA order from disclosing information about that order. These include requirements in FISA that recipients of court orders provide the government with "all information, facilities, or technical assistance necessary to accomplish the electronic surveillance in such a manner as will protect its secrecy," 50 U.S.C. § 1805(c)(2)(B); the Espionage Act, 18 U.S.C. § 793 (criminalizing unauthorized disclosures of

-4-

national defense information under certain circumstances); nondisclosure agreements signed by representatives of communications providers who receive FISA orders; and court-imposed nondisclosure obligations in FISA court orders themselves.

**B.** **The Government's Restrictions on Other Communication Providers' Ability to Discuss Their Receipt of National Security Legal Process**

19.     On June 5, 2013, the British newspaper *The Guardian* reported the first of several "leaks" of classified material from Edward Snowden, a former government contractor, which have revealed—and continue to reveal—multiple U.S. government intelligence collection and surveillance programs.

20.     The Snowden disclosures have deepened public concern regarding the scope of governmental national security surveillance. This concern is shared by members of Congress, industry leaders, world leaders, and the media. In response to this concern, a number of executive branch officials have made public statements about the Snowden disclosures and revealed select details regarding specific U.S. surveillance programs. For example, the Director of National Intelligence has selectively declassified and publicly released information about U.S. government surveillance programs.

21.     While engaging in their own carefully crafted speech on the issue of U.S. government surveillance, U.S. government officials have relied on statutory and other authorities to preclude communication providers from responding to leaks, inaccurate information reported in the media, statements of public officials, and related public concerns regarding the providers' involvement with and exposure to U.S. surveillance efforts. These authorities—and the government's interpretation of and reliance on them—constitute facial and as-applied violations of the First Amendment right to engage in speech regarding a matter of extensively debated and significant public concern.

-5-

22.　　In response to these restrictions on speech, on June 18, 2013, Google filed in the Foreign Intelligence Surveillance Court ("FISC") a Motion for Declaratory Judgment of Google's First Amendment Right to Publish Aggregate Data About FISA Orders. Google then filed an Amended Motion on September 9, 2013. Google's Amended Motion sought a declaratory judgment that it had a right under the First Amendment to publish, and that no applicable law or regulation prohibited it from publishing, two aggregate unclassified numbers: (1) the total number of requests it receives under various national security authorities, if any, and (2) the total number of users or accounts encompassed within such requests. Similar motions were subsequently filed by four other U.S. communications providers: Microsoft (June 19, 2013), Facebook (September 9, 2013), Yahoo! (September 9, 2013), and LinkedIn (September 17, 2013). Apple also submitted an amicus brief in support of the motions (November 5, 2013).

23.　　In January 2014, the DOJ and the five petitioner companies reached an agreement that the companies would dismiss the FISC actions without prejudice in return for the DOJ's agreement that the companies could publish information about U.S. government surveillance of their networks in one of two preapproved disclosure formats. President Obama previewed this agreement in a public speech that he delivered at the DOJ on January 17, 2014, saying, "We will also enable communications providers to make public more information than ever before about the orders that they have received to provide data to the government." President Barack Obama, *Remarks by the President on Review of Signals Intelligence*, The White House Blog (Jan. 17, 2014, 11:15 AM), available at http://www.whitehouse.gov/the-press-office/2014/01/17/remarks-president-review-signals-intelligence.

24.　　The two preapproved disclosure formats were set forth in a letter dated January 27, 2014, from Deputy Attorney General James M. Cole to the General Counsels for Facebook, Google, LinkedIn, Microsoft and Yahoo!. A copy of the DAG Letter is attached hereto as Exhibit 1. Under Option One in the DAG Letter,

-6-

COMPLAINT FOR DECLARATORY JUDGMENT

A provider may report aggregate data in the following separate categories:

    1.    Criminal process, subject to no restrictions.

    2.    The number of NSLs received, reported in bands of 1000 starting with 0-999.

    3.    The number of customer accounts affected by NSLs, reported in bands of 1000 starting with 0-999.

    4.    The number of FISA orders for content, reported in bands of 1000 starting with 0-999.

    5.    The number of customer selectors targeted under FISA content orders, in bands of 1000 starting with 0-999.

    6.    The number of FISA orders for non-content, reported in bands of 1000 starting with 0-999.

    7.    The number of customer selectors targeted under FISA non-content orders, in bands of 1000 starting with 0-999.

Exhibit 1 at 2.

    25.    For FISA-related information, the DOJ imposed a six-month delay between the publication date and the period covered by the report. In addition, it imposed

a delay of two years for data relating to the first order that is served on a company for a platform, product, or service (whether developed or acquired) for which the company has not previously received such an order, and that is designated by the government as a "New Capability Order" because disclosing it would reveal that the platform, product, or service is subject to previously undisclosed collection through FISA orders.

*Id.* at 3.

    26.    Under Option Two,

[A] provider may report aggregate data in the following separate categories:

    1.    Criminal process, subject to no restrictions.

    2.    The total number of all national security process received, including all NSLs and FISA orders, reported as a single number in the following bands: 0-249 and thereafter in bands of 250.

    3.    The total number of customer selectors targeted under all national security process, including all NSLs and FISA orders, reported as a

-7-

COMPLAINT FOR DECLARATORY JUDGMENT

> single number in the following bands, 0-249, and thereafter in
> bands of 250."

*Id.*

27.     Under either option, since the permitted ranges begin with zero, service providers who have never received an NSL or FISA order apparently are prohibited from reporting that fact.  Likewise, a communications provider that, for example, has received FISA orders under Titles I, III, V and VII of FISA, but not under Title IV, may not reveal that it has never received a Title IV FISC order.

28.     The DAG Letter cites to no authority for these restrictions on service providers' speech.

29.     In a Notice filed with the FISC simultaneously with transmission of the DAG Letter, the DOJ informed the court of the agreement, the new disclosure options detailed in the DAG Letter, and the stipulated dismissal of the FISC action by all parties.  A copy of the Notice is attached hereto as Exhibit 2.  The Notice concluded by stating: "It is the Government's position that the terms outlined in the Deputy Attorney General's letter define the limits of permissible reporting for the parties *and other similarly situated companies*."  Exhibit 2 at 2 (emphasis added).  In other words, according to the DOJ, the negotiated agreement reached to end litigation by five petitioner companies is not limited to the five petitioner companies as a settlement of private litigation, but instead serves as a disclosure format imposed on a much broader—yet undefined—group of companies.  No further guidance has been offered by the DOJ regarding what it considers to be a "similarly situated" company.  Further, the Notice cites no authority for extending these restrictions on speech to companies that were not party to the negotiated agreement.

30.     Notwithstanding the fact that the DAG Letter purportedly prohibits a provider from disclosing that it has received "zero" NSLs or FISA orders, or "zero" of a certain kind of

-8-

FISA order, subsequent to January 27, 2014, certain communications providers have publicly disclosed either that they have never received any FISA orders or NSLs, or any of a certain kind of FISA order.

**C.      The DOJ and FBI Deny Twitter's Request to Be More Transparent**

31.      Twitter is a unique service built on trust and transparency.  Twitter users are permitted to post under their real names or pseudonymously.  Twitter is used by world leaders, political activists, journalists, and millions of other people to disseminate information and ideas, engage in public debate about matters of national and global concern, seek justice, and reveal government corruption and other wrongdoing.  The ability of Twitter users to share information depends, in part, on their ability to do so without undue fear of government surveillance.

32.      Twitter is an ECS as that term is defined at 18 U.S.C. § 2510(15) since it provides its users the ability to send and receive electronic communications.  As an ECS and, more generally, as a third-party provider of communications to the public, Twitter is subject to the receipt of civil, criminal, and national security legal process, including administrative, grand jury, and trial subpoenas; NSLs; court orders under the federal Wiretap Act, Stored Communications Act, Pen Register and Trap and Trace Act, and FISA; and search warrants.  Compliance with such legal process can be compelled through the aid of a court.

33.      The ability to engage in speech concerning the nature and extent of government surveillance of Twitter users' activities is critical to Twitter.  In July 2012, Twitter released its first Transparency Report.  Release of this Transparency Report was motivated by Twitter's recognition that citizens must "hold governments accountable, especially on behalf of those who may not have a chance to do so themselves."  Jeremy Kessel, *Twitter Transparency Report*, Twitter Blog (July 2, 2012 20:17 UTC), https://blog.twitter.com/2012/twitter-transparency-report. This Transparency Report listed the number of civil and criminal government requests for account information and content removal, broken down by country, and takedown notices

COMPLAINT FOR DECLARATORY JUDGMENT

1   pursuant to the Digital Millennium Copyright Act received from third parties.  The report also

2   provided information about how Twitter responded to these requests.  The report did not contain

3   information regarding government national security requests Twitter may have received.

4   Subsequent biennial transparency reports have been released since then, including the most recent

5   on July 31, 2014.

6          34.     In January 2014, Twitter requested to meet with DOJ and FBI officials to discuss

7   Twitter's desire to provide greater transparency into the extent of U.S. government surveillance of

8   Twitter's users through NSLs and court orders issued under FISA.

9          35.     On January 29, 2014, representatives of the DOJ, FBI, and Twitter met at the

10   Department of Justice.  At the meeting, Twitter explained why its services are unique and distinct

11   from the services provided by the companies who were recipients of the DAG Letter and why the

12   DAG Letter should not apply to Twitter, which was not a party to the proceedings that resulted in

13   the DAG Letter.  Twitter also sought confirmation that it is not "similarly situated" to those

14   companies and that the limits imposed in the DAG Letter should not apply to Twitter.  In

15   response, the DOJ and FBI told Twitter that the DAG Letter sets forth the limits of permissible

16   transparency-related speech for Twitter and that the letter would not be amended or supplemented

17   with additional options of preapproved speech.

18          36.     In February 2014, Twitter released its Transparency Report for the second half of

19   2013, which included two years of data covering global government requests for account

20   information.  In light of the government's admonition regarding more expansive transparency

21   reporting than that set forth in the DAG Letter, Twitter's February 2014 Transparency Report did

22   not include information about U.S. government national security requests at the level of

23   granularity Twitter wished to disclose.

24          37.     In a blog post, Twitter explained the importance of reporting more specific

25   information to users about government surveillance.  Twitter also explained how the U.S.

26

27                                              -10-
                                                COMPLAINT FOR DECLARATORY JUDGMENT

28

government was unconstitutionally prohibiting Twitter from providing a meaningful level of

detail regarding U.S. government national security requests Twitter had or may have received:

> We think the government's restriction on our speech not only unfairly impacts our users' privacy, but also violates our First Amendment right to free expression and open discussion of government affairs. We believe there are far less restrictive ways to permit discussion in this area while also respecting national security concerns. Therefore, we have pressed the U.S. Department of Justice to allow greater transparency, and proposed future disclosures concerning national security requests that would be more meaningful to Twitter's users.

Jeremy Kessel, *Fighting for more #transparency*, Twitter Blog (Feb. 6, 2014 14:58

UTC), https://blog.twitter.com/2014/fighting-for-more-transparency.

38.    On or about April 1, 2014, Twitter submitted a draft July 2014 Transparency

Report to the FBI, seeking prepublication review. In its transmittal letter to the FBI, Twitter

explained:

> We are sending this to you so that Twitter may receive a determination as to exactly which, if any, parts of its Transparency Report are classified or, in the Department's view, otherwise may not lawfully be published online.

A copy of Twitter's letter dated April 1, 2014 is attached as Exhibit 3. Twitter's draft

Transparency Report, which will be submitted separately, is Exhibit 4.

39.    Through its draft Transparency Report, Twitter seeks to disclose certain categories

of information to its users, for the period July 1 to December 31, 2013, including:

> a.    The number of NSLs and FISA orders Twitter received, if any, in actual aggregate numbers (including "zero," to the extent that that number was applicable to an aggregate number of NSLs or FISA orders, or to specific *kinds* of FISA orders that Twitter may have received);
>
> b.    The number of NSLs and FISA orders received, if any, reported separately, in ranges of one hundred, beginning with 1–99;
>
> c.    The combined number of NSLs and FISA orders received, if any, in ranges of twenty-five, beginning with 1–24;

-11-

COMPLAINT FOR DECLARATORY JUDGMENT

1

2
     d.   A comparison of Twitter's proposed (i.e., smaller) ranges with those
         authorized by the DAG Letter;

3
     e.   A comparison of the aggregate numbers of NSLs and FISA orders
         received, if any, by Twitter and the five providers to whom the DAG
         Letter was addressed; and

4

5
     f.   A descriptive statement about Twitter's exposure to national security
         surveillance, if any, to express the overall degree of government
         surveillance it is or may be subject to.

6

7
     40.     For five months, the FBI considered Twitter's written request for review of the

8
draft Transparency Report.  By letter dated September 9, 2014, the FBI denied Twitter's request.

9
A copy of the FBI's letter dated September 9, 2014 is attached as Exhibit 5.  The FBI's letter did

10
not, as requested, identify exactly which parts of the draft Transparency Report may not lawfully

11
be published.  Instead, the letter stated vaguely that "information contained in the report" cannot

12
be publicly released; it provided examples of such information in the draft Transparency Report;

13
and it relied on a general assertion of national security classification and on the pronouncements

14
in the DAG Letter as its bases for denying publication:

15
        We have carefully reviewed Twitter's proposed transparency report
        and have concluded that information contained in the report is

16
        classified and cannot be publicly released.

17
        . . . Twitter's proposed transparency report seeks to publish data . . .
        in ways that would reveal classified details about [government

18
        surveillance] that go beyond what the government has permitted
        other companies to report. . . .  This is inconsistent with the January

19
        27th framework [set forth in the DAG Letter] and discloses
        properly classified information.

20
Exhibit 5 at 1.  The FBI reiterated that Twitter could engage only in speech that did not exceed

21
the preapproved speech set forth in the DAG Letter.  It noted, for example, that Twitter could

22
        explain that only an infinitesimally small percentage of its total

23
        number of active users was affected by [government surveillance
        by] highlighting that less than 250 accounts were subject to all

24
        combined national security legal process. . . .  That would allow

25
        Twitter to explain that all national security legal process received
        from the United States affected, at maximum, only 0.0000919

26
        percent (calculated by dividing 249 by 271 million) of Twitter's

-12-

27

28

total users.  In other words, Twitter is permitted to *qualify* its description of the total number of accounts affected by all national security legal process it has received but it cannot *quantify* that description with the specific detail that goes well beyond what is allowed under the January 27th framework and that discloses properly classified information.

*Id.* at 1–2.

42.     41.     Since the FBI's response does not identify the exact information in the draft Transparency Report that can and cannot be published, Twitter cannot at this time publish any part of the report.  When the government intrudes on speech, the First Amendment requires that it do so in the most limited way possible.  The government has failed to meet this obligation. Instead, Defendants simply impose the DAG Letter framework upon Twitter as Twitter's sole means of communicating with the public about national security surveillance.

**COUNT I**

**(Request for Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202 and Injunctive Relief)**

42.     Twitter incorporates the allegations contained in paragraphs 1 through 41, above.

43.     Defendants have impermissibly infringed upon Twitter's right to publish information contained in Twitter's draft Transparency Report, and Twitter therefore seeks a declaration that Defendants have violated Twitter's First Amendment rights.  A case of actual controversy exists regarding Twitter's right to engage in First Amendment protected speech following Defendants' refusal to allow Twitter to publish information about its exposure to national security surveillance that does not conform to either of the two preapproved formats set forth in the DAG Letter.  The fact that Defendants have prohibited Twitter from publishing facts that reveal whether and the extent to which it may have received either one or more NSLs or court orders pursuant to FISA, along with the other facts alleged herein, establish that a substantial controversy exists between the adverse parties of sufficient immediacy and reality as to warrant a declaratory judgment in Twitter's favor.  Twitter has suffered actual adverse and harmful effects, including but not limited to, a prohibition on publishing information in the draft

-13-

Transparency Report to make it available to the public and Twitter's users, the chilling effect from Defendants' failure to address specific content, and the threat of possible civil or criminal penalties for publication.

44. The imposition of the requirements of the DAG Letter on Twitter violates the Administrative Procedure Act because the DAG Letter represents a final agency action not in accordance with law; the imposition of the DAG Letter on Twitter is contrary to Twitter's constitutional rights (namely the First Amendment) as alleged more specifically herein; the imposition of the DAG Letter on Twitter is in excess of statutory jurisdiction, authority, or limitations as alleged more specifically herein; and the requirements set forth in the DAG Letter were imposed on Twitter without the observance of procedure required by law. Twitter is not "similarly situated" to the parties addressed in the DAG Letter.

45. Upon information and belief, the restrictions in the DAG letter are based in part upon the nondisclosure provision of 18 U.S.C. § 2709; FISA secrecy provisions, such as 50 U.S.C. § 1805(c)(2)(B); the Espionage Act, 18 U.S.C. § 793; nondisclosure agreements signed by Twitter representatives, if any; and nondisclosure provisions in FISA court orders issued to Twitter, if any.

46. The nondisclosure and judicial review provisions of 18 U.S.C. § 2709(c) are facially unconstitutional under the First Amendment, including for at least the following reasons: the nondisclosure orders authorized by § 2709(c) constitute a prior restraint and content-based restriction on speech in violation of Twitter's First Amendment right to speak about truthful matters of public concern (e.g., the existence of and numbers of NSLs received); the nondisclosure orders authorized by § 2709(c) are not narrowly tailored to serve a compelling governmental interest, including because they apply not only to the content of the request but to the fact of receiving an NSL and additionally are unlimited in duration; and the NSL nondisclosure provisions are facially unconstitutional because the judicial review procedures do

-14-

not meet procedural safeguards required by the First Amendment because they place the burden of seeking to modify or set aside a nondisclosure order on the recipient of an NSL, do not guarantee that nondisclosure orders imposed prior to judicial review are limited to a specified brief period, do not guarantee expeditious review of a request to modify or set aside a nondisclosure order, and require the reviewing court to apply a level of deference that conflicts with strict scrutiny.

47.    The nondisclosure provisions of 18 U.S.C. § 2709(c) are also unconstitutional as applied to Twitter, including because Defendants' interpretation of the nondisclosure provision of 18 U.S.C. § 2709(c), and their application of the same to Twitter via the DAG Letter, is an unconstitutional prior restraint, content-based restriction, and viewpoint discrimination in violation of Twitter's right to speak about truthful matters of public concern.  This prohibition on Twitter's speech is not narrowly tailored to serve a compelling governmental interest, and no such interest exists that justifies prohibiting Twitter from disclosing its receipt (or non-receipt) of an NSL or the unlimited duration or scope of the prohibition.

48.    Section 2709 is also unconstitutional because 18 U.S.C. § 3511, which sets forth the standard of review for seeking to modify or set aside a nondisclosure order under 18 U.S.C. § 2709, restricts a court's power to review the necessity of a nondisclosure provision in violation of separation of powers principles.  The statute expressly limits a court's ability to set aside or modify a nondisclosure provision unless the court finds that "there is no reason to believe that disclosure may endanger . . . national security."  18 U.S.C. § 3511(b)(2), (3).  This restriction impermissibly requires the reviewing court to apply a level of deference to the government's nondisclosure decisions that conflicts with the constitutionally mandated level of review, which is strict scrutiny.

49.    The FISA statute, the Espionage Act, and other nondisclosure authorities do not prohibit service providers like Twitter from disclosing aggregate information about the number of

-15-

1  FISA orders they receive.  Instead, these authorities protect the secrecy of particular *targets* and

2  ongoing investigations, and do not impose an obligation on service providers such as Twitter to

3  remain silent about the receipt or non-receipt of FISA orders generally, nor do they impose an

4  obligation on service providers not to disclose the aggregate numbers of specific ranges of FISA

5  orders received.  To the extent that the Defendants read FISA secrecy provisions, such as 50

6  U.S.C. § 1805(c)(2)(B), as prohibiting Twitter from publishing information about the aggregate

7  number of FISA orders it receives, however, the FISA secrecy provisions are unconstitutional

8  including because they constitute a prior restraint and content-based restriction on speech in

9  violation of Twitter's First Amendment right to speak about truthful matters of public concern.

10  Moreover, this restriction on Twitter's speech is not narrowly tailored to serve a compelling

11  governmental interest, and no such interest exists that justifies prohibiting Twitter from disclosing

12  its receipt (or non-receipt) of a FISA order.

13       50.  The FISA secrecy provisions are also unconstitutional as applied to Twitter,

14  including because Defendants' interpretation of the FISA secrecy provisions and their application

15  with respect to Twitter is an unconstitutional prior restraint, content-based restriction, and

16  viewpoint discrimination in violation of Twitter's right to speak about truthful matters of public

17  concern.  Moreover, this prohibition imposed by Defendants on Twitter's speech is not narrowly

18  tailored to serve a compelling governmental interest.

19  **PRAYER FOR RELIEF**

20  WHEREFORE, Twitter prays for the following relief:

21  A.  A declaratory judgment that:

22      i.  The draft Transparency Report that Twitter submitted to the FBI may be lawfully published in its entirety or, alternatively, certain identified

23  portions may be lawfully published;

24      ii.  Imposition of the requirements set forth in the DAG Letter on Twitter violate the Administrative Procedure Act;

25      iii.  The nondisclosure provisions of 18 U.S.C. § 2709 and the review mechanisms of 18 U.S.C. § 3511 are facially unconstitutional under the

26  First Amendment;

-16-

27  COMPLAINT FOR DECLARATORY JUDGMENT

28

iv.   The nondisclosure provisions of 18 U.S.C. § 2709 are unconstitutional under the First Amendment as applied to Twitter;

v.    The review mechanisms established under 18 U.S.C. § 3511 are facially unconstitutional because they violate separation of powers principles;

vi.   The FISA secrecy provisions are facially unconstitutional under the First Amendment;

vii.  The FISA secrecy provisions are unconstitutional under the First Amendment as applied to Twitter;

viii. The DAG Letter's prohibition on reporting receipt of zero of a particular kind of national security process is unconstitutional under the First Amendment;

ix.   The DAG Letter's prohibition on reporting receipt of zero aggregate NSLs or FISA orders is unconstitutional under the First Amendment; and

x.    The DAG Letter's restrictions on reporting ranges of national security process received are unconstitutional under the First Amendment.

B.    A preliminary and permanent injunction prohibiting Defendants, their affiliates, agents, employees, and attorneys, and any and all other persons in active concert or participation with them, from seeking to enforce the terms contained in the DAG Letter on Twitter, or to prosecute or otherwise seek redress from Twitter for transparency reporting that is inconsistent with the terms contained in the DAG Letter.

C.    An award of attorneys' fees and costs to Twitter to the extent permitted by law.

D.    Such further and other relief as this Court deems just and proper.

-17-

1

2

DATED:  October 7, 2014

**PERKINS COIE** LLP

3

4

By: /s/ Eric D. Miller

5

Eric D. Miller, Bar No. 218416
EMiller@perkinscoie.com
Michael A. Sussmann, D.C. Bar No.
433100

6

(*pro hac vice to follow*)
MSussmann@perkinscoie.com

7

James Snell, Bar No. 173070
JSnell@perkinscoie.com
Hayley L. Berlin, D.C. Bar No. 1011549

8

(*pro hac vice to follow*)
HBerlin@perkinscoie.com

9

PERKINS COIE LLP
3150 Porter Drive

10

Palo Alto, CA  94304-1212
Telephone:  650.838.4300

11

Facsimile:  650.838.4350

12

13

Attorneys for Plaintiff
Twitter, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

-18-

27

COMPLAINT FOR DECLARATORY JUDGMENT

28