**Exhibit 1**



Office of the Deputy Attorney General
Washington, D.C. 20530

January 27, 2014

<u>Sent via Email</u>

Colin Stretch, Esquire
Vice President and General Counsel
Facebook Corporate Office
1601 Willow Road
Menlo Park, CA 94025

Kent Walker, Esquire
Senior Vice President and General Counsel
Google Corporate Office Headquarters
1600 Amphitheater Parkway
Mountain View, CA 94043

Erika Rottenberg, Esquire
Vice President, General Counsel/Secretary
LinkedIn Corporation
2029 Stierlin Court
Mountain View, CA 94043

Brad Smith, Esquire
Executive Vice President and General Counsel
Microsoft Corporate Office Headquarters
One Microsoft Way
Redmond, WA 98052-7329

Ronald Bell, Esquire
General Counsel
Yahoo Inc. Corporate Office and Headquarters
701 First Avenue
Sunnyvale, CA 94089

Dear General Counsels:

Pursuant to my discussions with you over the last month, this letter memorializes the new and additional ways in which the government will permit your company to report data concerning requests for customer information. We are sending this in connection with the Notice we filed with the Foreign Intelligence Surveillance Court today.

In the summer of 2013, the government agreed that providers could report in aggregate the total number of all requests received for customer data, including all criminal process, NSLs,

Letter to Colin Stretch, Kent Walker, Erika Rottenberg, Brad Smith and Ronald Bell
Page 2

and FISA orders, and the total number of accounts targeted by those requests, in bands of 1000. In the alternative, the provider could separately report precise numbers of criminal process received and number of accounts affected thereby, as well as the number of NSLs received and the number of accounts affected thereby in bands of 1000. Under this latter option, however, a provider could not include in its reporting any data about FISA process received.

The government is now providing two alternative ways in which companies may inform their customers about requests for data. Consistent with the President's direction in his speech on January 17, 2014, these new reporting methods enable communications providers to make public more information than ever before about the orders that they have received to provide data to the government.

Option One.

A provider may report aggregate data in the following separate categories:

1. Criminal process, subject to no restrictions.

2. The number of NSLs received, reported in bands of 1000 starting with 0-999.

3. The number of customer accounts affected by NSLs, reported in bands of 1000 starting with 0-999.

4. The number of FISA orders for content, reported in bands of 1000 starting with 0-999.

5. The number of customer selectors targeted under FISA content orders, in bands of 1000 starting with 0-999.

6. The number of FISA orders for non-content, reported in bands of 1000 starting with 0-999.[1]

7. The number of customer selectors targeted under FISA non-content orders, in bands of 1000 starting with 0-999.

A provider may publish the FISA and NSL numbers every six months. For FISA information, there will be a six-month delay between the publication date and the period covered

---

[1] As the Director of National Intelligence stated on November 18, 2013, the Government several years ago discontinued a program under which it collected bulk internet metadata, and no longer issues FISA orders for such information in bulk. See http://icontherecord.tumblr.com/post/67419963949/dni-clapper-declassifies-additional-intelligence. With regard to the bulk collection of telephone metadata, the President has ordered a transition that will end the Section 215 bulk metadata program as it currently exists and has requested recommendations about how the program should be restructured. The result of that transition will determine the manner in which data about any continued collection of that kind is most appropriately reported.

Letter to Colin Stretch, Kent Walker, Erika Rottenberg, Brad Smith and Ronald Bell
Page 3

by the report. For example, a report published on July 1, 2015, will reflect the FISA data for the period ending December 31, 2014.

In addition, there will be a delay of two years for data relating to the first order that is served on a company for a platform, product, or service (whether developed or acquired) for which the company has not previously received such an order, and that is designated by the government as a "New Capability Order" because disclosing it would reveal that the platform, product, or service is subject to previously undisclosed collection through FISA orders. For example, a report published on July 1, 2015, will not reflect data relating to any New Capability Order received during the period ending December 31, 2014. Such data will be reflected in a report published on January 1, 2017. After data about a New Capability Order has been published, that type of order will no longer be considered a New Capability Order, and the ordinary six-month delay will apply.

The two-year delay described above does not apply to a FISA order directed at an enhancement to or iteration of an existing, already publicly available platform, product, or service when the company has received previously disclosed FISA orders of the same type for that platform, product, or service.

A provider may include in its transparency report general qualifying language regarding the existence of this additional delay mechanism to ensure the accuracy of its reported data, to the effect that the transparency report may or may not include orders subject to such additional delay (but without specifically confirming or denying that it has received such new capability orders).

Option Two.

In the alternative, a provider may report aggregate data in the following separate categories:

1. Criminal process, subject to no restrictions.

2. The total number of all national security process received, including all NSLs and FISA orders, reported as a single number in the following bands: 0-249 and thereafter in bands of 250.

3. The total number of customer selectors targeted under all national security process, including all NSLs and FISA orders, reported as a single number in the following bands, 0-249, and thereafter in bands of 250.

\*    \*    \*

I have appreciated the opportunity to discuss these issues with you, and I am grateful for the time, effort, and input of your companies in reaching a result that we believe strikes an appropriate balance between the competing interests of protecting national security and furthering transparency. We look forward to continuing to discuss with you ways in which the

Letter to Colin Stretch, Kent Walker, Erika Rottenberg, Brad Smith and Ronald Bell
Page 4

government and industry can similarly find common ground on other issues raised by the
surveillance debates of recent months.

Sincerely,

James M. Cole
Deputy Attorney General

**Exhibit 2**

# UNITED STATES
## FOREIGN INTELLIGENCE SURVEILLANCE COURT
### WASHINGTON, D.C.

| | |
|---|---|
| IN RE MOTION FOR DECLARATORY JUDGMENT OF A FIRST AMENDMENT RIGHT TO PUBLISH AGGREGATE INFORMATION ABOUT FISA ORDERS | Docket No. Misc. 13-03 |
| IN RE MOTION TO DISCLOSE AGGREGATE DATA REGARDING FISA ORDERS | Docket No. Misc. 13-04 |
| IN RE MOTION FOR DECLARATORY JUDGMENT TO DISCLOSE AGGREGATE DATA REGARDING FISA ORDERS AND DIRECTIVES | Docket No. Misc. 13-05 |
| IN RE MOTION FOR DECLARATORY JUDGMENT TO DISCLOSE AGGREGATE DATA REGARDING FISA ORDERS AND DIRECTIVES | Docket No. Misc. 13-06 |
| IN RE MOTION FOR DECLARATORY JUDGMENT TO REPORT AGGREGATED DATA REGARDING FISA ORDERS | Docket No. Misc. 13-07 |

## NOTICE

The Government hereby informs the Court that, pursuant to the terms of the attached letter from the Deputy Attorney General, the Government will permit the petitioners to publish the aggregate data at issue in the above-captioned actions relating to any orders issued pursuant to the Foreign Intelligence Surveillance Act (FISA).  The parties are separately stipulating to the

dismissal of these actions without prejudice. The Director of National Intelligence has declassified the aggregate data consistent with the terms of the attached letter from the Deputy Attorney General, in the exercise of the Director of National Intelligence's discretion pursuant to Executive Order 13526, § 3.1(c). The Government will therefore treat such disclosures as no longer prohibited under any legal provision that would otherwise prohibit the disclosure of classified data, including data relating to FISA surveillance. It is the Government's position that the terms outlined in the Deputy Attorney General's letter define the limits of permissible reporting for the parties and other similarly situated companies.

Dated:  January 27, 2014

Respectfully submitted,

JOHN P. CARLIN
Acting Assistant Attorney General
  for National Security

TASHINA GAUHAR
Deputy Assistant Attorney General
National Security Division

J. BRADFORD WIEGMANN
Deputy Assistant Attorney General
National Security Division

CHRISTOPHER HARDEE
Chief Counsel for Policy
National Security Division

  /s/ Alex Iftimie
ALEX IFTIMIE
U.S. Department of Justice
National Security Division
950 Pennsylvania Ave., N.W.
Washington, DC 20530
Phone: (202) 514-5600
Fax: (202) 514-8053

*Attorneys for the United States of America*

2

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this Notice was served by the Government via email

on this 27th day of January, 2014, addressed to:

Albert Gidari
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
*Attorney for Google Inc.*

James Garland
David N. Fagan
Alexander A. Berengaut
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004-2401
*Attorneys for Microsoft Corporation*

Marc J. Zwillinger
Jacob A. Sommer
ZwillGen PLLC
1705 N Street, N.W.
Washington, DC 20036
*Attorneys for Yahoo! Inc.*

Carl J. Nichols
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
*Attorney for Facebook, Inc.*

Jerome C. Roth
Jonathan H. Blavin
Justin P. Raphael
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
*Attorneys for LinkedIn Corporation*

/s/
Alex Iftimie

3

**Exhibit 3**

UNCLASSIFIED



Michael A. Sussmann
PHONE  (202) 654-6333
FAX    (202) 654-9127
EMAIL  MSussmann@perkinscoie.com

700 Thirteenth Street. N.W., Suite 600
Washington, D.C. 20005-3960
PHONE: 202.654.6200
FAX 202.654.6211
www.perkinscoie.com

April 1, 2014

**VIA HAND DELIVERY**

Mr. Richard McNally
Section Chief, NSLB
Federal Bureau of Investigation
935 Pennsylvania Avenue, NW
Room 7947
Washington, DC  20525-0001

Re:     **Classification Review of Twitter 2014 Transparency Report**

Dear Mr. McNally:

In a recent meeting with representatives of the Department of Justice, Dave O'Neil offered that
the FBI would review proposed communication provider transparency reports for classified
information (in conformity with the Deputy Attorney General's letter of January 27, 2014 to the
general counsels of Facebook, Google, LinkedIn, Microsoft and Yahoo!), and that it had already
conducted such reviews for certain providers.  Twitter has prepared a Transparency Report
(enclosed) and has asked me to deliver it to you for review.

As Twitter has expressed in person to Mr. O'Neil and others at the Department, it does not see
itself as "similarly situated" to the five communications providers who were recipients of the
DAG's letter—notwithstanding the Department's view that it is—for purposes of transparency
reporting.  Therefore, in the attached Transparency Report, Twitter has expressed its uniqueness,
both in terms of the nature of its platform and service and regarding the relative amount of
government surveillance it has been compelled to provide, in a number of different ways.

We are sending this to you so that Twitter may receive a determination as to exactly which, if
any, parts of its Transparency Report are classified or, in the Department's view, otherwise may
not lawfully be published online.

**UNCLASSIFIED**

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DALLAS · DENVER · LOS ANGELES · MADISON · NEW YORK
PALO ALTO · PHOENIX · PORTLAND · SAN DIEGO · SAN FRANCISCO · SEATTLE · SHANGHAI · TAIPEI · WASHINGTON, D.C.
Perkins Coie LLP

**UNCLASSIFIED**

Mr. Richard McNally
April 1, 2014
Page 2

Please note that, in an abundance of caution, I have marked the attached Transparency Report "SECRET" pending your classification review, but by that marking (and related handling), Twitter is not taking a position regarding the appropriateness of national security classification as to the whole or any part of the Transparency Report.

Thank you for taking the time for this review. We hope to receive the results of your review on or before April 22, 2014.

Sincerely,

Michael A. Sussmann

Enclosure

cc:    David O'Neil, Chief of Staff, Office of the Deputy Attorney General
        Tashina Gauhar, Deputy Assistant Attorney General, National Security Division
        Steven Hugie, Deputy Section Chief, National Security Division

**UNCLASSIFIED**

# Exhibit 4 is Twitter's draft Transparency Report, which will be submitted separately

# Exhibit 4

**Exhibit 5**



U.S. Department of Justice

Federal Bureau of Investigation

Washington, D C 20535-0001

September 9, 2014

Michael A. Sussmann
Perkins Coie, LLP
700 13th Street, N.W. – Suite 600
Washington, D.C. 20005

Dear Michael:

Thank you for your letter dated April 1, 2014, and for the opportunity to review Twitter's proposed transparency report. We thought our discussion with Twitter on August 21, 2014, was very productive and we want to thank you and Ms. Gadde and her team for meeting with us. We have carefully reviewed Twitter's proposed transparency report and have concluded that information contained in the report is classified and cannot be publicly released.

As you know, on January 27, 2014, the Department of Justice provided multiple frameworks for certain providers and others similarly situated to report aggregated data under the Foreign Intelligence Surveillance Act, as amended (FISA), and the National Security Letter (NSL) statutes in bands. Twitter's proposed transparency report seeks to publish data regarding any process it may have received under FISA in ways that would reveal classified details about the surveillance and that go beyond what the government has permitted other companies to report. More specifically, it would disclose specific numbers of orders received, including characterizing the numbers in fractions or percentages, and would break out particular types of process received. This is inconsistent with the January 27th framework and discloses properly classified information. The aggregation of FISA numbers, the requirement to report in bands, and the prohibition on breaking out the numbers by type of authority are important ways the framework mitigates the risks to sources and methods posed by disclosing FISA statistics.

As we have discussed, we believe there is significant room for Twitter to place the numbers in context, consistent with the terms of the January 27th framework. For example, we believe Twitter can explain that only an infinitesimally small percentage of its total number of active users was affected by highlighting that less than 250 accounts were subject to all combined national security legal process – including process pertaining to U.S. persons and non-U.S. persons as well as for content and non-content. That would allow Twitter to explain that

Mr. Michael A. Sussmann
September 9, 2014
Page 2

all national security legal process received from the United States affected, at maximum, only 0.0000919 percent (calculated by dividing 249 by 271 million) of Twitter's total users. In other words, Twitter is permitted to *qualify* its description of the total number of accounts affected by all national security legal process it has received but it cannot *quantify* that description with the specific detail that goes well beyond what is allowed under the January 27th framework and that discloses properly classified information.

We appreciate Twitter's willingness to work with us to ensure that Twitter's proposed report provides transparency to its customers and the public in a manner that also protects national security, consistent with applicable law.

Sincerely,

James A. Baker
General Counsel
Federal Bureau of Investigation