JOYCE R. BRANDA
Acting Assistant Attorney General
MELINDA HAAG
United States Attorney
ANTHONY J. COPPOLINO
Deputy Branch Director
STEVEN Y. BRESSLER
JULIA A. BERMAN
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 305-0167
Facsimile:  (202) 616-8470
Email: Steven.Bressler@usdoj.gov

Attorneys for Defendants the Attorney General, *et al.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

_____

| | |
|---|---|
| TWITTER, INC., ) | Case No. 14-cv-4480 |
| ) | |
|     Plaintiff, ) | |
| ) | **DEFENDANTS' NOTICE** |
|       v. ) | **OF MOTION AND PARTIAL** |
| ) | **MOTION TO DISMISS** |
| ERIC H. HOLDER, United States ) | |
|     Attorney General, *et al.*, ) | Date: March 10, 2015 |
| ) | Time: 2:00 p.m. |
|     Defendants. ) | Courtroom 1, Fourth Floor |
| _____) | Hon. Yvonne Gonzalez Rogers |

PLEASE TAKE NOTICE that, on March 10, 2015, at 2:00 p.m., before Judge

Yvonne Gonzalez Rogers, the defendants will move to dismiss several aspects of plaintiff's

Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and the

Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, and for the reasons more fully set forth in

defendants' accompany Memorandum of Points and Authorities.  Specifically, defendants will

seek dismissal of:  1) plaintiff's challenge to a January 2014 letter from the Deputy Attorney

General of the United States ("DAG Letter"); 2) plaintiff's Declaratory Judgment Act claims related to the Foreign Intelligence Surveillance Act ("FISA"); and 3) plaintiff's separation-of-powers challenge to the statutory standards of review of a National Security Letter.

Dated: January 9, 2015                                 Respectfully submitted,

                                                        JOYCE R. BRANDA
                                                        Acting Assistant Attorney General

                                                        MELINDA HAAG
                                                        United States Attorney

                                                        ANTHONY J. COPPOLINO
                                                        Deputy Branch Director

                                                        _____/s/ Steven Y. Bressler_____
                                                        STEVEN Y. BRESSLER
                                                        JULIA A. BERMAN
                                                        Attorneys
                                                        U.S. Department of Justice
                                                        Civil Division, Federal Programs Branch
                                                        P.O. Box 883
                                                        Washington, D.C. 20044
                                                        Steven.Bressler@usdoj.gov

                                                        *Attorneys for Defendants*

JOYCE R. BRANDA
Acting Assistant Attorney General
MELINDA HAAG
United States Attorney
ANTHONY J. COPPOLINO
Deputy Branch Director
STEVEN Y. BRESSLER
JULIA A. BERMAN
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 305-0167
Facsimile:  (202) 616-8470
Email: Steven.Bressler@usdoj.gov

Attorneys for Defendants the Attorney General, *et al.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

_____
)
TWITTER, INC.,                                          )          Case No. 14-cv-4480
                                                                )
      Plaintiff,                               )
                                                                )
          v.                                    )
                                                                )          **DEFENDANTS' PARTIAL**
ERIC H. HOLDER, United States            )          **MOTION TO DISMISS**
      Attorney General, *et al.*,            )
                                                                )
      Defendants.                            )
_____)

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................. *ii*

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ........................................................................................................... 3

A.     Statutory Background ........................................................................................ 3

     1.     FISA ........................................................................................................ 4

     2.     National Security Letters ..................................................................... 5

B.     Factual Background ........................................................................................... 6

STANDARD OF REVIEW ............................................................................................. 9

ARGUMENT ............................................................................................................... 10

I.     The Court Should Dismiss Plaintiff's Challenge to the DAG Letter
for Lack of Subject Matter Jurisdiction .......................................................... 10

     A.     The DAG Letter is Not "Final Agency Action" Subject to
Review Under the Administrative Procedure Act .................................. 10

     B.     Plaintiff Has Not Established Article III Standing for its
Challenge to the DAG Letter ................................................................. 12

II.     FISA Nondisclosure Obligations Arise Through FISC Orders or
Directives Issued Under a FISC-Approved Program, and Any Challenge
Thereto Should Be Considered by the FISC ..................................................... 13

III.     Plaintiff's Challenge to the National Security Letter Statutory Standard
of Review Fails as a Matter of Law .................................................................. 20

CONCLUSION ............................................................................................................ 24

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*AT & T Co. v. EEOC,*
   270 F.3d 973 (D.C. Cir. 2001) ................................................................. 12

*Acker v. EPA,*
   290 F.3d 892 (7th Cir. 2002) ................................................................. 12

*In re All Matters Submitted to the Foreign Intelligence Surveillance Court,*
   218 F. Supp. 2d 611 (F.I.S.C. 2002) ...................................................... 20

*Allen v. Wright,*
   468 U.S. 737 (1984) ............................................................................... 12

*Am. States Ins. Co. v. Kearns,*
   15 F.3d 142 (9th Cir. 1994) ................................................................... 15

*Ass'n of Am. Med. Colls. v. United States,*
   217 F.3d 70, 778 (9th Cir. 2000) .............................................................. 9

*Avila v. Willits Enviro. Remediation Trust,*
   633 F.3d 828 (9th Cir. 2011) ................................................................. 20

*Ariz. Cattle Growers' Ass'n v. United States Fish & Wildlife,*
   273 F.3d 1229 (9th Cir. 2001) ............................................................... 21

*Balistreri v. Pacifica Police Dep't,*
   901 F.2d 696 (9th Cir. 1990) ................................................................... 9

*Bd. of Trustees of the State Univ. of NY v. Fox,*
   492 U.S. 469 (1989) ............................................................................... 13

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................. 9

*Bennett v. Spear,*
   520 U.S. 154 (1997) ............................................................................... 11

*Center for Nat'l Security Studies v. Dep't of Justice,*
   331 F.3d 918 (D.C. Cir. 2003) ......................................................... 21, 22

*CIA v. Sims,*
   471 U.S. 159 (1985) ............................................................................... 21

*City of San Diego v. Whitman*,
 242 F.3d 1097 (9th Cir. 2001) .................................................................... 11

*Clausell v. Turner*,
 295 F. Supp. 533 (S.D.N.Y. 1969) ............................................................. 19

*Ctr. for Auto Safety v. NHTSA*,
 452 F.3d 798 (D.C. Cir. 2006) .................................................................... 12

*Delson Group, Inc. v. GSM Ass'n*,
 570 Fed. Appx. 690 (9th Cir. Apr. 21, 2014) ............................................. 16

*Dep't of Navy v. Egan*,
 484 U.S. 518 (1988) .................................................................................... 21

*Detroit Free Press v. Ashcroft*,
 303 F.3d 681 (6th Cir. 2002) ...................................................................... 22

*Doe v. Mukasey*,
 549 F.3d 861 (2d Cir. 2008) ................................................................... 6, 21

*Dow Chem. v. EPA*,
 832 F.2d 319 (5th Cir. 1997) ...................................................................... 12

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*,
 543 F.3d 586 (9th Cir.2008) ....................................................................... 11

*FCC v. Fox Television Stations, Inc.*,
 556 U.S. 502 (2009) .................................................................................... 23

*FDIC v. Aaronian*,
 93 F.3d 636 (9th Cir. 1996) ................................................................... 15, 16

*General Motors Corp. v. EPA*,
 363 F.3d 442 (D.C. Cir. 2004) .................................................................... 11

*Get Outdoors II, LLC v. City of San Diego*,
 506 F.3d 886 (9th Cir. 2007) ...................................................................... 23

*Gospel Missions of Am. v. City of L.A.*,
 328 F.3d 548 (9th Cir. 2003) ...................................................................... 23

*Gov't Employees Ins. Co. v. Dizol*,
 133 F.3d 1220 (9th Cir. 1998) .............................................................. 14, 15

*Hernandez v. United States*, No. CV 14-00146,
   2014 U.S. Dist. LEXIS 116921 (C.D. Cal. Aug. 20, 2014) ........................................ 16

*Ileto v. Glock, Inc.*,
   349 F.3d 1191 (9th Cir. 2003) ........................................................................... 9

*Indep. Equip. Dealers Ass'n v. EPA*,
   372 F.3d 420 (D.C. Cir. 2004) ........................................................................... 11

*Johnson v. Lucent Techs., Inc.*,
   653 F.3d 1000 (9th Cir. 2011) ........................................................................... 9

*Jones v. United States*,
   526 U.S. 227 (1999) ........................................................................................ 23

*Katzenbach v. McClung*,
   379 U.S. 294 (1964) ........................................................................................ 19

*Lapin v. Shulton, Inc.*,
   333 F.2d 169 (9th Cir. 1964) ................................................................... *passim*

*McGehee v. Casey*,
   718 F.2d 1137 (D.C. Cir. 1983) ......................................................................... 21

*Members of City Council of LA v. Taxpayers for Vincent*,
   466 U.S. 789 (1984) ........................................................................................ 14

*In re Motion for Release of Court Records*,
   526 F. Supp. 2d 484 (F.I.S.C. 2007) .................................................................. 19

*NRDC v. EPA*,
   966 F.2d 1292 (9th Cir. 1992) ...................................................................... 9, 15

*In re National Security Letter*,
   930 F. Supp. 2d 1064 (N.D. Cal. 2013), *appeal docketed*, No. 13-15957 (9th Cir.) ........... 22, 23

*Nat'l Ass'n of Home Builders v. Norton*,
   415 F.3d 8 (D.C. Cir. 2005) ........................................................................ 11, 12

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*,
   663 F.3d 470 (D.C .Cir. 2011) ........................................................................... 12

*New York v. Ferber*,
   484 U.S. 747 (1982) ........................................................................................ 14

*ONRC Action v. BLM*,
   150 F.3d 1132 (9th Cir. 1998) .................................................................... 9

*Ord v. United States*,
   8 Fed. Appx. 852 (9th Cir. May 8, 2001) ................................................. 16

*Oregon v. Legal Servs. Corp.*,
   552 F.3d 965 (9th Cir. 2009) ...................................................................... 9

*Principal Life Ins. Co. v. Robinson*,
   394 F.3d 665 (9th Cir. 2005) ............................................................... 10, 15

*Public Affairs Assocs. v. Rickover*,
   369 U.S. 111 (1962) ................................................................................... 15

*In re Sealed Case*,
   310 F.3d 717 (F.I.S.C.R. 2002) ................................................................ 20

*Snepp v. United States*,
   444 U.S. 507 (1980) ................................................................................... 13

*St. Clair v. City of Chico*,
   880 F.2d 199 (9th Cir. 1989) ...................................................................... 9

*Stillman v. CIA*,
   319 F.3d 546 (D.C. Cir. 2003) .................................................................. 13

*Torquay Corp. v. Radio Corp. of Am.*,
   2 F. Supp. 841 (S.D.N.Y. 1932) ............................................................... 16

*Treadaway v. Academy of Motion Picture Arts & Sciences*,
   783 F.2d 1418 (9th Cir. 1986) ............................................................. 15, 16

*Ukiah Valley Med. Ctr. v. FTC*,
   911 F.2d 261 (9th Cir. 1990) .................................................................... 10

*United States v. Diaz*,
   491 F.3d 1074 (9th Cir. 2007) .................................................................. 22

*United States v. Gorman*,
   314 F.3d 1105 (9th Cir. 2002) .................................................................. 22

*Wash. Envt'l Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) .................................................................. 12

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008) ................................................................. 14

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ........................................................ 9, 14, 15

*Zdorek v. V Secret Catalogue Inc., No. CV 01-4113*,
  2001 U.S. Dist. LEXIS 26120 (C.D. Cal. Aug. 1, 2001) ................ 16

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ...................................................... 9

**STATUTES**

2 U.S.C. § 1407(d) .................................................................. 21
5 U.S.C. § 704 ....................................................................... 10
5 U.S.C. § 706(2) .................................................................... 21
7 U.S.C. § 1508(3)(B)(iii)(II) .................................................... 21
12 U.S.C. § 203(b)(1) .............................................................. 21
12 U.S.C. § 1817(j)(5) ............................................................. 21
15 U.S.C. § 78l(k)(5) ............................................................... 21
18 U.S.C. § 2709 ............................................................... 5, 6, 23
18 U.S.C. § 3511 ............................................................... *passim*
28 U.S.C. § 2201(a) ............................................................ 9, 14
28 U.S.C. § 2254 .................................................................... 19
28 U.S.C. § 2255 .................................................................... 19
50 U.S.C. § 1803(h) ................................................................ 19
50 U.S.C. § 1805 .......................................................... 4, 16, 17
50 U.S.C. § 1824(c)(2) ............................................................ 16
50 U.S.C. § 1842(d)(2)(B) ..................................................... 5, 17
50 U.S.C. § 1861(c) .......................................................... 5, 18, 19
50 U.S.C. § 1881a ....................................................... 4, 17, 18, 19
50 U.S.C. § 1881(g)(1)(B) ........................................................ 17

**EXECUTIVE ORDERS**

Executive Order 13526 (Dec. 29, 2009) ..................................... 7, 8
Executive Order 12333 (Dec. 4, 1981) ......................................... 3

**LEGISLATIVE MATERIALS**

Exec. Order No. 12333 ............................................................... 3
Executive Order 13526 .............................................................. 7, 8

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(b)(1)...................................................................................... 9, 13

Fed. R. Civ. P. 12(b)(6).................................................................................. 9, 20, 24

**MISCELLANEOUS**

James B. Comey, Remarks at International Conference on Cyber Security,
  Fordham University (January 7, 2015), ..................................................................... 3

## PRELIMINARY STATEMENT

Plaintiff Twitter, Inc., an electronic communication service provider, seeks a declaratory judgment that alleged restrictions on its ability to publish information concerning national security legal process it has received from the United States Government are unlawful. Specifically, Twitter alleges that it seeks to publish a "Transparency Report" with certain data about legal process it has received from the Government, including pursuant to the Foreign Intelligence Surveillance Act ("FISA") and National Security Letters ("NSLs"). Twitter claims that certain alleged restrictions on publication imposed by statutory provisions, judicial orders, Government directives, and nondisclosure agreements violate the First Amendment. It also seeks to challenge under the Administrative Procedure Act ("APA") guidance provided in a January 2014 letter from the Deputy Attorney General of the United States ("DAG Letter") to certain electronic communication providers (not including Twitter) that described new and additional ways that providers can publicly disclose properly declassified data concerning requests for customer information without releasing classified information.

Contrary to plaintiff's allegations, the United States Government firmly supports a policy of appropriate transparency with respect to its intelligence activities. Indeed, the letter Twitter purports to challenge is based on a determination by the Director of National Intelligence ("DNI") to *declassify* significant information in order to *increase* transparency by *permitting* companies like Twitter to report to their users and to the public information about national security legal process in a manner that mitigates harm to national security. But the Government must balance the goal of providing information concerning national security investigations with the need to maintain the secrecy of information that could reveal sensitive investigative techniques and sources and methods of intelligence collection. The additional material that Twitter seeks to publish is information that the Government has judged is properly protected classified national security information, the disclosure of which would risk serious harm to national security. The law is clear that the First Amendment does not permit such publication, and any restrictions imposed by statutory authority or judicial order on the publication of

classified information are lawful under the First Amendment, both on their face and as they may have been applied to Twitter.

Before the Court considers the merits of plaintiff's constitutional claims, however, it should dismiss several aspects of Twitter's complaint on threshold grounds.

First as explained below, the Court should dismiss plaintiff's claim that the DAG letter violates the APA. The letter is permissive, advisory guidance; as such, it does not constitute "final agency action" reviewable under the APA, nor does it restrict plaintiff's speech in any way. Rather, any such restrictions stem from other authority, including statutory law such as FISA, applicable orders and directives issued through the Foreign Intelligence Surveillance Court ("FISC"), and from any applicable nondisclosure agreements. Likewise, for those reasons, the DAG Letter does not cause Twitter any injury-in-fact sufficient to confer standing, and any alleged injury would not be redressable through relief directed against the DAG Letter.

Second, under settled principles of comity, the Court should dismiss plaintiff's Declaratory Judgment Act claims related to the FISA and any orders and directives issued through the FISC. Specifically, the Court should dismiss plaintiff's claims that any FISC orders or FISA-related directives by their terms do not prevent the disclosure of aggregate data, and claims that restrictions on disclosing FISA-related material would violate the First Amendment.[1] Instead, this Court should defer to the FISC to determine the scope, meaning, and legality of its own orders, as well as of the statute that is given effect through those orders.

Third, the Court should dismiss plaintiff's separation-of-powers challenge to the statutory standards of review of an NSL. Twitter, raising an issue currently under consideration in the Ninth Circuit, alleges that the standard of review is too deferential, but its challenge fails as a matter of law. The statutory standard of review for NSL nondisclosure requirements is substantially the same as those that courts have developed in related contexts to review government restrictions on the disclosure of national security information. Deference to the

---

[1] Defendant's discussion of FISA orders or directives that plaintiff could have received, and that could require plaintiff not to disclose the existence of the orders or directives, is not intended to confirm or deny that plaintiff has, in fact, received any such national security legal process.

Executive Branch is entirely appropriate in this context. As courts have repeatedly recognized, the Executive Branch is best situated to assess the risks to national security posed by the disclosure of sensitive information. Accordingly, the separation-of-powers doctrine does not prevent Congress from prescribing the appropriate standard of review for assessing risks to national security, even where that standard is deferential. Thus, if the Court does not await a ruling by the Ninth Circuit, it should proceed to dismiss the claim because the NSL statutory standard of review complies with the Constitution.

For these reasons, as set forth further below, the Court should dismiss plaintiff's claims challenging the DAG Letter, FISA itself, nondisclosure requirements issued or supervised by the FISC, and the standard of review under the NSL statute.

## BACKGROUND

### A. Statutory Background

The President has charged the FBI with primary authority for conducting counterintelligence and counterterrorism investigations in the United States. *See* Exec. Order No. 12333 §§ 1.14(a), 3.4(a), 46 Fed. Reg. 59941 (Dec. 4, 1981). Today, the FBI is engaged in extensive investigations into threats, conspiracies, and attempts to perpetrate terrorist acts and foreign intelligence operations against the United States. These investigations are typically long-range, forward-looking, and preventive in nature in order to anticipate and disrupt clandestine intelligence activities or terrorist attacks on the United States before they occur.

The FBI's experience with counterintelligence and counterterrorism investigations has shown that electronic communications play a vital role in advancing terrorist and foreign intelligence activities and operations. Accordingly, pursuing and disrupting terrorist plots and foreign intelligence operations often require the FBI to seek information relating to the use of electronic communications, including from electronic communication service providers. *E.g.*, James B. Comey, Remarks at International Conference on Cyber Security, Fordham University (January 7, 2015), *available at* http://www.fbi.gov/news/speeches/addressing-the-cyber-security-threat.

Congress has authorized the FBI to collect such information with a variety of legal tools, including through various authorities under the FISA and pursuant to FISC supervision, as well as National Security Letters. Because the targets of national security investigations and others who seek to harm the United States will take countermeasures to avoid detection by the FBI and other members of the U.S. Intelligence Community, secrecy is often essential to effective counterterrorism and counterintelligence investigations. The Government therefore protects the confidentiality of information concerning national security legal process, including pursuant to statutory requirements and judicial orders.

### 1. FISA

Pursuant to multiple provisions of FISA, the FISC may issue orders that "direct" recipients to provide certain information "in a manner that will protect the secrecy of the acquisition." *E.g.*, 50 U.S.C. §§ 1805(c)(2)(B), 1881a(h)(1)(A). For example, Titles I and VII of FISA provide that FISA orders "shall direct," and FISA directives issued by the Attorney General and Director of National Intelligence ("DNI") after FISC approval of an underlying certification "may direct," recipients to provide the Government with "all information, facilities, or assistance necessary to accomplish the acquisition in a manner that will protect the secrecy of the acquisition." 50 U.S.C. § 1881a(h)(1)(A) (Title VII); *see also* 50 U.S.C. § 1805(c)(2)(B) (similar language for Title I). Additionally, the orders "shall direct" and the directives "may direct" that recipients "maintain under security procedures approved by the Attorney General and the DNI any records concerning the acquisition or the aid furnished" that such electronic communication service provider maintains. 50 U.S.C. § 1881a(h)(1)(B) (Title VII); *see also* 50 U.S.C. § 1805(c)(2)(C) (similar language for Title I). Consistent with the Executive Branch's authority to control classified information, these provisions explicitly provide for Executive Branch approval of the companies' procedures for maintaining all records associated with FISA surveillance.

Other FISA titles that provide search or surveillance authorities also provide for secrecy under those authorities. *See* 50 U.S.C. § 1824(c)(2)(B)-(C) (requiring Title III orders to require the recipient to assist in the physical search "in such a manner as will protect its secrecy" and to

provide that "any records concerning the search or the aid furnished" that the recipient retains be maintained under appropriate security procedures); 50 U.S.C. § 1842(d)(2)(B) (requiring Title IV orders to direct that recipients "furnish any information, facilities, or technical assistance necessary to accomplish the installation and operation of the pen register or trap and trace device in such a manner as will protect its secrecy," and to provide that "any records concerning the pen register or trap and trace device or the aid furnished" that the recipient retains shall be maintained under appropriate security procedures); 50 U.S.C. § 1861(d)(1) (providing that "[n]o person shall disclose to any other person that the [FBI] has sought or obtained tangible things pursuant to an order under" Title V of FISA).

Accordingly, to the extent that plaintiff has received process pursuant to Titles I and VII of FISA, the Title VII directives would contain the statutorily permitted nondisclosure provisions, while the Title I orders would contain nondisclosure requirements that track the statutory provision.[2] Likewise, Title III, IV, or V orders would be accompanied by the statutory requirements described above.[3]

### 2. National Security Letters

In 1986, Congress enacted 18 U.S.C. § 2709 to assist the FBI in obtaining information for national security investigations. Section 2709 empowers the FBI to issue an NSL, a type of administrative subpoena. Subsections (a) and (b) of Section 2709 authorize the FBI to request "subscriber information" and "toll billing records information," or "electronic communication transactional records," from wire or electronic communication service providers. In order to issue an NSL, the Director of the FBI, or a senior-level designee, must certify that the

---

[2] Title I orders typically contain language such as: "This order and warrant is sealed and the specified person and its agents and employees shall not disclose to the targets or to any other person the existence of the order and warrant or this investigation or the fact of any of the activities authorized herein or the means used to accomplish them, except as otherwise may be required by legal process and then only after prior notification to the Attorney General." Of course, disclosing the number of Title I orders received would violate such a provision as it would "disclose . . . the existence" of each of the orders.

[3] Electronic communications service providers that receive legal process under FISA typically receive such process through employees who have executed nondisclosure agreements.

information sought is "relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities." *Id.* § 2709(b)(1)-(2).

The secrecy necessary to successful national security investigations can be compromised if a wire or electronic communication service provider discloses that it has received or provided information pursuant to an NSL. To avoid that result, Congress has enabled restrictions on disclosures by NSL recipients pursuant to 18 U.S.C. § 2709(c). A nondisclosure requirement must be based on a case-by-case determination of need by the FBI and thus may be issued only if the Director of the FBI or another designated senior FBI official certifies that "otherwise there may result a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person." *Id.* § 2709(c)(1). If such a certification is made, the NSL itself notifies the recipient of the nondisclosure obligation. *Id.* § 2709(c)(2). An NSL recipient may petition a district court "for an order modifying or setting aside a nondisclosure requirement imposed in connection with" the NSL. 18 U.S.C. § 3511(b)(1). If the petition is filed more than a year after the NSL was issued, the FBI or Department of Justice must either re-certify the need for nondisclosure or terminate the nondisclosure requirement. *Id.* § 3511(b)(3). A district court "may modify or set aside" the nondisclosure requirement if the court finds "no reason to believe" that disclosure may cause any of the statutorily enumerated harms. *Id.* § 3511(b)(2) & (3). The U.S. Court of Appeals for the Second Circuit has interpreted this provision to mean a court may modify or set aside a nondisclosure requirement where it is not supported by "good reason." *Doe v. Mukasey*, 549 F.3d 861, 883 (2d Cir. 2008).

**B. Factual Background**

As set forth above, the existence of a FISA order or directive imposing obligations on a particular electronic communication service provider may be subject to nondisclosure or sealing obligations and, moreover, is classified national security information. Likewise, the existence of a request for information by NSL is typically subject to a nondisclosure requirement pursuant to the NSL statute. *See* 18 U.S.C. § 2709(c).

On January 27, 2014, the Director of National Intelligence declassified certain aggregate data concerning national security legal process so that recipients of such process could reveal aggregate data, not with specific numbers but in ranges, about the orders and other process they had received.  *See* "Joint Statement by Director of National Intelligence James Clapper and Attorney General Eric Holder on New Reporting Methods for National Security Orders" (January 27, 2014) ("While this aggregate data was properly classified until today, the Office of the Director of National Intelligence, in consultation with other departments and agencies, has determined that the public interest in disclosing this information now outweighs the national security concerns that required its classification."), *available at* http://icontherecord.tumblr.com/post/74761658869/joint-statement-by-director-of-national.[4]

The Deputy Attorney General ("DAG") described that declassification, and the types of information that an electronic communication service provider can provide pursuant to that declassification, in a January 27, 2014 letter to the general counsels for five other companies. *See* January 27, 2014 Letter from DAG James M. Cole to General Counsels of Facebook, *et al.* ("DAG Letter"), Exhibit 1 to Compl.  *See also* Compl. ¶¶ 24-26 (plaintiff's allegations regarding the DAG Letter).  The Government also informed the FISC that

> [t]he Director of National Intelligence has declassified the aggregate data consistent with the terms of the attached letter from the Deputy Attorney General, in the exercise of the Director of National Intelligence's discretion pursuant to Executive Order 13526, § 3.1(c).  The Government will therefore treat such disclosures as no longer prohibited under any legal provision that would otherwise prohibit the disclosure of classified data, including data relating to FISA surveillance.

*See* Notice, Exhibit 2 to Compl. ("FISC Notice"), *also available at* http://www.justice.gov/iso/opa/resources/422201412716042240387.pdf.  *See also* DAG Letter at 1 (noting the letter was sent "in connection with the Notice we filed with the [FISC] today");

---

[4] The DNI has also, for the first time, publicly provided statistical information regarding the use of national security legal authorities including FISA and NSLs, and will continue to do so annually.  *See* "Annual Statistics for Calendar Year 2013 Regarding Use of Certain National Security Legal Authorities," *available at* http://icontherecord.tumblr.com/transparency/odni_transparencyreport_cy2013.

Exec. Ord. 13526, § 3.1(d) (providing for discretionary declassification by the Executive Branch in extraordinary circumstances in the public interest).

The Notice also stated the Government's view that "the terms outlined in the Deputy Attorney General's letter define the limits of permissible reporting for the parties and other similarly situated companies." *See* FISC Notice. By its terms, however, the DAG Letter is permissive, not restrictive. *See* DAG Letter. It does not purport to classify any previously unclassified information, but rather provides guidance for reporting aggregate data regarding national security legal process received by a particular company consistent with a declassification decision issued by the DNI the same day under Executive Order 13526. The letter and FISC notice informed the parties that the Government considered reporting the data, as declassified, not to violate FISC orders and nondisclosure provisions. Any affirmative non-disclosure obligations arise not from the letter but from the orders and authorities discussed above.

The plaintiff in this case, Twitter, Inc., sought review of a draft "Transparency Report" containing specific details regarding any national security legal process received by plaintiff during, *inter alia*, the second half of 2013. *See* Compl. ¶ 39 (characterizing draft Report); ECF No. 21-1 (unclassified, redacted version of draft Report). By letter dated September 9, 2014, following further discussions between defendants and plaintiff, the FBI's General Counsel informed counsel for plaintiff that the draft Report contains information that is properly classified and, therefore, cannot lawfully be publicly disclosed. *See* September 9, 2014 Letter from James A. Baker to counsel for plaintiff, Exhibit 3 to Compl. ("FBI Letter"); *see also* Compl. ¶ 40 (plaintiff's allegations characterizing the letter).

The FBI Letter notes that the law does not permit plaintiff to reveal "specific detail that goes well beyond what is allowed under the January 27th framework [*i.e.*, the declassification described in the DAG Letter] and that discloses properly classified information." *Id.* Defendants have informed plaintiff which portions of the draft Report cannot lawfully be published and have provided plaintiff and the Court with a redacted, unclassified copy of the draft Report. *See* ECF No. 21-1.

In its Complaint, Twitter challenges any applicable nondisclosure requirements that stem from statutes, directives and judicial orders issued pursuant to FISA, and nondisclosure agreements.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) requires dismissal when the plaintiff fails to meet its burden of establishing subject-matter jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). Rule 12(b)(1) dismissal is proper when the plaintiff fails to establish the elements of standing, *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009), and, in a suit purportedly brought under the Administrative Procedure Act, when it fails to identify a "final agency action" under the terms of that Act. *ONRC Action v. BLM*, 150 F.3d 1132, 1135 (9th Cir. 1998). The Court may consider evidence outside the pleadings and resolve factual disputes, if necessary, to determine whether jurisdiction is present. *See Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

The Court should grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if a plaintiff fails to plead enough facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A Rule 12(b)(6) motion thus tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).

Plaintiff brings its FISA-related claims under the Declaratory Judgment Act, and a district court may dismiss claims pursuant to that Act based on prudential considerations such as comity with other courts. *See* 28 U.S.C. § 2201(a); *accord e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (recognizing discretionary nature of declaratory relief); *NRDC v. EPA*, 966 F.2d 1292, 1299 (9th Cir. 1992) (same). That is because "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields

to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288.  In particular, a court should decline to exercise its jurisdiction based on considerations of comity and orderly judicial administration, where, as here, a plaintiff is seeking review of the orders of another court of competent jurisdiction.  *See, e.g., Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005) (highlighting comity and judicial administration as factors informing a court's discretion); *Lapin v. Shulton, Inc.*, 333 F.2d 169, 172 (9th Cir. 1964) (holding these considerations should lead the non-rendering court to decline jurisdiction over another court's orders).

## ARGUMENT

### I.      The Court Should Dismiss Plaintiff's Challenge to the DAG Letter for Lack of Subject Matter Jurisdiction.

Plaintiff's APA claim against the DAG Letter fails because the DAG Letter is not subject to APA challenge, and because plaintiff has failed to establish its standing to challenge the letter in any event.

### A.  The DAG Letter is Not "Final Agency Action" Subject to Review Under the Administrative Procedure Act.

The APA permits judicial review of "final agency action" for which there is "no other adequate remedy in a court."  5 U.S.C. § 704.  Absent these elements, the Court lacks subject matter jurisdiction over an APA claim.  *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 163-64 (9th Cir. 1990).  If an agency action is subject to review, a court may "set aside agency actions" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706.

Plaintiff, in challenging the Deputy Attorney General's January 27, 2014 letter, alleges that letter is "final agency action not in accordance with law" with respect to plaintiff.  Compl. ¶ 44.  Plaintiff also argues that the letter's "imposition . . . on Twitter" thus violates various provisions of law.  *Id.*  The DAG Letter is not "final agency action" subject to challenge under the APA, however.  Moreover, it has not been "imposed" on Twitter; rather, any obligations of plaintiff are to avoid disclosing information that is properly classified, prohibited from disclosure by a FISA order or directive, and/or subject to lawful nondisclosure requirements.  Such

obligations stem from other authority including Orders of the FISC, FISA directives, and statutes. They do not stem from the DAG Letter, and plaintiff cannot establish subject matter jurisdiction over its purported claim against that letter in this Court.

To qualify as "final" under the APA, an action must mark the "consummation" of an agency decision-making process, and must be one by which "rights or obligations have been determined" or from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Agency actions that have no effect on a party's rights or obligations are not reviewable final actions. *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 593-94 (9th Cir. 2008) (action not cognizable under APA where "rights and obligations remain unchanged."); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005) ("[I]f the practical effect of the agency action is not a certain change in the legal obligations of a party, the action is non-final for the purpose of judicial review.").

The DAG Letter is not final agency action as to plaintiff or otherwise. Plaintiff's "rights or obligations" were not determined, and "legal consequences" do not flow, from the DAG's letter. *Bennett*, 520 U.S. 177-78. As noted, those obligations stem from statutes, FISC orders, FISA directives, and nondisclosure agreements. Moreover, the DAG Letter does not purport to restrain plaintiff's behavior in any way. Rather, as noted, it provides guidelines as to *permissible* disclosures that will not reveal classified information, consistent with the DNI's declassification decision. The DAG Letter does not instruct plaintiff to take or refrain from any particular action, and it does not threaten any enforcement proceeding. Therefore, it neither imposes new rights or obligations on plaintiff, nor results in new legal consequences for plaintiff.

In circumstances like these, courts have consistently held that advisory statements by an agency interpreting other, underlying sources of authority are not final agency action subject to APA challenge. *See City of San Diego v. Whitman*, 242 F.3d 1097, 1101-02 (9th Cir. 2001) (letter indicating that a particular statute would apply to a city's application to renew its permit was not a final action); *Independent Equipment Dealers Ass'n v. EPA*, 372 F.3d 420, 426-28 (D.C. Cir. 2004) (letter providing EPA's interpretation of emissions regulations is not final action); *General Motors Corp. v. EPA*, 363 F.3d 442, 449 (D.C. Cir. 2004) (letter stating that

used paint solvents are hazardous waste is not final action); *Dow Chem. v. EPA*, 832 F.2d 319, 323-25 (5th Cir. 1987) (letter attaching EPA's interpretation of a regulation is not final action).

Moreover, there is no final action where a document only "impose[s] upon [a party] the already-existing burden of complying with" applicable law, such as a statute or implementing regulations. *Acker v. EPA*, 290 F.3d 892, 894 (7th Cir. 2002); *see Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (Roberts, J.) (no final action where "'an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party'") (quoting *AT&T Co. v. EEOC*, 270 F.3d 973, 975 (D.C. Cir. 2001)). The DAG Letter does not even go that far – as noted, it is a permissive document, clarifying what aggregate data disclosures may be made without revealing classified information. *See Ctr. for Auto Safety v. NHTSA*, 452 F.3d 798, 806-08 (D.C. Cir. 2006) (holding agency guidance letters not to be final agency action based on factors including the permissive language of the document, the agency's "own characterization of the action," and the lack of publication in the Federal Register or Code of Federal Regulations); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 14, 16 (D.C. Cir. 2005) (holding that there was no final agency action where the language of challenged Protocols was permissive and "the scope of a [regulated party's] liability . . . remains exactly as it was before the Protocols' publication").

### B. Plaintiff Has Not Established Article III Standing for its Challenge to the DAG Letter.

Because the DAG Letter is permissive guidance that informs companies what has been declassified without altering the "already-existing burden of complying with" applicable law, *Acker*, 290 F.3d at 894, Twitter has also failed to sufficiently allege Article III standing for its APA claim against that letter. Plaintiff's alleged injury is not fairly traceable to the DAG Letter or redressable by any relief against the DAG Letter. *Allen v. Wright*, 468 U.S. 737, 754 n.19, 757 (1984); *Wash. Envt'l Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013); *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 663 F.3d 470, 473-74 (D.C .Cir. 2011). If the DAG Letter were somehow "invalidated" by a court, the result would be only that plaintiff and other companies would lack guidance as to what types of information the Government has

declassified. The scope of the DNI's declassification decision (set forth in the DAG Letter), and more specifically the extent to which information *remains* classified, along with relevant statutory provisions, FISA orders and directives, would still prohibit the disclosures.

A declaratory judgment directed at the DAG Letter would therefore not redress any injury allegedly suffered by plaintiff because it would not alter the fact that plaintiff cannot lawfully disclose properly classified information. *See, e.g., Stillman v. CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003) (in prepublication review case, holding there is no First Amendment right to publish properly classified information) (citing *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980)). Accordingly, while a plaintiff may challenge the application of relevant restrictions on the disclosure of classified information, including through FISA and orders of the FISC, the plaintiff here lacks standing to challenge the DAG Letter under the APA. Indeed, plaintiff alleges, upon information and belief, that what it characterizes as the "restrictions of the DAG Letter" are based on those other authorities. *See* Compl. ¶ 45. The Court should therefore dismiss plaintiff's APA claim pursuant to Fed. R. Civ. P 12(b)(1).

## II. FISA Nondisclosure Obligations Arise Through FISC Orders or Directives Issued Under a FISC-Approved Program, and Any Challenge Thereto Should Be Considered by the FISC.

It is a settled principle of comity and orderly judicial administration that a challenge to an order of a coordinate court should be heard by that court – especially where, as here, there is a court of specialized jurisdiction and competence. Here, plaintiff seeks to challenge any applicable orders issued under authority of the FISA, as well as provisions of the FISA itself, both of which should be subject to review under the FISC's specialized jurisdiction. Specifically, plaintiff asks this Court to determine that "[t]he FISA statute . . . and other nondisclosure authorities do not prohibit providers like Twitter from disclosing aggregate information about the number of FISA orders they receive." Compl. ¶ 49. Plaintiff further purports to challenge "FISA secrecy provisions" and "requirements in FISA" as unconstitutional both facially and as-applied, *see* Compl. ¶ 18 & Prayer for Relief A(vi) & A(vii).[5] But, as

---

[5] Consistent with the Supreme Court's instructions that a court must focus on the application of a statute before considering a facial challenge, *see Bd. of Trustees of the State Univ. of NY v.*

1    detailed below, with one exception, FISA's statutory provisions do not operate directly on the

2    recipients of FISA legal process. Instead, recipients of FISA legal process are subject to

3    nondisclosure obligations because of orders issued by the FISC or through directives issued

4    pursuant to a program approved by the FISC and subject to FISC oversight. Thus, a challenge to

5    "FISA secrecy provisions" amounts to a challenge to FISC orders and to directives issued

6    pursuant to a FISC-approved program. This Court should decline to exercise its jurisdiction over

7    such claims, because they should properly be brought before the FISC.

8        Plaintiff brings its claims under the Declaratory Judgment Act, *see* Compl. ¶¶ 1, 12, and

9    as discussed above, "[t]he Declaratory Judgment Act embraces both constitutional and prudential

10    concerns." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998). "If [a] suit

11    passes constitutional and statutory muster, the district court must also be satisfied that

12    entertaining the action is appropriate." *Id.* at 1223. The Supreme Court has explained that, "[i]n

13    the declaratory judgment context, the normal principle that federal courts should adjudicate

14    claims within their jurisdiction yields to considerations of practicality and wise judicial

15    administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

16        Thus, a district court has discretion to decline to exercise jurisdiction over Declaratory

17    Judgment Act claims based on prudential considerations. *See* 28 U.S.C. § 2201(a). This

18

---

19    *Fox*, 492 U.S. 469, 485 (1989), the application of the challenged provisions should be

20    adjudicated by the FISC before the facial constitutional challenge is considered. Furthermore,
even if a court were to reach plaintiff's facial challenge to provisions of FISA, it would be

21    necessary to examine how the challenged provisions operate in practice under the supervision of
the FISC. Plaintiff appears to allege overbreadth – that "the statute seeks to prohibit such a

22    broad range of protected conduct that it is unconstitutionally 'overbroad.'" *Members of City
Council of LA v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984). To succeed in such a

23    challenge, plaintiff would need to establish that the challenged provisions "will have [a] different
impact on any third parties' interests in free speech than [they have] on" the plaintiff. *Id.* at 801.

24    Moreover, plaintiff would need to establish that "a 'substantial number' of [the FISA secrecy
provisions'] applications are unconstitutional, 'judged in relation to the [provisions'] plainly

25    legitimate sweep.'" *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 n.6

26    (2008) (quoting *New York v. Ferber*, 484 U.S. 747, 769-71 (1982) (internal citations, quotations
omitted)). Thus, even the instant facial challenge to requirements of the FISA should be heard in

27    the FISC because the adjudication of that challenge would turn on an interpretation of the scope
of nondisclosure provisions in any FISC orders or directives issued pursuant to a FISC-approved

28    program that may be at issue.

---

determination is discretionary because "the Declaratory Judgment Act is deliberately cast in terms of permissive, rather than mandatory, authority." *Dizol*, 133 F.3d at 1223 (internal quotation omitted). "The Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'" *Id.* (quoting *Public Affairs Assocs. v. Rickover*, 369 U.S. 111, 112 (1962)); *accord, e.g.*, *Wilton*, 515 U.S. 277 (recognizing discretionary nature of declaratory relief); *NRDC v. EPA*, 966 F.2d 1292, 1299 (9th Cir. 1992) (same). The Supreme Court explained in *Wilton* that "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment. . . ." 515 U.S. at 288. In doing so, "the district court must balance concerns of judicial administration, comity, and fairness to the litigants." *Principal Life Ins. Co. v. Robinson*, 394 F.3d at 672 (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994)) (internal quotations omitted).

Here, the Court should exercise its discretion to decline jurisdiction over plaintiff's FISA-based claims. While either forum would be equally fair to the litigants, considerations of comity and orderly judicial administration weigh in favor of dismissing those claims and requiring plaintiff to bring its challenge to the constitutionality of any orders or directives that may have been issued through the FISC's legal process before the FISC itself. Proceeding in this manner would be consistent with that statutory framework established by Congress and would provide the litigants the benefit of the FISC's expertise as a court of specialized jurisdiction.

Actions challenging the orders of another court are "disfavored." *FDIC v. Aaronian*, 93 F.3d 636, 639 (9th Cir. 1996). Indeed, the Court of Appeals has instructed that "considerations of comity and orderly administration of justice demand that the nonrendering court should decline jurisdiction of such an action and remand the parties for their relief to the rendering court.'" *Lapin*, 333 F.2d at 172; *see also Treadaway v. Academy of Motion Picture Arts & Sciences*, 783 F.2d 1418, 1422 (9th Cir. 1986) ("When a court entertains an independent action for relief from the final order of another court, it interferes with and usurps the power of the rendering court just as much as it would if it were reviewing that court's equitable decree."). Thus, in *Lapin*, the Court of Appeals affirmed the California district court's refusal to hear a challenge to an injunction issued by a district court in Minnesota. *See* 333 F.2d at 169. The

Court of Appeals concluded that "sound reasons of policy support the proposition that relief should be sought from the issuing court . . . . so long as it is apparent that a remedy is available there," *id.* at 172, and emphasized its agreement that "'it is clear, as a matter of comity and of the orderly administration of justice, that [a] court should refuse to exercise its jurisdiction to interfere with the operation of a decree of another federal court'" *id.* (quoting *Torquay Corp. v. Radio Corp. of Am.*, 2 F. Supp. 841, 844 (S.D.N.Y. 1932)).[6]  *See also Delson Group, Inc. v. GSM Ass'n*, 570 Fed. Appx. 690 (9th Cir. Apr. 21, 2014) (relying on *Aaronian*, *Treadaway*, & *Lapin*; upholding California district court's dismissal of a challenge to the judgment of a Georgia district court).

The same principles would apply here to any challenge to the alleged application of FISA secrecy obligations.  As noted above, although the Complaint refers to "FISA secrecy provisions," and "requirements in FISA," *see* Compl. ¶ 18 & Prayer for Relief A(vi) & A(vii), it is most often the FISC itself – or government directives issued through programs approved by the FISC – that impose nondisclosure obligations on recipients of legal process.  FISA establishes the contours of such orders and directives, and it is primarily through such orders or directives that plaintiff may be bound to protect the secrecy of surveillance conducted pursuant to FISA authority.

For example, the section of FISA that plaintiff highlights in the Complaint, *see* Compl. ¶ 18 (quoting Section 1805(c)(2)(B)), addresses electronic surveillance orders issued under Title I.  That provision, in Section 1805(a), enumerates the findings a FISC judge must make before issuing such an order, while Section 1805(c) lists "specifications and directions" for such an

---

[6] *See also, e.g.*, *Ord v. United States*, 8 Fed. Appx. 852, 854 (9th Cir. May 8, 2001) (affirming the California district court's refusal to hear a challenge to a District of Columbia district court's order, and its holding that "if Ord wants to take the D.C. court's order to task, he should seek relief in the D.C. court.  He may not upset the principles of judicial comity, fairness and efficiency that underlie the basic rule against horizontal appeals."); *Hernandez v. United States*, No. CV 14-00146, 2014 U.S. Dist. LEXIS 116921, at *5–7 (C.D. Cal. Aug. 20, 2014) (declining jurisdiction, as a matter of comity, over a challenge to a Texas district court's order); *Zdorek v. V Secret Catalogue Inc.*, No. CV 01-4113, 2001 U.S. Dist. LEXIS 26120, at *17-*18 (C.D. Cal. Aug. 1, 2001) (declining jurisdiction, as a matter of comity, over a challenge to an Ohio court's order).

order.  As part of that list, Section 1805(c)(2) states that "[a]n order approving an electronic surveillance under this section shall direct":

> that, upon the request of the applicant, a specified communication or other common carrier . . . furnish the applicant forthwith all information, facilities, or technical assistance necessary to accomplish the electronic surveillance in such a manner as will protect its secrecy.

50 U.S.C. § 1805(c)(2)(B).  Thus, if the nondisclosure obligations described by this section apply to plaintiff, they apply through an order that would have been issued to the plaintiff by the FISC.

FISA Title IV also requires orders authorizing pen registers and trap and trace devices – like orders issued under Title I – to incorporate requirements that the recipients of such orders "furnish any information, facilities, or technical assistance necessary to accomplish the installation and operation of the pen register or trap and trace device in such a manner as will protect its secrecy."  50 U.S.C. § 1842(d)(2)(B)(i).  Such orders must also require that recipients "not disclose the existence of the investigation or of the pen register or trap and trace device to any person unless or until ordered by the court."  50 U.S.C. §1842(d)(2)(B)(ii).  As with Title I, these nondisclosure obligations, to the extent they are applicable in this case, would also be imposed by the FISC orders, rather than by the statute directly.

FISA Title VII – under which the Government may acquire communications of non-U.S. persons located abroad – likewise does not impose a nondisclosure requirement directly on the telecommunications providers from which such communications are acquired.  *See* 50 U.S.C. § 1881a.  Under Section 702's framework, the Attorney General and the DNI may submit to the FISC a certification that the Government's proposed procedures fulfill certain enumerated statutory requirements.  *See* 50 U.S.C. §1881a(g) & (i).  If the FISC approves that certification,[7] the Attorney General and DNI may authorize jointly, for up to one year, the "targeting of persons reasonably believed to be located outside the United States to acquire foreign intelligence information," *id.* at §1881a(a), and "may direct . . . an electronic communication service provider

---

[7] If the Attorney General and DNI determine that exigent circumstances exist, they may authorize collection prior to the FISC's certification of approval; that authorization must be submitted to the FISC for its approval within seven days.  *See* 50 U.S.C. §1881(g)(1)(B).

to" facilitate such acquisition "in a manner that will protect the secrecy of the acquisition." *Id.* at §1881a(h)(1). Like the FISC orders discussed above, these directives, rather than the statute itself, impose the nondisclosure obligations on the providers that receive them. The FISC's review of these directives, if they are challenged or if the government moves to compel compliance, is integral to the statute's structure; indeed, the same section of FISA that introduces Section 702 directives sets forth the framework for the FISC's review. *See id.* at §1881a(h) ("Directives and judicial review of directives").

In Section 501 of FISA Title V (sometimes referred to as "Section 215"), which sets forth the procedures for obtaining "access to certain business records for foreign intelligence and international terrorism investigations," *see* 50 U.S.C. §1861, Congress chose to directly impose a nondisclosure obligation. Unlike the other provisions discussed above – where nondisclosure obligations are imposed through the content of the orders or directives – Title V imposes a nondisclosure requirement on the recipients of such orders. *See id.* at §1861(d). But this provision also implicates the FISC's expertise, and provides specific procedures for the FISC's expeditious review of its nondisclosure requirements where such review is requested by the recipient of an order. *See id.* at §1861(f). Moreover, such nondisclosure obligations do not arise unless and until the FISC issues an order requiring production, and notifying its recipient of, *inter alia*, the nondisclosure obligations imposed by Section 1861(d). *See id.* at §1861(c).

In sum, "FISA secrecy provisions" largely do not impose nondisclosure obligations through their text as the Complaint suggests. Rather, they operate through FISC orders and directives subject to the FISC's oversight. Accordingly, plaintiff's challenge to FISA nondisclosure obligations amounts to a challenge of any FISC orders and directives that plaintiff has received. A recipient of FISA legal process, in other words, is enjoined by the FISC (or barred by the government through a process supervised by the FISC) from disclosing information. And just as a party under an injunction in one court cannot normally challenge that injunction elsewhere, *see Lapin*, 333 F.2d at 172, this Court should not permit plaintiff to challenge legal obligations incurred in the FISC. Rather, "as a matter of comity and of the

orderly administration of justice," *id.*, plaintiff's challenge to orders issued by the FISC or

directives issued under a FISC-approved program should be brought before the FISC.

      This approach would be consistent with the framework established by Congress, which

created the FISC as a court of specialized jurisdiction to administer the provisions of FISA. *See*

50 U.S.C. § 1803. Indeed, for certain provisions, FISA addresses the particular circumstances

and proceedings under which such challenges may be brought. A party receiving a production

order under Title V's business records provision, for example, "may challenge the legality of that

order by filing a petition with" the FISC. 50 U.S.C. §1861(f)(2)(A)(i). Review of such

proceedings must be expeditious, and records must be maintained pursuant to special security

measures. 50 U.S.C. §1861(f)(2)(A)(i)-(ii), (f)(4). Likewise, a provider receiving directives

from the Government pursuant to section 702 may "file a petition to modify or set aside such

directive with the [FISC], which shall have jurisdiction to review such petition." 50 U.S.C.

§1881a(h)(4)(A). A judge on the FISC must conduct an initial review within five days and

render a ruling within thirty days. 50 U.S.C. §1881a(h)(4)(D)-(E). Moreover, the FISC, like any

other federal court, has "inherent authority . . . to determine or enforce compliance with" its

"order[s]" and "rule[s]," and with "procedure[s] approved by [the] court." 50 U.S.C. § 1803(h).

As part of this authority, the FISC can determine the scope of the obligations imposed by its

orders or by directives issued pursuant to FISC process, as well as the constitutionality of those

orders or directives. *See, e.g., In re Motion for Release of Court Records*, 526 F. Supp. 2d 484,

491–97 (F.I.S.C. 2007) (considering whether there is a First Amendment right of access to FISC

records).[8]

      Furthermore, requiring plaintiff to bring its FISA-based claims to the FISC would give

the parties the benefit of the FISC's expertise, both as to the interpretation of its own orders, and

---

[8] Courts in other contexts have noted that the existence of such alternative proceedings renders
deference to an alternative forum with competent jurisdiction particularly appropriate. *See
Katzenbach v. McClung*, 379 U.S. 294, 296 (1964) (Declaratory relief ordinarily "should not be
granted where a special statutory proceeding has been provided."); *see also*, *e.g.*, *Clausell v.
Turner*, 295 F. Supp. 533, 536-37 (S.D.N.Y. 1969) (a suit for declaratory relief cannot be used to
attack a criminal conviction; rather, the habeas procedures delineated in 28 U.S.C. §§ 2254, 2255
are specifically designed for that purpose).

as to the structure of FISA itself. As a general matter, the issuing court "is the best judge of its own orders." *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 836 (9th Cir. 2011). Moreover, as the FISC has observed, "FISA is a statute of unique character," and, "as a statute addressed entirely to specialists, it must . . . be read by judges with the minds of specialists." *In re All Matters Submitted to the Foreign Intelligence Surveillance Court*, 218 F. Supp. 2d 611, 615 (F.I.S.C. 2002), *abrogated on other grounds by In re Sealed Case* No. 02-001, 310 F.3d 717 (F.I.S.C.R. 2002). The FISC, along with the Foreign Intelligence Surveillance Court of Review, "is the arbiter of FISA's terms and requirements" and the members of that court develop "specialized knowledge" in the course of their service. *Id.* The FISC's expertise in the interpretation of both any orders it may have issued and the statutory scheme it administers presents an additional reason why this Court should decline jurisdiction over plaintiff's FISA-based claims.

### III. Plaintiff's Challenge to the National Security Letter Statutory Standard of Review Fails as a Matter of Law.

Plaintiff also challenges the constitutionality of the NSL statute, including the standard of review of an NSL nondisclosure requirement.[9] Those questions are now before the Ninth Circuit in cases argued in October 2014. *See* Appeal Nos. 13-16732, 13-16731, 13-15957 (9th Cir.). Because the outcome of those cases (which are discussed below) is likely to impact, if not control, the outcome of plaintiff's NSL-related claims in this case, judicial economy would be served by the Court's considering those claims after the Court of Appeals has ruled. Nonetheless, the Government is obligated to respond to plaintiff's Complaint and thus now moves to dismiss plaintiff's challenge to the NSL statutory standard of review pursuant to Fed. R. Civ. P. 12(b)(6).

A reviewing court may modify or set aside an NSL nondisclosure requirement "if it finds that there is no reason to believe that disclosure may" lead to an enumerated harm. 18 U.S.C. § 3511(b)(2). Plaintiff, challenging this provision under the separation-of-powers doctrine,

---

[9] Plaintiff's Complaint does not challenge or contain allegations regarding any particular NSL it may have received, but rather challenges restrictions on disclosure of aggregate data concerning such NSLs.

claims it "impermissibly requires the reviewing court to apply a level of deference to the government's nondisclosure decisions that conflicts with the constitutionally mandated level of review, which is strict scrutiny." Compl. ¶ 48. Plaintiff is mistaken, and the Second Circuit has held that this provision may be applied consistent with the Constitution. *See Doe*, 549 F.3d at 875-76.

Congress routinely and properly mandates deferential standards for judicial review of Executive Branch decisions. The most well-known example is the deferential "arbitrary and capricious" standard of review prescribed by the APA. *See* 5 U.S.C. § 706(2); *Ariz. Cattle Growers' Ass'n v. United States Fish & Wildlife,* 273 F.3d 1229, 1235-36 (9th Cir. 2001) ("The arbitrary and capricious test is a narrow scope of review. . . . The court is not empowered to substitute its judgment for that of the agency."). *See also*, *e.g.*, 2 U.S.C. § 1407(d); 7 U.S.C. § 1508(3)(B)(iii)(II); 12 U.S.C. §§ 203(b)(1), 1817(j)(5); 15 U.S.C. § 78*l*(k)(5). As long as the standard of review is not inconsistent with some substantive constitutional limitation, such as the First Amendment, Congress has plenary authority to decide what standard of judicial review should be employed. And the standard here is consistent with the First Amendment: the federal courts have consistently given deference to reasoned judgments by the Executive Branch regarding the potential harms to national security that may result from disclosures of classified (and even non-classified) information about counterintelligence and counterterrorism programs. *See*, *e.g.*, *Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988); *CIA* v. *Sims*, 471 U.S. 159, 179 (1985); *Center for Nat'l Security Studies v. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003); *McGehee v. Casey,* 718 F.2d 1137, 1147-49 (D.C. Cir. 1983).

Nor would the application of strict scrutiny (assuming, *arguendo*, that it applies) preclude judicial deference to executive assessments of national security harms. Indeed, a Court could apply strict scrutiny while complying with the NSL statute. That is what the U.S. Court of Appeals for the Second Circuit did when it applied strict scrutiny to the NSL statute (assuming without deciding that strict scrutiny was the appropriate level of review) and properly avoided any possible constitutional question by interpreting § 3511(b)(2) as requiring the Government "to persuade a district court that there is a good reason to believe that disclosure may risk one of the

enumerated harms, and that a district court, in order to maintain a nondisclosure order, must find that such a good reason exists." *Doe*, 549 F.3d at 875-76. This Court should follow the Second Circuit's reasonable reading of the statutory language, which gives effect to that language while eliminating constitutional concerns. *See, e.g., United States v. Diaz*, 491 F.3d 1074, 1077 (9th Cir. 2007) ("reason to believe," "reasonable belief," and "reasonable grounds for believing" bear the same meaning); *United States v. Gorman*, 314 F.3d 1105, 1111 n.4 (9th Cir. 2002) (same). *Accord Detroit Free Press v. Ashcroft*, 303 F.3d 681, 707 (6th Cir. 2002) (holding national security-related deportation rule was subject to strict scrutiny while deferring to Executive Branch judgments about the potential for public disclosures to harm national security: "we defer to [the government's] judgment. These agents are certainly in a better position [than the court] to understand the contours of the investigation and the intelligence capabilities of terrorist organizations.").[10]

In a decision now on appeal, another judge of this Court ruled that the "reason to believe" standard was not the "searching standard of review" required by the First Amendment, but provided no authority for that conclusion. *In re NSL*, 930 F. Supp. 2d 1064, 1077 (N.D. Cal. 2013) (Illston, J.), *appeal docketed*, No. 13-15957 (9th Cir.).[11] The *In re NSL* Court

---

[10] Indeed, it bears noting that adherence to a deferential standard of review like the one Congress prescribed in § 3511(b) does not compel courts to abdicate their institutional responsibilities under Article III:

> In so deferring, we do not abdicate the role of the judiciary. Rather, in undertaking a deferential review, we simply recognize the different roles underlying the constitutional separation of powers. It is within the role of the executive to acquire and exercise the expertise of protecting national security. It is not within the role of the court to second-guess executive judgments made in furtherance of that branch's proper role.

*Center for Nat'l Security Studies*, 331 F.3d at 932. The same reasoning applies here.

[11] Judge Illston subsequently found the statute to be lawfully applied and issued orders to enforce multiple NSLs issued to multiple electronic communications service providers. *See In re Matter of NSLs*, Order Denying Petition to Set Aside and Granting Cross-Petition to Enforce, No. 13cv1165-SI (N.D. Cal. August 12, 2013) (enforcing 2 NSLs), *appeal docketed*, No. 13-16732 (9th Cir.); *In re Matter of NSLs*, Order Denying Petition to Set Aside, Denying Motion to Stay, and Granting Cross-Petition to Enforce, No. 13mc80089-SI (N.D. Cal. August 12, 2013)

acknowledged that the Second Circuit's construction of the judicial review provision "might be less objectionable," 930 F. Supp. 2d at 1078, but nonetheless adopted a reading of the provision which, in its view, rendered the statute unconstitutional.[12] It did so by assuming that Congress had an unconstitutional intent in enacting the statute, namely "to circumscribe a court's ability to modify or set aside nondisclosure NSLs unless the essentially insurmountable standard 'no reason to believe' that a harm 'may' result is satisfied." *Id.* at 1077.

The Government respectfully submits that the *In re NSL* Court erred in starting with that premise. The doctrine of constitutional avoidance "assumes that Congress, no less than the Judicial Branch, seeks to act within constitutional bounds, and thereby diminishes the friction between the branches that judicial holdings of unconstitutionality might otherwise generate." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 565-66 (2009); *accord Jones v. United States*, 526 U.S. 227, 240 (1999) (courts assume that Congress legislates in light of constitutional limitations). This doctrine is particularly apt here because it would have been unreasonable for

---

(enforcing 2 NSLs), *appeal docketed*, No. 13-16731 (9th Cir.); *In re NSLs*, Order Denying Petition to Set Aside and Granting Cross-Petition to Enforce, No. 13mc80063-SI (N.D. Cal. May 28, 2013) (Amended Order for Public Release enforcing 17 NSLs); *In re NSLs*, Order, No. 13mc80063-SI (N.D. Cal. May 23, 2013) (enforcing 2 NSLs).

[12] The *In re NSL* Court also faulted § 3511(b)(2) (as did the Second Circuit in *Doe*) for making certifications by senior officials regarding certain potential harms "conclusive" in judicial proceedings in the absence of bad faith. 930 F. Supp. 2d at 1077. The *In re NSL* Court mischaracterized the statute, however, as making *any* FBI certification regarding any of the statutorily enumerated harms conclusive, and therefore assumed that the certifications at issue there were conclusive under the statute. *See id.* But, in fact, the statute provides that certifications for FBI-issued NSLs are conclusive *only* if made by "the Attorney General, Deputy Attorney General, an Assistant Attorney General, or the Director of the Federal Bureau of Investigation" and only if they state "that disclosure may endanger the national security of the United States or interfere with diplomatic relations." 18 U.S.C. § 3511(b)(2). Certifications by other Government officials, and certifications relating to other statutorily enumerated harms (such as "interference with a criminal, counterterrorism, or counterintelligence investigation," 18 U.S.C. § 2709(c)(1)), are not "conclusive" under the statute. There is no allegation that such a certification is at issue here, or even that there has ever been such a certification. Accordingly, the validity of this statutory provision is irrelevant to this case. Twitter does not appear to have challenged it by its Complaint and, in any event, would lack standing to do so. *See, e.g., Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 892 (9th Cir. 2007) (overbreadth standing requires that party challenging statute be subject to the specific statutory provision being challenged); *Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 554 (9th Cir. 2003) (same).

---

Congress to have proposed enforcing nondisclosure requirements in NSLs based on *any* reason – including an irrational or wholly unsupportable reason – and therefore the only reasonable reading of the statute is that it requires a "good" reason. *See Doe*, 549 F.3d at 875-76. The Second Circuit properly interpreted the NSL statute in light of both common sense and the assumption that Congress intends to legislate constitutionally. To the extent it does not await the Ninth Circuit's ruling on the NSL statute, this Court should follow the Second Circuit's reasoning and dismiss plaintiff's challenge to the NSL statutory standard of review pursuant to Fed. R. Civ. P. 12(b)(6).[13]

## CONCLUSION

For all of the foregoing reasons, the Court should grant this Motion and dismiss plaintiff's claims under Count I of its Complaint concerning FISA, legal process issued under FISA, the January 27, 2014 letter from the Deputy Attorney General, and 18 U.S.C. § 3511.

Dated: January 9, 2015

Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

MELINDA HAAG
United States Attorney

ANTHONY J. COPPOLINO
Deputy Branch Director

_____/s/ Steven Y. Bressler_____
STEVEN Y. BRESSLER
JULIA A. BERMAN
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch

*Attorneys for Defendants*

---

[13] Plaintiff also challenges the NSL statute and any applicable nondisclosure requirements as applied and on their face. *See* Compl. ¶¶ 46-47. Those claims do not implicate orders of the FISC, and the Government does not move to dismiss them at this time under Rule 12. Defendants would seek this Court's leave to move for summary judgment on those claims, as well as any others remaining after the Court adjudicates this Motion to Dismiss, at an appropriate time.