UNITED STATES DISTRICT COURT   **_ORIGINAL_**

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

| | | |
|---|---|---|
| TWITTER, INC., | ) | CASE MANAGEMENT CONFERENCE |
| | ) | |
| PLAINTIFF, | ) | PAGES 1 – 18 |
| | ) | |
| VS. | ) | NO. C 14-04480YGR |
| | ) | |
| ERIC H. HOLDER, JR., ET AL | ) | |
| | ) | |
| DEFENDANTS. | ) | OAKLAND, CALIFORNIA |
| | ) | MONDAY, JANUARY 26, 2015 |

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

| | |
|---|---|
| FOR PLAINTIFF: | PERKINS COIE |
| | 700 13TH STREET NW, SUITE 400 |
| | WASHINGTON, DC 20005-3960 |
| BY: | MICHAEL A. SUSSMANN, ATTORNEY AT LAW |
| | |
| | PERKINS COIE LLP |
| | 3150 PORTER DRIVE |
| | PALO ALTO, CALIFORNIA 94304-1212 |
| BY: | JAMES G. SNELL, ATTORNEY AT LAW |
| | |
| FOR DEFENDANTS: | U.S. DEPARTMENT OF JUSTICE |
| | CIVIL DIVISION, FEDERAL PROGRAMS BRANCH |
| | 20 MASSACHUSETTS AVENUE, NW |
| | WASHINGTON, D.C. 20044 |
| BY: | JULIA A. BERMAN, |
| | STEVEN Y. BRESSLER, ATTORNEYS AT LAW |
| | |
| REPORTED BY: | RAYNEE H. MERCADO, CSR NO. 8258 |

PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

```
 1   MONDAY, JANUARY 26, 2015                              2:12 P.M.
 2                        P R O C E E D I N G S
 3           THE CLERK:  CALLING CIVIL ACTION 14-4480, TWITTER
 4   VERSUS HOLDER.
 5       COUNSEL, PLEASE STATE YOUR APPEARANCES.
 6           MR. SUSSMANN:  GOOD AFTERNOON, YOUR HONOR.  MICHAEL
 7   SUSSMANN WITH PERKINS COIE REPRESENTING TWITTER.  AND WITH ME
 8   AT COUNSEL TABLE, CLOSEST TO YOU IS JIM SNELL, ALSO FROM MY
 9   FIRM; AND BEN LEE, WHO'S A VICE-PRESIDENT, DEPUTY GENERAL
10   COUNSEL AT TWITTER.
11           THE COURT:  OKAY.  THANK YOU.
12           MR. BRESSLER:  GOOD AFTERNOON, YOUR HONOR.  STEVE
13   BRESSLER WITH THE U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION,
14   ON BEHALF OF THE DEFENDANTS.  WITH ME AT COUNSEL TABLE IS MY
15   COLLEAGUE JULIE BERMAN, ALSO FROM THE DEPARTMENT OF JUSTICE.
16           THE COURT:  WELL, MR. BRESSLER, SHOULD I SAY WELCOME
17   BACK?
18           MR. BRESSLER:  SURE.  THANK YOU, YOUR HONOR.
19           THE COURT:  I CAN TELL YOU THE WEATHER'S APPARENTLY
20   MUCH NICER HERE THAN DC.
21           MR. BRESSLER:  SO I HEAR.  WELL, THAT'S USUALLY TRUE,
22   SO --
23           THE COURT:  OKAY.  WELL, I LEFT THIS ON CALENDAR
24   BECAUSE -- THE REST OF YOU CAN HAVE A SEAT -- BECAUSE THE
25   MOTION TO DISMISS IS NOT -- I MEAN, IT'S A PARTIAL MOTION TO
```

1    DISMISS.
2         WHAT I WAS TRYING TO FIGURE OUT -- AND I WILL LET YOU ALL
3    SPEAK TO THIS -- IS WHETHER OR NOT IT MAKES SENSE IN THIS
4    CASE, GIVEN THE ISSUES THAT ARE AT STAKE AND THE ISSUES THAT
5    ARE BEING LITIGATED, TO MOVE IN PARALLEL ON SOME OF THESE.
6         THAT IS, I UNDERSTAND THAT -- AND I'VE NOT -- I'VE NOT
7    READ THE MOTION, JUST YOUR STATEMENTS.  AND, OBVIOUSLY, THE
8    BRIEFING ON THE ISSUES IS NOT COMPLETE.  BUT WHAT I UNDERSTOOD
9    IS THAT THERE ARE VARIOUS ATTACKS BEING MADE ON THE
10   LIMITATIONS BEING PUT ON TWITTER TO, AS THEY SAY, ISSUE A
11   TRANSPARENCY REPORT.
12        AND THE MOTION TO DISMISS TAKES ISSUE WITH ONE OF THE --
13   OR AT LEAST A PORTION OF THE -- OF THE APPROACH, SOMETHING --
14   THE DAG LETTER IN PARTICULAR.
15             **MR. BRESSLER:**  YOUR HONOR, THE MOTION TO DISMISS --
16   WELL, I'LL LET MR. SUSSMANN CHARACTERIZE HIS OWN COMPLAINT,
17   BUT THE MOTION TO DISMISS CHALLENGES ALL OF THE COMPLAINT
18   EXCEPT FOR THE FACIAL AND AS-APPLIED CHALLENGES TO THE
19   NATIONAL SECURITY LETTER -- PORTION OF THE NATIONAL SECURITY
20   LETTER STATUTORY SCHEME TITLE 18 U.S. CODE 2709.  THAT'S THE
21   ONLY PART THAT WE DO NOT ADDRESS IN THE MOTION TO DISMISS.
22        SO THE MOTION TO DISMISS SEEKS TO DISMISS CLAIMS REGARDING
23   THE SO-CALLED DAG LETTER BUT ALSO ALL CLAIMS RELATED TO THE
24   FOREIGN INTELLIGENCE SURVEILLANCE ACT OR ANY ORDERS OR
25   DIRECTIVES ISSUED BY THE FISC OR OTHERWISE PURSUANT TO THAT

1 ACT.

2 SO OUR VIEW IS THAT THAT WOULD, I BELIEVE, TAKE CARE OF
3 EVERYTHING EXCEPT THE CHALLENGE TO SECTION 2709, WHICH, AS WE
4 NOTE IN I THINK A FOOTNOTE TOWARDS THE END OF OUR MOTION TO
5 DISMISS, WE WOULD INTEND, ONCE WE'VE SEEN HOW YOUR HONOR RULES
6 ON WHAT WE'VE MOVED ON SO FAR -- THE GOVERNMENT WOULD INTEND
7 TO SEEK LEAVE, PURSUANT TO YOUR HONOR'S PROCEDURES, TO MOVE
8 FOR SUMMARY JUDGMENT ON THOSE CLAIMS.

9 WE ALSO NOTED THAT CLOSELY RELATED QUESTIONS ABOUT THE
10 CONSTITUTIONALITY OF THAT STATUTE ARE CURRENTLY BEFORE THE
11 NINTH CIRCUIT IN CONSOLIDATED CASES THAT WERE ARGUED LAST
12 OCTOBER.

13     **THE COURT:** ON THE 2709?

14     **MR. BRESSLER:** YES.

15     **THE COURT:** ARE THERE OTHER CASES PENDING IN THIS
16 JURISDICTION OR OTHER JURISDICTIONS THAT ARE RAISING THE SAME
17 ISSUES AS TWITTER?

18 MR. SUSSMANN, DO YOU HAVE ANY IDEA?

19     **MR. SUSSMANN:** NOT THAT I KNOW OF, OTHER THAN THE
20 APPEAL BEFORE THE NINTH CIRCUIT ON THE NSL ISSUE.

21 AND, YOUR HONOR, OUR -- THE GOVERNMENT FILED THEIR MOTION
22 TO DISMISS. OUR RESPONSE IS DUE A WEEK FROM FRIDAY. IN OUR
23 RESPONSE, WE BELIEVE THERE ARE A NUMBER OF OTHER ISSUES THAT
24 THE GOVERNMENT HAS NOT CHALLENGED. OBVIOUSLY THAT AWAITS YOUR
25 REVIEW OF OUR POSITION, BUT WE THINK THERE'S -- THERE'S --

1  THERE ARE A FEW MORE THINGS REMAINING --
2      **THE COURT:** OKAY.
3      **MR. SUSSMANN:** -- THAT WERE NOT CHALLENGED.
4      **THE COURT:** OUTLINE THOSE FOR ME.  GO AHEAD.
5      **MR. SUSSMANN:** EXCUSE ME?
6      **THE COURT:** OUTLINE THEM FOR ME.
7      **MR. SUSSMANN:** SURE.  SO BEGIN WITH, THE GOVERNMENT
8  FRAMES OUR CASE AS WANTING TO PUBLISH A TRANSPARENCY REPORT,
9  AND THE -- THAT'S -- THAT'S A PART OF THE CASE BUT TO -- TO
10 TWITTER, THAT'S NOT ESSENTIAL TO THE CASE.
11     WE WERE -- WELL, SO THERE'S A LETTER FROM THE DEPUTY
12 ATTORNEY GENERAL FROM JANUARY OF 2014 THAT LAYS OUT PARTICULAR
13 OPTIONS THAT PROVIDERS CAN USE IN DISCLOSING NATIONAL SECURITY
14 LEGAL PROCESS IT HAS RECEIVED, IF ANY.  AND THAT LETTER WAS
15 ISSUED AS PART OF A SETTLEMENT OF LITIGATION WITH FIVE
16 INTERNET COMPANIES THAT DIDN'T INCLUDE TWITTER.
17     AND WHEN THAT --
18     **THE COURT:** THE DAG LETTER.
19     **MR. SUSSMANN:** THE DAG LETTER.
20     AND WHEN THE DAG LETTER WAS FILED AS A PART OF THE
21 SETTLEMENT IN THE FOREIGN INTELLIGENCE SURVEILLANCE COURT, THE
22 GOVERNMENT INCLUDED IN ITS NOTICE -- THE VERY LAST LINE SAID
23 THAT THE TERMS OF THIS LETTER APPLY TO, QUOTE, ALL SIMILARLY
24 SITUATED COMPANIES."
25     AND SO TWITTER COULD GUESS BUT SHOULDN'T -- SHOULDN'T HAVE

1   TO AS TO WHETHER OR NOT IT IS ONE OF THOSE.  AND IN APRIL
2   OF -- OF 2014, TWITTER SUBMITTED TO THE GOVERNMENT A DRAFT
3   TRANSPARENCY REPORT THAT DESCRIBED THE NATIONAL SECURITY LEGAL
4   PROCESS, IF IN ANY, THAT TWITTER HAD RECEIVED IN MANY
5   DIFFERENT WAYS, DESCRIPTIVELY AND NUMBERS AND PERCENTAGES AND
6   ALL SORTS OF WAYS, AND REQUESTED THE -- THE FBI IN THAT CASE
7   TO ADVISE THEM ON WHICH PORTIONS OF THE LETTER ARE PERMISSIBLE
8   TO RELEASE AND WHICH ARE NOT.
9       AND FIVE MONTHS LATER IN SEPTEMBER, TWITTER RECEIVED A
10  LETTER FROM THE FBI -- THESE ARE ALL EXHIBITS TO OUR
11  COMPLAINT -- RECEIVED A LETTER FROM THE FBI SAYING THAT IT
12  COULD NOT -- IT COULD NOT RESPOND AND ANSWER THE QUESTION FOR
13  TWITTER BUT IT SAID THAT THE LETTER DID CONTAIN CLASSIFIED
14  INFORMATION SOMEWHERE IN THERE AND THAT THE -- THE
15  TRANSPARENCY REPORT COULDN'T BE RELEASED BUT THE GOVERNMENT
16  WASN'T WILLING TO MAKE A REDACTION AND INFORM TWITTER AS TO
17  WHAT COULD OR COULDN'T BE -- COULD OR COULDN'T BE PUBLISHED.
18      AND THEN ABOUT A MONTH LATER, TWITTER -- TWITTER FILED ITS
19  COMPLAINT.
20      IN NOVEMBER -- ON NOVEMBER 17TH, THE GOVERNMENT FILED WITH
21  THE COURT A REDACTED VERSION OF THE TRANSPARENCY REPORT.  BUT
22  THIS ISN'T A CASE WHERE WE RECEIVED A REDACTED VERSION OF THE
23  REPORT AND THEN OUR -- SAID NO, WE WANT TO SAY ALL THESE
24  THINGS AND WE'RE CHALLENGING THAT.
25      WE CAME TO THE COURT IN A POSITION WHERE WE THOUGHT THAT

1  THE PROCESS WAS NOT -- WAS UNCONSTITUTIONAL AND THAT, FURTHER,
2  IN LIGHT OF OUR FIRST AMENDMENT CHALLENGE WAS IN THE CONTEXT
3  OF ALL OF THE SPEECH THAT THE GOVERNMENT HAS BEEN PUTTING OUT
4  SINCE THE EDWARD SNOWDEN DISCLOSURES DECLASSIFYING INFORMATION
5  AND MAKING OTHER STATEMENTS ABOUT PROVIDERS AND WHAT THEY DO
6  AND NOT PROVIDING PROVIDERS OR, IN THIS CASE, TWITTER TO
7  RESPOND TO THOSE ISSUES.
8      SO THAT'S THE CONTEXT FOR THE CASE.  AND IF -- FOR US, IT
9  ISN'T ABOUT JUST -- JUST A PARTICULAR PIECE OF PAPER WHICH WE
10 DIDN'T HAVE AT THE TIME THE COMPLAINT WAS FILED.
11     AND A COUPLE OF THE -- AND WE'RE STILL WORKING ON OUR
12 RESPONSE, BUT FOR SOME OF THE ISSUES THAT WERE NOT ADDRESSED
13 IN THE MOTION TO DISMISS, THE GOVERNMENT CHALLENGES OR OPPOSES
14 OUR APA CLAIM BY SAYING THAT THE DAG LETTER WASN'T FINAL
15 AGENCY ACTION.  BUT THEY DO NOT ARGUE THAT THE PROMULGATION OF
16 THE DAG LETTER SATISFIED THE -- SATISFIES THE APA.
17     THEY ASK THE COURT TO SEND AND -- AND MR. BRESSLER, I'M --
18 CERTAINLY WILL GIVE YOU AN OPPORTUNITY TO DO A BETTER JOB OF
19 STATING YOUR POSITIONS --
20     THEY ASK THE COURT TO SEND THOSE CONSTITUTIONAL ISSUES
21 RELATING TO FISA, FISA STATUTE, FISA COURT ORDERS TO THE
22 FOREIGN INTELLIGENCE SURVEILLANCE COURT BUT THEY DON'T ARGUE
23 THAT THE NON-DISCLOSURE PROVISIONS OF FISA ARE CONSTITUTIONAL.
24     AND THEN FINALLY, THEY ASK THAT THE COURT DISMISS THE --
25 TWITTER'S FACIAL CHALLENGE ON -- REGARDING NATIONAL SECURITY

1  LETTERS ON THE BASIS OF THE STANDARD OF REVIEW AND THE
2  STATUTE.  BUT THEY DO NOT ARGUE THAT THE NATIONAL SECURITY
3  NON-DISCLOSURE PROVISIONS ARE CONSTITUTIONALLY -- ARE
4  CONSTITUTIONAL FACIALLY OR AS APPLIED.
5          **THE COURT:**  HAS TWITTER RELEASED THE REDACTED VERSION
6  OF THE TRANSPARENCY REPORT?
7          **MR. SUSSMANN:**  I BELIEVE THAT IT HAS.
8     NO, YOUR HONOR, THEN IT HAS NOT.
9     BUT, YOUR HONOR, I BELIEVE IT'S ON THE -- I BELIEVE IT'S
10 ON THE PUBLIC DOCKET, THE COURT'S PUBLIC DOCKET.
11         **THE COURT:**  OKAY.
12    WELL, THAT'S HELPFUL IN TERMS OF OUTLINING THE ISSUES THAT
13 I'LL HAVE TO DEAL WITH.
14    AGAIN, OBVIOUSLY, I'VE NOT READ YOUR BRIEF, MR. BRESSLER.
15 I DON'T READ ANYTHING UNTIL IT'S ALL BRIEFED.  I USUALLY START
16 WITH THE REPLY, BUT ANYTHING TO SAY AT THIS POINT?
17         **MR. BRESSLER:**  I DON'T THINK I WOULD CHARACTERIZE
18 THINGS THE WAY THAT MR. SUSSMANN DID NECESSARILY.  THAT
19 PROBABLY COMES AS NO SURPRISE.  AND I COME HAVING NOT HEARD
20 FROM -- YOU KNOW, SINCE BRIEFING IS FAR FROM COMPLETE ON THAT
21 DIDN'T COME PREPARED TO HAVE OR DISCUSS THE MOTION TO DISMISS
22 IN FULL.
23    SO I WILL JUST, YOU KNOW, REITERATE THAT WE MOVED TO
24 DISMISS -- IN OUR VIEW, THE VAST MAJORITY OF THE COMPLAINT
25 EXCEPT CHALLENGE TO ONE STATUTE, WHICH WE WOULD INTEND TO MOVE

1 ON LATER FOR SUMMARY JUDGMENT WITH THE COURT'S LEAVE.

2 AND AGAIN, THAT VERY CLOSELY RELATED IS BEFORE THE NINTH
3 CIRCUIT.

4 AS FAR AS THE GENERAL CMC ISSUES, THE PARTIES HAVE AGREED
5 TO A LOT, HAVE NOT AGREED TO EVERYTHING. WE DID AGREE TO PUT
6 OFF ANY DISCOVERY UNTIL AFTER THE COURT RULES ON THE MOTION TO
7 DISMISS. WE DO NOT AGREE ON HOW THE CASE SHOULD PROCEED AS TO
8 DISCOVERY AND OTHERWISE AFTER THAT.

9 AND I WOULD JUST POINT OUT TO THE COURT THAT I THINK OUR
10 RESPECTIVE POSITIONS ARE LAID OUT IN PART FOUR OF THE CASE
11 MANAGEMENT CONFERENCE REPORT. I'M NOT SURE IT'S NECESSARY TO
12 GET INTO THEM UNTIL AFTER YOUR HONOR RULES ON THE MOTION TO
13 DISMISS.

14 **THE COURT:** WELL, I THINK THAT WE CAN GET INTO THEM
15 NOW OR WE CAN GET INTO THEM AT THE -- AT THE HEARING ON THE
16 MOTION TO DISMISS BECAUSE IT WOULD NOT BE UNCOMMON TO ISSUE AN
17 ORDER AND THEN ALSO ADVISE YOU WHETHER OR NOT -- I MEAN, ONE
18 OF YOU WANTS TO STAY DISCOVERY, THE OTHER DOES NOT.

19 **MR. BRESSLER:** WELL, WE'VE AGREED TO STAY DISCOVERY.

20 **THE COURT:** NO, NO, NO.

21 **MR. BRESSLER:** I'M SORRY.

22 **THE COURT:** AFTER THE ORDER ISSUES.

23 EVEN AFTER THE ORDER ISSUES, I WAS UNDER THE IMPRESSION
24 THE GOVERNMENT WANTED TO BRING POTENTIALLY EARLY MOTIONS.
25 TWITTER WANTS DISCOVERY ON THE APPLICATION OF -- OF HOW THE

1  GOVERNMENT IS APPLYING THE -- THE DAG PROTOCOL, FOR LACK OF A
2  DIFFERENT -- DIFFERENT WORD OR DIFFERENT PHRASE.
3      AND SO IT WILL BE HELPFUL TO UNDERSTAND YOUR PERSPECTIVES
4  BECAUSE USUALLY I ISSUE SOME KIND OF CASE MANAGEMENT ORDER
5  COMING OUT OF THOSE KINDS OF ORDERS.
6      **MR. SUSSMANN:** YOUR HONOR, WE CAN OFFER OR -- OUR
7  PERSPECTIVE NOW. WE BELIEVE THAT -- THAT LIMITED, FOCUSED,
8  AND RESPONSIBLE DISCOVERY IS APPROPRIATE IN THIS CASE AND WILL
9  BE NECESSARY FOR ITS RESOLUTION. BUT -- AND WE -- WE THINK
10 THAT IT'S APPROPRIATE AT THIS STAGE. BUT OUT OF RESPECT FOR
11 THE COURT'S RESOURCES AND THE GOVERNMENT'S RESOURCES, WE'VE
12 AGREED TO STAY THAT UNTIL AFTER DISPOSITION OF THE MOTION TO
13 DISMISS, WHICH OBVIOUSLY WILL -- WILL BE VERY SIGNIFICANT.
14     AND WE THINK THERE ARE -- WE HAVE AT THIS POINT 3 ISSUES
15 THAT WE THINK WILL LIKELY REQUIRE SOME DISCOVERY. AND TWITTER
16 AT THIS POINT DOES NOT INTEND TO SEEK ANY PRIVILEGED
17 DOCUMENTS. WE DON'T -- WE DON'T INTEND TO SEEK THROUGH
18 DISCOVERY ANY CLASSIFIED DOCUMENTS.
19     AND SO WHAT OUR APPROACH WOULD BE AND WHAT WE WOULD INTEND
20 TO DO IS ONCE THE COURT RULES ON THE GOVERNMENT'S MOTION TO
21 DISMISS, IS THAT WE WOULD ISSUE, AGAIN, TAILORED, TARGETED,
22 DISCOVERY REQUESTS FOR WHICH THE GOVERNMENT COULD THEN EITHER
23 SAY THEY HAVE NOTHING RESPONSIVE, SAY THEY HAVE SOMETHING
24 RESPONSIVE THAT'S PRIVILEGED, OR -- OR TURN OVER DOCUMENTS.
25     IF THEY OBJECTED TO THE ORDERS, THE JUDGE COULD -- IF THEY

1 OBJECTED TO THE REQUEST, THE COURT COULD ADDRESS THEM AT THAT
2 TIME. BUT WE THINK THAT SOME LIMITED AMOUNT OF DISCOVERY WILL
3 BE NECESSARY, AND WE CAN PREVIEW SOME OF THEM FOR YOU NOW OR
4 WE CAN WAIT AND DO THAT AT A LATER POINT.
5     **THE COURT:** NO, I DON'T NEED THEM PREVIEWED AT THIS
6 POINT.
7   AND THEN I UNDERSTAND THE GOVERNMENT'S PERSPECTIVE IS THAT
8 NO DISCOVERY WOULD BE APPROPRIATE.
9     **MR. BRESSLER:** YES, YOUR HONOR. OR AT A MINIMUM,
10 THAT TO BEGIN WITH, THE COURT SHOULD HEAR FROM THE GOVERNMENT
11 IN A DISPOSITIVE MOTION THAT WOULD ADDRESS EVERYTHING AND
12 ANYTHING THAT IS REMAINING THAT WOULD OBVIATE THE NEED FOR
13 DISCOVERY.
14   I CONFESS, I AM -- WE MAY SEE THE CASE SOMEWHAT
15 DIFFERENTLY, AND MAYBE THAT WILL BECOME CLEARER WHEN WE SEE
16 PLAINTIFF'S OPPOSITION. WE HAVE BEEN CONFUSED AS TO WHAT
17 DISCOVERY THEY MAY SEEK THAT WOULD BE RELEVANT TO ANY OF -- OF
18 THESE CLAIMS AS WE UNDERSTAND THEM.
19     **THE COURT:** ANY BRIEF RESPONSE, MR. SUSSMANN?
20     **MR. SUSSMANN:** WOULD YOU -- I MEAN, YOU WERE -- I CAN
21 PREVIEW SOME OF THE ISSUES FOR THE GOVERNMENT'S BENEFIT.
22     **THE COURT:** I THINK -- I DON'T NECESSARILY NEED IT.
23 IT MAY BE HELPFUL, SO GO AHEAD.
24     **MR. SUSSMANN:** SURE. SO THERE WERE THREE -- THREE
25 AREAS WHERE, MR. BRESSLER, WE MAY BE SEEKING DISCOVERY. OF

1      COURSE WE DON'T KNOW RIGHT NOW --

2           **THE COURT:**  AND YOU CAN STILL ADDRESS ME.

3           **MR. SUSSMANN:**  YES, MA'AM.  SORRY.

4           **THE COURT:**  GO AHEAD.

5           **MR. SUSSMANN:**  ONE OF THEM HAS TO DO WITH THE DEPTH

6      THE DAG -- WHAT WE REFER TO AS THE DAG LETTER, THE DEPUTY

7      ATTORNEY GENERAL'S LETTER, WHICH IS A NOVEL PIECE OF

8      CORRESPONDENCE TO -- TO SAY THE LEAST.  IT WAS REACHED IN

9      THE -- IN THE CONTEXT OF A SETTLEMENT IN THE GOVERNMENT

10     LITIGATION WITH FIVE COMPANIES, AND IT WAS WIDELY REPORTED AT

11     THE TIME THAT THE REASON FOR THE LETTER AND THE SETTLEMENT WAS

12     DUE TO POLITICAL PRESSURE FROM THE WHITE HOUSE TO SETTLE THE

13     CASE BEFORE THE PRESIDENT'S STATE OF THE UNION ADDRESS.

14         AND, IN FACT, THE PRESIDENT MADE A SPEECH ON THE HEELS OF

15     THE SETTLEMENT ADDRESSING IT, AND THERE ARE THINGS ABOUT THAT

16     AND -- AND MORE IMPORTANTLY, AS WE'LL SAY IN OUR -- IN OUR

17     BRIEF, THAT THE QUESTION ABOUT WHETHER SOMETHING'S A FINAL

18     RULE OR NOT, CASES SAY, DOES NOT DEPEND ON WHAT THE GOVERNMENT

19     CALLS IT BUT HOW THEY TREAT IT.

20         AND SO THERE ARE A NUMBER OF DIFFERENT EXAMPLES OF HOW THE

21     GOVERNMENT HAS SOUGHT TO ENFORCE IT OR REFERRED TO IT, WHICH

22     WE THINK WILL BE RELEVANT TO UNDERSTANDING WHAT EXACTLY --

23     WHAT EXACTLY THE LETTER IS BECAUSE WE THINK THAT IN SOME APA

24     CASES, EVERYONE KNOWS WHAT THE GOVERNMENT DID, AND THERE'S THE

25     APPLICATION OF THE LAW.

1    IN THIS CASE, THERE WILL BE SOME FACTUAL DISCOVERY TO
2    DETERMINE WHAT EXACTLY THIS SORT OF CREATURE IS.  AND SO
3    THAT'S ONE AREA.
4        THE SECOND AREA -- AND THIS ALSO RELATES, YOUR HONOR, TO
5    AN ISSUE THAT I -- I REALIZED AFTER THE FACT THE GOVERNMENT
6    DID NOT ADDRESS IN THEIR -- IN THEIR PAPERS, IS WHAT WE
7    CALL -- PEOPLE REFER TO AS SAYING "ZERO" OR "THE ZERO
8    PROHIBITION."
9        AND WHILE TWITTER WANTS TO SPEAK MORE ABOUT THE NATIONAL
10   SECURITY LEGAL PROCESS THAT IT MAY HAVE RECEIVED FROM THE
11   GOVERNMENT, IT VERY MUCH WANTS THE ABILITY TO SAY "ZERO" AS
12   APPROPRIATE.
13       AND SO AS YOUR HONOR WILL SEE, IN THE DEPUTY
14   ATTORNEY GENERAL'S LETTER, THERE ARE APPROVED RANGES OF SPEECH
15   FROM THE GOVERNMENT.  AND IN ONE OPTION, THERE ARE BLOCKS OF A
16   THOUSAND.  IN ANOTHER OPTION, THERE ARE BLOCKS OF 250, BUT
17   BOTH BEGIN WITH ZERO.  SO THE FIRST CATEGORY IS ZERO TO 999.
18   THE SECOND ONE IS ZERO TO 249.  AND THE PURPOSE OF THAT IS SO
19   THAT COMPANIES CAN'T SAY THEY'VE RECEIVED ZERO OF A PARTICULAR
20   KIND OF LEGAL PROCESS.
21       THEY -- SO IF A COMPANY'S RECEIVED NOTHING, THEY HAVE TO
22   SAY, "WE HAVE RECEIVED ZERO TO 999 OF THESE."  AND TWITTER
23   WOULD LIKE THE ABILITY TO SAY "ZERO" EITHER FOR REGARDING
24   NATIONAL SECURITY LETTERS OR REGARDING FISA ORDERS OR
25   REGARDING PARTICULAR KINDS OF FISA ORDERS AS APPLICABLE.  AND

```
 1   THERE ARE AT LEAST 9 COMPANIES WHO HAVE DONE THIS SINCE THE
 2   GOVERNMENT ISSUED -- SINCE THE DAG LETTER CAME OUT.
 3           THE COURT:  NINE COMPANIES THAT HAVE SAID ZERO OR
 4   NINE COMPANIES THAT HAVE SAID IT FALLS WITHIN THE RANGE OF
 5   ZERO TO 999?
 6           MR. SUSSMANN:  WHO'VE SAID ZERO.  WHO WE WOULD
 7   CONSIDER TO BE SIMILARLY SITUATED.
 8       SO, AGAIN, WE MIGHT -- WE ANTICIPATE REQUESTING SOME
 9   LIMITED DISCOVERY ABOUT THE ZERO QUESTION, AGAIN, NOT SEEKING
10   ANY PRIVILEGE OR CLASSIFIED INFORMATION.
11       AND THEN THE THIRD ISSUE FOR WHICH WE MIGHT WANT TO SEEK
12   SOME LIMITED DISCOVERY RELATES TO THAT PART OF OUR FIRST
13   AMENDMENT CLAIM THAT DEALS WITH THE VIEWPOINT DISCRIMINATION,
14   A SORT OF SUBPART OF THE FIRST AMENDMENT LAW THAT SAYS THAT
15   THE GOVERNMENT CAN'T CONTROL THE MARKETPLACE OF IDEAS AND JUST
16   SAY SORT OF THIS IS WHAT THE SPEECH CAN BE.
17       AND WE BELIEVE THAT THAT IS WHAT -- THAT'S WHAT'S HAPPENED
18   IN THIS CASE AND THAT THE GOVERNMENT HAS IN MANY, MANY
19   INSTANCES DECLASSIFIED INFORMATION NOT FOR -- NOT BASED ON
20   NATIONAL SECURITY -- THE GOVERNMENT HAS SAID BASED ON THE
21   PUBLIC POLICY, BASED ON THESE NEEDS, WE'RE DECLASSIFYING THESE
22   THINGS TO SUIT SOMETHING THE GOVERNMENT WANTS TO SAY.
23       AND -- AND IT'S VIEWPOINT DISCRIMINATION WITH REGARD TO
24   TWITTER, AND THAT MIGHT BE AN AREA FOR SOME LIMITED DISCOVERY
25   AS WELL.
```

1    **THE COURT:** ALL RIGHT.

2    MR. BRESSLER, YOU CAN CHEW ON THAT. I'M NOT GOING TO ASK

3    YOU FOR A RESPONSE GIVEN THAT IT'S THE FIRST TIME THAT YOU'VE

4    HEARD IT, BUT AT LEAST YOU CAN START THINKING ABOUT IT.

5    I --

6    **MR. BRESSLER:** CAN I JUST RESPOND --

7    **THE COURT:** SURE.

8    **MR. BRESSLER:** -- BRIEFLY TO -- I'M SURE YOUR HONOR

9    WILL HEAR MORE ABOUT THESE OR READ MORE ABOUT THESE IN THE

10   PAPERS AND THE EVENTUAL ARGUMENT. BUT ONE DISPUTE WE HAVE

11   HERE IS OVER THE EFFECT OF THE -- THE SO-CALLED DAG LETTER AND

12   WHETHER IT IS, YOU KNOW, SOME SORT OF GENERALLY APPLICABLE

13   POLICY VERSUS WHAT WE DESCRIBE IN OUR PAPERS GUIDELINES AS TO

14   HOW TO AVOID REVEALING CLASSIFIED INFORMATION.

15   THE ONLY OTHER THINGS I WANTED TO ADDRESS IS SEVERAL TIMES

16   BOTH ORALLY AND IN THEIR PAPERS, MR. SUSSMANN AND TWITTER HAVE

17   REFERRED TO THE -- THE DAG LETTER AS RESULTING FROM A

18   SETTLEMENT.

19   THERE WAS NO SETTLEMENT IN THAT LITIGATION BEFORE THE

20   FOREIGN INTELLIGENCE SURVEILLANCE COURT. THE PRIVATE

21   COMPANIES WHO BROUGHT IT VOLUNTARILY DISMISSED IT. THERE'S NO

22   SETTLEMENT DOCUMENTS. THIS MAY BE AN ACADEMIC POINT, BUT I

23   JUST WANTED TO STATE OUR VIEW ON THAT.

24   **THE COURT:** WELL, IT WILL BE INTERESTING TO GET INTO.

25   OKAY. I -- I KNOW YOU EACH CAME A LONG WAY. I STILL FIND

1   IT HELPFUL TO UNDERSTAND WHAT THE ISSUES ARE AND HOW -- HOW
2   THEY'RE GOING TO GET TEED UP.
3       AND I GUESS, MR. SUSSMANN, YOU'RE FROM DC AS WELL, SO --
4           **MR. SUSSMANN:** YES, YOUR HONOR.
5           **THE COURT:** -- SO WELCOME TO THIS SIDE OF THE
6   COUNTRY.
7           **MR. SUSSMANN:** IT'S NOT SNOWING HERE.
8           **THE COURT:** IT IS NOT SNOWING HERE. WE DO NOT HAVE A
9   BLIZZARD ON ITS WAY BUT, FRANKLY, WE REALLY WISH WE HAD SOME
10  SNOW ON THIS SIDE OF THE COAST, SO THAT PART OF IT, WE DO
11  MISS.
12      ALL RIGHT. WELL, THIS IS HELPFUL AND I THINK WILL PROVIDE
13  A GOOD FRAMEWORK SO THAT WHEN I START LOOKING AT THE PAPERS,
14  IT -- IT WILL JUST MAKE IT MORE EFFICIENT TO GET THROUGH THEM.
15      I HAD YOUR COMPLAINT BUT HAD NOT GOTTEN THROUGH THE WHOLE
16  THING.
17          **MR. SUSSMANN:** YOUR HONOR, I'VE -- ONE
18  ADMINISTRATIVE --
19          **THE COURT:** SURE.
20          **MR. SUSSMANN:** -- DETAIL.
21      EXHIBIT 4 TO THE COMPLAINT AS WE FILED IT REFERENCES THE
22  UNREDACTED TRANSPARENCY REPORT THAT WE SENT TO THE GOVERNMENT
23  AND WHICH THEY HAVE ADVISED US CONTAINS CLASSIFIED
24  INFORMATION. SO SEPARATELY -- SEPARATELY, WE FILED THAT
25  DOCUMENT WITH THE COURT SECURITY OFFICER. AND IT'S SOME --

1  SOMEWHERE OUT THERE. I DON'T KNOW IF IT'S PHYSICALLY IN THE
2  COURTROOM, BUT WE DID FILE THE FULL UNREDACTED -- AND I
3  PREPARED IT MYSELF. AND I HAVE A NATIONAL SECURITY CLEARANCE.
4      SO IF THERE IS SOME -- THERE MAY BE SOME POINT OF TIME
5  WHEN THE DOCUMENT ITSELF IS RELEVANT AND IT -- YOU WON'T SEE
6  IT IN YOUR PAPERS, BUT IT'S SOMEWHERE IN THE COURT SYSTEM.
7      **THE COURT:** WELL, THAT'S HELPFUL. OUR COURT SECURITY
8  OFFICER WHO HANDLES THOSE, I'M FAMILIAR WITH HIM, AND HE'S
9  FAMILIAR WITH ME GIVEN SOME OTHER LITIGATION --
10     **MR. SUSSMANN:** RIGHT.
11     **THE COURT:** -- ON THESE TOPICS.
12   AND WHEN IT'S AN APPROPRIATE TIME, WE TAKE THE APPROPRIATE
13  MEASURES AND --
14     **MR. SUSSMANN:** RIGHT.
15     **THE COURT:** -- AND I WILL SEE IT, BUT IT'S HELPFUL TO
16  KNOW THAT -- I MEAN, THIS IS A DIFFERENT SITUATION.
17   FREQUENTLY, THE LITIGANTS DON'T HAVE ACCESS TO THE
18  DOCUMENTS THAT THEY SAY ARE CLASSIFIED AND THEY'RE SEEKING TO
19  HAVE THEM UNCLASSIFIED.
20   SO THAT'S A GOOD REMINDER.
21     **MR. BRESSLER:** TWO -- TWO POINTS. ONE RESPONSIVE AND
22  ONE -- ONE SEPARATE. JUST DRAW TO YOUR HONOR'S ATTENTION, WE
23  DID FILE A NOTICE STATING THAT THAT DOCUMENT HAD BEEN LODGED
24  WITH THE CLASSIFIED INFORMATION SECURITY OFFICER AND THAT IS
25  ON THE DOCKET WITH HIS CONTACT INFORMATION.

1  WE ALSO RESERVE THE RIGHT TO OBJECT TO PLAINTIFF OR
2  PRIVATE PARTIES SEEKING TO FILE CLASSIFIED NATIONAL SECURITY
3  INFORMATION, BUT THAT IS JUST A RESERVATION.
4  THE SEPARATE POINT IS -- WANTED TO CLARIFY WITH YOUR
5  HONOR -- AT THE TIME WHEN WE ARE BEFORE YOU TO ARGUE THE
6  MOTION TO DISMISS, IT WOULD BE HELPFUL TO KNOW IF THE COURT
7  WOULD PERMIT MS. BERMAN AND MYSELF TO DIVIDE THE ARGUMENT
8  ISSUE BY ISSUE OR IF YOUR HONOR WILL WANT TO HEAR FROM ONLY
9  ONE PERSON.
10  **THE COURT:** NO, THAT'S FINE WITH ME.
11  **MR. BRESSLER:** THANK YOU.
12  **THE COURT:** ANYTHING ELSE?
13  **MR. SUSSMANN:** NO, YOUR HONOR.
14  **THE COURT:** OKAY. TRAVEL SAFELY. AND WE WILL SEE
15  YOU BACK HERE, I THINK, AT THE END OF -- THE BEGINNING OF
16  MARCH. RIGHT?
17  **MR. BRESSLER:** THANK YOU, YOUR HONOR.
18  **MR. SUSSMANN:** THANK YOU, YOUR HONOR.
19  **THE COURT:** THANK YOU.
20  (PROCEEDINGS WERE CONCLUDED AT 2:36 P.M.)
21  --O0O--
22
23
24
25

**CERTIFICATE OF REPORTER**

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER. I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

_____

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

THURSDAY, JANUARY 29, 2015