1  KATIE TOWNSEND (SBN 254321)
   ktownsend@rcfp.org
2  THE REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
3  1156 15th Street NW, Suite 1250
4  Washington, D.C. 20005
   Telephone: 202.795.9300
5  Facsimile: 202.795.9310

6  *Counsel for Amicus Curiae*
   THE REPORTERS COMMITTEE FOR
7  FREEDOM OF THE PRESS

8

9           IN THE UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12
    TWITTER, INC.,                          CASE NO.  14-cv-04480-YGR
13
                        Plaintiff,          **BRIEF *AMICUS CURIAE* OF THE
14                                          REPORTERS COMMITTEE FOR
            v.                              FREEDOM OF THE PRESS IN SUPPORT
15                                          OF PLAINTIFF'S OPPOSITION TO
    ERIC H. HOLDER, JR., Attorney General   DEFENDANT'S PARTIAL MOTION TO
16  of the United States, et al.,           DISMISS**

17                      Defendants.         Date: March 31, 2015
18                                          Time: 2:00 p.m.
                                            Courtroom 1, Fourth Floor
19                                          Hon. Yvonne Gonzales Rogers

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

INTEREST OF AMICUS CURIAE ..................................................................................................... 2

ARGUMENT ....................................................................................................................................... 3

    I.    The press and the public have a First Amendment and common law right to access court proceedings and documents. ............................................................................................... 3

    II.    In both its approach to standing and its substantive rulings on access, the FISC has failed to follow the requirements of the First Amendment and common law. ............................... 6

        A.    The Government has repeatedly urged the FISC not to recognize the presumption of public access to proceedings and documents. ............................................................ 7

        B.    The FISC requires individuals to meet an unduly high threshold to establish standing to assert a First Amendment right of access. ................................................................. 10

CONCLUSION .................................................................................................................................. 13

# TABLE OF AUTHORITIES

**CASES**

*Associated Press v. United States Dist. Ct.*,
  705 F.2d 1143 (9th Cir. 1983) .................................................................................................. 9
*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973) ................................................................................................................ 12
*CBS, Inc. v. United States Dist. Court*,
  765 F.2d 823 (9th Cir. 1985) .................................................................................................... 5
*Courthouse News Serv. v. Planet*,
  750 F.3d 776 (9th Cir. 2014) ............................................................................................. 3, 12
*Craig v. Harney*,
  331 U.S. 367 (1947) .................................................................................................................. 3
*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003) .................................................................................................. 4
*Gannett Co., Inc. v. DePasquale*,
  443 U.S. 368 (1979) .................................................................................................................. 4
*Globe Newspaper Co. v. Superior Court*,
  457 U.S. 596 (1982) .................................................................................................................. 4
*In re Directives*,
  551 F.3d 1004 (FISA Ct. Rev. 2008) ........................................................................................ 8
*In re Mot. for Release of Court Records*,
  526 F. Supp. 484 (FISA Ct. 2007) ............................................................................................ 8
*In re Oliver*,
  333 U.S. 257 (1948) .................................................................................................................. 9
*Kleindienst v. Mandel*,
  408 U.S. 753 (1972) .................................................................................................................. 7
*Leigh v. Salazar*,
  677 F.3d 892 (9th Cir. 2012) .................................................................................................... 4
*Nixon v. Warner Communications, Inc.*,
  435 U.S. 589 (1978) .............................................................................................................. 4, 5
Op. and Order Granting Mot. for Reconsideration, *In re Orders of This Court Interpreting Section 215 of the PATRIOT Act* ("*In re Section 215 Orders*"),
  Misc. 13-02 (FISA Ct. Aug. 7, 2014) ..................................................................... 2, 10, 11, 12
*Press-Enterprise Co. v. Superior Court of Cal., Riverside County* ("*Press-Enterprise I*"),
  464 U.S. 501 (1984) .............................................................................................................. 3, 4
*Press-Enterprise Co. v. Superior Court of Cal., Riverside County* ("*Press-Enterprise II*"),
  478 U.S. 1 (1986) ............................................................................................................ 3, 4, 13
*Richmond Newspapers, Inc. v. Virginia*,
  448 U.S. 555 (1980) ......................................................................................................... passim
*Sacramento Bee v. United States Dist. Ct.*,
  656 F.2d 477 (9th Cir. 1981) .................................................................................................. 10
*Valley Broad. Co. v. United States Dist. Court*,
  798 F.2d 1289 (9th Cir. 1986) ............................................................................................. 1, 3

**STATUTES**

50 U.S.C. § 1805(a) ........................................................................................................................ 7
50 U.S.C. § 1824(a) ........................................................................................................................ 7
50 U.S.C. § 1842(d)(1) ................................................................................................................... 7
50 U.S.C. § 1861(c)(1) ................................................................................................................... 7

**OTHER AUTHORITIES**

Mike Isaac, *Reddit Issues First Transparency Report*, N.Y. Times Bits Blog, Jan. 29, 2015 ........... 6
Mike Isaac, *Twitter Reports a Surge in Government Data Requests*, N.Y. Times Bits Blog, Feb. 9, 2015 ............................................................................................................................................. 6

*Twitter sees surge in government requests for data*, BBC.com, Feb. 10, 2015 .................................. 6

*Yahoo v. U.S. PRISM Documents*, Center for Democracy and Technology, Sept. 12, 2014 .............. 9

# INTRODUCTION

The complaint filed by Twitter, Inc. ("Twitter") does not seek to challenge a specific order issued under the Foreign Intelligence Surveillance Act ("FISA") or a specific National Security Letter ("NSL").  Rather, Twitter contests governmental restrictions on its ability to disclose the *number* of such orders or NSLs that it receives—even if that number is zero.  Defendants (hereinafter, the "Government") have moved to dismiss in part for lack of subject matter jurisdiction and argue that Twitter's constitutional challenge to FISA nondisclosure obligations should be heard before the Foreign Intelligence Surveillance Court ("FISC").  Defs.' Partial Mot. to Dismiss at 13.

The Reporters Committee for Freedom of the Press ("Reporters Committee") agrees with the arguments asserted by Twitter in opposition to the Government's motion. The Reporters Committee writes separately to highlight the adverse practical impact that an order consigning Twitter's claim for declaratory relief to the FISC will have on the press and the public and to emphasize the importance of ensuring that this case and others like it, which present issues of great public interest and concern, are argued and decided in open judicial proceedings.

The public's constitutional and common law rights of access to court proceedings and documents serve as the foundation for public acceptance of the legitimacy and credibility of judicial institutions.  While these rights have long been recognized as belonging to the public at large, the news media often necessarily acts as a proxy for the general public, playing an "indispensable representative role in gathering and disseminating to the public current information on trials." *Valley Broad. Co. v. United States Dist. Court*, 798 F.2d 1289, 1292 (9th Cir. 1986); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (stating that news media "enjoy the same right of access as the general public").  The Government's contention that this Court ought to decline to exercise its jurisdiction over Twitter's declaratory judgment cause of action should be rejected, not only because exercising jurisdiction over this case is proper, but also because requiring

Twitter's claims to be adjudicated by the FISC would undercut the public's rights of access to court proceedings and documents.

Instead of recognizing the presumptive right of access to court proceedings and documents under the First Amendment and the common law, the FISC has forced individual members of the press and the public seeking access to its documents and proceedings to show that they have a different, and greater, interest in access than the public at large in order to even have standing to pursue a claim.  *See*, *e.g.*, Op. and Order Granting Mot. for Reconsideration, *In re Orders of This Court Interpreting Section 215 of the PATRIOT Act* ("*In re Section 215 Orders*"), Misc. 13-02 (FISA Ct. Aug. 7, 2014), *available at* http://perma.cc/X4U5-PUCC.  The Government is well aware of the FISC's refusal to recognize the full thrust of the public's presumptive right of access, because the Government has previously argued—in closed proceedings—that the public has no such right with respect to FISC documents.  *See* discussion *infra* at II.A.  The public's constitutional right of access to proceedings and documents in this case—which is of substantial public interest and, indeed, implicates the public's First Amendment right to receive information from a willing speaker—would be unacceptably harmed if only the FISC, which operates largely behind closed doors and without public scrutiny, could hear Twitter's claims.

### INTEREST OF AMICUS CURIAE[1]

The Reporters Committee is a voluntary, unincorporated association of reporters and editors dedicated to safeguarding the First Amendment rights and freedom of information interests of the news media and the public.  The Reporters Committee has provided assistance, guidance, and research in First Amendment and freedom of information litigation since 1970.  The Reporters Committee frequently represents the interests of the press and the public before Article III courts by pressing for access and by educating the public about how the judicial system operates.  The

---

[1] No counsel for a party authored this brief in whole or in part, nor did any person or entity, other than *amicus* or its counsel, make a monetary contribution to the preparation or submission of this brief.

*Twitter, Inc. v. Holder, et al.*, Case No. 14-cv-04480-YGR                                                                              2
Brief *Amicus Curiae* of the Reporters Committee for Freedom of the Press

Reporters Committee is concerned that, should this Court decline to exercise jurisdiction to hear this case, it would unacceptably restrict the ability of the press and the public to access court proceedings and court documents in this case.

## ARGUMENT

**I.   The press and the public have a First Amendment and common law right to access court proceedings and documents.**

It is well established that civil court proceedings are presumptively open to the public and the press. Indeed, as the Supreme Court has stated, "[w]hat transpires in the courtroom is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947). This presumption of access is grounded in both tradition and necessity. "[H]istorically both civil and criminal trials have been presumptively open." *Richmond Newspapers, Inc.*, 448 U.S. at 580 n.17. And such openness serves important values. *See, e.g., Press-Enterprise Co. v. Superior Court of Cal., Riverside County* ("*Press-Enterprise I*"), 464 U.S. 501, 508 (1984) (noting that access "gives assurance that established procedures are being followed and that deviations will become known"). As a result, courts considering access claims founded on the First Amendment must also consider "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Co. v. Superior Court of Cal., Riverside County* ("*Press-Enterprise II*"), 478 U.S. 1, 8 (1986). The Ninth Circuit recognizes that the public's right of access to civil proceedings and documents is of constitutional dimension. *See Courthouse News Serv. v. Planet*, 750 F.3d 776, 787 (9th Cir. 2014). (finding that plaintiff's right of access claim to documents filed in civil cases implicates "fundamental First Amendment interests").

"Because courtroom space is inherently limited, and because the public is dispersed, the media plays an indispensable representative role in gathering and disseminating to the public current information on trials." *Valley Broad. Co.*, 798 F.2d at 1292; *see also Richmond Newspapers, Inc.*, 448 U.S. at 573 (stating that "while media representatives enjoy the same right of

access as the public," they often function as "surrogates" for public participation).  Despite this special role, "[t]he First Amendment generally grants the press no right to information about a trial *superior* to that of the general public."  *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 610 (1978) (emphasis added).   Thus, although the news media often leads the fight for public access to court proceedings and records, the right of access inheres in the public at large, and the interests at stake can be vindicated by any member of the public.

Unsurprisingly, the leading Supreme Court authorities addressing the public's right of access to judicial proceedings and documents—*Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368 (1979), *Richmond Newspapers*, 448 U.S. 555, *Press-Enterprise I*, 464 U.S. 501 (1984, and *Press-Enterprise II*, 478 U.S. 1 (1986)—do not limit that right to a certain type of claimant, but rather ground it in the historical importance of open courts and the necessity of public scrutiny of the legal system.  *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982) ("Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process.").

Courts in the Ninth Circuit "start with a strong presumption in favor of access to court records" and proceedings.  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003); *see also Leigh v. Salazar*, 677 F.3d 892, 900–901 (9th Cir. 2012) (remanding to district court to analyze whether the First Amendment right of access applies to "horse gathers").  Although this strong presumption may be overcome given "sufficiently compelling reasons," a court is required to take into account, among other things, "the public interest in understanding the judicial process" when resolving an access claim.  *Id.*  The importance of considering the public interest in a judicial record or document is rooted in the vital role that transparency and public oversight plays in keeping government accountable.  Thus, when CBS, Inc. sought access to judicial records in a post-conviction criminal proceeding, the Ninth Circuit found that access was constitutionally required, in

part, because "[t]he penal structure is the least visible, least understood, least effective part of the justice system; and each such failure is consequent from the others." *CBS, Inc. v. United States Dist. Court*, 765 F.2d 823, 826 (9th Cir. 1985).

Open court proceedings date back "beyond reliable historical records." *Richmond Newspapers, Inc.*, 448 U.S. at 564. In *Richmond Newspapers*, the Supreme Court examined at length the history of open trials and the importance of such openness to the public. As the Court concluded, "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Id.* at 572. Rather than being based on some specialized interest belonging to the claimant before it—a newspaper company—the Court in *Richmond Newspapers* grounded the First Amendment right of access to criminal proceedings in the importance of public oversight as a larger democratic value and a check on government power. Openness, the Court stated, gives "assurance that the proceedings were conducted fairly to all concerned, and it discouraged perjury, the misconduct of participants, and decisions based on secret bias or partiality." *Id.* at 569 (citations omitted).

Similarly, *Nixon v. Warner Communications*, the seminal Supreme Court case recognizing a common law right of public access to court documents, makes clear that the right of access is not conditional "on a proprietary interest in the document or upon a need for it as evidence in a lawsuit." *Nixon*, 435 U.S. at 598 (citations and footnotes omitted). At issue in *Nixon* was access to audio tapes of President Nixon used during a trial of Watergate conspirators. Although Warner Communications, the entity seeking access to the tapes, was a media organization, *Nixon*'s recognition that a "citizen's desire to keep a watchful eye on the workings of public agencies" underlies the right of access makes clear that the right does not belong to the press alone, but rather to all citizens. *Id.*

II.     **In both its approach to standing and its substantive rulings on access, the FISC has failed to follow the requirements of the First Amendment and common law.**

Against the backdrop of this long-recognized right of the public to observe the civil and criminal cases that come before its courts, the Government's argument that this Court should decline to exercise jurisdiction over Twitter's First Amendment claims is particularly concerning because the FISC, unlike this Court, is largely shielded from public view. As set forth below, FISC hearings are not open to the public, and the FISC generally moves slowly to release documents, if indeed they are released at all.[2]

As Twitter and the other *amici* demonstrate, Twitter's desire to disseminate the documents and core information at issue in this case—namely, the number of national security requests Twitter receives—is a matter of intense public interest. Twitter's most recent Transparency Report, which it was forced to release in redacted form and is at the center of this litigation, has garnered extensive news coverage. *See, e.g.*, *Twitter sees surge in government requests for data*, BBC.com (Feb. 10, 2015), www.bbc.com/news/technology-31358194; Mike Isaac, *Twitter Reports a Surge in Government Data Requests*, N.Y. Times Bits Blog (Feb. 9, 2015, 10:00 AM), http://nyti.ms/1IDbXVe. The fact that a company has *not* received national security requests is also of public interest. A few weeks ago, Reddit, an internet company, issued its first transparency report, stating that it had never received a national security request; that fact also captured public attention and attracted news coverage. *See* Mike Isaac, *Reddit Issues First Transparency Report*, N.Y. Times Bits Blog (Jan. 29, 2015, 1:00 P.M.), http://nyti.ms/1CQ2Yeu. While Twitter's First Amendment right to disseminate this information is violated by the restraints at issue in this case, the First Amendment rights of the press and the public to "receive information and ideas" are also

---

[2] Moreover, since Twitter is challenging the Government's position that it may not disclose the number of FISA orders it has issued, *even if that number is zero*, it is perverse for the Government to try to to force Twitter to litigate— in the secrecy of the FISC— a secrecy obligation that arises in the *absence* of a FISA order. *See* Pl.'s Opp. to Def.'s Partial Mot. to Dismiss at 9–10.

implicated when Twitter is barred from disclosing this information.  *Kleindienst v. Mandel*, 408 U.S. 753, 762–63 (1972) (summarizing cases in which the Supreme Court had referred to a listener's First Amendment right to "receive information").

### A. The Government has repeatedly urged the FISC not to recognize the presumption of public access to proceedings and documents.

While the issues raised by Twitter in this case and the information it wishes to disclose are of substantial public concern, FISC proceedings and documents remain, as a practical matter, shrouded in secrecy.  For example, when recipients of FISA directives dispute the constitutionality of those directives or any secrecy obligations derived therefrom, the public and the press are barred from attending those proceedings, and are often unaware that any dispute is taking place at all because FISA requires FISC proceedings to occur *ex parte.  See, e.g.*, 50 U.S.C. §§ 1805(a), 1824(a), 1842(d)(1) & 1861(c)(1) (providing for *ex parte* proceedings).

In November 2007, Yahoo! made a request to the FISC to declare unconstitutional directives issued to it under the Protect America Act of 2007, the predecessor to the FISA Amendments Act of 2008.  Yahoo! Inc.'s Mem. In Opp. to Mot. to Compel, *In re Directives to Yahoo! Inc. Pursuant to Section 105B of the Foreign Intelligence Surveillance Act* ("*In re Directives*"), No. 105B(g) 07-01 (FISA Ct., Nov. 30, 2007), *available at* http://bit.ly/1CiJw8J.  The directives compelled Yahoo! to provide the government with the contents of communications of persons reasonably believed to be outside the United States.  *Id.* at 4.  Yahoo! challenged the constitutionality of the directives under the Fourth Amendment.  *Id.*  The FISC denied Yahoo!'s request to set aside the directives, and granted the government's motion to compel compliance.  Mem. Op., *In re Directives*, No. 105B(g) 07-01 (FISA Ct., Apr. 25, 2008).  Yahoo! then appealed to the Foreign Intelligence Surveillance Court of Review ("FISCR").  Br. of Yahoo!, *Yahoo! v. United States*, No. 08-01, at 2–3 (FISA Ct. Rev. May 29, 2008), *available at* http://bit.ly/1AhmZKj.  In August 2008, the FISCR denied Yahoo!'s appeal and found that the directives satisfied the Fourth Amendment.  *In re Directives*,

*Twitter, Inc. v. Holder, et al.*, Case No. 14-cv-04480-YGR                                                                                   7
Brief *Amicus Curiae* of the Reporters Committee for Freedom of the Press

551 F.3d 1004 (FISA Ct. Rev. 2008), *available at* http://bit.ly/1DfANW8.  A redacted copy of that appellate decision, which omitted Yahoo!'s name, was published later that year.

At the time, the Government strongly opposed the exercise of the right of public access to FISC proceedings and filings.  In 2007, according to a published FISC opinion, when the ACLU filed a motion seeking release of documents related to electronic surveillance, the government argued, in its sealed filing, that "there is no right of public access to these records." *In re Mot. for Release of Court Records*, 526 F. Supp. 484, 485–86 (FISA Ct. 2007) (citing the government's response to the ACLU's motion).  Indeed, the Government continued to take that position in later litigation as well.  In June 2013, the ACLU, this time along with the Media Freedom and Information Access Clinic at Yale Law School (MFIAC), again sought access to FISC decisions.  Mot. for Release of Court Records, *In re Section 215 Orders*, Misc. 13-02 (FISA Ct. June 12, 2013).  In its opposition to the motion, the Government argued that while it intended to unilaterally declassify documents, that intention "does not suggest that this Court should recognize a broad-based constitutional right" of public access to FISC decisions.  Opp. to Mot. for Release of Court Records at 12, *In re Section 215 Orders*, Misc. 13-02 (FISA Ct. July 5, 2013).

Also in June 2013, nearly five years after the FISCR issued its decision in its case, Yahoo! filed an unclassified motion for publication of the 2007 FISC decision finding that the directives did not violate the Fourth Amendment.  Provider's Unclassified Mot., *In re Directives*, No. 105B(g) 07-01 (June 14, 2013), *available at* http://1.usa.gov/1DYhSO3.  In response to that motion, the Government took a different tack than it did in the second ACLU case.  Citing the "strong presumption in favor of public access to judicial proceedings," the Government agreed that the decision should be published and that Yahoo!'s name was no longer classified "and may be released immediately."  Reply in Supp. of Yahoo!'s Mot., *In re Directives*, No. 105B(g) 07-01 (July 9, 2013), *available at* http://1.usa.gov/1vhlFkC.  To be clear, just four days after the Government

opposed the mere recognition of the right of access in *In re Section 215 Orders*, it argued in favor of a "strong presumption" in *In re Directives*. The Government then undertook a lengthy declassification review of the docket in the Yahoo! case. The public became aware of Yahoo!'s efforts only in 2014. *See Yahoo v. U.S. PRISM Documents*, Center for Democracy and Technology (Sept. 12, 2014), http://bit.ly/1r0KtyB (providing documents from Yahoo!'s 2008 FISC litigation).

The Yahoo! litigation illustrates the ways that the public would suffer if Twitter were permitted to pursue its First Amendment claims only before the FISC. The Government's willingness to take wholly inconsistent positions on the very *existence* of a presumptive right of access to FISC proceedings and documents suggests that, in any case where the Government perceives public scrutiny to be undesirable, it will view the FISC as a more attractive venue and give public access rights the back of its hand. *Compare* Reply in Supp. of Yahoo!'s Mot., *In re Directives*, No. 105B(g) 07-01 (July 9, 2013), *available at* http://1.usa.gov/1vhlFkC (citing a "strong presumption in favor of public access") *with* Opp. to Mot. for Release of Court Records at 12, *In re Section 215 Orders*, Misc. 13-02 (FISA Ct. July 5, 2013) ("[T]his Court should conclude that there is no First Amendment right of access to the requested materials.").

Indeed, while the FISC has a track record of maintaining complete secrecy during the pendency of actions, as well as for years afterward, the efficacy of the public right of access as a check on government depends in large part on it being a *contemporaneous* right,. *See In re Oliver*, 333 U.S. 257, 270 (1948) ("The knowledge that every criminal trial is subject to *contemporaneous* review in the forum of public opinion is an effective restraint on possible abuse of judicial power.") (emphasis added); *see also Associated Press v. United States Dist. Ct.*, 705 F.2d 1143, 1147 (9th Cir. 1983) (holding that even a 48-hour delay in unsealing judicial records is a "total restraint on the public's first amendment right of access"). Particularly in light of the Government's fickle and opportunistic treatment of the right of access when it comes to the FISC, the Government's

*Twitter, Inc. v. Holder, et al.*, Case No. 14-cv-04480-YGR
Brief *Amicus Curiae* of the Reporters Committee for Freedom of the Press

9

argument that only the FISC should hear Twitter's claims warrants close scrutiny from this Court. The practical secrecy surrounding the FISC could effectively deny the press and public access to information about this case.

### B. The FISC requires individuals to meet an unduly high threshold to establish standing to assert a First Amendment right of access.

If history is any guide, the litigation of constitutional rights in the FISC is no more open to public access and participation than any of the other matters litigated before the FISC. Despite the Government's eventual pivot in the Yahoo! litigation toward a broad presumption in favor of public access, the FISC has embraced a shrunken standard for public claims of access that strays widely from the high standard Article III courts apply to comport with the requirements of the First Amendment.

The FISC requires claimants to establish that they have standing to make an access claim by showing that they have "suffered an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Op. and Order Granting Mot. for Reconsideration 2, *In re Section 215 Orders*, Misc. 13-02 (FISA Ct. Aug. 7, 2014), *available at* http://perma.cc/X4U5-PUCC. Yet, the Supreme Court does not demand a showing of a particularized injury before determining a claim based on a public right of access, and for good reason: the right belongs to the public, and any harm is suffered by the public as well as the individual asserting the access right. As a result, the mere fact of exclusion is enough to establish standing to assert a right of access. *See, e.g.*, *Sacramento Bee v. United States Dist. Ct.*, 656 F.2d 477, 480 (9th Cir. 1981), *cert. denied*, 456 U.S. 983 (1982) (finding that newspaper "has standing because it was excluded from a criminal trial and was inhibited from reporting news"). Nevertheless, the FISC has adopted a narrower standard, impeding public access as a result.

In 2013, the FISC *sua sponte* applied this narrower standard in *In re Section 215 Orders* to find that the MFIAC lacked standing to pursue its access claim for release of selected opinions of

the FISC. The FISC found that "MFIAC has submitted no information as to how the release of the opinions would aid its activities, or how the failure to release them would be detrimental." Op. and Order 9 n.13, *In re Section 215 Orders*, Misc. 13-02 (FISA Ct. Sept. 13, 2013), *available at* http://1.usa.gov/1mjrwX3. MFIAC petitioned for reconsideration, which the FISC granted, though it did not alter the applicable test. Op. and Order Granting Mot. for Reconsideration, *In re Section 215 Orders*, Misc. 13-02 (FISA Ct. Aug. 7, 2014).

On reconsideration, the FISC concluded that "the principles of Article III standing require examination of whether a lack of public access to the opinion in question will actually have a particular negative effect on MFIAC's ongoing or planned activities, or whether in some other way it had suffered (or imminently stood to suffer) a concrete and particularized injury in fact, beyond a simple lack of access to the opinion." Op. and Order Granting Mot. for Reconsideration, *In re Section 215 Orders*, Misc. 13-02 (FISA Ct. Aug. 7, 2014). While the FISC ultimately decided to "exercise its discretion" to accept additional evidence proffered by MFIAC attesting to its activities and the harm it suffered through lack of access to the records in question, and granted standing to MFIAC, this inquiry is a radical departure from the standing requirements in access cases.

The FISC's determination that standing to assert a right of access to court proceedings and documents depends on an individual, particularized injury that is distinct from the injury suffered by the public more generally runs counter to the basic premise of the public access doctrine: that the right of access inheres in the public at large. Because the right belongs to any and all members of the public, requiring an individual to show an injury traceable to the harm of withholding access that is distinct or different from the injury to the general public makes it difficult, if not impossible, to establish standing. Yet the FISC has found the fact that "all members of the American public can say that they are being denied access to the opinion at issue and assert the same claimed right of

public access that MFIAC has" a stumbling block to finding that MFIAC had standing to assert the right of public access to filings in the FISC.  *Id.* at 7.

This reluctance to grant standing to citizens asserting a right of public access contravenes basic First Amendment principles, which dictate that the denial of information at the heart of democratic process is a sufficient harm to establish standing.  *See Broadrick v. Oklahoma*, 413 U.S. 601, 611–12 (1973) (explaining that because the First Amendment requires "breathing space," standing rules are relaxed in constitutional challenges of state action, and litigants can sue for violations of others' rights).  There is no question that denial or delay of the right of access is a "cognizable injury" for the press as well as the public.  *Planet*, 750 F.3d at 776.  This initial harm also results in additional First Amendment injuries to the public, which cannot discuss documents or proceedings "about which it has no information."  *Id.*  *Broadrick* and *Planet* show that because access to court information is a public right, anyone who wants access has standing to pursue it. Requiring groups to show that access would be of "concrete, particular assistance to them in their own activities," as the FISC does, would be akin to requiring an individual who is barred from the courtroom to prove that his past actions show that he has a specific stake in attending a hearing. Op. and Order Granting Mot. for Reconsideration, *In re Section 215 Orders*, Misc. 13-02 at 7–8. The FISC's requirement that individuals assert rights of access that are different and greater than those of the general public in order to establish standing directly undercuts the *Broadrick* holding that First Amendment litigants may sue for violations of others' rights as well as their own.

Even if the FISC recognizes that a claimant, like MFIAC, has standing, the FISC does not embrace the "strong presumption in favor of access" that the Ninth Circuit and the Supreme Court have recognized.  *Id.* at 11; *see also Richmond Newspapers, Inc.*, 448 U.S. at 580 n.17 (finding that civil and criminal trials have long been "presumptively open").  The Constitution requires that this presumption "may be overcome only by an overriding interest based on findings that closure is

essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S at 9.

The FISC's unconstitutionally restrictive approach to public access makes it all the more important that this Court not decline to exercise its jurisdiction over this case. Requiring Twitter to bring its First Amendment claims before the FISC could severely hamper and delay public access to the proceedings and documents in this case, causing the public's First Amendment rights to suffer, not only during the pendency of this litigation, but perhaps for years to come.

## CONCLUSION

For the reasons stated above, this Court should deny the Government's partial motion to dismiss and exercise jurisdiction over Twitter's claims.

Dated: February 17, 2015               Respectfully submitted,


                                                 */s/ Katie Townsend*
                                                 Katie Townsend
                                                 *Counsel of Record*
                                                 Bruce Brown
                                                 Hannah Bloch-Wehba
                                                 THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
                                                 1156 15th St. NW, Suite 1250
                                                 Washington, D.C. 20005
                                                 Telephone: 202-795-9300

*Twitter, Inc. v. Holder, et al.*, Case No. 14-cv-04480-YGR
Brief *Amicus Curiae* of the Reporters Committee for Freedom of the Press

13