KURT OPSAHL (SBN 191303)
kurt@eff.org
ANDREW CROCKER (SBN 291596)
andrew@eff.org
DAVID A. GREENE (SBN 160107)
davidg@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA  94109
Telephone:  (415) 436-9333
Facsimile:  (415) 436-9993

*Counsel for* Amici Curiae
*CORPORATIONS 1 & 2*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| TWITTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> ERIC HOLDER, United States Attorney General, *et al.*, <br><br> Defendants. | Case No. 4:14-cv-04480-YGR <br><br> **BRIEF OF *AMICI CURIAE* CORPS. 1 & 2 IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS** <br><br> Date:  March 31, 2015 <br> Time:  2:00 pm <br> Courtroom 1, Fourth Floor <br> Hon. Yvonne Gonzalez Rogers |

# **TABLE OF CONTENTS**

STATEMENT OF INTEREST AND INTRODUCTION .................................................................1

ARGUMENT .................................................................................................................................3

I.  THE GOVERNMENT FAILS TO ADDRESS THE NSL STATUTE'S MOST SIGNIFICANT CONSTITUTIONAL DEFECT—ITS LACK OF THE PROCEDURAL REQUIREMENTS REQUIRED BY *FREEDMAN V. MARYLAND*. ....................................3

    A.  In Ruling on the Government's Motion to Dismiss, This Court Must Consider That the NSL Scheme Is an Unconstitutional Prior Restraint. ............................................3

    B.  The NSL Gag Order Scheme Is an Unconstitutional Prior Restraint ..........................4

II.  ADDITIONALLY, THE NSL STATUTE IS A CONTENT-BASED RESTRICTION ON SPEECH THAT MUST, BUT CANNOT, SATISFY STRICT SCRUTINY. .......................7

III.  UNDER EITHER STANDARD, SECTION 3511 DOES NOT PROVIDE THE LEVEL OF REVIEW REQUIRED BY THE FIRST AMENDMENT. ........................................................8

IV.  SECTION 3511 OFFENDS BOTH SEPARATION OF POWERS AND FIRST AMENDMENT PRINCIPLES BY VESTING EXCESSIVE DISCRETION IN EXECUTIVE OFFICIALS, AND COMMANDING THAT REVIEWING COURTS DEFER TO THE EXECUTIVE DETERMINATIONS. ..........................................................11

CONCLUSION ............................................................................................................................14

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Alexander v. United States*,
 509 U.S. 544 (1993) .............................................................................................................4

*Brown v. Entertainment Merchants Ass'n*,
 ___ U.S. ___, ___ , 131 S. Ct. 2729 (2011) .......................................................................13

*Burch v. Barker*,
 861 F.2d 1149 (9th Cir. 1988) ............................................................................................13

*Center for Nat. Security Studies v. DOJ*,
 331 F.3d 918 (D.C. Cir. 2003) .............................................................................................9

*Commodity Futures Trading Com. v. Schor*,
 478 U.S. 833 (1986) .............................................................................................................9

*Doe v. Mukasey*,
 549 F.3d 861 (2d Cir. 2008) ........................................................................................*passim*

*Forsyth County v. Nationalist Movement*,
 505 U.S. 123 (1992) ...........................................................................................................12

*Freedman v. Maryland*,
 380 U.S. 51 (1965) ......................................................................................................*passim*

*FW/PBS, Inc. v. City of Dallas*,
 493 U.S. 215 (1990) .............................................................................................................4

*Gonzales v. Carhart,*
 550 U.S. 124 (2007) ...........................................................................................................10

*In re Matter of NSLs*,
 No. 13-1165 (N.D. Cal. Mar. 14, 2013) ...........................................................................1, 9

*In re NSL*,
 Case No. 2:13-cv-01048-RAJ (W.D. Wa. May 21, 2014) .................................................14

*In re NSL*,
 930 F. Supp. 2d 1064 (N.D. Cal. 2013) ......................................................................*passim*

*Internet Archive v Mukasey*,
 Case No. 4:07-cv-06346-CW (N.D Cal. May 2, 2008) .....................................................14

*John Doe, Inc. v. Holder*,
 Case No. 04-cv-2614 (S.D.N.Y. July 30, 2010) ................................................................14

*Landmark Communications v. Virginia*,
        435 U.S. 829 (1978) .................................................................................................. 9

*Mistretta v. United States*,
        488 U.S. 361 (1989) .................................................................................................. 9

*Nebraska Press Ass'n v. Stuart*,
        427 U.S. 539 (1976) ............................................................................................ 4, 12

*New York Times Co. v. United States*,
        403 U.S. 713 (1971) ................................................................................................ 13

*R.A.V. v. City of St. Paul*,
        505 U.S. 377 (1992) .................................................................................................. 8

*Reno v. ACLU*,
        521 U.S. 844 (1997) .................................................................................................. 8

*Seattle Coal. Stop Police Brutality v. City of Seattle*,
        550 F.3d 788 (9th Cir. 2008) .................................................................................. 11

*Shroyer v. New Cingular Wireless Servs.*,
        622 F.3d 1035 (9th Cir. 2010) .................................................................................. 3

*Shuttlesworth v. City of Birmingham*,
        394 U.S. 147 (1969) ................................................................................................ 12

*Talk of the Town v. Dep't of Fin. & Bus. Servs.*,
        343 F.3d 1063 (9th Cir. 2003) ................................................................................ 13

*Texas v. Johnson*,
        491 U.S. 397 (1989) .................................................................................................. 7

*Thomas v. Chicago Park District*,
        534 U.S. 316 (2002) .................................................................................................. 4

*Under Seal v. Holder*,
        Nos. 13-15957, 13-16731, 13-16732 (9th Cir. argued Oct. 8, 2014) ................. 1, 2, 5

*United States v. Playboy Entertainment Group, Inc.*,
        529 U.S. 803 (2000) .................................................................................................. 8

*United States v. Smith*,
        899 F.2d 564 (6th Cir. 1990) .................................................................................. 11

**FEDERAL STATUTES**

18 U.S.C. § 2709 ......................................................................................................... *passim*

18 U.S.C. § 3511 ......................................................................................................... *passim*

## FEDERAL RULES

Federal Rule of Civil Procedure 12 ............................................................................................... 3

## CONSTITUTIONAL PROVISIONS

U.S. Const., amend. I .......................................................................................................... *passim*

## OTHER AUTHORITIES

Black's Law Dictionary (9th ed. 2009) ......................................................................................... 12

Oxford Dictionary Online, Oxford University Press ................................................................... 12

## STATEMENT OF INTEREST AND INTRODUCTION

*Amici*[1] Corporations 1 & 2 bring unique insight to the issues before this court and seek to correct several misstatements made by the government regarding other pending challenges to the National Security Letter (NSL) scheme. *Amici* are two recipients of NSLs who brought constitutional challenges to the National Security Letter statute, 18 U.S.C. §§ 2709, 3511. These challenges have been consolidated into a single appeal and are currently under submission to the Ninth Circuit. *See Under Seal v. Holder*, Nos. 13-15957, 13-16731, 13-16732 (9th Cir. argued Oct. 8, 2014).

The first *amicus*, "a provider of long distance and mobile phone services,"[2] filed a challenge to an NSL it received from the FBI in 2011. In 2013, the district court granted *amicus* 1's petition to set aside the NSL, holding that the statute violated the First Amendment on its face. *In re NSL*, 930 F. Supp. 2d 1064, 1081 (N.D. Cal. 2013). The district court stayed its order "for the Ninth Circuit to consider the weighty questions of national security and First Amendment rights presented in this case." *Id.* at 1067.

The second *amicus,* an Internet company,[3] filed a petition in 2013 to set aside two NSLs that it received from the FBI and the nondisclosure requirements imposed in connection therewith.[4] The district court then issued a stay of its ruling pending the *In re NSL* appeal and denied further petitions, including Nos. 13-16731 and 13-16732, in order to preserve the status quo. *In re Matter*

---

[1] The parties have stipulated to allow *amici* to proceed under the pseudonym "Corporations 1 & 2" *See* Stipulation accompanying this filing.
[2] Second [Redacted] Brief at 5, *Under Seal v. Holder*, Nos. 13-5957, 13-16731 (9th Cir. Feb. 28, 2014), available at http://cdn.ca9.uscourts.gov/datastore/general/2014/03/20/NSL.13-15957.13-16731.SecondofFourBriefs.REDACTED.032014.pdf.
[3] *See* Exs. A and B to Declaration in Support of Petition to Set Aside NSLs, *In re Matter of NSLs*, No. 13-1165 (N.D. Cal. Mar. 14, 2013), available at https://www.eff.org/files/2014/01/16/003_-_r_131165_declr_iso_petition.pdf (NSLs requesting "electronic communications transactional records" related to a list of "email/IP account holders"); Cross-Petition to Enforce NSL, *In re Matter of NSLs*, No. 13-1165 (N.D. Cal Mar. 26, 2013) ("petitioner offers electronic communication services to its clients").
[4] *See* Pet. to Set Aside NSLs and Nondisclosure Requirements Imposed in Connection Therewith, *In re Matter of NSLs*, No. 13-01165 (N.D. Cal. Mar. 14, 2013), available at https://www.eff.org/files/2014/01/16/001_-_r_131165_petition_to_set_aside_.pdf.

1

*of NSLs, Order Denying Petition to Set Aside and Granting Cross-Petition to Enforce*, No. 13cv1165-SI (N.D. Cal. August 12, 2013), appeal docketed, No. 13-16732 (9th Cir.); *In re Matter of NSLs, Order Denying Petition to Set Aside, Denying Motion to Stay, and Granting Cross-Petition to Enforce*, No. 13-mc-80089-SI (N.D. Cal. August 12, 2013), appeal docketed, No. 13-16731 (9th Cir.).

Both *amici* support Twitter's desire to publish a transparency report that provides more specific information about the number of NSLs Twitter has received. As they explained to the Ninth Circuit, "transparency is a core concern for both [*amici*] and their customers," and it is therefore "vital to [them] that government requests for data be disclosed to customers and discussed in the public debate, and that in the rare situations where a gag may be appropriate, . . . courts play their necessary and discerning oversight role to ensure that First Amendment and other rights are adequately protected." Appellant's [Redacted] Opening Br. at 6, *Under Seal v. Holder*, No. 13-16732 (9th Cir. Feb. 28, 2014).[5]

This brief will aid the court in understanding *amici*'s pending Ninth Circuit challenge to the NSL statute's gag provision, a proceeding the government characterizes as likely controlling of Twitter's claims.[6] This brief corrects misstatements made by the government in this case regarding *amici*'s cases and the appeal, and will otherwise provide insight to the court regarding *amici*'s cases.

---

[5] Available at http://cdn.ca9.uscourts.gov/datastore/general/2014/03/20/NSL.13-16732.OpeningBrief.REDACTED.032014.pdf.

[6] *See* Gov't Mot. to Dismiss at 20:18-19. Indeed, the government asks the Court to abstain from considering these claims until after the Ninth Circuit has ruled. *Id.*

# ARGUMENT

I. **THE GOVERNMENT FAILS TO ADDRESS THE NSL STATUTE'S MOST SIGNIFICANT CONSTITUTIONAL DEFECT—ITS LACK OF THE PROCEDURAL REQUIREMENTS REQUIRED BY *FREEDMAN v. MARYLAND*.**

   A. **In Ruling on the Government's Motion to Dismiss, This Court Must Consider That the NSL Scheme Is an Unconstitutional Prior Restraint.**

In its motion, the government ignores the key issue at stake in Twitter's case: whether the NSL gag order scheme is an unconstitutional prior restraint or otherwise violates the First Amendment. This was also the primary issue in the Second Circuit's decision in *Doe v. Mukasey*, 549 F.3d 861 (2d Cir. 2008). In fact, every court that has considered the NSL statute has held that it must satisfy the procedural requirements for prior restraints in *Freedman v. Maryland*, 380 U.S. 51 (1965). *See, e.g., In re NSL*, 930 F. Supp. 2d at 1071; *Mukasey*, 549 F.3d at 871.

Thus, this court cannot rule upon the government's motion to dismiss without considering one of the statute's most significant constitutional defects.

This constitutional defect cannot be disregarded, as the government implicitly requests. Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are challenges to claims, not theories. And Twitter's separation of powers argument is simply one theory for arguing that the NSL's gag provision is unconstitutional; it is not an independent claim for relief. *See Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (holding that "dismissal for failure to state a claim is 'proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory'") (citations omitted). The government thus cannot limit its motion to only seeking to dismiss Twitter's separation of powers theory regarding § 3511. *See* Mot. to Dismiss at 24:25-28 n.13. The government may not avoid discussion of the core legal arguments intertwined within Twitter's claim for declaratory relief as to both § 2709 and the § 3511 review process. As discussed in more detail below, the NSL gag order scheme encompasses both § 2709 and § 3511. Thus, the statute's failure to meet the First Amendment's procedural requirements for prior restraints is therefore fatal to both sections.

### B. The NSL Gag Order Scheme Is an Unconstitutional Prior Restraint.

Section 2709 authorizes the government to prevent NSL recipients from disclosing that they have received an NSL or anything about their interaction with the government, and Section 3511 imposes rules upon any challenge to that authority. Because the statute prevents recipients from speaking in the first instance rather than imposing a penalty after they have spoken, the gags are prior restraints. *Alexander v. United States*, 509 U.S. 544, 550 (1993).

A prior restraint is "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). The Supreme Court thus requires rigorous procedural protections in any statutory scheme authorizing prior restraints in order to "obviate the dangers of a censorship system": (1) any restraint imposed prior to judicial review must be limited to "a specified brief period"; (2) any restraint prior to a final judicial determination must be limited to "the shortest fixed period compatible with sound judicial resolution"; and (3) the burden of going to court to suppress speech and the burden of proof in court must be placed on the government. *Freedman*, 380 U.S. at 58-59; *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227 (1990); *Thomas v. Chicago Park District*, 534 U.S. 316, 321 (2002).

Contrary to the government's suggestion that the statute can be "constitutionally applied," every court that has evaluated the NSL statute has faulted it for failing to include the *Freedman* procedures in the statutory scheme itself. *See Mukasey*. 549 F.3d at 877-81; *In re NSL*, 930 F. Supp. 2d at 1073-74.

The statute fails to meet each of the *Freedman* requirements. Notably, each of the procedural safeguards mandated by *Freedman* emphasizes the necessity of judicial review. And judicial review is notably lacking from the NSL gag order scheme.

First, the NSL statute permits the imposition of a gag of indefinite duration, with no requirement in either § 2709 or § 3511 that the government ever seek court approval. This violates *Freedman*'s requirement that a potential speaker be "assured" by the statute that a censor "*will, within a specified brief period*, either issue a license or go to court to restrain" the speech at issue. *Freedman*, 380 U.S. at 59 (emphasis added); *see also In re NSL*, 930 F. Supp. 2d at 1073.

4

Second, the NSL gag order scheme does not "assure a prompt final judicial decision." *Freedman*, 380 U.S. at 59. This second requirement reflects the Supreme Court's concern that "unduly onerous" procedural requirements that drive up the time, cost, and uncertainty of judicial review of speech licensing schemes will discourage the exercise of protected First Amendment rights. *Id.* at 58. The Supreme Court has not specified precisely how quickly a final judicial decision must be reached. But it did conclude that four months for initial judicial review and six months for appellate review—the delay in *Freedman*—was too long. *See* 380 U.S. at 55, 61.

Indeed, *amici*'s own experiences challenging NSLs demonstrate the total failure of the statute to ensure a prompt judicial opinion. In *amicus* 1's first case, No. 13-15957, the district court issued its opinion 15 months after a hearing, and the gag has remained in place pending the appeal—now nearly four years after the initial petition was filed. In *amici* 1 & 2's subsequent petitions, Nos. 13-16731 and 13-16732, the gags have been in place for nearly two years and counting.

Finally, the NSL statute violates the third *Freedman* prong—that "the burden of going to court to suppress speech and the burden of proof in court must be placed on the government"—by placing both of these burdens on the NSL recipient. *See Mukasey*, 549 F.3d at 871 (citing *Freedman*, 380 U.S. at 58-59). Instead of requiring the government to go to court to seek permission to suppress speech, Section 2709(c) requires the recipient of an NSL to initiate judicial review by petitioning for an order modifying or setting aside the gag order. *See* 18 U.S.C. § 3511(b)(1) (allowing recipient of an NSL under § 2709 to petition a court "for an order modifying or setting aside a nondisclosure requirement imposed in connection with such a request"). And the NSL statute fails to place the burden of justifying the need for the gag order on the government when the matter is actually brought to court. As this Court held in *In re NSL*, these attempts to shift the burden to the NSL recipient violate the third *Freedman* prong. 930 F. Supp. 2d at 1077 ("[A]s written, the statute impermissibly attempts to circumscribe a court's ability to review the necessity of nondisclosure orders."). The Second Circuit agreed. *Mukasey*, 549 F.3d at 883.

That the statute allows for the recipient to initiate judicial review in some situations does not cure this defect. It is, in fact, part of the problem. Indeed, one of the Supreme Court's explicit goals behind imposing the third *Freedman* factor was to counteract the self-censorship that occurs when would-be speakers are unwilling or unable to initiate judicial review themselves. *See Freedman*, 380 U.S. at 59 ("Without these safeguards, it may prove too burdensome to seek review of the censor's determination.").

Indeed, the statute deprives that court of any meaningful authority to exercise its constitutional oversight duties. Instead, the court may only modify the nondisclosure requirement if it finds there is "no reason to believe that disclosure" may lead to a statutory harm. 18 U.S.C. § 3511(b)(2). And where senior FBI or DOJ officials certify the need for the gag order, the court has even less discretion: a court is not permitted to evaluate the facts, but instead is required to blindly accept the FBI's representations.[7]

In *amici*'s cases, the government contended that it cures the *Freedman* defects by following a "reciprocal notice" scheme suggested by the Second Circuit in *Mukasey* that allows recipients of an NSL to object to the government and then require the government to initiate judicial review. This procedure would still not meet *Freedman*'s requirements, because it would still not put the burden of initiating judicial review on the government. But even if it did, the Second Circuit suggested a legislative fix to, not a permissible application of, the statute. *See Mukasey*, 549 F.3d at 883. The court was unequivocal that there was no possible construction of the NSL statute that could save the nondisclosure provision: "We deem it beyond the authority of a court to 'interpret' or 'revise' the NSL statutes to create the constitutionally required obligation of the Government to initiate judicial review of a nondisclosure requirement." *Id.*

In any event, the government has not even attempted to follow all of the *Mukasey* suggestions. In particular, the Second Circuit suggested time limits for judicial decision making of "perhaps 60 days." *Mukasey*, 549 F.3d at 879. The FBI does not request or require a final judicial

---

[7] Such certifications "shall be treated as conclusive unless the court finds that the certification was made in bad faith." 18 U.S.C. § 3511(b)(2). However, there is no procedure for factual review whereby the court could determine whether the certification was made in bad faith.

decision within any set period of time, let alone 60 days. As discussed above, the proceedings in those cases have taken years and are still without a final resolution.

Indeed, this is one of the areas where Twitter's separation of powers and prior restraints arguments intertwine. The prior restraint doctrine requires speedy judicial review. But the FBI cannot require judicial review to be concluded on any sort of timeline—any such requirement must come from Congress.

## II.  ADDITIONALLY, THE NSL STATUTE IS A CONTENT-BASED RESTRICTION ON SPEECH THAT MUST, BUT CANNOT, SATISFY STRICT SCRUTINY.

Even if the NSL statute's gag order scheme is not a prior restraint subject to the *Freedman* requirements, it is nevertheless unconstitutional because as a content-based restriction on speech it must, but cannot, survive strict scrutiny.

Importantly, strict scrutiny applies to the entire scheme—both Section 2709 and Section 3511. As Twitter's complaint makes clear, the two sections are inextricably intertwined in the gag order scheme: Section 2709 imposes a content-based restriction on speech, while Section 3511 directs a court reviewing such a restriction to apply a standard of review that is inconsistent with strict scrutiny. Compl. ¶ 48.

Unlike it did in *Mukasey*,[8] the government does not concede that strict scrutiny applies to Sections 2709 and 3511.  Gov't Mot. to Dismiss at 21:22.

But strict scrutiny is appropriate because the entire gag order scheme is a content-based restriction on speech. It targets a specific category of speech—speech regarding the NSL—that Twitter, like *amici,* wishes to engage in. The scheme singles out this speech for differential treatment precisely because it seeks to blunt the communicative impact of that speech. *See Texas v. Johnson*, 491 U.S. 397, 412 (1989). As *In re NSL* held, the gag orders apply "without distinction, to both the content of the NSLs and to the very fact of having received one." 930 F. Supp. 2d at 1075.

---

[8] In *Mukasey*, the government conceded "for purposes of the litigation . . . that strict scrutiny is the applicable standard." 549 F.3d at 861. The panel itself did not agree on whether strict scrutiny should apply. But it found that the deferential review mandated in § 3511 was unconstitutional under either strict scrutiny or a "less exacting standard." *Id.* at 882.

7

1   Under the strict scrutiny standard, content-based restrictions, like the gag order scheme, are
2   "presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). To survive strict
3   scrutiny, the government must show that a restriction on free speech is "narrowly tailored to
4   promote a compelling Government interest." *United States v. Playboy Entertainment Group, Inc.*,
5   529 U.S. 803, 813 (2000). This narrow tailoring requires that the restriction on speech directly
6   advance the governmental interest, that it be neither overinclusive nor underinclusive, and that
7   there be no less speech- restrictive alternatives to advancing the governmental interest. *Id.*; *see also*
8   *Reno v. ACLU*, 521 U.S. 844, 874 (1997).

Both *Mukasey* and *In re NSL* concluded that the gag provision did not survive strict scrutiny. *In re NSL*, 930 F. Supp. 2d at 1071; *Mukasey,* 549 F.3d at 878.

This Court must likewise find that the whole gag order scheme fails strict scrutiny. The government cannot show that the scheme is narrowly tailored to its goal of preventing targets from being alerted to the existence or progress of counterterrorism or counterespionage investigations. The scheme is both (1) overinclusive and (2) not the least speech-restrictive means of advancing the government's interest. There are obvious alternatives that would be equally effective in protecting the government's national security interests. For example, the gag order could be authorized only when the disclosure of the fact of the NSL would be reasonably likely to, as opposed to potentially, endanger national security. As the *In re NSL* court explained:

> [T]he government has not shown that it is generally necessary to prohibit recipients from disclosing the mere fact of their receipt of NSLs. The statute does not distinguish—or allow the FBI to distinguish—between a prohibition on disclosing mere receipt of an NSL and disclosing the underlying contents. The statute contains a blanket prohibition: when the FBI provides the required certification, recipients cannot publicly disclose the receipt of an NSL.

*Id.* at 1076.

### III. UNDER EITHER STANDARD, SECTION 3511 DOES NOT PROVIDE THE LEVEL OF REVIEW REQUIRED BY THE FIRST AMENDMENT.

The NSL gag order scheme is unconstitutional under either standard set forth above because each standard requires that judicial review of the NSL gag orders must be "searching." *See In re NSL*, 930 F. Supp. 2d at 1077. Rather than the required searching, independent review,

Sections 3511(b)(2) and (3) impose an extremely deferential standard of review, and in some cases no substantive review at all. The statute allows the court to dissolve the agency's gag order only if the court "finds that there is *no reason to believe* that disclosure may endanger the national security of the United States, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of any person." 18 U.S.C. §§ 3511(b)(2), (3) (emphasis added). The statute further requires that if any one of a long list of government officials certifies that disclosure will harm national security or interfere with diplomatic relations, "such certification shall be treated as *conclusive* unless the court finds that the certification was made in bad faith." *Id.* (emphasis added). As the Second Circuit noted, "meaningful judicial review" would be required by the First Amendment even if strict scrutiny or "classic" prior restraint scrutiny did not apply. *Mukasey*, 549 F.3d at 882. The cases cited by the government such as *Center for Nat. Security Studies v. DOJ*, 331 F.3d 918, 922 (D.C. Cir. 2003), which sanction more deferential standards of review in other contexts (such as FOIA litigation), have little bearing here.

As the Supreme Court has noted, "deference to a legislative finding cannot limit judicial inquiry when First Amendment rights are at stake." *Landmark Communications v. Virginia*, 435 U.S. 829, 843 (1978). By limiting the reviewing court, the NSL statute "impermissibly threatens the institutional integrity of the Judicial Branch" in violation of separation of powers. *Mistretta v. United States*, 488 U.S. 361, 383 (1989) (quoting *Commodity Futures Trading Com. v. Schor*, 478 U.S. 833, 851 (1986)).

The *In re NSL* court thus rightly concluded that the applicable provisions of Sections 3511(b)(2) and (3) fail to afford this searching review. 930 F. Supp. 2d at 1077-78.

The government misleadingly states that *In re Matter of NSLs* "subsequently found the statute to be lawfully applied[.]" Gov't Mot. to Dismiss at 22:25-27 n.11. But that decision came only after the Court decided that the statute was facially unconstitutional. The court explained that in denying subsequent petitions, it was proceeding with caution pending appeal—hardly a ringing endorsement of the application of the statute. *In re Matter of NSLs*, Order at 2, No. 13-civ-80089

(N.D. Cal. Aug. 12, 2013) ("Whether the challenged nondisclosure provisions are, in fact, facially unconstitutional will be determined in due course by the Ninth Circuit.").

The government is further mistaken in its assertion that the *In re NSL* court reached its conclusion by "assuming that Congress had an unconstitutional intent in enacting the statute," thus ignoring the doctrine of constitutional avoidance. Gov't Mot. to Dismiss at 23:3-4, 23:7-13. However, far from simply assuming as much, the court began by looking at the text of the statute and concluded that "as written, the statute impermissibly attempts to circumscribe a court's ability to review the necessity of nondisclosure orders." 930 F. Supp. 2d at 1077. The court noted that the Second Circuit in *Mukasey* had imposed a statutory construction on this language that would require the government to show a "good reason" and "some reasonable likelihood" of harm, and it explained that "the language relied on by the Second Circuit is *not* in the statute and, in this Court's view, expressly contradicts the level of deference Congress imposed under Section 3511(b) and (c)." *Id.* at 1078.

The canon of constitutional avoidance applies only if there is a "reasonable interpretation" of the statutory language that imputes a valid constitutional intent to Congress. But the court found that no such reasonable interpretation was possible for § 3511. *Id.* at 1081; *see also Gonzales v. Carhart,* 550 U.S. 124, 153 (2007). In short, the "multiple inferences required [by the Second Circuit] to save the provisions at issue are not only contrary to evidence of Congressional intent, but also contrary to the statutory language and structure of the statutory provisions actually enacted by Congress." *Id.* at 1080.

The government is also incorrect when it asserts that the *In re NSL* court treated *any* FBI certification as to the statutorily enumerated harms as conclusive in judicial proceedings absent bad faith. Gov't Mot. to Dismiss at 23:19-23 n.12. In fact, the *In re NSL* court's analysis of the "no reason to believe" standard of review—which it described as "essentially insurmountable"—was independent from its examination of the actually insurmountable "conclusive" certification by a specified FBI official. 930 F. Supp. 2d at 1077-78.

The government acknowledges, as it must, that both courts found the latter "conclusive" certification unconstitutional and that it must be struck down.[9] Gov't Mot. to Dismiss at 23:19-23 n.12. Hence, the only daylight between the two courts' approaches to the judicial review provision in § 3511 was, as discussed above, whether the "no reason to believe" language was subject to a reasonable constitutional statutory interpretation. It is not.

## IV. SECTION 3511 OFFENDS BOTH SEPARATION OF POWERS AND FIRST AMENDMENT PRINCIPLES BY VESTING EXCESSIVE DISCRETION IN EXECUTIVE OFFICIALS, AND COMMANDING THAT REVIEWING COURTS DEFER TO THE EXECUTIVE DETERMINATIONS.

This dispute over the standard of review further highlights how the separation of powers and First Amendment arguments are inextricably intertwined legal theories and are components of the same claim. The strong deference granted the Executive in the gag order scheme violates both constitutional doctrines for interrelated reasons.

With respect to separation of powers, the Second Circuit explained in *Mukasey*: "The fiat of a governmental official, though senior in rank and doubtless honorable in the execution of official duties, cannot displace the judicial obligation to enforce constitutional requirements. 'Under no circumstances should the Judiciary become the handmaiden of the Executive.'" *Mukasey*, 549 F.3d at 882-83 (quoting *United States v. Smith,* 899 F.2d 564, 569 (6th Cir. 1990); *see also In re NSL*, 930 F. Supp. 2d at 1078 (quoting same).

The First Amendment also disfavors unfettered executive discretion for related reasons. Indeed, "[t]he First Amendment prohibits placing such unfettered discretion in the hands of licensing officials[.]" *Seattle Coal. Stop Police Brutality v. City of Seattle*, 550 F.3d 788, 803 (9th Cir. 2008). Rather, the First Amendment requires "narrow, objective, and definite" standards to

---

[9] *Mukasey* correctly rejected the conclusive certification provision despite the fact that no certification was made in that case either, finding it unconstitutionally "inconsistent with strict scrutiny standards." 549 F.3d at 882-83. Accordingly, the government's contention that these certifications are irrelevant is meritless. Gov't Mot. to Dismiss at 23:25-26 n.12. This is another way that the Government urges a standard significantly different from the *Mukasey* decision. In any event, even if the Government has not invoked this section, the possibility that it *might* play this trump card has an impermissible chilling effect. Any recipient considering whether to challenge an NSL must do so in the face of Section 3511(b)(2), knowing that the Government may choose to have a top level official certify at an impossible standard.

guide governmental action that restrains speech. *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150-51 (1969).

As the Supreme Court has held pursuant to "many decisions of this Court over the last 30 years, . . . a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Id*. (citations omitted) (rejecting a local ordinance that allowed city officials to refuse a parade permit if "the public welfare, peace, safety, health, decency, good order, morals or convenience" so required).

As the Supreme Court has reasoned, "if the permit scheme involves the appraisal of acts, the exercise of judgment, and the formation of an opinion by the licensing authority, the danger of censorship and of abridgment of our precious First Amendment freedoms is too great to be permitted." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992) (citations omitted).

The NSL gag order scheme offends both of these constitutional principles. Section 2709(c) gives government officials great discretion—and Section 3511 bars a court from meaningfully questioning the exercise of such discretion.

One feature of the gag order scheme warrants special attention. To gag an NSL recipient, the executive branch need only certify that disclosure "*may* result" in statutorily enumerated harms. *See* §§ 2709(c); 3511(b)(3). "May" is used to express possibility—not probability—that something might happen. *See* Oxford Dictionary Online, Oxford University Press;[10] *see also* Black's Law Dictionary 1068 (9th ed. 2009) (defining "may" as "[t]o be a possibility"). The inclusion of the word "may" in the statute is thus fundamentally at odds with the sort of certainty required by the First Amendment. *See Nebraska Press Ass'n*, 427 U.S. at 569-70 (asserting likely harm did not "possess the requisite degree of certainty to justify restraint").

The mere *possibility* of harm occurring is insufficient to support a prior restraint on speech. As Justice Stewart explained in his concurrence in the Pentagon Papers case, the prior restraint at

---

[10] Available at http://www.oxforddictionaries.com/definition/american_english/may#may (last visited February 13, 2015).

issue had to be reversed because the government could not prove that the disclosure of the Pentagon Papers "will *surely* result in direct, immediate, and irreparable damage to our Nation or its people." *New York Times Co. v. United States*, 403 U.S. 713, 730 (1971) (Stewart, J., concurring) (emphasis added).

A low standard of likelihood of harm is similarly improper under strict scrutiny. *See Brown v. Entertainment Merchants Ass'n*, ___ U.S. ___, ___ , 131 S. Ct. 2729, 2738-40 (2011) (under strict scrutiny government "bears the risk of uncertainty" and cannot rely on "ambiguous" proof). The Ninth Circuit's decision in *Burch v. Barker*, 861 F.2d 1149 (9th Cir. 1988), is instructive. In that case, the court considered a policy to censor student speech under a test with the same critical "may result" language as Section 2709: "When there is evidence that reasonably supports a judgment that significant or substantial disruption of the normal operation of the school or injury or damage to persons or property *may result*." *Id.* at 1156 (emphasis added). The court held that the mere possibility of injury or damage was not sufficient. *Id.* at 1158 (expression "cannot be subjected to regulation on the basis of undifferentiated fears of possible disturbances or embarrassment").

The "may" standard vests in the government the precise type of expansive and unfettered discretion that is not allowed for governmental action that directly restricts speech, which is one reason why the *Freedman* factors are required. *See Talk of the Town v. Dep't of Fin. & Bus. Servs.*, 343 F.3d 1063, 1070 (9th Cir. 2003) amended sub nom. *Talk of the Town v. Dep't of Fin. & Bus. Servs.*, 353 F.3d 650 (9th Cir. 2003) (noting that *Freedman*'s procedural safeguard were, in the Court's view, "essential to cabin the censors's [sic] otherwise largely unfettered discretion to determine what constitutes suitable, non-obscene expression and what does not").

The unduly unfettered nature of this discretion is illustrated by the Deputy Attorney General's letter challenged by Twitter in this case, which licensed service providers to disclose receipt of NSLs in bands of one thousand. The decision to allow service providers to vaguely indicate which "band" they fall within—a decision that occurred after public pressure over the lack of transparency—illustrates the arbitrariness of the government's discretion and illustrates that the government's licensing scheme is <u>not</u> narrowly tailored. The DOJ has simply decided that some

service providers, who have received 1,000 or more NSLs, can participate—vaguely and partially—in public debates as recipients of NSLs. Meanwhile, providers who receive fewer than 1,000 NSLs remain barred from saying definitively whether they have received any NSLs at all.[11]

As discussed above, such measures are overbroad and intrinsically arbitrary, since they are imposed without any consideration of the specific risks posed by providers' reporting on NSLs they have received. The First Amendment requires more.

## CONCLUSION

For the foregoing reasons, the Court should deny the government's motion to dismiss.

Dated: February 17, 2015            Respectfully submitted,

*s/Kurt Opsahl*
KURT OPSAHL
ANDREW CROCKER
DAVID GREENE
ELECTRONIC FRONTIER FOUNDATION

*Counsel for* Amici Curiae
CORPORATIONS 1 & 2

---

[11] Some recipients have reached stipulations where they can speak publicly about receiving an NSL. *See, e.g.,* Stipulation and Order of Dismissal, *John Doe, Inc. v. Holder*, Case No. 04-cv-2614 (S.D.N.Y. July 30, 2010); Order to Unseal Case, *Internet Archive v Mukasey*, Case No. 4:07-cv-06346-CW (N.D Cal. May 2, 2008); Order, *In re National Security Letter*, Case No. 2:13-cv-01048-RAJ (W.D. Wa. May 21, 2014) (allowing Microsoft to speak about receiving an NSL).

14