BENJAMIN C. MIZER
Acting Assistant Attorney General
MELINDA HAAG
United States Attorney
ANTHONY J. COPPOLINO
Deputy Branch Director
STEVEN Y. BRESSLER
JULIA A. BERMAN
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 305-0167
Facsimile:  (202) 616-8470
Email: Steven.Bressler@usdoj.gov

Attorneys for Defendants the Attorney General, *et al.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWITTER, INC., | ) Case No. 14-cv-4480 |
| Plaintiff, | ) |
| | ) **REPLY MEMORANDUM** |
| | ) **IN FURTHER SUPPORT OF** |
| v. | ) **DEFENDANTS' PARTIAL** |
| | ) **MOTION TO DISMISS** |
| ERIC H. HOLDER, United States | ) |
| Attorney General, *et al.*, | ) Date:   March 31, 2015 |
| | ) Time:  2:00pm |
| Defendants. | ) Courtroom 1, Fourth Floor |
| | ) Oakland U.S. Courthouse |
| | ) Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

    I.    This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claim
        Against the DAG Letter. ...............................................................................................3

        A.    Plaintiff Fundamentally Misunderstands or Misrepresents the
            DAG Letter, Which is Not Binding Legal Authority. ....................................4

        B.    The DAG Letter Is Not Final Agency Action and is Not
            Subject to Challenge Under the APA. ...........................................................6

        C.    Plaintiff Lacks Article III Standing to Challenge the DAG Letter. ...............7

        D.    The DAG Letter Does Not Bar An Entity That Has Never
            Received National Security Legal Process From Saying
            So. ...............................................................................................................8

    II.    This Court Should Defer to the FISC to Rule on the Scope,
        Interpretation, and Legality of FISA Nondisclosure Obligations
        That Arise Through FISC Orders or Directives Issued Under a
        FISC-Supervised Program. ...........................................................................................9

        A.    Plaintiff Misunderstands the Nature of Nondisclosure
            Obligations that Apply to Classified Foreign Intelligence
            Process. .........................................................................................................9

        B.    Plaintiff and *Amici* Misunderstand the Nature of the FISC. ........................ 11

    III.    This Court Should Dismiss Plaintiff's Challenge to the National
        Security Letter Statutory Standard of Review. ............................................................14

CONCLUSION........................................................................................................................ 15

1

## <u>TABLE OF AUTHORITIES</u>

2

3   <u>CASES</u>                                                                                           <u>PAGE(S)</u>

4   *Alperin v. Vatican Bank*,
5       410 F.3d 532 (9th Cir. 2005) ............................................................................... 15

6   *AT&T Communs. of Cal. v. Pac-West Telecomm.*,
7       651 F.3d 980 (9th Cir. 2011) ............................................................................... 11

8   *Avila v. Willits Envtl. Remediation Trust*,
        633 F.3d 828 (9th Cir. 2011) ............................................................................... 11

9   *Bennett v. Spear*,
10      520 U.S. 154 (1997) ............................................................................................ 6

11  *Davison v. Hart Broadway, Civ. No. S-07-1894, LLC,*,
12      2009 U.S. Dist. LEXIS 48572 (E.D. Cal. May 26, 2009) ...................................... 14

13  *Dep't of Navy v. Egan*,
        484 U.S. 518 (1988) ............................................................................................ 15

14  *Doe v. Mukasey*
15      549 F.3d 861 (2d Cir. 2008) ........................................................................... 14, 15

16  *Electronic Frontier Found. v. Dep't of Justice*,
17      No. 11cv5221-YGR, 2014 WL 3945646 (N.D. Cal. August 11, 2014) ..................... 5

18  *Erringer v. Thompson*,
        371 F.3d 625 (9th Cir. 2004) ................................................................................ 6

19  *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*,
20      543 F.3d 586 (9th Cir. 2008) ............................................................................ 4, 6

21  *Haig v. Agee*,
22      453 U.S. 280 (1981) ............................................................................................ 15

23  *Hemp Industries v. DEA*,
        333 F.3d 1082 (9th Cir. 2003) .............................................................................. 4

24  *In re Mot. for Consent to Disclosure of Court Records*,
25      No. Misc. 13-01 (F.I.S.C. June 12, 2013) ............................................................ 14

26  *Nat'l Ass'n of Home Builders v. Norton*,
27      415 F.3d 8 (D.C. Cir. 2005) .................................................................................. 6

28

*Nat'l Mining Ass'n v. McCarthy,*
758 F.3d 243 (D.C. Cir. 2014) .................................................................. 6

*Network Appliance v. Sun Microsystems, No. C-07-06053,,*
2008 U.S. Dist. LEXIS 76717 (N.D. Cal. May 23, 2008) ........................ 14

*Shalala v. Guernsey Mem'l Hosp.,*
514 U.S. 87 (1995) ..................................................................................... 6

*Steel Co. v. Citizens for a Better Envt.,*
523 U.S. 83 (1998) ..................................................................................... 7

*Stock W., Inc. v. Confederated Tribes,*
873 F.2d 1221 (9th Cir. 1989) ................................................................... 7

*Ukiah Valley Med. Ctr. v. FTC,*
911 F.2d 261 (9th Cir. 1990) ..................................................................... 6

*United States v. Cavanagh,*
807 F.2d 787 (9th Cir. 1987) ................................................................... 12

*Vance v. Hegstrom,*
793 F.2d 1018 (9th Cir. 1986) ................................................................... 6

*Wash. Envt'l Council v. Bellon,*
732 F.3d 1131 (9th Cir. 2013) ................................................................... 8

## STATUTORY LAW

5 U.S.C. § 553(b)(3)(A) .................................................................................. 6

5 U.S.C. § 704 ................................................................................................. 6

18 U.S.C. § 2709 ................................................................................... 3, 5, 14

18 U.S.C. § 3511(b) ............................................................................ 3, 14, 15

50 U.S.C. § 1803(h) ...................................................................................... 12

50 U.S.C. § 1805(c)(2) ............................................................................ 10, 11

50 U.S.C. § 1842 ........................................................................................... 10

50 U.S.C. § 1861 ........................................................................................... 10

50 U.S.C. § 1881a(h)(1) ............................................................................... 10

## RULES

Fed. R. Civ. P. 12 ..................................................................................... 7, 14

**EXECUTIVE ORDERS**

Executive Order 13,526 ................................................................ 3, 4, 5

**MISCELLANEOUS**

John Bacon, *Islamic State threatens 'war' on Twitter co-founder*,
    USA Today (March 2, 2015) ................................................................ 1

Alex Altman, *Why Terrorists Love Twitter*,
    Time Magazine (September 11, 2014) ................................................................ 1

**PRELIMINARY STATEMENT**

Plaintiff Twitter, Inc., provides electronic communication services to millions of users. Some of those users may include terrorists and other criminals who seek to murder civilians and harm the United States.[1]  It should be apparent that the United States Intelligence Community and law enforcement must properly investigate threats using legal tools that Congress has provided, including by obtaining lawful access to electronic communication data, and equally apparent why secrecy is critical to the success of their efforts.  In this case, plaintiff seeks a declaratory judgment that, in sum, it may publish detailed, classified data concerning national security legal process it has received from the Government without regard to any court orders, directives, nondisclosure agreements, and statutory requirements that prohibit such disclosure.

The United States is firmly committed to a policy of appropriate transparency with respect to its intelligence and law enforcement activities.  But information or data made available to the public is also available to those who would use it to evade our intelligence collection in order to harm Americans.  The Government must therefore balance the importance of transparency with national security considerations.  After performing that balance, the Director of National Intelligence ("DNI") declassified certain aggregate data regarding national security process to facilitate greater transparency, although that data had been and could have remained properly classified national security information.  Plaintiff's arguments that it may disclose more specific, still-classified data are all unfounded.  Before considering those arguments, however, this Court should dismiss nearly all of plaintiff's claims in this Court on a number of threshold grounds.  Defendants' arguments in support of dismissal set forward in their opening brief are straightforward and supported by applicable law; plaintiff and *amici curiae* seek to oppose those arguments largely by misconstruing them or the underlying facts.

First, plaintiff frames its Complaint as challenging a January 2014 letter from the Deputy Attorney General to five other technology companies ("DAG Letter") that provided guidance as

---

[1] *See* John Bacon, *Islamic State threatens 'war' on Twitter co-founder*, USA Today, March 2, 2015, http://www.usatoday.com/story/news/nation/2015/03/02/twitter-co-founder-threatened-islamic-state/24248509/; Alex Altman, *Why Terrorists Love Twitter*, Time Magazine, September 11, 2014, http://time.com/3319278/isis-isil-twitter/.

to how the companies can report aggregate data concerning national security process consistent with preexisting nondisclosure requirements and without revealing still-classified information. But this letter is not legal authority, it does not bind plaintiff, and the Government has not somehow applied it to plaintiff.  Plaintiff's Administrative Procedure Act ("APA") claim concerning the letter must therefore fail, because the APA applies only to final agency actions that have the force and effect of law, not advisory, permissive guidance like the DAG Letter that expresses the Government's view of what the law permits.  Any restrictions on what plaintiff may reveal stem from any orders issued to plaintiff by the Foreign Intelligence Surveillance Court ("FISC"), any Foreign Intelligence Surveillance Act ("FISA") directives to plaintiff, statutory requirements, and any applicable nondisclosure agreements.  Likewise, as explained in defendants' opening brief, the DAG Letter does not cause Twitter any injury-in-fact sufficient to confer standing, and any alleged injury would not be redressable through relief directed against the DAG Letter.

Plaintiff and some *amici* also argue that the DAG Letter restricts entities that have never received national security legal process from saying so.  But the DAG Letter does not impose that restriction and, indeed, that is not and has never been the Government's position.  Nothing prevents a company from reporting that it has received no national security legal process at all; the relevant nondisclosure requirements apply only to those who have received such process.

Second, plaintiff's challenges to the scope or constitutionality of FISA nondisclosure obligations put at issue orders, warrants, and directives issued by the FISC or under its supervision.  Under settled principles of comity, the Court should dismiss those claims.[2] Plaintiff wrongly contends that its claims merely seek to attack any statutory requirements that apply to plaintiff, not the FISC's application of FISA through its orders and programs under its supervision.  But any applicable restrictions on disclosure of aggregate data related to FISA stem from the FISC's orders or directives issued under FISC supervision, as well as a provision of FISA itself as embodied and applied in FISC orders.  This Court should defer to the FISC – a

---

[2] Defendant's discussion of FISA orders or directives that plaintiff could have received, and that could require plaintiff not to disclose the existence of the orders or directives, is not intended to confirm or deny that plaintiff has, in fact, received any such national security legal process.

coordinate court composed of Article III judges – to determine the scope, meaning, and legality of its own orders, as well as of the statute that is given effect through those orders.

Third, the Court should also dismiss plaintiff's separation-of-powers challenge to the statutory standards of review of an FBI National Security Letter ("NSL").  Plaintiff challenged the relevant statute (18 U.S.C. § 3511(b)) in its Complaint, but its opposition focuses on its separate claim concerning a provision not subject to defendants' pending Motion to Dismiss, 18 U.S.C. § 2709.  The Court should scrutinize plaintiff's claims individually, and its claim as to § 3511 fails as a matter of law.  The statutory standard of review for NSL nondisclosure requirements is substantially the same as those that courts have developed in related contexts to review restrictions on the disclosure of national security information, and, assuming *arguendo* that standard applies, accords with strict scrutiny.

For all of these reasons, and those set forth in defendants' opening memorandum, the Court should grant defendants' partial Motion to Dismiss.

## ARGUMENT

### I.       This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claim Against the DAG Letter.

This case is about whether the information Twitter seeks to publish is classified and/or the subject of a nondisclosure order from the FISC, a nondisclosure agreement, or any other lawful restriction on publication; and, if so, whether Twitter may nonetheless publish it.  Plaintiff, however, prefers to frame its Complaint largely as a challenge to a letter from the Deputy Attorney General to other companies – a letter that plaintiff fundamentally misunderstands or misconstrues.  As defendants have explained, the letter is permissive, advisory guidance for reporting aggregate data regarding national security legal process received by a particular company consistent with a declassification decision issued by the DNI under Executive Order 13,526.  *See* Def. Mem. (ECF No. 28) at 7-8.

Because the DAG Letter merely explains the Government's view of what FISC orders and other sources of law require consistent with the DNI's declassification, it is not final agency action under the APA, and it causes plaintiff no injury.  Plaintiff therefore lacks standing to

challenge it, and plaintiff thus cannot establish subject matter jurisdiction over its relevant claim in this Court.

### A. Plaintiff Fundamentally Misunderstands or Misrepresents the DAG Letter, Which is Not Binding Legal Authority.

The DAG Letter is not itself binding authority, and the Government does not claim otherwise.  It was not promulgated through notice and comment, is not a regulation, and is not a directive to its addressees, let alone to Twitter.  Rather, the DAG Letter described the discretionary decision of the DNI to declassify certain aggregate data regarding national security legal process that had previously been, and would otherwise be, properly protected from disclosure as, *inter alia*, classified national security information under Executive Order 13,526. The DAG Letter was written without any invocation of the Justice Department's legislative or rulemaking authority, does not amend any prior rule, and adds nothing to the authorities that prohibit disclosures of the classified information in question, *i.e.*, FISC orders, directives supervised by the FISC, the FISA and NSL statutes themselves, and nondisclosure agreements. It therefore does not have the "force of law."  *See Hemp Indus. v. DEA*, 333 F.3d 1082, 1087 (9th Cir. 2003); *cf. Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 593-94 (9th Cir. 2008) (action not final under APA where "rights and obligations remain unchanged.").

Twitter seeks to leave a contrary and inaccurate impression by selectively quoting the Government's cover filing informing the FISC of the DNI's underlying declassification decision. *See* Pl. Opp. at 3.  Viewing that Notice to the FISC in its appropriate context makes clear that the DAG Letter merely describes legal obligations that stem from other sources:

> The Director of National Intelligence has declassified the aggregate data consistent with the terms of the [DAG Letter], in the exercise of the Director of National Intelligence's discretion pursuant to Executive Order 13526, § 3.1(c). The Government will therefore treat such disclosures as no longer prohibited *under any legal provision that would otherwise prohibit the disclosure of classified data, including data relating to FISA surveillance.*

*See* Notice, Exhibit 2 to Compl. ("FISC Notice") (emphasis added), *also available at* http://www.justice.gov/iso/opa/resources/422201412716042240387.pdf.  The Government further informed the FISC and parties to that litigation that "it is the Government's position that

1    *the terms outlined in* the [DAG Letter] define the limits of permissible reporting for the parties

2    and other similarly situated companies." *Id.* (emphasis added).  The referenced "terms"

3    described in the DAG Letter arise not from it, but from the DNI's declassification decision, and

4    have force pursuant to the other referenced "legal provision[s]" that prohibit disclosure of

5    classified information, such as FISC orders, directives supervised by the FISC, and

6    nondisclosure agreements.  *Id.*

7            The DAG Letter itself does not, therefore, provide some independent or additional

8    binding force. [3]  Plaintiff's contention that "[t]he classification decision on which the government

9    relies is itself a product of the DAG Letter," Pl. Opp. 9, is precisely backwards, and

10   unsurprisingly not supported by any citation to the record or other authority.  Information is

11   classified by an Original Classification Authority and pursuant to Executive Order, not a letter.

12   *See Electronic Frontier Found. v. Dep't of Justice*, No. 11cv5221-YGR, 2014 WL 3945646, *3

13   (N.D. Cal. August 11, 2014) ("For information to be properly classified . . . it must meet the

14   requirements of Executive Order 13,526.").  The DAG Letter describes the bounds of *existing*

15   classification (and declassification) decisions and restrictions on disclosure under legal authority.

16           Accordingly, the DAG Letter no more determines legal rights or obligations than a legal

17   brief that summarizes applicable law.  Indeed, should the FISC or this Court rule that no order or

18   directive of the FISC, nor FISA or other statutory law, nor any nondisclosure agreement

19   prohibits Twitter from disclosing the specific aggregate data on national security legal process it

20   has received that is redacted from the unclassified version of plaintiff's draft "Transparency

21

22   ---

     [3]  Plaintiff also misconstrues a letter by Government counsel in the pending, consolidated *In re*
     *NSLs* appeals, Nos. 13-15957, 13-16731, & 13-16732 (Argued October 8, 2014).  *See* Pl. Opp. 7.

23   Counsel's letter did not "rely on the DAG Letter" as a source of law, as plaintiff appears to
     contend, or state that the letter independently prohibits anything.  Rather, counsel explained (in

24   language omitted by plaintiff) that he was discussing "*the Government's discretionary*
     *enforcement decisions* as set forth in a letter from the Deputy Attorney General."  *See* November

25   6, 2014 Letter from Jonathan H. Levy to Molly C. Dwyer (emphasis added).  The letter has been
     unsealed and is available on the website of counsel for *amici* (in this case) Anonymous Corps. 1

26   & 2.  *Id., available at* https://www.eff.org/files/2014/11/12/13-15957_letter.pdf.  Those
     companies are prohibited from revealing that they have received NSLs not by the DAG Letter,

27   which was written long after the district court's three decisions on appeal, but by the pertinent
     NSLs themselves pursuant to 18 U.S.C. § 2709(c).

28

Report," defendants would not contend that the DAG Letter somehow nonetheless restricts disclosure. Rather, as plaintiff itself notes, the Government must be (and is) "prepared to support" its classification decisions "just as if the [DAG Letter] had never been issued." *See Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 253 (D.C. Cir. 2014) (citation omitted), *quoted in* Pl. Opp. at 7.

### B. The DAG Letter Is Not Final Agency Action and is Not Subject to Challenge Under the APA.

Plaintiff's challenge to the DAG Letter is brought under the APA (Compl. ¶ 44), which permits judicial review only of "final agency action." 5 U.S.C. § 704. The Court lacks subject matter jurisdiction over plaintiff's APA challenge because the DAG Letter is not "final" under that Act. *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 163-64 (9th Cir. 1990).

To be considered "final," an action must mark the "consummation" of an agency decision-making process, and must be one by which "rights or obligations have been determined" or from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). As described above, the DAG Letter explains the Government's view of what information is classified and, therefore, what plaintiff's obligations are under legal authority including FISC orders, statutes, and nondisclosure agreements.[4] The letter does not change those obligations, and so it is not "final agency action" as to plaintiff or otherwise. *Fairbanks N. Star Borough*, 543 F.3d at 593-94; *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005) ("[I]f the practical effect of the agency action is not a certain change in the legal obligations of a party, the action is non-final for the purpose of judicial review.").

Contrary to plaintiff's implication, *see* Pl. Opp. 5-6, the letter does not mark the "consummation" of any action taken with respect to Twitter. It provided guidance as to the scope of classified information, and the obligations to protect such information were preexisting.

---

[4] The DAG Letter is not a rule at all, but if it was to be considered one, it would plainly be an interpretive rule that is "'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'" *Erringer v. Thompson*, 371 F.3d 625, 630 (9th Cir. 2004) (citing *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 88 (1995)). Interpretive rules are not subject to challenge under the APA. 5 U.S.C. § 553(b)(3)(A). *See Vance v. Hegstrom*, 793 F.2d 1018, 1022 (9th Cir. 1986) (discussing interpretive vs. substantive rules).

Moreover, following the January 2014 DAG Letter, the FBI informed plaintiff that its proposed Transparency Report contained classified information that could not lawfully be published (*see* September 9, 2014 FBI Letter to plaintiff, Exhibit 3 to Compl.), and later defendants informed it specifically what information in the Transparency Report cannot lawfully be published (*see* ECF No. 21-1).  These subsequent statements make it clear the DAG Letter was not the "consummation" of defendants' relevant actions concerning plaintiff.

Accordingly, plaintiff can neither show the DAG Letter is final agency action under the APA nor establish subject matter jurisdiction over its APA claim.

### C.  Plaintiff Lacks Article III Standing to Challenge the DAG Letter.

Defendants have moved to dismiss plaintiff's purported challenge to the DAG Letter under Fed. R. Civ. P. 12(b)(1) because, *inter alia*, plaintiff cannot establish Article III standing to pursue that claim.  Def. Mem. 12-13.  Plaintiff barely addresses its fundamental lack of constitutional standing, Pl. Opp. 8-9, but it is axiomatic that "[w]ithout jurisdiction the court cannot proceed at all in any cause."  *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 94 (1998) (citation omitted).  Plaintiff bears the burden of establishing subject matter jurisdiction over each of its claims.  *See Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

Plaintiff has not met that burden here.  As set forth above, the letter itself does not itself impose any restriction on Twitter.  Indeed, the only new information it purports to impart concerns the bounds of a *declassification* decision by the DNI.  If the DAG Letter were rescinded or had never been written, plaintiff would be no better off. (And if the underlying declassification decision were rescinded, plaintiff would be *worse* off.)  Any injury plaintiff alleges it suffers because it cannot publish detailed aggregate statistics describing national security legal process it may have received is not fairly traceable to the DAG Letter, and would not be redressed by relief against that letter, because those obligations exist wholly apart from the letter.  Plaintiff therefore cannot establish the core requirements of standing to challenge the DAG Letter.  *See Washington Envt'l Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013).

### D.  The DAG Letter Does Not Bar An Entity That Has Never Received National Security Legal Process From Saying So.

Plaintiff and some of the *amici* also seek to challenge another alleged aspect of the DAG Letter when they argue that it prohibits a so-called "warrant canary," that is, that "[i]f a provider of email service has *never* received an NSL or FISA order, under the DAG Letter, that provider is prohibited from stating publicly, 'We have never received an NSL or FISA order.'"  Pl. Opp. 8 (emphasis in original).  But the Government has never taken any such position.

Plaintiff's and *amici*'s confusion stems from a misunderstanding of the DAG Letter, which states that the letter's addressees and similarly situated companies may reveal the number of FISA orders, warrants, and directives, as well as NSLs, without revealing classified information or otherwise violating the law if they do so in ranges as described in that letter.  The ranges all begin at zero, consistent with the DNI's declassification decision.  So long as companies avoid disclosing classified information, they would not violate the national security nondisclosure requirements of underlying court orders, statutes, and nondisclosure agreements, which govern where an entity has received national security legal process.  A company that has never received such process would not be subject to any of those requirements.[5]

Moreover, there is no allegation that defendants have sought a court order or otherwise tried to stop a company from reporting it has never received an NSL or FISA order; and, as plaintiff has noted, companies have done so.  *E.g.*, http://www.rsync.net/resources/notices/canary.txt. Even if such statements may inform terrorists which communication channels are "safe" for them to use and, thus, may hamper national

---

[5] A company that has received national security legal process generally may not lawfully reveal whether it has received process under a certain authority (*e.g.*, particular types of FISA process). That is not the result of the DAG Letter, but of the continued protection of certain information, including under specific FISA authorities applied to individual companies, following the DNI's discretionary declassification decision.  The reasons supporting the continued classification of this information go to the merits of plaintiff's claims and are beyond the scope of this Motion to Dismiss.  In sum, the Government has determined that the disclosure of specific information about the types of national security legal process a recipient has or has not received would tend to reveal, even if by implication, what intelligence sources and methods the Intelligence Community has employed; and that revealing this information could reasonably be expected to cause damage to national security.  It would also violate any applicable FISC nondisclosure order.  As discussed *infra*, the Court should decline to exercise jurisdiction over plaintiff's claims concerning the scope, meaning, and legality of the FISC's own orders.

security investigations, the United States does not claim and has not argued that they are prohibited by law.  There is no case or controversy between the parties over whether an entity that has never received an NSL or FISA process may lawfully say so.

II.   **This Court Should Defer to the FISC to Rule on the Scope, Interpretation, and Legality of FISA Nondisclosure Obligations That Arise Through FISC Orders or Directives Issued Under a FISC-Supervised Program.**

As set forth in defendant's opening brief, this Court should defer to the FISC to determine the scope, meaning, and interpretation of the FISC's own orders and related nondisclosure requirements issued pursuant to FISA and concerning programs supervised by the FISC.  Plaintiff's arguments in opposition, as well as those by some *amici*, misunderstand the nature of nondisclosure obligations that apply to classified FISA process, as well as the nature of the FISC.

A.   **Plaintiff Misunderstands the Nature of Nondisclosure Obligations that Apply to Classified Foreign Intelligence Process.**

Defendants have explained that the FISC should hear plaintiff's FISA-based claims because those claims turn on the interpretation of FISC orders and directives issued pursuant to a FISC-approved program.[6]  *See* Mot. at 13-20.  Plaintiff contends that this "premise is incorrect," and that it instead challenges "the government's position that the DAG Letter and related national security statutes restrict the disclosure of aggregate information about FISA orders."  Pl. Opp. 9-10.  But that has never been the Government's position.  As explained above, the DAG Letter does not, itself, restrict the disclosure of information about FISA orders.  Rather, with respect to FISA orders, such restrictions flow largely from the orders themselves.  Plaintiff's argument that its "challenge to FISA is not limited to orders issued by the FISC" (Pl. Opp. 9-10) reflects a misunderstanding of the source of any nondisclosure obligations.

---

[6] Plaintiff avers that authorities in addition to FISA, including the Espionage Act, may bar the disclosure of the information plaintiff seeks to publish.  *See* Pl. Opp. 10.  Such other authorities are inapposite here because plaintiff's Complaint specifically challenges the constitutionality of FISA-based nondisclosure obligations, *see* Compl., Prayer for Relief (A)(vi), (A)(vii).  Moreover, there is no allegation of an imminent threat of prosecution for espionage.  Regardless, as a matter of comity and orderly judicial administration, the FISC should be permitted to adjudicate those FISA-based claims and interpret its own orders irrespective of what other authority may bar the disclosure in question.

FISA generally does not operate directly on the recipients of FISA process to require nondisclosure. *See* Def. Mem. 16-18. Rather, associated nondisclosure obligations arise principally from orders that the FISC may issue, or directives that the Government may issue pursuant to FISC supervision. Indeed, 50 U.S.C. § 1805(c)(2)(B), the nondisclosure provision that plaintiff highlights, *see* Pl. Opp. 9, does not impose any nondisclosure obligations in itself, but describes what provisions shall be contained in a FISC order issued under Title I. *See* 50 U.S.C. § 1805(c)(2) ("An order approving an electronic surveillance under this section shall direct . . . ."). The same is true for Title III warrants and Title IV orders. *See* 50 U.S.C. § 1824(c)(2) ("An order approving a physical search under [Title III] shall direct . . . ."); 50 U.S.C. § 1842(d)(2)(B) ("An order issued under [Title IV] shall direct . . . "). Similarly, for Title VII directives, the nondisclosure obligation arises from the terms of the FISC-supervised directive. *See* 50 U.S.C. § 1881a(h)(1) (directives issued under Title VII "may direct . . . ").

The sole exception is FISA Title V, in which Congress chose to directly require secrecy concerning an order of the FISC for production of business records. *See* 50 U.S.C. § 1861. But this statutory nondisclosure obligation arises only *after* the FISC issues an order requiring production, and notifying its recipient of its nondisclosure obligations. *Id.* § 1861(c). Title V also provides specific procedures for the FISC's expeditious review of its nondisclosure requirements where such review is requested by the recipient of an order. *See id.* § 1861(f).

Thus, a court assessing plaintiff's challenges to the constitutionality of "FISA secrecy provisions" or "requirements in FISA" will, in reality, be construing FISC orders, or directives issued and programs conducted under the FISC's supervision. Plaintiff underscores this point when it argues that "[t]he FISA statute . . . [does] not prohibit service providers like Twitter from disclosing aggregate information about the number of FISA orders they receive," Pl. Opp. 9 (quoting Compl. ¶ 49), and adds "[t]o the extent that the Defendants read FISA secrecy provisions, such as 50 U.S.C. § 1805(c)(2)(B), as prohibiting Twitter from publishing information about the aggregate number of FISA orders it receives, . . . the FISA secrecy provisions are unconstitutional." *Id.* To assess plaintiff's claim, a court would need to examine and interpret those FISA provisions as they are applied (if at all) to plaintiff. As discussed

above, however, those provisions operate through FISC orders and directives issued pursuant to a FISC-supervised program.  Assessing plaintiff's claim will plainly require a court to examine and interpret those orders and directives, and to consider whether they should be disregarded or overturned in some respect, or whether the requested relief would conflict with them.[7]  The FISC, which issued any such orders and supervises the issuance of any FISA process, is best positioned to construe their meaning.  *Cf., e.g., AT&T Communs. of Cal. v. Pac-West Telecomm.*, 651 F.3d 980, 998 (9th Cir. 2011) ("the FCC is best positioned to describe the reach of its own orders"); *Avila v. Willits Envt'l Remediation Trust*, 633 F.3d 828, 836 (9th Cir. 2011) ("The district court is the best judge of its own orders").

In sum, the secrecy obligations incurred by recipients of FISA process are imposed through orders of the FISC and through directives issued as part of a legal process that the FISC oversees.  Only by mistakenly pinning those obligations elsewhere – *i.e.* on the DAG Letter, *see supra* Part I – can plaintiff plausibly argue that the FISC is not the most appropriate arbiter of their scope and meaning.  Plaintiff's arguments are unavailing, and the Court should decline jurisdiction over plaintiff's FISA-based claims as a matter of comity.

### B.  Plaintiff and *Amici* Misunderstand the Nature of the FISC.

Plaintiff and *amici* also argue that this Court should not defer to the FISC because 1) the FISC is an Article I court; 2) the FISC lacks authority to grant plaintiff relief; and 3) the FISC conducts all of its proceedings in secret.  *See* Pl. Opp. 11-13; *see also* Brief *Amicus Curiae* of the Reporters Committee for Freedom of the Press, ECF No. 37-1 ("Reporters Cmte. Br."); Brief for Media and Writers *Amici*, ECF No. 49-1 ("Media Br.").  All these statements are incorrect.  In fact, the FISC is a court of Article III judges that is especially well suited to adjudicate plaintiff's FISA-based claims, not only because it is the best interpreter of its own orders but also because it

---

[7] Plaintiff's contention that this case is not about secrecy provisions in any FISA orders because "the complaint does not even allege that Twitter has received any FISA orders," Pl. Opp. 10, does not alter the fact that, if plaintiff is bound by FISA-based nondisclosure obligations, those obligations bind plaintiff through FISC orders or directives issued under a FISC-authorized program, and/or subject to its review.  That various nondisclosure obligations may prevent plaintiff from publicly alleging whether it has, in fact, received any particular type of FISA order or directive (if it has) does not change the mechanics of the statute.

has specialized procedures that can facilitate both public briefing and classified proceedings where necessary.

To begin, one *amicus* mistakenly asserts that the FISC "sits as part of the Executive Branch," *see* Media Br. at 5, and that "the government should not be allowed to close the Article III courthouse doors on [plaintiff's] claims." *Id.* at 6. But this, of course, is wrong. The FISC is a court of Article III judges and obviously part of the Judicial Branch under the Constitution. *E.g., United States v. Cavanagh*, 807 F.2d 787, 791-92 (9th Cir. 1987) (Kennedy, J.).[8]

Nor is plaintiff correct that the FISC cannot provide any relief with respect to plaintiff's FISA-based claims.[9] The FISC has inherent authority to construe the terms of its orders and of directives issued pursuant to a FISC-supervised program. *See* 50 U.S.C. § 1803(h) (discussing the FISC's inherent authority). Likewise, the FISC may adjudicate the constitutionality of those orders and directives. Indeed, as noted in plaintiff's Complaint, when Google, Inc. and other companies sought essentially the same relief that plaintiff seeks here – a declaratory judgment based on the First Amendment permitting them to disclose aggregate data regarding FISC orders – they sought it from the FISC. *See* Compl. ¶ 22; *see also, e.g.*, http://www.fisc.uscourts.gov/docket/misc-13-03 (filings by parties and *amici* in that litigation).

Finally, the FISC is not a "nonpublic court," Pl. Opp. 11, as plaintiff and some *amici* contend. The FISC maintains a public docket and the filings in cases on that docket are available on the FISC's website, http://www.fisc.uscourts.gov/public-filings. During the above-discussed litigation addressing other companies' ability to disclose aggregate data regarding FISA orders, both the petitioners' and the Government's submissions were publicly available. In fact, various *amici* filed briefs in support of the movants' position, and sought permission to participate in oral

---

[8] There is no basis for plaintiff's contention that it could not become familiar with the "the court, judges, and procedures" of the FISC. Pl. Opp. 11. As discussed above, the judges are the same judges who sit on district courts, and the court's rules of procedure, only fifteen pages in length, are publicly available on the federal judiciary's website. *See* Rules of Procedure, *available at* http://www.uscourts.gov/uscourts/rules/FISC2010.pdf.

[9] To the extent plaintiff argues that the FISC could not provide any relief in response to its other claims, *see* Pl. Opp. 11, that is irrelevant: defendants only move this Court to defer to the FISC with respect to plaintiff's FISA-based claims.

argument.  *See, e.g.*, Mot. of the First Am. Coalition, *et al.*, as *Amici Curiae* for Leave to

Participate in Oral Argument, No. 13-03, Oct. 10, 2013 *available at*

http://www.fisc.uscourts.gov/sites/default/files/Misc%2013-03%20Motion-16.pdf.  Only

classified submissions were not made available to the public, just as classified submissions

would not be available to the public in litigation before this Court.[10]  This case is no different; if

the FISC were to adjudicate plaintiff's FISA-based claims, the public would have access to any

unclassified submissions by the parties, and defendants would not object to such access.[11]

Plaintiff also argues that the parties should not receive the benefit of the FISC's expertise

in this case *at all* because "the government does not seek to have this *entire* case heard by the

FISC," and contends the Government cites no authority for the proposition that a case may be

bifurcated so that a court may hear part of a case, while another part is heard in a different forum.

Pl. Opp. 13 (emphasis in original).  But plaintiff's opposition identifies such a case – *In re Mot.*

*for Consent to Disclosure of Court Records*, No. Misc. 13-01 (F.I.S.C. June 12, 2013) – where

the district court for the District of Columbia had stayed a Freedom of Information Act ("FOIA")

case while the parties sought the FISC's guidance regarding whether its rules would permit a

disclosure requested by the plaintiff in that case.  *See id.* at 1-2.  The plaintiff prevailed before

the FISC, and the FISC held that its rules did not prohibit the requested disclosure while

expressing no view as to other issues presented in the FOIA suit.  *Id.* at 7.  Nothing bars this

Court from directing certain claims for separate review.[12]  Just as the district court in the FOIA

---

[10] Indeed, to the extent the FISC has expertise in safeguarding classified information, that capacity supports, rather than undermines, defendants' comity argument.  Congress acted deliberately in vesting authority to hear FISA-related claims in a court with such expertise in handling of closed or classified proceedings, to the extent such proceedings are necessary.

[11] *Amicus* Reporters Cmte.'s contrary suggestion is wrong, as is its claim that the Government is "willing[] to take wholly inconsistent positions on the very existence of a presumptive right of access to FISC proceedings and documents."  Reporters Cmte. Br. at 9.  *Amicus* purports to compare two Government briefs, but in fact it is comparing a submission by Yahoo!, *not* the Government, with a Government filing.  *See id.*  The relevant United States filing in the Yahoo! matter is at www.fisc.uscourts.gov/sites/default/files/105B%28g%29%2007-01%20Motion-2.pdf, and does not conflict with the other Government submission that *amicus* quotes.

[12] *Cf. Network Appliance v. Sun Microsystems*, No. C-07-06053, 2008 U.S. Dist. LEXIS 76717, *20 (N.D. Cal. May 23, 2008) (in patent infringement suit, staying litigation as to only one of the

---

*Twitter, Inc. v. Holder, et al.*, Case No. 14-cv-4480                                                13
Reply Memorandum in Support of Defendants' Partial Motion to Dismiss

litigation deferred to the FISC to allow it to adjudicate the scope and interpretation of the FISC's rules, this Court should defer to the FISC to adjudicate the existence, scope, and interpretation of any nondisclosure obligations that may have been imposed on plaintiff by FISC orders or by directives issued pursuant to a FISC-supervised program.[13]

### III.   This Court Should Dismiss Plaintiff's Challenge to the National Security Letter Statutory Standard of Review.

Plaintiff's complaint challenges two statutory provisions related to NSLs, 18 U.S.C. §§ 2709 and 3511(b). Defendants moved to dismiss plaintiff's claim concerning one of those provisions, the statutory standard of review in § 3511(b), under Fed. R. Civ. P. 12(b)(6). As defendants explained, this Court should follow the well-reasoned decision of the Second Circuit in *Doe v. Mukasey* to hold that § 3511(b) can and must be construed to comport with the Constitution. 549 F.3d 861, 883 (2d Cir. 2008); *see* Def. Mem. 20-24. *Doe* is directly on point, so defendants' reliance on it is not "misplaced," as plaintiff argues. Pl. Opp. 19.

Plaintiff and *amici* have little to say in opposition to defendants' motion concerning § 3511, but prefer to discuss § 2709, which defendants have not yet addressed. In determining

---

three patents at issue pending the USPTO's reexamination of that single patent, while continuing litigation as to remaining patents); *Davison v. Hart Broadway*, Civ. No. S-07-1894, 2009 U.S. Dist. LEXIS 48572, 37-38 (E.D. Cal. May 26, 2009) (issuing a partial stay as to issue on review by the California Supreme Court, but noting that "litigation of other aspects of this case may proceed").

[13] Plaintiff also argues that this Court should hear its FISA-based claims because district courts may adjudicate motions to suppress FISA-derived materials in criminal cases, and district courts have addressed constitutional challenges by plaintiffs alleging they were subject to FISA surveillance programs. *See* Pl. Opp. 12-13. Such proceedings are readily distinguishable from the situation before this Court. In the former circumstance, criminal prosecutions may only be brought in respective district courts and FISA specifically provides that the district court should hear motions to suppress the collection of evidence, *see* 50 U.S.C. § 1806(e). And in contrast to the latter situation, where plaintiffs in those cases generally allege that information about them may be acquired as part of a program authorized or supervised by the FISC, *see, e.g.*, *Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1142 (2013), the claims in this case put at issue any non-disclosure obligations that may have been imposed directly on plaintiff by FISC orders or directives issued under a FISC-supervised program. If plaintiff has FISA-based nondisclosure obligations, those obligations would thus stem from orders, directives, or other FISA authority applied directly to the plaintiff and supervised by the FISC. Where a party is subject to, and challenging the scope or operation of, the orders of another court, that issuing court should adjudicate the challenge to its own orders as a matter of comity.

threshold issues, the Court must "scrutinize each claim individually."  *See Alperin v. Vatican Bank*, 410 F.3d 532, 538 (9th Cir. 2005) (considering justiciability).  Contrary to plaintiff's suggestion, it is appropriate for defendants to move to dismiss plaintiff's claim concerning § 3511(b) while waiting to move for summary judgment on its claim concerning § 2709.

Plaintiff's sole argument addressing § 3511(b)(2) is meritless.  As discussed in *Doe*, the statutory standard of review would permit a district court to set aside an NSL nondisclosure requirement if there is no good reason to believe that disclosure would "endanger the national security of the United States, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of any person."  *Id.*; *Doe*, 549 F.3d at 883.  Plaintiff argues that the harm to an investigation could be "de minimis" under the statute, and therefore the government's interest in avoiding such harm could not qualify as compelling.  Pl. Opp. 19.  But the Governmental interest in the efficacy and integrity of counterintelligence and counterterrorism investigations is plainly compelling.  *Haig v. Agee*, 453 U.S. 280, 307 (1981) ("no governmental interest is more compelling than the security of the Nation").  And a disclosure would only "interfere with" a national security investigation under § 3511(b) if it would, in fact, *interfere* – not merely inconvenience.  Moreover, maintaining the secrecy of information that relates to Government counterterrorism and counterintelligence investigations is also a compelling Government interest.  *E.g., Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988) (Government has "'compelling interest' in withholding national security information from unauthorized persons").  The statutory standard thus contemplates preventing harm to compelling governmental interests.  Plaintiff makes no argument that the statutory standard in § 3511(b) does not require narrow tailoring to these compelling interests – it does, *see Doe*, 549 F.3d at 883 – and so the statute is consistent with strict scrutiny, assuming *arguendo* strict scrutiny applies.

## CONCLUSION

For all of the foregoing reasons and those stated in defendants' opening memorandum, the Court should dismiss plaintiff's claims under Count I of its Complaint concerning FISA, legal process issued under FISA, the DAG Letter, and 18 U.S.C. § 3511(b).

1

Dated: March 4, 2015                          Respectfully submitted,

2
                                              BENJAMIN C. MIZER
3                                             Acting Assistant Attorney General

4                                             MELINDA HAAG
                                              United States Attorney
5

6                                             ANTHONY J. COPPOLINO
                                              Deputy Branch Director
7
                                              _____/s/ Steven Y. Bressler_____
8                                             STEVEN Y. BRESSLER
                                              JULIA A. BERMAN
9                                             Attorneys
                                              U.S. Department of Justice
10                                            Civil Division, Federal Programs Branch

11
                                              *Attorneys for Defendants*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28