Eric D. Miller, Bar No. 218416
EMiller@perkinscoie.com
Michael A. Sussmann, D.C. Bar No. 433100
(*pro hac vice*)
MSussmann@perkinscoie.com
James G. Snell, Bar No. 173070
JSnell@perkinscoie.com
Hayley L. Berlin, D.C. Bar No. 1011549
(*pro hac vice*)
HBerlin@perkinscoie.com
Amanda L. Andrade, D.C. Bar No. 1010948
(*pro hac vice*)
AAndrade@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Tel: 650-838-4300
Fax: 650-838-4350

Attorneys for Plaintiff
Twitter, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TWITTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> LORETTA E. LYNCH, Attorney General of the United States, *et al.*, <br><br> Defendants. | Case No. 14-cv-04480-YGR <br><br> **TWITTER'S OPENING SUPPLEMENTAL BRIEF ON EFFECT OF RECENT LEGISLATION** <br><br> No hearing scheduled. |

## Contents

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. SUMMARY OF RELEVANT CHANGES IN USA FREEDOM ACT ............................ 1

III. ARGUMENT ......................................................................................................................... 2

    A. Effect of the USA FREEDOM Act on the Pending Partial Motion to Dismiss ............................................................................................................................. 3

        1. The USA FREEDOM Act Does Not Affect Defendants' Pending Partial Motion to Dismiss With Regard to Twitter's APA Challenge to the DAG Letter ................................................................. 3

        2. The USA FREEDOM Act Does Not Affect Defendants' Pending Partial Motion to Dismiss With Regard to Defendants' Request to Have Twitter's FISA-related Claims Transferred to the FISC ................................................................................................ 4

        3. The USA FREEDOM Act Does Not Affect Defendants' Pending Partial Motion to Dismiss With Regard to Defendants' Request for the Court to Defer Consideration of Certain NSL-related Issues ................................................................................................ 6

    B. Effect of the USA FREEDOM Act on the Ultimate Claims for Relief in Twitter's Complaint ................................................................................................. 6

        1. The USA FREEDOM Act Should Not Impact Twitter's Challenge to the DAG Letter Under the APA ........................................... 6

        2. The USA FREEDOM Act Does Not Impact Twitter's Challenge to FISA Reporting Under the First Amendment ....................... 7

        3. The USA FREEDOM Act Changes, But Does Not Significantly Impact or Moot, Twitter's Challenge to Section 2709 Under the First Amendment and the Principle of Separation of Powers ............................................................................................ 7

IV. CONCLUSION ................................................................................................................... 11

## I.     INTRODUCTION

In this action, Twitter seeks declaratory and injunctive relief from Defendants' unconstitutional restrictions on Twitter's speech.  (Dkt. No. 1.)  Defendants have filed a Partial Motion to Dismiss, and on May 5, 2015, this Court heard arguments on that motion.  On June 2, 2015, President Obama signed into law the Uniting and Strengthening America by Fulfilling Rights and Ensuring Effective Discipline Over Monitoring Act of 2015 ("USA FREEDOM Act" or "USAFA"), Pub. L. No. 114-23, 129 Stat. 268 (2015).  Defendants and Twitter separately filed Notices Regarding Enactment of the USA Freedom Act.  (Dkt. Nos. 67, 68.)  On June 11, 2015, this Court directed the parties to "file supplemental briefing on the effect of this legislation, both as to the pending partial motion to dismiss and as to the ultimate claims for relief in Plaintiff's Complaint."  (Dkt. No. 69.)  As explained below, the USA Freedom Act has no effect on the appropriate disposition of Defendants' Partial Motion to Dismiss, and, while it is relevant to the merits of Twitter's constitutional claims, it does not alter the ultimate conclusion that the Defendants' conduct and the challenged statutory provisions violate the First Amendment.

## II.     SUMMARY OF RELEVANT CHANGES IN USA FREEDOM ACT

The USAFA contains two provisions that are relevant to this case.  First, Section 603 of the USAFA amends Title VI of the Foreign Intelligence Surveillance Act of 1978 ("FISA") (50 U.S.C. §§ 1871 *et seq.*), by adding at the end the following new section: "Sec. 604. Public Reporting by Persons Subject to Orders."  This section provides four additional options that a "person subject to a nondisclosure requirement accompanying [a FISA] order or directive . . . or a national security letter may, with respect to such order, directive, or national security letter, publicly report."  USAFA § 604(a).  Exhibit A contains a table that summarizes these four new options and compares them with the four preexisting options announced by the Defendants as available to a "person" subject to a national security legal process-related nondisclosure requirement.  *See* Letter from James M. Cole, Deputy Att'y Gen., U.S. Dep't of Justice, to General Counsels for Facebook, Inc., Google, Inc., LinkedIn

1  Corp., Microsoft Corp., and Yahoo! Inc. (Jan. 27, 2014), *available at*

2  http://www.justice.gov/iso/opa/resources/366201412716018407143.pdf ("DAG Letter").

3  　　　　Second, Section 502(g) of the USAFA amends the judicial review procedures at 18

4  U.S.C. § 3511(b) by allowing for judicial review of an NSL nondisclosure requirement if a

5  recipient who wishes to have a court review the requirement notifies the government of that

6  wish.[1]  18 U.S.C. § 3511(b)(1)(A).  If a recipient chooses to follow this new procedure and

7  notify the government, the government must then apply for an order prohibiting disclosure in

8  federal court.  *Id*. § 3511(b)(1)(B).  Regardless of how the case is commenced, the

9  government must file a certification from one of various officials presenting specific facts

10 showing that in the absence of a prohibition, the disclosure would result in a danger to

11 national security, a criminal investigation, diplomatic relations, or safety.  *Id*. § 3511(b)(2).

12 As amended, Section 3511 differs from prior law in that it does not require that a good-faith

13 certification be given conclusive effect.  As was the case before passage of the USAFA, the

14 recipient of a national security letter remains bound by the nondisclosure requirement for the

15 pendency of that challenge.  *Id*. § 3511(b)(1)(B).  In addition, Section 3511 now directs

16 district courts to rule "expeditiously" and "issue a nondisclosure order that includes

17 conditions appropriate to the circumstances" if it determines "there is reason to believe that

18 disclosure of the information subject to the nondisclosure requirement during the applicable

19 time period may result" in any of the conditions in the government's certification.  *Id*.

20 § 3511(b)(1)(C), (3).

21 　　　　　　　　　　**III.   ARGUMENT**

22 　　　　This Court directed supplemental briefing with regard to two related issues: "the

23 effect of [the USAFA], both as to [1] the pending partial motion to dismiss and [2] as to the

24 ultimate claims for relief in Plaintiff's Complaint."  (Dkt. No. 69.)  Twitter addresses these

25 two issues in turn.

26 ─────────────

27 　　　[1] Under the pre-USAFA judicial review procedures, a recipient did not have the option to commence a challenge by notifying the government, and was instead obligated to petition for relief directly with a federal district court.  *See* former 18 U.S.C. § 3511(a) (describing procedures for

28 challenging NSL nondisclosure obligation) (amended 2015).

**A.     Effect of the USA FREEDOM Act on the Pending Partial Motion to Dismiss**

The USAFA has no impact on the issues before the Court in Defendants' pending motion to dismiss "pertaining to the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*. [("APA")], transfer of FISA-related claims to the Foreign Intelligence Surveillance Court, and deferring consideration of certain issues pertaining to national security letters." (Dkt. No. 68.)

> **1.     The USA FREEDOM Act Does Not Affect Defendants' Pending Partial Motion to Dismiss With Regard to Twitter's APA Challenge to the DAG Letter**

Twitter's APA challenge to the DAG Letter is based on Defendants' failure to follow the procedural requirements for promulgating substantive rules in issuing the DAG Letter. In their Partial Motion to Dismiss, Defendants argue that the DAG Letter does not represent final agency action because it does not impose any legal obligations. As explained in Twitter's prior briefing, that is incorrect. The government has informed the FISC that the DAG Letter "define[s] the limits of permissible reporting," Twitter Compl. Ex. 2, and the government relied *exclusively* on the DAG Letter in its September 9, 2014 letter to Twitter denying Twitter's request to publish in full its transparency report. Twitter Compl. Ex. 5 ("Baker-Sussmann Letter") (noting Defendants' position that Twitter's draft transparency report is "inconsistent with the January 27th framework [DAG Letter]") (Dkt. No. 1-1, at 15).

With passage of the USAFA, there currently are *eight* different lawful options for communications providers such as Twitter to publicly report information about national security legal process they have received (if any). In the summer of 2013, the government declassified and thereby, of its own accord, made permissible two options for approved speech ("Summer 2013 Options"). *See* DAG Letter, at 1-2. In January 2014, as part of its settlement of litigation with Facebook, Google, LinkedIn, Microsoft and Yahoo!, the government declassified and made permissible two more options (i.e., Options One and Two of the DAG Letter). *See id*., at 2-3.[2] The USAFA in no way purports to re-classify or

---

[2] Each of the four options created under the USAFA are distinct from the Summer 2013 Options and the options in the DAG Letter. *See* Ex. A.

1  otherwise prohibit the speech approved by the government in 2013 and 2014.  The

2  government thus has no basis now to say, in essence: "That speech you were allowed to

3  speak the day *before* passage of the USAFA you can no longer lawfully speak *after* passage

4  of the USAFA."[3]

5  Since the DAG Letter was not superseded by the USAFA, passage of the USAFA

6  likewise did not moot Twitter's challenge to the DAG Letter.  If, as Twitter argues, the DAG

7  Letter was a substantive rule before the enactment of the USAFA, it is no less of a rule now.

8  To the extent that the USAFA allows reporting options that the DAG Letter does not, that is

9  not a basis for concluding that the DAG Letter is not a rule under the APA.  Therefore,

10  Twitter's allegation in the complaint that the DAG Letter violates the APA is not impacted

11  by passage of the USAFA, nor is Defendants' argument for dismissing that allegation.  The

12  parties' dispute about the DAG Letter should continue to receive this Court's attention.

   **2.   The USA FREEDOM Act Does Not Affect Defendants' Pending Partial
         Motion to Dismiss With Regard to Defendants' Request to Have Twitter's
         FISA-related Claims Transferred to the FISC**

15  In their Partial Motion to Dismiss, Defendants argue that the FISC is a better forum to

16  address Twitter's claims regarding nondisclosure provisions in FISA, arguing that "settled

17  principle[s] of comity and orderly judicial administration" require the FISC to determine the

18  scope and legality of its orders.  (Dkt. No. 28, at 23-29.)  Twitter responded that the United

19  States District Court for the Northern District of California is the correct and preferred venue

20  because judicial economy would not favor splitting this case, the FISC offers a severe

21  asymmetry in practice and access to information in its proceedings, and the American legal

22  system strongly disfavors closed courtrooms without compelling justification and abhors

23  unequal treatment of parties by a decision-maker.  (Dkt. No. 34, at 15-19; May 5, 2015

24  Hearing Tr., at 36-37.)  As Twitter noted in its Opposition to Defendants' Partial Motion to

25  Dismiss, the FISC is "a nonpublic court, with certain recent exceptions for public filing of

---

[3] Put another way, today a communications provider can avail itself of one of the Summer 2013 Options, one of the options in the DAG Letter, or one of the USAFA options, and the government has no basis to say that it is no longer lawful to use one of the Summer 2013 Options or DAG Letter options.

1  pleadings and other documents, that offers no ability for the public or any nonparty to view
2  FISC proceedings.  The FISC offers far greater opportunity than a district court for *ex parte*
3  and classified hearings that are closed to any party but the government." (Dkt. No. 34, at 17.)
4  Defendants cited no provision of the USAFA allegedly affecting these claims in their Notice
5  Regarding Enactment of the USA FREEDOM Act, and there is no reason why passage of the
6  USAFA should impact this Court's decision on this issue.[4]

7  Furthermore, the FISC recently rejected an opportunity to assert itself as the preferred
8  forum for the interpretation of FISA, considering a U.S. District Court to be a suitable and
9  appropriate venue for adjudicating constitutional questions implicated by FISA.  In an
10  opinion released subsequent to argument on Defendants' Partial Motion to Dismiss (and
11  subsequent to passage of the USAFA), the FISC *sua sponte* dismissed a motion to intervene
12  from parties seeking to bring a "challenge on Fourth Amendment grounds [to] the lawfulness
13  of the bulk production of telephone metadata under Section 501 of FISA" because "[t]he
14  parties and issues involved . . . extensively overlap with a suit previously commenced in the
15  United States District Court for the District of Columbia." *In re Application of Fed. Bureau*
16  *of Investigation for Order Requiring Prod. of Tangible Things*, No. BR 15-75, *In re Motion*
17  *in Opp. to Gov't's Request to Resume Bulk Data Collection Under Patriot Act Section 215*,
18  No. Misc. 15-01, combined slip. op., at 4-5 (filed FISA Ct. June 29, 2015).  The FISC
19  dismissed the motion based on comity, "in order to conserve judicial resources and avoid
20  inconsistent judgments," and in accordance with the "first-to-file" rule, and it did not raise in
21  its decision *any* of the factors relied upon by Defendants in their Partial Motion to Dismiss to
22  argue that Twitter's FISA-related claims are best considered by the FISC.  *Id*. at 5-6.

---

[4] Twitter notes that Section 401 of the USAFA provides for participation of amicus in FISC proceedings under certain circumstances.  50 U.S.C. § 1803(i).  However, that change in FISC practice does not affect Defendants' Partial Motion to Dismiss because the possibility of an amicus participant will not lessen the burdens and restrictions on a communications provider that is litigating in the FISC.

   **3. The USA FREEDOM Act Does Not Affect Defendants' Pending Partial Motion to Dismiss With Regard to Defendants' Request for the Court to Defer Consideration of Certain NSL-related Issues**

In their Partial Motion to Dismiss, Defendants argue that this Court should defer any decision on Twitter's challenge to the statutory standard of review applicable to an NSL nondisclosure order until the Ninth Circuit Court of Appeals rules on this issue, (Dkt. No. 28, at 30), thereby effectively bifurcating this case.  Twitter responded that the balance of interests do not favor deferral when Twitter's First Amendment rights are being suppressed and it is by no means certain that the Ninth Circuit will resolve its cases in a way that is dispositive of this controversy.  Defendants cited no provision of the USAFA in their Notice Regarding Enactment of the USA FREEDOM Act that affects their request for deferral of decision-making, and there is no reason why passage of the USAFA should impact this Court's decision on this issue.

**B. Effect of the USA FREEDOM Act on the Ultimate Claims for Relief in Twitter's Complaint**

   **1. The USA FREEDOM Act Should Not Impact Twitter's Challenge to the DAG Letter Under the APA**

As discussed in Section III.A.1, *infra*, the DAG Letter remains operative after passage of the USAFA, inasmuch as it continues to set forth available options for provider reporting regarding receipt of national security legal process and it remains Defendants' *only* stated basis for denying Twitter's request to publish its transparency report.[5]  Moreover, passage of the USAFA has not diminished the need for a judicial determination regarding the circumstances under which Defendants can lawfully announce restrictions regarding acceptable speech on national security-related issues.

---

[5] *See* Baker-Sussmann Letter, at 1 ("As you know, on January 27, 2014, the Department of Justice provided multiple frameworks for certain providers and others similarly situated to report aggregated data . . . . Twitter's proposed transparency report seeks to publish data . . . that go beyond what the government has permitted other companies to report. . . . This is inconsistent with the January 27th framework . . . .").  Upon information and belief, Defendants consider the USAFA to be permissive, not to be or represent a prohibition on Twitter's publication of its transparency report, and therefore not an additional basis for prohibiting Twitter's speech.

### 2. The USA FREEDOM Act Does Not Impact Twitter's Challenge to FISA Reporting Under the First Amendment

While the USA FREEDOM Act establishes four additional reporting options, it does not amend any of the speech-related restrictions in FISA from which Twitter is seeking relief in this proceeding. In its complaint, Twitter alleged that:

1) The FISA statute and Espionage Act, along with other nondisclosure authorities, do not prohibit providers like Twitter from disclosing aggregate reporting statistics;

2) To the extent that Defendants read provisions of the FISA statute as prohibiting Twitter from publishing aggregate reporting statistics, those provisions are unconstitutional because:

   a) They constitute a prior restraint and content-based restriction on speech in violation of Twitter's right to speak truthfully about matters of public concern; and

   b) The restriction is not narrowly tailored to serve a compelling governmental interest, and no such interest exists; and

3) The FISA secrecy provisions are unconstitutional as applied to Twitter because:

   a) Defendants have imposed an unconstitutional prior restraint, content-based restriction, and viewpoint discrimination in violation of Twitter's right to speak truthfully about matters of public concern; and

   b) This prohibition imposed by Defendants on Twitter's speech is not narrowly tailored to serve a compelling governmental interest.

(Dkt. No. 1, ¶¶ 49-50.) While the USAFA provides four additional reporting options, *see* Ex. A, those additional options do not alter Twitter's First Amendment claims. Indeed, the USAFA amendments allow only for the publication of wide bands of aggregate data, and provide no assurance to Twitter that it can publish its draft transparency report. (Dkt. No. 1-1, Ex. 4.) The USAFA thus leaves Twitter in the same position it was in prior to the legislation, and it is therefore insufficient to remedy Twitter's constitutional grievances.

### 3. The USA FREEDOM Act Changes, But Does Not Significantly Impact or Moot, Twitter's Challenge to Section 2709 Under the First Amendment and the Principle of Separation of Powers

In its complaint, Twitter alleged that the NSL nondisclosure provisions of 18 U.S.C. § 2709 are unconstitutional for a number of reasons, including (but not limited to) the fact

that the judicial review procedures for NSL nondisclosure orders, codified at 18 U.S.C. § 3511:

1) do not meet the procedural safeguards required by the First Amendment because they:

   a) place the burden of seeking to modify or set aside a nondisclosure order on the recipient of an NSL;

   b) do not guarantee that nondisclosure orders imposed prior to judicial review are limited to a specified brief period;

   c) do not guarantee expeditious review of a request to modify or set aside a nondisclosure order;

   d) require the reviewing court to apply a level of deference that conflicts with strict scrutiny; and

2) restrict a court's power to review the necessity of a nondisclosure provision in violation of separation of powers principles.

(Dkt. No. 1, ¶¶ 46, 48). Unfortunately, many of these failings remain unchanged following amendment, and the revised version of Section 3511 still falls short of what the First Amendment and separation of powers principles require.

Although the USAFA may make it easier for an NSL recipient to challenge a nondisclosure order, the recipient still bears the obligation of initiating proceedings by lodging an objection with the government,[6] which means that Section 3511 maintains the (unconstitutional) status quo of allowing nondisclosure orders to be of uncertain and, potentially, unlimited duration. *Id.*[7]

---

[6] *See* 18 U.S.C. § 3511(b)(1).

[7] One aspect of Twitter's NSL-related claims that is affected by the USAFA's revisions to Section 3511 is Twitter's assertion in the complaint that the NSL nondisclosure judicial review procedures "do not guarantee expeditious review of a request to modify or set aside a nondisclosure order." (Dkt. No. 1, ¶ 46.) As explained in Section II, *infra*, Section 3511 now requires a court that is considering such a challenge to rule "expeditiously." However, Section 3511 does not contain any elaboration as to how "expeditiously" should be interpreted. Moreover, in *Freedman* v. *Maryland*, 380 U.S. 51 (1965), the Supreme Court held that "[a]ny restraint [on speech] imposed in advance of a final judicial determination on the merits must similarly be . . . *for the shortest fixed period compatible with sound judicial resolution*," 380 U.S. at 59 (emphasis added), and Twitter does not concede at this juncture that "expeditiously" in the context of a post-USAFA Section 3511 review is sufficient to meet the *Freedman* standard.

1    Moreover, Twitter's complaint alleged that Section 3511 requires the reviewing court
2    to apply a level of deference that does not comport with, and is much more lenient than, strict
3    scrutiny. As Twitter noted in its Opposition to Defendants' Partial Motion to Dismiss:

> [A] party who receives such an NSL containing a nondisclosure requirement and who wishes to speak about an NSL must litigate the validity of the nondisclosure requirement before speaking. 18 U.S.C. § 3511(b)(1). In other words, while the prior-restraint doctrine recognizes that "a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand," *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975), Section 2709(c) does the exact opposite.

(Dkt. No. 34, at 22.) This remains fundamentally true under the USAFA-revised scheme. As explained above, the most meaningful change to the judicial review procedure is that a court is no longer required to give conclusive effect to the government's good-faith certification. *See* Section II, *infra*. However, Twitter did not explicitly or exclusively rely on that provision when it asserted that the overall scheme was unconstitutional. Moreover, a court is still required to uphold a nondisclosure order if it finds "reason to believe" that disclosure "may result in" a danger to national security, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person. 18 U.S.C. § 3511(b)(3). In other words, a court is still required to uphold the government's nondisclosure order if it believes the government's certification.

   This revised scheme is similar to what the Second Circuit envisioned in *Doe, Inc. v. Mukasey*, 549 F.3d 861 (2d Cir. 2008). As Twitter argued in its Opposition to Defendants' Partial Motion to Dismiss, even that process is insufficient to satisfy strict scrutiny:

> [E]ven assuming that the broad statutory language [of Section 3511] could be read in such a limited way, the Second Circuit's standard, which appears to be akin to the reasonable-suspicion standard of the Fourth Amendment, is not sufficient when strict scrutiny is applicable. To be sure, a prohibition on speech might satisfy strict scrutiny if there were "a good reason . . . reasonably to apprehend a risk" of a very serious harm from the speech. But even as rewritten by the Second Circuit, the statute does not require that the harm be serious—or even more than *de minimis*—only that it be somehow related to a terrorism investigation. That is, it permits speech to be

>suppressed upon a determination that there is a risk that it might lead to some kind of "interference with [an] investigation" that is in some way related to terrorism, no matter how minimal the interference may be. The statute is not narrowly tailored to promote the interest of national security.

(Dkt. No. 34, at 25-26.)  The USAFA fails for similar reasons, as it directs courts to uphold nondisclosure requirements when they find "reason to believe" that disclosure will have some impact on national security, public safety, criminal investigations, or diplomatic relations.

Because the USAFA did not address key bases in the complaint for Twitter's challenge to 18 U.S.C. § 2709, and the USAFA continues to prescribe a standard of review for orders under Section 2709 that is not meaningfully different from the one challenged in Twitter's complaint, Twitter's NSL-related claims remain valid.  Indeed, it remains the case that:  (1) the judicial review procedure in Section 3511 violates the First Amendment because it "require[s] the reviewing court to apply a level of deference that conflicts with strict scrutiny," (Dkt. No. 1, ¶ 46); and (2) the judicial review procedure violates principles of separation of powers because it "impermissibly requires the reviewing court to apply a level of deference to the government's nondisclosure decisions that conflicts with the constitutionally mandated level of review, which is strict scrutiny." (Dkt. No. 1, ¶ 48.)  These essential constitutional violations are unchanged by the USAFA, and thus Twitter's claim, although perhaps impacted by the USAFA, is not moot.

Twitter also alleged in its complaint numerous challenges to Section 2709 for reasons unrelated to Section 3511's review procedures,[8] and these challenges are not affected by

---

[8] *See* Dkt. No. 1, ¶¶ 46-47 ("The nondisclosure and judicial review provisions of 18 U.S.C. § 2709(c) are facially unconstitutional under the First Amendment, including for at least the following reasons: the nondisclosure orders authorized by § 2709(c) constitute a prior restraint and content-based restriction on speech in violation of Twitter's First Amendment right to speak about truthful matters of public concern (e.g., the existence of and numbers of NSLs received); the nondisclosure orders authorized by § 2709(c) are not narrowly tailored to serve a compelling governmental interest, including because they apply not only to the content of the request but to the fact of receiving an NSL and additionally are unlimited in duration . . . . The nondisclosure provisions of 18 U.S.C. § 2709(c) are also unconstitutional as applied to Twitter, including because Defendants' interpretation of the nondisclosure provision of 18 U.S.C. § 2709(c), and their application of the same to Twitter via the DAG Letter, is an unconstitutional prior restraint, content-based restriction, and viewpoint discrimination in violation of Twitter's right to speak about truthful matters of public concern.  This prohibition on Twitter's speech is not narrowly tailored to serve a compelling governmental interest,

passage of the USAFA. Therefore, there is no reason why passage of the USAFA should impact this Court's decision on the larger set of claims challenging Section 2709.

### IV.   CONCLUSION

The USA FREEDOM Act does not affect the claims in Defendants' Partial Motion to Dismiss currently pending before this Court, and does not significantly alter the claims raised by Twitter in the complaint.

DATED:  July 17, 2015                                                   *Respectfully Submitted*,

By: /s/ Michael A. Sussmann
    Michael A. Sussmann
    MSussmann@perkinscoie.com
    Eric D. Miller, Bar No. 218416
    EMiller@perkinscoie.com
    James G. Snell, Bar No. 173070
    JSnell@perkinscoie.com
    Hayley L. Berlin
    HBerlin@perkinscoie.com
    Amanda L. Andrade
    AAndrade@perkinscoie.com

*Attorneys for Plaintiff Twitter, Inc.*

---

and no such interest exists that justifies prohibiting Twitter from disclosing its receipt (or non-receipt) of an NSL or the unlimited duration or scope of the prohibition.").