1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                   NORTHERN DISTRICT OF CALIFORNIA

8

9

10    TWITTER, INC.,                         Case No.  14-cv-04480-YGR

              Plaintiff,                      ORDER DENYING MOTION TO DISMISS AS
11                                            MOOT AND, ON THE COURT'S OWN
12        v.                                  MOTION, ORDERING FILING OF AMENDED
                                              COMPLAINT IN LIGHT OF RECENT
13    LORETTA E. LYNCH, et al.,               LEGISLATION

              Defendants.
14

15          On June 3, 2015, Defendants Loretta Lynch, *et al.*, ("the Government") filed a "Notice

16   Regarding Enactment of USA FREEDOM Act of 2015."  (Dkt. No. 67.)  On June 9, 2015,

17   Plaintiff Twitter, Inc. ("Twitter") filed its own Notice regarding the new legislation.  (Dkt. No.

18   68.)  The Court thereafter ordered the parties to file supplemental briefing on the effect of the

19   legislation on both the Government's pending partial motion to dismiss and on the complaint

20   generally, and the parties did so.  (*See* Dkt. Nos. 69, 74, 75, 76, 77.)

21          On August 28, 2015, the Government filed a Notice of Recent Authority (Dkt. No. 78),

22   attaching a decision of the Ninth Circuit which vacated judgments in several cases pending before

23   it (*In re: National Security Letter* cases, Ninth Circuit Court of Appeal Nos. 13-15957, 13-16731,

24   13-16732), and remanded to the district court for further consideration "in light of the significant

25   changes to" 18 U.S.C. sections 2709 and 3511 effected by the Uniting and Strengthening America

26   by Fulfilling Rights and Ensuring Effective Discipline Over Monitoring Act of 2015, Pub. L. No.

27   114-23, 129 Stat. 268 (2015) ("the USA FREEDOM Act" or "the USAFA").

28          The Court again solicited additional supplemental briefing specifically addressed to

United States District Court
Northern District of California

1    whether the USAFA changed the FISA and NSL-related provisions challenged by Twitter in its

2    complaint (*i.e.*, 18 U.S.C. §§ 2709 and 3511) such that the entire action would be moot.  The

3    parties filed those additional supplemental briefing on September 29, 2015.

4         The Court heard the parties' oral arguments on October 13, 2015.

5         The Court, having carefully considered the parties briefing, their oral arguments, the

6    relevant provisions of the new legislation, and the pleadings in this matter, and for the reasons set

7    forth herein, **ORDERS** that: (1) the Government's pending motion to dismiss is **DENIED AS MOOT**;

8    and (2) on the Court's own motion, Twitter shall file an amended complaint no later than

9    **November 13, 2015**, in light of the mootness of its constitutional challenges to 18 U.S.C. sections

10   2709 and 3511 based upon the amendments to those sections worked by the USAFA, or the instant

11   action will be dismissed without further notice as moot.

12        A federal court may only decide such matters as arise in the context of a genuine case or

13   controversy under Article III of the United States Constitution.  Here, Twitter brought: (1) First

14   Amendment challenges to 18 U.S.C. sections 2709(c) and 3511; and (2) a challenge under the

15   Administrative Procedure Act ("APA") to an action by the Deputy Attorney General ("the DAG

16   Letter") that Twitter contends was a "final agency action" to regulate the ways in which

17   communications providers could report data on government requests for its customers'

18   information.  Subsequently, Congress enacted the USAFA, which amended sections 2709(c) and

19   3511, and established new statutory mechanisms for public disclosure of requests received by

20   communications providers.  Those new statutory mechanisms included disclosure of aggregate

21   data in bands similar to, but narrower and more specific than, those set forth in the DAG Letter.

22   The Court concludes that the changes wrought by the USAFA abrogate all challenges raised in

23   Twitter's complaint, and preclude the Court from providing any effective relief thereon.  In the

24   absence of amendments to the complaint to address these changes, dismissal is appropriate.

25   **I.    BACKGROUND**

26        Twitter's action herein alleges claims for declaratory relief from prohibitions on its speech

27   in violation of the First Amendment.  The Complaint alleges, among other things, that Twitter

28   seeks to publish a "Transparency Report" with certain data about legal process it has received

United States District Court
Northern District of California

from the Government, including requests pursuant to the Foreign Intelligence Surveillance Act ("FISA") and National Security Letters ("NSLs").

### A. Underlying Facts

On January 27, 2014, in connection with pending complaints filed with the Foreign Intelligence Surveillance Court ("FISC") by Facebook, Google, Yahoo, Microsoft, and LinkedIn, the Government filed a Notice attaching and referencing the DAG Letter. The Notice to the FISC stated:

> The Director of National Intelligence has declassified the aggregate data consistent with the terms of the attached [DAG Letter], in the exercise of the Director of National Intelligence's discretion pursuant to Executive Order 13526, § 3.1(c). The Government will therefore treat such disclosures as no longer prohibited under any legal provision that would otherwise prohibit the disclosure of classified data, including data relating to FISA surveillance. It is the Government's position that the terms outlined in the Deputy Attorney General's letter define the limits of permissible reporting for the parties and other similarly situated companies.

*See* Complaint, Exh. 2 ("FISC Notice"); *see also* Complaint, Exh. 1 (the DAG Letter). The DAG Letter "memorialize[d] the new and additional ways in which the government will permit [providers] to report data concerning requests for customer information." (*Id.*) The letter stated:

> In the summer of 2013, the government agreed that providers could report in aggregate the total number of all requests received for customer data, including all criminal process, NSLs, and FISA orders, and the total number of accounts targeted by those requests in bands of 1000. In the alternative, the provider could separately report precise numbers of criminal process received and number of accounts affected thereby, as well as the number of NSLs received and the number of accounts affected thereby in bands of 1000. Under this latter option, however, a provider could not include in its reporting any data about FISA process received. [¶] The government is now providing two alternative ways in which companies may inform their customers about requests for data. Consistent with the President's direction in his speech on January 17, 2014, these new reporting methods enable communications providers to make public more information than ever before about the orders that they have received to provide data to the government.

(Complaint, Exh. 1.) The DAG Letter went on to set forth, in detail, two different reporting options that a provider could use in disclosing information about the numbers of requests for information they have received, along with limitations on the timing of publication of such

numbers.  (*Id.*)

That same date the Government issued a "Joint Statement by Director of National Intelligence James Clapper and Attorney General Eric Holder on New Reporting Methods for National Security Orders."[1]  The Joint Statement said,

> As indicated in the Justice Department's filing with the Foreign Intelligence Surveillance Court, the administration is acting to allow more detailed disclosures about the number of national security orders and requests issued to communications providers, the number of customer accounts targeted under those orders and requests, and the underlying legal authorities.  Through these new reporting methods, communications providers will be permitted to disclose more information than ever before to their customers.  [¶] This action was directed by the President earlier this month in his speech on intelligence reforms.  While this aggregate data was properly classified until today, the Office of the Director of National Intelligence, in consultation with other departments and agencies, has determined that the public interest in disclosing this information now outweighs the national security concerns that required its classification…. [¶] The declassification reflects the Executive Branch's continuing commitment to making information about the government's intelligence activities publicly available where appropriate and is consistent with ensuring the protection of the national security of the United States.

Executive Order 13526 section 3.1(d) permits an agency of the executive branch to declassify previously classified information.

On April 1, 2014, Twitter submitted to the government a draft transparency report containing information and discussion about the aggregate numbers of NSLs and FISA orders it received in the second half of 2013.  Twitter requested "a determination as to exactly which, if any, parts of its Transparency Report are classified or, in the [government's] view, may not lawfully be published online."  (Complaint, Exh. 3.)  Five months later, on September 9, 2014, the Government, in a letter from James A. Baker, General Counsel of the Federal Bureau of Investigation, notified Twitter that "information contained in the report is classified and cannot be

---

[1]  This statement, dated January 27, 2014, was made on the Internet at a webpage entitled "IC On The Record." (*available at* http://icontherecord.tumblr.com/post/74761658869/joint-statement-by-director-of-national).  The webpage states in its sidebar descriptor "IC ON THE RECORD: Direct access to factual information related to the lawful foreign surveillance activities of the U.S. Intelligence Community.  Created at the direction of the President of the United States and maintained by the Office of the Director of National Intelligence."  The webpage also includes a clickable button labeled "Follow @IContheRecord" linking to the Twitter website.

United States District Court
Northern District of California

publicly released" because it does not comply with the government's approved framework for reporting data about FISA orders and NSLs.  (Complaint, Exh. 5.)  The Government's September 9, 2014 response did not identify what specific language in the draft transparency report could or could not be disclosed.  (*Id.*)[2]

### B.      Procedural History of this Case

Twitter filed its Complaint herein on October 7, 2014.  On January 9, 2015, defendants moved to dismiss portions of the complaint filed October 7, 2014, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and for prudential reasons.  After full briefing and extensions of time by the parties, the Court heard oral argument on the motion May 5, 2015, and took the matter under submission.

On June 3, 2015, the Government filed its notice regarding the enactment of the USAFA (Dkt. No. 67), which was quickly followed by Twitter's notice of the same legislation, albeit stating a different position as to its effect.

As stated above, at the direction of the Court, the parties filed supplemental briefing on the effect of the new legislation on the pending motion and the complaint, as well as responses to those briefs.

### C.      Enactment of the USAFA

The USAFA made a number of additions and changes to the FISA.  As pertinent here:

1.      The USAFA, section 603(a), added new provisions permitting providers who have received national security legal process, such as an NSL or FISA order, to release publicly:

a.  semiannual report that aggregates in separate bands of 1000, starting with 0-999: the number of NSLs the person was required to comply with; the number of customer selectors (*e.g.*, user accounts) targeted by NSLs; the combined number of FISA orders or directives received requiring the person to provide communication contents; the number of customer selectors targeted by orders or directives for contents; the number of FISA orders received for non-content information; and the number of customer selectors targeted under

---

[2] Six weeks after Twitter filed this lawsuit, on November 17, 2014, the Government prepared a redacted version of the draft transparency report that it agreed could be released publicly by Twitter.  (Dkt. No. 21.)

United States District Court
Northern District of California

United States District Court
Northern District of California

FISA orders for certain types of non-content information, and decreased from 24 to 18 months the requirement to wait on reporting applicable to new platforms, products, or services.  50 U.S.C. § 1874(a)(1).

b.  a report consistent with the above but reporting in bands of 500, starting with 0-499, so long as non-content FISA data is not broken out by authority, and with a decrease in the delay period with respect to new platforms, products, or services from 24 to 18 months.  50 U.S.C. § 1874(a)(2).

c.  a report consistent with the above but reporting in bands of 250, starting with 0-249, the total number of all national security legal process received (including NSLs and FISA orders and directives) and the total number of customer selectors targeted by such national security legal process, and the delayed reporting provisions do not apply.  50 U.S.C. § 1874(a)(3).

d.  an annual report of the total number of all national security process received and the number of customer selectors targeted under all such legal process received in bands of 100, starting with 0-99.  50 U.S.C. § 1874(a)(4).

2.      The USAFA amended the terms of 18 U.S.C. section 3511(b) to provide an NSL recipient with two alternative means to obtain judicial review of a nondisclosure requirement: (a) by filing a petition for judicial review; or (b) by notifying the Government that it desires a court review, shifting the burden to the Government to justify a nondisclosure requirement.  18 U.S.C. § 3511(b)(1)(A).  If the recipient requests the Government seek a court review, the Government must apply for a nondisclosure order within thirty days thereafter.  *Id.* § 3511(b)(1)(B).  The Government must present a certification including the Government's "statement of specific facts" explaining why the absence of a prohibition on disclosure may result in enumerated harms.  *Id.* § 3511(b)(2).  The district court is required to "rule expeditiously," and, to "issue a nondisclosure order that includes conditions appropriate to the circumstances," if it determines that the requirements for nondisclosure are met.  *Id.* § 3511(b)(1)(C).

3.      The USAFA repealed the provision (formerly in § 3511(b)(2)-(3)) that gave conclusive effect to a good-faith certification by specified officials of certain harms, as well as the provision (formerly in § 3511(b)(3)) that required an NSL recipient in certain circumstances to

wait one year after an unsuccessful challenge before again seeking judicial relief.

4.      The USAFA, section 502, amends 18 U.S.C. § 2709(b) and (c), and adds new subsection (d).  As revised by the Act, § 2709(c) now expressly requires the Government to provide the NSL recipient with notice of the right to judicial review in order for the prohibition on disclosure to apply.  18 U.S.C. § 2709(c)(1)(A).  New section 2709(d) adds that an NSL or a nondisclosure requirement accompanying an NSL shall be subject to judicial review under § 3511 and that an NSL shall include notice of the availability of judicial review.  18 U.S.C. § 2709(d)(1), (2).

## II.      APPLICABLE AUTHORITY ON JUSTICIABILITY AND MOOTNESS

The Constitution limits the federal judicial power to designated "cases" and "controversies."  U.S. Const., Art. III, § 2.  Federal courts do not have power to decide questions of law except as they arise in the context of a genuine "case" or "controversy" within the meaning of Article III.  *SEC v. Medical Committee for Human Rights,* 404 U.S. 403, 407 (1972).  "(A)n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67 (1997) (internal quotations omitted); *see also Alvarez v. Smith*, 558 U.S. 87, 92-94 (2009); *Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.*, 404 U.S. 412, 414 (1972) (per curiam) ("We must review the judgment of the District Court in light of Florida law as it now stands, not as it stood when the judgment below was entered.").  Unless a party can obtain effective relief by its complaint, any opinion as to the legality of a challenged action would be merely advisory.  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).

The voluntary cessation of challenged conduct does not ordinarily render a case moot, since the conduct could be resumed.  *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 (1982).  However, a statutory change is usually enough to render a case moot, even if the legislature has the power to modify the statute again after the lawsuit is dismissed.  *See Maldonado v. Morales*, 556 F.3d 1037, 1042 (9th Cir. 2009); *see also Diffenderfer*, 404 U.S. at 414-15 (where the only relief sought was to declare a statute unconstitutional, repeal of statute mooted the action); *Matter of Bunker Ltd. P'ship*, 820 F.2d 308, 313 (9th Cir. 1987) ("Offering an

United States District Court
Northern District of California

United States District Court
Northern District of California

1  advisory opinion construing a statute that is not before us in order to grasp at a finding of a live

2  controversy embodies obvious and fundamental inconsistencies, and is contrary to the case or

3  controversy requirement."). "[T]he Supreme Court and [the Ninth Circuit] have repeatedly held

4  that a case is moot when the challenged statute is repealed, expires, or is amended to remove the

5  challenged language." *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166 (9th Cir.

6  2011) ("Don't Ask, Don't Tell" statute repealed during pendency of appeal of Constitutional

7  challenge); *see also Princeton Univ. v. Schmidt*, 455 U.S. 100, 101, 103 (1982) (per curiam) (First

8  Amendment challenge to prior set of university regulations governing on-campus speech by

9  members of the public was mooted when the university substantially amended those regulations to

10  create a more permissive scheme). Similarly, when subsequent legislation or rulemaking

11  supersedes challenged regulations or rules, the challenge is moot. *NRDC v. U.S. Nuclear*

12  *Regulatory Comm'n*, 680 F.2d 810, 813-14 & n.8 (D.C. Cir. 1982) (challenge to interim rule for

13  failure to abide by notice and comment requirements mooted by issuance of final rule with notice

14  and comment); *Bullfrog Films, Inc. v. Wick*, 959 F.2d 778, 780 (9th Cir. 1992) (appeal moot where

15  interim regulations found unconstitutional by the district court have been supplanted by the new

16  legislation).

17      In *Maldonado*, a district court issued an injunction to remedy the constitutional violation:

18  impermissibly favoring commercial over non-commercial speech by allowing exceptions for

19  certain commercial advertising but not non-commercial messages. *Maldonado*, 556 F.3d at 1042.

20  The California Legislature thereafter enacted a statute that specifically excepted non-commercial

21  speech from such regulation. Finding that the statute addressed exactly the constitutional problem

22  raised in the complaint, the Ninth Circuit dismissed the appeal as moot. *Id*.

23  **III.   DISCUSSION**

24      Twitter's Complaint alleges a violation of the APA with respect to the DAG letter, as well

25  as facial and as-applied challenges to sections 2709(c) and 3511. The Government argued for

26  partial dismissal of the claims on several grounds: (1) that Twitter had no standing to seek judicial

27  review of the DAG letter because it was not "final agency action" for purposes of the APA; (2)

28  that the Court should decline jurisdiction and defer decision on FISA-based claims to the FISC

1    based upon comity and prudential considerations; (3) that the Court should dismiss the challenge

2    to section 3511 based upon the reasoning expressed in *John Doe, Inc. v. Mukasey*, 549 F.3d 861

3    (2d Cir. 2008), rather than following the analysis of the district court in the *In re Nat'l Sec. Letter*,

4    930 F. Supp. 2d 1064, 1073 (N.D. Cal. 2013) ("*In re NSL*").

5         Each of the argued grounds for dismissal is eliminated by the provisions of the new

6    USAFA.  First, the Government concedes what seems apparent from the legislation: whatever

7    effect the DAG Letter had, it is now superseded by section 603 of the USAFA.  Section 603

8    permits disclosure of aggregate data in bands, some of which track those set forth in the DAG

9    Letter, and some that differ.  Twitter argues that the USAFA does not supersede the DAG Letter

10   because it offers more options for reporting by communications providers than the DAG Letter

11   did.  Twitter further argues that the Government cannot simply withdraw the DAG Letter because

12   a legislative rule (that Twitter complains was not adopted in accord with the APA to begin with)

13   cannot be *withdrawn* except through a notice-and-comment process consistent with the

14   requirements of the APA, 5 U.S.C. section 551(5).  Both of Twitter's arguments are untenable.

15   Whether the DAG Letter is a non-binding statement of agency guidance (as the Government

16   would have it) or an improperly adopted regulation (as Twitter would have it), *Congress* surely

17   can enact legislation that supplants the disclosure options set forth in the DAG Letter with a set of

18   more detailed and unqualified disclosure options.  *See Mohasco Corp. v. Silver*, 447 U.S. 807, 825

19   (1980) (agency's "'interpretation' of the statute cannot supersede the language chosen by

20   Congress"); *Pac. Gas & Elec. Co. v. United States*, 664 F.2d 1133, 1136 (9th Cir. 1981) ("a

21   regulation which operates to create a rule out of harmony with the statute, is a mere nullity").

22   Twitter offers no authority to the contrary.  Moreover, the notion that an APA process would have

23   to be followed in order to withdraw a rule that Twitter claims was not properly adopted through

24   the APA in the first place defies logic and is similarly unsupported by any authority cited by

25   Twitter.

26        Because the USAFA results in the DAG Letter having no legal effect, the issue of whether

27   it was a "final agency action" or not, raised in the Government's motion, is now purely an

28   academic question.  The Court's jurisdiction does not include the dispensing of advisory opinions

United States District Court
Northern District of California

9

United States District Court
Northern District of California

on agency actions that have been rendered legal nullities by subsequent legislation.  *See Diffenderfer*, 404 U.S. at 414-15; *Maldonado*, 556 F.3d at 1042.  To the extent that Twitter seeks to challenge the constitutionality of any of the USAFA limitations, its challenge would need to be addressed to the new legislation.[3]

Second, and similarly, the challenge to section 3511, and the Government's argument that it should be dismissed as a matter of law, is no longer properly before the Court given the amendments to the FISA provisions at issue.[4]  Twitter argues that the USAFA did not provide a standard of review that is meaningfully different the one challenged in its complaint, and that the USAFA still gives an unconstitutional level of deference to government nondisclosure decisions.  However, Twitter's argument ignores the significant changes and safeguards to the judicial review process that were added to sections 3511(b)(1) and (2) by the USAFA.  The House Report in connection with the legislation says that these sections were enacted to "correct[] the constitutional defects in the issuance of NSL nondisclosure orders found by the Second Circuit Court of Appeals in *Doe v. Mukasey*, 549 F.3d 861 (2d. Cir. 2008), and adopt[] the concepts suggested by that court for a constitutionally sound process."  H.R. Rep. No. 114-109, at 24.  The defects identified in *Mukasey* are the same defects identified by the district court in the *In re NSL*

---

[3]  Twitter seems to argue that the speech permitted by the DAG Letter is somehow *greater* than what would be permitted under the USAFA and that "the speech permitted under the DAG Letter would need to be *reclassified* or lawfully brought under some new nondisclosure provision for it now to be considered prohibited speech." (Twitter Reply Supp. Brief, Dkt. 76, at 2:7-9.)  The Court reads the disclosures allowed under the USAFA to be more permissive than the DAG Letter allowed, such that anything permitted under the DAG Letter would also be permitted under the USAFA.  Moreover, the USAFA provides: "Nothing in this section prohibits the Government and any person from jointly agreeing to the publication of information referred to in this subsection in a time, form, or manner other than as described in this section."). USAFA § 603(c), *codified at* 50 U.S.C. § 1874(c).

The Court further notes that, according to the Government's brief, the DNI declassified aggregate data reported consistent with the USAFA, pursuant to Pursuant to Executive Order 13,526.  *See* 75 Fed. Reg. 1013 (Dec. 29, 2009).

[4] In addition, the Government's argument that the Court should delay decision on the motion with respect to section 3511 until the Ninth Circuit has ruled on the *In re NSL* appeal is mooted for the separate reason that the Ninth Circuit has vacated the judgment in that case and remanded it for further consideration in light of the passage of the USAFA.  (*See* Dkt. No. 78.)

case on which Twitter relies.  *In re NSL*, 930 F. Supp. 2d at 1073.  Indeed, Twitter argued that the Second Circuit's decision in *Mukasey* "correctly identified the constitutional problems posed by Section 2709(c)'s broad language," even if it reached the wrong conclusion about the mitigating effect of Department of Justice policies and regulations on that potential constitutional violation. (Twitter Oppo., Dkt. No. 34, 19:9-19.)  Thus, the USAFA was directly addressed to correcting the defects identified by Twitter, in the manner indicated by both *Mukasey* and *In re NSL*. Consequently, Twitter's contention that the USAFA does not moot its challenge to section 3511, as currently alleged, is without merit.

Along those same lines, the USAFA's changes to section 2709 make Twitter's facial and as-applied challenges to the prior versions of these nondisclosure provisions no longer germane. Twitter alleged that section 2709 was a prior restraint and content-based restriction on speech that was not narrowly tailored and lacked procedural safeguards consistent with strict scrutiny. (Complaint ¶¶ 46, 47, 48.)  The revisions to section 2709, as well as section 3511, in the USAFA provide for additional safeguards on review of nondisclosure restrictions.  Twitter's challenges are directed to provisions which no longer exist in the same form as when the action here was brought.[5]  Moreover, Twitter framed its allegations as a claim that section 2709(c) was unconstitutional as applied to Twitter "*via the DAG Letter*." (Complaint ¶ 47, emphasis supplied). The DAG Letter, to the extent it was an agency action, has now been superceded.

Finally, the Court has no need to decide the question of whether it should defer to the jurisdiction of the FISC on the FISA-based claims here, since neither this Court nor the FISC would have jurisdiction over a moot action.

In sum, the issues raised in the motion to dismiss are all mooted by the amendments to the FISA statute by the USAFA.   The motion to dismiss, on the grounds as stated, is **DENIED**.

---

[5] Section 2709 incorporates revisions to the nondisclosure review process, as set forth in the amended Section 3511.  As the Court reads those provisions, a recipient who seeks court review shifts the burden to the Government to justify nondisclosure with a statement of specific facts, which permits the court to order nondisclosure subject to conditions as appropriate to the circumstances.  *See* 18 U.S.C. § 3511(b)(1)(A), (B), (C).

United States District Court
Northern District of California

1    However, in light of the amendments to the two key legal provisions challenged herein, and the

2    apparent mootness of Twitter's claims, the Court **ORDERS** on its own motion that Twitter file an

3    amended complaint no later than **November 13, 2015**.  The Court **SETS** a compliance hearing on

4    Friday, November 20, 2015, at 9:01 a.m.  If Twitter has filed its amended complaint timely, no

5    appearance will be required and the Court will vacate the hearing.  If no amended complaint has

6    been filed, this action will be dismissed as moot.

7            **IT IS SO ORDERED.**

8    Dated:  October 14, 2015

     _____
     **YVONNE GONZALEZ ROGERS**
     **UNITED STATES DISTRICT JUDGE**

United States District Court
Northern District of California

12