Eric D. Miller, Bar No. 218416
EMiller@perkinscoie.com
Michael A. Sussmann, D.C. Bar No. 433100 (*pro hac vice*)
MSussmann@perkinscoie.com
James G. Snell, Bar No. 173070
JSnell@perkinscoie.com
Hayley L. Berlin, D.C. Bar No. 1011549 (*pro hac vice*)
HBerlin@perkinscoie.com
Amanda L. Andrade, D.C. Bar No. 1010948 (*pro hac vice*)
AAndrade@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Tel: 650-838-4300
Fax: 650-838-4350
Attorneys for Plaintiff Twitter, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TWITTER, INC.,<br><br>                     Plaintiff,<br><br>          v.<br><br>LORETTA LYNCH, Attorney General of the United States,<br><br>THE UNITED STATES DEPARTMENT OF JUSTICE,<br><br>JAMES COMEY, Director of the Federal Bureau of Investigation, and<br><br>THE FEDERAL BUREAU OF INVESTIGATION,<br><br>                     Defendants. | Case No. 14-cv-4480-YGR<br><br>**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF 28 U.S.C. §§ 2201 and 2202** |

# I. NATURE OF THE ACTION

1. Twitter brings this action for a declaratory judgment and permanent injunction pursuant to 28 U.S.C. §§ 2201 and 2202, requesting relief from prohibitions on its speech in violation of the First Amendment.

2. The U.S. government engages in extensive but incomplete speech about the scope of its national security surveillance activities as they pertain to U.S. communications providers, such as Twitter. At the same time, potential recipients of various national security-related requests are strictly prohibited from providing their own informed perspective as potential recipients of various national security-related requests.

3. Twitter is firmly committed to providing meaningful transparency to its users and the public. Since 2012, Twitter has published a biannual transparency report that sets forth numbers of requests it receives for user information from governments across the globe, including the U.S. government.

4. Twitter seeks to publish information contained in a draft Transparency Report that describes the *amount* of national security legal process that it received, if any, for the period July 1 to December 31, 2013, from the Foreign Intelligence Surveillance Court ("FISC"). In this Transparency Report, Twitter does not seek to disclose information or details concerning any specific order from the FISC that it may have received. Twitter's Transparency Report instead reveals the actual aggregate number of FISA orders received (if any), the volume of FISA orders received by comparison to government-approved reporting structures, and similar information. Twitter also seeks to disclose that it received "zero" FISA orders, or "zero" of a specific *kind* of FISA order, for that period, if either of those circumstances is true.

5. Twitter submitted its draft Transparency Report to Defendants for review on April 1, 2015. Five months later, Defendants informed Twitter that "information contained in the [transparency] report is classified and cannot be publicly released" because it does not comply

-1-

1   with the government's pre-approved framework for reporting data about government requests in

2   national security investigations.

3          6.     The Defendants' response means that Twitter cannot speak about its receipt of

4   national security legal process except in ways that have been preapproved by government

5   officials.  Defendants initially took the position that service providers like Twitter are prohibited

6   from saying that they have received zero national security requests, or zero of a particular *kind* of

7   national security request, although Defendants later conceded that providers who received zero

8   national security requests for a 6-month period can say so.  (In addition, a number of providers

9   who, presumably, have received *some* orders from the FISC have disclosed publicly that they

10  received zero of a particular *kind* of FISA order, and Twitter is unaware of any comment or action

11  by Defendants to indicate such disclosures are unlawful.)  Twitter's ability to respond to

12  government statements about national security surveillance activities and to discuss the *actual*

13  surveillance of Twitter users is being unconstitutionally restricted by Defendants' interpretation

14  of statutes as prohibiting and even criminalizing a service provider's mere disclosure of the

15  *number* of FISA orders that it has received, if any.

16         7.     Twitter either has received a FISA order in the past or has a reasonable fear of

17  receiving one in the future.  Twitter recognizes that genuine national security concerns require

18  that certain information about such orders be kept secret.  But the interest in secrecy does not last

19  forever, and at some point, release of information about those orders will no longer harm national

20  security.  Twitter seeks to disclose details about specific FISA orders it has received or will

21  receive as soon as doing so will no longer harm national security, but Twitter does not know

22  when, if ever, the Government will allow it to do so.

23         8.     Certain provisions in FISA require court orders issued thereunder to ensure

24  nondisclosure, while other provisions in FISA directly require nondisclosure.  In both cases, the

25  nondisclosure required is of unlimited duration.  These restrictions constitute an unconstitutional

26  prior restraint and content-based restriction on, and government viewpoint discrimination against,

27  Twitter's right to speak about information of national and global public concern.  Twitter is

28
                                          -2-

1  entitled under the First Amendment to respond to its users' concerns and to the statements of U.S.

2  government officials by providing more complete information about the limited scope of U.S.

3  government surveillance of Twitter user accounts.

4       9.     Defendants have displayed a pattern of informal, overly expansive, delayed and

5  conflicting actions with regard to disclosures that providers generally, and Twitter specifically,

6  are permitted to make about receipt of national security legal process.  This results in chilling and

7  prohibiting far more speech than the Constitution tolerates.  Twitter requires court intervention to

8  rein in this undisciplined abuse of government discretion to control public speech.

9  **II.     PARTIES**

10       10.     Plaintiff Twitter, Inc. ("Twitter") is a corporation with its principal place of

11  business located at 1355 Market Street, Suite 900, San Francisco, California.  Twitter is a global

12  information sharing and distribution network serving over 320 million monthly active users

13  around the world.  People using Twitter write short messages, called "Tweets," of 140 characters

14  or fewer, which are public by default and may be viewed all around the world instantly.  As such,

15  Twitter gives a public voice to anyone in the world—people who inform and educate others, who

16  express their individuality, who engage in all manner of political speech, and who seek positive

17  change.  Twitter is an electronic communications service ("ECS"), as that term is defined at 18

18  U.S.C. § 2510(15), since it provides its users the ability to send and receive electronic

19  communications.  As an ECS and a third-party provider of communications to the public, Twitter

20  is subject to the receipt of a variety of civil, criminal, and national security legal process,

21  including court orders issued under the Foreign Intelligence Surveillance Act ("FISA").

22  Compliance with such legal process can be compelled through the aid of a court.

23       11.     Defendant Loretta Lynch is the Attorney General of the United States and heads

24  the United States Department of Justice ("DOJ").  She is sued in her official capacity only.

25       12.     Defendant DOJ is an agency of the United States.  Its headquarters are located at

26  950 Pennsylvania Avenue, NW, Washington, D.C.

27

28

-3-

13.     Defendant James Comey is the Director of the Federal Bureau of Investigation ("FBI").  He is sued in his official capacity only.

14.     Defendant FBI is an agency of the United States.  Its headquarters are located at 935 Pennsylvania Avenue, NW, Washington, D.C.

### III.     JURISDICTION

15.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1331, as this matter arises under the Constitution, laws, or treaties of the United States.  More specifically, this Court may provide injunctive relief and declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, relating to, among other things, Twitter's contention that certain nondisclosure requirements and related penalties concerning the receipt of court orders issued under FISA, as described below, are unconstitutionally restrictive of Twitter's First Amendment rights, either on their face or as applied to Twitter.  This Court is authorized to issue a declaratory judgment and injunction against Defendants under 5 U.S.C. § 702.

### IV.     VENUE

16.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the action occurred in this judicial district, Twitter resides in this district, Twitter's speech is being unconstitutionally restricted in this district, and the Defendants are officers and employees of the United States or its agencies operating under the color of law.

### V.     FACTUAL BACKGROUND

**A.     FISA Provisions, Including Nondisclosure Obligations**

17.     Five subsections ("Titles") of FISA permit the government to seek real-time surveillance or disclosure of stored records from an ECS like Twitter: Title I (electronic surveillance of the content of communications and all communications metadata); Title III (disclosure of stored content and noncontent records); Title IV (provisioning of pen register and trap and trace devices to obtain dialing, routing, addressing and signaling information); Title V (disclosure of certain "business records") (also referred to as "Section 215 of the USA Patriot Act"); and Title VII (surveillance of non-U.S. persons located beyond U.S. borders).  In the case

-4-

1  of orders issued pursuant to Titles I, III, IV and V, surveillance of the specified target is approved

2  by the FISC; under Title VII, the FISC annually approves procedures for surveillance, but the

3  government selects targets of surveillance without court supervision.

4        18.    Each of these titles of FISA contains a restriction that limits a provider's ability to

5  disclose information relating to a specific FISA request.  Several provisions require the FISC to

6  direct the recipient of a FISA request to comply in such a manner as will protect the secrecy of

7  the court-ordered electronic surveillance, physical search, or installation of a pen register or trap

8  and trace device, or the acquisition of foreign intelligence information, 50 U.S.C. §§

9  1805(c)(2)(B) (Title I); 1824(c)(2)(B) (Title III); 1842(d)(2)(B) (Title IV); 1881a(h)(1)(A) (Title

10  VII).  FISA also contains provisions that directly instruct the recipient of a FISA order that it may

11  not disclose the existence of a pen register or trap and trace device "unless or until ordered by the

12  court," 50 U.S.C. §§ 1842(d)(2)(B) (Title IV), and that it may not "disclose to any other person"

13  the existence of a business records order, 50 U.S.C. § 1861(d)(1) (Title V).

14        19.    No provision in FISA prohibits or directs the FISC to prohibit the disclosure of

15  *aggregate numbers* of FISA orders received.

16        20.    Defendants have taken the position that the aggregate number of FISA orders

17  received by a particular ECS are classified and cannot be disclosed.  However, defendants have

18  not provided any documentation of this classification decision, other than in a cursory manner in

19  a letter denying Twitter's request to publish its draft Transparency Report.   Letter from James A.

20  Baker, Gen. Counsel, FBI, to Michael A. Sussmann (Sept. 9, 2014) (Dkt. No. 1, Ex. 5.); *see* ¶ 37

21  *infra*.  Further, Defendants have not disclosed the basis for the determination, the classifying

22  authority who made it, or—most important—the date until which such information remains

23  classified and its disclosure therefore prohibited.  (All classified documents, including FISA

24  orders, identify on their face the classifying authority and date of declassification.)

25  **B.**    **The Espionage Act**

26        21.    The Espionage Act criminalizes a number of actions involving the disclosure or

27  improper handling of information "relating to the national defense."  18 U.S.C. § 793.  Subsection

28

-5-

(d) of the Espionage Act criminalizes the willful communication or delivery of any information relating to the national defense that could be used to the injury of the United States or to the advantage of any foreign nation, by someone who has lawful possession of same, to any person not entitled to receive it.  *Id*. § 793(d).  Penalties for violations of the Espionage Act include fines and imprisonment.  *Id*.

22.     Twitter is informed and believes and is concerned that if it were to publicly disclose the actual aggregate number of FISA orders or directives it may have received—which would constitute more detailed reporting than permitted under the options provided in the USAFA—or if Twitter were to publicly disclose its unredacted draft Transparency Report, Defendant DOJ may seek to prosecute Twitter and impose the applicable penalties under the Espionage Act.

**C.    The Government's Restrictions on Other Communications Providers' Ability to Discuss Their Receipt of National Security Legal Process**

23.     On June 5, 2013, the British newspaper *The Guardian* reported the first of several leaks of classified material from Edward Snowden, a former U.S. government contractor, which have revealed—and continue to reveal—multiple U.S. government intelligence collection and surveillance programs.

24.     The Snowden disclosures deepened public concern regarding the scope of governmental national security surveillance.  This concern has been shared by members of Congress, industry leaders, world leaders, and the media.  In response to this concern, the government has selectively declassified surveillance-related information for public dissemination, a number of executive branch officials have made public statements characterizing and revealing select details of specific U.S. surveillance programs—including the nature and extent of involvement of U.S. communications providers—and the government has engaged in a programmatic review of classification determinations with a stated goal of declassifying more information.

25.    While engaging in their own carefully crafted speech, U.S. government officials have relied on statutory and other authorities to preclude communications providers from responding to leaks and inaccurate information reported in the media and by public officials, and related public concerns regarding the providers' involvement with and exposure to U.S. surveillance efforts.  These authorities—and the government's interpretation of and reliance on them—constitute facial and as-applied violations of the First Amendment right to engage in speech regarding a matter of extensively debated and significant public concern.

26.    In response to these restrictions on speech, on June 18, 2013, Google filed in the FISC a Motion for Declaratory Judgment of Google's First Amendment Right to Publish Aggregate Data About FISA Orders.  Google then filed an Amended Motion on September 9, 2013.  Google's Amended Motion sought a declaratory judgment that it had a right under the First Amendment to publish, and that no applicable law or regulation prohibited it from publishing, (1) the total number of requests it receives under various national security authorities, if any, and (2) the total number of users or accounts encompassed within such requests.  Similar motions were subsequently filed by four other U.S. communications providers: Microsoft (June 19, 2013), Facebook (September 9, 2013), Yahoo! (September 9, 2013), and LinkedIn (September 17, 2013).  Apple also submitted an amicus brief in support of the motions (November 5, 2013).

27.    In January 2014, the DOJ and the five petitioner companies reached an agreement that the companies would dismiss the FISC actions without prejudice in return for the DOJ's agreement that the companies could publish information about U.S. government surveillance of their networks in one of two preapproved disclosure formats.  (Two more general reporting options had been approved in the summer of 2013.)  President Obama previewed this agreement in a public speech that he delivered on January 17, 2014, saying, "We will also enable communications providers to make public more information than ever before about the orders that they have received to provide data to the government."  President Barack Obama, Remarks by the President on Review of Signals Intelligence, White House Office of Press Secretary (Jan. 17,

-7-

2014, 11:15 AM), http://www.whitehouse.gov/the-press-office/2014/01/17/remarks-president-review-signals-intelligence.

28.     The two preapproved disclosure formats were set forth in a letter dated January 27, 2014, from Deputy Attorney General James M. Cole to the General Counsels for Facebook, Google, LinkedIn, Microsoft and Yahoo! (the "DAG Letter").  (Dkt. No. 1, Ex. 1.)  (The DAG Letter also included the two other preapproved disclosure formats from the summer of 2013.)  These four preapproved disclosure formats generally permit disclosures of legal process received in wide reporting bands, with slightly more granularity allowed if aggregate FISA orders are reported in combination with aggregate NSLs received.

29.     In a Notice filed with the FISC simultaneously with transmission of the DAG Letter, the DOJ informed the court of the agreement, the new disclosure options detailed in the DAG Letter, and the stipulated dismissal of the FISC action by all parties.  (Dkt. No. 1, Ex. 2.)  The Notice concluded by stating: "It is the Government's position that the terms outlined in the Deputy Attorney General's letter define the limits of permissible reporting for the parties and other similarly situated companies."  (Dkt. No. 1, Ex. 2 at 2.)  In other words, according to the DOJ, the negotiated agreement reached to end litigation by five petitioner companies was not limited to the five petitioner companies as a settlement of private litigation, but instead serves as a disclosure format imposed on a much broader—yet undefined—group of companies.  No further guidance was offered by the DOJ regarding what it considered to be a "similarly situated" company.  Further, the Notice cited no authority for extending these restrictions on speech to companies that were not party to the negotiated agreement.

**D.     The DOJ and FBI Deny Twitter's Request to Be More Transparent**

30.     Twitter is a unique service built on trust and transparency.  Twitter is used by world leaders, political activists, journalists, and millions of other people to disseminate information and ideas, engage in public debate about matters of national and global concern, seek justice, and reveal government corruption and other wrongdoing.  Twitter users are permitted to post under their real names or pseudonymously and the ability of Twitter users to share

-8-

1   information depends, in part, on their ability to do so without undue fear of government

2   surveillance.  Therefore, the ability to engage in speech concerning the nature and extent of

3   government surveillance of Twitter users' activities is critical to Twitter.

4           31.     In July 2012, Twitter released its first Transparency Report.  Release of this

5   Transparency Report was motivated by Twitter's recognition that citizens must "hold

6   governments accountable, especially on behalf of those who may not have a chance to do so

7   themselves."  Jeremy Kessel, Twitter Transparency Report, Twitter Blog (July 2, 2012, 20:17

8   UTC), https://blog.twitter.com/2012/twitter-transparency-report.  This Transparency Report

9   addressed the volume of civil and criminal government requests for account information and

10  content removal, broken down by country, and takedown notices pursuant to the Digital

11  Millennium Copyright Act received from third parties and the number of instances when Twitter

12  responded to these requests.  The report did not contain information regarding government

13  national security requests Twitter may have received.  Subsequent biennial transparency reports

14  have been released since then, including the most recent on August 11, 2015.

15          32.     At Twitter's request, on January 29, 2014, representatives of the DOJ, FBI, and

16  Twitter met at the Department of Justice to discuss Twitter's desire to provide greater

17  transparency regarding the extent of U.S. government surveillance of Twitter's users through

18  NSLs and FISA court orders.  Twitter explained why the DAG Letter should not apply to Twitter,

19  which was not a party to the proceedings that resulted in the DAG Letter.  In response, the DOJ

20  and FBI told Twitter that the DAG Letter sets forth the limits of permissible transparency-related

21  speech for Twitter and that the letter would not be amended or supplemented with additional

22  options of preapproved speech.

23          33.     In February 2014, Twitter released its Transparency Report for the second half of

24  2013, which included two years of data covering global government requests for account

25  information.  In light of the government's admonition regarding more expansive transparency

26  reporting than that set forth in the DAG Letter, Twitter's February 2014 Transparency Report did

27  not include information at the level of granularity Twitter felt provided an accurate and

28                                          -9-

1    representative view of its receipt of and response to U.S. national security requests and had

2    sought approval from Defendants to disclose.

3          34.      In a blog post, Twitter explained the importance of reporting more specific

4    information to users about government surveillance.  Twitter also explained how the U.S.

5    government was unconstitutionally prohibiting Twitter from providing a meaningful level of

6    detail regarding U.S. government national security requests Twitter had or may have received:

7                We think the government's restriction on our speech not only
              unfairly impacts our users' privacy, but also violates our First
8             Amendment right to free expression and open discussion of
              government affairs.  We believe there are far less restrictive ways
9             to permit discussion in this area while also respecting national
              security concerns.  Therefore, we have pressed the U.S.
10            Department of Justice to allow greater transparency, and proposed
              future disclosures concerning national security requests that would
11            be more meaningful to Twitter's users.

12    Jeremy Kessel, *Fighting for more #transparency*, Twitter Blog (Feb. 6, 2014, 14:58

13
14    UTC), https://blog.twitter.com/2014/fighting-for-more-transparency.

15          35.      On or about April 1, 2014, Twitter submitted a draft July 2014 Transparency

16    Report to the FBI, explaining:

17                We are sending this to you so that Twitter may receive a
              determination as to exactly which, if any, parts of its Transparency
18            Report are classified or, in the Department's view, otherwise may
              not lawfully be published online.
19
20    A copy of Twitter's letter dated April 1, 2014, was filed with this Court as Dkt. No. 1, Ex. 3.

21    Twitter's draft Transparency Report, which has already been filed and submitted to the Court, is

22    Dkt. No. 1, Ex. 4.

23          36.      Through its draft Transparency Report, Twitter seeks to disclose certain categories

24    of information to its users for the period July 1 to December 31, 2013, including:

25          a.      The number of NSLs and FISA orders Twitter received, if any, in actual
                  aggregate numbers (including "zero," to the extent that that number was
26                applicable to an aggregate number of NSLs or FISA orders, or to specific
                  *kinds* of FISA orders that Twitter may have received);
27

28                                      -10-

b.   The number of NSLs and FISA orders received, if any, reported separately, in ranges of one hundred, beginning with 1–99;

c.   The combined number of NSLs and FISA orders received, if any, in ranges of twenty-five, beginning with 1–24;

d.   A comparison of Twitter's proposed (i.e., smaller) ranges with those authorized by the DAG Letter;

e.   A comparison of the aggregate numbers of NSLs and FISA orders received, if any, by Twitter and the five providers to whom the DAG Letter was addressed; and

f.   A descriptive statement about Twitter's exposure to national security surveillance, if any, to express the overall degree of government surveillance it is or may be subject to.

37.   For five months, Defendant FBI considered Twitter's written request for review of the draft Transparency Report.  In a letter dated September 9, 2014, the FBI denied Twitter's request.  A copy of the FBI's letter was filed with this Court as Dkt. No. 1, Ex. 5.  Defendant FBI's letter did not, as requested, identify exactly which specific information in the draft Transparency Report was classified and therefore could not lawfully be published.  Instead, the letter stated that "information contained in the report" cannot be publicly released; it provided examples of such information in the draft Transparency Report; and it relied on a general assertion of national security classification and on the pronouncements in the DAG Letter as its bases for denying publication:

> We have carefully reviewed Twitter's proposed transparency report and have concluded that information contained in the report is classified and cannot be publicly released.
>
> . . . Twitter's proposed transparency report seeks to publish data . . . in ways that would reveal classified details about [government] surveillance and that go beyond what the government has permitted other companies to report. . . .  This is inconsistent with the January 27th framework [set forth in the DAG Letter] and discloses properly classified information.

Dkt. No. 1, Ex. 5, at 1.  Defendant FBI reiterated that Twitter could engage only in speech that did not exceed the preapproved speech set forth in the DAG Letter.  It noted, for example, that Twitter could

-11-

> explain that only an infinitesimally small percentage of its total number of active users was affected by [government surveillance by] highlighting that less than 250 accounts were subject to all combined national security legal process . . . . That would allow Twitter to explain that all national security legal process received from the United States affected, at maximum, only 0.0000919 percent (calculated by dividing 249 by 271 million) of Twitter's total users. In other words, Twitter is permitted to *qualify* its description of the total number of accounts affected by all national security legal process it has received but it cannot *quantify* that description with the specific detail that goes well beyond what is allowed under the January 27th framework and that discloses properly classified information.

*Id.* at 1–2.

38.     Because Defendant FBI's response did not identify the exact information in the draft Transparency Report that could not be published, and because the publication of any specific fact the government considers classified could result in prosecution, fines, and imprisonment, Twitter did not at that time publish any part of the report.

39.     Defendant FBI did not, as the First Amendment requires, prohibit only speech that would harm national security; instead, it prohibited all of the speech in Twitter's draft Transparency Report and thereby prohibited speech that was not classified, in violation of the First Amendment.

40.     Defendants' communications with Twitter in response to Twitter's inquiries and in its pleadings and argument in the current litigation regarding the extent to which transparency reporting is classified or otherwise prohibited from disclosure have been incomplete, inconsistent and contradictory.

**E.     Twitter Brings Suit Against Defendants**

41.     On October 7, 2014, Twitter filed a Complaint against Defendants seeking declaratory and injunctive relief.  (Dkt. No. 1.)

42.     On November 17, 2014, Defendant DOJ provided to Twitter a redacted, unclassified, public version of the draft Transparency Report that Twitter submitted to Defendants

-12-

1  on April 1, 2014.  Defendant DOJ simultaneously filed the redacted Transparency Report.  (Dkt.

2  No. 21.)

3       43.    On January 9, 2015 Defendants filed a partial motion to dismiss.  (Dkt. No. 28.)  In

4  a footnote, Defendants noted their position that "[o]f course, disclosing the number of Title I

5  orders received would violate" a nondisclosure provision within a FISC order "as it would

6  'disclose . . . the existence' of each of the orders."  (Dkt. No. 28, at 15.)  Defendants also

7  repeatedly claimed that the basis for their prohibition on Twitter's speech was not the DAG

8  Letter, but rather the underlying national security statutes, including FISA, and FISA orders

9  issued thereunder.

10       44.    On March 4, 2015, Defendants filed a reply in support of the partial motion to

11  dismiss.  (Dkt. No. 57.)  In that filing, Defendants asserted that "the Government has never taken

12  [the] position" that a provider that has never received an NSL or FISA order is prohibited from

13  saying so.  (Dkt. No. 57, at 8.)

14       45.    A hearing on Defendants' partial motion to dismiss was held on May 5, 2015.

15  **F.    Passage of the USA FREEDOM Act and Supplemental Court Briefings**

16       46.    On June 2, 2015, President Obama signed into law the Uniting and Strengthening

17  America by Fulfilling Rights and Ensuring Effective Discipline Over Monitoring Act of 2015,

18  Pub. L. No. 114-23, 129 Stat. 268 (2015) ("USA FREEDOM Act" or "USAFA").  The statute

19  contains no express findings, and nothing in the legislative history indicates that Congress made

20  any factual finding regarding how much information regarding U.S. national security requests

21  could be disclosed without harm to national security.  The USAFA provides four new options for

22  providers such as Twitter to report the volume of national security process received.  Like the

23  DAG Letter, the USA FREEDOM Act provides for wide reporting bands with more granularity

24  permitted where the number of FISA orders received are combined with the number of NSLs

25  received.  On its face, the USAFA is permissive; that is, it allows providers to use one of the

26  reporting options it provides, but it contains no express prohibition on other disclosures, and it

27  does not amend or otherwise affect any of the nondisclosure requirements in FISA.

28

-13-

47.     On June 11, 2015, the Court directed the parties to "file supplemental briefing on the effect of this legislation, both as to the pending partial motion to dismiss and as to the ultimate claims for relief in Plaintiff's Complaint." (Dkt. No. 69.)  The Court subsequently requested additional briefing on discrete questions.  (Dkt. No. 81.)  Defendants took the position in that supplemental briefing that the USA FREEDOM Act superseded the DAG Letter, but was permissive only and did not itself prohibit any speech.  Defendants continued to claim that any prohibition on Twitter's speech came from the underlying national security statutes, including FISA, and FISA orders issued thereunder.

48.     Following supplemental briefing and a hearing, on October 14, 2015, the Court denied Defendants' Motion to Dismiss as moot and, on the Court's own motion, ordered filing of an amended complaint in light of the passage of the USAFA.  (Dkt. No. 85.)

## COUNT I

### Nondisclosure provisions in FISA are facially unconstitutional because they are of unlimited duration.

49.     Twitter incorporates the allegations contained in paragraphs 1 through 48, above.

50.     The FISA nondisclosure provisions under Titles I, III, IV and VII require or allow that orders or directives issued thereunder ensure that the information produced to Defendants is produced in "a manner as will protect its secrecy."  50 U.S.C. § 1805(c)(2)(B) (Title I); 50 U.S.C. § 1824(c)(2)(B) (Title III); 50 U.S.C. § 1842(d)(2)(B) (Title IV); 50 U.S.C. § 1881a(h)(1)(A) (Title VII).  The FISA nondisclosure provision under Title IV also requires that Title IV orders direct that the recipient of an order "shall not disclose the existence of the investigation or of the pen register or trap and trace device to any person *unless or until ordered by the court*."  50 U.S.C. § 1842(d)(2)(B) (Title IV) (emphasis added).  The FISA nondisclosure provision under Title V differs from the other FISA nondisclosure provisions inasmuch as it does not provide a requirement for court orders but, instead, directly imposes a nondisclosure obligation on the recipient of a Title V FISA order, stating that "[n]o person shall disclose to any other person that the Federal Bureau of Investigation has sought or obtained tangible things pursuant to an order

-14-

1  under this section." 50 U.S.C. § 1861(d)(1).  These provisions on their face require that FISA

2  orders and/or directives be kept secret for an indefinite and indeterminate period of time—even

3  decades after such an order or directive was issued, and even after classification of the order or

4  directive has ended.  Title IV and V, on their face, prohibit the recipient of an order from

5  disclosing even the fact of receipt of an order issued under Title IV or V.

6      51.    On information and belief, in the 37 years since FISA's enactment, the

7  government has never informed a provider that a previously received FISA order no longer

8  needed to be kept secret and it, or information regarding it, could be disclosed.

9      52.    This indefinite prohibition on lawful speech is unconstitutional under the First

10  Amendment, including because it does not comport with strict scrutiny.  The nondisclosure

11  provisions are a prior restraint and content-based restriction on recipients' speech, and the

12  unlimited duration of the nondisclosure provisions are not narrowly tailored to serve a compelling

13  state interest.  Twitter therefore seeks a declaration that the FISA secrecy provisions violate the

14  First Amendment on their face.

**COUNT II**

**FISA nondisclosure provisions are unconstitutional as applied to Twitter.**

15

16

17      53.    Twitter incorporates the allegations contained in paragraphs 1 through 48, above.

18      54.    Defendants rely on the nondisclosure provisions in FISA as a basis for claiming

19  that reporting aggregate numbers of FISA orders received, if any, is prohibited.

20      55.    Defendants also rely on the nondisclosure provisions in FISA as a basis for

21  restricting Twitter's ability to publish its draft Transparency Report.

22      56.    In restraining Twitter's speech, Defendants have misinterpreted FISA, which does

23  not prohibit Twitter from disclosing aggregate information about the number of FISA orders it

24  has received, if any.  Instead, FISA protects the secrecy of specific FISA orders, their targets, and

25  ongoing investigations. Twitter has no statutory obligation to remain silent about whether or not it

26  has received FISA orders as a general matter, nor is it prohibited from disclosing the aggregate

27  number of FISA orders it has received.

28

-15-

57.     To the extent that FISA's secrecy provisions are construed to prohibit Twitter from publishing information about the aggregate number of FISA orders it receives, the FISA secrecy provisions are unconstitutional, including because they constitute a prior restraint and content-based restriction on speech in violation of Twitter's First Amendment right to speak about truthful matters of public concern.  The restriction also constitutes viewpoint discrimination, as Defendants have allowed speech on this issue that conforms to their own viewpoint.  Moreover, the restriction on Twitter's speech is not narrowly tailored to serve a compelling governmental interest.

## COUNT III

**The Espionage Act is unconstitutional as applied to Twitter.**

58.     Twitter incorporates the allegations contained in paragraphs 1 through 48, above.

59.     Defendants' public statements have given rise to a reasonable concern that Twitter would face prosecution under the Espionage Act, including under 18 U.S.C. § 793(d), if it were to disclose the aggregate number of FISA orders it has received, if any, or any other information in its draft Transparency Report that has been redacted by Defendants and/or is not consistent with the permissible transparency reporting options in the USAFA.

60.     Given the confusion that Defendants' conduct has created over permissible disclosures by their contradictory positions on reporting zero requests, the basis or bases for prohibiting speech (whether it derives from classification authority or from the nondisclosure provisions of FISA), and their pattern of selective declassification of specific FISA-related and other national security matters to allow government speech, it is unlawful to apply or threaten to apply criminal penalties to communications providers that seek only to share the number of requests they may receive with their users or specific information after a fixed period of nondisclosure.  Furthermore, the Espionage Act itself does not prohibit Twitter from disclosing the aggregate number of FISA orders it has received, if any, or any other information in its draft Transparency Report that has been redacted by Defendants, as such prohibition would be an unconstitutional violation of Twitter's First Amendment rights.

-16-

61.    Any such prosecution of Twitter would be unconstitutional as violating Twitter's First Amendment right to speak about truthful matters of public concern.

## PRAYER FOR RELIEF

WHEREFORE, Twitter prays for the following relief:

A.     A declaratory judgment that:

i.    FISA does not prohibit publication of Twitter's draft Transparency Report with respect to FISA orders received or not received;

ii.    Any interpretation of FISA that prohibits publication of the unredacted Transparency Report with respect to FISA orders received or not received is unconstitutional;

iii.    The FISA secrecy provisions are facially unconstitutional under the First Amendment because they do not require nondisclosure orders to contain a defined duration;

iv.    The FISA secrecy provisions are unconstitutional under the First Amendment as applied to Twitter;

v.    FISA does not restrict reporting aggregate numbers of FISA orders received with no further detail concerning such orders;

vi.    Any interpretation of FISA that prohibits reporting aggregate numbers of FISA orders received with no further detail concerning such orders is unconstitutional; and

vii.    Prosecution of Twitter under the Espionage Act for disclosing the aggregate number of FISA orders it has received, if any, or any other information in its draft Transparency Report that has been redacted by Defendants, would be an unconstitutional violation of Twitter's First Amendment rights.

B.     A preliminary and permanent injunction prohibiting Defendants, their affiliates, agents, employees, and attorneys, and any and all other persons in active concert or participation with them, from seeking to enforce the unconstitutional prohibitions on Twitter's speech, or to prosecute or otherwise seek redress from Twitter for exercising its First Amendment rights.

C.     An award of attorneys' fees and costs to Twitter to the extent permitted by law.

D.     Such further and other relief as this Court deems just and proper.

-17-

1

2    DATED:  November 13, 2015                        Respectfully submitted,

3                                                     PERKINS COIE LLP

4
                                                      By: /s/ Eric D. Miller
5                                                     _____
                                                      Eric D. Miller, Bar No. 218416
6                                                     EMiller@perkinscoie.com
                                                      Michael A. Sussmann, D.C. Bar No. 433100
7                                                     (*pro hac vice*)
                                                      MSussmann@perkinscoie.com
8                                                     James Snell, Bar No. 173070
                                                      JSnell@perkinscoie.com
9                                                     Hayley L. Berlin, D.C. Bar No. 1011549
                                                      (*pro hac vice*)
10                                                    HBerlin@perkinscoie.com
                                                      Amanda L. Andrade, D.C. Bar No. 1010948
11                                                    (*pro hac vice*)
                                                      AAndrade@perkinscoie.com
12                                                    PERKINS COIE LLP
                                                      3150 Porter Drive
13                                                    Palo Alto, CA  94304-1212
                                                      Telephone:  650.838.4300
14                                                    Facsimile:  650.838.4350

15                                                    Attorneys for Plaintiff
                                                      Twitter, Inc.
16

17

18

19

20

21

22

23

24

25

26

27

28
                                              -18-

1

## **CERTIFICATE OF SERVICE**

2

3          The undersigned certifies that, on November 13, 2015, I caused the foregoing document to

be filed electronically through the Court's CM/ECF System and served on all counsel of record.

4

5                                        /s/ James G. Snell
                                         James G. Snell
6                                        Attorney for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
Case No. 14-cv-04480-YGR