BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
BRIAN STRETCH
Acting United States Attorney
ANTHONY J. COPPOLINO
Deputy Branch Director
STEVEN Y. BRESSLER
Senior Trial Counsel
JULIA A. BERMAN
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 616-8480
Facsimile:  (202) 616-8470
Email: Julia.Berman@usdoj.gov

Attorneys for Defendants the Attorney General, et al.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TWITTER, INC., | Case No. 14-cv-4480 |
| Plaintiff, | Date:  March 15, 2016 |
| v. | Time: 2:00 p.m. |
|  | Courtroom 1, Fourth Floor |
|  | Hon. Yvonne Gonzalez Rogers |
| LORETTA E. LYNCH, United States Attorney General, *et al.*, |  |
| Defendants. | **DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT** |

# TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION ................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ............................................................................................................ 4

      A.     Statutory and Regulatory Background ................................................. 4

           1.    FISA .......................................................................................... 4

           2.    The Espionage Act .................................................................. 6

      B.     Factual Background ............................................................................ 6

ARGUMENT ................................................................................................................ 10

I.     This Court Should Dismiss Counts I and II in the Interest of Comity
With the Foreign Intelligence Surveillance Court ............................................ 10

II.    Plaintiff Has Failed to Establish its Standing to Bring the Espionage Act
Challenge in Count III of the Amended Complaint .......................................... 16

III.   All of Plaintiff's Claims Fail Because It is Lawful to Restrict Disclosure
of Classified Information Learned Through Participation in a Secret
National Security Investigation ........................................................................ 19

CONCLUSION ............................................................................................................ 23

1

# TABLE OF AUTHORITIES

2

**CASES**                                                                                           **PAGE(S)**

3

*Al Haramain Islamic Found., Inc. v. Dep't of Treasury*,
    686 F.3d 965 (9th Cir. 2012) .......................................................................... 21

*In re All Matters Submitted to the Foreign Intelligence Surveillance Court*,
    218 F. Supp. 2d 611 (F.I.S.C. 2002) .............................................................. 15

*Am. States Ins. Co. v. Kearns*,
    15 F.3d 142 (9th Cir. 1994) ............................................................................ 11

*Avila v. Willits Envtl. Remediation Trust*,
    633 F.3d 828 (9th Cir. 2011) .......................................................................... 15

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1990) .......................................................................... 19

*Bd. of Trustees of the State Univ. of NY v. Fox*,
    492 U.S. 469 (1989) ........................................................................................ 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 19

*Butterworth v. Smith*,
    494 U.S. 624 (1990) ........................................................................................ 22

*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013) .............................................................................. 16, 17

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ........................................................................................ 16

*Delson Group, Inc. v. GSM Ass'n*,
    570 F. App'x 690 (9th Cir. 2014) .............................................................. 12, 13

*Dep't of Navy v. Egan*,
    484 U.S. 518 (1998) .................................................................................. 20, 21

*In re: Directives Pursuant to Section 105B of FISA*,
    551 F.3d 1004 (F.I.S.C.R. 2008) .................................................................... 11

*Doe v. Mukasey*,
    549 F.3d 861 (2d Cir. 2008) ........................................................................... 22

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*FDIC v. Aaronian*,
   93 F.3d 636 (9th Cir. 1996) ............................................................................ 12

*First Am. Coalition v. Judicial Review Bd.*,
   784 F.2d 467 (3d Cir. 1986).......................................................................... 22

*In re All Matters Submitted to the Foreign Intelligence Surveillance Court*,
   218 F. Supp. 2d 611 (F.I.S.C. 2002) ............................................................ 15

*Global Relief Found., Inc. v. O'Neill*,
   315 F.3d 748 (7th Cir. 2002) ........................................................................ 21

*Gov't Employees Ins. Co. v. Dizol*,
   133 F.3d 1220 (9th Cir. 1998) ................................................................ 10, 11

*Haig v. Agee*,
   453 U.S. 280 (1981)...................................................................................... 21

*Hernandez v. United States*,
   No. CV 14-00146, 2014 U.S. Dist. LEXIS 116921 (C.D. Cal. Aug. 20, 2014) ....................... 12

*Hoffmann-Pugh v. Keenan*,
   338 F.3d 1136 (10th Cir. 2003) .................................................................... 22

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010)......................................................................................... 19

*Lapin v. Shulton, Inc.*,
   333 F.2d 169 (9th Cir. 1964) ................................................................. 12, 13

*Libertarian Party of Los Angeles County v. Bowen*,
   709 F.3d 867 (9th Cir. 2013) ........................................................................ 17

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)...................................................................................... 16

*McGehee v. Casey*,
   718 F.2d 1137 (D.C. Cir. 1983) .............................................................. 21, 23

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010)...................................................................................... 16

*NRDC v. EPA*,
   966 F.2d 1292 (9th Cir. 1992) ...................................................................... 11

*In re NSA Telecom. Records Litig.*,
   633 F. Supp. 2d 949 (N.D. Cal. 2009) ................................................................. 20

*Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*,
   457 F.3d 941 (9th Cir. 2006) .............................................................................. 16

*Ord v. United States*,
   8 F. App'x 852 (9th Cir. 2001) .......................................................................... 12

*Oregon v. Legal Servs. Corp.*,
   552 F.3d 965 (9th Cir. 2009) .............................................................................. 17

*Principal Life Ins. Co. v. Robinson*,
   394 F.3d 665 (9th Cir. 2005) .............................................................................. 11

*Protectmarriage.com-Yes on 8 v. Bowen*,
   752 F.3d 827 (9th Cir. 2014) .................................................................. 17, 18, 19

*Pub. Affairs Assocs. v. Rickover*,
   369 U.S. 111 (1962) ............................................................................................ 11

*Raines v. Byrd*,
   521 U.S. 811 (1997) ............................................................................................ 16

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984) .............................................................................................. 22

*Snepp v. United States*,
   444 U.S. 507 (1980) ................................................................... 3, 21,  22, 23

*St. Clair v. City of Chico*,
   880 F.2d 199 (9th Cir. 1989) .............................................................................. 17

*Stillman v. CIA*,
   319 F.3d 546 (D.C. Cir. 2003) .................................................... 3, 19, 21, 23

*In Re Subpoena to Testify*,
   864 F.2d 1559 (11th Cir. 1989) .......................................................................... 22

*Susan B. Anthony List v. Driehaus*,
   134 S. Ct. 2334 (2014) .......................................................................... 2, 16, 19

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 1999) ............................................................................ 18

*Torquay Corp. v. Radio Corp. of Am.*,
    2 F. Supp. 841 (S.D.N.Y. 1932) ................................................................................. 12

*Treadaway v. Academy of Motion Picture Arts & Sciences*,
    783 F.2d 1418 (9th Cir. 1986) ................................................................................... 12

*United States v. Abu-Jihaad*,
    630 F.3d 102 (2d Cir. 2010) ........................................................................................ 6

*United States v. Cavanagh*,
    807 F.2d 787 (9th Cir. 1987) .............................................................................. 11, 12

*United States v. Marchetti*,
    466 F.2d 1309 (4th Cir. 1972) ................................................................................... 21

*United States v. Ott*,
    827 F.2d 473 (9th Cir. 1987) ..................................................................................... 20

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State., Inc.*,
    454 U.S. 464 (1982) ................................................................................................... 16

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ................................................................................................... 11

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) ............................................................................. 17, 19

*Zdrok v. V Secret Catalogue Inc.*,
    No. CV 01-4113, 2001 U.S. Dist. LEXIS 26120, (C.D. Cal. Aug. 1, 2001) .......................... 12

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ..................................................................................... 19

**STATUTES**

18 U.S.C. § 793(a) ............................................................................................................ 6
18 U.S.C. § 793(c) ............................................................................................................ 6
18 U.S.C. § 793(d) ........................................................................................................... 6
18 U.S.C. §§ 793–798 ...................................................................................................... 6
18 U.S.C. § 2709 .............................................................................................................. 9
28 U.S.C. § 2201(a) ........................................................................................................ 11
50 U.S.C. § 1805(c)(2)(B) ........................................................................................ 4, 5, 13
50 U.S.C. § 1805(c)(2)(C) ................................................................................................. 5
50 U.S.C. § 1824(c)(2) ............................................................................................... 5, 13
50 U.S.C. § 1861(d)(1) ............................................................................................... 5, 13

50 U.S.C. § 1861(f) ........................................................................................... 11, 13

50 U.S.C. § 1881a(h)(1) .................................................................................. 4, 5, 13

Pub. L. No. 114-23 .................................................................................................. 1, 8

**FEDERAL RULE OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(b)(1) ................................................................................. 1, 17, 19

Fed. R. Civ. P. 12(b)(6) ................................................................................. 1, 18, 19

**LEGISLATIVE MATERIALS**

Exec. Ord. 13526 .................................................................................................. 7, 8

Exec. Ord. 12333 ........................................................................................................ 4

H.R. Rep. No. 114-109, at 26-27 (2015) ............................................................... 9

**MISCELLANEOUS**

Statistical Transparency Report Regarding Use of National Security Authorities - Annual
   Statistics for Calendar Year 2013, (June 26, 2014) .................................................. 7

Joint Statement by Director of National Intelligence James Clapper and Attorney
   General Eric Holder on New Reporting Methods for National Security Orders
   (January 27, 2014) ................................................................................................. 6, 7

Valerie Caproni, Statement Before the House Judiciary Committee,
   Subcommittee on Crime, Terrorism, and Homeland Security (February 17, 2011) ................. 4

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that, on March 15, 2016, at 2:00 p.m., before Judge Yvonne Gonzalez Rogers, the defendants will move to dismiss plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, for the reasons more fully set forth in defendants' accompanying Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

In its Amended Complaint, plaintiff Twitter, Inc. again seeks to challenge on First Amendment grounds alleged restrictions on its ability to publish data concerning court orders to provide information or other legal process that it has received from or under supervision of the Foreign Intelligence Surveillance Court ("FISC"). Plaintiff's new claims fail as a matter of law.

As defendants have explained previously in this litigation, the Government is committed to facilitating transparency regarding companies' receipt of process to the greatest extent possible consistent with national security. Thus, pursuant to the USA FREEDOM Act of 2015, *see* Pub. L. No. 114-23, 129 Stat. 268 ("the USA FREEDOM Act" or "the Act"), companies like plaintiff can publish more aggregate data than ever before concerning national security legal process they have received. In its recent Memorandum Opinion and Order (ECF No. 85), this Court recognized that the USA FREEDOM Act mooted the claims in plaintiff's initial Complaint directed against previously-available reporting options.

Plaintiff nonetheless still seeks to publish a draft Transparency Report disclosing information in conflict with the parameters set forth in the new Act, including the specific "*amount* of national security legal process that it received, if any, [for a specific time period] from the [FISC]" and the specific *kind* of orders it may have received pursuant to the Foreign Intelligence Surveillance Act ("FISA"). *See* Am. Compl. ¶ 4. To that end, plaintiff seeks declaratory and injunctive relief in a three-count amended complaint that challenges secrecy requirements set forth in the FISA or otherwise imposed by order of the FISC, *see id.* ¶¶ 49–57 (Counts I and II), and which seeks to foreclose any prosecution under the Espionage Act for the

1    publication of information concerning any FISC orders or FISA process it has or may have

2    received.  *See id.* ¶¶ 58–61 (Count III).[1]

3            It is even clearer now than it was with respect to the original Complaint that judicial

4    review of plaintiff's claims should be had in the FISC, not this Court.  Plaintiff specifically seeks

5    to challenge secrecy restrictions set forth in any orders that the FISC has issued or may issue to

6    plaintiff, as well as provisions of FISA authorizing or establishing secrecy requirements for such

7    process, and any restrictions on the disclosure of aggregate data concerning such process to the

8    extent they are based on FISA-related secrecy requirements.  Plaintiff's amendment to the

9    complaint thus underscores that its FISA-based claims concern the interpretation of any specific

10   orders issued by the FISC to plaintiff, or of any specific FISA directives issued under that court's

11   supervision to plaintiff, either previously or in the future.  Therefore, as a matter of comity and

12   orderly judicial administration, Counts I and II should be brought before the FISC in the first

13   instance so that court may interpret any process it issued to plaintiff, including the extent to

14   which any secrecy requirements apply to plaintiff.

15           The Court should also dismiss Count III of the Amended Complaint.  Plaintiff's pre-

16   enforcement challenge to the Espionage Act with respect to possible future violations of that Act

17   fails to satisfy the injury-in-fact requirement necessary to invoke the Court's jurisdiction.  To be

18   sure, it is possible that a person who possesses classified national security information and has

19   been advised that he is bound not to disclose such information could be prosecuted under the

20   Espionage Act if he does so.  But at this stage any challenge to the requirements of the

21   Espionage Act as they might conceivably be applied to plaintiff or its employees is too

22   "conjectural or hypothetical" to support jurisdiction to challenge the Act.  *Susan B. Anthony List*

23   *v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (citation omitted).  Indeed, plaintiff's attempt to

24   challenge the potential future application of this criminal statute is a puzzling way to contest

25   alleged restrictions on the kind of disclosures of information encompassed by the Espionage Act,

---

26   [1] No statement in this filing by the United States should be construed to confirm or deny whether
27   in fact plaintiff has received any legal process pursuant to FISC order or FISA directive.  Indeed,
     the Amended Complaint does not confirm or deny whether plaintiff has received FISA process,
28   but expressly brings claims based not only on such process it may have received but also on any
     FISA process it may receive in the future.  *See* Am. Compl. ¶ 7.

*Twitter, Inc. v. Lynch, et al.,* Case No. 14-cv-4480                                    2
Motion to Dismiss the Amended Complaint

where plaintiff could have simply challenged the propriety of the Government's classification decision as contemplated in, *e.g., Stillman v. CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003).

Finally, to the extent this Court exercises jurisdiction, all of plaintiff's claims also fail on the merits.  As an initial matter, the Amended Complaint does not appear to set forth any allegation or claim disputing that certain information plaintiff seeks to publish in its draft Transparency Report is properly classified pursuant to Executive Order and, if published, reasonably could be expected to cause cognizable damage to national security.  Indeed, "Twitter recognizes that genuine national security concerns require that certain information about such orders be kept secret," and it appears to seek "to disclose details about specific FISA orders it has received or will receive as soon as doing so will no longer harm national security," Am. Compl. ¶ 7.  But the Amended Complaint alleges that, for now, plaintiff does not know when or if the Government will allow it to do so.  *Id.*  In other words, the Amended Complaint appears to claim a First Amendment right by Twitter to publish any information it has or may come to possess related to FISA national security legal process, but does not directly challenge the Government's determination that certain data in the draft Transparency Report is in fact classified.  It is axiomatic, however, that the Government has "a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service."  *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (per curiam).  Accordingly, restrictions on disclosure of classified information are lawful and enforceable, particularly when the information is obtained pursuant to statutory law and judicial process in connection with a national security investigation.

For these reasons, set forth further below, the Court should dismiss plaintiff's Amended Complaint.

# BACKGROUND

## A.      Statutory and Regulatory Background

The President has charged the FBI with primary authority for conducting counterintelligence and counterterrorism investigations in the United States.  *See* Exec. Order No. 12333 §§ 1.14(a), 3.4(a), 46 Fed. Reg. 59941 (Dec. 4, 1981).  Today, the FBI is engaged in extensive investigations into threats, conspiracies, and attempts to perpetrate terrorist acts and foreign intelligence operations against the United States.  These investigations are typically long-range, forward-looking, and prophylactic in nature in order to anticipate and disrupt clandestine intelligence activities or terrorist attacks on the United States before they occur.

The FBI's experience with counterintelligence and counterterrorism investigations has shown that electronic communications play a vital role in advancing terrorist and foreign intelligence activities and operations.  Accordingly, pursuing and disrupting terrorist plots and foreign intelligence operations often require the FBI to seek information relating to the use of electronic communications, including from electronic communications service providers.  *See e.g.*, Valerie Caproni, Statement Before the House Judiciary Committee, Subcommittee on Crime, Terrorism, and Homeland Security (February 17, 2011), *available at* www.fbi.gov/news/testimony/going-dark-lawful-electronic-surveillance-in-the-face-of-new-technologies.

Congress has authorized the FBI to collect such information with a variety of legal tools, including various authorities under FISA and pursuant to FISC supervision.  Because the targets of national security investigations and others who seek to harm the United States will take countermeasures to avoid detection, secrecy is often essential to effective counterterrorism and counterintelligence investigations.  Recognizing that, Congress has empowered the FISC and the Executive Branch to maintain the confidentiality of national security legal process.

## 1.      FISA

Pursuant to multiple provisions of FISA, the FISC may issue orders that "direct" recipients to provide certain information "in a manner that will protect the secrecy of the acquisition."  *See e.g.*, 50 U.S.C. §§ 1805(c)(2)(B), 1881a(h)(1)(A).  For example, Title I and VII

of FISA provide that FISA orders "shall direct," and FISA directives issued by the Attorney

General and DNI after FISC approval of an underlying certification "may direct," recipients to

provide the Government with "all information, facilities, or assistance necessary to accomplish

the acquisition in a manner that will protect the secrecy of the acquisition," without limitation.

50 U.S.C. § 1881a(h)(1)(A) (Title VII); *see also* 50 U.S.C. § 1805(c)(2)(B) (similar language for

Title I).  Additionally, the orders "shall direct" and the directives "may direct" that recipients

"maintain under security procedures approved by the Attorney General and the [DNI] any

records concerning the acquisition or the aid furnished" that such electronic communication

service provider maintains.  50 U.S.C. § 1881a(h)(1)(B) (Title VII); *see also* 50 U.S.C. §

1805(c)(2)(C) (similar language for Title I).  Consistent with the Executive Branch's authority to

control classified information, that provision explicitly provides for Executive Branch approval

of the companies' procedures for maintaining all records associated with surveillance.

Other FISA titles that provide search or surveillance authorities also provide for secrecy

under those authorities.  *See* 50 U.S.C. § 1824(c)(2)(B)-(C) (requiring Title III orders to require

the recipient to assist in the physical search "in such a manner as will protect its secrecy" and

provide that "any records concerning the search or the aid furnished" that the recipient retains be

maintained under appropriate security procedures); 50 U.S.C. § 1842(d)(2)(B) (requiring Title IV

orders to direct that recipients "furnish any information, facilities, or technical assistance

necessary to accomplish the installation and operation of the pen register or trap and trace device

in such a manner as will protect its secrecy," and that "any records concerning the pen register or

trap and trace device or the aid furnished" that the recipient retains shall be maintained under

appropriate security procedures); 50 U.S.C. § 1861(d)(1) (providing that "[n]o person shall

disclose to any other person that the [FBI] has sought or obtained tangible things pursuant to an

order under" Title V of FISA).  Accordingly, to the extent that plaintiff has received process

pursuant to Titles I and VII of FISA, the Title VII directives would contain the statutorily

permitted nondisclosure provisions, while the Title I orders would contain nondisclosure

requirements that track the statutory provision.[2]  Likewise, Title III, IV, or V orders would be accompanied by the statutory requirements described above.

### 2.    The Espionage Act

The Espionage Act, 18 U.S.C. §§ 793–798, protects national defense information.  The Act, *inter alia*, sets criminal penalties for the unauthorized receipt of such information.  *See* 18 U.S.C. § 793(c) (prohibiting "recei[ving,] obtain[ing,] or agree[ing] or attempt[ing] to receive" such information "with intent or reason to believe that the information is to be used to the injury of the United States, or to the advantage of any foreign nation," *id.* § 793(a), "contrary to the provisions of [that] chapter").  Section 793(d), the provision that plaintiff highlights in the Amended Complaint, *see* Am. Compl. ¶ 21, prohibits a person "lawfully having possession of . . . information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation" from "willfully communicat[ing]" or "deliver[ing]" such information "to any person not entitled to receive it."  18 U.S.C. § 793(d); *see, e.g., United States v. Abu-Jihaad*, 630 F.3d 102, 108 (2d Cir. 2010) (affirming the conviction of a defendant under Section 793(d) for transmitting to unauthorized persons certain national defense information).

### B.  Factual Background

On January 27, 2014, the Director of National Intelligence ("DNI") declassified certain aggregate data concerning national security legal process, including FISA-based process as well as National Security Letters ("NSLs") issued by the FBI, so that recipients of such process could reveal aggregate data, not with specific numbers but in ranges, about the orders and other process they had received.  *See* Joint Statement by Director of National Intelligence James Clapper and Attorney General Eric Holder on New Reporting Methods for National

---

[2] Title I orders typically contain language such as:  "This order and warrant is sealed and the specified person and its agents and employees shall not disclose to the targets or to any other person the existence of the order and warrant or this investigation or the fact of any of the activities authorized herein or the means used to accomplish them, except as otherwise may be required by legal process and then only after prior notification to the Attorney General."  Of course, disclosing the number of Title I orders received would violate such a provision as it would "disclose . . . the existence" of each of the orders.

Security Orders (January 27, 2014) ("While this aggregate data was properly classified until today, the Office of the Director of National Intelligence, in consultation with other departments and agencies, has determined that the public interest in disclosing this information now outweighs the national security concerns that required its classification."), *available at* http://icontherecord.tumblr.com/post/74761658869/joint-statement-by-director-of-national.[3]

Consistent with the DNI's declassification action, the Deputy Attorney General ("DAG") described the types of information that an electronic communication service provider could provide pursuant to that declassification in a January 27, 2014 letter to the general counsels for five companies.  *See* January 27, 2014 Letter from DAG James M. Cole to General Counsels of Facebook, et al.  ("DAG Letter"), Exhibit 1 to Compl. (ECF No. 1).  The Government also informed the FISC that:

> [t]he Director of National Intelligence has declassified the aggregate data consistent with the terms of the attached letter from the Deputy Attorney General, in the exercise of the Director of National Intelligence's discretion pursuant to Executive Order 13526, § 3.1(c). The Government will therefore treat such disclosures as no longer prohibited under any legal provision that would otherwise prohibit the disclosure of classified data, including data relating to FISA surveillance.

*See* Notice, Exhibit 2 to Compl. ("FISC Notice"), *also available at* http://www.justice.gov/iso/opa/resources/422201412716042240387.pdf.  *See also* DAG Letter at 1 (noting the letter was sent "in connection with the Notice we filed with the [FISC] today"); Exec. Order No. 13526, § 3.1(d) (providing for discretionary declassification by the Executive Branch in extraordinary circumstances in the public interest).  The Notice also stated the Government's view that "the terms outlined in the Deputy Attorney General's letter define[d] the limits of permissible reporting for the parties and other similarly situated companies."  *See* FISC Notice.  By its terms, however, the DAG Letter was permissive, not restrictive; rather than purporting to classify any previously unclassified information, it provided guidance for reporting

---

[3] The DNI also, for the first time, publicly provided statistical information regarding the use of national security legal authorities, including FISA, and has continued to do so annually.  *See* Statistical Transparency Report Regarding Use of National Security Authorities - Annual Statistics for Calendar Year 2013, (June 26, 2014), *available at* http://icontherecord.tumblr.com/transparency/odni_transparencyreport_cy2013.

aggregate data regarding national security legal process received by a particular company consistent with a declassification decision issued by the DNI the same day under Executive Order 13526.

Plaintiff Twitter sought review of purported restrictions on the disclosure of a draft "Transparency Report" containing specific details regarding any national security legal process received by plaintiff during, *inter alia*, the second half of 2013.  *See* Am. Compl. ¶¶ 4, 36 (characterizing draft Report); ECF No. 21-1 (unclassified, redacted version of draft Report).  By letter dated September 9, 2014, following further discussions between defendants and plaintiff, the FBI informed counsel for plaintiff that the draft Report contains information that is properly classified and, therefore, cannot lawfully be publicly disclosed. *See* Exhibit 3 to Compl. ("FBI Letter"); *see also* Am. Compl. ¶¶ 20, 37 (plaintiff's allegations characterizing the letter).

On October 7, 2014, plaintiff filed its initial complaint seeking declaratory and injunctive relief to permit it to publish the classified information contained in its draft Transparency Report.[4]  Plaintiff challenged the DAG Letter under the Administrative Procedure Act ("APA"), and alleged that restrictions on publication imposed by statutory provisions, judicial orders, Government directives, and nondisclosure agreements violated the First Amendment.  After the parties had fully briefed the defendants' partial motion to dismiss the complaint, *see* ECF Nos. 28, 34, 57, and the Court had heard argument on that motion, ECF No. 62, Congress enacted the USA FREEDOM Act, Pub. L. No. 114-23, 129 Stat. 268.

The USA FREEDOM Act establishes a statutory mechanism for recipients of national security legal process, including orders of the FISC and directives supervised by that court pursuant to the FISA, to make public disclosures of certain aggregate data about such process. *See* USA FREEDOM Act § 603(a).  This section is modeled on the reporting options that were described in the January 27, 2014 DAG Letter and DNI declassification decision but provides

---

[4] Defendants subsequently informed plaintiff which portions of the draft Report contain classified information that could not lawfully be published and provided plaintiff and the Court with a redacted, unclassified copy of the draft Report.  Defendants provided plaintiff this version of the draft Transparency Report, from which any classified information had been redacted, on November 17, 2014, shortly after this litigation commenced.  *See* Am. Compl. ¶ 42; *see also* ECF No. 21-1.

additional and more detailed reporting options.  *Compare* DAG Letter, Compl., Exh. 1, *with*

USA FREEDOM Act § 603(a); *see also* H.R. Rep. No. 114-109, at 26-27 (2015) (noting that this

provision was modeled on the DAG Letter framework).  The DNI has declassified information

reported consistent with the USA FREEDOM Act options.

On October 14, 2015, after additional briefing and a hearing, this Court ordered plaintiff

to submit an amended complaint by November 13, 2015, noting that the action would be

dismissed as moot if no amended complaint was submitted.  *See* Order, ECF No. 85, at 12.

Plaintiff filed its three-count Amended Complaint on November 13, 2015, once again

challenging on First Amendment grounds purported restrictions on its ability to publish certain

information concerning national security legal process related to any process plaintiff received

pursuant to FISA, but no longer with respect to NSLs issued pursuant to 18 U.S.C. § 2709.  *See*

Am. Compl. ¶¶ 4–7; 30–39; Prayer for Relief.  The Amended Complaint does not purport to

challenge the reporting options set forth in the DAG Letter, nor the FBI's 2014 Letter that was

based on the DNI's 2014 declassification decision and consistent with options set forth in the

DAG Letter, nor the new reporting options set forth in the USA FREEDOM Act.  The Amended

Complaint also does not appear to specifically challenge the merits of any substantive

determination by the Executive Branch that certain information redacted from plaintiff's draft

Transparency Report is in fact currently classified.  Rather, plaintiff purports to bring First

Amendment challenges to requirements of FISA (Counts I and II) and the Espionage Act (Count

III).  Specifically, plaintiff seeks to bring a "facial" constitutional challenge to nondisclosure

provisions under FISA Titles I, II, IV, and VII that require or allow that orders or directives

issued thereunder by the FISC ensure that information is produced to the Government in a

manner that protects its secrecy.  *See* Count I, Am. Compl. ¶ 50; *see also id.* (challenging other

secrecy provisions in Titles IV and V of the FISA).  Plaintiff also purports to bring a separate

constitutional challenge to FISA non-disclosure provisions "as applied" to it, *see id.* Count II and

¶¶ 54-57, and, through this particular Count, specifically claims that FISA orders and directives

do not and may not restrict the disclosure of certain aggregate data concerning any FISA process

it may have received.  In Count III, plaintiff seeks to bring an "as applied" constitutional

challenge to the Espionage Act based on the allegation that plaintiff has a "reasonable concern" that it would face prosecution under the Act if it were to disclose aggregate data in its draft Transparency Report and based on the claim that the Act does not prohibit the disclosure of aggregate data concerning FISA process plaintiff may have received.  *Id.* ¶¶ 59-60.  Plaintiff requests a declaratory judgment that the FISA does not or could not constitutionally prohibit publication of its draft Transparency Report, that FISA secrecy provisions are unconstitutional on their face and as they may have been or may be applied to Twitter, and that any prosecution under the Espionage Act for disclosure of the information redacted from the draft Transparency Report would violate the First Amendment, as well as related injunctive relief.  *Id.* (Prayer for Relief).

## ARGUMENT

### I.    This Court Should Dismiss Counts I and II in the Interest of Comity With the Foreign Intelligence Surveillance Court.

The Court should decline to hear Counts I and II, which concern legal process issued by the FISC and provisions of FISA administered under FISC supervision.  *See Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) ("If [a suit under the Declaratory Judgment Act] passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate").  In its partial motion to dismiss the original complaint, the Government explained that adjudication of plaintiff's request to disclose aggregate data regarding FISA-based process would require the Court to interpret FISC orders or directives issued under FISC-supervised programs.  *See* Defs.' Partial Mot. to Dismiss, ECF No. 28, at 13–20.  Under plaintiff's formulation of its claims in the Amended Complaint, this is even more clearly the case:  Counts I and II of the Amended Complaint seek adjudication solely of nondisclosure obligations arising under FISA, including any specific orders of the FISC that have been or may be issued to plaintiff, on their face and as-applied.  *See* Am. Compl. ¶¶ 49–57. The Amended Complaint's description of how any such FISA-based obligations would operate demonstrates that any nondisclosure obligations arising under FISA apply to recipients of FISA process largely through FISC orders or directives issued to them under FISC-supervised programs, *see* Am. Compl. ¶¶ 17–19, 50.  Moreover, the sole exception to that structure—the

only provision that operates directly on a recipient of process, rather than through a nondisclosure obligation in an order or directive—expressly channels any challenges to its nondisclosure requirements to the FISC.  *See* 50 U.S.C. § 1861(f).  For all of these reasons, as explained below, Counts I and II of the Amended Complaint should be heard by the FISC, and this Court should exercise its discretion to dismiss those claims.

The Supreme Court has explained that, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  Thus, a district court has discretion to decline to exercise jurisdiction over Declaratory Judgment Act claims based on prudential considerations. *See* 28 U.S.C. § 2201(a). This determination is discretionary because "the Declaratory Judgment Act is deliberately cast in terms of permissive, rather than mandatory, authority." *Dizol*, 133 F.3d at 1223 (quotation omitted). "The Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'" *Id.* (quoting *Pub. Affairs Assocs. v. Rickover*, 369 U.S. 111, 112 (1962)); *accord, e.g.*, *Wilton*, 515 U.S. 277 (recognizing discretionary nature of declaratory relief); *NRDC v. EPA*, 966 F.2d 1292, 1299 (9th Cir. 1992) (same).

The Supreme Court explained in *Wilton* that "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment. . . ." 515 U.S. at 288.  In doing so, "the district court must balance concerns of judicial administration, comity, and fairness to the litigants." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005) (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994)).  The last-cited factor—fairness to the litigants—is neutral in this setting; as the Government has previously explained, the FISC is an Article III court, comprised of district court judges.[5]  *See* Reply Mem. in Further Supp. of Defs.' Partial Mot. to Dismiss, ECF No. 57 at 12 (citing *United*

---

[5] Indeed, as reflected in the Amended Complaint, when five other companies including Google, Microsoft, Facebook, Yahoo, and LinkedIn sought similar relief—a declaratory judgment that the First Amendment allowed them to publish more aggregate data than they had been permitted to disclose at that time—they did so before the FISC.  *See* Am. Compl. ¶ 26.  *See also In re: Directives Pursuant to Section 105B of FISA*, 551 F.3d 1004 (F.I.S.C.R. 2008) (Yahoo challenge to directives under now-expired FISA amendments resolved before the FISC and FISCR).

*States v. Cavanagh*, 807 F.2d 787, 791–92 (9th Cir. 1987) (Kennedy, J.)).  The FISC maintains a public docket and, if it were to adjudicate plaintiff's claims, would provide the parties and the public open access to any unclassified submissions.  *See* Defs.' Reply in Support of Mot. to Dismiss the original Complaint, ECF No. 57, at 13.

Where, as here, an action challenges the orders of another court, the first two factors counsel in favor of dismissal; "considerations of comity and orderly administration of justice demand that the nonrendering court should decline jurisdiction of such an action and remand the parties for their relief to the rendering court." *Lapin v. Shulton, Inc.*, 333 F.2d 169, 172 (9th Cir. 1964); *see also FDIC v. Aaronian*, 93 F.3d 636, 639 (9th Cir. 1996) (actions challenging the orders of another court are "disfavored"); *Treadaway v. Acad. of Motion Picture Arts & Scis.*, 783 F.2d 1418, 1422 (9th Cir. 1986) ("When a court entertains an independent action for relief from the final order of another court, it interferes with and usurps the power of the rendering court just as much as it would if it were reviewing that court's equitable decree.").  Thus, in *Lapin*, the Court of Appeals affirmed the California district court's refusal to hear a challenge to an injunction issued by a district court in Minnesota.  *See* 333 F.2d at 169.  The Court of Appeals concluded that "sound reasons of policy support the proposition that relief should be sought from the issuing court . . . . so long as it is apparent that a remedy is available there," *id.* at 172, and emphasized its agreement that "it is clear, as a matter of comity and of the orderly administration of justice, that [a] court should refuse to exercise its jurisdiction to interfere with the operation of a decree of another federal court" *id.* (quoting *Torquay Corp. v. Radio Corp. of Am.*, 2 F. Supp. 841, 844 (S.D.N.Y. 1932)).[6]  *See also Delson Grp., Inc. v. GSM Ass'n*, 570 F. App'x 690 (9th

---

[6]  *See also, e.g.*, *Ord v. United States*, 8 F. App'x 852, 854 (9th Cir. 2001) (affirming the California district court's refusal to hear a challenge to a District of Columbia district court's order, and its holding that "if Ord wants to take the D.C. court's order to task, he should seek relief in the D.C. court.  He may not upset the principles of judicial comity, fairness and efficiency that underlie the basic rule against horizontal appeals."); *Hernandez v. United States*, No. CV 14-00146, 2014 U.S. Dist. LEXIS 116921, at *5–7 (C.D. Cal. Aug. 20, 2014) (declining jurisdiction, as a matter of comity, over a challenge to a Texas district court's order); *Zdrok v. V Secret Catalogue Inc.*, No. CV 01-4113, 2001 U.S. Dist. LEXIS 26120, at *17-18 (C.D. Cal. Aug. 1, 2001) (declining jurisdiction, as a matter of comity, over a challenge to an Ohio court's order).

Cir. 2014) (relying on *Aaronian*, *Treadaway*, & *Lapin*; upholding California district court's dismissal of a challenge to the judgment of a Georgia district court).

Here, the Amended Complaint makes clear that "the operation of a decree of another federal court," *Lapin*, 333 F.2d at 172, would be at the heart of the Court's consideration of Counts I and II, plaintiff's facial and as-applied challenges to FISA-based nondisclosure obligations. Plaintiff acknowledges that four of the five provisions of FISA that are subject to its challenge operate through "orders or directives issued thereunder," rather than imposing nondisclosure obligations directly on a recipient of FISA-based process. Am. Compl. ¶ 50, (listing Title I, 50 U.S.C. § 1805(c)(2)(B); Title III, 50 U.S.C. § 1824(c)(2)(B); Title IV, 50 U.S.C. § 1842(d)(2)(B); and Title VII, 50 U.S.C. § 1881a(h)(1)(A)). Title V, the sole exception to this structure, "directly imposes a nondisclosure obligation on the recipient of a Title V FISA order," Am. Compl. ¶ 50 (citing 50 U.S.C. § 1861(d)(1)), but specifically channels challenges to Title V nondisclosure obligations to the FISC. *See* 50 U.S.C. § 1861(f). Viewed through this prism—the reality that FISA nondisclosure obligations function largely through FISC orders— the Amended Complaint shows the extent to which plaintiff's claims would require this Court to interpret the orders of another court.

To begin with, Count I plainly would require the Court to focus on any actual FISC orders or directives that the plaintiff may have received, and Count II is unambiguously characterized as an "as-applied" challenge to any FISA requirements imposed on plaintiff. With respect to any such orders or directives, Count I (facial challenge) would require the Court to assess the duration of the nondisclosure obligation imposed on plaintiff relative to the national security harm against which that obligation was intended to protect. Plaintiff's argument regarding this issue brings the nature of the judicial inquiry into sharp resolve: Plaintiff emphasizes that it "seeks to disclose details about specific FISA orders it has received or will receive as soon as doing so will no longer harm national security." Am. Compl. ¶ 7; *see also id.* ¶ 52 (arguing that secrecy provisions violate the First Amendment because they "are not

narrowly tailored to serve a compelling state interest").[7]  In addition, while acknowledging that "genuine national security concerns require that certain information about [FISC] orders be kept secret[,]" plaintiff argues that "at some point, release of information about those orders will no longer harm national security."  Am. Compl. ¶ 7.  It is evident, then, that the court adjudicating Count I likely would need to assess, *inter alia*, how long information regarding any specific orders or directives issued to plaintiff by the FISC, if any (and if challenged by plaintiff), would require protection from disclosure to prevent the harm to national security that nondisclosure provisions in those orders or directives were meant to prevent.[8]  In any event, there is no doubt that Count I is specifically about any orders or directives that may have been or would be imposed by the FISC on plaintiff – leaving little doubt that adjudication of this claim would directly implicate actions by that court.  Both as a matter of comity, and because the FISC is in the best position to assess what harms those nondisclosure provisions were intended to prevent in the first instance, Count I should be brought before the FISC.

Likewise, any adjudication of Count II (as-applied challenge) will likely require a court to define the scope of the nondisclosure provisions written into any FISC orders or directives that plaintiff has received, and whether such provisions appropriately conform to the statutory requirements of FISA.[9]  Indeed, the law is clear:  a court must consider the application of a statute before reaching a facial challenge, *see Board of Trustees of the State University of N.Y. v. Fox*, 492 U.S. 469, 485 (1989), and thus both the facial and as-applied claims should be considered together by the same court whose imposition of secrecy requirements is being

---

[7] In quoting this portion of the Amended Complaint, the Government does not concede that strict scrutiny, the level of scrutiny invoked by plaintiff in its argument, would be appropriate in this setting.

[8] As noted above, *see supra* 12–13, such nondisclosure obligations would be imposed through provisions in a FISC order or directive under Title I, III, IV, and VII; under Title V, the statute imposes nondisclosure obligations directly on the recipients of FISC orders.

[9] This would be the case for any FISC orders or directives issued pursuant to Titles I, III, IV, or VII; as noted above, for Title V, the nondisclosure obligation would stem from the statute rather than the language in an order or directive. *See supra* 12–13.

1   challenged in this case.[10]   In the Amended Complaint, plaintiff puts at issue the proper

2   interpretation of the scope of those provisions, *see* Am. Compl. ¶ 6, and contends that "[n]o

3   provision in FISA prohibits or directs the FISC to prohibit the disclosure of *aggregate numbers*

4   of FISA orders received." *Id.* ¶ 19.   Plaintiff urges that "Defendants have misinterpreted FISA,

5   which does not prohibit Twitter from disclosing aggregate information . . .". *Id.* ¶ 56.   But, as

6   discussed above, except for Title V, FISA does not operate on a recipient of process; any secrecy

7   restriction on the disclosure of aggregate amounts or kinds of FISC orders or directives

8   necessarily is based in part on any underlying FISC orders or directives issued under FISC-

9   supervised programs.   As with Count I, both as a matter of comity, and because the issuing court

10  "is the best judge of its own orders," *Avila v. Willits Environmental Remediation Trust*, 633 F.3d

11  828, 836 (9th Cir. 2011), the FISC should be permitted to make this interpretive determination.

12       Permitting the issuing court to interpret its own orders is particularly appropriate in this

13  setting because, as the FISC has observed, "FISA is a statute of unique character," and, "as a

14  statute addressed entirely to specialists, it must . . . be read by judges with the minds of

15  specialists." *In re All Matters Submitted to the Foreign Intelligence Surveillance Court*, 218 F.

16  Supp. 2d 611, 615 (F.I.S.C. 2002), *abrogated on other grounds by In re Sealed Case*, 310 F.3d

17  717 (F.I.S.C.R. 2002).   The FISC, along with the Foreign Intelligence Surveillance Court of

18  Review, "is the arbiter of the FISA's terms and requirements" and the members of that court

19  develop "specialized knowledge" in the course of their service.   *Id.*   The FISC's expertise in the

20  interpretation of both any orders it may have issued and the statutory scheme it administers

21  presents an additional reason why this Court should decline jurisdiction over Counts I and II.

22  The specialized knowledge of the FISC would also extend to the national security justifications

23  for any surveillance at issue, which its specialized procedures for reviewing and handling such

24  ---

[10] In its Amended Complaint, plaintiff has pled that it "either has received a FISA order in the
25  past or has a reasonable fear of receiving one in the future."   Am. Compl. ¶ 7.   For purposes of
    assessing plaintiff's as-applied claim, however—and determining whether plaintiff has standing
26  to challenge any given title of FISA in the first instance—any court would need to consider what,
    if any, secret FISC orders or directives plaintiff has actually received.   This presents yet another
27  reason why, if Counts I and II proceed, the FISC is the appropriate setting for plaintiff's claims,
    particularly given that court's institutional provenance over litigation alleged to concern its own
28  requirements and secret orders or legal process.

*Twitter, Inc. v. Lynch, et al.*, Case No. 14-cv-4480                                    15
Motion to Dismiss the Amended Complaint

information permit it to access.  This makes the FISC uniquely capable of assessing the scope of its own orders and the harms that disclosures could cause.

In sum, considerations of comity and orderly judicial administration weigh in favor of dismissing Counts I and II, and requiring plaintiff to bring its challenge to the constitutionality of any orders or directives that may have been issued through the FISC's legal process before the FISC itself.  Proceeding in this manner would be consistent with the statutory framework established by Congress and would provide the litigants the benefit of the FISC's expertise as a court of specialized jurisdiction.

## II.   Plaintiff Has Failed to Establish its Standing to Bring the Espionage Act Challenge in Count III of the Amended Complaint.

"The judicial power of the United States . . . is not an unconditioned authority to determine the [validity] of legislative or executive acts," but is limited by Article III of the Constitution "to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State., Inc.*, 454 U.S. 464, 471 (1982).  "No principle is more fundamental to the judiciary's proper role in our system of government."  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).  The requirement that plaintiffs establish their standing to bring their claims is "[o]ne element of [this] case-or-controversy requirement."  *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  The "irreducible constitutional minimum," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), of standing requires that a plaintiff's injury be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Amnesty Int'l*, 133 S. Ct. at 1147 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)); *see also Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 949 (9th Cir. 2006).  As "[t]he party invoking federal jurisdiction," plaintiff bears the burden to establish these factors.  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) (citation omitted).

When, as in this case, "reaching the merits of the dispute would [require a court to] decide whether an action taken by one of the other two branches of the Federal Government was

unconstitutional," the Supreme Court has emphasized that the standing inquiry is "especially rigorous." *Amnesty Int'l*, 133 S. Ct. at 1147 (quoting *Raines*, 521 U.S. at 819–20)). This is particularly so "in cases in which the Judiciary has been requested to review actions of the political branches in the fields of intelligence gathering and foreign affairs." *Id.* (noting that the Supreme Court has "often found a lack of standing in [such] cases") (collecting cases). Such a rigorous inquiry is required even in cases raising First Amendment claims, where, ordinarily, "the inquiry tilts dramatically toward a finding of standing," *Libertarian Party of Los Angeles County v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (citation omitted). *See Amnesty Int'l*, 133 S. Ct. at 1146–47 (applying "especially rigorous" standing inquiry to, *inter alia*, plaintiffs' claims that an intelligence gathering program under FISA violated their First Amendment rights).

Federal Rule of Civil Procedure 12(b)(1) requires dismissal when the plaintiff fails to meet its burden of establishing subject-matter jurisdiction, including standing. *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

Plaintiff has not established standing to bring its Espionage Act claim because its alleged injury arising from that statute is speculative, rather than "actual or imminent" as Article III requires. Three factors determine whether a preenforcement challenge like Count III of the Amended Complaint is justiciable. *See, e.g.*, *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014), *cert. denied sub nom. ProtectMarriage.com-Yes on 8 v. Padilla*, 135 S. Ct. 1523 (2015). First, the courts consider "whether the plaintiff articulates a concrete plan to violate the law." *Id.* (quotation omitted). The second prong typically requires a court to assess "whether the government has communicated a specific warning or threat to initiate proceedings under the statute." *Id.* (quotation omitted). "[I]n a pre-enforcement challenge that alleges a free speech violation under the First Amendment," however, it is sufficient for a plaintiff to "demonstrate that a threat of potential enforcement will cause him to self-censor, and not follow through with his concrete plan to engage in protected conduct." *Id.* (citing *Wolfson v. Brammer*, 616 F.3d 1045, 1059–60 (9th Cir. 2010)). Finally, under the third prong, the courts consider "the history of past prosecution under the statute" to determine whether "the government's active

enforcement of a statute . . . render[s] the plaintiff's fear of injury reasonable." *Id.* (quotation omitted).  The courts "will only conclude that a pre-enforcement challenge is [justiciable] if the alleged injury is 'reasonable' and 'imminent,' and not merely 'theoretically possible.'" *Id.* (quoting *Thomas*, *v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 1999)).

Plaintiff's attempted pre-enforcement challenge to the Espionage Act meets none of these requirements.  As to the first factor, plaintiff has not avowed that it intends to violate the law by disclosing classified information.  Indeed, Twitter's Amended Complaint suggests it understands the need to protect national security information, and does not appear to challenge the Government's substantive determination as to what information in the draft Transparency Report is classified and, thus, reasonably could be expected to damage national security if disclosed. *See generally* Am. Compl.  Moreover, plaintiff expressly disavows a desire to publish classified information that could harm national security and raise the specter of an Espionage Act prosecution.  *See* Am. Compl. ¶ 7 (alleging plaintiff "seeks to disclose details about specific FISA orders it has received or will receive as soon as doing so will no longer harm national security").  Plaintiff thus evinces no concrete plan to violate the law.[11]

Plaintiff likewise cannot meet the second or third requirements to state a cognizable pre-enforcement challenge:  plaintiff does not "confront a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."  *Protectmarriage.com—Yes on 8*, 752 F.3d at 839 (quoting *Thomas*, 220 F.3d at 1141).  As to the second element—a threat of potential enforcement, *see, e.g.*, *id.* at 839—plaintiff does not allege that the Government has specifically threatened to initiate Espionage Act proceedings against it.  *See* Am. Compl. (generally).  Instead, plaintiff states only that it "is informed and believes and is concerned" that if it went forward with its plan, "Defendant DOJ *may* seek to prosecute Twitter."  *See id.* ¶ 22 (emphasis added).  Although a plaintiff bringing a First Amendment challenge may "demonstrate that a threat of potential enforcement will cause him to self-censor, and not follow through with his plan to engage in protected conduct," rather than showing an actual threat of prosecution,

---

[11] Indeed, because it neither avers a desire to disclose classified information nor disputes that the information in question is, in fact, classified, its Espionage Act claim fails on the merits, as well. Fed. R. Civ. P. 12(b)(6); *see infra* Part III.

*Protectmarriage.com—Yes on 8*, 752 F.3d at 839 (citing *Wolfson*, 616 F.3d at 1059-60), plaintiff's unsupported contention that the Government "may" seek to prosecute it does not raise its allegations above the speculative level or demonstrate that a "credible threat of enforcement" exists in this case. *Susan B. Anthony List*, 134 S. Ct. at 2343 (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15 (2010)).

Moreover, the need to threaten or undertake any prosecution in circumstances like this – where a party alleges that it is under statutory (or other) non-disclosure obligations in connection with legal process – rarely arises because the law provides other adequate remedies. For example, parties may seek recourse with any court that has issued such process (as plaintiff might here to the extent it challenges legal process issued by the FISC or directives issued under the FISC's supervision). In addition, individuals who are subject to non-disclosure obligations to protect classified information may seek to challenge substantive classification determinations by the Government, whereupon a court may review whether the information has been properly classified by the Executive Branch. *See, e.g., Stillman*, 319 F.3d at 548-49 & *infra* n.15. Especially where plaintiff may avail itself of such remedies and professes that it has no intent or desire to disclose information that would harm national security, plaintiff's challenge to a speculative threat of future prosecution under the Espionage Act is unmoored from Article III jurisdictional requirements. Count III should therefore be dismissed pursuant to Rule 12(b)(1).

### III.   All of Plaintiff's Claims Fail Because It is Lawful to Restrict Disclosure of Classified Information Learned Through Participation in a Secret National Security Investigation.

Assuming *arguendo* the Court finds it has jurisdiction and chooses to exercise it in this case, it should nonetheless dismiss the Amended Complaint because it fails as a matter of law. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) ("Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.").

Here, none of plaintiff's claims asserts a cognizable legal theory because they are all based on alleged First Amendment harm resulting from an inability to publish information that

plaintiff does not dispute is classified.  Under Count I, plaintiff alleges that the duration of nondisclosure requirements arising from FISA are facially "unconstitutional under the First Amendment."  Am. Compl. ¶ 52.  Under Count II, plaintiff alleges that FISA secrecy provisions, as applied through any orders or directives plaintiff may have received, operate "in violation of Twitter's First Amendment right to speak."  *Id.* ¶ 57.  Finally, under Count III, plaintiff alleges that if the Espionage Act were used to prosecute plaintiff for publication of aggregate data about FISA orders it has received, if any, and other information redacted from its draft Transparency Report, that would be "unconstitutional as violating Twitter's First Amendment right."  But plaintiff's Amended Complaint does not allege the information it wishes to publish is not, in fact, properly classified.  In short, therefore, plaintiff claims that the First Amendment entitles it to publish any classified national security information that plaintiff may have learned based on being subject to legal process supervised by the FISC, even if such publication were in violation of nondisclosure orders or other requirements.

This simply is not the law.  The President, Congress, and courts like the FISC may properly restrict the disclosure of information that would harm national security, and that is all they are alleged to have done here.

To begin, Article II of the Constitution vests the President as head of the Executive Branch and Commander in Chief (as well as his Executive Branch designees) with the authority to "classify and control access to information bearing on national security."  *See Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1998).  Likewise, Congress acting pursuant to Article I may fortify the protection of sensitive national security information through statutory law, as it has done, for example, via the FISA secrecy provisions that plaintiff seeks to challenge.  Thus, courts have recognized that "Congress has a legitimate interest in authorizing the [Executive Branch] to invoke procedures designed to ensure that sensitive security information is not unnecessarily disseminated to *anyone* not involved in the surveillance operation in question[.]"  *United States v. Ott*, 827 F.2d 473, 477 (9th Cir. 1987) (rejecting due process challenge to FISA requirements that courts review FISA materials *ex parte*, *in camera*); *see also, e.g.*, *In re NSA Telecom. Records Litig.*, 633 F. Supp. 2d 949, 971-72 (N.D. Cal. 2009) (rejecting constitutional challenge

to statute providing for *ex parte*, *in camera* review of classified information to establish

immunity of telecommunications providers alleged to have assisted in government surveillance).

Even apart from FISA, Congress has enacted, and courts have upheld, other statutory protections

against the disclosure of classified information.  *See, e.g.*, *Al Haramain Islamic Found., Inc. v.

Dep't of Treasury*, 686 F.3d 965, 982 (9th Cir. 2012) (rejecting due process challenge where

classified information was submitted to court only *ex parte* and *in camera* to support designation

of entity as a foreign terrorist organization and associated freeze of its assets); *Global Relief

Found., Inc. v. O'Neill*, 315 F.3d 748, 754 (7th Cir. 2002) (same).

In addition, the Supreme Court has made clear that the First Amendment does not permit

a person subject to secrecy obligations to disclose national security information.  *See Snepp*, 444

U.S. at 510.  In *Snepp*, the Supreme Court considered whether a former CIA employee's

nondisclosure agreement was an improper prior restraint on free speech.  Concluding that it was

not, but rather that it was reasonable and enforceable, the Court recognized the Government's

compelling interest in the protection of national security:

> The Government has a compelling interest in protecting both the secrecy of
> information important to our national security and the appearance of
> confidentiality so essential to the effective operation of our foreign intelligence
> service.

*Snepp*, 444 U.S. at 509 n.3; *see also Egan*, 484 U.S. at 527; *Haig v. Agee*, 453 U.S. 280, 307

(1981) ("[N]o governmental interest is more compelling than the security of the Nation.").  In

light of this compelling interest, courts have concluded that persons subject to secrecy

obligations have no First Amendment right to publish properly classified information: "[i]f the

Government classified the information properly, then [plaintiff] simply has no first amendment

right to publish it."  *Stillman*, 319 F.3d at 548; *see also Snepp*, 444 U.S. at 509 n.3; *McGehee v.

Casey*, 718 F.2d 1137, 1143 (D.C. Cir. 1983); *United States v. Marchetti*, 466 F.2d 1309, 1315-

16 (4th Cir. 1972) ("Although the First Amendment protects criticism of the government,

nothing in the Constitution requires the government to divulge [national security]

information.").[12]  Here, plaintiff would possess information about any FISA process it may have received due solely to the fact that it is an electronic communication service provider subject to the receipt of legal process and attendant nondisclosure obligations under law.

Indeed, even in cases not involving classified information, numerous judicial decisions make clear that restrictions on a party's disclosure of information obtained through involvement in confidential judicial proceedings do not offend the First Amendment.  In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), the Supreme Court upheld the constitutionality of a judicial order that prohibited parties to a civil suit from disclosing sensitive information obtained through pretrial discovery.  In rejecting a First Amendment challenge to the order, the Court noted that the parties "gained the information they wish to disseminate only by virtue of the trial court's discovery processes," which was made available as a matter of legislative grace rather than constitutional right.  467 U.S. at 32.  The Court found that "control over [disclosure of] the discovered information does not raise the same specter of . . . censorship that such control might suggest in other situations."  *Id.*[13]

---

[12] Plaintiff's initial Complaint appears to allege that, to the extent it has received any FISA process (and thus to the extent it would have standing to raise the claims in the Amended Complaint), its employees have executed nondisclosure agreements like the one enforced in, *e.g.*, *Snepp.  See* Compl. ¶¶ 18, 45.  The Supreme Court also concluded in *Snepp* that, even in the absence of an express agreement, the Government could have imposed reasonable restrictions on the plaintiff's activities to protect compelling national security interests.  444 U.S. at 509 n.3.

[13] *See also Butterworth v. Smith*, 494 U.S. 624, 632 (1990) (holding a grand jury witness could disclose the substance of his testimony after the term of the grand jury had ended because "we deal only with [the witness's] right to divulge information of which he was in possession *before* he testified before the grand jury, and not information which he may have obtained as a result of his participation in the proceedings of the grand jury.") (emphasis added); *id.* at 636 (Scalia, J., concurring) ("[q]uite a different question is presented . . . by a witness' disclosure of the grand jury proceedings, which is knowledge he acquires not 'on his own' but only by virtue of being made a witness."); *Hoffmann-Pugh v. Keenan*, 338 F.3d 1136, 1140 (10th Cir. 2003) ("a [constitutional] line should be drawn between information the witness possessed prior to becoming a witness and information the witness obtained through her actual participation in the grand jury process"; upholding statute prohibiting disclosure of, *inter alia*, information sought by prosecution in grand jury); *In Re Subpoena to Testify*, 864 F.2d 1559, 1562 (11th Cir. 1989) (similar); *First Amendment Coal. v. Judicial Inquiry & Review Bd.*, 784 F.2d 467, 479 (3d Cir. 1986) (*en banc*) (state may prohibit witnesses and other persons "from disclosing proceedings taking place before" a judicial misconduct investigation board).  *Cf. Doe v. Mukasey*, 549 F.3d 861, 877 (2d Cir. 2008) (distinguishing between a nondisclosure requirement imposed by the

In sum, to the extent plaintiff is challenging the existence of secrecy obligations that have been imposed on it pursuant to statutory law, judicial order, and/or non-disclosure agreements with the Executive Branch, the law is clear that the President and Congress may protect classified national security information and that any restrictions on disclosure of undisputedly classified information at issue here would not violate the First Amendment.  This includes any restrictions imposed by orders of the FISC or directives issued under its supervision pursuant to FISA.  "If the Government classified the information properly, then [plaintiff] simply has no first amendment right to publish it," and its claims fail as a matter of law.  *Stillman*, 319 F.3d at 548; *see also Snepp*, 444 U.S. at 509 n.3.

Accordingly, because plaintiff does not dispute that the information it seeks to publish is classified,[14] and because plaintiff would have obtained any information pertaining to FISA process in the course of FISC proceedings, its claims all fail as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiff's Amended Complaint.

Dated: January 15, 2016                    Respectfully submitted,

                                           BENJAMIN C. MIZER
                                           Principal Deputy Assistant Attorney General

                                           BRIAN STRETCH
                                           Acting United States Attorney

                                           ANTHONY J. COPPOLINO
                                           Deputy Branch Director

---

FBI without prior judicial supervision and those in proceedings in which "interests in secrecy arise from the nature of the proceeding").

[14] If plaintiff were to allege that the information in its draft Transparency Report is not properly classified, contrary to the Executive Branch determination, the law provides a way for a court to adjudicate that claim.  *See, e.g., Stillman*, 319 F.3d at 548–49 (in cases challenging agency determinations that information cannot be published because it is classified, "*in camera* review of affidavits, followed if necessary by further judicial inquiry, will be the norm" with the "appropriate degree of deference" given to the Executive Branch concerning its classification decisions) (quoting *McGehee*, 718 F.2d at 1149).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____/s/ Julia A. Berman_____
STEVEN Y. BRESSLER
JULIA A. BERMAN
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Julia.Berman@usdoj.gov

*Attorneys for Defendants*