BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
BRIAN STRETCH
Acting United States Attorney
ANTHONY J. COPPOLINO
Deputy Branch Director
STEVEN Y. BRESSLER
Senior Trial Counsel
JULIA A. BERMAN
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 616-8480
Facsimile: (202) 616-8470
Email: julia.berman@usdoj.gov

Attorneys for Defendants the Attorney General, et al.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWITTER, INC., | Case No. 14-cv-4480 |
| Plaintiff, | Date: March 15, 2016 |
| | Time: 2:00 p.m. |
| v. | Courtroom 1, Fourth Floor |
| | Hon. Yvonne Gonzalez Rogers |
| LORETTA E. LYNCH, United States Attorney General, *et al.*, | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED COMPLAINT** |
| Defendants. | |

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................4

I.    Plaintiff's Opposition Clarifies Further Why the FISC is the Appropriate Forum for Counts I and II ...........................................................................................4

    A.    Any FISC Orders and Directives Issued under FISC Supervised Programs Would Be Central to Counts I and II ........................................................................4

    B.    Plaintiff's Characterizations of the FISC Are Incorrect .........................................7

    C.    This Court has the discretion to dismiss Counts I and II ........................................9

II.    The Court Should Dismiss Count III Because the Amended Complaint Does Not Establish the Plaintiff's Standing to Challenge the Espionage Act ........................................................................................................................10

III.    The Court Should Dismiss All of Plaintiff's Claims Because It is Lawful to Restrict Disclosure of Classified Information Learned Through Participation in a Secret National Security Investigation.....................................................................11

CONCLUSION................................................................................................................................15

# TABLE OF AUTHORTIES

**CASES** **PAGE(S)**

*ACLU v. Clapper*,
  804 F.3d 617 (2d Cir. 2015) ................................................................................................. 6

*Al-Aulaqi v. Obama*,
  727 F. Supp. 2d 1 (D.D.C. 2010) ......................................................................................... 5

*Amnesty Int'l USA v. Clapper*,
  638 F.3d 118 (2d Cir. 2011) ................................................................................................ 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................... 11

*Avila v. Willits Envtl. Remediation Trust*,
  633 F.3d 828 (9th Cir. 2011) ............................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................... 11

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973) ........................................................................................................... 13

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013) .................................................................................................... 4, 5

*Elizabeth L. v. Aetna Life Ins. Co.*,
  2014 WL 2621408 (N.D. Cal. June 12, 2014) .................................................................. 11

*Gerritsen v. Warner Bros. Entm't Inc.*,
  116 F. Supp. 3d 1104 (C.D. Cal. 2015) ............................................................................. 10

*Gonzales v. Carhart*,
  550 U.S. 124 (2007) ..................................................................................................... 12, 13

*Gov't Employees Ins. Co. v. Dizol*,
  133 F.3d 1220 (9th Cir. 1998) ............................................................................................. 9

*In re: Directives Pursuant to Section 105B of the FISA*,
  551 F.3d 1004 (F.I.S.C.R. 2008) ......................................................................................... 8

*Kukje Hwajae Ins. Co. Ltd. v. M/V Hyundai Liberty*,
  408 F.3d 1250 (9th Cir. 2005) ........................................................................................... 12

*Landmark Commc'ns, Inc. v. Virginia*,
 435 U.S. 829 (1978) ............................................................................................................ 13

*Lapin v. Shulton, Inc.*,
 333 F.2d 169 (9th Cir. 1964) .............................................................................................. 10

*Nathanson v. Polycom, Inc.*,
 87 F. Supp. 3d 966 (N.D.Cal.2015) .............................................................................. 10, 11

*Obama v. Klayman*,
 800 F.3d 559 (D.C. Cir. 2015) .............................................................................................. 6

*In re Orders of this Court Interpreting Section 215 of the Patriot Act*,
 No. 13-02 (F.I.S.C. Sept. 13, 2013) ..................................................................................... 6

*Pickard v. Dep't of Justice*,
 653 F.3d 782 (9th Cir. 2011) .............................................................................................. 14

*Protect Marriage.com—Yes on 8 v. Bowen*,
 752 F.3d 827 (9th Cir. 2014) .............................................................................................. 10

*Seattle Affiliate of Oct. 22nd Coalition v. City of Seattle*,
 550 F.3d 788 (9th Cir. 2008) .............................................................................................. 12

*Sec'y of State of Md. v. Joseph H. Munson Co.*,
 467 U.S. 947 (1984) .............................................................................................................. 4

*Snepp v. United States,*
 444 U.S. 507 (1980) (per curiam) ....................................................................................... 13

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001) .............................................................................................. 12

*Stillman v. CIA*,
 319 F.3d 546 (D.C. Cir. 2003) ..................................................................................... *passim*

*Susan B. Anthony List v. Driehaus*,
 134 S. Ct. 2334 (2014) ........................................................................................................ 11

*United States v. Cavanagh*,
 807 F.2d 787 (9th Cir. 1987) ................................................................................................ 7

*United States v. Mohamud*,
 2014 WL 2866749 (D. Or. June 24, 2014) .......................................................................... 6

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ........................................................................................................... 5

**STATUTES**

28 U.S.C. § 2201 ............................................................................................................................ 9
28 U.S.C. § 2202 ............................................................................................................................ 9
50 U.S.C. § 1803(h) ....................................................................................................................... 8
50 U.S.C. § 1806(e) ....................................................................................................................... 6
50 U.S.C. § 1861(f)(2) ................................................................................................................... 6

**EXECUTIVE ORDERS**

Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) .................................................. 12, 14

**MISCELLANOUS**

FISC Rules of Procedure ............................................................................................................... 7

**PRELIMINARY STATEMENT**

Plaintiff Twitter's opposition to defendants' motion to dismiss distorts the issues that are before this Court, and fails to demonstrate why the Court should review the claims actually pled in the Amended Complaint, ECF No. 88 (Am. Compl.). As explained below, this case could have raised relatively straightforward issues, but the manner in which plaintiff has pled and argued its claims leaves much to be sorted out and, ultimately, nothing that the Court should review at this time.

Plaintiff begins its opposition by asserting that the Government seeks to "indefinitely ban it" from "speaking truthfully about the extent of its receipt of national security legal process seeking information about its users." Pl.'s Opp'n to Mot. to Dismiss, ECF No. 97 (Pl.'s Opp'n) at 1. That simply is not an accurate characterization of what is at issue. Rather, at the center of this lawsuit is a draft "Transparency Report" in which the plaintiff sought to disclose classified details about national security legal process it has received. The location of the classified information has been specifically identified through redactions in the draft report. But plaintiff *did not challenge* the Government's classification decisions in its Amended Complaint and undisputedly has no First Amendment right to publish classified national security information.

Instead, the Amended Complaint detours onto other claims that should not be heard by this Court. First and foremost, plaintiff seeks to challenge secrecy requirements of the Foreign Intelligence Surveillance Act ("FISA") on their face, and as applied to it in any orders or directives issued by the Foreign Intelligence Surveillance Court ("FISC"). Because FISA's secrecy requirements would be imposed pursuant to legal process issued by the FISC, each of these claims seeks to challenge the orders of another Article III court. Accordingly, plaintiff's challenge should be brought before the FISC under basic principles of comity and orderly judicial administration, and plaintiff's opposition fails to demonstrate otherwise.[1]

First, in Count I, plaintiff purports to "facially" challenge provisions of the FISA, not insofar as they might prohibit the publication of the draft Transparency Report, but as a general

---

[1] The Government notes, as before, that it is not confirming or denying whether plaintiff has received FISC orders or FISA process.

matter. *See, e.g.*, Pl.'s Opp'n at 16. But to the extent plaintiff is challenging requirements that have been imposed on it under a FISC order or a directive under a FISC-supervised program, the coordinate Article III court that imposed such requirements should review any challenges to them. In responding to defendants' motion, plaintiff protests that it has not pled that it has received any such orders or directives at all. *See* Pl.'s Opp'n at 6–7. But plaintiff's omission does not help its cause, nor render review of any FISC orders or directives unnecessary, nor in any way facilitate this Court's exercise of jurisdiction. On the contrary, plaintiff's receipt of such process would be a key predicate to plaintiff's standing to bring its FISA challenges; insofar as Twitter seeks to facially challenge the secrecy requirements of the FISA unmoored from an actual application of those requirements, this Court would have no jurisdiction to hear such a hypothetical claim. The same is true as to Count II, because it seeks to challenge the actual application of FISA requirements that could be imposed only via orders or directives issued or supervised by the FISC. Thus, as with Count I, receipt of a FISC order or directive is necessary to establish the plaintiff's standing to bring such a claim. This Court should therefore send the FISA claims to the FISC.

Apart from its FISA claims, plaintiff seeks to challenge limitations on the aggregate data it may disclose about national security legal process, but has again proceeded in a roundabout fashion. Instead of challenging the redactions of classified information in the draft Transparency Report in either its first or Amended Complaint, Twitter instead seeks declaratory and injunctive relief with respect to the Espionage Act, asserting that it may be prosecuted if it discloses the classified information at issue. The Government explained in its motion to dismiss that, because Twitter professes no plans to disclose classified information, any claim of an actual threat of prosecution fails for lack of standing. *See* Defs.' Mot. to Dismiss the Am. Compl., ECF No. 94 (Defs.' Mot.) at 16–19 (quoting Am. Compl. ¶ 7 ("Twitter recognizes that genuine national security concerns require that certain information about such orders be kept secret," and seeks "to disclose details about specific FISA orders it has received or will receive as soon as doing so will no longer harm national security")). But Twitter now asserts that its recognition of "genuine national security concerns," and its intent to seek disclosure only when no harm to national

security would result, was limited to Count I, its facial challenge to FISA, and has no application to Count III, its Espionage Act claim. This assertion makes little sense and, in any event, such litigation maneuvering cannot serve to resuscitate plaintiff's Espionage Act claim.

At bottom, plaintiff is now trying to amend its complaint again to state a claim that was never pled. After defendants highlighted in their motion that plaintiff would have no First Amendment right to publish classified information that it may have obtained through participation in a secret national security investigation—and that plaintiff had not challenged the classification of the unredacted draft Transparency Report—plaintiff now seeks to reframe its position and assert, for the first time, that it *does* seek to challenge the Government's classification decision. *See* Pl.'s Opp'n at 18. In other words, plaintiff now seeks to contend that the information at issue is not properly classified. But this new theory of the case does not appear in the Amended Complaint. Rather, plaintiff acknowledges that it has no First Amendment right to publish classified information (*id.* at 18), and has not made allegations plausibly disputing the classification of the information at issue.[2]

In these circumstances, the Court should dismiss the Amended Complaint. First, the Court should dismiss the FISA claims and allow them to be heard in the FISC for any appropriate review. Second, the Court should dismiss plaintiff's Espionage Act claim for lack of standing and for a failure to state a claim upon which relief can be granted. Plaintiff has not pled any facts that plausibly establish its standing, and in any event has no First Amendment right to publish classified information it may have learned through participation in a national security investigation. Plaintiff has also failed to challenge the actual classification determinations reflected in its draft Transparency Report. For these reasons, all of the pending claims should be dismissed.[3]

---

[2] The Government pointed out in the case management statement how a First Amendment challenge to denials of requests to publish classified information may be reviewed, *see* ECF No. 29, at 7–8*,* and yet plaintiff again chose not to raise such a claim in its Amended Complaint.

[3] Alternatively, should the Court allow plaintiff to again amend its complaint to challenge whether the information redacted from the draft Transparency Report is properly classified, it should first dismiss the pending claims and then, should plaintiff file a Second Amended

**ARGUMENT**

I. **Plaintiff's Opposition Clarifies Further Why the FISC is the Appropriate Forum for Counts I and II.**

   A. **Any FISC Orders and Directives Issued under FISC Supervised Programs Would Be Central to Counts I and II.**

Because adjudication of Counts I and II would likely require a court to assess the scope and constitutionality of any orders issued by the FISC, defendants urged this Court to dismiss those claims in the interests of comity. *See* Defs.' Mot. at 10–16. In response, plaintiff insists that Count I "does not challenge any particular FISA order," Pl.'s Opp'n at 6, because it is a facial challenge to the FISA statute that "does not require a court to consider specific applications of the statute to the plaintiff," *id.* at 7. And with respect to Count II, plaintiff asserts again that it "does not challenge any particular order," and protests that "the amended complaint does not allege that Twitter has necessarily received *any* FISA orders." *Id.* (emphasis in original). But plaintiff's argument proves too much; while it is true that plaintiff has thus far pled only that it "either has received a FISA order in the past or has a reasonable fear of receiving one in the future," Am. Compl. ¶ 7, a constitutional challenge to a federal statute cannot proceed on such gossamer grounds. Plaintiff's ability to bring either challenge depends on its ability to show that it has received a FISC order or a directive through a FISC-supervised program, and thus has standing to assert its claims.

Plaintiff's pleadings are especially problematic with respect to Count I, a purported facial challenge—not to a restriction on plaintiff's ability to publish aggregate data, but to FISA's nondisclosure provisions in general. To bring such a claim, plaintiff must show that it has standing to challenge the validity of the statute, *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 954 (1984), including by "satisfy[ing] . . . the 'case' or 'controversy' requirement of Art. III of the United States Constitution." *Id.* Such a showing includes demonstrating that plaintiff has suffered an injury in fact that is "concrete, particularized, and actual or imminent."

---

Complaint, entertain defendants' motion for summary judgment. Such a motion would explain why that information is properly classified and thus why plaintiff has no First Amendment right to publish that information. *See Stillman v. CIA*, 319 F.3d 546, 548–49 (D.C. Cir. 2003); *accord* Pl's Opp'n at 17.

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013). The Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that 'allegations of possible future injury' are not sufficient." *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Indeed, in *Amnesty International*, the Supreme Court rejected a theory of standing based on the plaintiffs' "reasonable fear of future harmful government conduct," *id.* at 1146 (quoting *Amnesty Int'l USA v. Clapper*, 638 F.3d 118, 138 (2d Cir. 2011)), notwithstanding that the plaintiffs in that case submitted numerous reasons why they feared they would be subject to surveillance under the provision of FISA that they sought to challenge. *See id.* at 1156–59 (Breyer, J., dissenting). If the more robust factual record of *Amnesty International* was insufficient to establish Article III standing, plaintiff's wholly unsupported "reasonable fear," Am. Compl. ¶ 7, falls far short of the mark.

Accordingly, if plaintiff only fears that it may receive a FISC order or other FISC-supervised process in the future, its challenges to FISA must be dismissed for lack of standing. But if it does have standing, then a FISC order or directive is at the very heart of its ability to bring its claims, and, for all of the reasons explained in defendants' motion, *see* Defs.' Mot. at 10–16, the FISC should adjudicate the scope and constitutionality of any order or directive it may have issued as a matter of comity.[4] Furthermore, to the extent plaintiff has received any such legal process, the FISC would possess the institutional information as to what orders it has issued and is well equipped to handle any related classified materials.[5]

---

[4] By contrast, attempting to litigate in this Court any challenge to requirements that were purportedly imposed through a classified legal proceeding and resulting order would present significant and complex issues concerning whether or how review of any such matter could properly proceed here. These are issues that this Court can and should avoid. *Cf. Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 53-54 (D.D.C. 2010) (agreeing with the Government that the court need not and should not address the impact of classified information in litigation where the case can be resolved on other grounds).

[5] Plaintiff is wrong when it argues that the Government has included classified material from a FISA order in its motion. *See* Pl.'s Opp'n at 7. In fact, the language excerpted in the Government's motion was declassified and appeared in the Government's brief in the Google litigation regarding reporting of aggregate data. *See* The United States' Opposition to the Companies' Motion to Strike the Government's *Ex Parte* Response, at 2 n.1 (explaining that this

The six cases plaintiff cites, *see* Pl.'s Opp'n at 9–10, are not to the contrary. The first two cases address the Freedom of Information Act, not the constitutionality and scope of FISC orders. *See id.* (citing *In re Orders of this Court Interpreting Section 215 of the Patriot Act*, No. 13-02 (F.I.S.C. Sept. 13, 2013). The cases that plaintiff cites as "constitutional challenges to FISA and to orders issued under it," Pl.'s Opp'n at 10, on the other hand, were all brought by parties who feared that they would be subject to FISA surveillance, not potential recipients of FISC orders asking another court to adjudicate the orders' scope or constitutionality. *See id.* (citing *Amnesty Int'l USA*, 133 S. Ct. 1138; *ACLU v. Clapper*, 804 F.3d 617 (2d Cir. 2015); *Obama v. Klayman*, 800 F.3d 559 (D.C. Cir. 2015)). Finally, in *United States v. Mohamud*, 2014 WL 2866749 (D. Or. June 24, 2014) where a criminal defendant moved to suppress evidence obtained pursuant to FISA, Congress specifically permits such challenges in the course of criminal proceedings under the jurisdiction of the relevant district court, as plaintiff notes. *See* Pl.'s Opp'n at 10 (citing 50 U.S.C. § 1806(e)). Here, there is no such statutory authorization. On the contrary, to the extent FISA discusses challenges to nondisclosure orders, it specifically contemplates that such challenges be brought before the FISC. *See* 50 U.S.C. § 1861(f)(2).

Thus, none of the cases that plaintiff cites resembles the situation now before this Court. If plaintiff was not subject to FISC process, it has no standing to brings Counts I and II in this Court; and, if plaintiff has received FISC process, the cases that plaintiff cites provide no grounds for that process to be adjudicated by any court other than the FISC.[6]

---

information had previously been classified, but was subsequently released by the Government), *available at* http://www.fisc.uscourts.gov/sites/default/files/Misc%2013-03%20Motion-22.pdf

[6] This is especially so with respect to Count I, plaintiff's purported facial challenge. Count II, an "as applied" FISA claim, appears to focus on plaintiff's contention that it has a First Amendment right to publish the information redacted from its Transparency Report. The Court could address such a contention by conducting an "*in camera* review of affidavits, followed if necessary by further judicial inquiry" with the "appropriate degree of deference" given to the Executive Branch concerning its classification decisions. *Stillman v. CIA*, 319 F.3d at 548–49 (describing such procedures as "the norm" in cases challenging agency determinations that information cannot be published because it is classified). Plaintiff has now twice failed to plead in this case that the information redacted from that report is not properly classified. *See infra* Part III.A (explaining that plaintiff's Amended Complaint contains no such allegation or claim).

**B.     Plaintiff's Characterizations of the FISC Are Incorrect.**

Plaintiff's effort to avoid transfer of its FISA claims to the FISC is based in part on purported concerns about how litigation would proceed in that forum. *See* Pl's Opp'n at 11–12. But plaintiff's characterizations of the FISC are mistaken. Specifically, plaintiff argues that this Court should not defer to the FISC because 1) the FISC would give the Government an advantage; 2) the FISC would bar attorneys with no security clearance; 3) the FISC lacks authority to grant plaintiff relief; 4) the FISC would offer the public less access to its proceedings; and 5) the FISC has a body of classified case law on which the Government intends to rely if this case proceeded in that court. *See id.* None of these claims have merit.

To begin with, the FISC is a Court of Article III judges—the same judges who sit on district courts.[7] There is no basis for plaintiff's contention that the Government's greater familiarity with the FISC's judges, Pl's Opp'n at 11, would affect proceedings in any way. Government counsel are, of course, familiar with judges in all districts of the United States including this one, and that has no bearing on the independence of any court, let alone on the outcome of litigation. Nor is there reason to think that plaintiff could not quickly become familiar with the FISC's rules of procedure, which are only fifteen pages in length, and are publicly available on the federal judiciary's website. *See* Rules of Procedure, *available at* http://www.uscourts.gov/uscourts/rules/FISC2010.pdf.

With respect to plaintiff's concern that its in-house attorneys could not appear before the FISC, based on FISC Rule 63, that rule requires only that attorneys appearing before the court "have the *appropriate* security clearance." *See id.* at 15 (emphasis added). Nothing would bar counsel without a clearance from any non-classified proceedings of that court.[8] For example, in the litigation before the FISC addressing Google Inc.'s and other companies' ability to disclose aggregate data, a party represented by counsel without security clearances filed a motion for

---

[7] The Media & Writers *Amici* are thus simply wrong to suggest that members of the FISC are not themselves Article III judges, or, therefore, that deferring to that coordinate court would somehow "undermine the role" of such Article III judges. *See, e.g.*, *United States v. Cavanagh*, 807 F.2d 787, 791–92 (9th Cir. 1987) (Kennedy, J.).

[8] Indeed, plaintiff's construction would render the word "appropriate" mere surplusage.

declaratory judgment before that court. *See* Mot. for Declaratory Judgment That LinkedIn Corporation May Report Aggregate Data Regarding FISA Orders, No. 13-07, at 15, *available at* http://www.fisc.uscourts.gov/sites/default/files/Misc%2013-07%20Motion-3.pdf. And to the extent any classified proceedings would be contemplated, counsel who have a legitimate need to participate in those proceedings could seek an appropriate clearance—just as would be required for any classified proceedings in this or any other court.

Nor is plaintiff correct that the FISC cannot provide any relief with respect to Counts I and II as to any legal process it has issued. The FISC has inherent authority to construe the terms of its orders and of directives issued pursuant to programs under its supervision. *See* 50 U.S.C. §1803(h) (discussing the FISC's inherent authority). Likewise, the FISC may adjudicate the constitutionality of those orders and directives. Simply put, if the FISC issued process that imposes secrecy requirements on a telecommunications provider, it can hear challenges to its process raised by that party. *See, e.g.*, *In re: Directives Pursuant to Section 105B of the FISA*, 551 F.3d 1004 (F.I.S.C.R. 2008) (addressing a provider's challenge to the constitutionality of directives it had received under FISA).

Furthermore, the FISC is not a "nonpublic court," Pl.'s Opp'n 11, as plaintiff contends. The FISC maintains a public docket and the filings in cases on that docket are available on the FISC's website, http://www.fisc.uscourts.gov/public-filings. During the above-discussed litigation before the FISC regarding other companies' disclosure of aggregate data, the parties' submissions were publicly available. In fact, various *amici* filed briefs too, and sought permission to participate in oral argument. *See, e.g.*, Mot. of the First Am. Coalition, *et al.*, as *Amici Curiae* for Leave to Participate in Oral Argument, No. 13-03, Oct. 10, 2013 *available at* http://www.fisc.uscourts.gov/sites/default/files/Misc%2013-03%20Motion-16.pdf. Only classified submissions were not made available to the public.[9] This case would be no different;

---

[9] To the extent the FISC has expertise in safeguarding classified information, that capacity supports, rather than undermines, defendants' comity argument. Congress acted deliberately in vesting authority to hear FISA-related claims in a court with such expertise in handling of closed or classified proceedings, to the extent such proceedings are necessary.

*Twitter, Inc. v. Lynch, et al.,* Case No. 14-cv-4480     8
Reply in Support of Motion to Dismiss Amended Complaint

if the FISC were to adjudicate plaintiff's FISA-based claims, the public would have access to any unclassified submissions by the parties, and defendants would not object to such access.

Finally, plaintiff cites the Government's "exclusive access to and familiarity with [the FISC's] body of classified case law." Pl.'s Opp'n at 11. As an initial matter, the Government is not aware of any case law of the FISC that it would rely upon in this litigation; nor is it aware of any FISC case law upon which plaintiff could rely. And if any argument raised by the Government were based on any classified precedent, the FISC could consider whether measures exist for addressing that concern in a particular dispute, if and as appropriate. The Government's contention that the FISC is the more appropriate forum is based on considerations of comity and the principle that the issuing court "is the best judge of its own orders"—not on a desire to avail itself of a body of secret case law. *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 836 (9th Cir. 2011).

In sum, permitting Counts I and II to proceed before the FISC would yield neither material advantages to the Government nor disadvantages to the plaintiff. Nor would amici or members of the public have less access to public proceedings.

**C.      This Court has the discretion to dismiss Counts I and II.**

All of the above reasons counsel in favor of dismissing Counts I and II, and permitting them to be heard by the FISC. As the Government explained in its motion, it is within the Court's discretion to dismiss these claims because "the Declaratory Judgment Act is deliberately cast in terms of permissive, rather than mandatory, authority." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (quotation omitted). Plaintiff argues, in response, that the Court lacks the discretion to decline jurisdiction over Counts I and II "[b]ecause Twitter is not seeking only a declaratory judgment." Pl.'s Opp'n at 6. But that assertion does little to aid plaintiff's cause. The Declaratory Judgment Act, by its terms, provides not only for declaratory relief, *see* 28 U.S.C. § 2201, but also for such relief as is "[f]urther necessary or proper," 28 U.S.C. § 2202, including injunctive relief. *See also* Am. Compl. ¶ 15 ("This Court may provide injunctive relief and declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202."). Thus, the

Act—and the case law interpreting it—apply regardless of the form of the relief plaintiff seeks through the Declaratory Judgment Act.

In sum, this Court has the discretion to dismiss Counts I and II, and should do so based on considerations of comity and orderly judicial administration. *Lapin v. Shulton, Inc.*, 333 F.2d 169, 172 (9th Cir. 1964).

## II. The Court Should Dismiss Count III Because the Amended Complaint Does Not Establish the Plaintiff's Standing to Challenge the Espionage Act.

In their motion to dismiss the Amended Complaint, defendants explained that plaintiff lacks standing to mount a pre-enforcement challenge to the Espionage Act because—having disavowed any intention to publish classified information—plaintiff does not "confront a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," *Protect Marriage.com—Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014). *See* Defs.' Mot. at 16–19. In particular, defendants cited plaintiff's assertion that it "seeks to disclose details about specific FISA orders it has received or will receive as soon as doing so will no longer harm national security." *See id.* at 18 (quoting Am. Compl. ¶ 7).

Plaintiff's puzzling response is that its stated intention not to harm national security is limited to Count I of its Amended Complaint, and does not extend to plaintiff's intention to publish its draft Transparency Report, "a report that the government says contains classified information." Pl.'s Opp'n at 13. Aside from the fact that it makes no sense for a party to profess there are "genuine national security concerns" in protecting information for one "count" but not another, plaintiff's revised theory of the case does not appear on the face of the Amended Complaint.[10] The Court should decline to consider it at this time and dismiss plaintiff's Espionage Act claim on the grounds stated in defendants' motion. *Cf. Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104 (C.D. Cal. 2015) (declining to consider unpled theory of liability raised in response to a motion to dismiss); *Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d

---

[10] Indeed, plaintiff's statement that it does not seek to publish information would harm national security, *see* Am. Compl. ¶ 7, appears in the background section of the complaint, describing the "Nature of the Action," and is not linked to particular counts.

966, 985 (N.D.Cal.2015) (same); *Elizabeth L. v. Aetna Life Ins. Co.*, 2014 WL 2621408, *4 (N.D. Cal. June 12, 2014) (same).

Furthermore, arguments elsewhere in plaintiff's opposition suggest that plaintiff seeks to publish the draft Transparency Report precisely because plaintiff contends that information in the report is not properly classified (and therefore, presumably, in plaintiff's view, its publication would not harm national security). *See* Pl.'s Opp'n at 18. This theory, too, does not appear in the Amended Complaint, and, for the reasons discussed in Section III below likewise cannot salvage Plaintiff's Espionage Act claim.

Finally, as the Government has explained, plaintiff has not alleged that the Government has threatened to initiate proceedings under the Espionage Act and has otherwise failed to demonstrate any "credible threat of enforcement." Defs.' Mot. at 18–19 (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2343 (2014)).

### III. The Court Should Dismiss All of Plaintiff's Claims Because It is Lawful to Restrict Disclosure of Classified Information Learned Through Participation in a Secret National Security Investigation

In the alternative, the Court should dismiss all of plaintiff's pending claims on the ground that none of them assert a cognizable legal theory. As explained in defendants' opening motion, all of plaintiff's claims are based on alleged First Amendment harm resulting from an inability to publish information that plaintiff does not dispute is classified. *See* Defs.' Mot., Section III.

Although plaintiff now argues in its opposition brief that its Amended Complaint does, in fact, challenge the classification of the information in dispute, this is based on an inference without any underlying factual allegation: "the amended complaint does allege that Twitter has a First Amendment right to publish the information, which necessarily means that it was not properly classified." *See* Pl.'s Opp'n at 18. While plaintiff thus agrees it has no First Amendment right to publish the information at issue if it is properly classified, the type of inference plaintiff seeks falls well short of alleging "enough *facts* to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009). Plaintiff could, for example, have

alleged that disclosure of aggregate numbers with respect to FISA process cannot reasonably be expected to harm national security. *See* Exec. Order No. 13,526, 75 Fed. Reg. 707, at § 1.1(4) (Dec. 29, 2009). But here plaintiff has stated only a legal conclusion (alleging a First Amendment right), and now asks the Court to infer from that legal conclusion—absent any factual allegation—that it challenges the factual or procedural basis of the government's classification decision. This is not reasonable. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). Accordingly, as set forth in defendants' opening motion (Defs.' Mot. at 20–23), plaintiff's claims fail as a matter of law. *See Kukje Hwajae Ins. Co. Ltd. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254-55 (9th Cir. 2005) (rejecting defense to motion to dismiss that was inconsistent with allegations in the complaint). As plaintiff concedes, it has no First Amendment right to publish the information at issue to the extent that information is properly classified, and it has not alleged otherwise. *See* Pl.'s Opp'n at 18; *accord Stillman v. CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003) ("If the Government classified the information properly, then [plaintiff] simply has no first amendment right to publish it.").

Defendants' motion also explains why plaintiff's FISA claims, if reached, likewise fail as a matter of law. *See* Defs.' Mot. at 20. With respect to plaintiff's claim that FISA secrecy provisions are unconstitutional because the classification is "indefinite," the Government has long construed these secrecy requirements to be coextensive with pertinent classification pursuant to Exec. Order No. 13,526. *See, e.g.*, Notice (ECF No. 1, Ex. 2), at 2 (January 2014 filing before the FISC stating the Government will not treat disclosure of information that is no longer classified as "prohibited under any legal provision that would otherwise prohibit the disclosure of classified data, including data relating to FISA surveillance"). The Court must consider this "authoritative construction[]" of FISA secrecy requirements if it considers plaintiff's facial challenge. *See Seattle Affiliate of Oct. 22nd Coalition v. City of Seattle*, 550 F.3d 788, 799 (9th Cir. 2008). FISA, therefore, is best construed *not* to mandate unconstitutionally long or undefined secrecy requirements. This is consistent with "the

elementary rule . . . that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.'" *Gonzales v. Carhart*, 550 U.S. 124, 153-54 (2007). *See also Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973) (the First Amendment overbreadth exception "has not been invoked when a limiting construction has been or could be placed on the challenged statute.").

For these reasons, to the extent plaintiff is challenging secrecy obligations imposed on it pursuant to statutes, judicial order, or directives supervised by the FISC, the law is clear that any restrictions on disclosure of the classified information at issue here would not violate the First Amendment. This includes any restrictions imposed by orders of the FISC or directives issued under its supervision pursuant to FISA. "If the Government classified the information properly, then [plaintiff] simply has no first amendment right to publish it," and its claims fail as a matter of law. *Stillman*, 319 F.3d at 548; *see also Snepp v. United States*, 444 U.S. 507, 517 n.3 (1980) (per curiam).

Finally, plaintiff spends the last four pages of its opposition attempting to distinguish authority cited by the Government for the established proposition that restrictions on disclosure of even unclassified information obtained through involvement in confidential judicial proceedings does not offend the First Amendment. *See* Defs.' Mot. at 22 & n.13 (collecting cases); *accord, e.g., Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 837 & n.10 (1978) (distinguishing between whether the First Amendment permits the criminal punishment of third persons who are strangers to a judicial proceeding and a State's power to punish participants in a proceeding for breach of a nondisclosure mandate). Plaintiff first seeks to distinguish this authority by asserting that the "speech at issue here is not within any traditionally unprotected category" of speech. *See* Pl.'s Opp'n at 19 (citing cases involving obscenity). But that argument is a straw man; the authorities cited by the Government show that even speech that is traditionally protected may be restricted when it would reveal information about confidential judicial proceedings. Plaintiff's effort to explain away confidentiality requirements in other judicial settings, such as grand juries, is off point as well. The Government cited case law to buttress the point that courts have accorded less First Amendment protection to the disclosure of

confidential information gained as a result of participation in judicial proceedings. *See* Defs.' Mot. at 22.

Regardless, plaintiff can cite *no* authority in which a person who receives classified information as part of a confidential national security judicial process, such as from the FISC, has a First Amendment right to publish such information. Thus, to the extent plaintiff is advancing a First Amendment right to publish information that (1) is purportedly received from the FISC and the Government in connection with national security legal process and (2) is undisputedly classified—that is, whose disclosure plaintiff concedes *would harm* national security—that position is quite radical and unsupported by any law.[11] To the extent plaintiff contends that the information redacted from its report should be *unclassified* and, thus, that plaintiff has a First Amendment right to publish it, such a claim is not pled in the Amended Complaint. The Amended Complaint should therefore be dismissed for failure to establish standing and to plausibly allege a violation of plaintiff's First Amendment rights.[12]

---

[11] Also meritless is plaintiff's suggestion that its allegation of a "pattern of selective declassification" of some FISA-related information can support an inference that the information plaintiff wishes to publish has not been "properly" classified. Pl.'s Opp'n 18. Plaintiff points to no facts in support of this statement. *Id.* Moreover, the Executive Branch has exclusive discretion to declassify information that would otherwise remain properly classified in the public interest under extraordinary circumstances. *See* Exec. Order No. 13,526, § 3.1(d). Declassifying certain information does not alter the classification of other, different information, and plaintiff has not alleged the information it wishes to publish has been declassified or officially disclosed. *See Pickard v. Dep't of Justice*, 653 F.3d 782, 786, 787 (9th Cir. 2011) (to be declassified by virtue of official disclosure, information must have been subject to "an intentional, public disclosure made by or at the request of a government officer acting in an authorized capacity by the agency in control of the information at issue," and the information in question must be "as specific as the information previously released.").

[12] Again, if the Court is inclined to permit plaintiff another opportunity to attempt to plead such a claim, the better course for further proceedings in this case would be to dismiss the pending claims and consider the Government's evidence establishing the material is, in fact, properly classified through summary judgment proceedings. *See* Pl.'s Opp'n at 17 (quoting Government portion of Joint Case Management Statement, ECF No. 29, at 8); *Stillman*, 319 F.3d at 548–49.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in defendants' Motion, the Court should dismiss plaintiff's Amended Complaint.

Dated: March 2, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

BRIAN STRETCH
Acting United States Attorney

ANTHONY J. COPPOLINO
Deputy Branch Director

 /s/ Julia A. Berman
STEVEN Y. BRESSLER
JULIA A. BERMAN
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
julia.berman@usdoj.gov
*Attorneys for Defendants*