MAYER BROWN LLP
ANDREW JOHN PINCUS (*Pro Hac Vice*)
apincus@mayerbrown.com
1999 K Street, NW
Washington, DC 20006
Tel:  (202) 263-3220 / Fax: (202) 263-3300

MAYER BROWN LLP
LEE H. RUBIN (SBN 141331)
lrubin@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Tel: (650) 331-2000 / Fax: (650) 331-2060

PERKINS COIE LLP
MICHAEL A SUSSMANN (*Pro Hac Vice*)
MSussmann@perkinscoie.com
700 Thirteenth Street, NW, Suite 600
Washington, DC 20005-3960
Tel: 202-654-6333 / Fax: 202-654-9127

*Attorneys for Plaintiff Twitter, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| TWITTER, INC., | Case No. 14-cv-4480-YGR |
| Plaintiff, | **SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF PURSUANT TO 28 U.S.C. §§ 2201 and 2202** |
| v. | |
| LORETTA LYNCH, Attorney General of the United States, | |
| THE UNITED STATES DEPARTMENT OF JUSTICE, | |
| JAMES COMEY, Director of the Federal Bureau of Investigation, and THE FEDERAL BUREAU OF INVESTIGATION, | |
| Defendants. | |

# I.     NATURE OF THE ACTION

1.      Twitter, Inc. ("Twitter") brings this action for a declaratory judgment and permanent injunction pursuant to 28 U.S.C. §§ 2201 and 2202, requesting relief from prohibitions on its speech in violation of the First Amendment.

2.      The U.S. government engages in extensive but incomplete speech about the scope of its national security surveillance activities as they pertain to U.S. communications providers, such as Twitter. At the same time, those communications providers are tightly constrained in providing information regarding the scope (*i.e.*, amount) of national security surveillance-related requests they receive.

3.      Twitter is firmly committed to providing meaningful transparency to its users and the public. Since 2012, Twitter has published a biannual transparency report that sets forth numbers of requests it receives for user information from governments across the globe, including the U.S. government.

4.      Twitter seeks to publish information contained in a draft Transparency Report that describes the *amount* of national security legal process that it received, if any, for the period July 1 to December 31, 2013, from the Foreign Intelligence Surveillance Court ("FISC"). In this Transparency Report, Twitter does not seek to disclose any information or details concerning any specific order from the FISC that it may have received. Twitter's draft Transparency Report instead reveals the actual aggregate number of Foreign Intelligence Surveillance Act ("FISA") orders received (if any), the volume of FISA orders received by comparison to government-approved reporting structures, and similar information. Twitter also seeks to disclose that it received "zero" FISA orders, or "zero" of a specific *kind* of FISA order, for that period, if either of those circumstances is true.

5.      Twitter submitted its draft Transparency Report to Defendants for review on April 1, 2014. Five months later, Defendants informed Twitter that "information contained in the [transparency] report is classified and cannot be publicly released" because it does not comply with the government's pre-approved framework for reporting data about government requests in national security investigations.

6.      Defendants' response means that Twitter cannot speak about the volume of national security legal process it has received except in ways that have been pre-approved by government officials. Defendants initially took the position that communications providers like Twitter are prohibited even from saying that they have received zero national security requests, or zero of a particular kind of national security request, although Defendants later conceded that providers who received zero national security requests for a six-month period can say so, as such information could not be classified. (In addition, a number of providers who, presumably, have received some orders from the FISC have disclosed publicly that they received zero of a particular *kind* of FISA order, and Twitter is unaware of any comment or action by Defendants to indicate such disclosures are unlawful). Twitter's ability to respond to government statements about the scope of its national security surveillance activities generally and to speak about the scope of those activities with respect to Twitter users specifically is being unconstitutionally restricted by Defendants' interpretation of statutes as prohibiting and even criminalizing a provider's mere disclosure of the *number* of FISA orders that it has received, if any.

7.      Twitter either has received a FISA order in the past or has a reasonable expectation of receiving one in the future. Twitter recognizes that genuine national security concerns require that certain details about such orders, such as the specific target of surveillance, be kept secret. Twitter does not seek through this Complaint to disclose the contents of any FISA orders it may have or will receive.

8.      Disclosure of the number of the different types of orders that Twitter has or may have received reveals nothing about the content or subjects of such orders, particularly given Twitter's more than 310 million active members.

9.      In addition, the government's legitimate interest in secrecy cannot last forever, and at some point, release of information about those orders will no longer harm national security. Despite this fact and in spite of its stated legal obligations, Defendants have refused to indicate when, if ever, they will allow Twitter to release *any* information on the volume of national security legal process it has received that goes beyond the pre-approved categories they have heretofore allowed.

10.     Certain provisions in FISA require court orders issued thereunder to ensure nondisclosure, while other provisions in FISA directly require nondisclosure. In both cases, the nondisclosure required is of unlimited duration. These restrictions constitute an unconstitutional prior restraint and content-based restriction on, and government viewpoint discrimination against, Twitter's right to speak about information of national and global public concern. Twitter is entitled under the First Amendment to respond to its users' concerns and to the statements of U.S. government officials by providing more complete information about the limited scope of U.S. government surveillance of Twitter user accounts.

11.     Defendants have displayed a pattern of overly expansive, delayed, conflicting, and improper actions with regard to classification decisions and the resulting disclosures that providers generally, and Twitter specifically, are permitted to make about the receipt of national security legal process. This results in chilling and prohibiting far more speech than the Constitution tolerates. Twitter requires court intervention to rein in this undisciplined abuse of government discretion to control public speech.

## II.     PARTIES

12.     Plaintiff Twitter is a corporation with its principal place of business located at 1355 Market Street, Suite 900, San Francisco, California. Twitter is a global information sharing and distribution network serving over 310 million monthly active users around the world. People using Twitter write short messages, called "Tweets," of 140 characters or fewer, which are public by default and may be viewed all around the world instantly. As such, Twitter gives a public voice to anyone in the world—people who inform and educate others, who express their individuality, who engage in all manner of political speech, and who seek positive change. Twitter is an electronic communication service ("ECS"), as that term is defined at 18 U.S.C. § 2510(15), since it provides its users the ability to send and receive electronic communications. As an ECS and a third-party provider of communications to the public, Twitter is subject to the receipt of a variety of civil, criminal, and national security legal process, including court orders issued under FISA. Compliance with such legal process can be compelled through the aid of a court.

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
Case No. 14-cv-4480-YGR

13.     Defendant Loretta Lynch is the Attorney General of the United States and heads the United States Department of Justice ("DOJ"). She is sued in her official capacity only.

14.     Defendant DOJ is an agency of the United States. Its headquarters are located at 950 Pennsylvania Avenue, NW, Washington, D.C.

15.     Defendant James Comey is the Director of the Federal Bureau of Investigation ("FBI"). He is sued in his official capacity only.

16.     Defendant FBI is an agency of the United States. Its headquarters are located at 935 Pennsylvania Avenue, NW, Washington, D.C.

### III.     JURISDICTION

17.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1331, as this matter arises under the Constitution, laws, or treaties of the United States. More specifically, this Court may provide injunctive relief and declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, relating to, among other things, Twitter's contention that certain nondisclosure requirements and related penalties concerning the receipt of court orders issued under FISA, as described below, are unconstitutionally restrictive of Twitter's First Amendment rights, either on their face or as applied to Twitter. This Court is authorized to issue a declaratory judgment and injunction against Defendants under 5 U.S.C. § 702.

### IV.     VENUE

18.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the action occurred in this judicial district, Twitter resides in this district, Twitter's speech is being unconstitutionally restricted in this district, and Defendants are officers and employees of the United States or its agencies operating under the color of law.

### V.     FACTUAL BACKGROUND

**A.     FISA Provisions, Including Nondisclosure Obligations**

19.     Five subsections ("Titles") of FISA permit the government to seek real-time surveillance or disclosure of stored records from an ECS like Twitter: Title I (electronic surveillance of the content of communications and all communications metadata); Title III (disclosure of stored content and noncontent records); Title IV (provisioning of pen register and

1   trap and trace devices to obtain dialing, routing, addressing, and signaling information); Title V

2   (disclosure of certain "business records") (also referred to as "Section 215 of the USA PATRIOT

3   Act"); and Title VII (surveillance of non-U.S. persons located beyond U.S. borders). In the case

4   of orders issued pursuant to Titles I, III, IV and V, surveillance of the specified target is

5   approved by the FISC; under Title VII, the FISC annually approves procedures for surveillance,

6   but the government selects targets of surveillance without court supervision.

7        20.    Each of these Titles of FISA contains a restriction that limits a provider's ability

8   to disclose information relating to a specific FISA request. Several provisions require the FISC

9   to direct the recipient of a FISA request to comply in such a manner as will protect the secrecy of

10  the court-ordered electronic surveillance, physical search, or installation of a pen register or trap

11  and trace device, or the acquisition of foreign intelligence information, 50 U.S.C. §§

12  1805(c)(2)(B) (Title I); 1824(c)(2)(B) (Title III); 1842(d)(2)(B) (Title IV); 1881a(h)(1)(A) (Title

13  VII). FISA also contains provisions that directly instruct the recipient of a FISA order that it may

14  not disclose the existence of a pen register or trap and trace device "unless or until ordered by the

15  court," 50 U.S.C. §§ 1842(d)(2)(B) (Title IV), and that it may not "disclose to any other person"

16  the existence of a business records order, 50 U.S.C. § 1861(d)(1) (Title V).

17       21.    No provision in FISA prohibits or directs the FISC to prohibit the disclosure of

18  *aggregate numbers* of FISA orders received.

19       22.    Defendants have taken the position that the aggregate number of FISA orders

20  received by a particular ECS may only be disclosed in accordance with the pre-approved

21  categories established by the Uniting and Strengthening America by Fulfilling Rights and

22  Ensuring Effective Discipline Over Monitoring Act of 2015, Pub. L. No. 114-23, 129 Stat. 268

23  (2015), codified in relevant part at 50 U.S.C. § 1874 ("USA FREEDOM Act" or "USAFA").

24  (Dkt. No. 83.)  Defendants contend that because the Twitter draft Transparency Report includes

25  aggregate data that is different and more detailed than the categories permitted by the Act, the

26  publication of the draft Transparency Report would constitute an unauthorized disclosure of

27  classified information.

28

23.     Defendants have not disclosed the basis for their claimed determination that Twitter's draft Transparency Report contains classified information.  For example, in the FBI's letter to Twitter denying Twitter's request to publish the draft Transparency Report, the FBI neither identified the classifying authority who made the determination, the date until which the information allegedly classified may not be disclosed, or the reasons for the claimed classification decision. See Letter from James A. Baker, Gen. Counsel, FBI, to Michael A. Sussmann (Sept. 9, 2014) (Dkt. No. 1, Ex. 5.); see ¶ 57 *infra*.

**B.      Classified National Security Information**

24.     On December 29, 2009, President Obama issued Executive Order No. 13526, which sets forth the federal government's policies and procedures for "classifying, safeguarding, and declassifying national security information." The Executive Order is predicated upon a "commitment to open Government through accurate and accountable application of classification standards and routine, secure, and effective declassification . . . ." Exec. Order No. 13526, Preface.

25.     Executive Order No. 13526 modified regulations codified at 32 C.F.R. Part 2001 "Classified National Security Information."

26.     Executive Order No. 13526 distinguishes between two basic methods of classifying information—"original classification" and "derivative classification." "'Original classification' means an initial determination that information requires, in the interest of the national security, protection against unauthorized disclosure." Exec. Order No. 13526 § 6.1(ff). By contrast, "'[d]erivative classification" means the "incorporating, paraphrasing, restating, or generating in new form information that is already classified, and marking the newly developed material consistent with the classification markings that apply to the source information." *Id.* § 6.1(o).

27.     Individuals who "reproduce, extract, or summarize classified information" are bound to "observe and respect original classification decisions." *Id.* § 2.1.

28.     Information may be originally classified only if it meets several requirements: (1) it must be classified by an "original classification authority"—officials who are identified in

1    section 1.3 of the Executive Order; (2) the information must be "owned by, produced by or for,

2    or is under the control of the United States Government;" (3) "the information falls within one or

3    more of the categories of information listed in section 1.4 of th[e] order;" and (4) "the original

4    classification authority determines that the unauthorized disclosure of the information reasonably

5    could be expected to result in damage to the national security, which includes defense against

6    transnational terrorism, and the original classification authority is able to identify or describe the

7    damage." *Id.* § 1.1(a).

8         29.    While there is no *ex ante* requirement to provide a justification for a classification,

9    "the original classification authority must be able to support the decision in writing, including

10   identifying or describing the damage, should the classification decision become the subject of a

11   challenge." 32 C.F.R. § 2001.10.

12        30.    There is no distinct standard for derivative classification because all material that

13   is "derivatively" classified has already received an original classification.

14        31.    Executive Order No. 13526 delineates three levels of classification:

15   "Confidential," "Secret," and "Top Secret." Exec. Order No. 13526 § 1.2.

16        32.    "Confidential" material is information, "the unauthorized disclosure of which

17   reasonably could be expected to cause damage to the national security." *Id.*

18        33.    "'Secret' shall be applied to information, the unauthorized disclosure of which

19   reasonably could be expected to cause *serious* damage to the national security." *Id.* (emphasis

20   added).

21        34.    "'Top Secret' shall be applied to information, the unauthorized disclosure of

22   which reasonably could be expected to cause *exceptionally grave* damage to the national

23   security." *Id.* (emphasis added).

24        35.    At each classification level, the original classification authority must be able to

25   "identify or describe" the threatened damage. *Id.*

26        36.    When information is originally classified "the original classification authority

27   *shall* establish a *specific date or event* for declassification . . . . Upon reaching the date or event,

28   the information shall be automatically declassified." *Id.* § 1.5 (emphasis added).

37.    "If the original classification authority cannot determine an earlier specific date event for declassification," then classified information shall by default be marked for declassification after 10 years, "unless the original classification authority otherwise determines that the sensitivity of the information requires that it be marked for declassification for up to 25 years from the date of the original decision." *Id.*

38.    Only information that would "clearly and demonstrably be expected to reveal the identity of a confidential human source or a human intelligence source or key design concepts of weapons of mass destruction" is excluded from this eventual declassification requirement. *Id.* Derivative documents containing classified information are also bound to this requirement. *Id.* § 2.2(f).

39.    Executive Order No. 13526 places several limitations on the duration and extent of classification. Most notably, it clarifies that: "No information may remain classified indefinitely." *Id.* It also prohibits classification that is intended to serve an unacceptable purpose. For example, information may not be classified in order to "prevent embarrassment to a person, organization, or agency," to "restrain competition," or to "prevent or delay the release of information that does not require protection in the interest of the national security." *Id.* § 1.7. Additionally, the Executive Order affirmatively states that "[i]nformation *shall* be declassified as soon as it no longer meets the standards for classification." *Id.* § 3.1 (emphasis added).

40.    Executive Order No. 13526 superseded and revoked other Executive Orders governing classification standards including Executive Order No. 12958 of April 1995 and Executive Order No. 13292 of March 25, 2003. *Id.* § 6.2.

**C.    The Espionage Act**

41.    The Espionage Act criminalizes a number of actions involving the disclosure or improper handling of information "relating to the national defense." 18 U.S.C. § 793. Subsection (d) of the Espionage Act criminalizes the willful communication or delivery of any information relating to the national defense that "could be used to the injury of the United States or to the advantage of any foreign nation," by someone who has lawful possession of same, to any person

1   not entitled to receive it. *Id*. § 793(d). Penalties for violations of the Espionage Act include fines

2   and imprisonment. *Id*.

3        42.     Twitter is informed and believes and is concerned that if it were to publicly

4   disclose the actual aggregate number of FISA orders or directives it may have received—which

5   would constitute more detailed reporting than permitted under the options provided in the

6   USAFA—or if Twitter were to publicly disclose its unredacted draft Transparency Report,

7   Defendant DOJ may seek to prosecute Twitter and impose the applicable penalties under the

8   Espionage Act.

9
10   **D.    The Government's Restrictions on Other Communications Providers' Ability to Discuss Their Receipt of National Security Legal Process**

11        43.     On June 5, 2013, the British newspaper *The Guardian* reported the first of several

12   leaks of classified material from Edward Snowden, a former U.S. government contractor, which

13   have revealed—and continue to reveal—multiple U.S. government intelligence collection and

14   surveillance programs.

15        44.     The Snowden disclosures deepened public concern regarding the scope of

16   governmental national security surveillance. This concern has been shared by members of

17   Congress, industry leaders, world leaders, and the media. In response to this concern, the

18   government has selectively declassified surveillance-related information for public

19   dissemination, a number of executive branch officials have made public statements

20   characterizing and revealing select details of specific U.S. surveillance programs—including the

21   nature and extent of involvement of U.S. communications providers—and the government has

22   engaged in a programmatic review of classification determinations with a stated goal of

23   declassifying more information.

24        45.     While engaging in their own carefully crafted speech, U.S. government officials

25   have relied on statutory and other purported legal authority to preclude communications

26   providers from responding to leaks and inaccurate information reported in the media and by

27   public officials, and from addressing related public concerns regarding the providers'

28   involvement with and exposure to U.S. surveillance efforts. These authorities—and the

1   government's interpretation of and reliance on them—constitute facial and as-applied violations

2   of the First Amendment right to engage in speech regarding a matter of extensively debated and

3   significant public interest.

4        46.    In response to these restrictions on speech, on June 18, 2013, Google filed in the

5   FISC a Motion for Declaratory Judgment of Google's First Amendment Right to Publish

6   Aggregate Data About FISA Orders. Google then filed an Amended Motion on September 9,

7   2013. Google's Amended Motion sought a declaratory judgment that it had a right under the

8   First Amendment to publish, and that no applicable law or regulation prohibited it from

9   publishing, (1) the total number of requests it receives under various national security authorities,

10  if any, and (2) the total number of users or accounts encompassed within such requests. Similar

11  motions were subsequently filed by four other U.S. communications providers: Microsoft (June

12  19, 2013), Facebook (September 9, 2013), Yahoo! (September 9, 2013), and LinkedIn

13  (September 17, 2013). Apple also submitted an amicus brief in support of the motions

14  (November 5, 2013).

15       47.    In January 2014, the DOJ and the five petitioner companies reached an agreement

16  that the companies would dismiss the FISC actions without prejudice in return for the DOJ's

17  agreement that the companies could publish information about U.S. government surveillance of

18  their networks in one of two preapproved disclosure formats. (Two more general reporting

19  options had been approved in the summer of 2013.) President Obama previewed this agreement

20  in a public speech that he delivered on January 17, 2014, saying, "We will also enable

21  communications providers to make public more information than ever before about the orders

22  that they have received to provide data to the government." President Barack Obama, Remarks

23  by the President on Review of Signals Intelligence, White House Office of Press Secretary (Jan.

24  17, 2014, 11:15 AM), http://www.whitehouse.gov/the-press-office/2014/01/17/remarks-

25  president-review-signals-intelligence.

26       48.    The two pre-approved disclosure formats were set forth in a letter dated January

27  27, 2014, from Deputy Attorney General James M. Cole to the General Counsels for Facebook,

28  Google, LinkedIn, Microsoft and Yahoo! (the "DAG Letter"). (Dkt. No. 1, Ex. 1.) (The DAG

1   Letter also included the two other preapproved disclosure formats from the summer of 2013.)

2   These four preapproved disclosure formats generally permit disclosures of the volume of legal

3   process received in wide reporting bands, with slightly more granularity allowed if aggregate

4   FISA orders are reported in combination with aggregate National Security Letters ("NSLs")

5   received.

6           49.     In a Notice filed with the FISC simultaneously with transmission of the DAG

7   Letter, the DOJ informed the court of the agreement, the new disclosure options detailed in the

8   DAG Letter, and the stipulated dismissal of the FISC action by all parties. (Dkt. No. 1, Ex. 2.)

9   The Notice concluded by stating: "It is the Government's position that the terms outlined in the

10  Deputy Attorney General's letter define the limits of permissible reporting for the parties and

11  other similarly situated companies." (Dkt. No. 1, Ex. 2 at 2.) In other words, according to the

12  DOJ, the negotiated agreement reached to end litigation by five petitioner companies was not

13  limited to the five petitioner companies as a settlement of private litigation, but instead served as

14  a disclosure format imposed on a much broader—yet undefined—group of companies. No

15  further guidance was offered by the DOJ regarding what it considered to be a "similarly situated"

16  company. Further, the Notice cited no authority for extending these restrictions on speech to

17  companies that were not party to the negotiated agreement.

18  **E.      The DOJ and FBI Deny Twitter's Request to Be More Transparent**

19          50.     Twitter is a unique service built on trust and transparency. Twitter is used by

20  world leaders, political activists, journalists, and millions of other people to disseminate

21  information and ideas, engage in public debate about matters of national and global concern,

22  seek justice, and reveal government corruption and other wrongdoing. Twitter users are

23  permitted to post under their real names or pseudonymously, and the ability of Twitter users to

24  share information depends, in part, on their ability to do so without undue fear of government

25  surveillance. Therefore, the ability to engage in speech concerning the nature and extent of

26  government surveillance of Twitter users' activities is critical to Twitter.

27          51.     In July 2012, Twitter released its first Transparency Report. Release of this

28  Transparency Report was motivated by Twitter's recognition that citizens must "hold

11

1   governments accountable, especially on behalf of those who may not have a chance to do so

2   themselves." Jeremy Kessel, Twitter Transparency Report, Twitter Blog (July 2, 2012, 20:17

3   UTC), https://blog.twitter.com/2012/twitter-transparency-report. The Transparency Report

4   addressed the volume of civil and criminal government requests for account information and

5   content removal, broken down by country, and takedown notices pursuant to the Digital

6   Millennium Copyright Act received from third parties and the number of instances when Twitter

7   responded to these requests. The report did not contain information regarding government

8   national security requests Twitter may have received. Subsequent biannual transparency reports

9   have been released since then, including the most recent on February 19, 2016.

10          52.     At Twitter's request, on January 29, 2014, representatives of the DOJ, FBI, and

11   Twitter met at the Department of Justice to discuss Twitter's desire to provide greater

12   transparency regarding the extent of U.S. government surveillance of Twitter's users through

13   NSLs and FISA court orders. Twitter explained why the DAG Letter should not apply to Twitter,

14   which was not a party to the proceedings that resulted in the DAG Letter. In response, the DOJ

15   and FBI told Twitter that the DAG Letter set forth the limits of permissible transparency-related

16   speech for Twitter and that the letter would not be amended or supplemented with additional

17   options of preapproved speech.

18          53.     In February 2014, Twitter released its Transparency Report for the second half of

19   2013, which included two years of data covering global government requests for account

20   information. In light of the government's admonition regarding more expansive transparency

21   reporting than that set forth in the DAG Letter, Twitter's February 2014 Transparency Report did

22   not include quantitative information at the level of granularity Twitter felt provided an accurate

23   and representative view of its receipt of and response to U.S. national security requests and had

24   sought approval from Defendants to disclose.

25          54.     In a blog post, Twitter explained the importance of reporting more specific

26   quantitative information to users about government surveillance. Twitter also explained how the

27   U.S. government was unconstitutionally prohibiting Twitter from providing a meaningful level

28

1    of quantitative detail regarding U.S. government national security requests Twitter had or may

2    have received:

3            We think the government's restriction on our speech not only
             unfairly impacts our users' privacy, but also violates our First

4            Amendment right to free expression and open discussion of
             government affairs. We believe there are far less restrictive ways

5            to permit discussion in this area while also respecting national
             security concerns. Therefore, we have pressed the U.S. Department

6            of Justice to allow greater transparency, and proposed future
             disclosures concerning national security requests that would be

7            more meaningful to Twitter's users.

8    Jeremy Kessel, *Fighting for more #transparency*, Twitter Blog (Feb. 6, 2014, 14:58 UTC),

9    https://blog.twitter.com/2014/fighting-for-more-transparency.

10           55.    On or about April 1, 2014, Twitter submitted a draft July 2014 Transparency

11   Report to the FBI, explaining:

12           We are sending this to you so that Twitter may receive a
             determination as to exactly which, if any, parts of its Transparency

13           Report are classified or, in the Department's view, otherwise may
             not lawfully be published online.

14

15   A copy of Twitter's letter dated April 1, 2014, was filed with this Court as Dkt. No. 1, Ex. 3.

16   Twitter's draft Transparency Report, which has already been filed and submitted to this Court, is

17   Dkt. No. 1, Ex. 4.

18           56.    Through its draft Transparency Report, Twitter seeks to disclose certain

19   categories of quantitative information to its users for the period July 1 to December 31, 2013,

20   including:

21           a.    The number of NSLs and FISA orders Twitter received, if any, in actual
                   aggregate numbers (including "zero," to the extent that that number was

22                 applicable to an aggregate number of NSLs or FISA orders or to specific
                   *kinds* of FISA orders that Twitter may have received);

23

24           b.    The number of NSLs and FISA orders received, if any, reported
                   separately, in ranges of one hundred, beginning with 1–99;

25

26           c.    The combined number of NSLs and FISA orders received, if any, in
                   ranges of twenty-five, beginning with 1–24;

27           d.    A comparison of Twitter's proposed (i.e., smaller) ranges with those
                   authorized by the DAG Letter;

28

                                          13

e.      A comparison of the aggregate numbers of NSLs and FISA orders received, if any, by Twitter and the five providers to whom the DAG Letter was addressed; and

f.      A descriptive statement about Twitter's exposure to national security surveillance, if any, to express the overall degree of government surveillance it is or may be subject to.

57.    For five months, Defendant FBI considered Twitter's written request for review of the draft Transparency Report. In a letter dated September 9, 2014, the FBI denied Twitter's request. A copy of the FBI's letter was filed with this Court as Dkt. No. 1, Ex. 5. Defendant FBI's letter did not, as requested, identify exactly which specific information in the draft Transparency Report was classified and therefore could not lawfully be published. Instead, the letter stated that "information contained in the report" cannot be publicly released; it provided examples of such information in the draft Transparency Report; and it relied on a general assertion of national security classification and on the pronouncements in the DAG Letter as its bases for denying publication:

> We have carefully reviewed Twitter's proposed transparency report and have concluded that information contained in the report is classified and cannot be publicly released.

> . . .Twitter's proposed transparency report seeks to publish data. . .in ways that would reveal classified details about [government] surveillance and that go beyond what the government has permitted other companies to report . . . . This is inconsistent with the January 27th framework [set forth in the DAG Letter] and discloses properly classified information.

(Dkt. No. 1, Ex. 5, at 1.) Defendant FBI reiterated that Twitter could engage only in speech that did not exceed the preapproved speech set forth in the DAG Letter. It noted, for example, that Twitter could

> explain that only an infinitesimally small percentage of its total number of active users was affected by [government surveillance by] highlighting that less than 250 accounts were subject to all combined national security legal process . . . . That would allow Twitter to explain that all national security legal process received from the United States affected, at maximum, only 0.0000919 percent (calculated by dividing 249 by 271 million) of Twitter's total users. In other words, Twitter is permitted to *qualify* its description of the total number of accounts affected by all national

1

2

> security legal process it has received but it cannot *quantify* that
> description with the specific detail that goes well beyond what is
> allowed under the January 27th framework and that discloses
> properly classified information.

3

(*Id.* at 1–2.) (emphasis in original)

4

58.     Because Defendant FBI's response did not identify the exact information in the

5

draft Transparency Report that could not be published, and because the publication of any

6

specific fact the government considers classified could result in prosecution, fines, and

7

imprisonment, Twitter did not at that time publish any part of the report.

8

59.     Defendant FBI did not, as the First Amendment requires, narrowly prohibit only

9

speech that would harm national security; instead, it prohibited all of the speech in Twitter's

10

draft Transparency Report and thereby prohibited speech that would not properly be subject to

11

classification, in violation of the First Amendment.

12

**F.     Twitter Brings Suit Against Defendants**

13

60.     On October 7, 2014, Twitter filed a Complaint against Defendants seeking

14

declaratory and injunctive relief. (Dkt. No. 1.)

15

61.     On November 17, 2014, Defendant DOJ publicly filed what it described as an "an

16

unclassified copy of [Twitter's] proposed report, with classified national security information

17

redacted." (Dkt. No. 21.) This redacted version excised quantitative data regarding Twitter's

18

receipt of national security legal process that constitutes information regarding matters of very

19

significant public interest and is not properly classified under the government's own

20

classification standards.

21

62.     On January 9, 2015, Defendants filed a partial motion to dismiss. (Dkt. No. 28.)

22

In a footnote, Defendants noted their position that "[o]f course, disclosing the number of Title I

23

orders received would violate" a nondisclosure provision within a FISC order "as it would

24

'disclose . . . the existence' of each of the orders." (Dkt. No. 28, at 5 n.2.) Defendants also

25

repeatedly claimed that the basis for their prohibition on Twitter's speech was not the DAG

26

Letter, but rather the underlying national security statutes, including FISA, and FISA orders

27

issued thereunder.

28

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
Case No. 14-cv-4480-YGR

63.     On March 4, 2015, Defendants filed a reply in support of the partial motion to dismiss. (Dkt. No. 57.) In that filing, Defendants asserted that "the Government has never taken [the] position" that a communications provider that has never received an NSL or FISA order is prohibited from saying so. (Dkt. No. 57, at 8.)

64.     A hearing on Defendants' partial motion to dismiss was held on May 5, 2015.

**G.     Passage of the USA FREEDOM Act, Supplemental Briefing, and the District Court's Ruling**

65.     On June 2, 2015, President Obama signed into law the USA FREEDOM Act. The statute contains no express findings, and nothing in the legislative history indicates that Congress made any factual finding regarding how much information regarding U.S. national security requests could be disclosed without harm to national security. The USAFA provides four new options for providers such as Twitter to report the volume of national security process received. Like the DAG Letter, the USA FREEDOM Act provides for wide reporting bands with more granularity permitted where the number of FISA orders received are combined with the number of NSLs received. On its face, the USAFA is permissive: that is, it allows communications providers to use one of the reporting options it provides, but it contains no express prohibition on other disclosures, and it does not amend or otherwise affect any of the nondisclosure requirements in FISA.

66.     On June 11, 2015, this Court directed the parties to "file supplemental briefing on the effect of this legislation, both as to the pending partial motion to dismiss and as to the ultimate claims for relief in Plaintiff's Complaint." (Dkt. No. 69.) The Court subsequently requested additional briefing on discrete questions. (Dkt. No. 81.) Defendants took the position in that supplemental briefing that the USA FREEDOM Act superseded the DAG Letter, but was permissive only and did not itself prohibit any speech. Defendants continued to claim that any prohibition on Twitter's speech came from the underlying national security statutes, including FISA, and FISA orders issued thereunder.

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
Case No. 14-cv-4480-YGR

1    67.    Following supplemental briefing and a hearing, on October 14, 2015, this Court

2    denied Defendants' Motion to Dismiss as moot and, on the Court's own motion, ordered filing of

3    an amended complaint in light of the passage of the USAFA. (Dkt. No. 85.)

4    68.    Twitter filed a first amended complaint on November 13, 2015 (Dkt. No. 88.) and

5    the Defendants moved to dismiss the first amended complaint on January 15, 2016.  (Dkt. No.

6    94.)  This Court held a hearing on Defendants' motion to dismiss on March 14, 2016.  (Dkt. No.

7    109.)

8    69.    On May 2, 2016, this Court issued an order granting in part and denying in part

9    Defendants' motion to dismiss. (Dkt. No. 113.)

10    70.    This Court concluded by giving Twitter "leave to amend to allege a challenge to

11    the classification decisions at issue, as well as any other cognizable challenge consistent with

12    that classification challenge."  *Id.* at 9.

13                                              **COUNT I**

14    **Information contained in Twitter's draft Transparency Report
15    was improperly classified and the government's prior restraint on Twitter's
     speech violates the First Amendment.**

16    **(Implied Cause of Action under the First Amendment)**

17    71.    Twitter incorporates the allegations contained in paragraphs 1 through 70, above.

18    72.    Information that is not properly classified is protected by the First Amendment.

19    Government authorities have no legitimate interest in censoring improperly classified

20    information.

21    73.    Information must be *properly* classified in order to be exempt from First

22    Amendment protection.

23    74.    To properly classify information, Defendants must satisfy the requirements

24    delineated in Executive Order No. 13526.

25    75.    The decision to classify the information must be made by an "original

26    classification authority." Exec. Order No. 13526 § 1.1. The information must be "owned by,

27    produced by or for, or . . . under the control of the United States Government." *Id.* The

28    information must fall within one of the appropriate, listed categories. *Id.* And, "the original

17

1    classification authority [must] determine[] that the unauthorized disclosure of the information

2    reasonably could be expected to result in damage to the national security . . . and the original

3    classification authority is able to identify or describe the damage." *Id.* For classification at the

4    "Secret" and "Top Secret" levels, the classifying entity must expect "serious" and "exceptionally

5    grave" damage, respectively. *Id.* § 1.2.

6        76.    The information that Defendants redacted from Twitter's draft Transparency

7    Report was not properly classified under Executive Order No. 13526.  That information therefore

8    is not properly classified and, as a consequence, is therefore protected by the First Amendment.

9        77.    The federal government often classifies information that could not be expected to

10   cause damage to U.S. national security.  For example, Secretary of State John Kerry has stated

11   that "there's a massive amount of overclassification." He said: "People just stamp it on quickly

12   because it's a way to sort of be correct if anybody had a judgment that somehow they had been

13   wrong about whether it should be classified or not.  So the easy thing is to classify it and put it

14   away." Mark Hensch, *Kerry: State has 'massive amount of overclassification,'* The Hill (Sept. 5,

15   2015), *available at* http://thehill.com/blogs/ballot-box/presidential-races/252769-kerry-state-has-

16   massive-amount-of-overclassification. In 2014, the Defense Intelligence Agency admitted that its

17   personnel "often misclassify, and typically that means over-classify, information." Matt Sledge*,*

18   *Intelligence Agencies Won't Release Reports of Excessive Secrecy*, Huffington Post (Jan. 31,

19   2014), *available at* http://www.huffingtonpost.com/2014/01/28/cia-over-classification-

20   report_n_4680479.html.

21       78.    In October 2010, President Obama signed into law H.R. 533, The Reducing Over-

22   Classification Act. This bipartisan legislation is specifically intended to "decrease over-

23   classification and promote information sharing." Ben Rhodes, *The President Signs H.R. 533, The*

24   *Reducing Over-Classification Act* (Oct. 7, 2010), *available at*

25   https://www.whitehouse.gov/blog/2010/10/07/president-signs-hr-553-reducing-over-

26   classification-act.  In this legislation, the U.S. Congress found that "over-classification of

27   information interferes with accurate, actionable, and timely information sharing, increases the

28

1   cost of information security, and needlessly limits stakeholder and public access to information."

2   Reducing Over-Classification Act, Pub. L. 111-258, § 2 (2010).

3          79.     Defendants have neither alleged nor demonstrated, nor, on information and belief,

4   can Defendants demonstrate, that the quantitative information Defendants seek to censor poses a

5   threat to U.S. national security, let alone one that is "serious" or "exceptionally grave."  The

6   quantitative information Twitter seeks to release does not, on information and belief, reveal

7   intelligence sources and methods or include specific details about any FISA orders or NSLs

8   Twitter may have received.

9          80.     Twitter is an independent corporation and ECS that responds to numerous forms

10  of legal process. Through its transparency reporting, Twitter seeks to publish quantitative data

11  about activity (if any) that it has conducted, using its own personnel and resources. Information

12  about the amount of national security process with which Twitter has been obligated to comply is

13  not "owned by, produced by or for, or . . . under the control of the United States Government."

14  Exec. Order No. 13526 § 1.1.

15         81.     Because Defendants cannot meet the standards necessary for a proper original

16  classification decision, Defendants are foreclosed from asserting that Twitter's draft

17  Transparency Report constitutes a "derivative" document. Derivative classification means the

18  "incorporating, paraphrasing, restating, or generating in new *form information that is already*

19  *classified*, and marking the newly developed material consistent with the classification markings

20  that apply to the source information." *Id.* § 6.1(o) (emphasis added). Because the aggregate

21  quantitative information that Twitter seeks to publish was not "already classified," the draft

22  Transparency Report cannot be a derivatively classified document.

23         82.     If the information that Twitter seeks to publish is not properly classified under

24  Executive Order No. 13526, then the government has no other basis for prohibiting its

25  disclosure. Various laws limit Twitter's disclosure of information related to the legal process it

26  accepts, but those laws cannot and do not automatically classify that information. Defendants

27  rely on the nondisclosure provisions in FISA as a basis for restricting Twitter's ability to publish

28

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
Case No. 14-cv-4480-YGR

1   its draft Transparency Report, but those provisions do not restrict disclosure of the information

2   redacted from that Report.

3          83.     In restraining Twitter's speech, Defendants have misinterpreted FISA, which does

4   not prohibit Twitter from disclosing the information it seeks to publish about the number of

5   FISA orders it has received, if any. Instead, FISA protects the secrecy of the contents of specific

6   FISA orders, their targets, and details of ongoing investigations. Twitter has no statutory

7   obligation to remain silent about whether or not it has ever received FISA orders as a general

8   matter, nor do FISA or the terms of FISA orders prohibit Twitter from disclosing the aggregate

9   number of each type of FISA order it may have received, or whether it has received no orders at

10  all or no orders of a particular type.

11         84.     To the extent that FISA's secrecy provisions are construed to categorically

12  prohibit Twitter from publishing the quantitative information it seeks to publish, the FISA

13  secrecy provisions are unconstitutional, including because they constitute a prior restraint and

14  content-based restriction on speech in violation of Twitter's First Amendment right to speak

15  about truthful matters of public concern. The restriction also constitutes viewpoint

16  discrimination, as Defendants have allowed speech on this issue that conforms to their own

17  viewpoint, but barred other interested parties from expressing different views on the same topic.

18  Moreover, the restriction on Twitter's speech is not narrowly tailored to serve a compelling

19  governmental interest.

20         85.     When the federal government improperly classifies information and then prevents

21  its publication, it violates the First Amendment. Therefore, Twitter seeks a declaration that (a)

22  the standards set forth in Executive Order No. 13526 constitute the only grounds on which the

23  government may rely to prohibit disclosure of the redacted information in the draft Transparency

24  Report; (b) the FISA nondisclosure provisions have no applicability to the redacted information

25  in the draft Transparency Report; and (c) the redacted information in the draft Transparency

26  Report was improperly classified, and that Twitter has a First Amendment right to release the

27  report publicly in unredacted form or, in the alternative, to release the report with all of the

28  information not properly classified under Executive Order No. 13526.

86.     Twitter also seeks injunctive relief (a) barring Defendants from prohibiting Twitter from publishing information redacted by Defendants from the draft Transparency Report that is not properly classified; and (b) barring Defendants from prohibiting Twitter from publishing similar information in future Transparency Reports covering subsequent periods of time.

## COUNT II

### Information contained in Twitter's draft Transparency Report was improperly classified and the government's prior restraint on Twitter's speech violates the First Amendment.

### (Action under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*.)

87.     Twitter incorporates the allegations contained in paragraphs 1 through 86, above.

88.     Defendants' decision to censor Twitter's transparency report constitutes "final agency action" and Twitter has suffered a legal wrong and is adversely affected and aggrieved by that decision.

89.     Defendants' decision violates the First Amendment.

90.     Twitter seeks a declaration that (a) the standards set forth in Executive Order No. 13526 constitute the only grounds on which the government may rely to prohibit disclosure of the redacted information in the draft Transparency Report; (b) the FISA nondisclosure provisions have no applicability to the redacted information in the draft Transparency Report; and (c) the redacted information in its draft Transparency Report was improperly classified, and that Twitter has a First Amendment right to release the report publicly in unredacted form or, in the alternative, to release the report with all of the information not properly classified under Executive Order No. 13526.

91.     Twitter also seeks injunctive relief (a) barring Defendants from prohibiting Twitter from publishing information redacted by Defendants from the draft Transparency Report that is not properly classified; and (b) barring Defendants from prohibiting Twitter from publishing similar information in future Transparency Reports covering subsequent periods of time.

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
Case No. 14-cv-4480-YGR

**COUNT III**

**The Espionage Act is unconstitutional as applied to Twitter.**

92.     Twitter incorporates the allegations contained in paragraphs 1 through 91, above.

93.     Defendants' public statements have given rise to a reasonable concern that Twitter would face prosecution under the Espionage Act, including under 18 U.S.C. § 793(d), if it were to disclose the aggregate number of FISA orders it has received, if any, or any other information in its draft Transparency Report that has been redacted by Defendants and/or is not consistent with the permissible transparency reporting options in the USAFA.

94.     Given the confusion that Defendants have created regarding what disclosures are permissible as a result of Defendants' contradictory positions on reporting zero requests, the basis or bases for prohibiting speech (whether it derives from classification authority or from the nondisclosure provisions of FISA), and their pattern of selective declassification of specific FISA-related and other national security matters to allow government speech, it is unlawful to apply or threaten to apply criminal penalties to communications providers that seek only to share with their users the number of requests they may receive and/or other information regarding the amount of requests received after a fixed period of nondisclosure. Furthermore, the Espionage Act itself does not prohibit Twitter from disclosing the aggregate number of FISA orders it may have received, if any, or any other information in its draft Transparency Report that has been redacted by Defendants, as such prohibition would be an unconstitutional violation of Twitter's First Amendment rights.

95.     Any such prosecution of Twitter would be unconstitutional as violating Twitter's First Amendment right to speak truthfully about matters of public interest.

96.     Twitter seeks a declaration that any such prosecution would violate the Constitution and an injunction barring Defendants from prosecuting Twitter for engaging in constitutionally-protected speech.

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
Case No. 14-cv-4480-YGR

**PRAYER FOR RELIEF**

WHEREFORE, Twitter prays for the following relief:

A.    A declaratory judgment that:

   i.    The standards set forth in Executive Order No. 13526 constitute the only grounds on which the government may rely to prohibit disclosure of the redacted information in the draft Transparency Report;

   ii.   The redacted information in the draft Transparency Report is not subject to classification under the standards in Executive Order No. 13526, and that Twitter has a First Amendment right to release the entire report publicly in unredacted form or, in the alternative, to release the report with all of the information not properly classified under Executive Order No. 13526;

   iii.  The FISA nondisclosure provisions have no applicability to the redacted information in the draft Transparency Report;

   iv.   Any interpretation of FISA that prohibits publication of the unredacted Transparency Report is unconstitutional;

   v.    The FISA secrecy provisions are facially unconstitutional under the First Amendment because they do not require nondisclosure orders to contain a defined duration;

   vi.   The FISA secrecy provisions are unconstitutional under the First Amendment as applied to Twitter;

   vii.  FISA does not restrict reporting aggregate numbers of FISA orders received;

   viii. Any interpretation of FISA that prohibits reporting aggregate numbers of FISA orders received is unconstitutional;

   ix.   Prosecution of Twitter under the Espionage Act for disclosing the aggregate number of FISA orders it has received, if any, or any other information in its draft Transparency Report that has been redacted by Defendants, would be a violation of Twitter's First Amendment rights; and

   x.    Defendants may not prohibit Twitter from publishing, in Transparency Reports covering periods of time subsequent to the draft Transparency Report, the categories of information that this Court finds not subject to classification, and therefore protected by the First Amendment, in connection with the draft Transparency Report.

B.    A preliminary and permanent injunction prohibiting Defendants, their affiliates, agents, employees, and attorneys, and any and all other persons in active concert or participation with them, from seeking to enforce the unconstitutional prohibitions on Twitter's speech, or to prosecute or otherwise seek redress from Twitter for exercising its First Amendment rights.

1       C.      A preliminary and permanent injunction (a) barring Defendants, their affiliates,

2  agents, employees, and attorneys, and any and all other persons in active concert or participation

3  with them, from prohibiting Twitter from publishing information redacted by Defendants from

4  the draft Transparency Report that is not properly classified; and (b) barring defendants from

5  prohibiting Twitter from publishing similar information in future Transparency Reports covering

6  subsequent periods of time.

7       D.      An award of attorneys' fees and costs to Twitter to the extent permitted by law.

8       E.      Such further and other relief as this Court deems just and proper.

9

10  Dated:  May 24, 2016             MAYER BROWN LLP

11                           ANDREW JOHN PINCUS

12

13                              /s/ Andrew John Pincus
                              ANDREW JOHN PINCUS (*Pro Hac Vice*)

14                            apincus@mayerbrown.com
                            1999 K Street, NW

15                            Washington, DC 20006
                            Telephone:     (202) 263-3220

16                            Facsimile:      (202) 263-3300

17                            MAYER BROWN LLP
                            LEE H. RUBIN (SBN 141331)

18                            lrubin@mayerbrown.com
                            Two Palo Alto Square, Suite 300

19                            3000 El Camino Real
                            Palo Alto, CA 94306-2112

20                            Telephone:     (650) 331-2000
                            Facsimile:      (650) 331-2060

21                            PERKINS COIE LLP
                            MICHAEL A. SUSSMANN (*Pro Hac Vice*)

22                            MSussmann@perkinscoie.com
                            700 Thirteenth Street, NW, Suite 600

23                            Washington, DC 20005-3960
                            Telephone:     (202) 654-6333

24                            Facsimile:      (202) 654-9127

25                            Attorneys for Plaintiff
                            TWITTER, INC.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on May 24, 2016, I caused the foregoing document to be filed electronically through the Court's CM/ECF System and served on all counsel of record.

_/s/ Andrew John Pincus_
ANDREW JOHN PINCUS

Attorneys for Plaintiff
TWITTER, INC.

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
Case No. 14-cv-4480-YGR