BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
BRIAN STRETCH
United States Attorney
ANTHONY J. COPPOLINO
Deputy Branch Director
ERIC J. SOSKIN
JULIA A. BERMAN
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 353-0533
Facsimile:  (202) 616-8470
Email: eric.soskin@usdoj.gov

Attorneys for Defendants the Attorney General, et al.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TWITTER, INC., | Case No. 14-cv-4480 |
| Plaintiff, | |
| v. | |
| LORETTA E. LYNCH, United States Attorney General, *et al.*, | |
| Defendants. | **DEFENDANTS' MOTION FOR A PROTECTIVE ORDER** |
| | Date: Tuesday, Jan. 31, 2017 |
| | Time: 2:00 p.m. |
| | Courtroom 1, Fourth Floor |
| | Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................/.......... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

INTRODUCTION ............................................................................................................. 1

PROCEDURAL BACKGROUND .................................................................................... 2

DISCOVERY REQUESTS AT ISSUE............................................................................4

ARGUMENT .................................................................................................................... 8

    I.     The Requested Information is Not Relevant To Whether Certain Data Contained in Twitter's Draft Transparency Report is Properly Classified. ............................ 8

         A.     Challenges to Classification Determinations Like The One Presented Here Are Appropriately Resolved Based on the Declarations Supporting the Government's Summary Judgment Motion.. ............................................... 9

         B.     Preclusion of Discovery is Appropriate Because Private Litigants Such as Twitter Lack the Authority or Expertise to Contribute to the Court's Classification Review.  . .........................................................................11

         C.     The Information Twitter Seeks is Not Relevant to Whether Twitter is Now Entitled to an Order Permitting Disclosure of Information in its Draft Transparency Report..................................................................................... 13

    II.    Protection is Particularly Warranted Here Because Responding to Twitter's Discovery Requests Seeking Unclassified Portions of Classified Documents Is Likely to Require Intensive Review to Protect National Security Information and Information Subject to Government Privileges.................................................... 16

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Al-Aulaqi v. Obama*,
727 F. Supp. 2d 1, 53-54 (D.D.C. 2010)...................................................................... 19

4

5

*Alexander v. FBI*,
186 F.R.D. 188, 192 & n.1 (D.D.C. 1999) ................................................................... 17

6

7

*Ashcroft v. Iqbal*,
556 U.S. 662, 685 (2008)............................................................................................. 19

8

9

*Boening v. CIA*,
579 F. Supp. 2d 166, 174 (D.D.C. 2008);.................................................................... 10

10

11

*Carrera v. First American Home Buyers Protection Co.*,
2014 WL 3695403 at *1, 2014 U.S. Dist. LEXIS 101064 (S.D. Cal. 2014) ................. 9

12

13

*Chavous v. Dist. Of Columbia Fin. Responsibility and Mgmt. Assistance Auth.*,
201 F.R.D. 1, 2 (D.D.C. 2001)..................................................................................... 19

14

*Citizens to Preserve Overton Park, Inc., v. Volpe*,
401 U.S. 402, 420 (1971) ............................................................................................ 11

15

16

*Claybrook v. Slater*,
111 F.3d 904, 908 (D.C. Cir. 1997) ............................................................................ 11

17

18

*Delozier v. First Nat'l Bank of Gatlinburg*,
113 F.R.D. 522, 524 (E.D. Tenn. 1986)...................................................................... 17

19

20

*Dep't of Navy v. Egan*,
484 U.S. 518, 530 (1988)............................................................................................. 11

21

22

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1, 8-9 (2001) ................................................................................................. 19

23

*Drake v. FAA*,
291 F.3d 59, 72 (D.C. Cir. 2002), ............................................................................... 11

24

25

*El-Masri v. Tenet*,
437 F. Supp. 2d 530, 536 (E.D. Va. 2006) ................................................................. 18

26

27

*Florida Power & Light Co. v. Lorion*,
470 U.S. 729, 743-744 (1985) ..................................................................................... 11

28

*Fox v. Good Samaritan, L.P.*,

801 F. Supp. 2d 883, 895 (N.D. Cal. 2010) ............................................................... 20

*Freeman v. Seligson*,
405 F.2d 1326, 1338-39 (D.C. Cir. 1968); .............................................................. 17

*Gardels v. CIA*,
689 F.2d 1100, 1106 n.5 (D.C. Cir. 1982). ............................................................. 13

*Herbert v. Lando*,
441 U.S. 153, 177 (1979), ....................................................................................... 16

*Hitkansut, LLC v. United States*,
119 Fed. Cl. 40, 49-50 (Ct. Fed. Cl. 2014). ...................................................... 11, 17

*Home Savings Bank v. Gillam*,
952 F.2d 1152, 1157 (9th Cir. 1991) .......................................................................... 9

*Ibrahim v. Dep't of Homeland Security*,
No. C 06–00545 WHA, 2013 WL 1703367 at *4 (N.D. Cal. Apr. 19, 2013) ............................... 5

*In re Air Crash Near Cali, Colombia on December 20, 1995*,
959 F. Supp. 1529, 1536 (S.D. Fla. 1997) ............................................................... 19

*In re Dep't of Inv. of City of N. Y.*,
856 F.2d 481, 484 (2d Cir. 1988) ................................................................................ 6

*Jet Inv. Inc. v. Dep't of Army*,
84 F.3d 1137, 1139 (9th Cir. 1996). ......................................................................... 12

*Jimenez v. City of Chicago*,
733 F. Supp. 2d 1268, 1270 (W.D. Wash. 2010) ..................................................... 10

*Kasza v. Browner*,
133 F.3d 1159, 1166 (9th Cir. 1998). .................................................................. 18, 19

*Lahr v. Nat'l Transp. Safety Bd.*,
569 F.3d 964, 979 (9th Cir. 2009). .......................................................................... 19

*McGehee v. Casey*,
718 F.2d 1137, 1148 (D.C. Cir. 1983) ..................................................................... 19

*Mohamed v. Jeppesen Dataplan, Inc.*,
614 F.3d 1070, 1080 (9th Cir. 2010) ....................................................................... 18

*Montanore Minerals Corp. v. Easements and Rights of Way*,
2015 WL 790876 at *5 (D. Mont. Feb. 25, 2015) ..................................................... 9

*Northrop Corp. v. McDonnell Douglas Corp.,*
751 F.2d 395, 399 (D.C. Cir. 1984) ........................................................................ 18

*Pierson v. United States,*
428 F. Supp. 384, 390 (D. Del. 1977) ...................................................................... 17

*Rivera v. NIBCO, Inc.,*
364 F.3d 1057, 1063 (9th Cir. 2004) ................................................................. 11, 18

*Sanchez v. Johnson,*
Case No. C-00-1593 CW (JCS), 2001 WL 1870308 at *5 ....................................... 19

*Shaffer v. DIA,*
102 F. Supp. 3d 1, 10 (D.D.C. 2015)) ................................................................ 12,20

*Snepp v. United States,*
444 U.S. 507, 512 (1980) ......................................................................................... 13

*Stillman v. CIA,*
319 F.3d 546, 548-49 (D.C. Cir. 2003) ............................................................. *passim*

*Twitter v. Lynch,*
139 F. Supp. 3d 1075, 1076 (N.D. Cal. 2015) ("*Twitter I*") ................................ 5, 16

*Twitter v. Lynch,*
- F. Supp. 3d -, 2016 WL 1729999 (N.D. Cal. 2016) ("Twitter II") .......................... 5

*United States v. Burke,*
CR. No. S–05–0365 FCD, 2009 WL 2985491 (E.D. Cal. Sept. 16, 2009) ............... 20

*United States v. Kellogg, Brown, & Root Servs., Inc.,*
284 F.R.D. 22, 38 (D.D.C. 2012) ............................................................................. 16

*United States v. Marchetti,*
466 F.2d 1309, 1318 (4th Cir. 1972); ....................................................................... 12

*United States v. Reynolds,*
345 U.S. 1, 7 (1953), ................................................................................................ 18

*Webster v. Doe,*
486 U.S. 592, 599-600 (1988). ................................................................................. 11

*Wilson v. CIA,*
586 F.3d 171, 185–86 (2d Cir. 2009) ............................................................ 12, 13, 14

**Rules**

Fed. R. Civ. P. 26 advisory committee's note (2000 Amendment) (Gap Report) (Subdivision (b)(1)).................................................................................................................. 10
Fed. R. Civ. P. 26(b)(1)................................................................................................. 20
Fed. R. Civ. P. 26(c). .................................................................................................... 10

**Other Authorities**

Attorney General Establishes New State Secrets Policies and Procedures," Dep't of Justice, Ofc. of Public Affairs (Sept. 23, 2009),
available at https://www.justice.gov/opa/pr/attorney-general-establishes-new-state-secrets-policies-and-procedures ........................................................................................ 18
Exec. Order 13526. ...........................................................................................*passim*
USA FREEDOM Act, Pub. L. No. 114-23, 129 Stat. 268 (2015)........................*passim*

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that, on January 31, 2016, at 2:00 p.m., before Judge Yvonne Gonzalez Rogers, the Defendants will move this Court for a protective order. Pursuant to Federal Rule of Civil Procedure 26(c), Defendants seek an order limiting the scope of Plaintiff's discovery for the reasons set forth in Defendants' accompanying Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In its Second Amended Complaint (ECF No. 114) ("SAC"), Plaintiff Twitter, Inc. seeks to challenge the Government's determination that certain data contained in a draft "Transparency Report" for the period July 1 to December 31, 2013, regarding Plaintiff's receipt of process pursuant to the Foreign Intelligence Surveillance Act ("FISA") and National Security Letter ("NSL") statutes, is classified.[1]  *See* SAC ¶ 4; *see also* ECF 132 (Joint Case Management Report) at 1–2.  The Government has moved for summary judgment, *see* ECF No. 145, providing in support unclassified and classified declarations by Executive Assistant Director Michael Steinbach of the Federal Bureau of Investigation ("FBI") demonstrating that this information is currently properly classified.  In the SAC, Twitter has acknowledged that, if the information is classified, it cannot maintain its First Amendment claims.  *See* SAC ¶ 73.  As the Government explained in its summary judgment motion—and also described in its opposition to Twitter's motion for security clearances for its counsel—the question before the Court is therefore whether, under the utmost deference owed to classification determinations by the Executive Branch, the Government has plausibly and logically demonstrated that the data in Twitter's draft transparency report is currently properly classified, a question for the Court to decide in reliance on the declarations submitted by the Government in support of its motion for summary judgment.

---

[1] Defendants' discussion of FISA orders or directives that plaintiff could have received is not intended to confirm or deny that plaintiff has, in fact, received any such national security legal process.

1    In accordance with the Court's case management instructions, the parties have

2    commenced discovery in parallel with the Government's motion for summary judgment,

3    including by exchanging initial disclosures.  On November 11, 2016, Twitter served

4    interrogatories and requests for document production on the Government, seeking a laundry list

5    of items related to, *inter alia*, prior classification decisions, now-superseded provisions of law,

6    and thousands of nondisclosure requirements applying to companies other than Twitter.  The

7    overwhelming majority of this information simply does not pertain to the question before the

8    Court: whether the information in Twitter's draft transparency report is currently and properly

9    classified.  Rather, the proper inquiry in cases such as this one regarding a challenge by a person

10   entrusted with classified information to restrictions on the disclosure of such classified

11   information is limited to an evaluation of the declarations supplied by the Government in support

12   of the classification decision.  As such, Twitter's request for information outside the record on

13   which the Court's review will be ultimately based is flawed, and the Court should enter a

14   protective order denying Twitter the requested discovery into these irrelevant areas.

### PROCEDURAL BACKGROUND

16       Much of the background of this litigation is set forth in two previous opinions in this

17   case, dismissing Twitter's original Complaint and Twitter's First Amended Complaint.  As this

18   Court explained on October 14, 2015, Twitter initiated this action by bringing "(1) First

19   Amendment challenges to 18 U.S.C. sections 2709(c) and 3511; and (2) a challenge under the

20   Administrative Procedure Act ("APA") to an action by the Deputy Attorney General ("the DAG

21   Letter") that Twitter contends was a 'final agency action' to regulate the ways in which

22   communications providers could report data on government requests for its customers'

23   information."  Order Denying Motion to Dismiss as Moot and, on the Court's Own Motion,

24   Ordering Filing of Amended Complaint in Light of Recent Legislation, ECF No. 85, *published*

25   *as Twitter v. Lynch*, 139 F. Supp. 3d 1075, 1076 (N.D. Cal. 2015) ("*Twitter I*").

26       Following that dismissal, Twitter filed an Amended Complaint on November 13, 2015,

27   *see* ECF No. 88, which brought facial and as-applied challenges to provisions of the Foreign

28   Intelligence Surveillance Act ("FISA") and the Espionage Act.  *See id.* at 14-17.  On May 2,

2016, the Court again dismissed, finding that having "conceded that the aggregate data [in the draft Transparency Report] is classified," Twitter had not "allege[d] viable claims." Order Granting in Part and Denying in Part Motion to Dismiss Amended Complaint, ECF No. 113, *published at* --- F. Supp. 3d ---, 2016 WL 1729999 (N.D. Cal. 2016) (*Twitter II*").  The Court's ruling rested on its conclusion that "[t]he First Amendment does not permit a person subject to secrecy obligations to disclose classified national security information," *id.* at 8, and the Court recognized the case law from the Supreme Court and the Courts of Appeals in other circuits, setting forth this principle as well as the "procedures for challeng[ing] [a] classification decision." *Id.* (citing *Stillman v. CIA*, 319 F.3d 546, 548-49 (D.C. Cir. 2003)).

On May 24, 2016, Twitter filed the currently operative Second Amended Complaint ("SAC"), ECF No. 114.  The SAC alleges that "Defendants have neither alleged nor demonstrated, nor, on information and belief, can Defendants demonstrate, that the quantitative information Defendants seek to censor poses a threat to U.S. national security," and that "the information that Twitter seeks to publish is not properly classified," and that the Government therefore has no basis to prevent Twitter from publishing the information.  *Id.* at ¶¶ 72, 79, 86. As instructed by the Court's May 2, 2016 Order, Twitter's claims in the SAC are focused on the allegations that "Twitter seeks to publish information contained in a draft Transparency Report," SAC ¶ 4, and that the information redacted by the Government from the draft transparency report "is not properly classified and . . . is therefore protected by the First Amendment." *Id.*  ¶ 76.

On November 22, 2016, the Government moved for summary judgment, explaining how the disclosure of granular aggregate data regarding the Government's use of national security process—including the disclosures proposed in Twitter's draft transparency report, reasonably could be expected to result in serious damage to the national security.  *See* ECF No. 145. Briefing on the Government's motion for summary judgment is scheduled to be completed on January 5, 2017.  Importantly, the declaration of EAD Steinbach filed in support of the Government's motion contains EAD Steinbach's current conclusion that "the information redacted from the draft transparency report prepared by Twitter is properly classified and [] its unauthorized disclosure reasonably could be expected to result in serious damage to the national

security." Unclassified Decl. of EAD Michael Steinbach, attached as Ex. 1 to Defs.' Mot. for S.J., ECF No. 145-1 ("Unclass. Steinbach Decl.").[2] In that declaration—and in greater detail in a classified declaration submitted for *ex parte*, *in camera* review—EAD Steinbach explains the specific, national security harms that reasonably could be expected to result from disclosure of this classified information as of the time of his declaration, *i.e.*, November 22, 2016. While this determination is consistent with the Government's previous classification decision regarding Twitter's draft transparency report, EAD Steinbach's current assessment that the information is properly classified is now the operative classification decision that is at issue in this litigation.

On November 21, 2016, the parties began the discovery process by exchanging initial disclosures. In its initial disclosures, the Government identified to Twitter that, consistent with the procedures set forth in *Stillman* and highlighted by this Court in its May 2, 2016 Order, the relevant materials on which it intended to rely comprised EAD Steinbach's declaration, the July 2, 2015 discretionary declassification decision by the Director of National Intelligence ("DNI"), and the FBI and DNI classification guides supporting those decisions. *See* Defs.' Initial Disclosures (attached as Ex. 3).[3] As Defendants were preparing these initial disclosures for Twitter, Twitter served on Defendants the broad discovery requests at issue in this motion, as described below.

## DISCOVERY REQUESTS AT ISSUE

Twitter has served several discovery requests on Defendants. Among them are the subjects of this motion: a "First Set of Requests for Document Production," attached as Ex. 1, and a "First Set of Interrogatories," attached as Ex. 2. Broadly speaking, these discovery

---

[2] EAD Steinbach oversees, *inter alia*, the national security operations of the FBI's Counterintelligence Division, Counterterrorism Division, and Terrorist Screening Center, and holds original classification authority delegated by the Director of the FBI.

[3] Defendants are prepared to produce the documents identified in initial disclosures to plaintiff upon entry of an appropriate protective order for information protected by the law enforcement privilege, in order "to prevent disclosure of law enforcement techniques and procedures." *Ibrahim v. Dep't of Homeland Security*, No. C 06–00545 WHA, 2013 WL 1703367 at *4 (N.D. Cal. Apr. 19, 2013) (quoting, *inter alia*, *In re Dep't of Inv. of City of N. Y.*, 856 F.2d 481, 484 (2d Cir. 1988)). The parties are discussing their views on the necessity and scope of such an order and any dispute over this issue will be brought before the Court separately.

requests from Twitter seek information about five topics: 1) the current classification of information in Twitter's draft transparency report; 2) the September 2014 FBI letter informing Twitter that information in its draft transparency report was, at that time, classified, and the November 2014, unclassified, redacted version of the draft transparency report; 3) the January 2014 letter from Deputy Attorney General James Cole to the General Counsels of Facebook, Google, LinkedIn, Microsoft and Yahoo (the "DAG Letter"); 4) the passage of the USA FREEDOM Act; and 5) national security process, transparency disclosures, and communications related to FISA orders and National Security Letters.  These topics are reflected in the specific discovery requests, excerpted below:

### Requests for Production of Documents

1) All Documents . . . Relating to the procedures, policies, standards, or practices for classifying information, including but not limited to security classification guides, that the government contends apply to *any* classification decisions made regarding the draft Transparency Report;

2) All Documents . . . Relating to how any procedures, policies, standards, or practices . . .  were applied to Twitter's draft Transparency Report on or before September 9, 2014;

3) All Documents . . . Relating to the January 2014 DAG letter . . .

4) All Documents . . .  Relating to public disclosures permitted by the USA Freedom Act . . . ;

5) All Communications . . . Relating to the disclosure provisions in the January 2014 DAG letter and the USA Freedom Act between You and Congress (including individual Members of Congress and their staff and Congressional Committees and their staff), between You and private or public companies (including individual company employees, consultants and lobbyists), between You and nonprofit organizations (including civil liberties and interest groups and trade associations), and between You and any Employee of another federal government department, agency, board or commission (including the Privacy and Civil Liberties Oversight Board, the Director of National Intelligence, the National Security Agency, and the Executive Office of the President . . .;

6) All Documents . . .  Relating to handling, delivery, or any other direction, instruction, practice or procedure regarding the processing of NSLs or FISA orders by an electronic communications service . . .;

7) All Documents . . .  identifying the specific portions of FISA orders or NSLs (including attachments to those orders and documents) that are delivered to electronic communications services that are classified . . .;

8) All Documents . . . Relating to the preparation of the unclassified, redacted version of the draft Transparency Report . . . ;

9) All Documents . . . Relating to the review of Twitter's draft Transparency Report undertaken by You in preparing the September 2014 FBI letter. . .;

10) All Communications . . . , including internal government communications, Relating to Twitter's draft Transparency Report or Twitter's request to disclose quantitative information regarding national security legal process . . .;

11) All Documents . . . Relating to legal authorities justifying the prohibition of the publication of information in the draft Transparency Report . . .;

12) All Documents . . . Relating to any legal authorities that prevent an electronic communications service from disclosing whether it has received zero of a particular type of FISA order and/or zero NSLs . . . ;

13) All Documents . . . Relating to the declassification of information in connection with the issuance of the January 2014 DAG letter and passage of the USA Freedom Act;

14) All Documents . . . Relating to classification decisions reflecting the conclusion that disclosure of information different from the parameters permitted in the January 2014 DAG letter or the USA Freedom Act would not harm U.S. national security . . .;

15) All Documents . . . .containing unclassified information Relating to classification decisions reflecting the conclusion that disclosure of information different from the parameters permitted in the January 2014 DAG letter or the USA Freedom Act would harm U.S. national security . . .;

16) All Documents identified in response to Twitter's First Set of Interrogatories.

Ex. 1. Each of these document requests is subdivided into two parts, one seeking unclassified information, and one seeking classified information. *See generally id.*

**Interrogatories**

1) Identify all Documents that You consulted, referenced, or used to justify the classification of information in Twitter's draft Transparency Report;

2) Identify each current and former employee of Defendants who participated in any way, including through providing comments on or approval of, in the development of the September 2014 FBI letter . . .;

3) Identify the author and date of any Document Relating to a classification decision regarding the draft Transparency Report . . . created on or before September 9, 2014;

4) Identify each current and former employee of Defendants who participated in any way, including through providing comments on or approval of the development and release of the unclassified, redacted version of the draft Transparency Report on November 17, 2014 . . . ;

5) Identify the author and date of any Document Relating to a classification decision related to the development and release of the unclassified, redacted draft Transparency Report;

6) State whether any classification decisions made prior to sending the September 2014 FBI letter differed in any way from those classification decisions made to prepare the unclassified, redacted version of the draft Transparency Report for publication on November 17, 2014;

7) If a redacted version of the draft Transparency Report based on classification decisions made prior to September 9, 2014 would not be identical to the redacted

draft Transparency Report that was ultimately released on November 17, 2014, state how the two Documents would have differed;

8) Identify and describe any information deemed to be classified in the initial review of the draft Transparency Report prior to September 9, 2014, that was subsequently deemed to be unclassified and was included in the unclassified, redacted version of the draft Transparency Report released on November 17, 2014;

9) State all the reasons why the "new and additional ways" for reporting information on national security legal process described in the January 2014 DAG letter did not harm U.S. national security and/or present a basis for classification;

10) Identify any Documents that describe or refer to the lack of harm to U.S. national security arising from disclosures using the reporting mechanisms outlined in the January 2014 DAG letter and the USA Freedom Act;

11) State all the reasons why the release of aggregate numerical data on national security legal process that is within the limits (i.e., reporting bands) established by the January 2014 DAG letter and the USA Freedom Act would not harm U.S. national security and/or provide a basis for classification;

12) State all the reasons why the release of aggregate numerical data on national security legal process that is more detailed than the reporting bands allowed by the January 2014 DAG letter and the USA Freedom Act would harm U.S. national security and/or provide a basis for classification, including an identification of (a) the level of classification attached to such aggregate numerical data and (b) any legal authority or security classification guidance that supported the classification;

13) State what harm to U.S. national security would result from Twitter stating the precise number of FISA orders it has received, if any (including if the number is zero).

14) State whether it is your contention that all information subject to a FISA secrecy provision or order is classified.

15) State whether it is your contention that the Foreign Intelligence Surveillance Act and/or any specific FISA orders prohibit the release of aggregate numerical data on national security legal process, and if so, describe any basis you have for that contention and whether there is any time limitation on that prohibition.

16) State whether it is your contention that it constitutes an unauthorized disclosure of classified information for an electronic communications service to publicly state that it has received "zero" of a particular type of FISA order or zero NSLs, and if so, state all the reasons why such a statement would disclose classified information.

17) State whether it is your contention that it constitutes an unauthorized disclosure of classified information for an electronic communications service to disclose the exact number of FISA Orders (including numbers of particular types of Orders) and/or NSLs that it has received, and if so, state all the reasons why such a disclosure would reveal classified information;

18) State all the reasons justifying the decision to classify any portions of the draft Transparency Report, including an identification of (a) the level of classification

attached to the numerical data included in the portions redacted, and (b) any legal authority or security classification guidance that supported the classification.

Ex. 2.

## ARGUMENT

### I.    The Requested Information is Not Relevant To Whether Certain Data Contained in Twitter's Draft Transparency Report is Properly Classified.

Rule 26(b) of the Federal Rules of Civil Procedure sets the scope of discovery as non-privileged material "that is relevant to any party's claim or defense."   This standard, adopted in a 2000 amendment to Rule 26(b)(1), thereby narrowed the scope of discovery from all material "relevant to the subject matter involved in the action," in order to "involve the court more actively in regulating the breadth of sweeping or continuous discovery." Fed. R. Civ. P. 26 advisory committee's note (2000 Amendment) (Gap Report) (Subdivision (b)(1)).  As reproduced above, the broad sweep of Twitter's discovery requests extends far beyond the matters relevant to whether information in its draft transparency report is properly classified.

Courts may issue a protective order under Federal Rule of Civil Procedure 26(c) upon a showing of good cause in order to "protect a party from annoyance, embarrassment, oppression or undue burden or expense, including ... forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c).  In addition to "limiting the scope of discovery, or fixing the terms of disclosure," the protective order may "prohibit[] the requested discovery altogether."  *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004), *cert. denied*, 544 U.S. 905, 125 S.Ct. 1603, 161 L.Ed.2d 279 (2005).  "'The compulsion of production of irrelevant information is an inherently undue burden' for which a protective order may issue.'"  *Carrera v. First American Home Buyers Protection Co.*, 2014 WL 3695403 at *1, 2014 U.S. Dist. LEXIS 101064 (S.D. Cal. 2014) (quoting *Jimenez v. City of Chicago*, 733 F. Supp. 2d 1268, 1270 (W.D. Wash. 2010)).

In light of the Court's dismissal of Twitter's previous Complaint with the direction that Twitter must challenge the classification of information in the draft transparency report in order to bring a viable claim, the current focus of this litigation is necessarily on the question of whether the information Twitter seeks to publish is properly classified.  As the Government has explained, in reaching the decisions on which this Court has relied, courts reviewing similar

claims have utilized a procedure in which resolution of the legal question turns on the supporting information provided by the Government, a process through which the discovery requested by Twitter largely falls outside the scope of Rule 26(b) because it is not relevant to any claim or defense in this action. Accordingly, Defendants are "entitled to a protective order" precluding discovery as to such information. *Montanore Minerals Corp. v. Easements and Rights of Way*, 2015 WL 790876 at *5 (D. Mont. Feb. 25, 2015); *accord Home Savings Bank v. Gillam*, 952 F.2d 1152, 1157 (9th Cir. 1991) ("A court's refusal to permit certain discovery before ruling on summary judgment is not erroneous if the discovery sought did not pertain" to the legal principles relied on by the Court).

### A. Challenges to Classification Determinations Like The One Presented Here Are Appropriately Resolved Based on the Declarations Supporting the Government's Summary Judgment Motion.

As Defendants have described, when persons subject to secrecy restrictions on their ability to publish classified information bring a challenge to the classification of that information—as Twitter does here—a Court appropriately reviews the justification for classification *ex parte* by reviewing "the affidavits . . . submitted by the Government in defense of its classification decision." Defs.' Opp. to Pl.'s Mot. for an Order Directing Defendants to Initiate an Expedited Security Clearance Process for Counsel, ECF No. 1343 at 4 (Oct. 21, 2016) (quoting *Stillman*, 319 F.3d 546, 548 (D.C. Cir. 2003)). In conducting this review, the "court's task is not to second-guess the Agency, but simply to ensure that its reasons for classification are rational and plausible ones." *Wilson v. CIA*, 586 F.3d 171, 185–86 (2d Cir. 2009). As noted above, this Court's May 2, 2016 Order identified *Stillman* and *Wilson* as providing the relevant framework, including the "procedures," for Twitter's challenge. *See* Order, ECF No. 113, at 8 (citing *Stillman*, 319 F.3d at 548-49; *Wilson*, 586 F.3d at 183).

In *Stillman*, the Government denied permission for a former contractor at the Los Alamos National Laboratory to publish a book containing classified nuclear secrets acquired during the contractor's work. The contractor challenged the classification decision, and his counsel sought to obtain a security clearance to facilitate his ability to contest the decision before the district

court.[4]  Rejecting this approach, the D.C. Circuit instructed the district court to review the classified materials *ex parte*, and apply "the appropriate degree of deference owed to the Executive Branch concerning classification decisions [to] resolve the classification issue without the assistance of plaintiff's counsel."  *Id.* at 549.[5]  Similarly, in *Wilson*, a former CIA employee—in connection with "highly publicized actions by all three branches of the federal government," 586 F.3d at 175—challenged the Government's determination that portions of the employee's memoir were classified.  Notwithstanding the employee's efforts to argue that "minimal harm" to national security would stem from the disclosures sought by the employee, *see* 586 F.3d at 192-93, the Court reviewed the Government's "unclassified submissions as well as . . . the classified materials provided to the court *ex parte*" and concluded that the Government had "provided 'rational and plausible' reasons for continued classification," thereby ending its inquiry.  *Id.* at 195-96.  In contrast, courts have not countenanced the type of far-reaching discovery proposed by Twitter, an apparent fishing expedition into any material conceivably related—and some not conceivably related—to the Government's classification determination.  *See Stillman*, 319 F.3d at 548; *Hitkansut, LLC v. United States*, 119 Fed. Cl. 40, 49-50 (Ct. Fed. Cl. 2014).

Twitter's SAC also attempts to frame its claims as an Administrative Procedure Act ("APA") challenge to the Government's classification decision.  *See* SAC at ¶ 17 (citing 5 U.S.C. § 702).  Although the APA does not authorize challenges to classification decisions,[6]

---

[4] As noted above, the Government has likewise opposed a motion by Twitter's counsel to obtain security clearances.  *See* ECF Nos. 124, 133.  Twitter's motion is set for argument alongside the Government's motion for summary judgment, on January 17, 2017.  *See* ECF No. 143.

[5] As explained in prior briefing, subsequent applications of the *Stillman* procedures confirm that the relevant material to the Court's review of the Government's classification decision is the declaration submitted "ex parte and in camera [for] consideration."  ECF No. 133 at 5-6 (citing *Boening v. CIA*, 579 F. Supp. 2d 166, 174 (D.D.C. 2008); *Shaffer v. DIA*, 102 F. Supp. 3d 1, 10 (D.D.C. 2015)).

[6] An action is committed to agency discretion, and thus unreviewable under the APA, see 5 U.S.C. § 701(a)(2), when a statute is "drawn in such broad terms that . . . there is no law to apply" or there is "no meaningful standard against which to judge the agency's exercise of discretion."  *Webster v. Doe*, 486 U.S. 592, 599-600 (1988).  Courts have found that agency decisions fit this standard when the agency must act based on a "determin[ation] to be in the

even if it were the case that APA principles applied to Twitter's claims, review at most could only be on the record of the Executive Branch's determination that release of the data in Twitter's draft transparency report reasonably could be expected to result in serious damage to national security.  Under those principles, Twitter would not be entitled to any discovery beyond the record of the Government's decision.  *See Citizens to Preserve Overton Park, Inc., v. Volpe*, 401 U.S. 402, 420 (1971); *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-744 (1985). As explained above, such a limitation meshes with the approach set forth in *Stillman* and *Wilson*, confirming that the "focal point for judicial review" here is the material "the agency presents to the reviewing court."  *Lorion*, 470 U.S. at 743-44; *Jet Inv. Inc. v. Dep't of Army*, 84 F.3d 1137, 1139 (9th Cir. 1996).

## B. Preclusion of Discovery is Appropriate Because Private Litigants Such as Twitter Lack the Authority or Expertise to Contribute to the Court's Classification Review.

The Executive Branch is constitutionally vested with authority to determine whether information is properly classified.  *See Egan*, 484 U.S. at 529.  Under Executive Order 13526— under which authority to classify national security information is undisputed in this action, *see, e.g.*, SAC ¶ 85—information may be properly classified at one of three levels based on the harm to national security (and the likely severity of such harm) that reasonably could be expected to result from the unauthorized disclosure of such information.  *See generally* Exec. Order 13526. The nature of such predictive judgments about national security harm precludes any role for private plaintiffs in aiding the Court's analysis.  As the Fourth Circuit explained in *United States v. Marchetti*, the harm to national security caused by the disclosure "of one item of information may frequently depend upon knowledge of many other items of information. What may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene

public interest," *Claybrook v. Slater*, 111 F.3d 904, 908 (D.C. Cir. 1997) or "is of the opinion" that certain conditions are met, *Drake v. FAA*, 291 F.3d 59, 72 (D.C. Cir. 2002), standards that are comparable to the Executive Order's instruction that information must be classified if disclosure "reasonably could be expected to result in damage to the national security."  E.O. 13526 at § 1.1(a)(4); *see Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988) ("[U]nless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs").

and may put the questioned item of information in its proper context."  466 F.2d 1309, 1318 (4th Cir. 1972); *accord Wilson*, 586 F.3d at 194 ("seemingly trivial details may be of great significance to foreign intelligence services with a broad view of the intelligence landscape"); *Hamdan v. Dep't of Justice*, 797 F.3d 759 (9th Cir. 2015) ("[I]t is in the nature of intelligence data that disclosure of small pieces of a puzzle may be aggregated and considered in context by an adversary").  Only with the broad view of current national security information available exclusively to Government personnel can the likely harms of disclosure at present be determined. *See Wilson*, 586 F.3d at 185 ("judicial review is necessarily deferential because the designation and protection of classified information 'must be committed to the broad discretion of the agency responsible'") (quoting *Egan*, 484 U.S. at 529); *id.* at 196 (declining to go beyond the Executive Branch's "rational and plausible reason[ing] . . . [to] further second-guess Agency judgment").

Consistent with the Executive Branch's constitutional authority and unique expertise, courts have routinely rejected the relevance of arguments presented by private individuals regarding the likely harms of disclosure, even when those individuals have a background in national security matters or intelligence gathering.  For example, in *Snepp v. United States*, the Supreme Court held that a former CIA agent could not "rel[y] on his own judgment about what information is detrimental," because in doing so, "he may reveal information that the CIA—with its broader understanding," would recognize posed a harm to national security if disclosed.  444 U.S. 507, 512 (1980).  Likewise, in *Gardels v. CIA*, the D.C. Circuit concluded that a former agent's "own views as to the lack of harm which would follow [] disclosure" could not justify a further examination that stretched beyond the CIA's "plausible and reasonable" informed position about what should be classified.  689 F.2d 1100, 1106 n.5 (D.C. Cir. 1982).  This same principle is reflected in the Second Circuit's decision in *Wilson*, where the Court rejected the plaintiff's own assessment of which details about herself and her own service as a CIA employee could be disclosed, in light of the agency's "rational and plausible reasons for continued classification."  586 F.3d at 196.

Under these principles, Twitter's own analysis of the national security harms that would occur from disclosure of the information in its draft transparency report plays no role in the

Court's resolution of Twitter's claims.  Accordingly, Twitter's requests to gather information about the elements underlying the Government's decisions to classify information seek material that is not relevant in this action.

### C. The Information Twitter Seeks is Not Relevant to Whether Twitter is Now Entitled to an Order Permitting Disclosure of Information in its Draft Transparency Report.

In contrast to the narrow scope of review appropriate for resolution of Twitter's claims, Twitter's discovery requests range deep into ancillary matters that do not bear on EAD Steinbach's determination that the information redacted from the draft transparency report is currently properly classified.  Twitter has promulgated numerous discovery requests that seek information about other Government classification decisions regarding aggregate data and individual FISA orders, as well as discovery requests seeking information about the Government's decision-making process in concluding that certain data related to Twitter's receipt of national security process is classified.  *See, e.g.*, RFP #1 ("documents . . . relating to the procedures, policies, standards or practices for classifying information" in general); RFP #2 (application of classification procedures to the draft transparency report "*on or before September 9, 2014*"); RFP #4 ("public disclosures permitted by the USA Freedom Act"); RFP #7 ("specific portions of FISA orders or NSLs . . . to electronic communications services that are classified,"); RFP #8 ("preparation of the unclassified, redacted version of the draft transparency report" [in November, 2014]); RFP #9 (preparation of "the September 2014 FBI letter"); RFP #14 ("classification decisions" apart from Twitter's draft transparency report); RFP # 15 (same). None of these matters are relevant to Twitter's SAC and whether the information in Twitter's draft transparency report is, as EAD Steinbach has concluded, currently and properly classified. Twitter's discovery requests into these matters therefore exceed the permissible scope of discovery.  *See* Fed. R. Civ. P. 26(b)(1).

Twitter also seeks discovery into the DAG Letter and other matters that are no longer relevant because they have been superseded by the USA FREEDOM Act, the July 2, 2015 DNI discretionary declassification decision, and EAD Steinbach's declaration.  *See, e.g.*, RFP #3 ("Documents . . . relating to the January 2014 DAG letter"); RFP #5 ("Communications . . .

relating to the disclosure provisions in the January 2014 DAG Letter"); RFP #13 (documents relating to "the declassification of information in connection with the issuance of the [] DAG Letter"); RFP #14 (documents with different conclusions than "the paramaters permitted in the [] DAG Letter"); RFP #15 (same).  This Court has already recognized the superseding effect of the enactment of the USA FREEDOM Act on June 2, 2015 with regard to the legal authorities challenged prior to that date by Twitter in its original Complaint and the Government's prior statements concerning those authorities, such as the DAG Letter.  *See Twitter I* at 1081-83.  As the Court explained, "whatever effect the DAG Letter had, it is now superseded by section 603 of the USAFA" because the legislation "supplants the disclosure options set forth in the DAG Letter with a set of more detailed and unqualified disclosure options."  *Id.* at 1081-82; *see id.* at 1082 ("the USAFA results in the DAG Letter having no legal effect.").  As a superseded authority, documents and reasoning underlying the DAG Letter cannot be relevant to establishing whether classification is *currently* proper.  Discovery into the DAG letter is therefore unwarranted.

The same is true for the FBI's September 2014 letter to Twitter and the November 17, 2014 unclassified, redacted version of the draft Transparency Report, also the focus of many of Twitter's discovery requests.  *See, e.g.*, RFP #2; RFP #9.  Discovery into the decision-making process surrounding those materials will not shed any light on Twitter's claims that data in Twitter's draft transparency report is not currently properly classified.  As explained above, the DAG Letter, although in place at the time of the September and November 2014 letters, has now been rendered obsolete by the provisions of the USA FREEDOM Act and a declassification determination made by the Director of National Intelligence ("DNI") on July 2, 2015.  In light of this change in legal authority, it is EAD Steinbach's review and determination in support of the Government's November 22, 2016 motion for summary judgment—conducted pursuant to current law—that conclusively demonstrates that the information redacted from the transparency report is currently and properly classified because of the serious national security harms that reasonably can be expected to result from disclosure.  It is this judgment on which Twitter's challenge must turn, not the 2014 materials cited by the SAC or even judgments made pursuant

to the 2014 DNI declassification and the framework reflected in the DAG Letter.  To be sure, the

Government's ultimate conclusion has remained the same – the information redacted from the

draft transparency report was properly classified in 2014 and it is properly classified today, as

explained by EAD Steinbach.  But Twitter's discovery requests into what happened in 2014

when the Government first reviewed Twitter's draft transparency report, *see, e.g.*, RFP # 2; RFP

#9; RFP #10, are simply not relevant to adjudicating Twitter's current claims.

Likewise, there is no relevance to Twitter's other requests for discovery into matters

unrelated to EAD Steinbach's current classification determination.  For example, Twitter seeks

communications relating to the USA FREEDOM Act between Defendants and various entities,

including: 1) Congress; 2) private companies; 3) public companies; 4) consultants and lobbyists;

5) civil liberties and interest groups; 6) trade associations; and 7) other federal government

agencies.  *See* RFP #5; *see also* RFPs #13, 14, 15.  Even if such communications reflected the

Government's views of the USA FREEDOM Act or disclosures pursuant to its provisions, those

views would have no bearing on whether EAD Steinbach has provided "rational and plausible"

explanations of the national security harms that reasonably could be expected to result from

release of redacted information in Twitter's draft transparency report.  *Wilson*, 586 F.3d at 185–

86.

Nor can the content and classification of FISA orders and NSLs sent to other companies

(or the procedures for the handling of such process) as further sought by Twitter have any

bearing on the correctness of *this* classification determination.  *See, e.g.* RFP #6 (documents

related to the processing of NSLs by "an electronic communications service"); RFP #7

(documents relating to "specific portions of FISA orders or NSLs").  In its annual report to

Congress in April, 2016, the Department of Justice identified, *inter alia*, "9,418 NSL requests

(excluding requests for subscriber information only) for information concerning [U.S.] persons"

and "31,863 NSL requests [] for information concerning non-[U.S.] persons."  *See* Annual FISA

Report to Congress, 2015, *available at* http://www.justice.gov/nsd/nsd-foia-library.  Twitter's

discovery requests appear to relate to all of these tens of thousands of individual NSLs (in

addition to countless FISA orders).  Such "wide-ranging, voluminous discovery on matters

outside the scope of the dispute" is the "definition of a fishing expedition that violates the limits on discovery" imposed by the Federal Rules.  *U.S. v. Kellogg, Brown, & Root Servs., Inc.*, 284 F.R.D. 22, 38 (D.D.C. 2012); *see Rivera v. NIBCO*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in fishing expeditions" or other "wholesale searches" for unknown evidence).

Twitter's sweepingly broad discovery requests do not, in most cases, seek information relevant to Twitter's actual claims, but instead, pose the type of discovery into discretionary Executive Branch classification decisions that is unnecessary to resolve the claims here.  This is a circumstance in which the Court "should not hesitate to exercise appropriate control over the discovery process," *Herbert v. Lando*, 441 U.S. 153, 177 (1979), and should therefore issue a protective order under Fed. R. Civ. P. 26(c).

## II.     Protection is Particularly Warranted Here Because Responding to Twitter's Discovery Requests Seeking Unclassified Portions of Classified Documents Is Likely to Require Intensive Review to Protect National Security Information and Information Subject to Government Privileges.

Twitter's discovery requests also recognize that classified and unclassified information responsive to its requests are likely to be commingled.[7]  *See generally* Ex. 1.  In doing so, Twitter would require the Government to respond to its discovery requests by reviewing classified documents, redacting classified material from those documents, producing the unclassified, redacted versions to Twitter, and then objecting (or seeking a protective order) with regard to Twitter's discovery requests for the classified information.  In order to avoid imposing weighty burdens of asserting privilege and resolving privilege claims, particularly over national security information, the Court should first attempt to resolve Twitter's claims in accordance with the procedure identified in *Stillman* by reviewing, with appropriate deference, the Government's submissions.

As a general matter, the propriety of considering whether there are other grounds, such as issues of relevance, before turning to questions of privilege is well-established.  *See, e.g.*,

---

[7] For example, Twitter divides each of its requests for documents into a subpart seeking unclassified information, and a subpart containing classified information.  *See* Ex. 1.

*Pierson v. United States*, 428 F. Supp. 384, 390 (D. Del. 1977) ("Relevant material subsequently may be protected from discovery by proper claims of privilege, but the initial question is relevance"); *Delozier v. First Nat'l Bank of Gatlinburg*, 113 F.R.D. 522, 524 (E.D. Tenn. 1986) ("[T]he information sought must initially satisfy the relevancy requirement of Rule 26(b) . . . before there is any necessity to determine the appropriateness of the Government's claim of privilege"). It is therefore appropriate that "matters of privilege . . . be deferred for definitive ruling until after [a] production demand [is] bolstered by general showing of relevance and good cause," particularly to avoid a "laborious page-by-page examination which assertions of privilege will require." *Freeman v. Seligson*, 405 F.2d 1326, 1338-39 (D.C. Cir. 1968); *see also Alexander v. FBI*, 186 F.R.D. 188, 192 & n.1 (D.D.C. 1999) (bifurcating issue of presidential communications privilege from other privileges).

The principle counseling postponement of privilege determinations carries special weight in this context, where Twitter's discovery requests seek classified national security information, and thus implicate a possible claim of the state secrets privilege. *See Hitkansut*, 119 Fed. Cl. 50. The state secrets privilege is "not to be lightly invoked," *United States v. Reynolds*, 345 U.S. 1, 7 (1953), and is accorded special significance under the law because decisions about whether, when, and to what extent the Government should assert the state secrets privilege requires policy judgments at the highest levels of Government, as a matter of both law and Executive Branch policy.[8] *See Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1080 (9th Cir. 2010) (observing that the "decision to invoke the privilege must be a serious, considered judgment"); *El-Masri v. Tenet*, 437 F. Supp. 2d 530, 536 (E.D. Va. 2006) (privilege to protect state secrets is of the "highest dignity and significance"), *aff'd*, 479 F.3d 296. Indeed, the Supreme Court in

---

[8] One of the reasons high level review is required before an assertion of the state secrets privilege, is that, "[o]nce the privilege is properly invoked, and the court is satisfied as to the danger of divulging state secrets, the privilege is absolute." *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998). Thus, no matter how great the perceived need of a litigant to access or use the information at issue, the privilege cannot be overcome. *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C. Cir. 1984) (state secrets privilege "cannot be compromised by any showing of need"). Accordingly, when the privilege is successfully invoked, the evidence subject to the privilege is "completely removed from the case." *Kasza*, 133 F.3d at 1166.

*Reynolds* spelled out that a "formal claim of [state secrets] privilege" must be "lodged by the *head of the department* which has control over the matter, *after personal consideration* by that officer." 345 U.S. at 7-8 (emphasis added).[9] For this reason, it is well-established that the Executive Branch should not be forced into a decision about whether to assert the privilege where, as here, there may be other grounds for avoiding the issue entirely. *See, e.g., Reynolds*, 345 U.S. at 11 (criticizing respondents for seeking discovery against the Government that forced a "showdown" on the issue of privilege where the need to do so was "greatly minimized by an available alternative"); *cf. Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 53-54 (D.D.C. 2010) (observing that the Government "also correctly and forcefully observe[d] that this Court need not, and should not, reach their claim of state secrets privilege because the case can be resolved on other grounds they have presented," and declining to address privilege).

The importance of avoiding the imposition of unnecessary discovery burdens on the Executive Branch has been recognized in other contexts, and applies to material directly sought by Twitter that may be protected by other privileges. For example, many of Twitter's discovery requests seek to probe the Government's decision-making (including about whether to classify or declassify information) and thereby implicate the "deliberative process" privilege, which "shields certain intra-agency communications from disclosure to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009). Twitter seeks, *inter alia*, information about "the preparation of the unclassified, redacted" draft transparency report, "review," of that report, and "classification decisions . . . different from" the Government's final

---

[9] In addition to the head of the department responsible for the information, "[a]lthough *Reynolds* does not require review and approval by the Attorney General when a different agency head has control of the matter, such additional review by the [Attorney General] is appropriate and to be encouraged." *Jeppesen*, 614 F.3d at 1080. The Department of Justice has adopted procedures that require such personal involvement of the Attorney General, and additional review at several levels within the Department of Justice, including an internal "State Secrets Review Committee," the Associate Attorney General, and the Deputy Attorney General. *See* "Attorney General Establishes New State Secrets Policies and Procedures," Dep't of Justice, Ofc. of Public Affairs (Sept. 23, 2009), *available at* https://www.justice.gov/opa/pr/attorney-general-establishes-new-state-secrets-policies-and-procedures; *Al-Aulaqi*, 727 F. Supp. 2d at 53-54 (favorably citing the "careful review" and "mandated procedures" of the state secrets policy).

decisions.  *See, e.g.*, Ex. 2 (Interrogatories # 8, 15, 16).  These requests plainly implicate core deliberative documents, such as "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001).  Because the same Government officials are involved in ongoing decision-making, the very process of having to review these documents and assert privilege will itself cause immediate interference with deliberations presently underway, and the Court should act to protect Defendants from these burdens.  *See Sanchez v. Johnson*, Case No. C-00-1593 CW (JCS), 2001 WL 1870308 at *5 (noting that "[g]enerally, the deliberative process privilege may be invoked only by the agency head . . .," and that, although this requirement "need not be applied absolutely literally . . . the privilege cannot be delegated [too] far down the chain of command") (N.D. Cal. Nov. 19, 2001); *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2008) (recognizing, in the qualified immunity context: "If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed.").[10]

      Here, *Stillman* and *Wilson* supply the appropriate alternative to such discovery: a determination of whether the Government's reasons for classification are "rational and plausible," based on the materials the Government has supplied.  586 F.3d at 185–86.  Following this approach, the Government has moved for summary judgment, and dispositive summary

---

[10] In general, the degree of relevance required in order to justify requiring a party to produce privileged materials in discovery is a particularized and heightened one. *E.g., In re Air Crash Near Cali, Colombia on December 20, 1995*, 959 F. Supp. 1529, 1536 (S.D. Fla. 1997) ("mere generalized or speculative assertions of relevance" are insufficient to overcome qualified privilege); *see United States v. Burke*, CR. No. S–05–0365 FCD, 2009 WL 2985491 (E.D. Cal. Sept. 16, 2009) (Even where there "may indeed be relevant or admissible evidence in [a] ceiling-high stack of documents," subpoena may not seek the "whole stack, including probable privileged documents").  This heightened standard of relevance is inherently recognized in the limitation on discovery of privileged matters in the otherwise broad scope of permissible discovery set forth in the Federal Rules: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1) (emphasis added).

judgment may proceed without discovery where plaintiff has not "adequately shown the potential relevance of [such] further discovery." *Fox v. Good Samaritan, L.P.*, 801 F. Supp. 2d 883, 895 (N.D. Cal. 2010); *see Chavous v. Dist. Of Columbia Fin. Responsibility and Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) ("Discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending"). An order precluding such discovery is therefore "an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Id.*

Here, the Government has submitted EAD Steinbach's declaration in support of its motion for summary judgment, a submission which, "with reasonable specificity, demonstrates a logical connection between the detailed information [at issue] and the reasons for classification." *Shaffer v. DIA*, 102 F. Supp. 3d 1, 11 (D.D.C. 2015) (citing *McGehee v. Casey*, 718 F.2d 1137, 1148 (D.C. Cir. 1983)). Under this legal standard, the burdensome discovery sought by Twitter is, on its face, unnecessary to resolution of this action.

Dated: December 22, 2016                    Respectfully submitted,

                                            BENJAMIN C. MIZER
                                            Principal Deputy Assistant Attorney General

                                            BRIAN STRETCH
                                            United States Attorney

                                            ANTHONY J. COPPOLINO
                                            Deputy Branch Director

                                            */s/ Eric J. Soskin*
                                            ERIC J. SOSKIN, PA Bar # 200663
                                            JULIA A. BERMAN, Bar No. 241415
                                            Trial Attorneys
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            P.O. Box 883
                                            Washington, D.C. 20044
                                            eric.soskin@usdoj.gov

                                            *Attorneys for Defendants*