UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**TWITTER, INC.,**

Plaintiff,

v.

**JEFFERSON B. SESSIONS, III,** *ET AL.***,**

Defendants.

Case No. 14-cv-04480-YGR

**ORDER DENYING MOTION FOR RECONSIDERATION**

Dkt. No. 180

Defendants Jefferson B. Sessions, III, *et al.*, ("the Government") bring their motion (Dkt. No.180) pursuant to Fed. R. Civ. P. 54(b) and Civil L.R. 7-9, for reconsideration of this Court's July 6, 2017 Order (Dkt. No. 172, "Order") denying the Government's motion for summary judgment. The Court having considered carefully the papers in support and in opposition, and the authority on which they are based, **DENIES** the motion for reconsideration of its Order.

Under Rule 54(b), "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. A C and S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Local Rule 7-9(b) requires that a party seeking leave to file a motion for reconsideration show reasonable diligence in making the motion and one of the following:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

The Government argues that the Ninth Circuit's decision in *In re National Security Letter*, 863 F.3d 1110 (9th Cir. 2017) ("*In re NSL*"), issued ten days after this Court's Order, caused a change

in controlling law warranting reconsideration. The Government contends that the decision in *In re NSL* compels a conclusion that this Court find its showing in support of its summary judgment motion satisfies its burden of demonstrating that its decision to prohibit publication of Twitter's Draft Transparency Report was consistent with strict scrutiny review because it was narrowly tailored to serve a compelling state interest. The Court disagrees.

## I. BACKGROUND

### A. Order Denying Government's Motion for Summary Judgment

The Government sought summary judgment in its favor on Twitter's Second Amended Complaint ("SAC"). (Dkt. No. 145, Motion for Summary Judgment.) The SAC seeks a determination that the Government's prohibition on publication of Twitter's Draft Transparency Report, based on its contention that the information is properly classified under Executive Order No. 13526, violates the First Amendment. (SAC ¶¶ 4-6, 72-76.) In its Draft Transparency Report, Twitter seeks to publish information including actual numbers, or narrowed ranges of numbers, of national security letters ("NSLs") and orders from the Foreign Intelligence Surveillance Act ("FISA") court that it received for the time period. (*Id.* ¶ 56.) The Government would not approve publication of the Draft Transparency Report without redaction of the quantitative data regarding Twitter's receipt of national security legal process from its draft report. (*Id.* ¶ 61.) Twitter alleges that the information it seeks to publish is not "classified" information as defined in Executive Order 13526, and the Government has not justified its restriction on publication of that information. (*Id.* ¶¶ 82-85.)

The Government sought summary judgment by offering evidence to justify its classification of the information and prohibition on publishing it. (Dkt. No. 145.) The Government offered declarations from Michael Steinbach, FBI Executive Assistant Director of the Federal Bureau of Investigation ("FBI"), one filed in the public record and one provided to the Court *in camera*. (*See* Dkt. Nos. 144, 145-1.) The Government contended that the Steinbach declarations explained the specific national security harms that reasonably could be expected to result from disclosure of the information.

1  In its July 6, 2017 Order, the Court made the following determinations:  first, the
2  Government's restrictions were subject to strict scrutiny, as both content-based restrictions and
3  prior restraints on publication.  (July 6, 2017 Order at 14-15.)  Second, Steinbach's declarations
4  were insufficient to establish that national security harms could reasonably be expected to result
5  from disclosure.  (*Id.* at 17-18.)  In particular, Steinbach "fail[ed] to provide sufficient details
6  indicating that the decision to classify the information in the Draft Transparency Report was based
7  on anything more specific than the reporting bands in section 1874 and the FBI's position that
8  more granular information 'could be expected to harm national security.'"  (*Id.* at 17.)  Further, the
9  declarations relied mainly on a "generic, and seemingly boilerplate, description of the mosaic
10 theory and a broad brush concern that the information at issue will make more difficult the
11 complications associated with intelligence gathering in the internet age."  (*Id.* at 18.)  The Court
12 concluded that the Government had failed to offer evidence that "reflected any narrow tailoring of
13 the decision to take into consideration, for instance, the nature of the provider, the volume of any
14 requests involved or the number of users on the platform." (*Id.* at 17.)  Thus, the Court found that
15 "[w]ithout some more specific articulation of the inference the Government believes can be drawn
16 from the information Twitter itself seeks to publish, even years later, the Court cannot find that the
17 Government has met the high burden to overcome a presumption that its restrictions are
18 unconstitutional."  (*Id.* at 18.)  Third, the Court found that the Government's classification
19 decision was not shown to be subject to any procedural safeguards to ensure that the effects of the
20 decision were narrowly tailored, such as provisions for judicial review or limitations on the
21 duration of the restriction.  (*Id.*)  For those reasons, the Court denied the Government's motion for
22 summary judgment without prejudice "to a renewed motion upon a more fulsome record."  (*Id.* at
23 21.)

**B.   The Ninth Circuit's *In Re NSL* Decision**

25 In *In re NSL,* recipients of national security letters (NSLs) brought a First Amendment
26 challenge certain provisions of statutes which authorize the FBI to issue NSLs, a form of
27 administrative subpoena that allows the agency to seek subscriber information in connection with
28 a national security investigation to wire or electronic communications service providers without

3

1  prior judicial authorization. The service provider recipients challenged both the information
2  requests made to them, and the nondisclosure provisions of the statute which precluded them from
3  disclosing that they had received such legal process, 18 U.S.C. § 2709(c)(1)(A). The district
4  court, after a lengthy procedural journey including changes in the statutes at issue, found that the
5  nondisclosure provisions were facially constitutional, but that one of the four NSLs, a 2013
6  request directed to plaintiff CREDO Mobile, lacked a sufficient certification from the government
7  that harm would result absent nondisclosure. *Id*. at 1120.[1]

8  On appeal, the Ninth Circuit considered only the facial challenge to the nondisclosure
9  provisions. *Id*. at 1121. The *In re NSL* court held that the nondisclosure requirement of section
10 2709(c) was a content-based restriction on speech that was subject to strict scrutiny. *Id.* at 1114.
11 It also found that the nondisclosure requirement at issue there withstood strict scrutiny. *Id.* at
12 1131.
13 The Ninth Circuit's analysis in *In re NSL* reiterated the United States Supreme Court's
14 long-standing First Amendment jurisprudence. First, "[w]hen the government restricts speech
15 based on its content, a court will subject the restriction to strict scrutiny." *Id.* at 1121 (citing *Reed
16 v. Town of Gilbert*, __U.S. __, 135 S.Ct. 2218, 2226 (2015) and *U.S. v. Playboy Entm't Grp., Inc.*,
17 529 U.S. 803, 813 (2000)). Content-based restrictions, under strict scrutiny, "may be justified
18 only if the government proves that they are narrowly tailored to serve compelling state interests."
19 *Reed*, 135 S.Ct. at 2226. Second, even if particular content-based restrictions are permitted, "the
20 government does not have unfettered freedom to implement such a restriction through "a system
21 of prior administrative restraints." *In re NSL*, 863 F.3d at 1122 (citing *Bantam Books, Inc. v.
22 Sullivan*, 372 U.S. 58, 70, 83 (1963)). "[A] law subjecting the exercise of First Amendment
23 freedoms to the prior restraint of a license" or other restriction must have "narrow, objective, and
24 definite standards to guide" that restriction. *Id.* (citing *Shuttlesworth v. City of Birmingham*, 394

---

[1] Both sides appealed, but the Government subsequently dismissed its cross-appeal on the 2013 CREDO NSL. *Id.* at 1120. Moreover, the Government subsequently terminated its investigation on two other NSLs, leaving a nondisclosure requirement only as to one of the NSLs. *Id.*

4

1  U.S. 147, 150–51 (1969)). It must also have "procedural safeguards that reduce the danger of
2  suppressing constitutionally protected speech." *Id.* (citing *Southeastern Promotions, Ltd. v.*
3  *Conrad*, 420 U.S. 546, 559(1975). Those procedural safeguards include: availability of
4  expeditious judicial review of the decision; limitations on the duration of a restraint prior to the
5  opportunity for judicial review; and allocation to the government of "the burden of going to court
6  to suppress the speech and . . . the burden of proof once in court." *Thomas v. Chi. Park Dist.*, 534
7  U.S. 316, 321 (2002) (citing *Freedman v. Maryland*, 380 U.S. 51, 58–60 (1965)).

8  Considering the facial constitutional challenge under the foregoing principles, the Ninth
9  Circuit in *In re NSL* held that the individual NSL nondisclosure statute was a content-based
10 restriction subject to strict scrutiny. *In re NSL*, 863 F.3d at 1123. Turning to the question of
11 whether that restriction was narrowly tailored to serve a compelling government interest, the Ninth
12 Circuit found that the statutory framework for an NSL nondisclosure order met the narrow
13 tailoring requirements sufficient to pass muster under the First Amendment. The Ninth Circuit
14 first reiterated that national security interests are, without question, compelling government
15 interests. *Id*. at 1124. The individual NSL nondisclosure statute contemplates that the
16 nondisclosure requirement will be imposed only if one of four enumerated harms "may result": (i)
17 a danger to the national security of the United States; (ii) interference with a criminal,
18 counterterrorism, or counterintelligence investigation; (iii) interference with diplomatic relations;
19 or (iv) danger to the life or physical safety of any person. 18 U.S.C. § 2709(c)(1)(B). Thus, the
20 question for the Ninth Circuit was whether the individual NSL nondisclosure statute was narrowly
21 tailored to serve those interests.

22 The Ninth Circuit held that the statutory provisions requiring the government to make an
23 individualized determination of possible harm, coupled with avenues for judicial review of that
24 decision and for terminating it when the necessity no longer existed, constituted narrow tailoring
25 that satisfied strict scrutiny review. "The government's application for a nondisclosure order (or
26 for an extension of such an order), must include a certification from the FBI Director or a
27 sufficiently high[-]ranking designee 'containing a statement of specific facts indicating that the
28 absence of a prohibition of disclosure under [§ 3511(b)] may result in' one of the four harms

1 enumerated in § 2709(c)(1)(B). *Id.* § 3511(b)(2)." *In re NSL*, 873 F.3d at 1117-18. The court
2 found that the individualized analysis could take into such account factors the size of the
3 recipient's customer base. *Id.* at 1125. Moreover, the individualized decision is subject to judicial
4 review, wherein the court may make a determination about whether there is good reason to order
5 nondisclosure of the fact of the receipt of the NSL. *Id.* (citing section 3511(b)(3)). Each NSL
6 recipient was informed of the right to judicial review of the nondisclosure order in the order itself.
7 *Id.* at 1118, 1125. And the nondisclosure order would be terminated after three years absent a
8 continuing need, a determination also subject to judicial review. *Id.* at 1126.

The court then turned to the question of whether the statutory nondisclosure requirement was a prior restraint requiring procedural safeguards and whether such safeguards were provided. The Ninth Circuit indicated the NSL nondisclosure order statute did not resemble closely the kind of censorship or licensing schemes giving rise to the procedural safeguards required when the government imposes a prior restraint on speech, as set forth by the Supreme Court in *Freedman*. *Id.* at 1128-29. However, the court ultimately determined that it need not resolve the question of whether such safeguards ought to be required since the statutory scheme already included them. *Id.* at 1129-30 (provides for expeditious judicial review and puts the burden on the government to seek review and justify nondisclosure).

**II. DISCUSSION**

The Government contends that the decision in *In re NSL* is dispositive of Twitter's claims in this action, and requires the Court to conclude that its prohibition on publication of Twitter's Draft Transparency Report is narrowly tailored to serve a compelling state interest. It argues that it has undertaken the individualized analysis required to satisfy strict scrutiny, and that the procedural concerns raised by the decisional context here were rejected by the Ninth Circuit.

The Court finds that the *In re NSL* decision, on a facial challenge to the NSL statute itself, does not require a different result here. Instead, it supports the Court's determination that strict scrutiny applies and of the factors important to such an analysis. Having considered those factors and found them lacking in the Government's showing in favor of summary judgment here, no

reconsideration is warranted. The Court briefly addresses each of the Government's arguments as to *In re NSL*'s effect on the July 7, 2017 Order.

### A.     Individualized Analysis

First, the Government contends that it has provided the "individualized analysis" required by *In re NSL* in its declarations from Steinbach.[2] It further contends that Steinbach's *in camera* declaration indicated that this determination was based on consideration of Twitter's particular circumstance, including the nature of the platform, the volume of requests involved, and the number of users on the platform. The Government's position ignores that this Court reviewed EAD Steinbach's declarations, both the public and the *in camera* submission, and found them to be insufficient and too generic to support the Government's restrictions on publication of Twitter's Draft Transparency Report. (July 6, 2017 Order at 17-18.) The Government's position ignores that the Court of Appeal's *In re NSL* decision depended upon the availability of judicial review of the FBI's nondisclosure determination to assure that there was "good reason to believe that continued nondisclosure as to the fact of receipt is necessary." *In re NSL*, 863 F.3d at 1125. As this Court's decision stated, no such judicial review provisions apparently would apply to the Government's decision prohibiting publication of the Draft Transparency Report here, nor does the Government offer any authority so indicating. (July 6, 2017 Order at 18.)

### B.     Publishing Information Different From the Statutory Bands

Second, the Government argues that *In re NSL* rejected any argument as to whether the bands codified in the USA FREEDOM Act were appropriately drawn. The argument is a red herring. The Government's summary judgment motion sought a determination that it had not violated the First Amendment by its prohibition on publication of Twitter's Draft Transparency Report, based on a determination that the information therein was classified. In its opposition,

---

[2] Shortly before filing the instant motion, the Government filed a declaration of Carl Ghattas, the successor to Michael Steinbach as Executive Assistant Director, stating that he had reviewed Steinbach's declaration and concurred with the conclusions that the information in the Draft Transparency Report therein. Thus, the Ghattas declaration provides no new or different information that would support reconsideration of the Court's July 6, 2017 Order.

7

1 Twitter did not argue that the statutory bands should be defined differently, but instead challenged the Government's support for its prohibition, contrasting that decision to the statutorily prescribed disclosure bands *de facto* deemed to be declassified.

Moreover, the question of whether the reporting bands are constitutional as written was not before the Court of Appeal. As part of its narrow tailoring analysis, the Ninth Circuit noted that legislation amending the NSL laws added 50 U.S.C. section 1874, which allows "[a] person subject to a nondisclosure requirement" to disclose aggregate data regarding the number of NSLs (in specified ranges or "bands") that the person has received. *Id.* at 1119 (citing 50 U.S.C. § 1874(a)(1)–(4))). The Ninth Circuit stated that allowing a recipient to disclose that it received a specified range of NSLs, without the need to obtain government or court approval, "does not affect our conclusion that the NSL statute is narrowly tailored." *Id*. at 1126.[3] Plainly, the issue of whether the reporting bands under the USA FREEDOM Act themselves survived strict scrutiny was not before the Ninth Circuit in *In re NSL*. Likewise, the issue of whether a particular government determination barring a proposed transparency report satisfied strict scrutiny also was not before the Ninth Circuit. *In re NSL*'s statement regarding the reporting bands statute is thus no more than dicta without effect on this Court's decision.

### C. Durational Limitations

Third, the Government argues that *In re NSL* "cuts against" Twitter's concern over the unlimited duration of nondisclosure obligations under the Reporting Bands statute. It contends

---

[3] The portion of the *In re NSL* decision stated, in full:

> Finally, the provision allowing a speaker to disclose its status as a recipient of a specified range of NSLs, *see* 50 U.S.C. § 1874, does not affect our conclusion that the NSL statute is narrowly tailored. To the contrary, the provisions allow recipients to make additional specified disclosures regarding the receipt of the nondisclosure requirements in certain circumstances without obtaining government or court approval. We decline the recipients' invitation to quibble with the particular ranges selected by Congress.

*Id.* at 1126 (citing *Williams-Yulee*, 135 S.Ct. at 1671). Thus, the Ninth Circuit expressly did not determine whether the reporting bands under 50 U.S.C. section 1874 were or were not constitutional.

1  that concerns about the lack of a durational limitation are insubstantial because Executive Order
2  13526 provides for automatic declassification of previously classified information on a date
3  certain, and because the USA FREEDOM ACT adjusts the scope of the reporting bands after one
4  year. 50 U.S.C. section 1874(a)(4). Again, the Government ignores that *In re NSL* relied on the
5  availability of judicial review in concluding that a three-year statutory limitation satisfied narrow
6  tailoring. *In re NSL,* 863 F.3d at 1126-27. Further, the Government offered no evidence regarding
7  when the classification decision at issue here was made, nor did it offer any evidence suggesting
8  when or if it will expire. To the contrary, the Government has continually represented that the
9  Draft Transparency Report information it determined to be classified and prohibited from
10 publication since the inception of this litigation over three years ago.

### D. Consideration of Framework Holistically

Finally, the Government contends that *In re NSL* rejected the notion that the restrictions in 50 U.S.C. section 1874 be considered separately from other provisions of FISA law to determine whether the restrictions are narrowly tailored. The *In re NSL* court's admonition was that the statute should be considered as a whole, rather than by analyzing each provision of the law. *Id.* at 1125. The court made that statement in the context of a statutory scheme that specifically authorized judicial review of an individual nondisclosure order, as well as providing for modification of such orders with "conditions appropriate to the circumstances," 18 U.S.C. § 3511(b)(1)(C), and specific termination procedures to end the restrictions. *Id.* at 1124-25. The Government offers no similar provisions applicable to the reporting restrictions in the statutory scheme here. To the contrary, *In re NSL*'s consideration of the presence or absence of other safeguards, such as availability of judicial review or durational limitations, as part of the narrow tailoring inquiry is consistent with the Court's analysis here. The argument that each of the underlying orders comprising the aggregate number is subject to individual judicial review does not address the question of whether the Government's prohibition on publication of a completely different set of information—the aggregate numbers, whether actual numbers or in ranges— requires judicial review be provided, consistent with narrow tailoring.

//

### III. CONCLUSION

For the foregoing reasons, the Court finds that the *In re NSL* decision was not a change in controlling law requiring reconsideration of its July 6, 2017 Order. Rather, *In re NSL* mandated that a claim of First Amendment violation satisfy the same level of scrutiny the Court applied in its July 6, 2017 Order. Therefore, the motion for reconsideration is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 28, 2017

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE