CHAD A. READLER
  Acting Assistant Attorney General
BRIAN STRETCH
  United States Attorney
ANTHONY M. COPPOLINO
  Deputy Branch Director
JULIA A. BERMAN Bar No. 241415
  Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
  P.O. Box 883
  Washington, D.C. 20044
  Telephone: (202) 616-8480
  Facsimile:  (202) 616-8470
  Email: Julia.Berman@usdoj.gov
*Attorneys for Defendants*

MAYER BROWN LLP
LEE H. RUBIN (SBN 141331)
  lrubin@mayerbrown.com
SAMANTHA BOOTH (SBN 298852)
  sbooth@mayerbrown.com
  Two Palo Alto Square, Suite 300
  3000 El Camino Real
  Palo Alto, CA 94306-2112
  Telephone:   (650) 331-2000
  Facsimile:   (650) 331-2060
*Attorneys for Plaintiff Twitter, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| TWITTER, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>JEFFERSON B. SESSIONS, III,<br>Attorney General of the United States,<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE,<br><br>CHRISTOPHER WRAY, Director of the<br>Federal Bureau of Investigation, and THE<br>FEDERAL BUREAU OF INVESTIGATION,<br><br>                    Defendants. | Case No. 14-cv-4480-YGR<br><br>**THIRD UPDATED JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Case Management Conference<br><br>April 9, 2018 at 2:00 p.m.<br><br>Hon. Yvonne Gonzalez Rogers |

1    Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-10, and the

2    Court's Standing Order in Civil Cases, ¶ 6, Plaintiff Twitter, Inc. ("Twitter") and Defendants

3    Jefferson B. Sessions, III, the United States Department of Justice, Christopher Wray, and the

4    Federal Bureau of Investigation, hereby submit this Updated Joint Report.[1]

5    **I.    JURISDICTION AND SERVICE**

6    Twitter asserts that this Court has jurisdiction over the subject matter of this action under

7    28 U.S.C. § 1331, and that this Court is authorized to provide declaratory relief under the

8    Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and make determinations regarding the

9    Administrative Procedure Act, 5 U.S.C. § 551, et seq.  For reasons previously raised with the

10   Court, Defendants maintain that Plaintiff is not entitled to relief under the Declaratory Judgment

11   Act, or any other form of relief, but do not contest the Court's subject matter jurisdiction at this

12   time.

13   Defendants have been served with the Summons and Complaint.

14   **II.   FACTS**

15   **Plaintiff Twitter's Statement of Facts**: On April 1, 2014, Twitter submitted a draft

16   Transparency Report for Defendants' review with a request that Defendants identify which, if

17   any, parts of its Transparency Report were classified.  ECF No. 1, Ex. 3.  Five months later,

18   Defendants informed Twitter that "information contained in the [transparency] report is

19   classified and cannot be publicly released" because it did not conform to the pre-approved

20   reporting framework articulated in a January 27, 2014 letter from Deputy Attorney General

21   James M. Cole ("the DAG letter").  ECF No. 1, Ex. 5.  On November 17, 2014, Defendant

22   released an "unclassified copy of [Twitter's] proposed report," which excised all quantitative

---

[1] The parties submitted an initial joint case management statement pursuant to Civil Local Rule 16-9 on January 20, 2015.  ECF No. 29.  The parties also submitted updated joint case management statements pursuant to Civil Local Rule 16-10 on October 18, 2016 and August 7, 2017.  As with the prior updated joint case management statements, because this statement is submitted pursuant to Civil Local Rule 16-10, and in order to conserve space, the parties have not addressed every element required in an initial case management statement submitted under Civil Local Rule 16-9 and this Court's Standing Order for all Judges.

1  data regarding Twitter's receipt of national security process to the extent that data was more

2  granular than permitted under the broad reporting bands in the DAG Letter.

3       The underlying facts at issue in this litigation have not changed since the initial case

4  management statement.  Twitter continues to allege that Defendants' restriction on Twitter's

5  ability to make granular, aggregate disclosures about its receipt of security process—both in its

6  2013 draft Transparency Report and "in future Transparency Reports covering subsequent

7  periods of time"—violates the First Amendment.  ECF No. 114, at ¶ 86; *see also id.* ¶¶ 7, 56, 89,

8  91.  Twitter has alleged that, given its large user base, the application of any statutory scheme or

9  Government policy in a manner that prohibits Twitter from making granular, aggregate

10  disclosures about its receipt of national security process cannot be justified as narrowly tailored

11  under governing First Amendment standards to preventing harm to national security and is

12  therefore unconstitutional as applied to Twitter.  *Id.* at ¶ 8, 11, 12, 45, 59, 79.  Twitter has further

13  alleged that the restrictions on its speech are unconstitutional to the extent predicated on FISA's

14  secrecy provisions, because, on its face, the FISA regime lacks the procedural safeguards

15  required for any system of prior restraint.  *Id.* ¶¶ 17, 45, 84.  The FISA regime permits the

16  application of nondisclosure obligations of unlimited duration, without any clear avenue for

17  periodic re-review.  *Id.* ¶¶ 9, 10.  Moreover, the FISA regime (even when coupled with the USA

18  FREEDOM Act) lacks any procedural mechanism under which the Government would be

19  required to initiate court proceedings and make a showing in response to notice from a

20  prospective speaker of the speaker's intention to challenge a particular restriction on the

21  disclosure of the number of *aggregate* FISA requests received.  *Id.* ¶¶ 22, 42, 45, 65, 84.

22       For all of these reasons, Twitter continues to seek a declaratory judgment recognizing,

23  among other things, that "Twitter has a First Amendment right to release the entire [draft

24  Transparency] [R]eport publicly in unredacted form," that "[t]he FISA secrecy provisions are

25  facially unconstitutional under the First Amendment because," among other procedural defects,

26  "they do not require nondisclosure orders to contain a defined duration," and that "[a]ny

27  interpretation of FISA that prohibits publication of the unredacted Transparency Report is

28  unconstitutional."  *Id.* Prayer for Relief, ¶¶ A(ii), (iv), (v).  Additionally, Twitter continues to

3

1    seek injunctive relief "barring Defendants   . . . from prohibiting Twitter from [a] publishing

2    information redacted by Defendants from the draft Transparency Report that is not

3    [constitutionally] classified" or "[b] publishing similar information in future Transparency

4    Reports covering subsequent periods of time."  *Id.*, Prayer for Relief, ¶ C.

5            On November 22, 2016, Defendants moved for summary judgment, ECF No. 145,

6    relying principally on classified and unclassified declarations of then-Executive Assistant

7    Director Michael B. Steinbach ("Steinbach"), ECF No. 145-1.  On July 6, 2017, this Court

8    denied that motion, holding that "the declarations of Steinbach, both *in camera* and public, fail to

9    provide sufficient details indicating that the decision to classify the information in the Draft

10   Transparency Report was based on anything more specific than the reporting bands in section

11   1874 and the FBI's position that more granular information 'could be expected to harm national

12   security.'"  ECF No. 172, at 17.  This Court continued: "Without some more specific articulation

13   of the inference the Government believes can be drawn from the information Twitter itself seeks

14   to publish, even years later, the Court cannot find that the Government has met the high burden

15   to overcome a presumption that its restrictions are unconstitutional."  *Id.* at 18.  The Court

16   further determined that "[n]either the Government's classification decision nor the disclosure

17   reporting statute provide [the procedural] safeguards" mandated by *Freedman v. State of*

18   *Maryland*, 380 U.S. 51 (1965), with respect to prior restraints.  *Id.*  "[N]or do the FISA

19   nondisclosure provisions at issue provide for review that would encompass just the aggregate

20   volume data."  *Id.*

21          **Defendants' Statement of Facts**:  Pursuing and disrupting terrorist plots and foreign

22   intelligence operations often require the Federal Bureau of Investigation ("FBI") to seek

23   information relating to the use of electronic communications, including from electronic

24   communication service providers.  Congress has authorized the FBI to collect such information

25   with a variety of legal tools, including through various authorities under FISA and pursuant to

26   FISC supervision, as well as NSLs.  Because the subjects of national security investigations and

27   others who seek to harm the United States likely will take countermeasures to avoid detection,

28   secrecy is often essential to effective counterterrorism and counterintelligence investigations.

1    The Government therefore protects the confidentiality of information concerning its use of

2    national security legal process, including pursuant to statutory requirements and judicial orders

3    issued by the FISC.  Specifically, a FISA order or directive may impose nondisclosure

4    obligations on particular electronic communication service providers.  Likewise, the existence of

5    a request for information by NSL is typically subject to a nondisclosure requirement pursuant to

6    the NSL statute.

7           The Government is committed to facilitating transparency regarding companies' receipt

8    of process to the greatest extent possible consistent with the protection of national security.

9    Thus, pursuant to the USA FREEDOM Act of 2015, *see* Pub. L. No. 114-23, 129 Stat. 268 ("the

10   USA FREEDOM Act" or "the Act") and the accompanying declassification by the Director of

11   National Intelligence, recipients of national security legal process, including companies like

12   Plaintiff, can publish more aggregate data than ever before concerning national security legal

13   process they have received.  Plaintiff, nonetheless, seeks to reveal specific details regarding any

14   national security legal process received by plaintiff during, *inter alia*, the second half of 2013,

15   that go well beyond the disclosures permitted under the USA FREEDOM Act.  The Defendants

16   have informed Plaintiff which portions of the draft Transparency Report cannot lawfully be

17   published because they contain classified information, the disclosure of which could reasonably

18   be expected to cause harm to national security.  On November 17, 2014, Defendants provided

19   Plaintiff a version of the draft Transparency Report from which classified information had been

20   redacted.  On May 24, 2016, Plaintiff filed its Second Amended Complaint, *see* ECF No. 114,

21   alleging, *inter alia*, that information redacted from the draft Transparency Report is not properly

22   classified and that Plaintiff has a First Amendment right to publish it.[2]  The Defendants moved

23   for summary judgment on November 22, 2016, supporting the motion with a Classified

24   _____

25        [2] Plaintiff's original Complaint, ECF No. 1, had focused on a previous disclosure
     framework, and the Court held that the claims therein were mooted by the passage of the USA
26   FREEDOM Act.  *See* ECF No. 85.  The Court subsequently also dismissed the Plaintiff's First
     Amended Complaint, ECF No. 88, because the Plaintiff had not challenged the classification of
27   the information in the draft Transparency Report, and, in the absence of such a challenge,
     Plaintiff's constitutional claims were not viable. Order, ECF No. 113 at 8.

28

Federal Rule of Civil Procedure 26(f) Joint Report and
Joint Case Management Statement – Case No. 14-cv-4480-YGR

1   Declaration of the Executive Assistant Director of the National Security Branch of the FBI,

2   along with an Unclassified Declaration by the same official, which provides all of the

3   information in the Classified Declaration that can be shared with Twitter, the Court, or the public

4   in unclassified form.  On July 6, 2017, the Court denied Defendants' Motion for Summary

5   Judgment, concluding that "the Government has not yet made a sufficient showing" that the draft

6   Transparency Report cannot lawfully be published because it contains classified information,

7   disclosure of which could reasonably be expected to cause harm to national security.  The

8   Government subsequently sought reconsideration of that order based on the Ninth Circuit's

9   decision in *In re National Security Letter*, 863 F.3d 1110 (9th Cir. 2017) ("*In re NSL*"), and the

10  Court denied the Government's motion for reconsideration on November 28. 2017, *see* ECF No.

11  186.

12  **III.    LEGAL ISSUES**

13  **In Twitter's view, the principal disputed legal issues in this action are:**

14  - Whether Twitter is entitled to summary judgment on its First Amendment claim that the

15    Government's decision to prohibit Twitter from making disclosures about the aggregate

16    national security process Twitter receives that are more granular than the bands set forth

17    in the USA Freedom Act, violated (and continues to violate) the First Amendment.

18  - Whether the absence of any durational limitation and of other procedural safeguards in

19    the FISA secrecy provisions that the Government contends are applicable to aggregate

20    reporting on the number of FISA requests received renders those provisions

21    unconstitutional.

22  - Whether the absence of any durational limitation and of other procedural safeguards in

23    the USA Freedom Act renders that statute unconstitutional.

24  - Whether the absence of any mechanism under the FISA regime or the USA Freedom Act

25    for speakers to secure an individualized assessment of whether their specific, proposed

26    disclosures about aggregate national security process would likely pose a serious and

27    imminent threat to national security, renders that regime facially unconstitutional and

28    insufficiently tailored to pass strict scrutiny.

**Defendants assert that the principal legal issue in this action is:**

- Whether, if strict scrutiny applies, the Court has correctly applied that standard to conclude that the Government has not demonstrated that disclosure would be reasonably likely to harm national security.[3]

    No counter-claims have been filed in this lawsuit.

## IV.   MOTIONS

**Recent Motions:** On February 12, 2018, the Court granted in part and denied in part Twitter's request to compel additional responses to its first set of discovery requests, ordering the Government to respond to certain of Twitter's first set of discovery requests by March 5, 2018. *See* ECF No. 188.  On March 2, 2018, the Government moved to extend the time to respond to Twitter's first set of discovery requests.  ECF No. 189.  On March 6, 2018, Twitter filed a response to the Government's motion.  ECF No. 190.  On March 8, 2018, the Court granted the Government's motion in part, and, among other rulings, ordered Defendants to "produce to Twitter, and lodge with the Court, a sample of the responsive, unclassified documents and information responsive to Twitter's First Set of Discovery Requests no later than March 26, 2018."  ECF. No. 191.  In connection with complying with this directive, the Government moved for leave to file portions of its production under seal.  ECF No. 192.  Twitter did not oppose the motion, but specifically reserved its right to challenge any law enforcement privilege or confidentiality designations in accordance with the procedures and timeline set forth in the parties' Stipulated Protective Order, ECF No. 170, and to move at a later date to unseal any records with respect to which an objection is sustained by this Court.  See ECF No. 192 (¶ 6).

**Joint Statement:** The parties are currently engaged in a meet-and-confer process regarding discovery, and do not, at present, anticipate filing any specific motions until the submission of dispositive briefing following discovery.  If they cannot resolve discovery issues

---

[3] The Government respectfully does not agree that a challenge to a nondisclosure requirement imposed on the recipient of national security process must satisfy strict scrutiny and reserves the right to argue otherwise, as it has previously in this action, on a subsequent appeal.

1  regarding which they are conferring, or that arise in the course of discovery, they may seek the

2  Court's intervention.

3  **V.      AMENDMENT OF PLEADINGS**

4        The parties do not presently anticipate that any additional parties will be joined or that

5  further amendments to the pleadings will be necessary, but they reserve the right to make any

6  such amendments.

7  **VI.      EVIDENCE PRESERVATION**

8        Each party represents that it has instituted reasonable document retention procedures so

9  as to maintain relevant documents, electronic or otherwise, until this dispute is resolved.

10  **VII.      DISCLOSURES**

11        The parties exchanged initial disclosures in this matter on November 21, 2016.  The

12  parties then proceeded to negotiate a joint Stipulated Protective Order (ECF No. 170), which this

13  Court entered on March 27, 2017.  The Government thereafter provided Twitter with additional

14  documentation identified in its Rule 26(a)(1) disclosures in a letter dated March 27, 2017.

15  **VIII.      DISCOVERY**

16  **The Parties' Joint Statement Regarding Twitter's First Set of Discovery Requests**

17        In November 2016, Twitter served its first set of interrogatories and requests for

18  production, seeking both unclassified and classified information, and, with limited exceptions,

19  Defendants objected to those discovery requests.  The parties' disputes over the relevance of

20  such discovery were set forth in a Joint Letter Brief filed by the parties on February 17, 2017,

21  ECF No. 167.[4]  The Court granted in part and denied in part Twitter's requests for further

22  responses to their first set of discovery requests on February 12, 2018.  *See* ECF No. 188.

23  Following the Court's partial grant of Defendants' motion for extension of time, ECF No. 191

24

25

26        [4] Plaintiffs have also noticed the deposition of the Executive Assistant Director of the FBI
National Security Branch, the Government's declarant in support of its motion for summary
27  judgment.  However, the parties agreed to postpone the deposition to avoid the need to depose
him twice.
28

1 (March 8, 2018 Order), Defendants produced their sample production of responsive documents

2 on March 26, 2018.

3     The Court's March 8 Order further directed Defendants to propose a schedule for the

4 substantial completion of their production of documents responsive to the Plaintiff's first set of

5 discovery requests, as well as ordered the parties to meet and confer by March 30, 2018

6 "regarding the estimated production schedule and sample production." *See id.*  Defendants

7 submitted such a proposal on March 26, 2018, *see* ECF No. 193, and the parties conferred

8 regarding this proposal and other discovery matters on March 29, 2018.

9     Twitter does not object to Government's proposed production schedule for the remainder

10 of documents responsive to Twitter's First Set of Requests for Production (set forth in the

11 Government's March 26, 2018 Response to the Court's March 8, 2018 Order)—namely, that

12 Defendants will "complete [their] production of responsive, non-privileged materials from [their]

13 unclassified systems within three months," with "rolling productions to [Twitter to occur] on

14 April 26, May 25, and June 26."  ECF No. 193.  The parties have further agreed that the

15 Government will serve the unclassified privilege log mandated by the Court's February 12, 2018

16 order, ECF No. 188, within two weeks of the conclusion of its rolling production, or by July 10,

17 2018; and will complete its responses to Twitter's First Set of Interrogatories within thirty days

18 of the conclusion of its rolling production, or by July 26, 2018.

19     **Government's Position**

20     As set forth in the Government's March 26, 2018 submission, Defendants estimate that

21 the FBI can complete its production of responsive, non-privileged materials from its unclassified

22 systems within three months, and propose to continue providing monthly rolling productions to

23 the Plaintiff, on April 26, May 25 and June 26.  Although the parties are conferring regarding

24 ways to target more narrowly the scope of Defendants' search, FBI currently anticipates that,

25 during that timeframe, it will need to review for responsiveness over 34,000 documents (over

26 79,000 items, when email attachments are counted separately) from its unclassified enclave, and

27 to process for production and review for privilege any documents identified as responsive.  The

28

9

1    FBI is working diligently to complete these steps as quickly as practicable, but anticipates that it
2    will require until June 26, 2018 to do so.

3          As for potentially responsive classified materials, it appears that there are over 13,000
4    classified documents (over 41,000 items, when email attachments are counted separately)
5    requiring review from the Secret enclave.  In addition to the review for responsiveness and for
6    any other applicable privilege, such materials must undergo classification review by FBI subject-
7    matter experts to comply with the Order Granting in Part and Denying in Part Twitter's Motion
8    to Compel Discovery, ECF No. 188 (the "Discovery Order") that the Government produce any
9    unclassified portions of responsive classified materials, and to ensure that all information is
10   portion-marked at the appropriate level of classification.  ECF No. 189-1, Decl. of Deborah A.
11   Crum, Acting Section Chief of the Discovery Management Section of the FBI, Office of the
12   General Counsel ("Crum Decl.") ¶ 10.  Because it is currently not known how many potentially
13   responsive records ultimately will turn out to be responsive—and therefore will require
14   classification review—it is not possible for the FBI to estimate with any precision a timeframe
15   for the completion of this effort.  It appears that as long as nine months may be needed, given the
16   very limited number of FBI Office of General Counsel attorneys familiar with the relevant
17   subject matters and available to conduct the responsiveness review; the potential volume of the
18   set of documents to be subject to classification review; and the other demands on the time of the
     subject-matter experts who would be conducting the classification review.

19         Preparing a good faith time estimate for records from the Top Secret enclave is even
20   more difficult at this time, because, although the FBI has initiated its collection efforts on that
21   system, the search of that enclave has not yet been completed.  Once documents from the Top
22   Secret enclave are identified as responsive, they, like any responsive documents from the Secret
23   enclave, will need to undergo line-by-line review to ensure that any classified information is
24   appropriately protected.  In the absence of information regarding the volume of the potentially
25   responsive information in the Top Secret enclave, Defendants cannot, at this time, offer a good
26   faith estimate as to when their production of any unclassified materials from the Top Secret
     enclave will be completed.

27

28

1   Although Defendants cannot currently predict the precise amount of additional time that

2   the classification review process will add to discovery in this case, the necessity that each

3   document from the classified enclaves undergoes careful line-by-line review by subject-matter

4   experts means that this effort will require a significant period of time to complete.  Based on the

5   Defendants' collection efforts thus far, including review of potentially responsive materials as

6   well as conversations with custodians, it is evident that the overwhelming majority of potentially

7   responsive classified materials also will be materials that are protected from disclosure by the

8   work product or attorney-client privileges.  In these circumstances, Defendants believe that the

9   more efficient and faster course would be to address other potential privileges applicable to these

10  documents first—before review for classification.

11      Specifically, Defendants propose that for any documents from classified enclaves over

12  which Defendants assert a privilege that is *not* based on the documents' classification (for

13  example, work product privilege, or attorney client privilege), Defendants first would submit to

14  the Court (if necessary *in camera*, *ex parte*) a privilege log setting forth any privilege asserted

15  (other than any privilege related to the documents' classification), and the basis for the assertion.

16  Under this approach, the requirement that Defendants conduct a classification review would be

17  held in abeyance, and their right to assert any privilege related to the documents' classification

18  would be reserved until after the Court's examination of the other privilege(s) asserted over the

19  documents in question.

20      After Defendants submitted such a privilege log, the Court could resolve whether

21  documents may be protected from disclosure on the basis of those other privileges and, only if

22  not, would classification review proceed.  Permitting adjudication of any other privileges in this

23  way, before requiring the Government to determine whether it must withhold information based

24  on its classification (as would be the product of classification review), would allow the

25  Government to focus on identification of responsive documents, and on classification review of

26  any responsive documents, if any, that are not otherwise protected from disclosure, and to

27  provide any appropriately discoverable information to Plaintiff far more expeditiously than

28  otherwise would be possible.

---

1       The Government objects to Twitter's proposed approach of requiring a log of classified

2  documents to be produced simultaneously with the privilege log proposed above, as the creation

3  of a log enumerating what information in each document is withheld on classification grounds

4  and why necessarily requires the Government to undertake and complete the immensely

5  burdensome classification review process described above.  In light of the volume of potentially

6  responsive documents here, such a process could not be completed in 90 days, and, indeed,

7  would yield little benefit in moving the litigation forward since, as noted above, the

8  overwhelming majority of the classified materials are likely to be otherwise protected from

9  disclosure by other privileges.  The Government respectfully submits that proceeding by

10  removing from classification review, and the subsequent log of classified documents, any

11  materials that are protected from disclosure based on other privileges constitutes the best way to

12  expeditiously move this matter forward towards resolution.

13       **<u>Twitter's Position</u>**

14       Twitter objects to the Government's proposed approach for providing the required

15  information regarding responsive classified documents.   The Court's February 12, 2018 order

16  directed the Government to produce a log identifying—for every document or portion of a

17  document that the Government deems classified—the basis for the classification, the level of

18  classification, the date the classification determination was made, and the individual who made

19  the classification determination.  ECF No. 188.  Twitter has no quarrel with the Government's

20  suggestion for a sequential process that would confine the need for the Court to consider the

21  classification issues (including the validity of the classification and Twitter's counsel's right to

22  review any properly classified information) to those classified documents not protected by any

23  other potentially applicable privilege.  To that end, Twitter has no objection to the Government's

24  suggestion that it refrain from conducting a full-scale *declassification* review until *after* the

25  parties have identified the universe of classified documents that are not otherwise protected by

26  other privileges.

27       However, Twitter does not agree that such sequencing should relieve the Government of

28  its obligation, under the Court's February 12, 2018 order (ECF No. 188), to produce a log that

1   identifies the basis for the *current* level of classification of any document the Government

2   withholds on that basis, the date the classification decision was made, and the person who made

3   that decision.  Production of this information is prerequisite to the parties' ability to address—

4   and if necessary bring to the Court's attention—*any* issues related to the classified documents.

5   Assuming the Government is following its own classification guidelines, producing this

6   information should not require any of the time-consuming review procedures that the

7   Government describes herein.  Indeed, Section 1.6 of Executive Order 13526 requires the

8   Government to document, *"[a]t the time of original classification" and "in a manner that is*

9   *immediately apparent"*: (1) the "level[]" of classification; (2) "the identity, by name and position

10  … of the original classification authority"; and, *inter alia*, (3) "a concise reason for classification

11  that, at a minimum, cites the applicable classification categories in section 1.4 of this order."[5]

12  (emphasis added).  Thus, there is no reason why the Government could not promptly produce a

13  log containing this information.  And if this information is not readily available to the

14  Government with respect to certain responsive classified documents, that will raise serious

15  questions about whether those documents are properly classified and why they should not be

16  produced without further delay.

17       The Court's original order directed the Government to produce this classification log *and*

18  its privilege log by March 5, 2018.  ECF No. 188.  Twitter has attempted to accommodate the

19  Government's claimed need for more time by offering to extend the deadline to produce the

20  Court-ordered classification log—as well as the privilege log for classified documents—to July

21  9, 2018 (or 90 days from the case management conference).  Twitter's proposal to afford the

22  Government *four additional months* to satisfy the Court's order is far more than sufficient to

23  accommodate the burdens that should be associated with compiling information that should be

24

25

26  [5] Executive Order Section 1.4 lists eight "classification categories," and provides that
    information "shall not be considered for classification unless its unauthorized disclosure could
    reasonably be expected to cause identifiable or describable damage to national security … and it
27  pertains to," *e.g.*, "(a) military plans, weapons systems, or operations; (b) foreign government
    information; (c) intelligence activities … intelligence sources or methods, or cryptology …."

28

13

"immediately apparent" from the face of any classified document.  Twitter accordingly requests

an order directing the Government to produce a classification log by whatever date this Court

deems reasonable and no later than July 9, 2018.  Twitter further requests an order directing

Defendants to prepare privilege logs identifying and describing any privileges—including

deliberative process privilege, attorney-client privilege, and work product privilege—that

Defendants assert over materials collected from their classified systems, by July 9, 2018.

**Parties' Joint Statement Regarding Twitter's Second Set of Discovery Requests**

On February 5, 2018, Twitter served its second set of discovery requests on Defendants.

On March 9, 2018 and March 13, 2018, Defendants provided to Twitter their responses and

objections to Twitter's second set of discovery requests, including by producing documents

responsive to Twitter's requests for production.

The parties are not presently aware of any discovery disputes relating to Defendants'

responses to Twitter's second set of discovery requests, and will meet and confer to resolve any

issues should they arise.

**Parties' Joint Statement Regarding Twitter's Counsel's Applications for Security**
**Clearances & Access to Classified Discovery**

With respect to the Plaintiff's requests for classified material, the parties recognize that

Plaintiff's counsel cannot lawfully obtain classified discovery absent security clearances and a

"need-to-know."  *See* Exec. Order 13526 § 4.1 (a)(3).  In light of the Court's Order granting

Plaintiff's Motion for Order Directing Defendants to Initiate An Expedited Security Clearance

Process for Plaintiff's Counsel, the Government is processing the Plaintiff's counsel's national

security background check and has initiated a background investigation.

However, the Government has also informed Plaintiff's counsel that, even assuming

favorable determinations on those background checks, the Executive Branch has taken the

position that Plaintiff's counsel have no "need to know" any of the classified information either

sought in discovery or previously submitted by the Government to this Court, and thus

1   Government will not consent to their access to classified information in this case.[6]   The

2   Government notes that none of the case law cited by Plaintiff regarding the initiation of

3   background investigations *, see infra*, involved a challenge to a Government determination that

4   material could not be published because it was classified, granted discovery regarding a

5   classification decision, or resulted in the plaintiffs' counsel receiving access to classified

6   information.  *See* ECF No. 133 at 8–12 (discussing case law).

7        Twitter disagrees with the Government's position that its counsel has no "need to know"

8   classified information that is relevant to the current litigation, and anticipates seeking access to

9   classified information responsive to its discovery requests.  Indeed, Twitter believes the Court's

10  Order granting Plaintiff's Motion for an Order Directing Defendants to Initiate An Expedited

11  Security Clearance Process for Plaintiff's Counsel is at odds with the Government's categorical

12  denial of access to Twitter's counsel of any classified documents that may be responsive to its

13  discovery requests.  *See* ECF No. 172, at 21 ("The Government is **ORDERED** to move forward on

14  granting Twitter's lead counsel, Andrew J. Pincus and Lee H. Rubin, security clearances that

15  would permit review of relevant classified materials in this matter."); *see also* ECF No. 124

16  [Twitter Motion for an Order Directing Defendants to Initiate an Expedited Security Clearance],

17  3–4 (collecting cases in which courts have ordered the Government to initiate the security

18  clearance process for private counsel in civil cases so that, if eligible for clearance, counsel could

19  access and review classified material that was central to the underlying dispute).  In a related

20  vein, Twitter believes that any dispute regarding its counsel's right to access classified materials

21  will be more efficiently resolved in the context of particular documents (or categories of

22  documents) identified in the classified-documents log required by this Court's February 12, 2018

23  order.  ECF No. 188.

24

25  _____

26      [6] As the Government advised the Court in the parties' prior updated joint case
    management statement, the FBI has determined that no "need-to-know" exists on the part of
27  Plaintiff's counsel for actual access to classified information in this case.  *See* ECF No. 174 at 15
    (citing Exec. Order 13526 at § 6.11(dd)).
28

**A.  Preservation of Evidence**

Each party represents that it has instituted reasonable document retention procedures so as to maintain relevant documents, electronic or otherwise, until this dispute is resolved.

**B.  Protective Order**

The Court has entered a protective order agreed upon by the parties.  ECF No. 170.

**C.  Privilege and Privilege Logs**

As noted above, the parties have conferred and agreed that Defendants will produce privilege logs for materials from their unclassified systems within two weeks of the conclusion of their production of materials from those systems, and no later than July 10, 2018.

Defendants also have proposed, in their Response to the Court's March 8, 2018 Order, ECF No. 193, to prepare privilege logs identifying and describing any privileges—including deliberative process privilege, attorney-client privilege, and work product privilege—that Defendants assert over materials collected from their classified systems.   For the reasons explained above, Twitter believes that Government should produce this log, along with the classified-document log, no later than July 9, 2018.

As explained in the Government's position above, the Government cannot agree to Twitter's proposal to produce a log of classified documents by July 9, 2018.  The Government cannot produce a classified document log setting forth the documents or portions of documents withheld on the basis of their classification before undertaking classification review, a process during which subject-matter experts will review line-by-line documents identified as responsive to Twitter's requests.  Defendants submit that this matter would move forward substantially more efficiently if the privilege logs were staged as Defendants propose, and any otherwise-privileged documents were exempted from classification review.

**IX.    RELATED CASES**

There are no related cases pending before this Court or any other United States District Court or regional Circuit Court of Appeals.  Defendants assert that any proceedings before the Foreign Intelligence Surveillance Court that have resulted in or involved any orders or directives

1   to Twitter to produce information to the Government, or to refrain from publicly disclosing

2   information, are related to this action, if there are such proceedings.

3   **X.     RELIEF**

4          Twitter seeks declaratory and injunctive relief as outlined in the Second Amended

5   Complaint.  ECF No. 114.

6          Defendants deny that Plaintiff is entitled to the foregoing relief or to any relief in this

7   action.

8   **XI.     SETTLEMENT AND ADR**

9          The parties discussed Alternative Dispute Resolution during the Rule 26(f) conference.

10  Neither defendants nor Twitter believes that ADR would be appropriate at this time, given the

11  nature of the claims raised and the relief sought.  The parties have filed their ADR Certifications.

12  **XII.     NARROWING OF ISSUES**

13         The parties are conferring at this time regarding anticipated claims of privilege and other

14  discovery issues, in an effort to move the litigation forward more efficiently and minimize the

15  number of issues as to which the parties will need to seek the Court's assistance.

16  **XIII.     EXPEDITED TRIAL PROCEDURE**

17         The parties do not believe that this case is amenable to resolution through expedited trial

18  procedure.

19  **XIV.   SCHEDULING**

20         Defendants have set forth their proposed schedule and approach for discovery in their

21  response to the Court's March 8, 2018 Order, ECF No. 193.  Twitter has agreed to aspects of

22  Government's proposal, and has proposed a deadline of 90 days from the date of the CMC for

23  the Government to produce a classified documents log and privilege log for classified documents

24  (for the reasons explained above).

25         Twitter believes that after discovery has been completed, the Court should set deadlines

26  for the filing of any summary judgment motions.

27  **XIV.     TRIAL**

28

1    In Twitter's view, this case should be resolved by Twitter's motion for summary judgment

2    or at trial.

3    In Defendants' view, this case should be resolved based on a dispositive motion.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Federal Rule of Civil Procedure 26(f) Joint Report and
Joint Case Management Statement – Case No. 14-cv-4480-YGR

1  Agreed to and submitted by:

2  Dated: April 2, 2018                        CHAD A. READLER
3                                              Acting Assistant Attorney General

4                                              BRIAN STRETCH
                                               United States Attorney
5
                                               ANTHONY J. COPPOLINO
6                                              Deputy Branch Director

7                                                  /s/ Julia A. Berman*
8                                              JULIA A. BERMAN, Bar No. 241415
                                               Trial Attorneys
9                                              U.S. Department of Justice
                                               Civil Division, Federal Programs Branch
10                                             P.O. Box 883
                                               Washington, D.C. 20044
11                                             julia.berman@usdoj.gov

12
                                               *Attorneys for Defendants*
13
14 Dated: April 2, 2018                        MAYER BROWN LLP

15                                                 /s/ Lee H. Rubin
                                               ANDREW JOHN PINCUS (*Pro Hac Vice*)
16                                             apincus@mayerbrown.com
                                               1999 K Street, NW
17                                             Washington, DC 20006
                                               Telephone:    (202) 263-3220
18                                             Facsimile:    (202) 263-3300

19                                             MAYER BROWN LLP
                                               LEE H. RUBIN (SBN 141331)
20                                             lrubin@mayerbrown.com
                                               SAMANTHA BOOTH (SBN 298852)
21                                             sbooth@mayerbrown.com
                                               Two Palo Alto Square, Suite 300
22                                             3000 El Camino Real
                                               Palo Alto, CA 94306-2112
23                                             Telephone:    (650) 331-2000
                                               Facsimile:    (650) 331-2060
24
                                               *ATTORNEYS FOR PLAINTIFF*
25                                             TWITTER, INC.

26 *Pursuant to Local Civil Rule 5-1(i)(3), I, Julia Berman, attest that I obtained the concurrence of
27 Twitter's counsel, Lee Rubin, in the filing of this document.

28