JOSEPH H. HUNT
  Assistant Attorney General
ALEX G. TSE
  Acting United States Attorney
ANTHONY M. COPPOLINO
  Deputy Branch Director
JULIA A. HEIMAN Bar No. 241415
  Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
  P.O. Box 883
  Washington, D.C. 20044
  Telephone: (202) 616-8480
  Facsimile:  (202) 616-8470
  Email: Julia.Heiman@usdoj.gov
*Attorneys for Defendants*

MAYER BROWN LLP
LEE H. RUBIN (SBN 141331)
  lrubin@mayerbrown.com
SAMANTHA BOOTH (SBN 298852)
  sbooth@mayerbrown.com
  Two Palo Alto Square, Suite 300
  3000 El Camino Real
  Palo Alto, CA 94306-2112
  Telephone:   (650) 331-2000
  Facsimile:   (650) 331-2060
*Attorneys for Plaintiff Twitter, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| TWITTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW G. WHITAKER, Acting Attorney General of the United States,[1] UNITED STATES DEPARTMENT OF JUSTICE, CHRISTOPHER WRAY, Director of the Federal Bureau of Investigation, and THE FEDERAL BUREAU OF INVESTIGATION, <br><br> Defendants. | Case No. 14-cv-4480-YGR <br><br> **FOURTH UPDATED JOINT CASE MANAGEMENT CONFERENCE STATEMENT** <br><br> Case Management Conference <br><br> November 26, 2018 at 2:00 p.m. <br><br> Hon. Yvonne Gonzalez Rogers |

---

[1] Matthew G. Whitaker, the Acting Attorney General of the United States, is substituted as defendant in this action, pursuant to Fed. R. Civ. P. 25(d).

Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-10, and the Court's Standing Order in Civil Cases, ¶ 6, Plaintiff Twitter, Inc. ("Twitter") and Defendants Matthew G. Whitaker, the United States Department of Justice, Christopher Wray, and the Federal Bureau of Investigation, hereby submit this Updated Joint Report.[2]

## I. JURISDICTION AND SERVICE

Twitter asserts that this Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, and that this Court is authorized to provide declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and make determinations regarding the Administrative Procedure Act, 5 U.S.C. § 551, et seq. For reasons previously raised with the Court, Defendants maintain that Plaintiff is not entitled to relief under the Declaratory Judgment Act, or any other form of relief, but do not contest the Court's subject matter jurisdiction at this time.

Defendants have been served with the Summons and Complaint.

## II. FACTS

**Plaintiff Twitter's Statement of Facts**: On April 1, 2014, Twitter submitted a draft Transparency Report for Defendants' review with a request that Defendants identify which, if any, parts of its Transparency Report were classified. ECF No. 1, Ex. 3. Five months later, Defendants informed Twitter that "information contained in the [transparency] report is classified and cannot be publicly released" because it did not conform to the pre-approved reporting framework articulated in a January 27, 2014 letter from Deputy Attorney General James M. Cole ("the DAG letter"). ECF No. 1, Ex. 5. On November 17, 2014, Defendant released an "unclassified copy of [Twitter's] proposed report," which excised all quantitative

---

[2] The parties submitted an initial joint case management statement pursuant to Civil Local Rule 16-9 on January 20, 2015. ECF No. 29. The parties also submitted updated joint case management statements pursuant to Civil Local Rule 16-10 on October 18, 2016, August 7, 2017, and April 2, 2018. As with the prior updated joint case management statements, because this statement is submitted pursuant to Civil Local Rule 16-10, and in order to conserve space, the parties have not addressed every element required in an initial case management statement submitted under Civil Local Rule 16-9 and this Court's Standing Order for all Judges.

1

data regarding Twitter's receipt of national security process to the extent that data was more granular than permitted under the broad reporting bands in the DAG Letter.

The underlying facts at issue in this litigation have not changed since the initial case management statement. Twitter continues to allege that Defendants' restriction on Twitter's ability to make granular, aggregate disclosures about its receipt of security process—both in its 2013 draft Transparency Report and "in future Transparency Reports covering subsequent periods of time"—violates the First Amendment. ECF No. 114, at ¶ 86; *see also id.* ¶¶ 7, 56, 89, 91. Twitter has alleged that, given its large user base, the application of any statutory scheme or Government policy in a manner that prohibits Twitter from making granular, aggregate disclosures about its receipt of national security process cannot be justified as narrowly tailored under governing First Amendment standards to preventing harm to national security and is therefore unconstitutional as applied to Twitter. *Id.* at ¶ 8, 11, 12, 45, 59, 79. Twitter has further alleged that the restrictions on its speech are unconstitutional to the extent predicated on FISA's secrecy provisions, because, on its face, the FISA regime lacks the procedural safeguards required for any system of prior restraint. *Id.* ¶¶ 17, 45, 84. The FISA regime permits the application of nondisclosure obligations of unlimited duration, without any clear avenue for periodic re-review. *Id.* ¶¶ 9, 10. Moreover, the FISA regime (even when coupled with the USA FREEDOM Act) lacks any procedural mechanism under which the Government would be required to initiate court proceedings and make a showing in response to notice from a prospective speaker of the speaker's intention to challenge a particular restriction on the disclosure of the number of *aggregate* FISA requests received. *Id.* ¶¶ 22, 42, 45, 65, 84.

For all of these reasons, Twitter continues to seek a declaratory judgment recognizing, among other things, that "Twitter has a First Amendment right to release the entire [draft Transparency] [R]eport publicly in unredacted form," that "[t]he FISA secrecy provisions are facially unconstitutional under the First Amendment because," among other procedural defects, "they do not require nondisclosure orders to contain a defined duration," and that "[a]ny interpretation of FISA that prohibits publication of the unredacted Transparency Report is

1  unconstitutional." *Id.* Prayer for Relief, ¶¶ A(ii), (iv), (v).  Additionally, Twitter continues to
2  seek injunctive relief "barring Defendants . . . from prohibiting Twitter from [a] publishing
3  information redacted by Defendants from the draft Transparency Report that is not
4  [constitutionally] classified" or "[b] publishing similar information in future Transparency
5  Reports covering subsequent periods of time." *Id.*, Prayer for Relief, ¶ C.
6       On November 22, 2016, Defendants moved for summary judgment, ECF No. 145,
7  relying principally on classified and unclassified declarations of then-Executive Assistant
8  Director Michael B. Steinbach ("Steinbach"), ECF No. 145-1.  On July 6, 2017, this Court
9  denied that motion, holding that "the declarations of Steinbach, both *in camera* and public, fail to
10 provide sufficient details indicating that the decision to classify the information in the Draft
11 Transparency Report was based on anything more specific than the reporting bands in section
12 1874 and the FBI's position that more granular information 'could be expected to harm national
13 security.'"  ECF No. 172, at 17.  This Court continued: "Without some more specific articulation
14 of the inference the Government believes can be drawn from the information Twitter itself seeks
15 to publish, even years later, the Court cannot find that the Government has met the high burden
16 to overcome a presumption that its restrictions are unconstitutional." *Id.* at 18.  The Court
17 further determined that "[n]either the Government's classification decision nor the disclosure
18 reporting statute provide [the procedural] safeguards" mandated by *Freedman v. State of*
19 *Maryland*, 380 U.S. 51 (1965), with respect to prior restraints.  *Id.*  "[N]or do the FISA
20 nondisclosure provisions at issue provide for review that would encompass just the aggregate
21 volume data." *Id.*
22       On February 12, 2018, the Court granted in part Twitter's motion to compel further
23 responses to its first set of requests for discovery, overruling the Government's relevance
24 objections *in toto* and compelling further responses to most of Twitter's requests.  Dkt. No. 188.
25 Pursuant to a series of joint stipulations adopted by this Court, *see* Dkt. Nos. 200, 221, 231, 235,
26 the Government has made numerous supplemental productions of (almost completely) redacted
27 documents, served extensive logs reflecting their privilege claims over responsive documents
28

3

located in the unclassified and SECRET classified enclaves, and supplemented their responses to Twitter's Interrogatories, Set One.  Throughout this time, the parties have engaged in ongoing meet-and-confer efforts to discuss Twitter's concerns regarding the breadth of the Government's privilege assertions as well as other discovery issues that have arisen during the course of the Government's production of documents and privilege logs.  The Order denying summary judgment also directed the Government to initiate an expedited security clearance review for Twitter's lead counsel, Lee H. Rubin.  Dkt. No. 172.  On September 17, 2018, the Department of Justice informed Mr. Rubin that his background investigation had been "favorably adjudicated," but that security clearance would be granted only if the Government determines that Mr. Rubin has a "need to know" the specified classified information in this case.

**Defendants' Statement of Facts**:  Pursuing and disrupting terrorist plots and foreign intelligence operations often require the Federal Bureau of Investigation ("FBI") to seek information relating to the use of electronic communications, including from electronic communication service providers.  Congress has authorized the FBI to collect such information with a variety of legal tools, including through various authorities under FISA and pursuant to FISC supervision, as well as NSLs.  Because the subjects of national security investigations and others who seek to harm the United States likely will take countermeasures to avoid detection, secrecy is often essential to effective counterterrorism and counterintelligence investigations.  The Government therefore protects the confidentiality of information concerning its use of national security legal process, including pursuant to statutory requirements and judicial orders issued by the FISC.  Specifically, a FISA order or directive may impose nondisclosure obligations on particular electronic communication service providers.  Likewise, the existence of a request for information by NSL is typically subject to a nondisclosure requirement pursuant to the NSL statute.

The Government is committed to facilitating transparency regarding companies' receipt of process to the greatest extent possible consistent with the protection of national security.  Thus, pursuant to the USA FREEDOM Act of 2015, *see* Pub. L. No. 114-23, 129 Stat. 268 ("the

USA FREEDOM Act" or "the Act") and the accompanying declassification by the Director of National Intelligence, recipients of national security legal process, including companies like Plaintiff, can publish more aggregate data than ever before concerning national security legal process they have received. Plaintiff, nonetheless, sought to reveal specific details regarding any national security legal process received by plaintiff during, *inter alia*, the second half of 2013, that went well beyond the disclosures permitted at that time and the disclosures later permitted under the USA FREEDOM Act. The Defendants informed Plaintiff which portions of the draft Transparency Report could not lawfully be published because they contained classified information, the disclosure of which could reasonably be expected to cause harm to national security. On November 17, 2014, Defendants provided Plaintiff a version of the draft Transparency Report from which classified information had been redacted. On May 24, 2016, Plaintiff filed its Second Amended Complaint, *see* ECF No. 114, alleging, *inter alia*, that information redacted from the draft Transparency Report was not properly classified and that Plaintiff had a First Amendment right to publish it.[3] The Defendants moved for summary judgment on November 22, 2016, supporting the motion with a Classified Declaration of the Executive Assistant Director of the National Security Branch of the FBI, along with an Unclassified Declaration by the same official, which provides all of the information in the Classified Declaration that can be shared with Twitter, the Court, or the public in unclassified form. On July 6, 2017, the Court denied Defendants' Motion for Summary Judgment, concluding that "the Government has not yet made a sufficient showing" that the draft Transparency Report cannot lawfully be published because it contains classified information, disclosure of which could reasonably be expected to cause harm to national security. The

---

[3] Plaintiff's original Complaint, ECF No. 1, had focused on a previous disclosure framework, and the Court held that the claims therein were mooted by the passage of the USA FREEDOM Act. *See* ECF No. 85. The Court subsequently also dismissed the Plaintiff's First Amended Complaint, ECF No. 88, because the Plaintiff had not challenged the classification of the information in the draft Transparency Report, and, in the absence of such a challenge, Plaintiff's constitutional claims were not viable. Order, ECF No. 113 at 8.

1  Government subsequently sought reconsideration of that order based on the Ninth Circuit's
2  decision in *In re National Security Letter*, 863 F.3d 1110 (9th Cir. 2017) ("*In re NSL*"), and the
3  Court denied the Government's motion for reconsideration on November 28. 2017, *see* ECF No.
4  186. The case then proceeded to discovery, which is currently ongoing, as set forth in Section
5  VIII below.[4]

6  **III. LEGAL ISSUES**

7  **In Twitter's view, the principal disputed legal issues in this action are:**

- Whether Twitter is entitled to summary judgment on its First Amendment claim that the Government's decision to prohibit Twitter from making disclosures about the aggregate national security process Twitter receives that are more granular than the bands set forth in the USA Freedom Act, violated (and continues to violate) the First Amendment.

- Whether the absence of any durational limitation and of other procedural safeguards in the FISA secrecy provisions that the Government contends are applicable to aggregate reporting on the number of FISA requests received renders those provisions unconstitutional.

- Whether the absence of any durational limitation and of other procedural safeguards in the USA Freedom Act renders that statute unconstitutional.

- Whether the absence of any mechanism under the FISA regime or the USA Freedom Act for speakers to secure an individualized assessment of whether their specific, proposed disclosures about aggregate national security process would likely pose a serious and

---

[4] The Government's view remains that none of the discovery now being pursued by Plaintiff is appropriate, and that the extensive and costly burdens of that discovery are improper. The core issue in this case – the national security harm that reasonably could be expected from the disclosure of Twitter's draft Transparency Report – should have been resolved by reference to the declarations previously submitted by the Government from an original classification authority (OCA), as no document or information sought in discovery can or will supersede that OCA's judgment regarding the national security. Summary judgment should have been entered—for or against the Government – based on that prior showing. If discovery continues, and there is a motion to compel disclosure of classified information, such a motion may require an assertion of the state secrets privilege and the Government may seek dismissal on that basis if necessary.

imminent threat to national security, renders that regime facially unconstitutional and insufficiently tailored to pass strict scrutiny.

**Defendants assert that the principal legal issue in this action is:**

- Whether, if strict scrutiny applies, the Court has correctly applied that standard to conclude that the Government has not demonstrated that disclosure would be reasonably likely to harm national security.[5]

No counter-claims have been filed in this lawsuit.

## IV.   MOTIONS

**Twitter's Statement Regarding Forthcoming Motions:**

1. <u>Motion for Access to Classified Materials</u>. As set forth above, Twitter previously moved for—and the Court granted—Twitter's motion for an order directing the Government to initiate expedited security clearance for Twitter's lead counsel. *See* Dkt. No. 172, at 21 ("The Government is Ordered to move forward on granting Twitter's lead counsel … Lee H. Rubin, security clearances that would permit review of relevant classified materials in this matter."). Given the Government's recent favorable adjudication of Mr. Rubin's background investigation for security clearance, as well as the Government's ongoing reliance on its classified Steinbach submission, *see, e.g.*, *supra*, n. 4, Twitter presently intends to move the Court for an order granting Twitter's cleared counsel access to Defendants' classified submission.

Twitter does not believe that the Government has exclusive authority to determine whether Twitter has a legal right to access the Defendants' classified submission or other relevant classified materials. At a minimum, given the Government's reliance on its classified submission to justify classification of the redacted portions of Twitter's draft Transparency Report, fundamental principles of due process require providing Twitter's counsel—whose national security background investigation has been "favorably adjudicated"—access to the Defendants' classified submission. Indeed, Twitter believes the Court's Order granting

---

[5] The Government respectfully does not agree that a challenge to a nondisclosure requirement imposed on the recipient of national security process must satisfy strict scrutiny and reserves the right to argue otherwise, as it has previously in this action, on a subsequent appeal.

7

1  Plaintiff's Motion for an Order Directing Defendants to Initiate An Expedited Security Clearance
2  Process for Plaintiff's Counsel is at odds with the Government's denial of access to Twitter's
3  counsel of Defendants' classified submission or categorical refusal to disclose classified
4  documents that may be responsive to its discovery requests.  *See* ECF No. 172, at 21 [Order]; *see*
5  *also* ECF No. 124 [Twitter Motion for an Order Directing Defendants to Initiate an Expedited
6  Security Clearance], 3–4 (collecting cases in which courts have ordered the Government to
7  initiate the security clearance process for private counsel in civil cases so that, if eligible for
8  clearance, counsel could access and review classified material that was central to the underlying
9  dispute).[6]

10       2. <u>Possible Privilege Challenge</u>.  In addition, Twitter is currently continuing to
11 review Defendants' most recent productions and voluminous privilege logs from Defendants'
12 unclassified enclave to determine whether it will be challenging Defendants' broad privilege
13 claims.  The Government only recently completed production of its unclassified DOJ privilege
14 logs on November 5, 2018, served its supplemental responses to Twitter's first set of
15 Interrogatories on November 13, 2018, and produced the last tranche of unclassified materials
16 responsive to Twitter's first set of requests for production on November 16, 2018.  Moreover, it
17 is Twitter's understanding that both logs and documents from the FBI's unclassified systems are
18 still forthcoming.  As a result of the Government's numerous extension requests, Twitter has not
19 had an opportunity (as of the date of this case management statement) to fully review all the
20 materials necessary to determine whether it will challenge the Government's privilege claims
21 and, if so, the likely scope of any such challenge.  However, Twitter will be prepared to advise
22 the Court of its position on these issues at the November 26, 2018 case management conference.
23       3. <u>Motion for Summary Judgment</u>.  Finally, Twitter intends to bring a dispositive
24 motion upon the conclusion of discovery, specifically after the production of any remaining

---

[6] Twitter reserves the right to seek review of any classified discovery after the Court adjudicates Twitter's motion to grant Twitter's cleared counsel access to Defendants' classified submission.  Twitter's counsel's review of the classified submission is likely to materially impact its view of what other classified information, if any, is needed to complete discovery in the case.

8

1  documents and the disposition of any Twitter motion to compel production of documents over
2  which the Government is asserting a privilege and Twitter's anticipated motion to obtain access
3  to the Defendants' classified submission.

4  **Defendants' Statement Regarding Forthcoming Motion:**

5  With respect to the Plaintiff's requests for classified material, it is the Government's
6  position that Plaintiff's counsel cannot lawfully access classified discovery absent security
7  clearances and an Executive Branch determination of a "need-to-know." *See* Exec. Order 13526
8  § 4.1 (a)(3). In light of the Court's Order granting Plaintiff's Motion for Order Directing
9  Defendants to Initiate An Expedited Security Clearance Process for Plaintiff's Counsel, the
10 Government has completed Plaintiff's counsel's background investigation. Counsel's
11 background investigation has been favorably adjudicated.

12 However, the Government has also concluded that, irrespective of favorable
13 determinations on Counsel's background investigation, Plaintiff's counsel have no "need-to-
14 know" any of the classified information either sought in discovery or previously submitted by the
15 Government to this Court, and thus Government will not consent to their access to classified
16 information in this case.[7] *See* ECF No. 175-1, ¶ 8. The Government notes that none of the case
17 law cited by Plaintiff regarding the initiation of background investigations, *see infra*, involved a
18 challenge to a Government determination that material could not be published because it was
19 classified, granted discovery regarding a classification decision, or resulted in the plaintiffs'
20 counsel receiving access to classified information. *See* ECF No. 133 at 8–12 (discussing case
21 law). The Government's position is that an order that classified information be disclosed to
22 Plaintiffs' counsel would be subject to immediate appeal.

23 With respect to Plaintiff's contemplated motion for access to classified materials, to the
24 extent Plaintiff will be seeking the disclosure of classified information to Plaintiff or Plaintiff's

---

[7] As the Government advised the Court in the parties' prior updated joint case management statement, the FBI has determined that no "need-to-know" exists on the part of Plaintiff's counsel for actual access to classified information in this case. *See* ECF No. 174 at 15 (citing Exec. Order 13526 at § 6.11(dd)).

9

counsel, the Government will need to consider whether to assert the state secrets privilege in response to that motion.[8]

## V. AMENDMENT OF PLEADINGS

The parties do not presently anticipate that any additional parties will be joined or that further amendments to the pleadings will be necessary, but they reserve the right to make any such amendments.

## VI. EVIDENCE PRESERVATION

Each party represents that it has instituted reasonable document retention procedures so as to maintain relevant documents, electronic or otherwise, until this dispute is resolved.

## VII. DISCLOSURES

The parties exchanged initial disclosures in this matter on November 21, 2016. The parties then proceeded to negotiate a joint Stipulated Protective Order (ECF No. 170), which this Court entered on March 27, 2017. The Government thereafter provided Twitter with additional documentation identified in its Rule 26(a)(1) disclosures in a letter dated March 27, 2017.

## VIII. DISCOVERY

**Joint Statement Regarding Progress to Date on Twitter's First Set of Discovery Requests**:

In November 2016, Twitter served its first set of interrogatories and requests for production, seeking both unclassified and classified information, and, with limited exceptions, Defendants objected to those discovery requests. The parties' disputes over the relevance of such discovery were set forth in a Joint Letter Brief filed by the parties on February 17, 2017, ECF No. 167. The Court granted in part and denied in part Twitter's requests for further responses to their first set of discovery requests on February 12, 2018. *See* ECF No. 188. Since that time, Defendants have been working to respond to Plaintiff's First Set of Discovery

---

[8] Under the Attorney General's policy, consideration of whether to assert the state secrets privilege requires review and consideration by several high-level Government officials. *See* Mem. from Attorney Gen. to Heads of Executive Dep'ts and Agencies on Policies and Procedures Governing Invocation of the States Secrets Privilege (Sept. 23, 2009).

1  Requests, and, since April 20, 2018, have submitted bi-weekly status reports summarizing their
2  progress.  *See*, *e.g.*, ECF Nos. 201, 204, 207.  Since August 28, 2018, these status reports have
3  also typically included joint submissions regarding the status of the parties' discovery disputes
4  and meet-and-confer efforts.  *Cf.* Dkt. No. 225 (Court Order so requiring); 226, 229, 232 (status
5  reports).  On May 26, 2018, Defendants produced FBI's log for classified documents from FBI's
6  SECRET enclave, consisting of four volumes addressing email and attachments, comprising over
7  700 pages, as well as two additional logs addressing Instant Messages and electronic documents.

8        Defendants then turned to reviewing and processing for production materials from their
9  unclassified systems.  After several productions, it became apparent that—with limited
10 exceptions—all substantive material from the documents being produced in discovery was
11 redacted.  In an effort to facilitate resolution of Twitter's concerns over Defendants' extensive
12 privilege claims, and to avoid time-consuming and unnecessary production of material that did
13 not materially advance the exchange of information in this action, the parties stipulated to
14 accelerate the production of Defendants' unclassified privilege logs ahead of the completion of
15 their document productions, and to limit Defendants' final production to documents containing at
16 least some non-redacted, substantive material.  *See* ECF No. 233.  The Court granted the parties'
17 stipulated request and set a new schedule on October 10, 2018.  *See* ECF No. 235.  Defendants
18 have largely abided by that schedule with the exception of two further extensions, which it
19 sought and received to complete the production of the final portion of DOJ's privilege log. *See*
20 Dkt. Nos. 238, 242.  Defendants accordingly produced sections from their privilege log for
21 materials from the DOJ's unclassified systems on October 12, October 26, and November 5.
22 DOJ's log consisted of nine volumes totaling almost 2,500 pages.  Although the FBI has
23 encountered difficulties completing its privilege log for materials from its unclassified systems,
24 as a family medical emergency required the attorney primarily responsible for this case to remain
25 out of the office for a substantial portion of the last several weeks, FBI has nearly completed its
26 log and will be producing that log to Twitter by November 20, 2018.

27
28

11

Additionally, on Friday, November 16, 2018, Defendants completed their production of materials from unclassified systems, consistent with the parties' agreement that only those materials with substantive information that has not been redacted should be produced. *See* ECF No. 235 at 2 (ordering such production based on the parties' stipulated request). In total, FBI and DOJ have produced over 29,000 pages of materials to Plaintiff.

Furthermore, on November 13, 2018, Defendants produced their supplemental responses to Plaintiff's First Set of Interrogatories.

After the forthcoming production of FBI's privilege log, Defendants will have completed their responses to Plaintiff's First Set of Discovery Requests with respect to materials from their unclassified systems.

**Joint Statement Regarding Forthcoming Discovery:**

As to Defendants' review and production of logs for materials on their remaining classified systems, apart from FBI's SECRET enclave for which FBI produced logs in May 2018, Defendants have advised Twitter that a substantial amount of time will be required to complete this effort unless the parties can agree to narrow the scope of documents deemed responsive and subject to review. This is due to both the volume of the documents and their sensitivity, which substantially limits the number of individuals who can review them for responsiveness, or assist in the logging effort.[9] In light of these limitations, DOJ and FBI propose that they complete their initial review of materials from their remaining classified systems by the end of March, reporting their progress to the Court in bi-weekly status reports as before. Defendants then propose to produce their privilege logs on a rolling basis, every two

---

[9] In addition, certain limitations on the FBI's ability to electronically search for responsive information in its TOP SECRET enclave have resulted in identification within the material collected of a substantial volume of information which will likely not be responsive, but which determination requires a document-by-document review by FBI, Office of the General Counsel (OGC) personnel. Although a team of over a dozen people in FBI OGC were able to devote months to the review and processing of materials from the FBI's unclassified enclave, only limited FBI OGC personnel possess the requisite clearance to access the TOP SECRET enclave.

weeks, with approximately 1,000 documents getting logged in each volume, until the items identified as responsive in the initial review all have been logged.

Twitter is concerned about significantly extending the timeline for completion of discovery in this case, but anticipates it can reach agreement with Defendants to narrow the scope of the additional logs that need to be produced from the Top Secret materials.

To that end, Twitter concurs in Defendants' request that the Court permit them to confer further regarding a proposal for the Top Secret enclave, and to submit a stipulated request for a schedule (if they are able to reach agreement), or to notify the Court that an agreement could not be reached, if that is the case, by December 10 (this would be two weeks after the case management conference).

**Joint Statement Regarding Twitter's Second Set of Discovery Requests:**

On February 5, 2018, Twitter served its second set of discovery requests on Defendants. On March 9, 2018 and March 13, 2018, Defendants provided to Twitter their responses and objections to Twitter's second set of discovery requests, including by producing documents responsive to Twitter's requests for production. The parties have conferred regarding Defendants' responses, and Defendants agreed to provide a supplement to one of its responses to an interrogatory in Twitter's Second Set of Discovery Requests.

### A. Preservation of Evidence

Each party represents that it has instituted reasonable document retention procedures so as to maintain relevant documents, electronic or otherwise, until this dispute is resolved.

### B. Protective Order

The Court has entered a protective order agreed upon by the parties. ECF No. 170.

## IX. RELATED CASES

There are no related cases pending before this Court or any other United States District Court or regional Circuit Court of Appeals. Defendants assert that any proceedings before the Foreign Intelligence Surveillance Court that have resulted in or involved any orders or directives

to Twitter to produce information to the Government, or to refrain from publicly disclosing information, are related to this action, if there are such proceedings.

## X. RELIEF

Twitter seeks declaratory and injunctive relief as outlined in the Second Amended Complaint. ECF No. 114.

Defendants deny that Plaintiff is entitled to the foregoing relief or to any relief in this action.

## XI. SETTLEMENT AND ADR

The parties discussed Alternative Dispute Resolution during the Rule 26(f) conference. Neither Defendants nor Twitter believes that ADR would be appropriate at this time, given the nature of the claims raised and the relief sought. The parties have filed their ADR Certifications.

## XII. NARROWING OF ISSUES

The parties have engaged in an extensive meet and confer process to try to narrow the issues as to which the parties will need to seek the Court's assistance. Thus far, they have reached agreement on a number of discovery-related matters, as reflected in their joint prior submissions to the Court. *See*, *e.g.*, ECF No. 233 (joint stipulation regarding discovery). They continue to work together to determine the best way to move the case forward as to the remaining classified materials for which privilege logs are required.

## XIII. EXPEDITED TRIAL PROCEDURE

The parties do not believe that this case is amenable to resolution through expedited trial procedure.

## XIV. SCHEDULING

As set forth in Section VIII above, Defendants have proposed a schedule for the review of their remaining classified materials, as well as the production of privilege logs for those documents. In the alternative, Defendants have proposed a means of narrowing the documents to be reviewed to focus on those that might be of the greatest interest to Twitter, in an effort to more expeditiously move the matter forward. Twitter is considering Defendants' proposal, and

the parties respectfully propose to submit a stipulated schedule for the completion of discovery to the Court by December 10, 2018, or to notify the Court at that time if an agreement cannot be reached.

Twitter believes that after discovery has been completed, the Court should set deadlines for the filing of any summary judgment motions.

## XIV. TRIAL

In Twitter's view, this case should be resolved by Twitter's motion for summary judgment or at trial.

In Defendants' view, this case should be resolved based on a dispositive motion.

1  Agreed to and submitted by:

2  Dated: November 19, 2018

3  

JOSEPH H. HUNT
Assistant Attorney General

ALEX G. TSE
Acting United States Attorney

ANTHONY J. COPPOLINO
Deputy Branch Director

 */s/ Julia A. Heiman*
JULIA A. HEIMAN, Bar No. 241415
Senior Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
julia.heiman@usdoj.gov

*Attorneys for Defendants*

Dated:  November 19, 2018

MAYER BROWN LLP

 */s/ Lee H. Rubin*
ANDREW JOHN PINCUS (*Pro Hac Vice*)
apincus@mayerbrown.com
1999 K Street, NW
Washington, DC 20006
Telephone:    (202) 263-3220
Facsimile:      (202) 263-3300

MAYER BROWN LLP
LEE H. RUBIN (SBN 141331)
lrubin@mayerbrown.com
SAMANTHA BOOTH (SBN 298852)
sbooth@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone:    (650) 331-2000
Facsimile:      (650) 331-2060

*ATTORNEYS FOR PLAINTIFF*
TWITTER, INC.

*Pursuant to Local Civil Rule 5-1(i)(3), I, Julia Heiman, attest that I obtained the concurrence of Plaintiff's counsel in the filing of this document.

16