JOSEPH H. HUNT
Assistant Attorney General
ALEX G. TSE
Acting United States Attorney
ANTHONY J. COPPOLINO
Deputy Branch Director
JULIA A. HEIMAN
Senior Counsel
CHRISTOPHER HEALY
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 616-8480
Facsimile:  (202) 616-8470
Email: julia.heiman@usdoj.gov

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWITTER, INC., | Case No. 14-cv-4480-YGR |
| Plaintiff, | |
| v. | |
| MATTHEW G. WHITAKER, Acting Attorney General of the United States, *et al.*, | **DEFENDANTS' RESPONSE TO THE COURT'S NOVEMBER 26, 2018 ORDER** |
| Defendants. | Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

I.     INTRODUCTION .......................................................................................... 1

II.    PROCEDURAL BACKGROUND .................................................................. 3

III.   ARGUMENT ............................................................................................... 7

    A.    The Constitutional Authority to Control Access to Classified
          Information is Vested in the Executive Branch ....................................... 7

    B.    The Court Should Resolve the Merits of the Case Based on the
          Unclassified Record and the Government's *Ex Parte*, *In Camera*
          Submission Which Demonstrates That Disclosure of the Information
          Twitter Seeks to Publish Reasonably Could Be Expected to Cause
          Serious Damage to the National Security of the United States ............... 9

    C.    The Government Has Initiated the Process of Considering Whether to
          Assert the State Secrets Privilege to Protect the Classified Information
          at Issue Here ....................................................................................... 12

IV.    CONCLUSION ........................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**                                              **PAGE(S)**

*Admiral Ins. Co. v. U.S. Dist. Court*,
  881 F.2d 1486 (9th Cir. 1989) .................................................................. 8

*Al- Haramain Islamic Found., Inc. v. Bush*,
  507 F.3d 1190 (9th Cir. 2007) ................................................................ 14

*Boening v. CIA*,
  579 F. Supp. 2d 166 (D.D.C. 2008) ........................................................ 9

*In re Copley Press, Inc.*,
  518 F.3d 1022 (9th Cir. 2008) .................................................................. 8

*Dep't of Navy v. Egan*,
  484 U.S. 518 (1988) .................................................................. 1, 7, 8

*Doe v. CIA*,
  576 F.3d 95 (2d Cir. 2009) ...................................................................... 14

*Dorfmont v. Brown*,
  913 F.2d 1399 (9th Cir. 1990) ............................................................. 7, 8

*El-Masri v. Tenet*,
  437 F. Supp. 2d 530 (E.D. Va. 2006) .................................................... 13

*El-Masri v. United States*,
  479 F.3d 296 (4th Cir. 2009) ................................................................. 14

*Fazaga v. F.B.I.*,
  884 F. Supp. 2d 1022 (C.D. Cal. 2012) ................................................. 13

*Gardels v. CIA*,
  689 F.2d 1100 (D.C. Cir. 1982) ............................................................. 11

*Gen. Dynamics Corp. v. United States*,
  563 U.S. 478 (2011) .................................................................................. 1

*Halperin v. Nat'l Sec. Council*,
  452 F. Supp. 47 (D.D.C. 1978) ............................................................... 11

*Kasza v. Browner*,
  133 F.3d 1159 (9th Cir. 1998) ..................................................... 2, 13, 15

*Mohamed v. Jeppesen Dataplan, Inc.*,
    614 F.3d 1070 (9th 2010) ................................................................ 2, 13, 14, 15

*In re NSL*,
    863 F.3d 1110 (9th Cir. 2017) ................................................................ 5

*In re: Nat'l Sec. Letter*,
    930 F. Supp. 2d 1064 (N.D. Cal. 2013) ................................................. 2, 9

*United States v. Reynolds*,
    345 U.S. 1 (1953) ................................................................ 2, 13

*Shaffer v. DIA*,
    102 F. Supp. 3d 1 (D.D.C. 2015) ................................................... 9

*Snepp v. United States*,
    444 U.S. 507 (1980) ................................................................ 10

*Stillman v. CIA*,
    319 F.3d 546 (D.C. Cir. 2003) .......................................................... *passim*

*United States v. Nixon*,
    418 U.S. 683 (1974) ................................................................ 13

*Wilson v. CIA*,
    586 F.3d 171 (2d Cir. 2009) ................................................... 10


**UNITED STATES CONSTITUTION**

U.S. Const., Art. II, § 2 ................................................................ 7


**OTHER AUTHORITIES**

Exec. Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) ............................ 1, 6, 7, 8

## I.       INTRODUCTION

In November 2016, in an effort to facilitate adjudication of Plaintiff's First Amendment claims—and having been ordered to come forward with any *ex parte* submission they might wish to make, or risk preclusion—Defendants submitted the Classified Declaration of FBI Executive Assistant Director ("EAD") Steinbach in support of their motion for summary judgment.  *See* Notice of Lodging of Classified Declaration, ECF No. 144.  That declaration was submitted to explain the harm that reasonably could be expected to result from disclosure of the information in Plaintiff's draft Transparency Report.  The declaration encompasses far more sensitive national security information than an individual recipient of national security process might know or have reason to learn.  The declaration contains Sensitive Compartmented Information, and is classified at the TOP SECRET level.  *See* Aug. 8, 2017 Decl. of EAD Ghattas, ECF No. 175-1, ¶ 17.  Disclosure of such information reasonably could be expected to cause exceptionally grave damage to the national security.  *See* Executive Order 13526, § 1.2.

Plaintiff now seeks disclosure of that declaration to its counsel, noting that his background investigation for a security clearance recently was favorably adjudicated.  *See* ECF No. 250.  The Government opposes Plaintiff's request for access to the classified declaration and to any classified information sought in discovery or otherwise in this case.  The mere granting of a suitability determination is not sufficient to obtain access to classified information.  Rather, a determination of whether there is a "need-to-know" such information, *i.e.* whether the individual "requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function," must be made by the Executive Branch before any access to classified information is granted to a person.  *See* Executive Order 13526, §§ 4.1, 6.1(dd).  The Executive Branch has previously determined that Plaintiff's counsel lacks the requisite "need-to-know" classified information at issue in this case and has expressly denied a request for access to classified information.  *See* Aug. 8, 2017 Decl. of EAD Ghattas, ECF No. 175-1, ¶¶ 18, 19.  That decision falls squarely within the authority and discretion of the Executive Branch, *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988), and this Court lacks authority to grant access to classified information in this case over the Executive Branch's

1    objection.  Such a court-ordered disclosure of national security information in this civil action,

2    over the objection of the Executive, would raise profound constitutional concerns and would be

3    subject to appellate review.

4         As the Government has explained throughout this litigation, this case may proceed under

5    the framework set forth in *Stillman v. CIA*, 319 F.3d 546 (D.C. Cir. 2003), and its progeny—

6    cases brought by persons subject to nondisclosure obligations who challenge Government

7    determinations that information could not be published because it was classified.  In such cases,

8    courts looked to *ex parte*, *in camera* submissions made by the Government for explanations of

9    why disclosure of the information at issue reasonably could be expected to harm national

10   security and thus may not be published.  As another judge of this court recognized in a case

11   challenging the nondisclosure framework applicable to National Security Letters (NSLs), "in

12   the context of intelligence-gathering activities and national security, the use of *ex parte* and *in*

13   *camera* submissions to review classified information may be the only way for a court to carry

14   out its duty . . . to conduct a searching review of the government's evidence offered in support

15   of [its position]."  *In re: Nat'l Sec. Letter*, 930 F. Supp. 2d 1064, 1079 (N.D. Cal. 2013).

16        The Defendants continue to believe that this case should be resolved under that

17   framework.  Nonetheless, in light of Plaintiff's demand for the compelled disclosure of the

18   classified declaration, the United States has also invoked the process for consideration of a state

19   secrets privilege assertion to the extent further grounds are needed to prevent disclosure.  *See*

20   *United States v. Reynolds*, 345 U.S. 1 (1953).  Defendants describe below the process within the

21   Executive Branch for the consideration of whether to invoke that privilege.  If the privilege is

22   invoked, and if the Court finds that the privilege's substantive and procedural requirements are

23   met, the privilege is absolute, and the evidence subject to the privilege "is completely removed

24   from the case."  *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1082 (9th 2010) (*en*

25   *banc*) (quoting *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998)).  In a case such as this,

26   where the evidence in question is "central to the litigation" or if its removal "deprives the

27   defendant of information that would otherwise give the defendant a valid defense," assertion of

28

the state secrets privilege may render it impossible to reach the merits of Plaintiff's claims.  *See id.* at 1083.

As set forth further below, unless the Court is prepared to deny Plaintiff's request at this stage on other grounds set forth herein, the Government respectfully requests 60–90 days to complete consideration of whether to assert the state secrets privilege to shield the Classified Declaration of EAD Steinbach from disclosure.

## II.    PROCEDURAL BACKGROUND

Plaintiff filed the currently-operative complaint in May 2016, challenging, *inter alia*, whether the information that it seeks to publish is properly classified.  *See* Second Am. Compl., ECF No. 114.  Defendants responded by seeking a conference to set a schedule for summary judgment briefing, urging the Court to resolve this case using the procedures set forth in *Stillman v. CIA*, which provides that in cases challenging classification determinations, "*in camera* review of affidavits, followed if necessary by further judicial inquiry, will be the norm." *See* ECF No. 116 at 2 (quoting *Stillman*, 319 F.3d at 548–49).  The Court denied the Defendants' request, and indicated that a responsive pleading would be required prior to summary judgment briefing.  *See* ECF No. 119.  Defendants submitted their answer to the Second Amended Complaint on July 5, 2016.  *See* Answer, ECF No. 120.

On September 21, 2016, Plaintiff submitted its Motion for an Order Directing Defendants to Initiate an Expedited Security Clearance Process for Plaintiff's Counsel, ECF No. 124.  Defendants opposed that motion, explaining that this case should be resolved, as in *Stillman v. CIA*, based on the Court's *ex parte*, *in camera* review of the Government's submission of a classified explanation of why the information that Plaintiff seeks to publish is properly classified.  *See* ECF No. 133 at 4–8.  Defendants also explained that there is no support in the case law for granting counsel access to classified information in this setting.  *See id.* at 8–12.[1]  Moreover, Defendants noted that an order granting Plaintiff's request for background

---

[1] Plaintiff's request for access to the Classified Steinbach Declaration, *see* ECF No. 250, incorporates by reference the arguments it advanced in its Motion for an Order Directing Defendants to Initiate an Expedited Security Clearance Process for Plaintiff's Counsel, ECF No. 124.  *See* ECF No. 250 at 3.  The Defendants' responses to those arguments appear in Defendants' opposition to that motion.  *See* ECF No. 133.

investigations would "risk[] sidetracking the case into potentially complex litigation over access to classified information," and, in particular that such an order "[would] set the stage for potential disputes over the denial of access by the Government for purposes of this case, or for assertions of privilege in response to discovery demands for classified information." *See id.* at 12 & n.7, 12.

At a subsequent case management conference, on October 24, 2016, counsel for the Defendants reiterated that this case should move forward as *Stillman* and its progeny, and avoid the difficult issues that would arise if Plaintiff were to request access to classified information. *See* Oct. 24, 2016 Tr., ECF No. 138, 5:2 –6:20; *id.* 14:5–14; *id.* 20:1–16; *id.* 28:19–29:10. Counsel further explained that, in this case, the heart of the matter—the Government's explanation of why publication of the information in Twitter's draft Transparency Report reasonably could be expected to harm national security—would itself be classified, and that, in such circumstances courts do not typically permit discovery, because a request for access to such information could result in "the Government [having] to consider whether to assert the state secrets privilege with . . . potentially serious consequences for the litigation." *Id.* at 25:22–25; *see also id.* 12:21–13:8 (explaining that a request for access to classified information "would raise questions about whether the case could be litigated on the merits at all"); *id.* 27: 8–14.

At the same status conference, because Defendants had emphasized that whether discovery should be permitted at all was inextricably intertwined with the more global question of how the case should proceed, the Court instructed Defendants to submit their summary judgment motion. *Id.* at 30:14–22. Counsel raised concerns about submitting a classified declaration supporting a summary judgment motion at a time when Plaintiff's motion for a background investigation was pending, explaining that what the Government could present to the Court *ex parte* would be more fulsome and detailed than anything that could be shared with Plaintiff's counsel. *See id.* at 31:2–17. The Court nonetheless ordered the Government to proceed, including with its *ex parte* presentation, noting that, otherwise, the Government would later be precluded from making such a motion. *See id.* at 31:13–24; 32:4–13.

1    Consistent with the Court's Order, Defendants submitted their motion for summary

2    judgment, *see* ECF No. 145, including the Classified Declaration of EAD Steinbach, explaining

3    why publication of the information in Plaintiff's draft Transparency Report reasonably could be

4    expected to harm national security.  *See* Notice of Lodging of Classified Declaration, ECF No.

5    144.  Defendants also submitted an unclassified version of that declaration, providing as much

6    information from EAD Steinbach's classified declaration as possible, consistent with the

7    national security, on the public record.  *See* Unclassified Declaration of EAD Steinbach, ECF

8    No. 147-1, ¶ 1.  In his unclassified declaration, EAD Steinbach noted his understanding that the

9    classified declaration would be made available to the Court "solely for its *ex parte* and *in*

10   *camera* review." *Id.* at 1 n.1.  He further emphasized that "[f]or the reasons explained in the

11   classified declaration, disclosure of the information contained therein reasonable could be

12   expected to result in damage to the national security." *Id.*  On July 6, 2017, the Court denied

13   without prejudice the Government's summary judgment motion, and granted Plaintiff's motion

14   to initiate a background investigation of its counsel.  *See* ECF No. 172.[2]  Defendants sought

15   reconsideration based on the Ninth Circuit's decision in *In re NSL*, 863 F.3d 1110 (9th Cir.

16   2017), *see* ECF No. 180, and the Court denied Defendants' motion.  *See* ECF No. 186.

17   While the Defendants' summary judgment motion had been pending, Plaintiff served its

18   discovery requests and Defendants responded with their objections; although Plaintiff's requests

19   called for classified and unclassified responses, the parties' February 17, 2017 joint letter brief

20   made clear that Plaintiff was not seeking to compel access to classified information at that time.

21   *See* Joint Letter Brief, ECF No. 167 at 1 n.2 ("Twitter's discovery requests include requests for

22   unclassified as well as classified information . . . but Twitter seeks at this time to compel only

23   unclassified discovery.").  On August 8, 2017, Defendants submitted a declaration from EAD

24   Carl Ghattas, who became Executive Assistant Director of FBI's National Security Branch after

25   _____

26   [2] Consistent with the Court's Order, the Government completed a background
     investigation of Plaintiff's counsel.  That background investigation was favorably adjudicated.

27   *See* Fourth Updated Joint Case Management Statement, ECF No. 244 at 7.  As explained herein,
     this step does not constitute a grant of access by the Executive Branch to any particular

28   classified information.

EAD Steinbach retired, describing the requirements that must be fulfilled before any individual may access classified information.  *See* Aug. 8, 2017 Ghattas Decl., ECF No. 175-1, ¶¶ 9–16. EAD Ghattas attested that the FBI had determined that Plaintiff's counsel do not fulfill those requirements with respect to the classified information at issue in this case—including the Classified Declaration of EAD Steinbach—because the FBI has determined that counsel lack a "need-to-know" that information, as defined by the operative Executive Order.  *See id.*, ¶¶ 17– 21; *see also infra* at 7 (explaining the requirements of Executive Order 13526).[3]

On February 12, 2018, the Court overruled a number of Defendants' objections to Plaintiff's discovery requests, *see* ECF No. 188, and the parties have proceeded with discovery, in which Defendants have provided logs for classified materials and produced materials from unclassified systems, as well as related privilege logs, as summarized in the parties' recent updated case management statement.  *See* Fourth Updated Joint Case Management Statement, ECF No. 244 at 10–13.  Although Defendants have reviewed for responsiveness and logged classified materials, Plaintiff has not, to date, moved to compel disclosure of those materials.

At the November 26, 2018 case management conference, Plaintiff, for the first time, formally requested access to the Classified Declaration of EAD Steinbach that Defendants had submitted in support of their summary judgment motion.  *See* Nov. 26, 2018 Tr., ECF No. 251, at 8:20–22, 13:2–5; *see also* Fourth Updated Joint Case Management Statement, ECF No. 244 at 7 (noting, on November 19, 2018, that "Twitter [then] intend[ed] to move the Court for an order granting Twitter's cleared counsel access to Defendants' classified submission).  The Court ordered that Plaintiff submit a formal written request by December 5, 2018, Nov. 26, 2018 Tr., ECF No. 251, at 16: 23–24, and Plaintiff submitted such a request.  *See* ECF No. 250. The Court further ordered that Defendants inform the Court, by December 17, 2018, whether they intend to consider an assertion of the state secrets privilege in response to Plaintiff's request for access to EAD Steinbach's Classified Declaration; the Court ordered that that submission should also include a description of the process the Government follows in

---

[3] On August 28, 2017, Defendants submitted a declaration from EAD Ghattas stating that he had reviewed the classified and unclassified declarations of EAD Steinbach, and concurred with the conclusions therein.  *See* ECF No. 179-1, ¶¶ 5–6.

considering whether to invoke the state secrets privilege, and an explanation of why the Court should await the completion of that process before considering whether to order the disclosure of the Classified Declaration of EAD Steinbach to Plaintiff's counsel. *Id.* at 23:20–24:5. Defendants respectfully submit the instant explanation in response to the Court's Order.

### III.    ARGUMENT

#### A. The Constitutional Authority to Control Access to Classified Information is Vested in the Executive Branch.

The authority and discretion to determine who may be granted access to classified information resides with the Executive Branch. The Constitution confers on the Executive the exclusive responsibility for the protection and control of national security information. *Egan*, 484 U.S. at 527 (citing U.S. Const., Art. II, § 2). That authority "to classify and control access to information bearing on national security . . . flows primarily from [the] constitutional investment of power in the President" as Commander in Chief. *Id.*; *see also Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990) ("authority to protect security information falls on the President as head of the Executive Branch and as Commander in Chief") (quoting *Egan*, 484 U.S. at 527).

Executive Order 13526, promulgated under that constitutional authority, sets forth the requirements for access to classified information. *See* Exec. Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009). As relevant here, Executive Order 13526 requires that there be a favorable determination of eligibility for access by the head of the agency that owns the information or by the agency head's designee, as well as a "need-to-know" determination made "within the executive branch . . . that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function." *Id.* at §§ 4.1(a), 4.1(e), 6.1(dd). Although the former requirement is fulfilled in this case by the favorable adjudication of Plaintiff's counsel's background investigation, *see supra* at 5 n.2, the latter is not.

In his August 8, 2017, declaration, EAD Ghattas explained that "even if plaintiff's counsel were to obtain a favorable suitability determination, [EAD Ghattas had] determined that they do not have a need for access to or a need-to-know, the classified FBI information at issue

1    in this case," including the Classified Declaration of EAD Steinbach.  Aug. 8, 2017 Ghattas

2    Decl. ¶¶ 18, 19.  That is, EAD Ghattas determined that "it does not serve a governmental

3    function, within the meaning of the Executive Order, to allow plaintiff's counsel access to the

4    classified FBI information at issue in this case to assist in representing the interests of a private

5    plaintiff who has filed this civil suit against the government."  *Id.* ¶ 18; *see* Exec. Order 13526

6    § 6.1(dd) (defining "need-to-know").  EAD Ghattas noted that that "Executive Branch

7    personnel who hold security clearances are routinely restricted from accessing information for

8    which they lack a need-to-know."  Aug. 8, 2017 Ghattas Decl. ¶ 21.  EAD Ghattas also

9    explained that the Classified Declaration of EAD Steinbach contains information at the TOP

10    SECRET level, as well as Sensitive Compartmented Information, *see id.* ¶ 17—information that

11    is broader and more sensitive than any information that a recipient of national security process

12    might know or have reason to learn.  Thus, the fact that Plaintiff's counsel has received a

13    "suitability" determination is not a determination that they may receive or have a "need-to-

14    know" particular classified information.

15       In light of the FBI's determination that Plaintiff's counsel does not have the "need-to-

16    know" required to access the classified declaration at issue, the Court lacks the constitutional

17    authority to order its disclosure.  *See Egan*, 484 U.S. at 527 ("the protection of classified

18    information must be committed to the broad discretion of the agency responsible, and this must

19    include broad discretion to determine who may have access to it"); *see also Dorfmont*, 913 F.2d

20    at 1401 ("The decision to grant or revoke a security clearance is committed to the discretion of

21    the President by law.").  Any order directing the disclosure of classified national security

22    information over the objection of the Executive would be subject to immediate appellate

23    review.[4]

24

25

26    _____

27    [4] *See In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008); *Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1491 (9th Cir. 1989); *see also, e.g., Stillman*, 319 F.3d at 547–

28    49 (reviewing and reversing an order that classified information be disclosed to plaintiff's counsel in that case).

**B.  The Court Should Resolve the Merits of the Case Based on the Unclassified Record and the Government's *Ex Parte*, *In Camera* Submission Which Demonstrates That Disclosure of the Information Twitter Seeks to Publish Reasonably Could Be Expected to Cause Serious Damage to the National Security of the United States.**

The Court can and should avoid the significant constitutional questions that are raised by the compelled disclosure of classified information to private counsel in this case by following the framework set forth in the *Stillman* decision and its progeny.  At the heart of this case is the determination of whether, and to what extent, national security harm reasonably could be expected to result from the disclosure of the information that Twitter seeks to publish.  *Stillman v. CIA* and its progeny—suits by persons subject to nondisclosure obligations who challenge Government determinations that information cannot be published because it is classified— present the most analogous cases to have been addressed by the federal courts.  In such cases, courts examine both the materials submitted by the Government in its publicly-available briefing, as well as the Government's classified explanations, submitted *ex parte* and *in camera*, to determine whether the Government has demonstrated a logical connection between the information at issue and the reasons for classification.  *See Stillman*, 319 F.3d at 548–49 (remanding to the district court for that court "to determine first whether it [could] resolve the classification [of the information at issue] ex parte"); *see also, e.g.*; *Shaffer v. DIA*, 102 F. Supp. 3d 1, 11 (D.D.C. 2015) ("a district court must first attempt to resolve a classification challenge *ex parte*"), *appeal dismissed following withdrawal by appellant*, 2015 WL 9008153 (D.C. Cir. Nov. 10, 2015); *Boening v. CIA*, 579 F. Supp. 2d 166, 174 (D.D.C. 2008) ("prepublication review cases can and should begin with *ex parte* and *in camera* consideration.").  Indeed, it is well-established that Courts may rely on classified submissions provided *ex parte* and *in camera* to decide whether restrictions imposed by the Government on persons subject to non-disclosure obligations comply with the First Amendment.  *See*, *e.g.*, *In re: Nat'l Sec. Letter*, 930 F. Supp. 2d at 1079 ("in the context of intelligence-gathering activities and national security, the use of *ex parte* and *in camera* submissions to review classified information may be the only way for a court to carry out its duty . . . to conduct a searching review of the government's evidence offered in support of an NSL request or nondisclosure order").

1    Throughout this litigation, the Government has urged the Court to resolve this litigation

2    following the same model, based in part on the Government's *ex parte*, *in camera* submission,

3    which demonstrates that the disclosure of the information Twitter seeks to publish reasonably

4    could be expected to cause serious damage to national security.  *See supra* at 3–4; *see also*, *e.g.*,

5    Mot. For Summ. J., ECF No. 145, at 2, 10, 19–21.  For all the reasons explained in the

6    Government's submissions on summary judgment, the Court should have entered judgment in

7    this case for the Government, based on the Government's *ex parte*, *in camera* showing.  To the

8    extent the Court has determined that it cannot resolve the case based on the Government's *ex

9    parte*, *in camera* submission, *see* July 6, 2017 Order at 17 (denying motion for summary

10   judgment without prejudice, finding that the Classified Declaration of EAD Steinbach did not

11   provide sufficient detail), the Court could permit the Government an opportunity to supplement

12   that filing in response to specific questions or concerns by the Court.  The Court could also

13   consider any additional unclassified evidence adduced in discovery and any additional classified

14   information submitted by the Government, *ex parte, in camera*, in deciding the merits on

15   renewed motions for summary judgment.  The Court could then rule on the merits—for or

16   against the Government—thus setting the stage for appellate review.  *See Stillman*, at 548

17   (explaining that the district court erred in reaching the question of counsel access, because it

18   should have attempted to determine, based on the Government's *ex parte*, *in camera* submission

19   either that the information at issue was properly classified *or* that it was not properly classified

20   and was lawfully subject to publication).

21   However, in no event may the Court grant private counsel access to classified

22   information, including the Classified Declaration of EAD Steinbach, to litigate the merits of this

23   action.  To begin with, legion cases have held that a private party has no role to play in a court's

24   assessment of the Government's explanation of national security harms.  *See*, *e.g.*, *Snepp v.

25   United States*, 444 U.S. 507, 512 (1980) (*per curiam*) ("When a former agent relies on his own

26   judgment about what information is detrimental, he may reveal information that the CIA – with

27   its broader understanding . . . could have identified as harmful."); *Wilson v. CIA*, 586 F.3d 171,

28   196 (2d Cir. 2009) (rejecting former CIA employee's analysis of which details about her own

service can be disclosed, in light of the agency's "rational and plausible reasons for continued classification.")[5]  And, as explained above, because neither Twitter nor its counsel have been authorized to have access to the classified information at issue, granting them access would clearly conflict with the Executive's discretion and authority.  *See supra* Section III.A. Likewise as also noted, the TOP SECRET/SCI information in the Classified Declaration of EAD Steinbach is broader and more sensitive than any information that a recipient of national security process might know or have reason to learn.[6]

In *Stillman*, the D.C. Circuit held that the district court had abused its discretion in granting the plaintiff's counsel access to a classified manuscript in dispute, after the Executive had, as in the instant case, determined that the plaintiff's counsel had no "need-to-know" the information in question.  *See* 319 F.3d at 547.  The D.C. Circuit ordered the district court on remand to first determine "whether it can, consistent with the protection of [plaintiff's] First Amendment rights to speak and to publish, and with the appropriate degree of deference owed to the Executive Branch concerning classification decisions, resolve the classification issue without the assistance of plaintiff's counsel."  *Id.* at 549.  If not, the court of appeals instructed that the district court: "should consider whether its need for such assistance outweighs the

---

[5] *See also, e.g. Gardels v. CIA*, 689 F.2d 1100, 1106 & n.5 (D.C. Cir. 1982) (former agent's "own views as to the lack of harm which would follow the disclosure requested by plaintiff" is insufficient to justify further inquiry beyond the Agency's "plausible and reasonable" informed position); *Halperin v. Nat'l Sec. Council*, 452 F. Supp. 47, 51 (D.D.C. 1978) (nothing in submissions of self-proclaimed "scholar and actor in the field of foreign policy and national security" "justifie[d] the substitution of this Court's judgment or the informed judgment of plaintiff for that of the officials constitutionally responsible for the conduct of United States foreign policy as to the proper classification of [documents]."), *aff'd*, 612 F.2d 586 (D.C. Cir. 1980).

[6] The Government had expressed concerns regarding preparing and submitting *ex parte*, *in camera* a classified declaration *before* the Court had resolved the Plaintiff's motion to initiate counsel's background investigation; the Court nonetheless ordered the Government to proceed with its submission, and indicated that the Government would be precluded from making such a submission in the future if it did not do so when ordered.  *See supra* at 4.  To the extent the Government submits classified information to a court solely for *ex parte* review, and a court subsequently attempts to order disclosure of that very information to private counsel, a severe disincentive would exist for sharing classified information with courts to begin with, and in particular to including a level of detail intended solely for an Article III judge.

concomitant intrusion upon the Government's interest in national security.  Only then should it decide whether to enter an order granting [counsel] access to the manuscript and, if similarly necessary, to the Government's classified pleadings and affidavits."  *Id.*  The court of appeals further held that "[i]f the court enters such an order, then Government may appeal," and the court of appeals would then "have to resolve the constitutional question" of whether counsel had a First Amendment right of access to those classified materials.  *Id.*

For all these reasons, the Government asks that the Court proceed consistent with *Stillman* and similar cases.  Specifically, it should first try to resolve the case based on *ex parte*, *in camera* review of the Classified Declaration of EAD Steinbach (and any supplemental information the Court requests from the Government) and any additional unclassified evidence. If the Court cannot resolve the case on this basis then, as indicated by the D.C. Circuit in *Stillman*, it should then consider whether its need for the assistance of Twitter's counsel outweighs the concomitant intrusion upon the Government's interest in national security.  If the Court still decides to grant access, such a decision would be subject to appeal.

### C. The Government Has Initiated the Process of Considering Whether to Assert the State Secrets Privilege to Protect the Classified Information at Issue Here.

The foregoing sets forth clear and ample grounds on which the Court should reject the demand by Plaintiff's counsel for access to the Classified Steinbach Declaration (or any classified information at issue in discovery).  Nonetheless, because the Court is considering whether to grant Plaintiff's demand to compel disclosure of this declaration over the Executive Branch's objection, the United States has initiated the process for consideration of a state secrets privilege assertion in this case.[7]

---

[7] Indeed, Plaintiff has served a number of discovery requests to which this classified declaration would be responsive, *see*, *e.g.*, Plaintiff's Request for Production of Documents Nos. 1(a), 2(a), 4(a), 9(a), 10(a), 15(a), ECF No. 178, and although Plaintiff has not moved to compel this document, their "request" for disclosure, *see* ECF No. 250, is tantamount to such a motion for discovery of this information, and for this reason as well, a privilege assertion may appropriately be raised in response to this demand.

1    The state secrets privilege shields from disclosure "matters which, in the interest of

2  national security, should not be divulged." *Jeppesen Dataplan, Inc.*, 614 F.3d at 1082 (quoting

3  *Reynolds*, 345 U.S. at 10).  It has a constitutional foundation based on the President's Article II

4  powers to conduct foreign affairs and provide for the national defense.  *See United States v.*

5  *Nixon*, 418 U.S. 683, 710 (1974).  "Given the vitally important purposes it serves, . . . the state

6  secrets privilege is . . . a privilege of the highest dignity and significance." *El-Masri v. Tenet*,

7  437 F. Supp. 2d 530, 536 (E.D. Va. 2006), *aff'd sub nom. El-Masri v. United States*, 479 F.3d

8  296 (4th Cir. 2007).  "Once . . . properly invoked, and the court is satisfied as to the danger of

9  divulging state secrets, the privilege is absolute" and cannot be overcome by any claim of

10  necessity.  *Kasza*, 133 F.3d at 1166.

11    A formal claim of privilege "must be lodged by the head of the department which has

12  control over the matter, after actual personal consideration by that officer." *Id.*  The decision

13  "must reflect the certifying official's *personal* judgment; responsibility for this task may not be

14  delegated to lesser ranking officials." *Id.* (emphasis in original).  In addition, as a matter of

15  Executive Branch practice, officials at the highest levels of the Department of Justice also must

16  review any proposed assertion of the state secrets privilege.  *Id.* at 1077 (citing Mem. from

17  Attorney Gen. to Heads of Executive Dep'ts and Agencies on Policies and Procedures

18  Governing Invocation of the States Secrets Privilege (Sept. 23, 2009) ("Sept. 23, 2009

19  Memorandum").  Consideration of these matters within the Department of Justice requires, *inter*

20  *alia*, a recommendation from the Assistant Attorney General; evaluation, consultation, and

21  recommendation by a state secrets review committee, as well as review by the Associate

22  Attorney General, the Deputy Attorney General, and approval by the Attorney General.  *See*

23  *Fazaga v. F.B.I.*, 884 F. Supp. 2d 1022, 1040 (C.D. Cal. 2012) (citing the Sept. 23, 2009

24  Memorandum).  In addition, consideration of any assertion of the state secrets privilege would

25  also require the review of senior officials of the Federal Bureau of Investigation.

26    The foregoing review process has been initiated, but because it involves the most senior

27  officials of the Department of Justice and the Federal Bureau of Investigation, additional time is

28

1   necessary for its completion.[8]  Accordingly, Defendants respectfully request a period of 60–90

2   days to allow a sufficient timeframe to complete this process.[9]

3          In light of the constitutional foundation of the state secrets privilege as well as the

4   Executive's discretion to control access to classified information, *see supra* at 7, 13, it would

5   raise extraordinary constitutional concerns for a court to grant disclosure in the face of the

6   Government's request for an opportunity to consider such a privilege assertion.  While the

7   Government is aware of no case in which a court ordered disclosure of information under such

8   circumstances, numerous courts have rejected requests for access by private counsel to the

9   information subject to assertions of the state secrets privilege.  *See, e.g.*, Order Denying

10  Plaintiffs' Motion for Access to Classified Discovery Materials and Requiring Additional

11  Briefing, *Jewel v. NSA*, 08-4373-JSW, ECF No. 404 at 1 (June 13, 2018).[10]  The Ninth Circuit

12  also has rejected requests to grant plaintiffs (or plaintiffs' counsel) access to such information

13  pursuant to protective order procedures in state secrets litigation.  *See Jeppesen Data Plan, Inc.*,

14  614 F.3d at 1077 n.3 (concluding privileged information was at risk of disclosure "no matter

15  what protective procedures the district court might employ.  Adversarial litigation, including

16  pretrial discovery of documents and witnesses and the presentation of documents and testimony

17  at trial, is inherently complex and unpredictable."); *see also Al-Haramain Islamic Found., Inc.*

18  *v. Bush*, 507 F.3d 1190, 1202-03 (9th Cir. 2007) (concluding that, despite accidental disclosure

19  of a document subject to the state secrets privilege, "*Reynolds* requires an *in camera* [and *ex*

20  _____

21      [8] In addition, the President recently nominated a new Attorney General, whose
22  confirmation will be considered by the Senate after the new year, and additional time may be
    needed for this reason as well.

23      [9] If the Court denies Plaintiff's request and proceeds to enter judgment based upon the
24  Government's *ex parte, in camera* submission and other unclassified evidence, Defendants
    would not move forward with consideration of whether to invoke the privilege.

25      [10] *See also, e.g., Doe v. CIA*, 576 F.3d 95, 106 (2d Cir. 2009) (holding that plaintiffs had
26  no right to access information subject to an assertion of the state secrets privilege—[e]ven if
    they already knew some of it"—even for the purpose of contesting the application of the
27  privilege); *El-Masri v. United States*, 479 F.3d 296, 311 (4th Cir. 2009) (rejecting a plaintiff's
28  proposal that the court should have received privileged information *in camera*, and then granted
    access to that information to plaintiff's counsel, but not the public, under a protective under).

1   *parte*] review of the [document containing the information in question] in these

2   circumstances").  Again, the denial of any state secrets privilege assertion, if lodged, would be

3   subject to appellate review, *see supra*.

4        Finally, Defendants note that invocation of the state secrets privilege, if necessary to

5   prevent disclosure of the Classified Declaration of EAD Steinbach, could have a significant

6   impact on the manner in which this case is resolved.  From the outset, the Government has

7   sought to resolve Plaintiff's First Amendment claims based on the Court's consideration of the

8   Classified Declaration of EAD Steinbach, in which the Government explained why disclosure

9   of the information that Plaintiff seeks to publish reasonably could be expected to cause harm to

10   the national security and thus does not fall within Plaintiff's First Amendment right to publish

11   information.  However, Plaintiff's request for access to that document now renders it necessary

12   for the Government to consider whether to invoke the state secrets privilege to protect that

13   information.  If the Court were to determine that the state secrets privilege was appropriately

14   invoked, the result would be that the Classified Declaration of EAD Steinbach would be

15   excluded from the case and, thus, not available to resolve the case on the merits.  *See Jepessen*

16   *Dataplan, Inc.*, 614 F.3d at 1082–83 (citing *Kasza*, 133 F.3d at 1166).  As a result, dismissal of

17   this action would be required under the state secrets doctrine, *see id.* at 1083, rather than under

18   the framework provided for in *Stillman* and its progeny.  *See Kasza*, 133 F.3d at 1167 (quoting

19   *Bareford v. General Dynamics Corp.*, 973 F.2d 1138, 1144 (5th Cir. 1992)).  Thus, in light of

20   Plaintiff's demand for this classified information, there are three potential approaches available

21   to the Court at this stage: (1) rejection of Plaintiff's demand and resolution of the case under the

22   *Stillman* framework pursuant to *ex parte, in camera* review of the Classified Steinbach

23   Declaration (and any supplemental declaration necessary); (2) potential exclusion of that

24   classified declaration and dismissal of this action pursuant to the state secrets doctrine; or (3)

25   potential appellate review of any order by the Court that the classified declaration be disclosed

26   to Plaintiff's counsel.

27

28

IV.     **Conclusion**

For all the reasons explained herein, Defendants respectfully ask that the Court deny the Plaintiff's request for access to the Classified Declaration of EAD Steinbach, and return to the consideration of the merits of the Plaintiff's claims, consistent with *Stillman* and its progeny. Defendants also respectfully request a period of 60–90 days to complete consideration of whether to invoke the state secrets privilege to protect the Classified Declaration of EAD Steinbach from disclosure.

Dated:  December 17, 2018                    Respectfully submitted,


                                             JOSEPH H. HUNT
                                             Assistant Attorney General

                                             ALEX G. TSE
                                             Acting United States Attorney

                                             ANTHONY J. COPPOLINO
                                             Deputy Branch Director

                                             _____*/s/ Julia A. Heiman*_____
                                             JULIA A. HEIMAN, Bar No. 241415
                                             Senior Counsel
                                             CHRISTOPHER HEALY
                                             Trial Attorney
                                             U.S. Department of Justice
                                             Civil Division, Federal Programs Branch
                                             P.O. Box 883
                                             Washington, D.C. 20044
                                             julia.heiman@usdoj.gov
                                             *Attorneys for Defendants*