1  JOSEPH H. HUNT
   Assistant Attorney General
2  DAVID L. ANDERSON
   United States Attorney
3  ANTHONY J. COPPOLINO
   Deputy Branch Director
4  JULIA A. HEIMAN
   Senior Counsel
5
   CHRISTOPHER HEALY
6  Trial Attorney
7  United States Department of Justice
   Civil Division, Federal Programs Branch
8
9  P.O. Box 883
   Washington, D.C.  20044
10 Telephone:  (202) 616-8480
   Facsimile:  (202) 616-8470
11 Email: julia.heiman@usdoj.gov
12
   Attorneys for Defendants
13
                **IN THE UNITED STATES DISTRICT COURT**
14
              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
15
   _____
16
   TWITTER, INC.,                          )        Case No. 14-cv-4480-YGR
17                                          )
           Plaintiff,                       )
18                                          )        **DEFENDANTS' REPLY**
                                            )        **SUBMITTED IN SUPPORT**
19              v.                          )        **OF THEIR RESPONSE**
                                            )        **TO THE ORDER**
20 MATTHEW G. WHITAKER, Acting Attorney     )        **TO SHOW CAUSE**
   General of the United States, *et al.*,  )
21                                          )
           Defendants.                      )        Date: February 15, 2019
22                                          )        Time: 9:30 a.m.
                                            )        Courtroom 1, Fourth Floor
23                                          )        Hon. Yvonne Gonzalez Rogers
24 _____ )
25
26
27
28

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 2

   A. The Executive's Constitutional Responsibility to Protect Classified
      Information Includes the Authority to Control Access to Such
      Information. ................................................................................................. 2

   B. No Authority Supports an Order of Disclosure Here. ....................................... 5

      1.   Ninth Circuit Precedent Forecloses an Order of Disclosure in this
           Setting................................................................................................... 5

      2.   D.C. Circuit Case Law—Including *Stillman v. CIA*—Does Not
           Support an Order of Disclosure Here. ...................................................... 7

      3.   The District Court Cases on Which Plaintiff Relies Also Do Not
           Support an Order of Disclosure................................................................ 11

      4.   Interests of Private Litigants Cannot Outweigh the Public Interest
           in Protecting National Security. ............................................................... 12

   C. No Authority Supports Plaintiff's Request to Graft FOIA Procedures
      Here…………………………………………………………………………....… 14

III.  CONCLUSION .................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abilt v. CIA,*
    848 F.3d 305 (4th Cir. 2017) ................................................................ 12

*Abourezk v. Reagan,*
    785 F.2d 1043 (D.C. Cir. 1986) ........................................................... 13

*Al-Haramain Islamic Found., Inc. v. Bush,*
    507 F.3d 1190 (9th Cir. 2007) ............................................................. 13

*Al-Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury,*
    686 F.3d 965 (9th Cir. 2012) ........................................................ *passim*

*Al-Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury,*
    2012 WL 6203136 (D. Or. Dec. 12, 2012) ........................................... 6

*Christopher v. Harbury,*
    536 U.S. 403 (2002) ............................................................................... 9

*CIA v. Sims,*
    471 U.S. 159 (1985) ............................................................................... 3

*Dep't of Navy v. Egan,*
    484 U.S. 518 (1988) ........................................................................... 3, 4

*Doe v. Gonzales,*
    386 F. Supp. 2d 66 (D. Conn. 2005) ................................................... 6

*Dorfmont v. Brown,*
    913 F.2d 1399 (9th Cir. 1990) ............................................................. 3

*El-Masri v. Tenet,*
    437 F. Supp. 2d 530 (E.D. Va. 2006) ................................................ 14

*Ellsberg v. Mitchell,*
    709 F.2d 51 (D.C. Cir. 1983) ............................................................... 5

*Gen. Dynamics Corp. v. United States,*
    563 U.S. 478 (2011) ........................................................................... 5, 6

*Horn v. Huddle,*
    647 F. Supp. 2d 55 (D.D.C. 2009) ..................................................... 10

*In re NSA Telecomm. Records Litig.,*
    700 F. Supp. 2d 1182 (N.D. Cal. 2009) ......................................... 10, 11

*In re Sealed Case,*
  494 F.3d 139 (D.C. Cir. 2007) ......................................................................... 9

*Kasza v. Browner,*
  133 F.3d 1159 (9th Cir. 1998) ................................................................. 12, 15

*KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner,*
  710 F. Supp. 2d 637 (N.D. Ohio 2010) ...................................................... 10

*Meshal v. Higgenbotham,*
  804 F.3d 417 (D.C. Cir. 2015) ............................................................... 7, 8, 9

*Mohamed v. Jeppesen Dataplan, Inc.,*
  614 F.3d 1070 (9th Cir. 2010) ..................................................... 7, 12, 14, 15

*Roule v. Petraeus,*
  2012 WL 2367873 (N.D. Cal. June 21, 2012) ...................................... 10, 11

*Snepp v. United States,*
  444 U.S. 507 (1980) ..................................................................................... 14

*Sterling v. Tenet,*
  416 F.3d 338 (4th Cir. 2005) ....................................................................... 12

*Stillman v. CIA,*
  319 F.3d 546 (D.C. Cir. 2003) ............................................................. *passim*

*United States v. Daoud,*
  755 F.3d 479 (7th Cir. 2014) ......................................................................... 5

*United States v. Nixon,*
  418 U.S. 683 (1974) ..................................................................................... 14

*United States v. Ott,*
  827 F.2d 473 (9th Cir. 1987) ......................................................................... 6

*United States v. Reynolds,*
  345 U.S. 1 (1953) .................................................................................. 10, 11

1

**Executive Orders**

2

Exec. Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) ......................................... 4

3

**Statutes**

4

18 U.S.C. app. 3, Pub. L. No. 96-456, 94 Stat. 2025 (1980)...................................... 10

5

**Regulations**

6

28 C.F.R. § 17.18 ..................................................................................................... 13

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

Defendants respectfully submit this reply in support of their Response to the Order to Show Cause Re: Disclosure of Declaration Submitted *In Camera*, ECF No. 264 ("Defendants' Response"). The relief demanded by Plaintiff is extraordinary and unprecedented. Plaintiff demands disclosure, over the Government's strenuous objection, of a classified declaration previously submitted solely for the Court's *ex parte, in camera* review at the summary judgment stage to demonstrate that information Plaintiff seeks to publish about national security legal process is properly protected from disclosure. None of the authority Plaintiff cites supports its position. Plaintiff relies on *dicta* and passing observations in various non-final decisions which never held that courts may order the disclosure of classified information over the Government's objection. And in no case cited by Plaintiff has a court actually done so, and certainly not in the circumstances presented by this case.

Plaintiff disregards clear authority that the discretion to grant access to classified information resides with the Executive Branch. The theory that a private corporation's desire to litigate whether it can publish information that the Government maintains is classified constitutes a "need-to-know" classified information in service of a governmental function is baseless. Plaintiff also fails to correctly describe the holding of the *Stillman* decision, which supported *ex parte* review to resolve the kind of First Amendment question at issue here. *Stillman v. CIA,* 319 F.3d 546 (D.C. Cir. 2003). *Stillman* rejected the very access Plaintiff demands, and reserved for further review the constitutional question of whether classified information could ever be ordered disclosed to a person seeking to litigate whether that person can publish information that was subject to secrecy requirements. Plaintiff is also wrong that considerations of due process require disclosure here. There is no "balance of interests" at issue where the disclosure of classified information is at stake, but even if there were, those interests would clearly favor the Government in this case. Plaintiff is likewise wrong that the declaration at issue – which it concedes it has never seen – is not properly classified. Nor is there any basis for Plaintiff's theory that the Court may import the standards of the inapposite Freedom of Information Act in deciding whether the classified declaration may be withheld in this case.

And Twitter's suggestion that the Government may not properly assert the state secrets privilege here to protect classified information is also clear error. Its contention that "the Government appears to improperly treat the state secrets doctrine as a trump card to hold and play if other appeals for deference to its judgment are ineffective" Pl.'s Opp'n, ECF No. 265, 19 n. 10—is wholly unfounded. Plaintiff created the present state of affairs in this case by demanding disclosure of classified information in discovery for a case that should have been resolved through the summary judgment process proposed by the Government.

In sum, no authority or sound reasoning supports Plaintiff's demand that the classified declaration be shared with its counsel. Plaintiff does at least recognize correctly that the Government should be permitted to complete its consideration of whether to assert the state secrets privilege to protect from disclosure the sensitive national security information in the Classified Steinbach Declaration. *See id.* at 19–20. Defendants do not object to the Plaintiff's proposed deadline of March 17, 2019, for the Government to complete the state secrets privilege process. In light of the parties' agreement, the Court should enter the deadline requested by the Plaintiff, and, in the interim, decline to enter any order requiring disclosure and discharge the Order to Show Cause.

## II.     ARGUMENT

### A.     The Executive's Constitutional Responsibility to Protect Classified Information Includes the Authority to Control Access to Such Information.

Plaintiff's principal argument is that the Court may compel disclosure of classified information over the Government's objection based on its own constitutional authority to control discovery and resolve disputes in litigation. But Plaintiff conflates distinct questions and constitutional roles. The Court undoubtedly has the role assigned by the Constitution to adjudicate disputes in litigation – including the merits question presented in this case of whether the Government adequately demonstrated that the information Twitter seeks to publish is properly protected from disclosure, and for any dispute concerning whether the declaration at issue contains privileged national security information. The question now presented is narrower and constitutionally distinct: whether this Court, in exercising its constitutional role, may grant counsel access to classified information over the Executive Branch's objection. As discussed in

Defendants' prior submissions, the President's "authority to classify and control access to information bearing on national security . . . flows primarily from [the Article II] investment of power in the President" as the Commander in Chief of the Army and Navy of the United States, "and exists quite apart from any explicit congressional grant." *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988); *see also CIA v. Sims*, 471 U.S. 159, 180 (1985) ("[I]t is the responsibility of [the Executive], not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk."). The Ninth Circuit has recognized: "the normally strong presumption in favor of appellate review of agency decisionmaking 'runs aground when it encounters concerns of national security'" . . . "[i]n this 'sensitive and inherently discretionary' area of decisionmaking, the 'authority to protect [security] information falls on the President as head of the Executive Branch and as Commander in Chief.'" *Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990) (quoting *Egan*, 484 U.S. at 527).

Plaintiff acknowledges the authority of the Executive Branch over the threshold suitability determination, Pl.'s Opp'n at 10–12, but argues the "need-to-know" determination, the condition for access lacking here, is different because it is merely "[t]he task of balancing a litigant's need for evidence against a governmental objection to its disclosure." *Id.* at 12. Plaintiff is mistaken.[1] Both aspects for granting access reside within the discretion of the Executive Branch, and no law suggests otherwise; indeed, the "need-to-know" determination is more significant, for it results in the actual disclosure of certain classified information, not merely a judgment that a person is generally trustworthy.

The precedent regarding the Executive's authority to render such determinations is clear: "[f]or reasons too obvious to call for enlarged discussion, the protection of classified

---

[1] Plaintiff also misapprehends the nature of the "need-to-know" determination. Plaintiff asserts that "DOJ informed Mr. Rubin that the Government would *not* grant Mr. Rubin a security clearance unless 'the government's attorneys' determined that Mr. Rubin has a 'need-to-know' the particular classified information in this case." Pl.'s Opp'n at 4. The "need-to-know" determination must be made by an appropriate official within the Executive Branch agency that controls the information, such as EAD Ghattas, who made the determination in this case. The email on which Plaintiff relies indicates that the Classified Information Security Officer (CISO) required "confirm[ation]" from government attorneys that the requisite need-to-know determination had been made. *See* Exh. A, ECF No. 250-1. The CISO was indicating that attorneys could *convey* that the appropriate official had made a need-to-know determination; contrary to Plaintiff's suggestion, the need-to-know determination is not a litigation decision, and is not within the authority of the litigators responsible for this matter.

information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it." *Egan*, 484 U.S. at 429.  The suitability determination is an important part of the determination of who may have access to classified national security information; however, it is but one facet of that determination.  The grant of access to classified information requires the Executive Branch to make two determinations:  first, a favorable determination that an individual is trustworthy for access to classified information and, second, a separate determination "within the executive branch" that an individual has a demonstrated "need-to-know" classified information—that is, the individual "requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function."  Exec. Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) at §§ 4.1(a)(3), 6.1(dd).  Both determinations are crucial to the protection of classified information.  As the Ninth Circuit has recognized, a prior determination of trustworthiness does not by itself provide adequate protection.  *See Al-Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury* 686 F.3d 965, 983 (9th Cir. 2012) (the Government "might have a legitimate interest in shielding [sensitive national security] materials even from someone with the appropriate security clearance.").  Thus, a determination that a person is trustworthy does not create any entitlement to access classified information; the Executive Branch must separately determine that a person may receive particular information.  No authority suggests that this separate and highly significant determination may be made outside the Executive Branch by courts in granting access to private counsel seeking to litigate civil disputes for their clients.  Nothing, moreover, suggests that a litigant's desire to pursue private civil litigation against the Government constitutes a circumstance where they are entitled to access classified information.

The "need-to-know" requirement ensures that only a prospective recipient who "*requires* access to the specific classified information in order to perform or assist in a lawful and authorized governmental function," Exec. Order 13526 § 6.1(dd) (emphasis added), will be granted access to such information.  By that mechanism, the "need-to-know" determination is designed to ensure that classified information is disseminated to those people—and only to those people—who must have access for the Government to conduct its national security work.

Decisions by private litigants to file civil actions or serve discovery requests that put national security information at issue cannot supersede the Executive's authority, and responsibility, to control access to classified information. A contrary rule, applied across the gamut of civil cases implicating national security, would exponentially compound access to national security information, along with the attendant risk of harmful disclosures; indeed, such a rule would create incentives to file suit just to force disclosure of classified information. Courts have repeatedly recognized the inherent risks that would result from disclosures to private counsel. *See Al-Haramain,* 686 F.3d at 983 (describing a case in which "disclosure of sensitive information to a limited number of lawyers led to 'unauthorized disclosure of military secrets.'") (quoting *Gen. Dynamics Corp. v. United States*, 563 U.S. 478, 482 (2011)); *United States v. Daoud*, 755 F.3d 479, 484 (7th Cir. 2014) (even "cleared lawyers . . . might in their zeal to defend their client, . . . or misremembering what is classified and what not, inadvertently say things that would provide clues to classified material").[2] In sum, Plaintiff can cite no authority that Executive Branch control over access to classified information applies solely to a suitability determination, and that courts may thereafter take authority from the Executive to determine that private civil litigants may get access to particular classified information.

**B.  No Authority Supports an Order of Disclosure Here.**

Plaintiff nonetheless insists that, based on inherent authority to control access to the courts and separation of power principles, the Court may order disclosure of the Classified Steinbach Declaration. *See* Pl.'s Opp'n at 5–13. But the majority of cases that Plaintiff quotes are far afield from this case, and do not involve national security matters at all. *See id.* at 6. To the extent Plaintiff looks to cases addressing national security issues, Plaintiff gets the law exactly backwards; the case law—including Ninth Circuit precedent and persuasive authority from the D.C. Circuit—does not support an order of disclosure here.

**1.  Ninth Circuit Precedent Forecloses an Order of Disclosure in this Setting.**

Consistent with the Executive's constitutional authority, *see supra* at 3, Ninth Circuit

---

[2] *See also*, *e.g.*, *Ellsberg v. Mitchell*, 709 F.2d 51, 61 (D.C. Cir. 1983) ("our nation's security is too important to be entrusted to the good faith and circumspection of a litigant's lawyer (whose sense of obligation to his client is likely to strain his fidelity to his pledge of secrecy) or to the coercive power of a protective order").

1   precedent reflects that a court may not grant a litigant access to classified information over the

2   Executive's objection.  In *Al-Haramain*, the Ninth Circuit recognized that the Government is

3   entitled to use classified information in designating an entity as a "specially designated global

4   terrorist," a designation that had the effect of "completely shutter[ing] all domestic operations of

5   an entity."  686 F.3d at 979, 980.  Plaintiff places great weight on the Ninth Circuit's comment

6   that "a lawyer for the designated entity who has the appropriate security clearance . . . does not

7   implicate national security when viewing classified material because, by definition, he or she

8   has the appropriate security clearance."  Pl.'s Opp'n at 7 (quoting 686 F.3d at 983).  But

9   Plaintiff lifts this comment out of context when it argues that it constitutes a "recogni[tion] [of]

10  federal courts' authority to order discovery of classified information."  *Id.*

11      The surrounding discussion makes plain that the Ninth Circuit was proposing disclosure

12  to cleared counsel as one path that the Executive Branch should consider, rather than holding

13  that such disclosure may be imposed by the Court.  *See Al-Haramain*, 686 F.3d at 983.  In the

14  next sentence the Court adds:  "We recognize that disclosure may not always be possible . . . .

15  Depending on the circumstances, [the Government] might have a legitimate interest in shielding

16  materials even from someone with the appropriate security clearance."  *Id.* at 983 (citing *United*

17  *States v. Ott*, 827 F.2d 473, 477 (9th Cir. 1987); *Gen. Dynamics*, 563 U.S. at 481).  The Ninth

18  Circuit did not—as Plaintiff urges this Court to do—order the disclosure of classified

19  information.  Instead, the Court instructed that the Government should *consider* whether such

20  disclosure could be made consistent with national security.[3]  On remand, the district court

21  recognized this:  "[c]ontrary to [plaintiff's] contention, [the Government] has no obligation to

22  offer unclassified summaries or access to cleared counsel; rather, the Ninth Circuit expects [the

23  Government] to 'pursue potential mitigation measures' in order to avoid violating a designee's

24  due process rights.  *Al-Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 2012 WL

25  6203136, *10 (D. Or. Dec. 12, 2012) (quoting *Al-Haramain*, 686 F.3d at 984).  By submitting

26  _____

27      [3] Similarly, in *Doe v. Gonzales*, which Plaintiff cites as support for its argument that
    disclosure to cleared counsel would not implicate national security concerns, *see* Pl.'s Opp'n at

28  7 (quoting), the court relied on classified information in its decision and did not order disclosure
    of that information to counsel.  Defs.' Resp. at 16–17 (discussing *Doe v. Gonzales*, 386 F. Supp.
    2d 66 (D. Conn. 2005)).

the Unclassified Steinbach Declaration concurrently with the classified submission, *see* ECF No. 147-1, the Government has pursued such mitigation measures here.  Ninth Circuit precedent requires nothing more, and indeed recognizes the Executive Branch's discretion in this area.

Plaintiff also cites *Jeppesen* as support for its argument that the Court has authority to order disclosure of the Classified Steinbach Declaration based on the federal courts' "inherent power to control litigants' 'access to the courts.'"  Pl.'s Opp'n at 6 (quoting *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1082 (9th Cir. 2010) (*en banc*)).  But, in *Jeppesen*, the Ninth Circuit relied on the Government's *ex parte*, *in camera* submission of classified materials in determining that the Government's valid state secrets privilege assertion required dismissal of the plaintiffs' claims for alleged "forced disappearance" and alleged "torture and other cruel, inhuman, or degrading treatment."  614 F.3d at 1075, 1083–90.  The Court emphasized:  "[o]ur conclusion holds no matter what protective procedures the district court might employ."  *Id.* at 1089.  This outcome offers no support for the disclosure Plaintiff urges.[4]

### 2.  D.C. Circuit Case Law—Including *Stillman v. CIA*—Does Not Support an Order of Disclosure Here.

Plaintiff also contends that three D.C. Circuit decisions, including *Stillman v. CIA*, support an order of disclosure here.  They do not.  Indeed, Plaintiff is so far mistaken in its reading of the case law, that it presents Judge Pillard's *dissent* as the majority opinion in *Meshal v. Higgenbotham*, 804 F.3d 417 (D.C. Cir. 2015).

With respect to *Stillman v. CIA*—the case which Plaintiff correctly notes the Government initially followed here, *see* Pl.'s Opp'n at 12—Plaintiff contends that the D.C. Circuit's decision "specifically contemplates that the Court may grant cleared counsel access to classified information—at least as long as the Court has *first* reviewed the classified submission *ex parte* and *in camera*."  *Id.* at 12.  But Plaintiff's reading skips an important step in the *Stillman* Court's analysis, and omits its critical conclusion.  First, Plaintiff quotes the passage in

---

[4] The discussion of "judicial control over access to the courts" upon which Plaintiff relies, *see* Pl.'s Opp'n at 6 (quoting *Jeppesen*, 614 F.3d at 1082), occurs in the context of a discussion of the courts' role in assessing any assertion of the state secrets privilege.  While the Court has a role in assessing whether the substantive and procedural requirements for any privilege assertion are ultimately fulfilled, that question is distinct from whether a court has authority to grant access to information the Executive Branch has determined is classified.

which the Court states:  if the district court cannot, on remand, resolve the classification issue *ex parte*, "then the court should consider whether its need for [assistance from plaintiff's counsel] outweighs the concomitant intrusion upon the Government's interest in national security.  Only then should it decide whether to enter an order granting [plaintiff's counsel] access to the [classified material at issue] and, if similarly necessary, to the Government's classified pleadings and affidavits."  *Id.* at 13 (quoting 319 F.3d at 548–49).  But the Court in this case has not undertaken the analysis that would be required under the *Stillman* framework—the inquiry into whether the Court's need for assistance from Plaintiff's counsel outweighs the concomitant intrusion upon the Government's interest in national security.  Moreover, Plaintiff overlooks that in the very next sentence the D.C. Circuit recognizes the constitutional difficulties that would be presented by any order to disclose classified information over the Government's objection.  The D.C. Circuit instructed that:  "If the [district] court enters such an order, then the Government may appeal and we will have to resolve the constitutional question."  *Stillman*, 319 F.3d at 549.

Far from "squarely confirm[ing] that a court has the inherent authority to order the government to produce classified information to a cleared plaintiff's counsel," Pl.'s Opp'n at 13, *Stillman* highlights the constitutional issues that such an order would raise.  At the very heart of the D.C. Circuit's decision was the error committed by the district court in failing to exercise judicial restraint, and "reach[ing] *the constitutional question*" of counsel access "in advance of the necessity of deciding" that issue.  *Stillman*, 319 F.3d at 548 (emphasis added).  The D.C. Circuit held that a district court must take several steps in its analysis before even reaching the question of counsel access.  *See id.* at 548–49.  And, underscoring the problems that an order mandating counsel access would raise, the D.C. Circuit expressly noted that any such order would be subject to appeal, and would present a "constitutional question" that the D.C. Circuit would then "have to resolve."  *Id.* at 549.

Nor does *Meshal* support the Plaintiff's position that the Court has the authority to order disclosure here; on the contrary, in that case, the D.C. Circuit cautioned that "[m]atters touching on national security and foreign policy fall within an area of executive action where courts

1   hesitate to intrude absent congressional authorization." *Meshal*, 804 F.3d at 426.  As a result,

2   the D.C. Circuit instructed that "if there is to be a judicial inquiry—in the absence of

3   congressional authorization—in a case involving both the national security and foreign policy

4   arenas, 'it will raise concerns for the separation of powers in trenching on matters committed to

5   the other branches.'" *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 417 (2002)).  Thus,

6   the D.C. Circuit in *Meshal* declined to permit a plaintiff to proceed with an action for damages

7   against agents of the Federal Bureau of Investigation, who plaintiff claimed violated his Fourth

8   and Fifth Amendment rights when they allegedly "detained, interrogated, and tortured him over

9   the course of four months in three African countries."  *Id.* at 418 ("No court has countenanced a

10  *Bivens* action in a case involving the national security and foreign policy context.").

11         Although Plaintiff characterizes *Meshal* as "confirming the Court's authority to grant

12  classified discovery in this setting," and cites to its discussion of "special procedures and

13  mechanisms" that might be used in classified discovery in civil cases, Plaintiff's discussion

14  quotes from and cites to the dissenting opinion in that case.  Pl.'s Opp'n at 9–10.[5]  In fact,

15  *Meshal* stands for the opposite proposition—the Court recognized a "deep current of authority"

16  in which courts refrained from recognizing *Bivens* causes of action in the national security

17  context, noting "if we were to create a *Bivens* remedy, the litigation . . . would inevitably require

18  judicial intrusion into matters of national security and sensitive intelligence information."  804

19  F.3d at 421–22; *see also id.* at 431 ("Congress and the President possess authority to restrict the

20  actions of U.S. officials during wartime, including by approving new tort causes of action . . . In

21  my view, we would disrespect Congress and the President, and disregard our proper role as

22  judges, if we were to recognize a *Bivens* cause of action here.") (Kavanaugh, J., concurring).

23         Finally, although Plaintiff contends that the D.C. Circuit approved as "'appropriate'"

24  classified discovery in civil actions alleging constitutional claims "under the 'protective

25  measures' set forth in the Classified Information Procedures Act ("CIPA")" Pl.'s Opp'n at 10

26  (quoting *In re Sealed Case*, 494 F.3d 139, 154 (D.C. Cir. 2007)), the D.C. Circuit has not

27         [5] So, too, with the Plaintiff's citation to *Meshal* in support of the courts' authority "to
    adjudicate claims of violation of individual constitutional rights."  Pl.'s Opp'n at 6.  The Court
28  in *Meshal* determined that the constitutional claims at issue could not proceed in light of the
    national security issues implicated by those claims.  *See Meshal*, 804 F.3d at 418–29.

endorsed such proceedings.  On the contrary, in the section of the opinion on which Plaintiff

relies, the Court was highlighting the issues that its opinion did *not* reach:

> Nothing in this opinion forecloses a further opportunity by the United States to establish that privileged evidence demonstrates a valid defense for [defendant]. Similarly, nothing in this opinion forecloses a determination by the district court that some of the protective measures in CIPA, 18 U.S.C. app. III, which applies in criminal cases, would be appropriate, as [plaintiff] urges . . . . we have no occasion to address whether [plaintiff] or his counsel have a "need-to-know" . . . additional classified information.

*In re Sealed Case*, 494 F.3d at 154 (citations omitted).  As the D.C. Circuit explained, it was

leaving these questions for the district court to adjudicate in the first instance:  "[i]t remains for

the district court on remand to determine what procedures would be required to safeguard

against disclosure of privileged materials and then to determine *whether* [the plaintiff's] lawsuit

can proceed." *Id.* at 153.  *In re Sealed Case* did not endorse classified discovery in civil actions,

and provides no support for such proceedings here.[6]

### 3. The District Court Cases on Which Plaintiff Relies Also Do Not Support an Order of Disclosure.

Especially in light of the above-discussed authority, from the Supreme Court, the Ninth

Circuit, and the D.C. Circuit—all of which counsel that an order of disclosure here would be

inappropriate—the handful of district court cases that Plaintiff cites can be given little weight.

*See* Pl.'s Opp'n at 7–9 (citing *In re NSA Telecomm. Records Litig.*, 700 F. Supp. 2d 1182 (N.D.

Cal. 2009); *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 710 F. Supp. 2d

637 (N.D. Ohio 2010); *Horn v. Huddle*, 647 F. Supp. 2d 55 (D.D.C. 2009); *Roule v. Petraeus*,

---

[6] By its terms, CIPA is inapplicable in civil cases.  *See* 18 U.S.C. app. 3, Pub. L. No. 96-456, 94 Stat. 2025 (1980) ("An act to provide certain pretrial, trial and appellate procedures for criminal cases involving classified information.").  There are critical differences between civil and criminal cases where national security information is at issue.  In the latter, the Government makes an affirmative decision whether to bring charges, including in cases where classified national security information may be implicated, and seeks to deprive a person of his most basic liberty interest: freedom from incarceration.  And even in the criminal context, CIPA itself contains provisions recognizing the Government's ability to protect classified information.  For example, if the court authorizes disclosure of classified information, the Government may move to substitute non-classified information in its place, and may submit an affidavit from the Attorney General, explaining why disclosure will damage national security, which the court must review *ex parte* and *in camera* at the Government's request.  *See id.* § 6(c).  If a court orders disclosure of classified information, the Government may either bring an interlocutory appeal or cause the court to dismiss the indictment. S*ee id.* §§ 7(a), 6(e); *see United States v. Reynolds*, 345 U.S. 1, 12 (1953) (explaining that procedures applicable to a state secrets privilege assertion in a civil case where the Government is a defendant differ from a criminal setting).

2012 WL 2367873 (N.D. Cal. June 21, 2012)).  The first three cases featured in Plaintiff's initial

request for an expedited background investigation for counsel, *see* ECF No. 124 at 5–6, and the

reasons why they offer no guidance to the Court here are addressed in Defendants' Response,

*see* Defs.' Resp. at 16–17 (discussing cases).[7]

        As to *Roule*, Plaintiff contends that the court "opin[ed] that none of the government's

cited authorities actually preclude discovery of classified information in civil litigation," Pl.'s

Opp'n at 9.  But it appears that the discovery contemplated in that case was "of unclassified

copies of classified documents," 2012 WL 2367873, at *6; and the court also referred to the

possibility that the Government could "mitigate any prejudice by redacting classified facts or

replacing the names of covert employees with pseudonyms," *id.* at *5.  Thus, the court there

was addressing provision to the plaintiff of unclassified versions of classified materials that

could be disclosed without risk of harm to national security.  Moreover, the court in *Roule*

rejected the plaintiff's claim that the Government had waived its ability to assert the state

secrets privilege to protect the classified information implicated in that matter.  *Id.* at *7.  The

Government later asserted the state secrets privilege, and submitted its dispositive motion on

those grounds.  *See* 4:10-cv-04632-CW, ECF Nos. 87–89 (July 20, 2012).  The case then

settled, and the parties stipulated to dismissal.  *Id.,* ECF No. 95 (Aug. 3, 2012); ECF No. 96

(Aug. 6, 2012).  In sum, *Roule* —as with the other district court cases upon which Plaintiff

relies—did not address, hold, or result in any court-ordered access to classified information.

### 4.    Interests of Private Litigants Cannot Outweigh the Public Interest in Protecting National Security.

        Plaintiff also urges that the Court should "exercise its broad discretion to grant Twitter's

counsel access" to the Classified Steinbach Declaration citing "Twitter's due process rights,

along with interests in judicial integrity and open access to courts" as favoring disclosure.  Pl.'s

_____

[7] Plaintiff's continued reliance on *In re NSA* is particularly meritless.  While the district court ordered a suitability determination for plaintiffs' counsel, no final decision was ever reached in that lawsuit that a court had authority to order access to classified information over the Government's objection, and the court never attempted to grant any access there.  The district court also did not "sanction" the Government with a finding of liability on the merits (a merits decision that was later vacated). Indeed, the district court had issued an Order to Show Cause why the Government should not be sanctioned for refusing (as it has here) to grant access on a "need-to-know" basis, but in the face of the Government's response to that order, declined to impose sanctions.  *See* 3:07-cv-00109-VRW, ECF Nos. 90, 93, 96.

Opp'n at 13.  The Court's inherent authority to control discovery, however, does not permit an order requiring access to classified information over the Executive's objection.  *See supra* at 3–5.  Furthermore, contrary to Plaintiff's contentions, courts widely recognize that private interests do not outweigh the need to protect the broader public interest in protecting national security. *See*, *e.g.*, *Abilt v. CIA*, 848 F.3d 305, 318 (4th Cir. 2017) (when state secrets privilege is properly asserted, "the fundamental principle of access to the court must bow to the fact that a nation without sound intelligence is a nation at risk") (quoting *Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005)); *Kasza v. Browner*, 133 F.3d 1159, 1167 (9th Cir. 1998).[8]  "It is beyond dispute that the Government's interest in combatting terrorism is an urgent objective of the highest order."  *Al-Haramain*, 686 F.3d at 980 (quotation omitted).

Plaintiff questions whether national security concerns are implicated in the Classified Steinbach Declaration, but its speculation is based entirely on the Court's characterization of one portion of the declaration—the description of the mosaic theory—as "generic" and "seemingly boilerplate."  Pl.'s Opp'n at 17 (quoting Order to Show Cause at 2).  That description of one portion of the declaration does not speak to the sensitivity of the balance of the document.  In fact, two OCAs have determined that the Classified Steinbach Declaration is properly classified, and that its disclosure reasonably could be expected to cause exceptionally grave damage to the national security.  *See* Classified Steinbach Decl.; Aug. 8, 2017 Ghattas Decl. ¶ 17.  Two OCAs also determined that the Classified Steinbach Declaration includes Sensitive Compartmented Information, which is "subject to special access and handling requirements because it involves or derives from particularly sensitive intelligence sources and methods."  28 C.F.R. § 17.18.  The Court thus should give no weight to Plaintiff's speculation that there would be no harm to national security by disclosure of the Classified Steinbach Declaration, which contains far more information than any recipient of national security legal process would have reason to know.  Likewise, the Plaintiff's dismissal of the risk posed by inadvertent disclosure is entitled to no weight; both the courts and the Executive Branch widely

---

[8] Thus, for example, in *Jeppesen*, dismissal based on an assertion of the state secrets privilege was affirmed, although that result deprived the individual plaintiffs in that case "of the opportunity to prove their alleged mistreatment and obtain damages."  614 F.3d at 1091.

recognize the risk inherent in each additional grant of access to sensitive national security materials. *See supra* at 4–5.

Plaintiff also argues that the Ninth Circuit "has held that access by cleared counsel to classified information provides 'undeniable' value to all parties involved," Pl.'s Opp'n at 13–14, and relies on the Ninth Circuit's comments regarding the problems associated with *in camera* review. *Id.* But Plaintiff overlooks that, even in *Al-Haramain*, the principal basis of its due process argument, the Ninth Circuit did not resolve whether due process required disclosure and did not order disclosure over the Government's objection. *See supra* at 6.[9] Moreover, the Ninth Circuit has squarely addressed the problems with *in camera* review that Plaintiff identifies, and held that national security considerations nonetheless necessitate such review in certain settings:

> The process of *in camera* review ineluctably places the court in a role that runs contrary to our fundamental principles of a transparent judicial system. It also places on the court a special burden to assure itself that an appropriate balance is struck between protecting national security matters and preserving an open court system. That said, we acknowledge the need to defer to the Executive on matters of foreign policy and national security and surely cannot legitimately find ourselves second guessing the Executive in this arena.

*Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007).

Finally, *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986), provides no support for Plaintiff's position. *Abourezk* observed that the circumstances in which the merits of a case may be decided based on *ex parte*, *in camera* submissions "are both few and tightly contained." *See* Pl.'s Opp'n at 15 (quoting *Abourezk*, 785 F.2d at 1060–61). But Plaintiff overlooks that *Abourezk* pre-dated *Stillman v. CIA* by almost two decades, when the court contemplated that *ex parte*, *in camera* proceedings could be used to resolve whether information that a party subject to nondisclosure obligation sought to publish was classified. *See supra* at 7–8. Moreover, *Stillman* is not in meaningful tension with *Abourezk* because the *ex parte* review at issue in *Stillman* ultimately relates closely to an issue recognized in *Abourezk* as appropriate for such review: whether classified information was properly protected from disclosure. *See Abourezk,*

---

[9] Furthermore, Plaintiff correctly observes that the Ninth Circuit contemplated that the Executive should consider "the provi[sion of] an unclassified summary *or* access by a lawyer with the proper security clearance," Pl.'s Opp'n at 14 (quoting *Al-Haramain*, 686 F.3d at 983–84), and the Government has provided such an unclassified summary in this case, in the form of the Unclassified Steinbach Declaration.

785 F.2d at 1060–61 (*ex parte* review appropriate to assess whether information is protected from disclosure under FOIA or by privilege).[10]   The purpose for which the Classified Steinbach Declaration was submitted here, *i.e.* to demonstrate why information is properly protected from disclosure, is akin to the types of issues for which courts have undertaken *ex parte* review.

**C.   No Authority Supports Plaintiff's Request to Graft FOIA Procedures Here.**

As an alternative to challenging the Government's need-to-know determination, Plaintiff asks that the Court review whether the Classified Steinbach Declaration is properly classified. Pl.'s Opp'n at 16–19.   In so doing, Plaintiff discusses how FOIA-like procedures might apply to the instant case, *id.* at 17–18.   But whether the declaration contains classified information is a separate question from whether the Court may now grant access to that document.   And the way to resolve the separate question of whether national security information in that document should be shielded from disclosure is not by attempting to import FOIA procedures here, but to consider any state secrets privilege assertion by the Government.   The privilege shields from disclosure "matters which, in the interest of national security, should not be divulged." *Jeppesen*, 614 F.3d at 1082.   It has a constitutional foundation in the President's Article II powers to conduct foreign affairs and provide for the national defense.   *See United States v. Nixon*, 418 U.S. 683, 710 (1974).   "Given the vitally important purposes it serves, . . . the state secrets privilege is . . . a privilege of the highest dignity and significance."   *El-Masri v. Tenet*, 437 F. Supp. 2d 530, 536 (E.D. Va. 2006), *aff'd sub nom. El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007).

Thus, as to this alternative argument by Plaintiff, the Court should proceed by permitting the Government to complete its consideration of whether to assert the state secrets privilege to protect the classified information contained in the Classified Steinbach Declaration by March 17 as Plaintiff proposes.   If Defendants determine that an assertion of the privilege is necessary, the Government will submit to the Court sufficient information for the Court to "make an

---

[10] The approach in *Stillman* facilitated resolution of a question – identified by the Supreme Court in the *Snepp* decision – of whether the information sought be published was classified. *See Snepp v. United States*, 444 U.S. 507, 509-510 & n.3 (1980) (*per curiam*) (person subject to secrecy obligation has no First Amendment right to publish classified information).

1    independent determination whether the information is privileged." *Jeppesen*, 614 F.3d at 1081.

2    Such proceedings could be conducted pursuant to the well-established precedent addressing

3    assertions of the state secrets privilege, *see*, *e.g.*, *id.* at 1081–90; *Kasza*, 133 F.3d at 1165–70,

4    and would provide judicial review of the Government's position that the classified information

5    contained in the Classified Steinbach Declaration must be protected from disclosure, consistent

6    with the purpose of Plaintiff's proposal.

7            Finally, Plaintiff's suggestion that any assertion of the privilege would be inappropriate

8    and a misuse of the doctrine is clearly wrong.  Plaintiff created the circumstances now presented

9    by seeking to compel discovery of classified information, including the Classified Steinbach

10   Declaration.  Defendants have made every effort in this case to facilitate resolution of this case

11   on the merits, and avoid the necessity of consideration of the state secrets privilege.  *See* Defs.'

12   Resp. to the Court's Nov. 26, 2018 Order, ECF No. 256, at 3–6 (describing Defendants'

13   efforts).  Indeed, Defendants had even suggested the entry of judgment *against* the Government,

14   because Defendants believe the standard of First Amendment scrutiny being applied by the

15   Court is in error, and further review would obviate the question of whether this case requires

16   either security clearances or a state secrets privilege assertion.  *See* ECF No. 174 at 7 ("Under

17   these circumstances, rather than proceed by ordering discovery, the Court should convert its

18   July 6, 2017 Order [denying Defendants' motion for summary judgment] to a final judgment").

19   With Plaintiff having demanded classified discovery and a security clearance for access to

20   classified information, in a case where neither should be necessary, the Government has every

21   right under well-established law to consider an assertion of privilege.

22   **III.    CONCLUSION**

23           For all these reasons, the Court should not order disclosure of the Classified Steinbach

24   Declaration.  Additionally, the Court should discharge the Order to Show Cause and set a March

25   17, 2019 deadline for Defendants to complete consideration of, and perfect if necessary, any

26   assertion of the state secrets privilege.  If the Court determines to grant Plaintiff access to

27   classified information, it should stay any such order pending consideration of an interlocutory

28   appeal.

Dated:  February 1, 2019                    Respectfully submitted,


                                            JOSEPH H. HUNT
                                            Assistant Attorney General


                                            DAVID L. ANDERSON
                                            United States Attorney


                                            ANTHONY J. COPPOLINO
                                            Deputy Branch Director


                                            _____*/s/ Julia A. Heiman*_____
                                            JULIA A. HEIMAN, Bar No. 241415
                                            Senior Counsel
                                            CHRISTOPHER HEALY
                                            Trial Attorney
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            P.O. Box 883
                                            Washington, D.C. 20044
                                            julia.heiman@usdoj.gov
                                            *Attorneys for Defendants*