JOSEPH H. HUNT
Assistant Attorney General
DAVID L. ANDERSON
United States Attorney
ANTHONY J. COPPOLINO
Deputy Branch Director
JULIA A. HEIMAN
Senior Counsel
CHRISTOPHER HEALY
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 514-8095
Facsimile:  (202) 616-8470
Email: Christopher.Healy@usdoj.gov

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWITTER, INC., | Case No. 14-cv-4480-YGR |
| Plaintiff, | |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION CHALLENGING DEFENDANTS' PRIVILEGE DESIGNATIONS** |
| WILLIAM P. BARR, Attorney General of the United States, *et al.*, | |
| Defendants. | |
| | Hon. Yvonne Gonzalez Rogers |

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations

0

**INTRODUCTION**

Plaintiff has moved to compel a sample of twenty unclassified documents that Plaintiff contends have not been properly protected under the deliberative process, attorney-client, and work product privileges.  Twitter's Mot. Challenging Defs.' Priv. Designations, (Pls.' Mot.) ECF No. 258.  The majority of the documents Plaintiff moves to compel are internal emails between DOJ and FBI attorneys discussing the government's response to Twitter's request for the FBI to review Twitter's proposed draft Transparency Report, after Twitter had threatened publically to file a First Amendment suit.  *See* Declaration of Cecilia O. Bessee, Acting Deputy General Counsel, Litigation Branch, Office of the General Counsel, Federal Bureau of Investigation, ¶ 4 (Feb. 28, 2019), *attached as* Ex. A.

As explained by Cecilia Bessee, the Acting General Counsel of the Litigation Branch in the FBI's Office of the General Counsel, the release of these documents would harm the ability of Government attorneys to discuss their views and engage in the kind of candid discussion necessary to provide critical legal and operational advice.  *See* Decl. ¶ 7.  They were prepared and maintained in confidence.  *See id*.  Each of these documents was prepared within the context of anticipated or pending litigation, given that Twitter had threatened to sue publicly as early as Feb. 6, 2014.  *See id.* ¶ 4. (citing Posting of Jeremy Kessel to Twitter Blog, *Fighting for more #transparency*, https://blog.twitter.com/official/en_us/a/2014/fighting-for-more-transparency.html, (Feb. 6, 2014); Julian Hattem, *Twitter threatens to sue Obama administration*, The Hill, Feb. 6, 2014, https://thehill.com/policy/technology/197646-twitter-considers-legal-fight-to-disclose-docs; *Twitter Threatens to Sue Obama Administration Over Gov't Surveillance Requests*, CBS Local Washington, DC, Feb. 6, 2014, https://washington.cbslocal.com/2014/02/06/twitter-threatens-to-sue-obama-administration-over-govt-surveillance-requests).

As such, the documents have been validly protected by the deliberative process privilege, the attorney client privilege, and under the work product doctrine.[1]  Moreover, Twitter has not

---

[1] Plaintiff notes in its Motion several inconsistencies and inaccuracies in the redactions within documents that do not pertain to Twitter's draft Transparency Report.  *See* Pl.'s Mot. at 4. In their document production, Defendants produced more than 29,000 pages of documents to

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations                                                                    1

demonstrated any need that would override these privileges.  For these reasons, this motion should be denied in full.

## **<u>BACKGROUND</u>**

Plaintiff in this action seek to disclose information in a draft Transparency Report regarding specific details of national security legal process Plaintiff received during 2013, beyond the disclosures permitted under the USA FREEDOM Act.  *See generally* Case Mgmt. Statement, ECF. No. 244.  On July 6, 2017, this Court denied Defendants' motion for summary judgment, concluding that "the Government has not yet made a sufficient showing" that the draft Transparency Report cannot lawfully be published because it contains classified information, disclosure of which could reasonably be expected to cause harm to national security, and ordered discovery. Order Denying Government's Mot. for Summ. J. Without Prejudice; Granting Twitter's Mot. For Order Directing Defendants to Expedite Security Clearance ("July 6, 2017 Order"), ECF. No. 172 at 21.  The parties agreed that discovery would proceed separately with respect to documents from the Government's unclassified, SECRET and TOP SECRET systems. *See* Case Mgmt. Statement. at 10-12.  Plaintiff now moves to compel the production of 20 unclassified so-called "Bellweather Documents" which Plaintiff selected from Defendants' privilege logs—it challenges the assertion of the deliberative process privilege, attorney-client privilege, and work product privilege over those documents.  *See generally* Pls.' Mot.[2]

---

Plaintiff within a very short time frame, and had multiple persons working on redactions at once. Although regrettable, it is inevitable that there would be occasional inconsistencies or errors within the redactions given judgment calls being made by different individuals with respect to particular documents.  None of the examples Plaintiff points out give reason to believe that the government has asserted any privilege over-broadly or incorrectly, as Plaintiff contends.

[2] As to three of those twenty documents, Samples 18–20, Defendants have determined that those documents should be reprocessed and disclosed to the Plaintiff subject to the Protective Order governing these proceedings.  Defendants are reprocessing those materials and will produce them to the Plaintiff as quickly as practicable.

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations                                                        2

1

**ARGUMENT**

2

**I.**    **The Deliberative Process Privilege Has Been Validly Asserted With Respect to
the Documents.**

3

4    The deliberative process privilege serves to encourage open and frank discussion by

5    government agencies when formulating and discussing matters of policy. *See Dep't of Interior v.*

6    *Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) ("The deliberative process

7    privilege rests on the obvious realization that officials will not communicate candidly among

8    themselves if each remark is a potential item of discovery and front page news, and its object is

9    to enhance 'the quality of agency decisions by protecting open and frank discussion among those

10   who make them within the government.'" (quoting *NLRB v. Sears, Roebuck & Co*, 421 U.S. 132,

11   151 (1975)) (internal citation omitted)); *United States v. Nixon*, 418 U.S. 683, 705 (1974)

12   ("Human experience teaches that those who expect public dissemination of their remarks may

13   well temper candor with a concern for appearance and for their own interests to the detriment of

14   the decisionmaking process.").

15   If such discussions were made public, "'frank discussion of legal or policy matters' in

16   writing might be inhibited . . . [and] the decisions and policies formulated would be the poorer as

17   a result." *See Sears, Roebuck, & Co.*, 421 U.S. at 150 (internal quotations and citation omitted).

18   The privilege thus protects "predecisional memoranda prepared in order to assist an agency

19   decisionmaker in arriving at his decision," *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,

20   421 U.S. 168, 184 (1975), and "allows the government to withhold documents and other

21   materials that would reveal 'advisory opinions, recommendations and deliberations comprising

22   part of a process by which governmental decisions and policies are formulated.'" *In re Sealed*

23   *Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (per curiam) (quoting *Carl Zeiss Stiftung v. V.E.B.*

24   *Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966), aff'd, 384 F.2d 979 (D.C. Cir. 1967)). The

25   documents at issue in Plaintiff's Motion present exactly the kinds of opinions, recommendations,

26   and deliberations that the privilege is meant to protect.  For this reason, this information should

27   not be disclosed.

28   In order to fall within the scope of the deliberative process privilege, government

information must be both pre-decisional and form part of "deliberative process."  *Maricopa*

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations

3

*Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1089, 1093 (9th Cir. 1997) (citing *Sears, Roebuck & Co.*, 421 U.S. at 151-52). "A 'predecisional' document is one 'prepared in order to assist an agency decisionmaker in arriving at his decision,' and may include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Id.* at 1093 (quoting *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 921 (9th Cir. 1992)).

A pre-decisional document need not relate to a specific policy or decision—the Supreme Court has made clear that the applicability of the common law deliberative process privilege does not "turn[] on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared." *Sears, Roebuck & Co.*, 421 U.S. at 151 n.18. As the D.C. Circuit has noted, "[a]ny requirement of a specific decision after the creation of the document would defeat the purpose of the [privilege]." *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1196 (D.C. Cir. 1991) (emphasis omitted). To establish information as "deliberative," an agency withholding material pursuant to that privilege in civil litigation "must establish what deliberative process is involved." *Hinckley v. United States*, 140 F.3d 277, 284 (D.C. Cir. 1998) (quotation marks and citation omitted).

A predecisional document is part of the "deliberative process," if "the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Maricopa*, 108 F.3d at 1093 (9th Cir. 1997). This inquiry focuses on "the effect of the materials' release"—namely, whether disclosure "would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Assembly of the State of Cal.*, 968 F.2d at 921.

The deliberative process privilege may be asserted by the "head of the department" or "supervisory personnel . . . of sufficient rank." *Landry v. FDIC*, 204 F.3d 1125, 1135–36 (D.C. Cir. 2000) ("it would be counterproductive to read 'head of the department' in the narrowest possible way"). Here, Acting Deputy General Counsel Bessee has submitted a detailed

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations

4

1   declaration describing exactly what kinds of deliberations are encompassed within the

2   documents.  *See* Bessee Decl., at 4-25 (describing deliberative information).  The declaration

3   describes, document by document, in as much painstaking care and detail as possible without

4   revealing the privileged information itself, exactly what the deliberative information entails and

5   why the information is deliberative.  *See id.*  Each of the documents that has been protected by

6   the deliberative process privilege is information that was pre-decisional and a part of the

7   deliberative process of the agency—its disclosure would be reasonably expected to chill candid

8   discussion on such issues in the future.  *Id.* ¶ 7.  As Acting Deputy GC Bessee describes, the

9   ability of government personnel to "openly discuss their views and engage in the candid give-

10  and-take among each other and with their client . . . is essential to their ability to render high

11  quality legal advice and representation, and, in turn, to facilitate the FBI's lawful execution of its

12  operational mission." *Id.*

13          Plaintiff, citing to the Ninth Circuit in *Carter* and the D.C. Circuit in *Tax Analysts*, claims

14  that the redacted information found within these documents can be protected by the deliberative

15  process privilege only if the documents involve deliberations prior to the ODNI's

16  declassification of certain quanta of aggregate data regarding the government's use of national

17  security process, instead of deliberations regarding the application of that declassification to

18  Twitter's request for the FBI to review its proposed Transparency Report.  *See* Pls.' Mot. at 5-6

19  (citing *Carter v. Dep't of Commerce*, 307 F.3d 1084, 1089–90 (9th Cir. 2002); *Tax Analysts v.*

20  *IRS*, 117 F. 3d 607, 617 (D.C. Cir. 1997)).  But Plaintiff clearly misinterprets the holding of both

21  cases.  In *Carter*, the Ninth Circuit held that statistically adjusted census data from the sub-

22  national level could not be protected as deliberative, because the data itself had not contributed to

23  the agency's decision-making regarding which kinds of data to release, but were instead

24  "prepared solely for the purpose of post-decision dissemination."  *Carter*, 307 F.3d at 1089.  The

25  case thus stands for the perfectly logical conclusion that the *results* of an agency's

26  deliberations—in that case, adjusted census data—cannot be protected as deliberative, because

27  they are not pre-decisional.

28

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations                                                    5

From one misinterpretation Plaintiff draws another.  In *Tax Analysts*, the court determined that the deliberative process privilege did not apply to Field Service Advice Memoranda ("FSA"s), which were formal interpretive memoranda drafted by the Office of Chief Counsel for the IRS in response to requests from IRS field analysts, revenue officers and appeals agents.  *See Tax Analysts*, 117 F.3d at 609.  Each FSA contained "a statement of issues, a conclusions section, a statement of facts, and a legal analysis section."  *Id.*  The court found that the FSAs could not be protected as deliberative because they were not pre-decisional:  the FSAs were "considered statements of the agency's legal position" that constituted a "body of coherent, consistent interpretations of the federal tax laws nationwide."  Wary of creating a "body of secret law," the court found that the agency could not protect the FSAs.  *Id.* at 617.

Neither case holds, or even suggests, the legal conclusion Plaintiff proffers:  that an agency's deliberations prior to *applying* a formal policy to a particular entity may not be protected by the deliberative process privilege.  *See* Pls.' Mot. at 5-6.  Indeed, such a conclusion would fly in the face of the policy rationale underlying the privilege—if an agency's deliberations could only be protected when they create interpretive rules, but not when it adjudicates those rules in particular instances, the privilege would cease to meaningfully protect frank discussion wherever actual entities were to be affected by a policy.  Instead, the cases stand for a far less sensational idea—that an agency may not protect the final product of deliberations as deliberative.

This situation is completely different.  The deliberative material at issue did not concern application of any agency policy or position, and certainly not a position that Plaintiff identifies as, "the reporting framework set forth in the January 2014 ODNI letter (sic)"  Pls.' Mot. at 6.[3] Moreover, the documents at issue in this motion are informal communications—email traffic— that discuss the FBI's response to Twitter's request for the FBI to review Twitter's proposed Transparency Report.  *See* Bessee Decl. at 4-25 (describing documents).  Far from reflecting the kind of formal, "considered statements of the agency's legal position" at issue in *Tax Analysts*, or

---

[3] Indeed, the ODNI did not issue a "policy" or position in 2014; it made a discretionary declassification of previously properly classified information.  *See* Doc. 147-1, Ex. 1.

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations

6

the data prepared for post-decision dissemination in *Carter*, these documents describe the initial opinions and candid views of attorneys and policy staff within DOJ and FBI prior to an agency decision. *See id.* ¶ 4. Such information is exactly the kind that, if released, "would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency." *See Assembly of the State of Cal.*, 968 F.2d at 921. If these documents are not validly protected by the privilege, it is hard to imagine what would be.

## II.    The Government's Decision-making Process and Mental Impressions are not "At Issue," so Plaintiff Does not Have a Need for Deliberative Information.

Plaintiff claims that the qualified nature of the deliberative process privilege means that the privilege must yield to its purported need for deliberative information. *See* Pls.' Mot. 7-9. Twitter contends that its suit amounts to a "direct[] challenge[] [to] a government agency's deliberative process." *See* Pls.' Mot. at 7 (citing *Holmes v. Hernandez*, 221 F. Supp. 3d 1011, 1021 (N.D. Ill. 2016)). But Twitter's challenge has nothing to do with Government deliberations: the only information that could be potentially relevant to whether the Government's position survives strict scrutiny[4] is whether release of the information contained in the draft Transparency Report would present a national security harm sufficient to justify the restriction of Plaintiff's speech. *See* July 6, 2017 Order, at 2 (assessing whether the Government had "demonstrate[d] that disclosure of the information in the Draft Transparency Report would present such a grave and serious threat of damage to national security as to meet the applicable strict scrutiny standard).

Plaintiff's argument to the contrary is largely based on its reading of the *In re NSL* case, which it points out requires "individualized consideration of Twitter's size, user base, or other unique attributes" in order for the government to survive strict scrutiny. *See* Pls.' Mot at 1-2 (citing *In re Nat'l Sec. Letter*, 863 F.3d 1110, 1125 (9th Cir. 2017). Plaintiff consequently argues that the "materials reflecting both the Government's classification *process* and its reasons

---

[4] Defendants preserve their position that strict scrutiny should not apply to this case, and maintain their view that discovery is not appropriate because the Government has demonstrated that the information Twitter wishes to reveal is properly classified, because its disclosure reasonably could be expected to result in serious damage to the national security. *See* Exec. Order 13526, § 1.1.

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations                                        7

for restricting Twitter's speech are 'undoubtedly relevant,'" citing to the Western District of Washington in *Karnoski*.  *See* Pls. Mot. at 8 (citing *Karnoski v. Trump*, No. C17-1297-MJP, 2018 WL 1784464 (W.D. Wash Apr. 13, 2018) (appeal pending).

This contention is incorrect for a number of reasons.  Most conspicuously, the Court's discussion of the individualized analysis requirement in *In re NSL* did not concern an assessment of whether information is classified at all—instead it concerned the issuance of a nondisclosure requirement in connection with a particular National Security Letter under 18 U.S.C. § 2709(c). *See In re NSL*, 863 F.3d at 1110.  Moreover, Plaintiff appears to believe that the individualized consideration contemplated by the *In re NSL* court must be demonstrated through internal email traffic—in fact, the unclassified Steinbach Declaration provides details about those individualized considerations with far greater concision and detail than these documents could. *See* Decl. of EAD Steinbach, ECF No. 147-1.  As described in the Government's Motion for Reconsideration addressing the effect of the *In re NSL* case on these proceedings, the Steinbach Declaration, "has articulated specific national security harms that could be reasonably be (sic) expected to result from the proposed disclosure, based on the specific conclusions that adversaries could draw from the disclosure that Plaintiff had, or had not, received certain process in a given year."  *See* Defs.' Reply in Supp. of Mot. for Reconsideration, ECF No. 184 at 3 (citing Steinbach Decl. ¶¶ 7–8, 30–38).  Moreover, the articulation of this rationale in that declaration includes "individualized information as to why disclosure of the particular information at issue in Twitter's report reasonably could be expected to harm national security— including based on Plaintiff's particular situation and the size of its customer base."  *See id.*  This information is readily available without the documents Plaintiff seeks.

Although Plaintiff would like to transform this case into one in which the state of mind of the decision-makers is at issue, this is *not* such a case—Plaintiff's failure to recognize this fact renders its discussion of *Karnoski* inapposite. Attempting to analogize to that case, Plaintiff claims that the issue in that case "parallels the core issue here: '[w]hether Defendants have satisfied their burden of showing that the Ban is constitutionally adequate.'"  *See* Pls.' Mot. at 8. But that decision addressed a completely different question, *i.e.* the constitutionally of the

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations

8

military's policy regarding service by transgender individuals.  *See Karnoski*, at \*13 (W.D. Wash. Apr. 13, 2018).  The court in that case found that the deliberative process privilege could not protect the documents at issue there because a key question in the suit was whether the motive for the classification was illegitimate "prejudice or stereotype . . . [which] necessarily turns on facts related to Defendants' deliberative process."  *See id.*  But even assuming the *Karnoski* district court was correct – an issue still on appeal[5] – no such questions of motive are at issue here, and thus *Karnoski* is therefore inapposite.

In sum, Plaintiff has not placed the Government's deliberations "at issue" in this case, and therefore evidence Plaintiff seeks here is not relevant.  What relevant information exists is available elsewhere, *i.e.*, in the Unclassified Steinbach Declaration and in Defendants' non-privileged document productions to Plaintiff.  Plaintiff has not shown that it has any need for this information that overrides the deliberative process privilege.

## III.  The Documents are Validly Protected by the Attorney-Client Privilege and the Work Product Doctrine.

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice . . . as well as an attorney's advice in response to such disclosures."  *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992).  The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  "Clients must be able to consult their lawyers candidly, and the lawyers in turn must be able to provide candid legal advice."  *United States v. Christensen*, 828 F.3d 763, 802 (9th Cir. 2015).  This rationale applies with "special force in the government context" to encourage employees "to seek out and receive fully informed legal advice."  *In re City of Erie*, 473 F.3d 413, 419 (2d Cir. 2007).

---

[5] The Government has filed a writ of mandamus with the Ninth Circuit challenging the district court's ruling in *Karnoski v. Trump*, No. 18-35347 (9th Cir.).

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations

9

Plaintiff claims that this is a "blanket assertion" of the privilege that should be "extremely disfavored" under *United States v. Martin*. *See* 278 F.3d 988, 1000 (9th Cir. 2002). But in that case, the court found that the party attempting to assert the privilege had not "identif[ied] specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege [was] asserted." *Id.* Here, instead, DOJ and FBI provided Twitter with a detailed privilege log describing each of the documents, and have further provided along with this opposition a declaration describing the documents in detail and the grounds supporting the privilege with respect to each document. *See* Bessee Decl. at 4-25. Both the privilege log and the declarations make clear that the documents at issue do, in fact, fulfill all the requirements of the privilege, and that the privilege has not been waived.[6] *See id.*

Next, plaintiff claims that the assertions would only be sufficient if they discussed "what sorts of legal issues" were supposedly discussed in the document, citing to this Court in *Elec. Frontier Found. v. Dep't of Justice* ("*EFF*"), No. 15-CV-03186-MEJ, 2016 WL 7406429, at *7 (N.D. Cal. Dec. 22, 2016), and to the District of Oregon in *Riverkeeper v U.S. Army Corps of Eng'rs*, 38 F. Supp. 3d 1207 (D. Or. 2014). Reading Plaintiff's brief, it would appear that the only way to assert the attorney-client privilege would be to reveal the privileged information itself. Unsurprisingly, neither *EFF* nor *Riverkeeper* stand for such a proposition. *EFF* found that the party attempting to assert the privilege had failed entirely to show that the documents at issue contained legal advice and that they had not discussed "*even generally* what sorts of legal issues" were presented, not that that party needed to describe those legal issues with specificity in order to protect the documents from release. *EFF*, 2016 WL 7406429, at *7 (emphasis added). Moreover, in *Riverkeeper*, the Court found that the documents at issue in that case could not be protected by the attorney-client privilege because the *Vaughn* index descriptions simply repeated the requirements of the privilege in a conclusory fashion.

---

[6] Plaintiff cites a case, *Wiener v. FBI*, for the proposition that an assertion of the attorney client privilege must be "tailor[ed] . . . to the specific document withheld." 943 F.2d 972, 978–79 (9th Cir. 1991). That case does not have to do with the attorney-client privilege at all, nor with any other privilege applicable here, but rather with the sufficiency of a *Vaughn* index in a FOIA case that asserted various FOIA exemptions not at issue in this case. *See id.* Nonetheless, both the privilege log and the Government's declarations are, in fact, tailored to each specific document.

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations
10

Here, in contrast, the privilege logs and the declarations go through each document in detail, and describe with as much specificity as possible the subjects of discussion. *See* Decl. at 5-32. The descriptions also identify what the roles of particular attorneys were in the discussions, and how the discussions furthered obtaining advice for the governmental client. *See id.* These are the exact kinds of documents that should be shielded by the attorney-client privilege, and without which the government could not count on its attorneys to provide unvarnished, candid legal advice.

Similarly, the attorney work product doctrine protects documents and other memoranda prepared by an attorney in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947). To qualify for work product protection, "documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative." *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 780-81 (9th Cir. 1989) (internal quotation marks removed). At the time these documents were created, Twitter had publically announced that it was considering litigation. *See* "Fighting for more #transparency," Twitter, Inc. Blog, (Feb. 6, 2014) ("[W]e have pressed the U.S. Department of Justice to allow greater transparency . . . We are also considering legal options we may have to seek to defend our First Amendment rights."); *see also* Bessee Decl. ¶ 5; Declaration of Patrick Findlay ("Findlay Decl."), Acting Chief and Special Counsel, Office of Strategy Management and Development, National Security Division, Department of Justice, ¶ 3, *attached as* Ex. B; Decl. of Julia A. Heiman ("Heiman Decl."), Senior Counsel, Federal Programs Branch, Civil Division, Department of Justice, ¶ 3-5, *attached as* Ex. C. It is incontestable that these documents were prepared "in anticipation of pending litigation or for trial." Fed. R. Civ. P. 26(b)(3).

Plaintiff claims that the documents protected by the work product doctrine were not prepared in "anticipation of litigation" because they served a "dual purpose," that is, they also served to respond to Twitter's request for the FBI to review Twitter's proposed report and would have "been created in substantially similar form" irrespective of the prospect of litigation. *See* Pls.' Mot. at 10. But Plaintiff misses a key aspect of the doctrine that is integral to why these

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations

11

1  documents are properly protected by the privilege.  In the Ninth Circuit, when faced with a

2  document that potentially serves both a litigation and a non-litigation purpose, the correct inquiry

3  is whether the "in light of the nature of the document and the factual situation in the particular

4  case, the document can be fairly said to have been prepared or obtained *because of* the prospect

5  of litigation."  *See In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt.* (*Torf*), 357 F.3d

6  900, 907 (9th Cir. 2004).  Where the documents' "litigation purpose so permeates any non-

7  litigation purpose that the two purposes cannot be discretely separated from the factual nexus as

8  a whole," the documents are entitled to work product protection.  *Id.* at 910.

9         This scenario is exactly of the kind in which the threat of litigation cannot be extricated

10  from the non-litigation purpose.  The Government was looking to respond to Twitter's request

11  with full knowledge that Twitter was considering filing suit, thus any inquiry into the proper

12  response "can be fairly said to have been prepared . . . because of the prospect of litigation."  *Id.*

13  at 907.  Although Twitter claims that the Government "would have been required to engage in

14  the same deliberations about whether to classify portions of Twitter's Transparency Report

15  regardless of its anticipation of Twitter's suit," these documents encompass not only the

16  operational deliberations about whether and what portions of the Transparency Report were

17  classified, but also the thoughts, impressions, and opinions of attorneys regarding the legal risk

18  associated with that task and how best to protect the Government's interests in reasonably

19  anticipated litigation with Twitter and other providers seeking to publish information regarding

20  their receipt of national security legal process.  *See, e.g.*, Bessee Decl. at 5 (Sample 1 contains

21  "written communications prepared by a Deputy General Counsel of the FBI, reflecting his

22  mental impressions and opinion as well as the mental impressions and opinions of other

23  Executive Branch attorneys, prepared and developed in anticipation of litigation concerning

24  Twitter's draft transparency report and potential litigation by other similarly situated individuals

25  or entities"); *see also* Findlay Decl.; Heiman Decl.

26         Moreover, as discussed above, Twitter's contention that the "mental impressions" of

27  attorneys are at issue in this case is simply incorrect.  *See* Pls.' Mot. at 11.  This Court's First

28  Amendment analysis does not turn on mental impressions—assuming *arguendo* that the strict

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations                                                    12

scrutiny standard applies, it turns on whether "disclosure of the information in the Draft Transparency Report would present such a grave and serious threat of damage to national security as to meet the applicable strict scrutiny standard."  July 6, 2017 Order at 2.  Twitter has not shown any need to see information validly protected as work product, because the mental impressions of government attorneys in anticipation of litigation, or indeed, after the commencement of Twitter's lawsuit, are not at issue in this case.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's Motion Challenging Defendants' Privilege Designations in full.

Dated:  March 1, 2019                          Respectfully submitted,

                                               JOSEPH H. HUNT
                                               Assistant Attorney General

                                               DAVID L. ANDERSON
                                               United States Attorney

                                               ANTHONY J. COPPOLINO
                                               Deputy Branch Director

                                               _____/s/_____
                                               JULIA A. HEIMAN, Bar No. 241415
                                               Senior Counsel
                                               CHRISTOPHER HEALY
                                               Trial Attorney
                                               U.S. Department of Justice
                                               Civil Division, Federal Programs Branch
                                               P.O. Box 883
                                               Washington, D.C. 20044
                                               Christopher.Healy@usdoj.gov
                                               *Attorneys for Defendants*

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations

13

Exhibit A

1   JOSEPH H. HUNT
    Assistant Attorney General
2   DAVID L. ANDERSON
3   United States Attorney
    ANTHONY J. COPPOLINO
4   Deputy Branch Director
    JULIA A. HEIMAN
5   Senior Counsel
6   CHRISTOPHER HEALY
    Trial Attorney
7   United States Department of Justice
    Civil Division, Federal Programs Branch
8
9   P.O. Box 883
    Washington, D.C.  20044
10  Telephone:  (202) 616-8480
    Facsimile:  (202) 616-8470
11  Email: julia.heiman@usdoj.gov

12
    Attorneys for Defendants
13

14                 **IN THE UNITED STATES DISTRICT COURT**

                  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
15

16  |                                          |   |                              |
    |------------------------------------------|---|------------------------------|
17  | TWITTER, INC.,                           | ) | Case No. 14-cv-4480-YGR      |
    |                                          | ) |                              |
18  |          Plaintiff,                      | ) |                              |
    |                                          | ) |                              |
19  |               v.                         | ) |                              |
    |                                          | ) |                              |
20  | WILLIAM P. BARR, Attorney                | ) | **DECLARATION OF CECILIA**   |
    | General of the United States, *et al.,*  | ) | **O. BESSEE, FEDERAL BUREAU**|
21  |                                          | ) | **OF INVESTIGATION**         |
22  |          Defendants.                     | ) |                              |
    |                                          | ) |                              |
23  |                                          | ) | Hon. Yvonne Gonzalez Rogers  |
    |                                          | ) |                              |
24

25

26      I, Cecilia O. Bessee, hereby declare as follows, pursuant to 28 U.S.C. § 1746:

27      1.      I am the Acting Deputy General Counsel for the Litigation Branch of the Federal

28  Bureau of Investigation ("FBI") Office of the General Counsel ("OGC").  As Acting Deputy

1   General Counsel, my principal responsibilities are to advise the General Counsel and other senior
2   executive management of the FBI regarding litigation concerns affecting the agency and to
3   oversee the work of the FBI OGC Litigation Branch.  This declaration is submitted in support of
4   the Government's Response to Twitter's Motion Challenging Defendants' Privilege
5   Designations in the above-captioned civil action.

6       2.      Through the exercise of my official duties, I am informed of the general subject
7   matter of this lawsuit, and I have been briefed regarding the instant motion, in which Twitter
8   requests an order from the Court overruling the Government's objections to production of certain
9   documents, in whole or in part, on the bases of the deliberative process, attorney work product,
10  and attorney client privileges and compelling production by the Government of a set of
11  documents referred to by Twitter as the "Bellwether Documents," and potentially of other
12  documents over which the Government has asserted similar privilege claims.

13      3.      The statements contained in this declaration are based upon my personal
14  knowledge, my review and consideration of documents and information available to me in my
15  official capacity, and on information provided to me by other FBI employees.  My conclusions
16  have been reached in accordance therewith.

17      4.      I have reviewed 17 of the documents identified by Twitter as "Bellweather
18  Documents," the production of which the FBI or DOJ objected to in whole or in part on the basis
19  of some or all of the above-stated privileges.  On behalf of the FBI, I hereby formally invoke the
20  deliberative process privilege over these documents, where identified below in paragraph 7; I
21  also explain the bases of the FBI's invocation of the attorney client privilege and work product
22  protection over these documents where applicable.  In sum, these documents are emails
23  containing confidential communications among attorneys within FBI OGC, or among FBI OGC
24  attorneys and an FBI operational subject matter expert or other Departmental attorneys,
25  including within the Department of Justice (DOJ) National Security Division ("NSD") and
26  Office of the Deputy Attorney General ("ODAG").  The attorneys involved in these
27  communications represented and advised the FBI regarding the FBI's response to Twitter's
28  request for the FBI's review of Twitter's draft transparency report in April 2014.  Certain

1   communications discussed herein also included other agencies within the Intelligence
2   Community, where their input was needed regarding Twitter's request. I understand that during
3   the time that these communications were ongoing, Twitter had indicated that it was considering
4   legal action, and that the FBI and other Departmental attorneys advising the FBI as to Twitter's
5   request anticipated that litigation related to Twitter's request was likely to result if Twitter was
6   not satisfied with the FBI's response. *See, e.g.*, Posting of Jeremy Kessel to Twitter Blog,
7   Fighting for more #transparency, https://blog.twitter.com/official/en_us/a/2014/fighting-for-
8   more-transparency.html, (Feb. 6, 2014); Julian Hattem, *Twitter threatens to sue Obama*
9   *administration*, The Hill, Feb. 6, 2014, https://thehill.com/policy/technology/197646-twitter-
10  considers-legal-fight-to-disclose-docs; *Twitter Threatens to Sue Obama Administration Over*
11  *Gov't Surveillance Requests*, CBS Local Washington, DC, Feb. 6, 2014,
12  https://washington.cbslocal.com/2014/02/06/twitter-threatens-to-sue-obama-administration-over-
13  govt-surveillance-requests/. The threat of litigation from Twitter, which preceded Twitter's
14  April 2014 submission to the FBI, informed the analysis of the attorneys advising the FBI as to
15  its response to Twitter's request.

16      6.      I address each of these documents, seriatim, below. Each is identified by the
17  "sample" number assigned to it by Twitter and by its title, which is the "Subject" line of the
18  email in question. For each document, I provide its date and a brief description of the document,
19  followed by an explanation of the bases for the applicable invocation of privilege.

20      7.      As noted below, each of these documents was prepared in confidence; has at all
21  times been maintained in confidence; and has not been shared with any third party. As discussed
22  below, each of the documents discussed herein contains preliminary discussions among attorneys
23  representing the FBI in furtherance of that representation, and as part of the analysis of how best
24  to address a given decision (whether in the context of determining how best to respond to
25  Twitter's request to review its draft transparency report, or in determining how to respond to a
26  similar request by another entity). The ability of attorneys representing the FBI or its personnel
27  to openly discuss their views and engage in candid give-and-take among each other and with
28  their client – in some cases, the agency, in other cases, an employee who is sued in his or her

1    individual capacity – is essential to their ability to render high quality legal advice and
2    representation, and, in turn, to facilitate the FBI's lawful execution of its operational mission.
3    This critically important candid discussion among attorneys representing the FBI and between
4    the attorneys and their clients will be chilled, to the detriment of vital public policy interests, if
5    these public servants fear that their preliminary discussions, drafts, and questions, will be subject
6    to disclosure to litigants or the general public.

7    **Sample 1** (FBI production)[1]

8        Document Title: "RE: Transparency Response?"

9        Date: May 9, 2014

10   i.      General description of the document:  This document is an email conveying to the FBI
11   General Counsel the advice and preliminary opinions of the FBI Deputy General Counsel for the
12   National Security Law Branch ("NSLB"), concerning the manner in which the FBI would
13   respond to communications from Twitter to the FBI regarding Twitter's proposed transparency
14   report, as well as the status of discussions and deliberations concerning the same with other
15   Executive Branch personnel.  In addition, the email updates the General Counsel regarding
16   discussions within FBI OGC and with DOJ regarding potential litigation strategy in a separate
17   national security matter that did not relate to Twitter's proposed transparency report.  This
18   document was prepared in confidence, has at all times been maintained in confidence, and it has
19   not been shared with any third party.

20   ii.     Deliberative information contained in the document:  The email contains the advice and
21   preliminary opinions of an FBI Deputy General Counsel, based upon his knowledge of past and
22   anticipated future litigation, and reflects not only his deliberations, but also those of other
23   Executive Branch personnel, concerning the manner in which the FBI would respond to
24   communications from Twitter to FBI OGC regarding its proposed transparency report.  This
25   document was prepared in the deliberative process, and disclosure would divulge the preliminary

26       [1] I am informed that the documents identified as Samples 1–3, 8–10, 12, and 14 were
27   produced by the FBI to Twitter in partially redacted form, and I have reviewed both the
     unredacted and redacted versions of these documents.  I am further informed that the documents
28   identified as Samples 4–7, 11, 13, and 15–17 were withheld in entirety from DOJ's document
     production to Twitter, and I have reviewed unredacted versions of these documents.

1   opinions, recommendations, and advice generated in the decision-making process of the

2   government.  This document does not represent final action, but instead contains predecisional

3   deliberations.  The document reflects advice and opinions that are internal to the government

4   concerning the manner in which the FBI would respond to communications from Twitter to FBI

5   OGC regarding its proposed transparency report.  In addition, this document contains the advice

6   and preliminary opinions of an FBI Deputy General Counsel and reflects the advice and

7   preliminary opinions of DOJ counsel regarding potential litigation strategy in a separate national

8   security matter that did not relate to Twitter's proposed transparency report.  Release of the

9   document would harm the decision-making process by revealing preliminary opinions shared

10   between agency employees, discouraging open, candid communication.

11   iii.      Attorney client information contained in the document:  This document contains

12   confidential communications between an FBI Deputy General Counsel and the FBI General

13   Counsel conveying legal advice rendered to the General Counsel in order for the General

14   Counsel to issue a statement on behalf of the agency.  These communications were made in

15   furtherance of the FBI's legal representation by a professional legal adviser in his capacity as a

16   lawyer.  Disclosure of confidential communication among FBI attorneys in furtherance of their

17   representation of their client -- in this case, the agency -- would impede the agency's ability to

18   candidly seek legal advice and the attorneys' ability to candidly provide such advice, which is

19   necessary to the operational mission of the FBI and the professional mission of FBI attorneys.

20   iv.      Work product contained in the document:  This document contains written

21   communications prepared by a Deputy General Counsel of the FBI, reflecting his mental

22   impressions and opinion as well as the mental impressions and opinions of other Executive

23   Branch attorneys, prepared and developed in anticipation of litigation concerning Twitter's draft

24   transparency report and potential litigation by other similarly situated individuals or entities

25   seeking to disclose information concerning their receipt of national security process.  In addition,

26   this document contains written communications prepared by a Deputy General Counsel of the

27   FBI, reflecting his mental impressions and opinions as well as the mental impressions and

28

1  opinions of DOJ counsel, prepared and developed in anticipation of litigation in a separate

2  national security matter that did not relate to Twitter's proposed transparency report.

3  **Sample 2** (FBI production)

4        Document Title: "RE: Transparency Response?"

5        Date: July 3–7, 2014

6  i.     General description of the document: This document contains several emails among FBI

7  OGC attorneys and among the FBI General Counsel, FBI Deputy General Counsel for NSLB,

8  FBI OGC attorneys, and an FBI operational subject matter expert, seeking and conveying

9  preliminary opinions and recommendations concerning the manner in which the FBI would

10 respond to communications from Twitter to the FBI OGC regarding Twitter's proposed

11 transparency report, and the process that the FBI should follow in preparing that response. This

12 document was prepared in confidence, has at all times been maintained in confidence, and it has

13 not been shared with any third party.

14 ii.    Deliberative information contained in the document: This document contains the legal

15 and operational advice and preliminary opinions of several FBI OGC attorneys, as well as the

16 General Counsel, and reflects their deliberations concerning the manner in which the FBI would

17 respond to communications from Twitter to the FBI regarding its proposed transparency report,

18 and the process the FBI should follow in preparing that response. The conversation contained in

19 the email exchange reflects the deliberative process and disclosure would divulge the preliminary

20 opinions, recommendations, and advice generated in the decision-making process of the

21 government. This document does not represent final action, but instead reflects predecisional

22 deliberations. Release of the document would harm the decision-making process by revealing

23 preliminary opinions shared between agency employees, discouraging open, candid

24 communication.

25 iii.    Attorney client information contained in the document: This document contains

26 confidential communications among FBI OGC attorneys and among the FBI General Counsel,

27 FBI Deputy General Counsel, FBI OGC attorneys, and an FBI operational subject matter expert

28 made during the process of seeking and conveying legal advice, in order for the General Counsel

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR
Declaration of Cecilia O. Bessee, Federal Bureau of Investigation

6

1   to issue a statement on behalf of the agency.  These communications were made in furtherance of

2   the FBI's legal representation by professional legal advisers in their capacities as lawyers.  These

3   communications also reflect the General Counsel seeking and receiving operational advice from

4   an FBI OGC attorney in furtherance of the General Counsel's representation of the agency, in

5   particular, to inform the legal advice he would be providing to the agency.  Disclosure of the

6   confidential communications among FBI attorneys in furtherance of their representation of their

7   client – in this case, the agency -- would impede the FBI's ability to candidly seek legal advice,

8   which is necessary to the operational mission of the FBI and the professional mission of FBI

9   attorneys.

10  iv.      Work product contained in the document:  This document contains written

11  communications prepared by FBI OGC attorneys, reflecting their thoughts, opinions, and mental

12  impressions, prepared and developed in anticipation of litigation concerning Twitter's proposed

13  draft transparency report and potential litigation by other individuals or entities who would seek

14  to publish similar information.

15  **Sample 3** (FBI production)

16        Document Title: "RE: Transparency Response?"

17        Date: July 3–7, 2014

18  i.       General description of the document:  This document contains several emails among the

19  FBI General Counsel, FBI Deputy General Counsel for NSLB, FBI OGC attorneys, and an FBI

20  operational subject matter expert, seeking and conveying preliminary opinions and

21  recommendations concerning the FBI's response to communications from Twitter to FBI OGC

22  regarding Twitter's proposed transparency report.  This document was prepared in confidence,

23  has at all times been maintained in confidence, and it has not been shared with any third party.

24  ii.      Deliberative information contained in the document:  This document contains the legal

25  and operational advice and preliminary opinions of several FBI OGC attorneys, as well as the

26  FBI General Counsel and FBI Deputy General Counsel for NSLB, and reflects their preliminary

27  deliberations concerning the FBI's response to communications from Twitter to FBI OGC

28  regarding its proposed transparency report, and the process the FBI should follow in preparing

1    that response. It was prepared in the deliberative process and disclosure would divulge the

2    preliminary opinions, recommendations, and advice generated in the decision-making process of

3    the government. This document does not represent final action, but instead reflects predecisional

4    deliberations. Release of the document would harm the decision-making process by revealing

5    preliminary opinions shared between agency employees, discouraging open, candid

6    communication.

7    iii.    Attorney client information contained in the document: This document contains

8    confidential communications among FBI OGC attorneys and the FBI General Counsel and FBI

9    Deputy General Counsel for NSLB made during the process of seeking and conveying legal

10    advice to the FBI General Counsel in order for the General Counsel to issue a statement on

11    behalf of the agency. These communications were made in furtherance of the FBI's legal

12    representation by professional legal advisers in their capacities as lawyers. These

13    communications also reflect the General Counsel seeking and receiving operational advice from

14    an FBI OGC attorney in furtherance of the General Counsel's representation of the agency, in

15    particular, to inform the legal advice he would be providing to the agency. Disclosure of the

16    confidential communications among FBI attorneys in furtherance of their representation of their

17    client – in this case, the agency -- would impede the FBI's ability to candidly seek legal advice,

18    which is necessary to the operational mission of the FBI and the professional mission of FBI

19    attorneys.

20    iv.    Work product contained in the document: This document contains written

21    communications prepared by FBI OGC attorneys, reflecting their opinions and mental

22    impressions, prepared and developed in anticipation of litigation involving Twitter and other

23    individuals or entities seeking to disclose information concerning their receipt of national

24    security process.

25    **Sample 4** (DOJ production)

26        Document Title: "RE: Transparency Response?"

27        Date: April 29, 2014–July, 12, 2014

28

1    i.      General description of the document:  This document contains an email in which the FBI
2    General Counsel, copying FBI OGC attorneys and an FBI operational subject matter expert,
3    consults attorneys in DOJ NSD, seeking their input regarding the FBI's response to
4    communications from Twitter to FBI OGC regarding Twitter's proposed transparency report.
5    The document then includes an email discussion regarding the process of preparing the FBI's
6    potential response to Twitter's communications among NSD and ODAG attorneys.[2]  This
7    document was prepared in confidence, has at all times been maintained in confidence, and it has
8    not been shared with any third party.

9    ii.     Deliberative information contained in the document:  This document reflects the FBI's
10   and NSD's deliberations concerning the FBI's response to communications from Twitter to FBI
11   OGC regarding Twitter's proposed transparency report.  This document does not represent the
12   FBI's final action or decision, but instead reflects predecisional discussions among attorneys
13   who were advising the FBI, either as its in-house counsel, or as legal advisers within DOJ NSD
14   or ODAG.  Release of the document would harm the decision-making process by exposing the
15   preliminary thoughts and discussions shared between agency employees, discouraging open,
16   candid communication.

17   iii.    Attorney client information contained in the document:  This document contains
18   confidential communications among the FBI General Counsel and attorneys at NSD and ODAG,
19   who would be advising the FBI concerning the FBI's response to communications from Twitter
20   regarding Twitter's proposed transparency report, as well as a follow up email exchange
21   regarding preparing the FBI's potential response among NSD and ODAG attorneys who would
22   be advising the FBI regarding its response.  The two initial emails from the General Counsel
23   request legal advice from NSD attorneys, and the subsequent email discussion among NSD and
24   ODAG attorneys includes analysis regarding confidential communications with the FBI and
25   consideration of further information that would be needed to inform decision making as to FBI's

26   _____
        [2] As stated above, I understand that this document was withheld in entirety from DOJ's
27   production to Twitter.  I am informed that, pursuant to an agreement between litigation counsel
     for the parties, the portions of this document that constitute communications between the FBI
28   General Counsel and Twitter's counsel were not produced, because the same exchange had
     already been provided to Twitter in the Government's productions.

1    response, as well as the factors that should inform the process of preparing the FBI's response.

2    Disclosure of the confidential communications among FBI, NSD, and ODAG attorneys in

3    furtherance of their representation of their client, *i.e.* the agency, would impede the FBI's ability

4    to candidly seek legal advice, which is necessary to the operational mission of the FBI and the

5    professional mission of its attorneys.

6    **Sample 5** (DOJ production)

7            Document Title: "RE: Transparency Response?"

8            Date: April 29–July 16, 2014

9    i.      General description of the document: This document contains emails in which the FBI

10   General Counsel, copying FBI OGC attorneys and an FBI operational subject matter expert,

11   consults attorneys in NSD seeking their input regarding the FBI's response to communications

12   from Twitter to FBI OGC regarding Twitter's proposed transparency report. The document then

13   includes an NSD attorney's response seeking information from the FBI General Counsel in

14   furtherance of NSD's representation of the FBI as to that issue, and bringing ODAG attorneys

15   into the conversation so that they could offer their advice to the FBI as to this issue as well.[3]

16   This document was prepared in confidence, has at all times been maintained in confidence, and it

17   has not been shared with any third party.

18   ii.     Deliberative information contained in the document: This document reflects the

19   deliberations of the FBI, NSD, and ODAG concerning the FBI's response to communications

20   from Twitter to the FBI regarding Twitter's proposed transparency report. This document does

21   not represent the FBI's final action or decision, but instead reflects predecisional discussions

22   among attorneys who were advising the FBI, either as its in-house counsel, or as legal advisers

23   within DOJ NSD or ODAG. Release of the document would harm the decision-making process

24   by exposing the preliminary discussions shared between agency employees, discouraging open,

25   candid communication.

26          [3] I understand that this document was withheld in entirety from DOJ's production to
27   Twitter, and I am informed that, pursuant to an agreement between litigation counsel for the
     parties, the portions of this document that constitute communications between the FBI General
28   Counsel and Twitter's counsel were not produced, because the same exchange had already been
     provided to Twitter in the Government's productions.

1   iii.      Attorney client information contained in the document:  This email exchange contains
2   confidential communications among the FBI General Counsel and attorneys at NSD and ODAG,
3   who would be advising the FBI in connection with the FBI's response to communications from
4   Twitter regarding Twitter's proposed transparency report.  Two of the emails contained in this
5   documents are communications from the FBI General Counsel requesting legal advice from NSD
6   attorneys, while the final email from an NSD attorney adds attorneys from ODAG to the
7   conversation and seeks information in furtherance of NSD's and ODAG's representation of the
8   FBI as to Twitter's request.  Disclosure of the confidential communications among FBI, NSD,
9   and ODAG attorneys in furtherance of their representation of their client – in this case, the
10  agency – would impede the FBI's ability to candidly seek legal advice, which is necessary to the
11  operational mission of the FBI and the professional mission of its attorneys.

12  **Sample 6** (DOJ production)

13           Document Title:  "RE: Transparency Response?"

14           Date:  April 29–July 17, 2014

15  i.       General description of the document:  This document contains emails in which the FBI
16  General Counsel, copying FBI OGC attorneys and an FBI operational subject matter expert,
17  consults attorneys in NSD seeking their input regarding the FBI's response to communications
18  from Twitter regarding Twitter's proposed transparency report.  The document then includes an
19  NSD attorney's response seeking information from the FBI General Counsel in furtherance of
20  NSD's representation of the FBI as to that issue, and bringing ODAG attorneys into the
21  conversation so that they could offer their advice to the FBI as to this issue as well.  A discussion
22  then follows regarding the process of preparing the FBI's response.[4]  This document was

23

24

---

25           [4] I understand that this document was withheld in entirety from DOJ's production to
26  Twitter, and I am informed that, pursuant to an agreement between litigation counsel for the
    parties, the portions of this document that constitute communications between the FBI General
27  Counsel and Twitter's counsel were not produced, because the same exchange had already been
    provided to Twitter in the Government's production.  Additionally, I understand that portions of
28  this document addressing scheduling were not produced pursuant to an agreement between
    litigation counsel that materials that were not substantive would not be produced.

1  prepared in confidence, has at all times been maintained in confidence, and it has not been shared
2  with any third party.

3  ii.      Deliberative information contained in the document:  This document reflects the FBI's
4  and NSD's deliberations concerning the FBI's response to communications from Twitter
5  regarding Twitter's proposed transparency report, and the process of preparing that response.
6  This document does not represent the FBI's final action or decision, but instead reflects
7  predecisional discussions among attorneys who were advising the FBI, either as its in-house
8  counsel, or as legal advisers within DOJ NSD or ODAG.  Release of the document would harm
9  the decision-making process by exposing the preliminary discussions shared between agency
10 employees, discouraging open, candid communication.

11 iii.     Attorney client information contained in the document:  This email exchange contains
12 confidential communications among the FBI General Counsel and attorneys at NSD and ODAG,
13 who would be advising the FBI in connection with the FBI's response to communications from
14 Twitter regarding its proposed transparency report.  The two initial emails from the General
15 Counsel request legal advice from NSD attorneys, while a subsequent exchange adds attorneys
16 from ODAG to the conversation and continues the conversation regarding the process of
17 preparing the FBI's response to Twitter's request, in furtherance of NSD's and ODAG's
18 representation of the FBI as to Twitter's request.  Disclosure of the confidential communications
19 among FBI, NSD, and ODAG attorneys in furtherance of their representation of their client – in
20 this case, the agency – would impede the FBI's ability to candidly seek legal advice, which is
21 necessary to the operational mission of the FBI and the professional mission of its attorneys.
22 **Sample 7** (DOJ production)

23        Document Title: "FW: Twitter Transparency Report"

24        Date: August 1, 2014

25 i.       General Description of the document:  This document contains an email from the FBI
26 General Counsel to FBI OGC attorneys, an FBI operational subject matter expert, and an NSD
27 attorney, conveying his opinions and mental impressions in response to an email from Twitter's
28 counsel, including conveying his opinions and mental impressions regarding a prior conversation

1  with Twitter's counsel regarding Twitter's communications concerning its proposed

2  transparency report.[5] This document was prepared in confidence, has at all times been

3  maintained in confidence, and it has not been shared with any third party.

4  ii.      Deliberative information contained in the document:  This document reflects the FBI's

5  General Counsel providing information, including his opinion and mental impressions, to other

6  attorneys representing the FBI with respect to Twitter's request, as well as to an FBI subject

7  matter expert, as part of the deliberative process of preparing the FBI's response to Twitter's

8  request.  This document does not represent the FBI's final action or decision, but instead reflects

9  predecisional discussions among attorneys who were advising the FBI, either as its in-house

10 counsel, or as a legal adviser within DOJ NSD.  Release of the document would harm the

11 decision-making process by exposing the preliminary discussions shared between agency

12 employees, discouraging open, candid communication.

13 iii.      Attorney client information contained in the document:  This email exchange constitutes

14 confidential communications among the FBI General Counsel and other attorneys at FBI and

15 NSD, who would be advising the FBI in connection with the FBI's response to communications

16 from Twitter regarding Twitter's proposed transparency report.  The General Counsel's email

17 shares information in furtherance of those attorneys' provision of advice to the FBI in connection

18 with Twitter's communications.  Disclosure of the confidential communications among FBI and

19 ODAG attorneys in furtherance of their representation of their client – in this case, the agency --

20 would impede the FBI's ability to candidly seek legal advice, which is necessary to the

21 operational mission of the FBI and the professional mission of its attorneys.

22 iv.      Work product contained in the document:  This document contains a written

23 communication prepared by the FBI General Counsel reflecting his opinions and mental

24 impressions, prepared and developed in anticipation of litigation involving Twitter and potential

25

26         [5] I understand that this document was withheld in entirety from DOJ's production to
27 Twitter, and I am informed that, pursuant to an agreement between litigation counsel for the
   parties, the portion of this document that constitutes a communication from Twitter's counsel to
28 the FBI's General Counsel was not produced, because the same exchange had already been
   provided to Twitter in the Government's productions.

1  litigation by other individuals or entities seeking to disclose information concerning their receipt
2  of national security process.

3  **Sample 8** (FBI production)

4       Document Title: "Twitter's proposed transparency report"

5       Date: August 22, 2014

6  i.       General Description of the document:  This document contains several emails among FBI
7  OGC attorneys, copying an administrative assistant of the General Counsel, regarding advice and
8  preliminary opinions, and discussing deliberations and coordinated review within the U.S.
9  Intelligence Community (USIC), concerning the classified information contained in Twitter's
10  proposed transparency report.   This document was prepared in confidence, has at all times been
11  maintained in confidence, and it has not been shared with any third party.

12  ii.      Deliberative information contained in the document:  This document contains the
13  transmission of operational advice and preliminary opinions of FBI OGC attorneys concerning
14  the classified information contained in Twitter's proposed transparency report, and coordinating
15  review of that information within the USIC.  This document does not represent final action, but
16  instead reflects and discusses the very process of preliminary decision making.  Release of the
17  document would harm the deliberative process by revealing the process by which the participants
18  in the discussion made their decisions, discouraging open, candid communication.

19  iii.     Attorney client privileged information contained in the document:  This document
20  contains confidential communications among FBI OGC attorneys, discussing transmittal of
21  operational advice to the General Counsel in furtherance of his and other OGC attorneys'
22  representation of the FBI, to facilitate their provision of legal advice to the FBI regarding its
23  response to communications from Twitter concerning its proposed transparency report.  These
24  communications were made in furtherance of the FBI's legal representation by professional legal
25  advisers in their capacities as lawyers.  Disclosure of the confidential communications among
26  FBI attorneys in furtherance of their representation of their client – in this case, the agency --
27  would impede the FBI's ability to candidly seek legal advice, which is necessary to the
28  operational mission of the FBI and the professional mission of FBI attorneys.

1  iv.      Work product contained in the document:  This document contains written
2  communications prepared by FBI OGC attorneys, reflecting their opinions and mental
3  impressions, prepared and developed in anticipation of litigation involving Twitter.
4  **Sample 9** (FBI production)
5          Document Title: "RE: Twitter"
6          Date: October 16, 2014
7  i.        General Description of the document:  This document contains emails between the FBI
8  Assistant General Counsel assigned to this litigation and DOJ litigators discussing the FBI's
9  deliberations regarding information contained in Twitter's proposed transparency report as well
10 as discussions concerning how the instant litigation may unfold.  The emails also contain advice
11 and opinions concerning the government's response to the Complaint Twitter filed in the district
12 court.  This document was prepared in confidence, has at all times been maintained in
13 confidence, and it has not been shared with any third party.
14 ii.       Deliberative information contained in the document:  This document contains discussions
15 regarding the FBI's decision-making and preliminary opinions regarding the classified
16 information contained in Twitter's proposed transparency report, as well as deliberations among
17 DOJ litigators and FBI counsel regarding how to proceed in the instant litigation.  It was
18 prepared in the deliberative process and disclosure would divulge the preliminary opinions,
19 recommendations, and advice generated in the decision-making process of the government.  This
20 document does not represent final action, but instead reflects predecisional deliberations.
21 Release of the document would harm the decision-making process by revealing preliminary
22 opinions shared between agency employees, discouraging open, candid communication.
23 iii.      Attorney client information contained in the document:  This document contains
24 confidential communications among an FBI Assistant General Counsel and DOJ litigators made
25 during the process of conveying legal advice to the FBI in connection with the instant case, and
26 seeking and providing information in furtherance of the representation of the FBI in this action.
27 Disclosure of these confidential communications between an FBI attorney representing the client
28 agency, *i.e.* FBI, and DOJ litigators would impede the FBI's ability to candidly seek legal advice,

1  which is necessary to the operational mission of the FBI and the professional mission of FBI and,
2  in this case, DOJ attorneys.

3  iv.     Work product contained in the document:  This document contains written
4  communications prepared by the FBI Assistant General Counsel and DOJ litigators responsible
5  for this action, reflecting their mental impressions, prepared and developed during the instant
6  litigation.  The communications in this document contain advice and discussion among counsel
7  regarding how to defend the interests of the United States in the instant litigation with Twitter,
8  and in anticipation of potential litigation by other individuals or entities seeking to disclose
9  information concerning their receipt of national security process.

10  **Sample 10** (FBI production)

11          Document Title:  "RE:  Twitter"

12          Date:  November 5–6, 2014

13  i.      General Description of the document:  This document contains emails between FBI OGC
14  and DOJ litigators discussing the FBI's deliberations regarding information contained in
15  Twitter's proposed transparency report.  The email also contains advice and opinions concerning
16  the government's response to the Complaint Twitter filed in the district court.  This document
17  was prepared in confidence, has at all times been maintained in confidence, and it has not been
18  shared with any third party.

19  ii.     Deliberative information contained in the document:  This document contains
20  information reflecting the FBI's decision-making regarding the classified information contained
21  in Twitter's proposed transparency report.  It was prepared in the deliberative process and
22  disclosure would divulge the preliminary opinions, recommendations, and advice generated in
23  the decision-making process of the government both with respect to Twitter's report and as to
24  how to proceed in the instant litigation.  This document does not represent final action, but
25  instead reflects predecisional deliberations and includes a discussion of the deliberative process
26  itself.  Release of the document would harm the decision-making process by revealing
27  preliminary opinions shared between agency employees, discouraging open, candid
28  communication.

1    iii.    Attorney client information contained in the document:  This document contains
2    confidential communications among FBI OGC and DOJ litigators made during the process of
3    conveying legal advice to the FBI in connection with litigation in this case, and obtaining
4    information from FBI in connection with that representation.  These communications were made
5    in furtherance of the FBI's legal representation by DOJ litigators.  Disclosure of these
6    confidential communications between FBI attorneys representing the client agency, *i.e.* FBI, and
7    DOJ litigators would impede the FBI's ability to candidly seek legal advice, which is necessary
8    to the operational mission of the FBI and the professional mission of FBI and, in this case, DOJ
9    attorneys.

10   iv.    Work product contained in the document:  This document contains written
11   communications prepared by FBI OGC attorneys and DOJ litigators, reflecting their opinions
12   and mental impressions, prepared and developed during the instant litigation.  The
13   communications in this document contain advice and discussion among counsel regarding how
14   to defend the interests of the United States in the instant litigation, and in anticipation of
15   potential litigation by other individuals or entities seeking to disclose information concerning
16   their receipt of national security process.

17   **Sample 11** (DOJ production)

18             Document Title:  "Need to Talk"

19             Date: April 8–9, 2014

20   i.    General Description of the document:  This document is an email exchange in which the
21   FBI Deputy General Counsel for NSLB seeks to speak with an attorney at NSD who would be
22   advising the FBI regarding its response to communications from Twitter regarding Twitter's
23   proposed transparency report and another legal issue not relevant to the instant matter.[6]  This
24   document was prepared in confidence, has at all times been maintained in confidence, and it has
25   not been shared with any third party.

26

27         [6] I understand that this document was withheld in its entirety from DOJ's production, and
     consistent with an agreement between litigation counsel that only substantive materials would be
28   produced, a discussion of scheduling included in this email exchange was not produced to
     Twitter.

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR                              17
Declaration of Cecilia O. Bessee, Federal Bureau of Investigation

1    ii.      Deliberative information contained in the document:  The email constitutes part of the
2    deliberative process of the FBI formulating its response to communications from Twitter
3    regarding its draft transparency report; it does not represent final action, but instead reflects
4    predecisional deliberations.  Release of the document would harm the decision-making process
5    by revealing the preliminary, decision-making process itself, and, discouraging open, candid
6    communication.

7    iii.     Attorney client information contained in the document:  This document contains a
8    confidential communication between the FBI Deputy General Counsel for NSLB and an NSD
9    attorney for purposes of obtaining legal advice for the FBI concerning its response to
10    communications from Twitter regarding Twitter's draft transparency report.  This
11    communication was made in furtherance of the FBI's legal representation by a professional legal
12    adviser in her capacity as a lawyer.  Disclosure of confidential communication between this FBI
13    attorney and the NSD attorney in furtherance of their representation of their client – in this case,
14    the agency -- would impede the FBI's ability to candidly seek legal advice, which is necessary to
15    the operational mission of the FBI and the professional mission of the attorneys representing the
16    agency.

17    iv.     Work product contained in the document:  This document contains a written
18    communication prepared by the FBI Deputy General Counsel for NSLB, arranging to obtain
19    legal advice from an NSD attorney as to the FBI's response to communications from Twitter
20    regarding its draft transparency report, in anticipation of litigation by Twitter and potential
21    litigation by other individuals or entities seeking to disclose information concerning their receipt
22    of national security process.

23    **Sample 12** (FBI production)

24          Document Title:  "Sample Transparency Letter"

25          Date:  June 14, 2013

26    i.      General Description of the document:  This document is an email from an FBI OGC
27    attorney to the FBI General Counsel seeking review by the General Counsel and his opinion
28    concerning a proposed draft model letter from the General Counsel to an electronic

1   communications service provider regarding a pending transparency report, and attaching the
2   draft proposed letter for the General Counsel's review and consideration.  This document was
3   prepared in confidence, has at all times been maintained in confidence, and it has not been shared
4   with any third party.

5   ii.      Deliberative information contained in the document:  The email contains the preliminary
6   opinion of an FBI OGC attorney formed in anticipation of imminent litigation and reflects the
7   deliberations of FBI OGC personnel concerning the manner in which the FBI General Counsel
8   could potentially respond to a communication from an electronic communications service
9   provider regarding a proposed transparency report.  This document was prepared in the
10  deliberative process and disclosure would divulge the opinions, recommendations, and advice
11  generated in the decision-making process of the government.  This document does not represent
12  final action, but instead reflects predecisional deliberations regarding the content of a draft
13  document.  Release of this document would harm the decision-making process by revealing
14  preliminary opinions shared between agency employees, discouraging open, candid
15  communication.

16  iii.     Attorney client privileged information contained in the document:  This document
17  contains confidential communications between an FBI OGC attorney and the FBI General
18  Counsel conveying legal advice rendered to and sought from the General Counsel in order for
19  the General Counsel to issue a statement on behalf of the agency.  These communications were
20  made in furtherance of the FBI's legal representation by a professional legal adviser in her
21  capacity as a lawyer.  Disclosure of confidential communication between FBI attorneys in
22  furtherance of their representation of their client – in this case, the agency -- would impede the
23  FBI's ability to candidly seek legal advice, which is necessary to the operational mission of the
24  FBI and the professional mission of FBI attorneys.

25  iv.      Work product contained in the document:  This document contains written
26  communications, including a draft document, prepared by an FBI OGC attorney, reflecting her
27  mental impressions, prepared and developed in anticipation of imminent litigation involving an
28  electronic communications service provider which, at that time, had indicated its intention to

1 | publish a proposed draft transparency report, as well as potential litigation by other individuals
2 | or entities who would seek to publish similar information.

3 | **Sample 13** (DOJ production)

4 |     Document Title: "RE: Transparency Response?"

5 |     Date: April 29–July 18, 2019

6 | i.     General description of the document: This document contains emails in which the FBI
7 | General Counsel, copying FBI OGC attorneys, an FBI operational subject matter expert, and
8 | ODAG counsel, consults NSD counsel, seeking their input regarding the FBI's response to
9 | communications from Twitter regarding its proposed transparency report. The document also
10 | contains an email discussion regarding the process of preparing the FBI's potential response to
11 | Twitter's communications among the General Counsel and NSD and ODAG attorneys.[7] This
12 | document was prepared in confidence, has at all times been maintained in confidence, and it has
13 | not been shared with any third party.

14 | ii.     Deliberative information contained in the document: This document reflects the FBI's
15 | and NSD's deliberations concerning the FBI's response to communications from Twitter
16 | concerning Twitter's proposed transparency report. This document does not represent the FBI's
17 | final action or decision, but instead reflects predecisional discussions among attorneys who were
18 | advising the FBI, either as its in-house counsel, or as legal advisers within DOJ NSD or ODAG.
19 | Release of the document would harm the decision-making process by exposing the preliminary
20 | thoughts and discussions shared between agency employees, discouraging open, candid
21 | communication.

22 | iii.     Attorney client information contained in the document: This email exchange contains
23 | confidential communications among the FBI General Counsel and attorneys at NSD and ODAG,

24 |

---

25 |     [7] I understand that this document was withheld in entirety from DOJ's production to
26 | Twitter. I am informed that, pursuant to an agreement between litigation counsel for the parties, the portions of this document that constitute communications between the FBI General Counsel
27 | and Twitter's counsel were not produced, because the same exchange had already been provided to Twitter in the Government's productions. Furthermore, I understand that a discussion of
28 | scheduling included in this email exchange was not produced to Twitter, consistent with an agreement between litigation counsel that only substantive materials would be produced.

1   who would be advising the FBI in connection with the FBI's response to communications from

2   Twitter regarding Twitter's proposed transparency report, as well as a follow up email exchange

3   regarding the process of preparing the FBI's response among the FBI General Counsel, NSD and

4   ODAG attorneys who would be advising regarding the FBI's response. The two initial emails

5   from the General Counsel request legal advice from NSD attorneys, and the subsequent email

6   discussion among FBI, NSD, and ODAG attorneys is focused on process and setting up further

7   conversations regarding the FBI's response. Disclosure of the confidential communications

8   among FBI, NSD, and ODAG attorneys in furtherance of their representation of their client – in

9   this case, the agency -- would impede the FBI's ability to candidly seek legal advice, which is

10   necessary to the operational mission of the FBI and the professional mission of its attorneys.

11   **Sample 14** (FBI Production)

12           Document Title: "FW: Twitter Transparency Report"

13           Date: August 1–October 16, 2014

14       i.   General Description of the document: This document contains an email from the FBI

15   General Counsel to FBI OGC attorneys, an FBI operational subject matter expert, and an NSD

16   attorney, conveying his thoughts and mental impressions in response to an email from Twitter's

17   counsel, including conveying his thoughts and mental impressions regarding a prior conversation

18   with Twitter's counsel regarding Twitter's communications concerning its proposed

19   transparency report. That communication was then transmitted to the FBI OGC attorney

20   assigned the instant matter, in furtherance the defense of the FBI's interests in this litigation.

21   This document was prepared in confidence, has at all times been maintained in confidence, and it

22   has not been shared with any third party.

23   ii.      Deliberative information contained in the document: This document reflects the FBI's

24   General Counsel providing information, and his opinions and mental impressions, to other

25   attorneys representing the FBI with respect to Twitter's communications, as well as to an FBI

26   subject matter expert, as part of the deliberative process of preparing the FBI's response to

27   Twitter's request. This document does not represent the FBI's final action or decision, but

28   instead reflects predecisional discussions among attorneys who were advising the FBI, either as

1  its in-house counsel, or as a legal adviser within DOJ NSD.  Release of the document would
2  harm the decision-making process by exposing the preliminary discussions shared between
3  agency employees, discouraging open, candid communication.

4  ii.      Attorney client information contained in the document:  This document contains a
5  confidential communication from the FBI General Counsel to FBI OGC attorneys, an FBI
6  operational subject matter expert, and DOJ attorneys providing them information regarding his
7  impressions regarding his communications with Twitter, in furtherance of those attorneys'
8  representation of the FBI in connection with the FBI's response to communications from Twitter
9  regarding its proposed transparency report, and in anticipation of the instant litigation and
10 potential litigation by other individuals or entities seeking to disclose information concerning
11 their receipt of national security process.  That confidential communication was then transmitted
12 to an FBI attorney assigned to the instant matter, in furtherance of that attorney's representation
13 of the FBI in the instant litigation.  Disclosure of a confidential communication between the FBI
14 General Counsel and DOJ and FBI attorneys in furtherance of their representation of their client
15 – in this case, agency -- would impede the FBI's ability to candidly seek legal advice, which is
16 necessary to the operational mission of the FBI and the professional mission of FBI attorneys.

17 iii.     Work product contained in the document:  This document reflects the opinions and
18 mental impressions of the FBI General Counsel regarding his communications with Twitter, and
19 his reaction to a communication from Twitter, written and provided to other FBI and DOJ
20 attorneys in anticipation of the instant litigation, in furtherance of their representation of the
21 agency.

22 **Sample 15** (DOJ production)

23          Document Title:  "RE: Twitter Transparency Report"

24          Date:  August 1, 2014

25 i.       General Description of the document:  This document contains an email from the FBI
26 General Counsel to FBI OGC attorneys, an FBI operational subject matter expert, and NSD
27 attorneys, conveying his thoughts and mental impressions in response to an email from Twitter's
28 counsel, including conveying his thoughts and mental impressions regarding a prior conversation

1 | with Twitter's counsel regarding Twitter's communications concerning its proposed
2 | transparency report. The document also contains subsequent emails transmitting this information
3 | to ODAG and NSD attorneys who were representing and advising the FBI with respect to its
4 | response to Twitter's communications, and reflecting the thoughts and mental impressions of
5 | NSD counsel as to Twitter's public statements regarding its proposed transparency report.[8] This
6 | document was prepared in confidence, has at all times been maintained in confidence, and it has
7 | not been shared with any third party.

8 | ii.    Deliberative information contained in the document: This document reflects the FBI's
9 | General Counsel providing information, and his opinions and mental impressions, to other FBI
10 | and DOJ attorneys representing the FBI with respect to Twitter's communications concerning its
11 | proposed transparency report and an FBI operational subject matter expert, as part of the
12 | deliberative process of preparing the FBI's response to Twitter's communications. This
13 | document does not represent the FBI's final action or decision, but instead reflects predecisional
14 | discussions among attorneys who were advising the FBI, either as its in-house counsel, or as a
15 | legal adviser within DOJ NSD or ODAG. Release of the document would harm the decision-
16 | making process by exposing the preliminary discussions shared between agency employees,
17 | discouraging open, candid communication.

18 | iii.    Attorney client information contained in the document: This email exchange contains
19 | confidential communications among the FBI General Counsel and other attorneys at FBI and
20 | NSD, and then ODAG, who would be advising the FBI in connection with communications from
21 | Twitter regarding Twitter's proposed transparency report. The General Counsel's email shares
22 | information in furtherance of those attorneys' provision of advice to the FBI regarding the FBI's
23 | response to communications from Twitter regarding its proposed transparency report, and NSD
24 | counsel's subsequent email likewise shares that attorney's thoughts and mental impressions in
25 | connection with his representation of the FBI concerning its response to Twitter's

26 | [8] I understand that this document was withheld in entirety from DOJ's production to
27 | Twitter. I am informed that, pursuant to an agreement between litigation counsel for the parties, the portion of this document that constitutes a communication from Twitter's counsel was not
28 | produced, because the same email had already been provided to Twitter in the Government's productions.

1 communications.  Disclosure of the confidential communications among FBI and NSD attorneys

2 in furtherance of their representation of their client – in this case, the agency -- would impede the

3 FBI's ability to candidly seek legal advice, which is necessary to the operational mission of the

4 FBI and the professional mission of its attorneys.

5 iv.      Work product contained in the document:  This document contains written

6 communications prepared by the FBI General Counsel representing the FBI reflecting his

7 opinions and mental impressions, prepared and developed in anticipation of litigation involving

8 Twitter and other individuals or entities seeking to disclose information concerning their receipt

9 of national security process.

10 **Sample 16** (DOJ production)

11          Document Title:  "FW: Twitter Transparency Report"

12          Date:  August 1, 2014

13 i.       General Description of the document:  This document contains an email from the FBI

14 General Counsel to FBI OGC attorneys, an FBI operational subject matter expert, and

15 NSD attorneys, conveying his thoughts and mental impressions in response to an email from

16 Twitter's counsel, including conveying his thoughts and mental impressions regarding a prior

17 conversation with Twitter's counsel regarding Twitter's communications concerning its

18 proposed transparency report.  The document also contains subsequent emails, transmitting this

19 information to additional NSD and ODAG attorneys representing and advising the FBI with

20 respect to its response to Twitter's communications concerning its proposed transparency report.[9]

21 This document was prepared in confidence, has at all times been maintained in confidence, and it

22 has not been shared with any third party.

23 ii.      Deliberative information contained in the document:  This document reflects the FBI

24 General Counsel providing information, and his opinions and mental impressions, to other DOJ

25 and FBI attorneys representing the FBI with respect to communications from Twitter regarding

26          [9] I understand that this document was withheld in entirety from DOJ's production to
27 Twitter.  I am informed that, pursuant to an agreement between litigation counsel for the parties,
the portion of this document that constitutes a communication from Twitter's counsel was not
28 produced, because the same email had already been provided to Twitter in the Government's
production.

1   its proposed transparency report and an FBI operational subject matter expert, as part of the

2   deliberative process of preparing the FBI's response to Twitter's communications. This

3   document does not represent the FBI's final action or decision, but instead reflects predecisional

4   discussions among attorneys who were advising the FBI, either as its in-house counsel, or as

5   legal advisers within NSD or ODAG. Release of the document would harm the decision-making

6   process by exposing the preliminary discussions shared between agency employees,

7   discouraging open, candid communication.

8   iii.   Attorney client privileged information contained in the document: This email exchange

9   contains confidential communications among the FBI General Counsel and other attorneys at

10   FBI, NSD, and ODAG, who would be advising the FBI regarding the FBI's response to

11   communications from Twitter concerning its proposed transparency report. The General

12   Counsel's email shares information in furtherance of those attorneys' provision of advice to the

13   FBI in connection Twitter's communications concerning its proposed transparency report, and

14   the NSD attorneys' subsequent emails likewise share the FBI General Counsel's opinions and

15   mental impressions with other attorneys representing the FBI as to Twitter's communications.

16   Disclosure of the confidential communications among FBI and NSD attorneys in furtherance of

17   their representation of their client – in this case, the agency -- would impede the FBI's ability to

18   candidly seek legal advice, which is necessary to the operational mission of the FBI and the

19   professional mission of its attorneys.

20   iv.   Work product contained in the document: This document contains a written

21   communication prepared by the FBI General Counsel, reflecting his opinions and mental

22   impressions, prepared and developed in anticipation of litigation involving Twitter and other

23   individuals or entities seeking to disclose information concerning their receipt of national

24   security process.

25   **Sample 17** (DOJ production)

26        Document Title: "Twitter Letter"

27        Date: September 5–10, 2014

28

1    i.       General Description of the document:  This document contains an email from the FBI
2    General Counsel regarding a draft letter from the FBI prepared for possible response to
3    communications from Twitter regarding Twitter's proposed transparency report, offering his
4    legal advice and analysis regarding aspects of the draft and seeking input from other FBI OGC
5    attorneys, an FBI operational subject matter expert, and NSD attorneys, as well as National
6    Security Agency and ODNI attorneys.  Additional attorneys from ODAG and ODNI are added to
7    the discussion.[10]  This document was prepared in confidence, has at all times been maintained in
8    confidence, and it has not been shared with any third party.

9    ii.      Deliberative information contained in the document:  This document reflects the FBI's
10   General Counsel providing legal advice to, and seeking additional legal and operational advice
11   from, other attorneys and an FBI operational subject matter expert representing the FBI with
12   respect to Twitter's communications concerning its proposed transparency report, as part of the
13   deliberative process of preparing the FBI's response to Twitter's communications.  This
14   document does not represent the FBI's final action or decision, but instead reflects predecisional
15   discussions among attorneys who were advising the FBI, either as its in-house counsel, or as a
16   legal advisers within NSD, ODAG, or other members of the USIC.  Release of the document
17   would harm the decision-making process by exposing the preliminary discussions shared
18   between agency employees, discouraging open, candid communication.

19   iii.     Attorney client information contained in the document:  This email exchange contains
20   confidential communications among the FBI General Counsel and other attorneys at FBI, NSD
21   and ODAG, as well as other attorneys in the USIC who would be advising the FBI in connection
22   with its response to communications from Twitter regarding Twitter's proposed transparency
23   report.  The General Counsel's email shares information in furtherance of those attorneys'
24   provision of advice to the FBI in connection with determining the FBI's response to Twitter's
25   communications, and the subsequent emails in the chain likewise share the FBI General

26

27         [10] I understand that this document was withheld in entirety from DOJ's production to
     Twitter.  I am informed that, pursuant to an agreement between litigation counsel for the parties,
28   the Government did not produce to Twitter a transmittal email, which was not substantive or the
     email attachment, which was otherwise provided to Twitter in the Government's productions.

1  Counsel's legal advice and request for further legal advice with other attorneys representing the

2  FBI as to the same matter.  Disclosure of the confidential communications among FBI attorneys

3  and other attorneys advising the agency in furtherance of their representation of their client – in

4  this case, the agency -- would impede the FBI's ability to candidly seek legal advice, which is

5  necessary to the operational mission of the FBI and the professional mission of its attorneys.

6  iv.      Work product contained in the document:  This document contains written

7  communications prepared by the FBI General Counsel, reflecting his thoughts and mental

8  impressions, prepared and developed in anticipation of litigation involving Twitter and other

9  individuals or entities seeking to disclose information concerning their receipt of national

10  security process.

11

12              I declare under penalty of perjury that the foregoing is true and correct.

13  Dated: _Mar<u>ch 1st</u>_____, 2019

14

15

16

17  CECILIA O. BESSEE

18  Acting Deputy General Counsel
    Federal Bureau of Investigation

19  Washington, DC

20

21

22

23

24

25

26

27

28

Exhibit B

1  JOSEPH H. HUNT
   Assistant Attorney General
2  DAVID L. ANDERSON
   United States Attorney
3  ANTHONY J. COPPOLINO
   Deputy Branch Director
4  JULIA A. HEIMAN
   Senior Counsel
5  CHRISTOPHER HEALY
6  Trial Attorney
   United States Department of Justice
7  Civil Division, Federal Programs Branch

8
   P.O. Box 883
9  Washington, D.C. 20044
   Telephone: (202) 616-8480
10 Facsimile: (202) 616-8470
11 Email: julia.heiman@usdoj.gov

12 Attorneys for Defendants the Attorney General, *et al.*

13         **IN THE UNITED STATES DISTRICT COURT**

14      **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15
16 TWITTER, INC.,                     )   Case No. 14-cv-4480
                                      )
17     Plaintiff,                     )
                                      )
18                                    )   **DECLARATION OF PATRICK**
             v.                       )   **N. FINDLAY SUBMITTED IN**
19                                    )   **SUPPORT OF DEFENDANTS'**
   WILLIAM P. BARR, United States     )   **OPPOSITION TO PLAINTIFF'S**
20     Attorney General, *et al.*,    )   **MOTION CHALLENGING**
                                      )   **DEFENDANTS' PRIVILEGE**
21     Defendants.                    )   **DESIGNATIONS**
                                      )
22                                    )
                                      )   Hon. Yvonne Gonzalez Rogers
23

24         Pursuant to 28 U.S.C. § 1746, I, Patrick N. Findlay, hereby declare:

25         1.    I am the Acting Chief and Special Counsel of the Office of Strategy Management

26 and Development ("OSMD") of the National Security Division ("NSD") of the United States

27 Department of Justice ("DOJ" or the "Department"). NSD is a component of the Department.

28
   *Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480                          1
   Declaration of Patrick N. Findlay Submitted in Support of
   Defendants' Opposition to Plaintiff's Motion
   Challenging Defendants' Privilege Designations

*See* 72 Fed. Reg. 10064 (Mar. 7, 2007). I have served as the Acting Chief of OSMD since July 2018 and as a Special Counsel in OSMD since June 2016. Prior to my positions with NSD, I served as an Associate General Counsel for the Federal Bureau of Investigation ("FBI") from July 2012 until June 2016.

2.     In the course of my responsibilities, I have become aware of the above-captioned case, and of Twitter's Motion Challenging Defendants' Privilege Designations, ECF No. 258 ("Twitter's Motion"). I have personally reviewed the documents addressed by Twitter's Motion discussed herein, and I base this declaration on my review, as well as on information made available to me in my official capacity. I submit this declaration in support of the Defendants' opposition to Twitter's Motion.

3.     Sample Documents 4 and 15 are email communications, each described in more detail below, sent by NSD attorneys during the period in which they provided counsel to the FBI with respect to Twitter's request to publish Twitter's draft Transparency Report. During the timeframe in which those emails were written, July and August 2014, NSD attorneys' advice with respect to Twitter's request was informed by an awareness that Twitter was likely to file suit in connection with its request.

4.     Sample Document 4 is an email chain consisting of various replies and forwards encompassing what appear to be eleven emails. In this declaration, I address only the last two emails reflected in Sample Document 4, both sent July 12, 2014, which are an email exchange between two NSD attorneys, both of whom were advising the FBI as to Twitter's request.[1] These last two emails reflect the senders' mental impressions regarding their communications with the FBI regarding Twitter's request. The first of these emails includes also an NSD attorney's advice and opinion regarding a possible FBI response to Twitter's request, including, expressly, in light of the prospect of litigation. The second email also reflects another NSD attorney's opinion regarding the FBI's potential response to Twitter's request.

---

[1] The first of these emails also includes as a recipient an ODAG attorney who was also advising the FBI as to its response to Twitter's request.

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480                                                     2
Declaration of Patrick N. Findlay Submitted in Support of
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations

1    5.    Sample Document 15 is an email chain consisting of various replies and forwards

2  encompassing what appear to be five emails. In this declaration, I address only the last email in

3  this chain, an August 1, 2014, email from an NSD attorney to the then-Assistant Attorney

4  General for National Security and other attorneys in NSD. In this last email, the NSD attorney

5  provides an excerpt that he appears to have cut-and-pasted from a document on Twitter's

6  website, necessarily reflecting the attorney's impression and opinion of what part of the

7  document was important enough to raise with NSD's most-senior leadership and what was not.

8    Executed on this  $\underline{1^{st}}$  day of March 2019, at Washington, D.C.

9

10

11    PATRICK N. FINDLAY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480                                    3
Declaration of Patrick N. Findlay Submitted in Support of
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations

# Exhibit C

JOSEPH H. HUNT
Assistant Attorney General
DAVID L. ANDERSON
United States Attorney
ANTHONY J. COPPOLINO
Deputy Branch Director
JULIA A. HEIMAN
Senior Counsel
CHRISTOPHER HEALY
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 616-8480
Facsimile:  (202) 616-8470
Email: julia.heiman@usdoj.gov

Attorneys for Defendants the Attorney General, *et al.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWITTER, INC., | Case No. 14-cv-4480 |
| Plaintiff, | |
| v. | **DECLARATION OF JULIA A. HEIMAN SUBMITTED IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION CHALLENGING DEFENDANTS' PRIVILEGE DESIGNATIONS** |
| WILLIAM P. BARR, United States Attorney General, *et al.*, | |
| Defendants. | |
| | Hon. Yvonne Gonzalez Rogers |

Pursuant to 28 U.S.C. § 1746, I, Julia A. Heiman, hereby declare:

1.      I am a Senior Counsel in the Civil Division, Federal Programs Branch, of the

United States Department of Justice.  I serve as one of the attorneys representing the Defendants

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480
Declaration of Julia Heiman Submitted in Support of
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations

1

in the above-captioned case.  The statements made herein are based on my personal knowledge, and on information made available to me in the course of my duties and responsibilities as Defendants' counsel in this case.

2.      I submit this declaration in support of the Defendants' opposition to Plaintiff's Motion Challenging Defendants' Privilege Designations, ECF No. 258, specifically to explain why emails written by a DOJ litigator included in the documents that Twitter has labelled "Sample 9" and "Sample 10" are properly protected from disclosure as work product.

3.      Sample 9 and 10 both constitute email exchanges that occurred following the commencement of the instant action, between FBI attorneys and the DOJ litigating attorneys in the Federal Programs Branch who represented the FBI in this litigation at that time.  As one of the litigators representing the FBI in this litigation, I was copied on both of these email exchanges.

4.      Sample 9 is an email exchange that occurred on October 16, 2014, shortly after Plaintiff commenced this action.  Two emails in that exchange were prepared by another DOJ litigator representing the FBI in this matter and discuss his opinions and legal advice related to this action, as well as his predictions regarding how this litigation might unfold and his advice based on those predictions.  This document also includes a list of that litigator's requests for information from FBI in furtherance of DOJ's representation of the FBI in this matter, also reflecting his advice and mental impressions regarding this litigation.

5.      Sample 10 is an email exchange that occurred on November 5–6, 2014, that includes two emails written by the same DOJ litigator as in Sample 9.  These two emails contain that litigator's legal advice and opinions regarding this action, including in light of confidential information had been provided to him by the client, *i.e.* the FBI, as well as other by other client agencies in the Intelligence Community.

Executed on this 1st day of March, 2019.

                                                    _/s/ Julia A. Heiman___
                                                    JULIA A. HEIMAN
                                                    Senior Counsel

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480
Declaration of Julia Heiman Submitted in Support of
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Federal Programs Branch,
Civil Division
United States Department of Justice

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480
Declaration of Julia Heiman Submitted in Support of
Defendants' Opposition to Plaintiff's Motion
Challenging Defendants' Privilege Designations

3