Matthew Cagle (CA Bar No. 286101)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
    OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
T: 415.343.0758
mcagle@aclunc.org

Ashley Gorski
Naomi Gilens (CA Bar No. 315813)
Brett Max Kaufman
Patrick Toomey
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
agorski@aclu.org

Ahilan T. Arulanantham (CA Bar No. 237841)
Mohammad Tajsar (CA Bar No. 280152)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
    OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
T: 213.977.5211
aarulanantham@aclusocal.org

*Attorneys for Amici Curiae*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

|  |  |
|---|---|
| TWITTER, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General of the United States, *et al.*,<br><br>*Defendants*. | Case No. 14-cv-4480-YGR<br><br>**[PROPOSED] BRIEF OF AMICI CURIAE THE AMERICAN CIVIL LIBERTIES UNION, THE AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, AND THE AMERICAN CIVIL LIBERTIES UNION OF SOUTHERN CALIFORNIA IN SUPPORT OF TWITTER, INC.'S OPPOSITION TO DEFENDANTS' INVOCATION OF STATE SECRETS AND MOTION TO DISMISS**<br><br>Hon. Yvonne Gonzalez Rogers |

Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

# CORPORATE DISCLOSURE STATEMENT

Amici curiae American Civil Liberties Union ("ACLU"), ACLU of Northern California, and ACLU of Southern California state that they do not have parent corporations. No publicly held corporation owns 10% or more of any stake or stock in amici curiae.

Dated:   May 6, 2019

*/s/ Matthew Cagle*
Matthew Cagle

*Attorney for Amici Curiae*

ii
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

# TABLE OF CONTENTS

STATEMENT OF INTEREST ............................................................................................. 1

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    I.  The Court Should Reject the Government's Invocation of the Privilege .......................... 2

        A.  Both precedent and history show why the Court must conduct a particularly searching inquiry of the government's claim of privilege ............................................. 2

        B.  In other noncriminal cases, disclosure of classified information to security-cleared counsel has not harmed national security ........................................................ 6

        C.  The circumstances of this case and the government's invocation of the state secrets privilege show that the privilege is inapplicable ................................................. 8

    II.  Even if the State Secrets Privilege Applies to the Classified Steinbach Declaration, Dismissal Here Is Improper ................................................................................ 8

        A.  The Court has already determined that the classified Steinbach declaration does not establish a "valid defense." ........................................................................... 10

        B.  The privileged and non-privileged information are not "inseparable." ...................... 11

CONCLUSION ................................................................................................................. 16

iii

Case No. 14-cv-4480-YGR

[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

# TABLE OF AUTHORITIES

## Cases

*Al Bakri v. Obama*,
  660 F. Supp. 2d 1 (D.D.C. 2009) .................................................................................. 7

*Al-Haramain Islamic Found., Inc. v. Bush*,
  507 F.3d 1190 (9th Cir. 2007) ........................................................................ 2, 3, 9, 14

*Al-Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,
  686 F.3d 965 (9th Cir. 2012) ..................................................................................... 7, 15

*Burnett v. Al Baraka Inv. & Dev. Corp.*,
  323 F. Supp. 2d 82 (D.D.C. 2004) .............................................................................. 16

*Ellsberg v. Mitchell*,
  709 F.2d 51 (D.C. Cir. 1983) ....................................................................................... 3

*El-Masri v. United States*,
  479 F.3d 296 (4th Cir. 2007) ............................................................................ 1, 6, 13

*Fazaga v. FBI*,
  916 F.3d 1202 (9th Cir. 2019) ........................................................................... passim

*Fitzgerald v. Penthouse Int'l, Ltd.*,
  776 F.2d 1236 (4th Cir. 1985) ............................................................................. 10, 13

*Gen. Dynamics Corp. v. United States*,
  563 U.S. 478 (2011) .......................................................................................... 9, 13

*Hanna v. Plumer*,
  380 U.S. 460 (1965) ................................................................................................... 7

*Horn v. Huddle*,
  647 F. Supp. 2d 55 (D.D.C. 2009) ....................................................................... 5, 6, 8

*Ibrahim v. Dep't of Homeland Sec.*,
  C 06-00545 WHA, 2013 WL 1703367 (N.D. Cal. Apr. 19, 2013) ............................. 7

*Ibrahim v. U.S. Dep't of Homeland Sec.*,
  912 F.3d 1147 (9th Cir. 2019) ........................................................................... 1, 5, 15

*In re Sealed Case*,
  494 F.3d 139 (D.C. Cir. 2007) ............................................................... 9, 11, 13, 15

*In re United States*,
  872 F.2d 472 (D.C. Cir. 1989) ................................................................................ 3, 9

iv
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

*KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*,
  710 F. Supp. 2d 637 (N.D. Ohio 2010) .................................................................. 7

*Kronisch v. United States*,
  150 F.3d 112 (2d Cir. 1998) ................................................................................ 15

*Loral Corp. v. McDonnell Douglas Corp.*,
  558 F.2d 1130 (2d Cir. 1977) ................................................................................ 6

*Marbury v. Madison*,
  5 U.S. (1 Cranch) 137 (1803) ............................................................................. 10

*Mohamed v. Jeppesen Dataplan, Inc.*,
  614 F.3d 1070 (9th Cir. 2010) ..................................................................... passim

*Molerio v. FBI*,
  749 F.2d 815 (D.C. Cir. 1984) ....................................................................... 10, 11

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
  458 U.S. 50 (1982) ............................................................................................. 10

*N.Y. Times Co. v. United States*,
  403 U.S. 713 (1971) .......................................................................................... 4, 5

*Salim v. Mitchell*,
  No. 15-cv-286 (E.D. Wa. Aug. 2, 2017) ............................................................. 16

*Tenet v. Doe*,
  544 U.S. 1 (2005) .............................................................................................. 13

*Totten v. United States*,
  92 U.S. 105 (1875) ............................................................................................ 13

*Twitter, Inc. v. Sessions*,
  263 F. Supp. 3d 803 (N.D. Cal. 2017) ........................................................... 8, 11

*United States v. Klein*,
  80 U.S. 128 (1871) ............................................................................................ 10

*United States v. Reynolds*,
  345 U.S. 1 (1953) ................................................................................... 2, 3, 4, 13

## Statutes

Classified Information Procedures Act, 18 U.S.C. app. III ..................................... 6, 15

Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801 et seq. ............................... 15

v
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

**Other Authorities**

Amy Coney Barrett, *Procedural Common Law*, 94 Va. L. Rev. 813 (2008) ................................ 7

Constitution Project & Human Rights First, Habeas Works: Federal Courts' Proven
   Capacity to Handle Guantánamo Cases—A Report from Former Federal Judges
   (June 2010)................................................................................................................. 7

Erwin Griswold, *Secrets Not Worth Keeping*, Wash. Post, Feb. 16, 1989 ................................ 5

Garry Wills, *Why the Government Can Legally Lie*, 56 N.Y. Rev. of Books 32 (2009)................ 4

*Nom. of Lt. Gen. James Clapper, Jr., USAF, Ret., to Be Dir. of Nat'l Intelligence:
   Hearing Before S. Select Comm. on Intel.*, 111th Cong. 18 (July 20, 2010) ............................ 3

*Oversight of the FBI: Hearing Before the S. Comm. on the Judiciary*, 115th Cong. (May 3,
   2017), 2017 WL 1684512 ............................................................................................ 3

vi
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

**STATEMENT OF INTEREST**[1]

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with more than 1.5 million members dedicated to the principles of liberty and equality embodied in the Constitution and our nation's civil rights laws. The ACLU of Northern California and the ACLU of Southern California are state affiliates of the national ACLU. The ACLU, ACLU of Northern California, and ACLU of Southern California have appeared before federal courts in numerous cases implicating civil liberties and the state secrets privilege, including as counsel in *Fazaga v. FBI*, 916 F.3d 1202 (9th Cir. 2019), *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070 (9th Cir. 2010) (en banc), *El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007), *Wikimedia Foundation v. NSA*, 335 F. Supp. 3d 772 (D. Md. 2018), and as amicus in *Ibrahim v. U.S. Department of Homeland Security*, 912 F.3d 1147 (9th Cir. 2019).

**INTRODUCTION**

This is an extraordinary case. The government advances a set of unprecedented arguments about the scope of its authority to thwart a plaintiff's access to an Article III court. If the Court were to accept these arguments, it would endorse a dramatic expansion of the state secrets privilege—an expansion contrary to established law, and with far-reaching implications for future cases in which alleged rights violations touch on classified material.

More than two years ago, the government voluntarily entered a classified declaration into evidence in support of its motion for summary judgment. The Court determined that this declaration, which consisted largely of "generic" and "seemingly boilerplate" material, failed to establish that the government's restrictions on Twitter's speech satisfied the First Amendment. In response to the Court's Order to Show Cause why the declaration should not be disclosed to Twitter's security-cleared counsel, the government asserted, for the first time, that the declaration is a now a state secret, must be removed from the case, and mandates dismissal of

---

[1] This brief is filed with the consent of all parties. Counsel for amici curiae certify that no party's counsel authored this brief in whole or in part, and no person other than amici curiae, their members, or their counsel made a monetary contributions to its preparation or submission.

1
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

this suit. Amici are not aware of any case supporting the application of the privilege in these circumstances, and the government cites to none.

What is even more troubling is that the government makes this argument in the alternative. In other words, the government's position is that if the declaration must be disclosed to Twitter's security-cleared counsel, it is a state secret to be stripped from the evidentiary record—but if not, it is not. Unsurprisingly, the law of the state secrets privilege does not countenance these kinds of games. The privilege is too powerful a tool, and too susceptible to abuse, to permit its casual invocation for a tactical advantage.

At bottom, the facts and circumstances of this case make plain that the declaration is not subject to the privilege. And even if it were, the result is simply that the declaration is removed from the case, and the litigation proceeds accordingly. Dismissal on the basis of the privilege is entirely inappropriate here.

## ARGUMENT

**I.      The Court Should Reject the Government's Invocation of the Privilege.**

**A.      Both precedent and history show why the Court must conduct a particularly searching inquiry of the government's claim of privilege.**

A look at several of the government's past invocations of the state secrets privilege makes clear why this Court must, as the Ninth Circuit has demanded, undertake an especially searching evaluation of the government's assertion of the privilege in this case.

The state secrets privilege is a common law evidentiary rule that, when properly invoked, allows the government to withhold information from discovery by establishing "there is a 'reasonable danger' that disclosure will 'expose military matters which, in the interest of national security, should not be divulged.'" *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1196 (9th Cir. 2007) (quoting *United States v. Reynolds*, 345 U.S. 1, 10 (1953)). The government bears the burden of establishing the privilege, which is "is not to be lightly invoked." *Reynolds*, 345 U.S. at 7. As courts have repeatedly admonished, the government may not use the privilege "to shield any material not strictly necessary" to prevent harm to national security. *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1082 (9th Cir. 2010) (en banc) (quoting *Ellsberg v.*

2
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

*Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983)). "Because evidentiary privileges by their very nature hinder the ascertainment of the truth, and may even torpedo it entirely, their exercise 'should in every instance be limited to their narrowest purpose.'" *In re United States*, 872 F.2d 472, 478–79 (D.C. Cir. 1989) (citation omitted).

Assertions of the state secrets privilege are therefore subject to the most stringent judicial scrutiny. The courts' active role in evaluating the government's claims of privilege is essential, as it "ensure[s] that" the privilege applies only when absolutely necessary. *Jeppesen*, 614 F.3d at 1082 (quoting *Ellsberg*, 709 F.2d at 58). Courts must "take very seriously [their] obligation to review the government's claims with a very careful, indeed a skeptical, eye, and not to accept at face value the government's claim or justification of privilege." *Id.* at 1077 (alteration omitted) (quoting *Al-Haramain*, 507 F.3d at 1203). As a result, successful claims of the privilege are found only "in exceptional circumstances." *Id.*

The Ninth Circuit has emphasized that mere classification "is insufficient" for use as a proxy to determine whether information is subject to the privilege. Blind acceptance of government classification as a basis for applying the privilege "would trivialize the court's role, which the Supreme Court has clearly admonished 'cannot be abdicated to the caprice of executive officers.'" *Id.* at 1082 (quoting *Reynolds*, 345 U.S. at 9–10). It would also ignore reality. Even leading members of the intelligence community have acknowledged that not all classification decisions would withstand judicial scrutiny, and disclosure of classified material may not lead to harm at all—let alone the type of harm required to be shown in the state secrets context.[2]

---

[2] *See, e.g.*, *Nom. of Lt. Gen. James Clapper, Jr., USAF, Ret., to Be Dir. of Nat'l Intelligence: Hearing Before S. Select Comm. on Intel.*, 111th Cong. 18 (July 20, 2010) (testimony of then-nominee to the position of the Director of National Intelligence James Clapper), https://fas.org/irp/congress/2010_hr/clapper.pdf (stating that "we do overclassify" both as an "administrative default" and to "hide or protect things for political reasons," and suggesting that "we can be a lot more liberal . . . about declassifying, and we should be"); *Oversight of the FBI: Hearing Before the S. Comm. on the Judiciary*, 115th Cong. (May 3, 2017), 2017 WL 1684512 (testimony of then-FBI Director James Comey) (agreeing that "over classification is a very significant problem within the executive branch" and that the release of classified material may not cause any harm).

3
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

In *Reynolds*, the case establishing the modern roots of the state secrets evidentiary privilege, the Supreme Court cautioned that abandonment of judicial control over the privilege would open the door to "intolerable abuses." 345 U.S. at 8. More generally, courts have recognized "the risk that government officials may be motivated to invoke the state secrets doctrine not only by their obligation to protect national security," but also by illegitimate and self-serving reasons. *Jeppesen*, 614 F.3d at 1085 n.8.

Indeed, the government's conduct in other cases involving assertions of the state secrets privilege has repeatedly justified these concerns.

In *Reynolds* itself, the government engaged in exactly the kind of abuse that both the Ninth Circuit and the Supreme Court have warned against. *Reynolds* was a civil suit against the government brought by the estates of civilians killed in a military plane crash. *Reynolds*, 345 U.S. at 3. When the plaintiffs sought production of the Air Force's accident report, the government asserted that the report should be protected by the state secrets privilege because the aircraft that had crashed was engaged in a "highly secret mission," and disclosure of the report would "seriously hamper[] national security." *Id.* at 3–4. Several decades later, the accident report was declassified—and lo and behold, it turned out to contain no "details of any secret project the plane was involved in" (as the government had declared to the courts), but instead detailed "a horror story of incompetence, bungling, and tragic error." Garry Wills, *Why the Government Can Legally Lie*, 56 N.Y. Rev. of Books 32, 33 (2009); s*ee also Jeppesen*, 614 F.3d at 1094 n.1 (Hawkins, J., dissenting) (noting that in *Reynolds*, "avoidance of embarrassment—not preservation of state secrets—appears to have motivated the Executive's invocation of the privilege").

Similarly—and famously—in *New York Times Company v. United States* (*Pentagon Papers*), 403 U.S. 713 (1971), the government sought to enjoin the *New York Times* and *Washington Post* from publishing the contents of a classified study about the Vietnam War. The government asserted that disclosure would "pose a grave and immediate danger to the security of the United States." Brief for Appellant at 3, *Pentagon Papers*, 403 U.S. 713 (Nos. 1873, 1885),

4
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

1971 WL 167581, at *2, *7, *21, *26 (June 26, 1971). The Solicitor General later admitted, however, that he "[had] never seen any trace of a threat to the national security from the publication" and had not "seen it even suggested that there was such an actual threat." Erwin Griswold, *Secrets Not Worth Keeping*, Wash. Post, Feb. 16, 1989, https://wapo.st/2vybD7n. Rather, he explained, "there is massive overclassification and . . . the principal concern of the classifiers is not with national security, but rather with governmental embarrassment of one sort or another." *Id.*

More recently, the government's opportunistic invocation of the state secrets privilege has earned a rebuke from the Ninth Circuit. In *Ibrahim v. U.S. Department of Homeland Security*, 912 F.3d 1147 (9th Cir. 2019) (en banc), the plaintiff's lawyers sought attorneys' fees after successfully challenging the plaintiff's placement on the "No Fly" list. Although the government knew that this placement was the result of a mistake, it had continued to "unreasonabl[y]" defend the litigation. *Id.* at 1171. In the course of defending the case, the government had played "discovery games" with the state secrets privilege and "made false representations to the court" about whether it would seek to rely on state secrets at trial. *Id.* at 1162–65, 1171 & n.20. After a bench trial (over the government's state secrets objections), the district court found in the plaintiff's favor. *Id.* It also found that the plaintiff was entitled to attorneys' fees, but not to a rate enhancement because the government had not acted in "bad faith." *Id.* at 1165. On appeal, the Ninth Circuit reversed the district court's "bad faith" finding on several grounds. *Id.* at 1182. The court was particularly concerned that, even though the government had conceded that the plaintiff was not a threat to national security, it continued to place her on a watchlist for no apparent reason—and its justification was "claimed to be a state secret." *Id.* at 1160, 1171, 1182.

And in *Horn v. Huddle*, 647 F. Supp. 2d 55 (D.D.C. 2009), *vacated upon settlement*, 699 F. Supp. 2d 236 (D.D.C. 2010), the government "committed fraud on [the district court] and the Court of Appeals" by "knowingly failing to correct a declaration" in support of the state secrets privilege "that had been shown to be demonstrably false." 647 F. Supp. 2d. at 58 & n.3. The

5
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

court concluded that the government's actions "c[ould] only be construed as an attempt to dishonestly gain dismissal." *Id.* at 58 n.3. Separately, the court concluded that "the government had not carefully thought through its assertion of the privilege," because a second classified declaration from the Director of the Central Intelligence Agency had appeared to "significantly conflict[]" with an unclassified version of the same. *Id.* at 58. The court ultimately rejected the government's assertion of the state secrets privilege and request for a protective order, and it determined that the case could proceed using procedures akin to those established by the Classified Information Procedures Act, 18 U.S.C. app. III. *Id.* at 59–60. Instead of complying with the court's order, the government filed a motion "essentially ask[ing] for reconsideration," in which the government sought another chance to argue that it had properly invoked the privilege. *Id.* at 60. The court observed that "[n]othing the government cites indicates that the Court must give the government a 'second chance' to convince it that the privilege applies," and denied the government's request. *Id.* at 61.

As these examples show, as long as the government retains the incentive to play fast and loose with the state secrets privilege, the privilege will continue to open the door to government abuse. To guard against such abuse and ensure that "the state secrets doctrine does not represent a surrender of judicial control over access to the courts," *Jeppesen*, 614 F.3d at 1082 (quoting *El-Masri v. United States*, 479 F.3d 296, 312 (4th Cir. 2007)), this Court must assess the government's assertion of the state secrets privilege with searching scrutiny—and an extra dose of skepticism where, as here, particular circumstances warrant it.

**B.     In other noncriminal cases, disclosure of classified information to security-cleared counsel has not harmed national security.**

The Court also has the benefit of decades of noncriminal litigation in the federal courts since *Reynolds* in which classified information has been disclosed to security-cleared counsel without any resulting harm to national security. For example, in *Loral Corp. v. McDonnell Douglas Corp.*, a case involving a large volume of classified information, the Second Circuit explained that "[t]he Department of Defense has cleared, or can and will clear, for access to the material the judge and magistrate assigned to the case, the lawyers and any supporting personnel

6
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

whose access to the material is necessary." 558 F.2d 1130, 1132 (2d Cir. 1977). This approach is in keeping with courts' broad practice of using security-cleared counsel in noncriminal cases to ensure effective litigation of a wide variety of sensitive topics. *See, e.g.*, *Al Bakri v. Obama*, 660 F. Supp. 2d 1, 2 (D.D.C. 2009) (ordering disclosure of facts concerning detainees at Bagram Airbase in Afghanistan to security-cleared counsel); *Ibrahim v. Dep't of Homeland Sec.*, C 06-00545 WHA, 2013 WL 1703367 (N.D. Cal. Apr. 19, 2013) (ordering disclosure of documents pertaining to the "No Fly" list to Sensitive Security Information-cleared counsel); *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 710 F. Supp. 2d 637, 660 (N.D. Ohio 2010) (ordering that counsel for charity contesting freezing of its assets "obtain an adequate security clearance to view the necessary documents, and will then view these documents in camera, under protective order, and without disclosing the contents to [plaintiff]").[3]

Critically, disclosure to security-cleared counsel under secure conditions is not the equivalent of a general public disclosure. *See Al-Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 983 (9th Cir. 2012) (disclosing information to a "lawyer for the designated entity who has the appropriate security clearance also does not implicate national security when viewing the classified material because, by definition, he or she has the appropriate security clearance"). And, of course, the degree of disclosure to security-cleared counsel can be tailored to the necessities of the case.[4]

---

[3] In recent years, the federal courts have also applied their expertise and experience handling classified information in habeas cases brought by Guantánamo detainees. Those courts have developed workable procedures designed to allow reasonable access to classified evidence, while protecting the government's secrecy interest. *See* Constitution Project & Human Rights First, Habeas Works: Federal Courts' Proven Capacity to Handle Guantánamo Cases—A Report from Former Federal Judges, at 17 (June 2010), https://constitutionproject.org/wp-content/uploads/2012/10/414.pdf (describing procedures that seek "to strike a careful balance between protecting classified information and ensuring that petitioners have enough information to challenge their detention").

[4] *See generally Hanna v. Plumer*, 380 U.S. 460, 472–73 (1965) (noting that, subject to congressional limitations but "completely aside from the powers Congress expressly conferred in" the Federal Rules of Civil Procedure, "the administration of legal proceedings [is] an area in which federal courts have traditionally exerted strong inherent power"); Amy Coney Barrett, *Procedural Common Law*, 94 Va. L. Rev. 813, 842–78 (2008) (discussing federal courts'

7
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

### C.     The circumstances of this case and the government's invocation of the state secrets privilege show that the privilege is inapplicable.

The facts of this case, set forth fully in Twitter's opposition brief, make plain that the government's invocation of the state secrets privilege is improper. *See* Pl. Opp. 4–17. A few key points bear emphasis. First, the government voluntarily entered the classified Steinbach declaration into evidence more than two years ago. It now contends that the declaration is so sensitive that it must be removed from the case, yet the government's delay in asserting the privilege suggests otherwise. *Cf. Horn*, 647 F. Supp. 2d at 58 (observing that the government invoked the state secrets privilege "too broadly, inconsistently, and sloppily"). Second, at least some of the information that the government contends is a "state secret" is already in Twitter's possession. *See* Gov. Br. 10, ECF No. 281 (describing four categories of information at issue, the first of which is "Information Regarding National Security Legal Process that Has Been Served on Twitter"). The notion that it would harm national security to disclose *this* information in particular to Twitter's security-cleared counsel is deeply suspect. And finally, the Court—in its opinion denying the government's motion for summary judgment—has *already* found that the classified Steinbach declaration "largely relies on a generic, and seemingly boilerplate, description of the mosaic theory and a broad brush concern that the information at issue will make more difficult the complications associated with intelligence gathering in the internet age." *Twitter, Inc. v. Sessions*, 263 F. Supp. 3d 803, 817 (N.D. Cal. 2017).

In light of the government's belated and unusual invocation of the state secrets privilege over material already found to be "generic" and "seemingly boilerplate," the Court should hold that the privilege is inapplicable, and it should deny the government's request to discharge the Order to Show Cause.

## II.     Even if the State Secrets Privilege Applies to the Classified Steinbach Declaration, Dismissal Here Is Improper.

Even where a court has determined that an invocation of the *Reynolds* evidentiary privilege is valid, the result is not the automatic dismissal of a litigant's claims. "The effect of

---

"inherent authority over procedure").

8
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

the government's successful invocation of [the state secrets] privilege is simply that the evidence is unavailable, as though a witness had died, and the case will proceed accordingly, with no consequences save those resulting from the loss of evidence." *Al-Haramain*, 507 F.3d at 1204 (quotation marks omitted); *accord Gen. Dynamics Corp. v. United States*, 563 U.S. 478, 485 (2011) ("The privileged information is excluded and the trial goes on without it."). In other words, when privileged evidence is excluded, both sides are deprived of its use, and the case proceeds as if that evidence did not exist. *See, e.g.*, *In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007) (describing this "well established" principle).

Under Ninth Circuit law, there are only two narrow exceptions to this rule—neither of which applies in this case, as explained below. After excluding the privileged evidence, dismissal is required only if (i) "the privilege deprives the defendant of information that would otherwise give the defendant a valid defense to the claim"; or (ii) the privileged and non-privileged evidence is "inseparable[,] . . . such that litigating the case to a judgment on the merits would present an unacceptable risk of disclosing state secrets." *Fazaga v. FBI*, 916 F.3d 1202, 1227–28, 1253 (9th Cir. 2019) (quotation marks omitted) (quoting *Jeppesen*, 614 F.3d at 1083).[5]

When the executive branch contends that one of these exceptions applies and compels dismissal, courts subject the government's arguments to exacting scrutiny. *See, e.g.*, *id.* at 1253 ("allowing the mere prospect of a privilege defense, without more, to thwart a citizen's efforts to vindicate his or her constitutional rights would run afoul" of Supreme Court guidance (quotation marks omitted)); *In re United States*, 872 F.2d at 478–79 (rejecting the government's argument that the district court would be unable to disentangle sensitive from non-sensitive information). The reviewing court must carefully determine for itself whether litigation may go forward in light of the judiciary's constitutional "duty . . . to say what the law is." *Marbury v. Madison*, 5

---

[5] The Ninth Circuit has identified a third "circumstance[]" in which the *Reynolds* privilege may result in dismissal: when a plaintiff lacks sufficient evidence to present a *prima facie* case due to the removal of privileged evidence. *Fazaga*, 916 F.3d at 1227–28. That scenario is not an "exception" to the ordinary *Reynolds* rule, but an application of it. When privileged evidence is excluded, both sides are simply deprived of its use and the plaintiff may ultimately be unable to mount its affirmative case.

9
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

U.S. (1 Cranch) 137, 177 (1803).[6] Courts therefore use "creativity and care" to devise "procedures which would protect the privilege and yet allow the merits of the controversy to be decided in some form." *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1238 n.3 (4th Cir. 1985). Dismissal is available only as a last resort.

### A. The Court has already determined that the classified Steinbach declaration does not establish a "valid defense."

Under the "valid defense" exception, dismissal on the basis of the *Reynolds* privilege is permissible only when the privileged evidence establishes a legally meritorious defense. *See Fazaga*, 916 F.3d at 1253. The Ninth Circuit has explained that a "valid defense" is:

> meritorious and not merely plausible and *would require judgment for the defendant*. The state secrets privilege does not require dismissal of a complaint for any plausible or colorable defense. Otherwise, virtually every case in which the United States successfully invokes the state secrets privilege would need to be dismissed. Such an approach would constitute judicial abdication from the responsibility to decide cases on the basis of evidence in favor of a system of conjecture.

*Id.* (quotation marks and citations omitted) (emphasis added).

The origins of this exception illustrate just how narrow it is. The D.C. Circuit first applied the "valid defense" exception in *Molerio v. FBI*, 749 F.2d 815, 825 (D.C. Cir. 1984). There, the plaintiff asserted that the FBI's refusal to hire him violated his First Amendment rights because the decision was based on his father's political activities. *Id.* at 819. In response, the FBI invoked the state secrets privilege. It filed an in camera declaration to explain why it denied the plaintiff employment and to justify the privilege. *Id.* at 819, 825. In the course of reviewing the FBI's assertion of the privilege, the D.C. Circuit concluded that the in camera declaration contained material that "ipso facto disclose[d] to the court the validity of the defense." *Id.* at 825. To allow

---

[6] When the executive branch seeks dismissal of a case in an Article III court on the basis of the state secrets privilege, it raises grave separation-of-powers concerns. The "judicial Power" conferred by Article III belongs to the courts alone; it may not be ceded to or exercised by any other branch. *See N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58–59 (1982). It has long been held that neither the legislature nor the executive may "prescribe rules of decision to the Judicial Department of the government in cases pending before it." *United States v. Klein*, 80 U.S. 128, 146 (1871).

10

Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

the plaintiff's claim to proceed in those circumstances would have "involve[d] an attempt, however well intentioned, to convince the jury of a falsehood." *Id.*; *see also, e.g.*, *In re Sealed Case*, 494 F.3d at 149–50 (adopting the narrow articulation of the exception in *Molerio*); *Fazaga*, 916 F.3d at 1253 (adopting the narrow articulation of the exception in *In re Sealed Case*).

Here, the Court has already reviewed the classified Steinbach declaration in camera, and it has already determined that the declaration fails to require judgment for the government. *Twitter*, 263 F. Supp. 3d at 816–17 (denying government's motion for summary judgment). As the Court wrote, the declaration failed to explain "how a restriction on [Twitter's] reporting . . . could be characterized as narrowly tailored to prevent a national security risk of sufficient gravity to justify the restraint, either in general or with respect to Twitter specifically." *Id.* at 816. It continued: "Without some more specific articulation of the inference the Government believes can be drawn from the information Twitter itself seeks to publish, even years later, the Court cannot find that the Government has met the high burden to overcome a presumption that its restrictions are unconstitutional." *Id.* at 817.

In short, the classified Steinbach declaration failed to establish a legally meritorious defense. Accordingly, even if the declaration is privileged and removed from the case, the "valid defense" exception provides no basis for dismissal. *See, e.g.*, *Fazaga*, 916 F.3d at 1253.

**B.    The privileged and non-privileged information are not "inseparable."**

Under the "inseparable evidence" exception, dismissal on the basis of the *Reynolds* privilege is permissible only where privileged and non-privileged evidence are "inseparable[,] such that litigating the case to a judgment on the merits would present an unacceptable risk of disclosing state secrets." *Fazaga*, 916 F.3d at 1253 (quotation marks omitted) (quoting *Jeppesen*, 614 F.3d at 1083).

Here, even if the government were able to demonstrate that the entire classified Steinbach declaration is privileged, it is plain that it is "separable" from non-privileged information, and further litigation would not present an unacceptable risk of disclosure. Indeed, the government's motion to dismiss on the basis of the state secrets privilege is a motion *in the alternative*. *See*

11
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

1    Gov. Notice of Motion, ECF No. 281. The government thus concedes that, from its perspective,

2    litigation on the merits of Twitter's claims could proceed in this case—it merely objects to

3    sharing with Twitter's cleared counsel the same information it has already shared with the Court

4    (without invoking state secrets at all). Gov. Br. 3. In other words, privileged and non-privileged

5    information can be separated, and additional litigation would not present an "unacceptable risk of

6    disclosing state secrets." *Fazaga*, 916 F.3d at 1253.

7         Even setting aside the government's concession, this Court should construe the

8    "inseparable evidence" exception narrowly and hold that it has no application here. This is so for

9    several reasons.

10        **First**, the "inseparable evidence" exception is both novel and rare. The Ninth Circuit

11   articulated it for the first time in 2010, in an "exceptional" case in which the plaintiffs brought

12   suit against a U.S. company, Jeppesen Dataplan, on the grounds that the company provided flight

13   planning and logistical support for the CIA's post-9/11 rendition and torture program. *Jeppesen*,

14   614 F.3d at 1075, 1089. Sitting en banc, the Ninth Circuit held that the "inseparable evidence"

15   exception compelled dismissal. *Id.* at 1087. State secrets relevant to the case were "difficult or

16   impossible to isolate," and "even efforts to define a boundary between privileged and

17   unprivileged evidence would risk disclosure by implication." *Id.* at 1089. In those "rare

18   circumstances," the Ninth Circuit concluded that the risk of disclosure through litigation could

19   not be averted through typical means, such as protective orders or restrictions on testimony. *Id.*

20   The Ninth Circuit has not applied the exception since.

21        The facts of *Jeppesen* are a far cry from the case before this Court, where an internet

22   service provider simply seeks to vindicate its First Amendment right to publish limited

23   information about the number and type of national security requests it has received.

24        **Second,** given the rare application of the "inseparable evidence" exception, the Court

25   should reject the government's attempt to *expand* the exception by distorting the plain language

26   of the Ninth Circuit's test. Notably, the government frames the question not as whether

27

28

12
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

1   privileged and non-privileged information are "inseparable," but instead as whether privileged

2   evidence is "central" to these proceedings. Gov. Br. 23–24.

3         With this sleight of hand, the government is seeking to import a standard that appears in

4   state secrets cases in the Fourth Circuit. *See, e.g.*, *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d

5   1236, 1241–42 (4th Cir. 1985) (requiring dismissal where privileged evidence is "so central to

6   the subject matter of the litigation that any attempt to proceed will threaten disclosure of the

7   privileged matters"); *El-Masri v. United States*, 479 F.3d 296, 306 (4th Cir. 2007) (same).

8   However, the standard in these Fourth Circuit cases impermissibly conflates the *Reynolds*

9   privilege and the justiciability bar of *Totten v. United States*, 92 U.S. 105 (1875), and this Court

10  should decline to adopt it.

11        In *Reynolds*, the Supreme Court upheld the claim of privilege over the accident report at

12  issue, but it did *not* assess whether dismissal would be appropriate or whether additional

13  litigation would create an unacceptable risk of disclosure. Rather, the Court remanded the case

14  for further proceedings, so that the plaintiffs could pursue alternative sources of non-privileged

15  evidence to prove their claim. 345 U.S. at 11–12.

16        In contrast, the so-called *Totten* doctrine completely bars judicial review of disputes over

17  certain sensitive governmental contracts, such as espionage agreements. *See Totten*, 92 U.S. at

18  107 (precluding adjudication of claims arising out of an alleged contract to perform espionage

19  activities). As the Supreme Court has observed, in *Totten*-bar cases, "the very subject matter of

20  the action . . . [is] a matter of state secret." *Reynolds*, 345 U.S. at 11. In recent years, the Court

21  has taken pains to distinguish the "evidentiary state secrets privilege" of *Reynolds* from the

22  narrow non-justiciability rule set forth in *Totten*. *See Tenet v. Doe*, 544 U.S. 1, 8–9 (2005); *Gen.*

23  *Dynamics Corp.*, 563 U.S. at 484–86. For example, in *Tenet*, the Court explained that claims

24  based on alleged espionage agreements were subject to a "unique and categorical . . . bar—a rule

25  designed not merely to defeat the asserted claims, but to preclude judicial inquiry." 544 U.S. at 6

26  n.4. *Reynolds*, however, involved "the balancing of the state secrets evidentiary privilege" and

27  did not mandate dismissal. *Id.* at 10; *see also In re Sealed Case*, 494 F.3d at 151 (*Totten*

28

13
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

1    "eliminates actions" and "performs a different function than *Reynolds*, which merely affects the

2    evidence available").

3         Indeed, the Ninth Circuit has explicitly recognized that the Fourth Circuit's approach

4    improperly "conflate[s] the *Totten* bar's 'very subject matter' inquiry with the *Reynolds*

5    privilege." *Jeppesen*, 614 F.3d at 1087 n.12 (observing that the court has "previously

6    disapproved of *El-Masri*" on this ground); *see also Al-Haramain*, 507 F.3d at 1201 (explaining

7    that the Fourth Circuit "has accorded an expansive meaning to the 'subject matter' of an action,

8    one that we have not adopted").[7]

9         By asking this Court to dismiss Twitter's case on the ground that "state secrets are so

10   central to the matter [that] any further litigation presents an unacceptable risk of disclosure,"

11   Gov. Br. 24, the government is effectively asking this Court to apply the *Totten* bar to preclude

12   judicial inquiry. However, this case does not involve a dispute over a sensitive government

13   contract, such that the "very subject matter" of the suit is a state secret, and application of the

14   *Totten* bar is entirely inappropriate.

15       **Third**, the "inseparable evidence" exception applies only where it is certain that, after

16   removing the privileged evidence from the case, further litigation based on non-privileged

17   evidence presents an "unacceptable risk of disclosure" of state secrets. *Fazaga*, 916 F.3d at 1253.

18   In assessing this risk, the Court must consider the wide-ranging mechanisms available—such as

19   sealing orders, protective orders, and redactions—that would allow litigation to proceed without

20   disclosing state secrets.

21       For decades, courts have encouraged judicial creativity in crafting procedures to respond

22   to the challenges posed by legitimate assertions of state secrets. This creativity is entirely in

23   keeping with the judicial role: "Courts of equity have the power and duty to adapt measures to

---

[7] Notably, even the "inseparable evidence" test effectively expands the ambit of the *Totten* doctrine. The Court should reject the government's efforts to expand it further. Although the Ninth Circuit has referred to the "so central" standard in passing, *Fazaga*, 916 F.3d at 1227, it has made clear that the definitive question is whether privileged and non-privileged evidence is "inseparable," such that litigating the case to judgment on the merits would present an unacceptable risk of disclosure, *see id.* at 1228, 1253 (quoting *Jeppesen*, 614 F.3d at 1083).

14
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

accommodate the needs of the litigants with those of the nation, where possible." *Loral Corp.*, 558 F.2d at 1133. In cases where the privilege applies, courts have relied on that power to fashion procedures that circumscribe aspects of litigation rather than resort to outright dismissal. For example, in *Fazaga*, the Ninth Circuit ordered the district court to rely on the in camera review procedures in the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801 et seq. ("FISA"), to assess certain evidence falling *outside* of FISA's purview. 916 F.3d at 1251–52. The court recognized that requiring dismissal on the basis of state secrets in those circumstances would have been an exercise in "empty formalism." *Id.* at 1252. More generally, courts have accommodated the privilege by permitting the government to produce redacted versions of documents. *See, e.g.*, *Kronisch v. United States*, 150 F.3d 112, 120 n.3 (2d Cir. 1998). Courts have also authorized measures analogous to those in the Classified Information Procedures Act, 18 U.S.C. app. III, which applies to the use of classified information in criminal prosecutions. Under CIPA, in certain circumstances, courts permit the redaction of classified information from discoverable material, as well as the production of unclassified summaries in lieu of classified evidence. *See, e.g.*, *In re Sealed Case*, 494 F.3d at 154 (approving CIPA-like procedures for the handling of state secrets-privileged information). And, of course, courts routinely rely on protective orders and sealing orders to prevent the disclosure of sensitive information. *See, e.g.*, *Ibrahim*, 912 F.3d at 1184; *Al-Haramain*, 686 F.3d at 982–85. Here, if there were any question as to whether litigation over non-privileged evidence might present an unacceptable risk of disclosure of state secrets, the Court has an abundance of tools at its disposal to accommodate the government's legitimate security needs—without undertaking the radical step of barring a plaintiff from seeking judicial relief.

In the end, the "inseparable evidence" exception simply does not reach this case. That is because privileged information (if any) is separable from non-privileged, and continued litigation does not present an "unacceptable risk" of disclosure of state secrets. *Fazaga*, 916 F.3d at 1253. Seeking to avoid this conclusion, the government raises the possibility of a hypothetical future deposition of a government witness, in which Twitter would "have every incentive" to "probe"

15
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

near the alleged state secrets in the classified declaration. Gov. Br. 24–25 (citation omitted). It contends that the risk of revealing those secrets compels dismissal here. *See id.* But if the government's generic argument were correct, it would compel dismissal of virtually *any claim* tangentially related to privileged evidence. That result would be at odds with the Ninth Circuit's rare application of the exception and the logic of *Reynolds* itself.[8]

As both Twitter and amici have explained, the classified Steinbach declaration is not subject to the privilege. But even if it were, the consequence is simply that the declaration is removed from the case, and the litigation proceeds. No exception to this general rule applies, and, accordingly, the Court should reject the government's motion (in the alternative) for the dismissal of Twitter's suit.

### CONCLUSION

For these reasons, the Court should deny the government's assertion of state secrets over the classified Steinbach declaration, deny the government's motion to dismiss Twitter's claims, and grant Twitter's security-cleared counsel access to the classified Steinbach declaration under appropriate procedural safeguards.

Respectfully submitted,

Dated:  May 6, 2019

*/s/ Matthew Cagle*
Matthew Cagle (CA Bar No. 286101)
AMERICAN CIVIL LIBERTIES UNION

---

[8] Of course, if a particular deposition did present an unacceptable risk of disclosure of privileged information, alternative procedures—such as court-ordered limitations on the scope of questioning, written questions, or ex parte questioning by the Court—are available. *See, e.g.*, *Burnett v. Al Baraka Inv. & Dev. Corp.*, 323 F. Supp. 2d 82, 84 (D.D.C. 2004). Indeed, the government's argument here is inconsistent with its position that special procedures for deposition and trial testimony can "strike an appropriate balance between, on the one hand, the Government's interest in protecting classified and [state secrets] privileged information and, on the other hand, the parties' interest in obtaining unclassified and non-privileged testimony." United States' Unopposed Motion for Procedures Governing Trial Testimony of Former Government Officials and Contractors, *Salim v. Mitchell*, No. 15-cv-286 (E.D. Wa. Aug. 2, 2017) (ECF No. 229). And since this Court has determined that nothing in the Steinbach declaration satisfies "the high burden to overcome a presumption that [the Government's speech] restrictions are unconstitutional," any limitations placed on deposition testimony or other proceedings would provide no basis for dismissal.

16
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss

FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
T: 415.343.0758
mcagle@aclunc.org

Ashley Gorski
Naomi Gilens (CA Bar No. 315813)
Brett Max Kaufman
Patrick Toomey
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
agorski@aclu.org

Ahilan T. Arulanantham (CA Bar No. 237841)
Mohammad Tajsar (CA Bar No. 280152)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
T: 213.977.5211
aarulanantham@aclusocal.org

*Attorneys for Amici Curiae*

17
Case No. 14-cv-4480-YGR
[Proposed] Brief of Amici Curiae in Support of Twitter, Inc.'s Opposition to Defendants'
Invocation of State Secrets and Motion to Dismiss