JOSEPH H. HUNT
Assistant Attorney General
DAVID L. ANDERSON
United States Attorney
ANTHONY J. COPPOLINO
Deputy Branch Director
JULIA A. HEIMAN
Senior Counsel
CHRISTOPHER HEALY
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 616-8480
Facsimile:  (202) 616-8470
Email: julia.heiman@usdoj.gov

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWITTER, INC., | Case No. 14-cv-4480-YGR |
| Plaintiff, | |
| v. | **DEFENDANTS' REPLY IN SUPPORT OF THEIR REQUEST THAT THE COURT DISCHARGE THE ORDER TO SHOW CAUSE AND DENY PLAINTIFF'S REQUEST FOR ACCESS TO THE CLASSIFIED STEINBACH DECLARATION, OR, IN THE ALTERNATIVE, MOTION TO DISMISS** |
| WILLIAM P. BARR, Attorney General of the United States, *et al.*, | |
| Defendants. | |
| | Date: June 4, 2019 |
| | Time: 2:00 pm |
| | Courtroom 1, Fourth Floor |
| | Hon. Yvonne Gonzalez Rogers |

*Twitter, Inc. v. Barr, et al.,* Case 14-cv-4480-YGR
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

I.   Legal Framework for Assessing the Government's Assertion of Privilege. ......................... 3

    A.   The State Secrets Privilege Protects Matters Which, in the Interest of National
        Security, Should Not be Divulged ................................................................. 4

    B.   The Standard of Review Applied in *Jeppesen* and *Al-Haramain* Applies Here.......... 7

    C.   None of the Authority Cited by Plaintiff Supports Granting Counsel Access. ........... 9

II.  The Government's Detailed Submissions Demonstrate that the State Secrets Privilege
    Protects the Information at Issue from Disclosure................................................. 14

    A.   The Government Does Not Rely on "Classification Alone." .................................. 14

    B.   The First Category of Information at Issue Encompasses Classified Detail
        Regarding Plaintiff's Receipt of National Security Process ..................................... 15

    C.   This Court's Prior Findings Do Not Bear on the Whether the State Secrets
        Privilege Properly Applies to the Classified Steinbach Declaration. ....................... 17

    D.   The Four Categories of Information Subject to the Government's Privilege
        Assertion Should Not be Disclosed "in the Interest of National Security" .............. 18

III. Exclusion of the Classified Steinbach Declaration Would Require Dismissal.................... 19

CONCLUSION.................................................................................................................. 20

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR                    i
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause and
Deny Pl.'s Req. for Access to the Classified Steinbach Decl., or in the Alternative, Motion to Dismiss

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. NSA,*
    493 F.3d 644 (6th Cir. 2007) ........................................................................... 8

*Al-Haramain Islamic Found., Inc. v. Bush,*
    507 F.3d 1190 (9th Cir. 2007) .............................................................. *passim*

*Al-Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury,*
    686 F.3d 965 (9th Cir. 2012) ......................................................................... 10

*Am. Tel. & Tel. Co. v. United States,*
    4 Cl. Ct. 157 (1983) ...................................................................................... 14

*Boening v. CIA,*
    579 F. Supp. 2d 166 (D.D.C. 2008) .............................................................. 12

*CIA v. Sims,*
    471 U.S. 159 (1985) ...................................................................................... 16

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398, 409 (2013) .............................................................................. 19

*Clift v. United States,*
    597 F.2d 826 (2d Cir. 1979) ......................................................................... 14

*Clift v. United States,*
    808 F. Supp. 101 (D. Conn. 1991) ................................................................ 14

*Dep't of the Navy v. Egan,*
    484 U.S. 518 (1988) ...................................................................................... 13

*El-Masri v. United States,*
    479 F.3d 296 (4th Cir. 2007) ................................................................ *passim*

*Fazaga v. FBI,*
    916 F.3d 1202 (9th Cir. 2019) ................................................................ 13, 19

*Fitzgerald v. Penthouse Int'l, Ltd.,*
    776 F.2d 1236 (4th Cir. 1985) ...................................................................... 20

*Gen. Dynamics Corps. v. United States,*
    563 U.S. 478 (2011) ...................................................................................... 12

*Halpern v. United States,*
    258 F.2d 36 (2d Cir. 1958) ........................................................................... 14

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR                                                        ii
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause and
Deny Pl.'s Req. for Access to the Classified Steinbach Decl., or in the Alternative, Motion to Dismiss

*Hepting v. AT&T,*
    439 F. Supp. 2d 974 (N.D. Cal. 2006) ................................................................. 16

*Herring v. United States,*
    424 F.3d 384 (3d Cir. 2005) ................................................................................... 9

*Herring v. United States,*
    No. 03-CV-5500-LDD, 2004 WL 2040272 (E.D. Pa. Sept. 10, 2004) ..................... 9

*Horn v. Huddle,*
    647 F. Supp. 2d 55 (D.D.C. 2009), *vacated upon settlement,*
    699 F. Supp. 2d 236 (D.D.C. 2010) ......................................................................... 9

*Ibrahim v. U.S Dep't of Homeland Sec.,*
    912 F.3d 1147 (9th Cir. 2019) ........................................................................... 9, 10

*In re Guantanamo Bay Detainee Litig.,*
    No. 08-0442, 2009 WL 50155 (D.D.C. Jan. 9, 2009) ........................................... 12

*Jewel v. NSA,*
    Civ. No. 08-4373-JSW, ECF No. 462 (N.D. Cal. Apr. 25, 2019) ............................. 7

*Jewel v. NSA,*
    No. C 07-00693 JSW, 2015 WL 545925 (N.D. Cal. Feb. 10, 2015) .................... 7, 8

*Loral Corp. v. McDonnell Douglas Corp.,*
    558 F.2d 1130 (2d Cir. 1977) ............................................................................... 11

*Mohamed v. Jeppesen Dataplan, Inc.,*
    614 F.3d 1070 (9th Cir. 2010) ...................................................................... *passim*

*N.S.N. Int'l Indus. v. E.I. DuPont de Nemours & Co.,*
    140 F.R.D. 275 (S.D.N.Y. 1991) ........................................................................... 12

*N.Y. Times Co. v. United States,*
    403 U.S. 713 (1971) .............................................................................................. 9

*Restis v. Am. Coal. Against Nuclear Iran, Inc.,*
    No. 13 CIV 5032 ER, 2015 WL 1344479 (S.D.N.Y. Mar. 23, 2015) ....................... 6

*Stillman v. CIA,*
    319 F.3d 546 (D.C. Cir. 2003) ......................................................................... 3, 12

*United States v. Reynolds,*
    345 U.S. 1 (1953) ........................................................................................ *passim*

*United States v. Daoud,*
    No. 12 CR 723, 2014 WL 321384 (N.D. Ill. Jan. 29, 2014), *rev'd,*

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR                                iii
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause and
Deny Pl.'s Req. for Access to the Classified Steinbach Decl., or in the Alternative, Motion to Dismiss

1    755 F.3d 479 (7th Cir. 2014) ........................................................................... 14

2    *United States v. Texas*,
        507 U.S. 529 (1993) ................................................................................... 13

3

4    *Wikimedia Found. v. NSA*,
        335 F. Supp. 3d 772 (D. Md. 2018) ............................................................ 7

5

6    **Statues**

7    35 U.S.C. § 183 ............................................................................................ 14

8    50 U.S.C. § 1806 .................................................................................... 13, 14

9    An Act to Provide Certain Pretrial, Trial, and Appellate Procedures for Criminal Cases Involving
        Classified Information,

10       Pub. L. No. 96-456, 94 Stat. 2025 (1980) .................................................. 19

11   FISA Amendments Act of 2008,

12       Pub. L. No. 110-261, 122 Stat. 2436 (2008) .............................................. 16

13   **Other Authorities**

14   Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) ........................... 18

15   **Legislative Materials**

16   S. Rep. No. 110-209 (2007) ........................................................................... 16

17

18

19

20

21

22

23

24

25

26

27

28

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR                                                    iv
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause and
Deny Pl.'s Req. for Access to the Classified Steinbach Decl., or in the Alternative, Motion to Dismiss

**INTRODUCTION**

The central premise of Plaintiff's Opposition to Defendants' Invocation of the State Secrets Privilege is that the Government "voluntarily" submitted the classified declaration now at issue in this dispute and, largely for that reason, cannot assert the state secrets privilege now to prevent its disclosure to cleared counsel.  Plaintiff argues the Government "*wanted* the Classified Declaration in evidence when it could help the Government, but belatedly insists the same document is a state secret now that the litigating calculus has changed."  *See*, *e.g.*, ECF No. 292 at 1 (emphasis added); *see also id*. at 4, 7.  Plaintiff's *amici* echo the same theme.  ECF No. 294-1 at 1, 8.  But there is nothing voluntary about the Government's posture in this matter.

To begin with, the Government is the defendant here; it did not choose to initiate this action, and cannot unilaterally dismiss this case, as it may in a criminal case when the disclosure of national security information is at risk.  More fundamentally, on October 24, 2016, the Court ordered the Government to submit its motion for summary judgment, including *ex parte* supporting materials, "or be precluded from bringing it." Oct. 24, 2016 Tr., 31:23–24.  Even before the classified declaration now in dispute had been filed, Plaintiff had demanded security clearances for its counsel and access to classified information, and the Government expressed concern with submitting a classified declaration when Plaintiff's demand had not been resolved.  Government counsel expressly identified  the possibility that a dispute over access to classified information could necessitate an assertion of the state secrets privilege that would make litigation of the merits of this matter impossible, and the Court acknowledged—but overruled—counsel's concern regarding the pendency of Plaintiff's motion for access to classified information.  *Id.*, 30:25–32:11, 25:8–25, 12:21–13:8, 27:8–19; 14:9–14.  The Government has quoted or cited this transcript and the Court's order therein in three different submissions.[1]  Yet neither Plaintiff nor *amici* so much as acknowledge the Court's order.

The Government then submitted the classified declaration consistent with the Court's order and invoked an available defense under a body of law in which courts have considered

---

[1]  *See* Defs.' Req. that the Court Discharge the Order to Show Cause and Deny Pl.'s Request for Access to the Classified Steinbach Declaration, or in the Alternative, Motion to Dismiss, ECF No. 281 ("Defendants' Motion") at 2 ; ECF No. 256 at 4–5; ECF No. 264 at 9.

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR                                                    1
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

such submissions *ex parte* in addressing First Amendment claims brought by persons subject to secrecy obligations who seek to publish information that the Government contends is classified.[2] In response to the claims raised, Defendants invoked an available defense and process under existing law.  The Court denied the Government's summary judgment motion and ordered the case to discovery.  Defendants suggested the entry of judgment *against* the Government, because they believe the standard of First Amendment scrutiny being applied by the Court is in error, and further review could have prevented the dispute over access to classified information that necessitated the assertion of the state secrets privilege now before the Court.  *See* ECF No. 174 at 17.  That is hardly the behavior of a party seeking a "tactical advantage." Amicus Br. at 2.  But Plaintiff resisted entry of judgment in its favor and instead insisted on seeking discovery and requesting compelled access to the Classified Steinbach Declaration, ignoring repeated warnings by the Government, throughout this litigation, that a dispute over access to classified information could lead to an assertion of the state secrets privilege and dismissal on that basis.  *See* ECF No. 256 at 3–4.  In sum, after seeking resolution of this dispute on other grounds, and only in response to Plaintiff's demand for the compelled disclosure of a highly classified document, the Attorney General asserted the state secrets privilege.  In these circumstances, to call the Government's actions "voluntary" is absurd.

Setting aside the false premise of their opposition, the rest of Plaintiff and *amici's* arguments fail.  Plaintiff speculates that the information in the Classified Steinbach Declaration cannot truly qualify as a state secret.  But neither Twitter nor its *amici* know what is in the classified declaration.  The Attorney General and three senior FBI officials have attested that its disclosure reasonably could be expected to cause significant harm to national security.  If the Court disagrees with the Attorney General's assertion, that decision can be reviewed on appeal if necessary; but in no event should the Court disclose the Classified Declaration to Plaintiff's counsel in the meantime.

Plaintiff's further assertions that access by cleared counsel in a civil case such as this presents no significant or novel proposition is also clearly wrong.  All of the pertinent authority

---

[2] *See, e.g., Stillman v. CIA*, 319 F.3d 546 (D.C. Cir. 2003).

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR                                                    2
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

holds against access by private counsel in a case such as this. None of the settings to which Plaintiff analogizes supports counsel access here. Indeed, Supreme Court precedent prohibits *in camera* proceedings of the kind Plaintiff contemplates. Once the Government has invoked the state secrets privilege, the question for the Court is not whether the evidence subject to that privilege assertion may be used in *in camera* proceedings with protective measures, but whether the information subject to the privilege assertion constitutes matters which, in the interest of national security, should not be divulged. *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1080 (9th Cir. 2010) (*en banc*). If the Court so finds, the materials subject to the Government's privilege assertion are removed from the case. *See id.* at 1079. If the evidence at issue is central to the litigation, then under Ninth Circuit precedent, dismissal is required.

The Government has suggested several "off ramps" to avoid a state secrets dismissal and to facilitate a resolution of the merits of Plaintiff's claims; the Government has presented the state secrets privilege assertion only in the alternative but did so in the face of Plaintiff's demand for compelled access to avoid waiver of the privilege. If the Court discharges the Order to Show Cause, and denies Plaintiff's request based on the Court's broad discovery powers as Plaintiff suggests, *see* Pl.'s Opp'n at 2, 7,[3] there will be no need for the Court to reach the Government's privilege assertion. However, if the Court continues to consider Plaintiff's request, then the state secrets privilege should be upheld and this action should be dismissed on that basis.

## ARGUMENT

Plaintiff and *amici* present a series of arguments that misstate the applicable legal framework for assessing a state secrets privilege assertion, erroneously contend that the key consideration is whether disclosure to a cleared counsel would harm national security, and claim that dismissal would be unwarranted here if the privileged evidence is excluded. Each meritless argument is addressed in turn.

---

[3] Plaintiff also suggests the Court should order Defendants to produce a version of the Classified Steinbach Declaration with sensitive information redacted. *See* Pl.'s Opp'n at 2, 21. Defendants already have provided an unclassified version. *See* ECF No. 147-1.

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR                                                    3
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

### I.   Legal Framework for Assessing the Government's Assertion of Privilege

The three steps for addressing an assertion of the state secrets privilege are well-settled, and clearly delineated.  As the Ninth Circuit explained:

> First, [the Court] must "ascertain that the procedural requirements for invoking the state secrets privilege have been satisfied." Second, [the Court] must make an independent determination whether the information is privileged.... Finally, "the ultimate question to be resolved is how the matter should proceed in light of the successful privilege claim."

*Jeppesen*, 614 F.3d at 1080 (quoting *Al-Haramain Islamic Found. v. Bush*, 507 F.3d 1190, 1202 (9th Cir. 2007)).  When assessing an assertion of the state secrets privilege, the Ninth Circuit has focused separately on each step of the process.  *See*, *e.g.*, *id.* at 1080–83, 1085–90; *Al-Haramain*, 507 F.3d at 1202–05.

Plaintiff ignores this three-step framework entirely, *see* Pl.'s Opp'n at 3, 6–17, and scrambles the second and third steps, mistaking the *effect* of a successful privilege assertion for the test that a court must apply to determine *whether* information is a state secret in the first place.  Plaintiff insists:

> The Government must show that any use of the allegedly privileged evidence in a particular case—even subject to procedural safeguards—would create so great a "danger . . . [of] expos[ing] military secrets, which, in the interest of national security, should not be divulged," *United States v. Reynolds*, 345 U.S. 1, 10 (1953), that the evidence must be altogether "remove[d] . . . from the litigation." *Jeppesen*, 614 F.3d at 1079.

 Pl.'s Opp'n at 3.  Neither *Reynolds* nor *Jeppesen*—nor any other case—has applied anything resembling the standard that Plaintiff fashions to determine whether information is protected by the state secrets privilege.

### A.   The State Secrets Privilege Protects Matters Which, in the Interest of National Security, Should Not be Divulged.

First, the test for determining whether the state secrets privilege protects information is a matter of black letter law:  "[t]he court must sustain a claim of privilege when it is satisfied, 'from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged.'"  *Jeppesen*, 614 F.3d at 1081 (quoting *Reynolds*, 345 U.S. at 10).  "If this standard is

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR                                                                                                  4
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

met, the evidence is absolutely privileged." *Id.* That is, the evidence is then entirely removed from the litigation, *id.* at 1079, and Supreme Court precedent bars the use of any "procedural safeguards," such as those proposed by *amici*, *see* Amicus Br. at 14–15, to retain it in the case. *See Reynolds*, 345 U.S. at 10 ("When . . . the occasion for the privilege is appropriate, . . . the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers.").[4]

But Plaintiff contends that, to ascertain whether the state secrets privilege protects the information at issue, the Court must assess "the risk associated with use of classified evidence under seal to [sic] a very limited subset of persons who have been deemed suitable to view the classified information." Pl.'s Opp'n at 11; *see also id.* (arguing the Government must show "the evidence is too sensitive to be used in litigation at all under any conceivable procedural safeguards"). Plaintiff also suggests that this inquiry should be based on "individualized findings as to the trustworthiness of Plaintiff's counsel." *Id.* at 12. Plaintiff contends that these are the proper inquiries without citation to a single case in which a court has actually employed that analysis. *See id.*

On the contrary, Supreme Court and Ninth Circuit precedent provide that a court must determine whether information is privileged not by assessing whether the information may safely be provided to cleared counsel, but by determining—as noted above—whether "there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." *Reynolds*, 345 U.S. at 10; *see also Jeppesen*, 614 F.3d at 1086 (upholding invocation of privilege because "[t]he government's classified disclosures to the court [were] persuasive that compelled or inadvertent disclosure of such information in the course of litigation would seriously harm legitimate national security interests"); *Al-Haramain*, 507 F.3d at 1204 ("the government . . . sustained its burden as to the state secrets privilege" based on the Ninth Circuit's finding that "disclosure of [the information

---

[4] *See also*, *e.g.*, *El-Masri v. U.S*, 479 F.3d 296, 311 (4th Cir. 2007) (rejecting plaintiff's proposal that his counsel should have received access to the state secrets evidence pursuant to a nondisclosure agreement, after arranging for necessary security clearances, because proposed *in camera* trial would be "expressly foreclosed by *Reynolds*") (citing *Reynolds*, 345 U.S. at 10).

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR                                                                     5
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

at issue] would undermine the government's intelligence capabilities and compromise national security").  There is no analysis, at this stage, of *to whom* the information might be divulged or disclosed or under what circumstances, because the courts recognize that each additional disclosure of sensitive national security information carries with it increased risk of unauthorized disclosure.  *See Reynolds*, 345 U.S. at 10 (warning against unnecessary disclosures even to the court, *in camera*): *cf. Al-Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012) (recognizing that in *General Dynamics v. U.S.*, 563 U.S. 478 (2011), "disclosure of sensitive information to a limited number of lawyers led to unauthorized disclosure of military secrets") (internal quotation omitted)).  As another court aptly put it, "it is the nature of the information at issue that guides the state secrets analysis." *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 2015 WL 1344479, at *8 (S.D.N.Y. Mar. 23, 2015).

Indeed, just recently, another judge of this Court upheld the Government's assertion of the state secrets privilege based on the Court's determination that "there is a reasonable danger the disclosure of the information at issue [in that case] would be harmful to national security." *See* Order, *Jewel v. NSA*, Civ. No. 08-4373-JSW, ECF No. 462 (N.D. Cal. Apr. 25, 2019), attached hereto as Ex. 1 ("2019 *Jewel* Order") at 21, *appeal docketed*, 19-16066 (9th Cir. May 22, 2019); *see also Jewel v. NSA*, 2015 WL 545925, at *5 (N.D. Cal. Feb. 10, 2015) (upholding a prior assertion of the state secrets privilege over certain NSA surveillance program information).[5]  Although plaintiffs' counsel in that case had sought access to the classified information at issue, *see* ECF No. 393, that request or the possibility of disclosing the information only to cleared counsel played no role in the Court's analysis of whether the information was privileged.  2019 *Jewel* Order, *generally*; *id.* at 26 (denying plaintiffs' renewed request for access to classified evidence the Government had submitted); *Jewel*, 2015 WL 545925, at *5.

---

[5] *See also*, *e.g.*, *Wikimedia Found. v. NSA*, 335 F. Supp. 3d 772, 789 (D. Md. 2018) (holding categories of information properly protected by the state secrets privilege because "disclosure of these categories of information would undermine ongoing intelligence operations, deprive the NSA of existing intelligence methods, and significantly, provide *foreign adversaries* with the tools necessary both to evade U.S. intelligence operations and to conduct their own operations against the United States and its allies.") (emphasis added).

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR                                        6
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.  The Standard of Review Applied in *Jeppesen* and *Al-Haramain* Applies Here.**

Plaintiff separately argues that the Court should conduct a more searching review of the Government's privilege assertion because of Plaintiff's need for the information and because of the nature of Plaintiff's claims.  *See* Pl.'s Opp'n at 4–6.  The Government agrees that review of a state secrets assertion should be searching.  *See* Defs.' Mot. at 12–13. But neither the Plaintiff's need for the material nor the nature of its claims alter the governing framework.

First, as to Plaintiff's claimed need for the privileged information, *see* Pl.'s Opp'n at 4, the Government does not dispute that the materials subject to its privilege assertion are central to this case.  *See* Defs.' Mot. at 23–25.  But as Plaintiff acknowledges, rather than affecting the standard applicable to whether the information is properly privileged, "the showing of necessity . . . will determine how far the court should probe in satisfying itself" whether the standard is met, *Reynolds*, 345 U.S. at 11; *see* Pl's Opp'n at 4; that is, where there is a substantial showing of need for the information, in limited circumstances, a court may conduct an *in camera* review of the material subject to the Government's privilege assertion.  *See Al-Haramain*, 507 F.3d at 1203 (conducting *in camera* review "because of [the plaintiff's] admittedly substantial need for the document to establish its case.").  In the instant case, the Government has lodged the Classified Steinbach Declaration with the Court, and of course does not object to such *ex parte* review.  But a substantial showing of need for the privileged information in the litigation does not weigh in favor of disclosure under a protective order.  There is no balancing test to resolve the issue of disclosure if the substantive standard is met:  whether there is a reasonable danger that disclosure would harm national security.

Likewise, although Plaintiff highlights that it has asserted constitutional claims in this case, *see* Pl.'s Opp'n at 5–6, the nature of Plaintiff's claims does not change the applicable framework.  Numerous courts have addressed—and upheld—assertions of the state secrets privilege under the *Reynolds* framework in cases that, like this one, challenged Executive actions, or purported Executive Actions, that allegedly violated fundamental constitutional rights.  In *Al-Haramain*, for example, the Ninth Circuit upheld an assertion of the state secrets privilege in a case in which a plaintiff foundation alleged violations of its First, Fourth, and Sixth

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR                                                                7
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

---

Amendment rights.  *See Al-Haramain*, 507 F.3d at 1195, 1204.  Indeed, it was in *Al-Haramain* that the Ninth Circuit—while acknowledging the need for a court to conduct a "very careful" and even "skeptical" review of the Government's privilege assertion—underscored "the need to defer to the Executive on matters of foreign policy and national security."  *Id.* at 1203 ("[W]e . . . surely cannot legitimately find ourselves second guessing the Executive in this arena").

Similarly, although *Jeppesen* was not a constitutional case, the rights that the plaintiffs sought to vindicate there were no less weighty.  The plaintiffs in *Jeppesen* alleged "forced disappearance," "torture and other cruel, inhuman or degrading treatment."  614 F.3d at 1075.  The Ninth Circuit noted that it did not reach the decision "lightly or without close and skeptical scrutiny of the record and the government's case for secrecy and dismissal," *id.* at 1092, but found that the information at issue was properly privileged because its disclosure "could be expected to cause significant harm to national security."  *Id.* at 1086.[6]  Thus, the level of scrutiny that the Court must use, even in a case alleging constitutional claims, is no different from that set forth in *Jeppesen* and *Al-Haramain*.

None of the examples of alleged misconduct by the Government in prior cases cited by *amici* undercut this conclusion or require some new, indeterminate "most stringent" standard of scrutiny here.  Amicus Br. at 4.  First, although *amici* allege that the Government engaged in abusive tactics in *Reynolds*, that accusation has been litigated and rejected by the courts.[7]

---

[6] *See also*, *e.g.*, *Jewel*, 2015 WL 545925, at *5 (upholding assertion of the state secrets privilege in a case alleging Fourth Amendment claims); *ACLU v. NSA*, 493 F.3d 644, 687–88 (6th Cir. 2007) (holding that an assertion of the state secrets privilege prevented plaintiffs from establishing standing to bring First and Fourth Amendment claims against NSA surveillance program); *El-Masri v. United States*, 479 U.S. 296, 299, 304–05 (4th Cir. 2007) (accepting assertion of the state secrets privilege and dismissing a claim that the CIA allegedly detained and interrogated plaintiff in violation of the Fifth Amendment).

[7] *See Herring v. United States*, 424 F.3d 384, 391-92 (3d Cir. 2005) (rejecting plaintiffs' claims that the Government committed perjury in *Reynolds* because the "more logical" reading of sworn statements in support of the Government's claim of privilege was truthful); *Herring v. United States*, 2004 WL 2040272, at *5 (E.D. Pa. Sept. 10, 2004) (finding no suggestion in the record "that the Air Force intended to deliberately misrepresent the truth or commit a fraud on the court[s]" in *Reynolds*); *id.* at *10 ("Altogether absent from the pleadings in this case is a sufficient showing of egregious conduct by any Air Force representatives" in *Reynolds*).

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR                                                   8
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

Second, as to the *Pentagon Papers* case, that was not a setting in which the Government asserted the state secrets privilege at all.  *See N.Y. Times Co. v. United States*, 403 U.S. 713 (1971).  But to the extent that the Government argued that harm to national security would result from the disclosures at issue in that case, it is difficult to see how that could amount to "abuse," Amicus Br. at 4, considering that internal military deliberations addressing the conduct of an ongoing war were at issue.  Indeed, Justice Blackmun, having reviewed the underlying material, predicted that its release could result in "prolongation of the war and of further delay in the freeing of United States prisoners." *Pentagon Papers*, 403 U.S. at 763 (Blackmun, J., dissenting).  Historic debate about the secrecy of Pentagon Papers is not a basis to alter the standard of review for a state secrets privilege assertion.  And in *Horn v. Huddle*, 647 F. Supp. 2d 5 (D.D.C. 2009), *vacated upon settlement*, 699 F. Supp. 2d 236 (D.D.C. 2010), what the court criticized as a "fraud" was the Government's unintentional failure to update a previously-filed declaration supporting the state secrets privilege years after it was first submitted.  While regrettable, such an omission in no reason to alter the applicable standard here, especially as the declarations supporting the Government's privilege assertion were prepared and submitted to the Court less than two months ago.[8]  In sum, the approach that *amici* propose is not only unsupported by the facts, but is contrary to law.

### C.  None of the Authority Cited by Plaintiff Supports Granting Counsel Access.

In support of its argument that disclosure to counsel would not present an unjustifiable risk to national security, Pl.'s Opp'n at 11–12, Plaintiff marshals a series of cases and statutes involving counsel access to classified information, including outside of a state secrets assertion.  Defendants explain below why none of those settings lends support to Plaintiff here.

---

[8] In *Ibrahim v. U.S Dep't of Homeland Sec.*, 912 F.3d 1147 (9th Cir. 2019) (*en banc*), too, there was no abuse of the state secrets privilege but rather a misunderstanding by the Court of Appeals about the Government's representations during proceedings below. The Government had represented that evidence would be removed entirely from the case by an assertion of privilege, and the panel then misunderstood a request for dismissal on state secrets grounds—*i.e.* because that evidence *could not be used* by either party—to be a "use" of that evidence.  912 F.3d at 1163.

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR                                                9
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

1    *Al-Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir.

2    2012) ("*Al-Haramain II*"):  Far from being "governing law" as Plaintiff contends, Pl.'s Opp'n at

3    15, this is a case in which the state secrets privilege was not asserted.  It is instructive here only

4    insofar as it reflects the Ninth Circuit's recognition that the decision of whether to disclose

5    national security information must remain with the Government.  In *Al-Haramain II*, an

6    organization brought a due process challenge to a Treasury Department designation based on

7    classified materials, which had rendered the organization "financially defunct."  686 F.3d at 980.

8    The Ninth Circuit held that Treasury was entitled to use classified material in its designation.  *Id.*

9    at 980–82.  Moreover, although the Ninth Circuit discussed ways in which information

10   underlying the designation might be provided to the organization's counsel, the Court did not

11   order disclosure of classified material and recognized that the Government "might have a

12   legitimate interest in shielding [classified] materials even from someone with an appropriate

13   security clearance." *Id.* at 983.  Classified information was never disclosed to plaintiff's counsel

14   in that case.

15       *CIPA*:  While Plaintiff urges that CIPA demonstrates the power of the Court to order

16   disclosure of classified information subject to protective measures, CIPA applies only in criminal

17   cases, *see* 18 U.S.C. app. 3, Pub. L. No. 96-456, 94 Stat. 2025 (1980), where the Government

18   ultimately decides whether proceedings in which national security information is implicated will

19   go forward.  *Reynolds*, 345 U.S. at 12 (explaining that procedures applicable to a state secrets

20   privilege assertion in a civil case where the Government is a defendant differ from a criminal

21   setting).  Furthermore, CIPA builds in numerous measures recognizing the Government's ability

22   to protect classified information.  For example, if the court authorizes disclosure of classified

23   information, the Government may move to substitute non-classified information in its place, and

24   may submit an affidavit from the Attorney General, explaining why disclosure will damage

25   national security, which the court must review *ex parte* and *in camera* at the Government's

26   request.  *See* 18 U.S.C. app. 3, § 6(c).  And if a court ultimately orders disclosure of classified

27   information, the Government may either bring an interlocutory appeal or cause the court to

28   dismiss the indictment. S*ee id.* §§ 7(a), 6(e).  Accordingly, it is not remotely relevant that private

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR                                        10
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

counsel may have received access to classified information in representing defendants in criminal cases. The law and policy rationale applicable in those circumstances do not apply to an assertion of the state secrets privilege in the civil setting. *See Reynolds,* 345 U.S. at 12.

*Contractor cases:* Cases involving government contractors who worked on classified defense contracts also do not provide a basis for granting access here. *See* Pl.'s Opp's at 14 (citing *Loral Corp. v. McDonnell Douglas Corp.*, 558 F.2d 1130 (2d Cir. 1977); Amici Br. at 6–7 (same).[9] That government contractors and their counsel have been granted access to classified information is unsurprising since the very purpose of some contracts is to create classified government projects for which contractors must receive clearances for access to classified information. Plaintiffs and their counsel are in no similar position here; indeed, the privileged information in the Classified Steinbach Declaration is far broader than any information Plaintiff may have received as a recipient of legal process and more detailed than Plaintiff or its counsel would ever know or have reason to learn.

Moreover, past access to sensitive information does not entitle a government contractor or their counsel to such access—even to the same information—in the future, including in litigation, nor does such past access serve to supplant the Government's ability to withhold that information pursuant to the state secrets privilege. The Government may assert the state secrets privilege to prevent even previously cleared counsel from access to or use of classified information in litigation. *See, e.g.*, *Gen. Dynamics Corps. v. United States*, 131 S. Ct. 1900, 1904 (2011) (noting that court had terminated certain discovery upon state secrets assertion); *N.S.N. Int'l Indus. v. E.I. DuPont*, 140 F.R.D. 275, 279–80 (S.D.N.Y. 1991) (upholding assertion of state secrets privilege despite fact that counsel for defense contractor had been granted

---

[9] In *Loral*, Plaintiff argues that the Second Circuit "permitted a trial to proceed," Pl.'s Opp'n at 14, but the question of whether there should have been a trial at all in that case was not before the court. Rather, the sole issue was whether an order striking a jury trial should be upheld because of the need to protect classified information essential to the claims in a dispute between a prime and sub-contractor involved in producing classified Air Force equipment. *See Loral*, 558 F.2d at 1131. The court agreed with the Government that a jury trial was "inappropriate" in the circumstances, *id.* at 1132, and, while the decision notes that the Government had provided access to the relevant materials for the court, magistrate, and lawyers, it does not reflect that the court required the Government to do so. *See id.*

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR                                                                11
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

clearances; finding that waiver of privilege based on existing clearance would be "absurd").[10]

*Habeas Litigation:*  Similarly, the circumstances at issue in the *Guantanamo Bay* habeas litigation—a setting to which *amici* cite, *see* Amicus Br. at 7, 7 n.3—are easily distinguished. The Guantanamo cases involve detainees' liberty interests in being free from custodial detention, and, in that unique and sensitive circumstance arising from Executive-imposed detentions, the Government chose to provide qualified, security-cleared *habeas* counsel with access to classified information the Government was willing to disclose to counsel, and sought and obtained a protective order regulating counsel's access to sensitive and classified information.  *See In re Guantanamo Bay Detainee Litig.*, Misc. No. 08-0442, 2009 WL 50155 (D.D.C. Jan. 9, 2009). There is no parallel in this case.  Moreover, nothing in the Guantanamo protective order requires the Government to disclose classified information, or entitles petitioners or their counsel access to information filed *ex parte* or *in camera*.  *See In re Guantanamo Bay Detainee Litig.*, 2009 WL 50155, at *11 (§ 48(b)).  And, as in criminal cases, the Government typically can avoid the disclosure of classified information in the Guantanamo cases, where it may determine to withdraw allegations or release a detainee.  *See Reynolds,* 345 U.S. at 12.

*Statutory Provisions:* Plaintiff also cites various statutory provisions, including of FISA and the NSL statute that allow for specific forms of judicial review, and argues that Congress intended to displace the state secrets privilege in this setting and permit access by Plaintiff's counsel to classified information.  *See* Pl.'s Opp'n at 17–19.  There are no grounds for finding any such preemption here.  A common-law rule may be "abrogate[d]" only by a statute that "speak[s] directly to the question addressed by the common law."  *E.g.*, *United States v. Texas*, 507 U.S. 529, 534 (1993).  And the threshold is even higher to displace a privilege rooted in in

---

[10] Similarly, in adjudicating challenges to Government determinations that material cannot be published by persons subject to non-disclosure obligations because it contains classified information, the courts have declined to order private parties' access to classified information, even if it was previously known to them.  *See Boening v. CIA*, 579 F. Supp. 2d 166 (D.D.C. 2008); *see also, e.g., Stillman v. CIA*, 319 F.3d 546 (D.C. Cir. 2003). Thus, it would be of no moment if some of Plaintiff's employees may know some portion of the information that may be subject to the Government's privilege assertion.  *See* Pl.'s Opp'n at 8.

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR                                                      12
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

the constitutional powers of the President. *See Armstrong v. Bush,* 924 F.2d 282, 289 (D.C. Cir. 1991); *El-Masri*, 479 F.3d at 303; *see also Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988).

Plaintiff concedes, as it must, that the statutes in question—Section 1806(f), Title V of FISA, and Section 3511 of the NSL statute—do not govern directly the circumstances before this Court. *See* Pl.'s Opp'n at 17–19.  And underscoring that Congress did not "speak directly" to the question addressed here, Plaintiff also concedes that there is an "absence of a clear avenue for expeditious judicial review" of its claims.  *Id.* at 19.  Against this backdrop, there cannot be a finding of Congressional intent—"manifest," Pl.'s Opp'n at 19, or otherwise—to displace the state secrets privilege and allow counsel access to classified information.

In particular, in relying on Section 1806(f) of FISA, Plaintiff looks to a statutory scheme that does not apply here by its terms, *see* Pl.'s Opp'n at 18, and in which the Government retains significant authority to protect classified information.  Section 1806(f) is part of FISA's framework addressing the Government's "Use of Information" derived from surveillance under that statute.  *See* 50 U.S.C. § 1806.  It authorizes *ex parte, in camera* review of classified information pertaining to electronic surveillance to determine the legality of surveillance from which evidence to be used against a target or subject was acquired.  *Id.* § 1806(f).[11]  In certain narrow circumstances, Section 1806(f) provides that a court may order disclosure of information to such a target or subject.  *See id.*  Here, of course, the Government does not seek to use surveillance evidence against a person in this proceeding, and even if the provision did displace the privilege in some circumstances, it does not pertain to the circumstances of this case.  Finally, although Plaintiff writes as though courts frequently grant cleared counsel access to classified information under Section 1806(f)'s procedures, *see* Pl.'s Opp'n at 16, the Government has never been required under Section 1806(f) to produce classified information to an opposing party or its counsel.  The only district court order to do so was overturned on appeal.  *See U.S. v.*

_____

[11] To the extent that the Ninth Circuit read Section 1806(f) more expansively in *Fazaga v. FBI*, 916 F.3d 1202 (9th Cir. 2019) to displace the state secrets privilege in a case that concerned the lawfulness of alleged surveillance activities, the Government disagrees with the conclusions reached by the *Fazaga* panel and is considering whether to seek further appellate review.

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR                                                      13
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

*Daoud*, 2014 WL 321384, at *3 (N.D. Ill. Jan. 29, 2014), *rev'd*, 755 F.3d 479, 481–85 (7th Cir. 2014).[12]

## II. The Government's Detailed Submissions Demonstrate that the State Secrets Privilege Protects the Information at Issue from Disclosure.

To facilitate the Court's review of whether the state secrets privilege properly protects the four categories of information at issue, the Government has submitted the classified declaration of Acting EAD McGarrity, describing the information and explaining in classified detail the national security harm that reasonably could be expected to result from its disclosure.  To the extent possible on the public record, the Government's Motion also describes those categories of information and why they constitute "matters which, in the interest of national security, should not be divulged."  *Jeppesen*, 614 F.3d at 1082; *see* Defs.' Mot. at 10, 14–17.  Plaintiff's multiple responses miss the mark.

### A.  The Government Does Not Rely on "Classification Alone."

First, Plaintiff argues that classification alone or "simply saying military secret, national security or terrorist threat" is insufficient to support a finding that the state secrets privilege protects information.  *See* Pl.'s Opp'n 3 (quotation omitted).    That is a straw man.  The Government has not relied solely on classification or on conclusory statements about the national security.  The Government agrees that a state secrets privilege assertion is not a mere classification decision, but rather a policy judgment made by the head of the Department or agency at issue that the information at issue must be protected in the interests of national security and foreign relations.  *See Halkin v. Helms*, 690 F.2d 977, 996 (D.C. Cir. 1982) (distinguishing

---

[12] Lastly, Plaintiff also cites *Halpern v. United States*, 258 F.2d 36 (2d Cir. 1958) as support for an *in camera* trial using classified evidence. S*ee* Pl.'s Opp'n at 14.  But that case turned on a statutory framework inapplicable here, the Invention Secrecy Act, 35 U.S.C. § 183 *et seq*., which the court "viewed as waiving the [state secrets] privilege."  258 F.2d. at 43.  Moreover, the holding of *Halpern* has been severely curtailed even in the Second Circuit.  *See Clift v. United States*, 597 F.2d 826, 829 (2d Cir. 1979) (declining to follow *Halpern* in a case involving the same statute where the state secrets privilege was asserted); *Clift v. United States*, 808 F. Supp. 101, 109-11 (D. Conn. 1991) (on remand, upholding assertion of state secrets privilege, dismissing on those grounds); *see also Am. Tel. & Tel. Co. v. United States*, 4 Cl. Ct. 157, 160 (1983) (declining to follow *Halpern*).  *Halpern* provides no authority for the proposition that this case may proceed through an *in camera* trial with cleared counsel.

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR                                                                 14
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

1  policy judgment reflected in a state secrets privilege assertion from a classification

2  determination).  The privilege to protect state secrets derives from the President's Article II

3  authority over foreign affairs and national defense matters.  *See United States v. Nixon*, 418 U.S.

4  683, 710 (1974); *see also El-Masri*, 479 F.2d at 303–304 (noting "constitutional dimension" of

5  privilege); *see also Halkin*, 598 F.2d at 7 (state secrets privilege "must head the list" of

6  evidentiary privileges).  That the Attorney General personally has asserted the privilege in this

7  case takes the matter far beyond a mere classification determination.

8       Beyond this, Plaintiff's arguments ignore entirely the detailed information that the

9  Government has provided about the four categories of information at issue here.  *See* Defs.' Mot.

10  at 10, 14–17.

## B.  The First Category of Information at Issue Encompasses Classified Detail Regarding Plaintiff's Receipt of National Security Process.

13       Plaintiff's attack on the substance of the privilege assertion focuses on the first category

14  of information that the Government seeks to protect, and argues that "[t]he Government goes so

15  far as to claim that all 'information regarding national security legal process that has been served

16  on Twitter' . . . is a 'state secret.'"  Pl.'s Opp'n at 5; *see also id.* at 2.  Proceeding from that

17  erroneous formulation, Plaintiff contends that not all information about its receipt of national

18  security process is sensitive.  *See* Pl's Opp'n at 8–9.  But here, again, Plaintiff takes on a straw

19  man.  The Government's position is not that *all* information about Twitter's receipt of national

20  security process is privileged, but that certain "sensitive national security information" about that

21  category—*i.e.* "classified information regarding national security legal process that has been

22  served on Twitter"—is properly subject to protection.  AG Decl. ¶¶ 4, 6; *see also* Unclassified

23  McGarrity Decl. ¶ 18 (stating that only classified information about Twitter's receipt of process

24  is subject to the Government's privilege assertion), ¶ 23 (same).  And the Government does not

25  rely on the mere classification of this information as an explanation for why it is privileged, but

26  referred to classification to identify what information in that declaration is subject to the

27  privilege assertion.  No further detail about the particular information covered by this category

28  can be provided in this unclassified submission, but the classified McGarrity declaration explains

why disclosure reasonably could be expected to cause significant harm to national security.

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR                                    15
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

Plaintiff also argues that (1) it has reported information pursuant to the USA Freedom Act reporting bands, (2) there has been litigation related to nondisclosure requirements associated with individual National Security Letters (NSLs), and (3) Plaintiff has been permitted to make public information about its receipt of certain specific NSLs. *See* Pl.'s Opp'n at 9. All of these points are inapposite. With respect to the reporting permitted by the USA Freedom Act, the Director of National Intelligence declassified information reflecting the Government's use of national security process reported in the formats set forth therein. *See* ECF No. 147-1, ¶ 20. Thus, data reported consistent with those formats are unclassified and fall outside the scope of the Government's privilege assertion. Similarly, an individual NSL is unclassified. Therefore, neither Plaintiff's disclosure of information about its receipt of a specific NSL, pursuant to termination of its nondisclosure obligations, nor litigation about other companies' receipt of NSLs has any bearing on whether *classified* information about its receipt of national security process is privileged.[13]

Relatedly, Plaintiff contends that the Government has not previously treated such information as sensitive. *See* Pl.'s Opp'n at 2, 8 (arguing that the Government has now advanced this position "for the first time"). That again is false. In particular, to the extent that Plaintiff refers to the question of whether or not it has received legal process under FISA, the parties both have consistently treated that fact as sensitive from the outset of this litigation. For example, in Defendants' first dispositive motion, filed in 2015, Defendants clarified therein that their

---

[13] For this reason, the information that the Government seeks to protect in category one—classified information about Plaintiff's receipt of national security legal process—is not "already effectively in the public domain." Pl.'s Opp'n at 9. Moreover, the decision on which Plaintiff relies upon, *Hepting v. AT&T*, 439 F. Supp. 2d 974 (N.D. Cal. 2006), to support its argument that information "effectively" in the public domain is not properly subject to protection not only fails to apply the law correctly but was overturned by an act of Congress. *See* FISA Amendments Act of 2008 ("FAA"), Pub. L. No. 110-261, 122 Stat. 2436, Title II, § 201 (July 10, 2008), codified at 50 U.S.C. § 1885a. In enacting the FAA, Congress cited the decision in question, and provided that the identities of companies providing assistance to the Government are properly subject to protection. *See* S. Rep. No. 110-209, at 7 (2007) (indicating that the FAA was meant to apply to the numerous lawsuits against telecommunications providers in the Northern District of California, of which *Hepting* was one). The correct law provides that only an official public disclosure or acknowledgement by the Government may place information in the public domain. *See*, *e.g.*, *CIA v. Sims*, 471 U.S. 159 (1985).

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR                                            16
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

"discussion of FISA orders or directives that plaintiff could have received, and that could require plaintiff not to disclose the existence of the orders or directives, is not intended to confirm or deny that plaintiff has, in fact, received any such national security legal process." ECF No. 28, at 2 n.1. And when undersigned counsel stood "to address the FISA-related matters" at oral argument on that motion, counsel first reiterated "that [that] discussion [was]n't meant to confirm or deny whether plaintiff has, in fact, received any particular form of national security process." May 5, 2015 Tr. at 22:19–20, 23:2–4. Indeed, the Government has been careful to protect that information throughout this litigation, *see*, *e.g.*, ECF No. 57 at 2 n. 2, ECF No. 74 at 2 n.2, ECF No. 94 at 2 n.1, ECF No. 145 at 1 n.1, and even Plaintiff's reference to whether it "'hypothetically' received process under FISA" reflects that Plaintiff, too, understands that this information has been—and continues to be—classified. Pl.'s Opp'n at 9. Thus, the scope of the first category of information subject to the Attorney General's privilege assertion is consistent with Government's statements and position throughout this litigation.

### C. This Court's Prior Findings Do Not Bear on Whether the State Secrets Privilege Properly Applies to the Classified Steinbach Declaration.

Plaintiff also relies on the Court's decision on summary judgment to undercut the Attorney General's state secrets assertion. In relation to the first category of information about Plaintiff's receipt of legal process, Plaintiff argues that the Court previously determined that the Government has not shown that "even *public* disclosure of materially identical information in Twitter's 2014 draft Transparency Report would cause sufficient harm to national security to justify restrictions on public reporting of it." Pl.'s Opp'n at 8. Plaintiff overlooks that the Court's decision addressed a different question from the one presented here. The Court examined not whether "there [was] a reasonable danger that compulsion of the evidence [would] expose . . . matters which, in the interest of national security, should not be divulged," *Jeppesen*, 614 F.3d at 1081, but whether the Government's restriction of Plaintiff's speech with respect to the data in its draft Transparency Report was "narrowly tailored to prevent a national security risk *of sufficient gravity*" to pass muster under the heightened level of scrutiny that the Court had applied. ECF No. 172, at 16, 17 (emphasis added). To do so, the Court examined whether "grave or imminent harm" could be expected to arise from disclosure of the draft Transparency

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR                                    17
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

Report. *Id.*  That is not the standard for assessing whether the state secrets privilege properly protects information—the question now before the Court.

Plaintiff also argues the Court previously described the contents of the Classified Steinbach Declaration as "generic," "boilerplate," and "broad brush."  Pl.'s Opp'n at 7 (quoting ECF No. 172 at 18).  But even if this description were correct—and Defendants respectfully submit that it is not—it does not constitute a finding that the Classified Steinbach Declaration does not contain information that, in the interest of national security, should not be disclosed.[14] And if the Court ultimately agrees with Plaintiff's characterization of information from the Classified Steinbach Declaration at issue in the Attorney General's privilege assertion, then it can deny the assertion of privilege and set the matter for appellate review – but in no event should it disclose the classified declaration to Plaintiff's counsel in the meantime.

### D.  The Four Categories of Information Subject to the Government's Privilege Assertion Should Not Be Disclosed "in the Interest of National Security."

Apart from raising erroneous arguments regarding the first category of information, Plaintiff is otherwise silent as to the four categories of information subject to the Attorney General's privilege assertion.  Unable to identify any reason why the information in categories two through four should not be protected from disclosure, Plaintiff argues, generally, that the information in the Classified Steinbach Declaration does not warrant protection because of the passage of time.  *See* Pl.'s Opp'n at 6–8.  Plaintiff urges that "[t]he Court should consider the sensitivity of the information in light of the circumstances as they exist *now*."  *Id.* at 8.[15]  But the Attorney General has asserted the privilege over these four categories of information in March 2019, based on current circumstances.  *See* AG Decl., ECF No. 281-1.

---

[14] Those descriptors referred specifically to the discussion of mosaic theory that was presented in the declaration. *See* ECF No. 172 at 17–18.

[15] In support of its argument, Plaintiff cites the presumptive termination of nondisclosure obligations associated with NSLs after the passage of three years.  *See id.* at 8.  But, as noted above, NSLs are not classified.  For classified information, the presumptive timeframes for nondisclosure are considerably lengthier, 10 or 25 years, at a minimum, commensurate with the greater sensitive of the information in question.  *See* Exec. Order No. 13526, § 1.5(b).

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR                                                            18
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**III.   Exclusion of the Classified Steinbach Declaration Would Require Dismissal.**

After assessing whether the state secrets privilege properly protects the information at issue, "the ultimate question to be resolved" is "how the matter should proceed in light of the successful privilege claim." *Al-Haramain*, 507 F.3d at 1202.  As the Ninth Circuit has explained:  "There are three circumstances when the *Reynolds* privilege would justify terminating a case."  *Jeppesen*, 614 F. 3d at 1083.  If "the plaintiff cannot prove the *prima facie* elements of her claim with nonprivileged evidence"; "if the privilege deprives the defendant of . . . a valid defense"; or, as relevant here, if "litigating the case to a judgment on the merits would present an unacceptable risk of disclosing state secrets."  *Id.*  Plaintiff and *amici* object that the Government has not shown that removal of the Classified Steinbach Declaration would deprive it of a "valid defense." Citing *Fazaga*, they insist that dismissal is not warranted unless the Government can demonstrate that exclusion of the privileged evidence would deprive the Government of a meritorious defense, *see* Pl.'s at 20, Amicus Br. at 10–11.

The flaws with this theory are too numerous to address within the constraints of this reply.  But, in sum, Plaintiff's reading of *Fazaga*[16] would require a collateral *in camera* merits adjudication when privilege is asserted to protect national security in order to assess the impact of excluded information on a claim.  That is not the law; among other things it is contrary to the admonition in *Reynolds* itself that *in camera* disclosure of state secrets should not be required. *See* 345 U.S. at 10.  Indeed, the Supreme Court more recently again admonished against the use of *in camera* proceedings to adjudicate an issue of standing, because such proceedings might inherently reveal national security information.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 412 n.4 (2013).

Moreover, the Classified Steinbach Declaration is surely indispensable to a valid defense in this case.  It addresses in classified detail the central issue on the merits – why disclosure of the granular information in Plaintiff's draft transparency report reasonably could be expected to harm national security and therefore why Twitter has no right to publish that information under

[16] *Fazaga* did not reach the Government's assertion of the state secrets privilege or its impact on the outcome of the case.  *See* 916 F.3d at 1253.  The panel's comments regarding a "valid defense" dismissal are pure *dicta*.

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR                                    19
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

1   the First Amendment.  But under Plaintiff's view, however, if the Government obtains the

2   exclusion of classified evidence needed to present its defense through a state secrets privilege

3   assertion, but that excluded evidence is not sufficient to prevail on the merits, it still must defend

4   on the merits, even if it lacks adequate or complete public evidence.  No law supports that

5   proposition in a civil case where the Government is a defendant.

6        *Amici* also accuse the Government of attempting a "sleight of hand" in relying on a

7   standard for dismissal confined to the Fourth Circuit, Amicus Br. at 13 (quoting *Fitzgerald v.*

8   *Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1241–42 (4th Cir. 1985) and *El-Masri*, 479 F.3d at 306.

9   *Amici* are wrong.  Defendants rely on the standard for dismissal articulated by the *en banc* panel

10   of the Ninth Circuit in *Jeppesen*, which quoted Fourth Circuit precedent as well.  *See* 614 F.3d at

11   1083 ("[A] proceeding in which the state secrets privilege is successfully interposed must be

12   dismissed if the circumstances make clear that privileged information will be so central to the

13   litigation that any attempt to proceed will threaten that information's disclosure.") (quoting *El-*

14   *Masri*, 479 F.3d at 308); *id.* ("[I]n some circumstances sensitive military secrets will be so

15   central to the subject matter of the litigation that any attempt to proceed will threaten disclosure

16   of the privileged matters.") (quoting *Fitzgerald*, 776 F.2d at 1241–42).  Because privileged

17   evidence at issue here is inseparable from nonprivileged information that will be necessary to

18   claims or defenses, the risk of disclosure is acute in any future proceedings.  *See* Gov't Mot. at

19   23–25.  This is especially so when the Court has already indicated that it would require even

20   greater detail than the highly classified explanations the Government has proffered to date.  *See*

21   July 6, 2017 Order at 17.  To state what may be obvious: it would not be possible to present a

22   *more* detailed explanation of the harm of disclosure without building upon the existing

23   explanation, and litigating that question inherently risks the disclosure of the privileged

24   information.  This alone necessitates dismissal.

25   **CONCLUSION**

26        The Court should deny the Plaintiff's request for access and discharge the Order to Show

27   Cause.  If the Court declines to do so on other grounds, the Court should uphold the Attorney

28   General's state secrets privilege assertion, and dismiss the complaint on that basis.

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR                                                   20
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

1   Dated:  May 22, 2019                    Respectfully submitted,

2

3                                           JOSEPH H. HUNT
                                            Assistant Attorney General
4

5                                           DAVID L. ANDERSON
                                            United States Attorney
6

7                                           ANTHONY J. COPPOLINO
                                            Deputy Branch Director
8
                                                    */s/ Julia A. Heiman*
9                                           JULIA A. HEIMAN, Bar No. 241415
                                            Senior Counsel
10                                          CHRISTOPHER HEALY
                                            Trial Attorney
11                                          U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
12                                          P.O. Box 883
                                            Washington, D.C. 20044
13                                          julia.heiman@usdoj.gov
                                            *Attorneys for Defendants*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR                                                    21
Defs.' Reply in Support of their Req. that the Court Discharge the Order to Show Cause
or in the Alternative, Motion to Dismiss in Light of the State Secrets Privilege

# Exhibit 1

1

2

3

4

5

6

7

8

9               IN THE UNITED STATES DISTRICT COURT

10              FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12   CAROLYN JEWEL, ET AL.,

13              Plaintiffs,                          No. C 08-04373 JSW

14        v.

15   NATIONAL SECURITY AGENCY, ET AL.,

16              Defendants.                          **ORDER GRANTING**
                                                     **DEFENDANTS' MOTION FOR**
17                                                   **SUMMARY JUDGMENT AND**
                                                     **DENYING PLAINTIFFS' CROSS-**
18                                                   **MOTION**

19   _____/

20          Now before the Court is the motion for summary judgment filed by Defendants National

21   Security Agency, United States, Department of Justice, Paul M. Nakasone, Donald J. Trump,

22   William Barr, and Daniel Coats, in their official capacities (collectively, "Defendants") and the

23   cross-motion to proceed to resolution on the merits filed by Plaintiffs Carolyn Jewel, Tash

24   Hapting, Young Boon Hicks, as executrix of the estate of Gregory Hicks, Erik Knutzen, and

25   Joice Walton, on behalf of themselves and all other individuals similarly situated ("Plaintiffs").

26          Having considered the parties' papers, including Defendants' classified submissions,

27   and the parties' arguments, the Court GRANTS Defendants' motion for summary judgment and

28   DENIES Plaintiffs' cross-motion for summary judgment.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

**BACKGROUND**

**A.     Factual Procedural Background.**

This case is one of many arising from claims that the federal government, with the assistance of major telecommunications companies, conducted widespread warrantless dragnet communications surveillance of United States citizens following the attacks of September 11, 2001.  On September 18, 2008, Plaintiffs filed this putative class action on behalf of themselves and a class of similarly situated persons described as "millions of ordinary Americans . . . who use[] the phone system or the Internet" and "a class comprised of all present and future United States persons who have been or will be subject to electronic surveillance by the National Security Agency without a search warrant or court order since September 12, 2001." (Complaint at ¶¶ 1, 7, and 9.)  The Court is now faced with the challenge of determining whether, as Plaintiffs describe it, the data and metadata collection programs may violate Plaintiffs' remaining statutory protections afforded them by the Wiretap Act and the Electronic Communications Privacy Act or the Stored Communications Act.  Further, the Court is tasked with the preliminary question whether the Plaintiffs may maintain their claims based on the evidence of their standing and the potential that continued litigation may imperil national security.

According to the allegations in the Complaint, a program of dragnet surveillance (the "Program") was first authorized by Executive Order of the President on October 4, 2001.  (*Id.* at ¶¶ 3, 39.)  Under this Program (and subsequently under statutory authorities) the NSA undertook the collection of non-content telephony and Internet metadata in bulk, and the contents of certain Internet communications.  (*See id.* at ¶¶ 3-13, 39; *see also* Dkt. No. 389, Declaration of Michael S. Rogers ("Rogers Decl.") ¶¶ 40, 47-48, 51-52.)  Plaintiffs allege that, in addition to eavesdropping on or reading specific communications, Defendants have "indiscriminately intercepted the communications content and obtained the communications records of millions of ordinary Americans as part of the Program authorized by the President." (Complaint ¶ 7.)  The core component of the Program is a nationwide network of sophisticated communications surveillance devices attached to the key facilities of various

2

United States District Court
For the Northern District of California

1   telecommunications companies that carry Americans' Internet and telephone communications.

2   (*Id.* at ¶¶ 8, 42.)  Plaintiffs allege that Defendants have unlawfully solicited and obtained the

3   private telephone and internal transactional records of millions of customers of the

4   telecommunications companies, including records indicating who the customers communicated

5   with, when those communications took place and for how long, among other sensitive

6   information.  Plaintiffs allege these records include both domestic and international

7   communications.  (*Id.* at ¶ 10.)  Plaintiffs sue Defendants "to enjoin their unlawful acquisition

8   of the communications and records of Plaintiffs and class members, to require the inventory and

9   destruction of those that have already been seized, and to obtain appropriate statutory, actual,

10  and punitive damages to deter future illegal surveillance."  (*Id.* at ¶ 14.)

11          Plaintiffs originally alleged seventeen counts against Defendants:  violation of the

12  Fourth Amendment (counts 1 and 2); violation of the First Amendment (counts 3 and 4);

13  violation of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. §§ 1809, 1810

14  (counts 5 and 6); violation of the Wiretap Act, 18 U.S.C. § 2511(1)(a), (b), and (d) (counts 7

15  through 9); violation of the Electronic Communications Privacy Act or the Stored

16  Communications Act, 18 U.S.C. § 2703(a), (b), and (c) (counts 10 through 15); violation of the

17  Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (count 16); and violation of separation of

18  powers (count 17).

19          After the Complaint was filed on September 18, 2008, Defendants moved to dismiss and

20  alternatively sought summary judgment as to all claims.  Defendants argued that the Court

21  lacked jurisdiction over the statutory claims because the Government had not waived its

22  sovereign immunity.  Defendants moved for summary judgment on the remaining claims based

23  primarily on the contention that the information necessary to litigate the claims was properly

24  subject to the state secrets privilege.

25          The district court, the Honorable Vaughn R. Walker presiding, dismissed the claims

26  without leave to amend based on the finding that Plaintiffs had failed to make out the *prima*

27  *facie* allegations necessary to establish standing.  (Dkt. No. 57.)

28

United States District Court

For the Northern District of California

On appeal, the Ninth Circuit Court of Appeals reversed the district court's dismissal of the Complaint on the ground of lack of standing. The appeals court concluded that, at the pleadings stage, "Jewel [had] alleged a sufficiently concrete and particularized injury. Jewel's allegations are highly specific and lay out concrete harms arising from the warrantless searches." *See Jewel v. National Security Agency*, 673 F.3d 902, 909-10 (9th Cir. 2011). Although the appellate court remanded on the basis that it was premature to dismiss premised upon lack of standing, the court noted that "procedural, evidentiary, and substantive barriers" might ultimately doom Plaintiffs' proof of standing. *See id.* at 911. The court remanded "with instructions to consider, among other claims and defenses, whether the government's assertion that the state secrets privilege bars this litigation." *Id.* at 913-14.

Upon remand, Plaintiffs filed a motion for partial summary adjudication urging the Court to reject Defendants' state secret defense. Defendants cross-moved to dismiss on the basis of sovereign immunity for the statutory claims and for summary judgment on the assertion of the state secrets privilege.

On July 23, 2013, this Court granted Plaintiffs' motion for partial summary adjudication by rejecting the state secrets defense as having been displaced by the statutory procedure prescribed in 50 U.S.C. Section 1806(f) of FISA. (Dkt. No. 153.) The Court granted Defendants' motions to dismiss Plaintiffs' claims for damages under FISA and all statutory claims for injunctive relief on the basis of sovereign immunity. Further, the Court reserved ruling on the Defendants' motions for summary judgment on the remaining non-statutory claims.

On July 25, 2014, Plaintiffs moved for partial summary judgment on their Fourth Amendment claims and on September 29, 2014, Defendants cross-moved on the threshold issue of standing and on the merits of the Fourth Amendment claim. On February 10, 2015, this Court denied Plaintiffs' motion and granted Defendants' motion for partial summary judgment on Plaintiffs' Fourth Amendment claims. (Dkt. No. 321.) Relying on both the public record and Defendants' classified submissions, the Court found that Plaintiffs had failed to establish a sufficient factual basis to assert they had standing to sue under the Fourth Amendment

regarding the possible interception of their Internet communications.  Further, the Court found that the Fourth Amendment claim would otherwise have to be dismissed because even if Plaintiffs could establish standing, such a potential claim would have to be dismissed on the basis that any possible defenses would require the impermissible disclosure of state secret information.

On May 20, 2015, this Court granted Defendants' motion for entry of judgment under Federal Rule of Civil Procedure 54(b) on the basis that the threshold issue of standing and its adjudication in the Fourth Amendment context was a final determination and no just reason existed for delay in entering final judgment on the constitutional claim.  (Dkt. No. 327.)

Plaintiffs appealed that ruling, and on December 18, 2015, the Ninth Circuit, dismissed the appeal, reversed the certification, and remanded to this Court.  (Dkt. No. 333.)  The appellate court found that the severable claim of liability under the Fourth Amendment did not encompass all plaintiffs or defendants or all remaining claims and therefore the piecemeal resolution of individual issues did not satisfy the requirements of Rule 54(b).  The Ninth Circuit remanded with instructions to expend the parties' and the district court's resources in an effort to obtain a final and comprehensive judgment of this entire matter.

Immediately upon remand, on February 19, 2016, this Court lifted the stay of discovery on the remaining statutory claims and admonished the parties to seek resolution of all remaining matters by summary adjudication on the merits, with the benefit of any potentially available discovery.  (Dkt. No. 340.)  The Court permitted Plaintiffs to serve discovery requests limited to the issue of their standing to pursue the remaining statutory claims.  The Court directed Defendants to file its unclassified objections and responses to Plaintiffs' requests in the public record, and to submit classified documents and information responsive to Plaintiffs' discovery requests *ex parte* and *in camera*.  The Court also tasked the Defendants to marshal all evidence bearing on the issue of Plaintiffs' standing, even if it had not been specifically requested by Plaintiffs.  (Dkt. No. 356.)

On August 17, 2018, after having reviewed both the classified and public materials produced and in the record, this Court issued an order requiring the parties to file cross motions

1  for summary judgment on the issue of Plaintiffs' standing or lack of standing as to each of the

2  remaining claims.  (Dkt. No. 410.)

3      The currently pending cross-motions are now ripe for resolution.

4  **B.  Legal Framework Background.**

5      In its order dated July 23, 2013, the Court found that, after the Ninth Circuit remanded

6  this Court's order finding that Plaintiffs lacked standing prior to the proffer of discovery, the

7  Court could utilize the statutory procedure prescribed in 50 U.S.C. Section 1806(f) of FISA

8  ("Section 1806(f)") in order to address the ongoing litigation.  Further, the Court found that the

9  state secrets defense did not require immediate dismissal of the matter.  In that order, the Court

10  found that the use of the procedural mechanism established by Section 1806(f) would not

11  automatically result in the summary exclusion of all potentially classified information.  Rather

12  than merely permitting the assertion of the state secrets privilege to result in immediate

13  dismissal of this action, the Court has, on numerous occasions, permitted Defendants to supply

14  classified evidence for the Court's *in camera* review.  *See also In re National Security Agency*

15  *Telecommunications Records Litigation*, 564 F. Supp. 2d 1109, 1111 (N.D. Cal. 2008) ("FISA

16  preempts the state secrets privilege in connection with electronic surveillance for intelligence

17  purposes . . . .").  Having found that Section 1806(f) of FISA displaces the state secrets

18  privilege as a procedural mechanism in cases in which electronic surveillance yields potentially

19  sensitive evidence by providing secure procedures under which courts can consider national

20  security evidence, this Court has determined that the application of the state secrets privilege

21  would not automatically apply to summarily exclude litigation of this action.

22      Subsequent to this Court's determination that FISA preempts the state secrets privilege

23  in connection with electronic surveillance for intelligence purposes, the Ninth Circuit similarly

24  and more recently concluded that "in enacting FISA, Congress displaced the common law

25  dismissal remedy created by the *Reynolds* state secrets privilege as applied to electronic

26  surveillance within FISA's purview."  *Fazaga v. Federal Bureau of Investigation*, 916 F.3d

27  1202, 1230 (9th Cir. 2019).  The court held that the electronic surveillance claims brought by

28  the plaintiffs in that case were "not subject to outright dismissal at the pleading stage," and

United States District Court
For the Northern District of California

Case 4:08-cv-04373-JSW Document 296 Filed 05/22/19 Page 78 of 237

1    remanded so that the district court could employ the procedures established by Section 1806(f)

2    to review evidence over which Defendants had asserted the state secrets privilege. *Id.* at 1226,

3    1251. This Court has, in the lengthy course of this case, employed those procedures.

4          Now, having required briefing on the remaining statutory claims and having required the

5    proffer of evidence regarding standing from both Plaintiffs and Defendants, both public and

6    classified, the Court may determine the full extent of the threshold legal issue regarding whether

7    Plaintiffs have standing to sue and the determination, regardless whether Plaintiffs have

8    standing to sue, if the Court may proceed to the merits of this case. As discussed at greater

9    length in Section II of the Court's Supplemental Classified Order Granting Defendants' Motion

10   for Summary Judgment and Denying Plaintiffs' Cross-Motion ("Classified Order") filed

11   herewith, after over ten years of litigation and multiple disclosures, the Court accepts the

12   representation of the Defendants that they are unable to defend the litigation or to pursue it to

13   resolution on the merits without grave risk to the national security.

14   **ANALYSIS**

15   **A.**     **Legal Standard on Motion for Summary Judgment.**

16         A principal purpose of the summary judgment procedure is to identify and dispose of

17   factually unsupported claims. *Celotex Corp. v. Cattret*, 477 U.S. 317, 323-24 (1986).

18   Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and

19   admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

20   any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

21   Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the

22   evidence or make credibility determinations, and is required to draw all inferences in a light

23   most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.

24   1997).

25         The party moving for summary judgment bears the initial burden of identifying those

26   portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine

27   issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact

28   is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1    moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is

2    "material" if it may affect the outcome of the case. *Id.* at 248. Once the moving party meets its

3    initial burden, the non-moving party must go beyond the pleadings and, by its own evidence,

4    "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

5        In order to make this showing, the non-moving party must "identify with reasonable

6    particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275,

7    1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)

8    (stating that it is not a district court's task to "scour the record in search of a genuine issue of

9    triable fact"); *see also* Fed. R. Civ. P. 56(e). If the non-moving party fails to point to evidence

10   precluding summary judgment, the moving party is entitled to judgment as a matter of law.

11   *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(e)(3).

12   **B.      Legal Standard on Threshold Issue of Standing.**

13       "[T]here can be no genuine issue as to any material fact" where a party "fails to make a

14   showing sufficient to establish the existence of an element essential to that party's case, and on

15   which [it bears] . . . the burden of proof." *Celotex*, 477 U.S. at 322. Standing is "an essential

16   . . . part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*,

17   504 U.S. 555, 560 (1992). In order for Plaintiffs to establish Article III standing, they must

18   show they: "(1) suffered injury in fact, (2) that is fairly traceable to the challenged conduct of

19   the [Defendants], (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,*

20   *Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 650-61).

21   Plaintiffs bear the burden of proving the existence of standing to sue. *See, e.g., United States v.*

22   *Hays*, 515 U.S. 737, 743 (1995). Plaintiffs must be able to establish standing for each claim and

23   for each form of relief. *See, e.g., DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006);

24   *Davidson v. Kimberly Clark*, 889 F.3d 956, 967 (9th Cir. 2018).

25       "In other words, plaintiffs here must show *their own* metadata was collected by the

26   government." *Obama v. Klayman*, 800 F.3d 559, 562 (D.C. Cir. 2015) (citations omitted;

27   emphasis in original); *see also Halkin v. Helms*, 690 F.2d 977, 999-1000 (D.C. Cir. 1982)

28   ("[T]he absence of proof of actual acquisition of appellants' communications is fatal to their

watchlisting claims.")  Because a demonstration of standing is an "indispensable part of their case," and in order to prevail on their motion for summary judgment,  Plaintiffs must support their allegations of standing "in the same way as any other matter on which [they] bear the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Bras v. Cal. Pub. Utils. Comm'n*, 59 F.3d 869, 872 (9th Cir. 1995) (quoting *Lujan*, 504 U.S. at 561).  Plaintiffs must proffer admissible evidence establishing both their standing as well as the merits of their claims. *See* Fed. R. Civ. P. 56(c); *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010) (holding that the court's ruling on summary judgment must be based only on admissible evidence); *see also Orr v. Bank of America NT & SA*, 285 F.3d 764, 773 (9 th Cir. 2001) (citing Fed. R. Evid. 901(a)) (holding that a trial court may only consider admissible evidence on ruling on a motion for summary judgment and authentication is a "condition precedent to admissibility").  If Plaintiffs are unable to make a showing sufficient to establish an essential element of their claim on which they bear the burden at trial, summary judgment must be granted against them. *See Celotex Corp.*, 477 U.S. at 322.

"To establish Article III Standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013) ("*Clapper*") (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).  "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is *certainly* impending." *Id.* (citing *Lujan*, 504 U.S. at 565 n.2) (emphasis in original).  Thus, the Supreme Court has "repeatedly reiterated that 'the threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (emphasis in original)).

In order to establish standing on the remaining statutory grounds, Plaintiffs must be able to show that they have suffered an injury in fact that is (1) "concrete [and] particularized," (2) "fairly traceable to the challenged action[s]" of the defendants, and (3) "redressable by a

9

United States District Court

For the Northern District of California

favorable ruling." *Clapper*, 568 U.S. at 409. In order to demonstrate that Plaintiffs have suffered the requisite injury in fact, Plaintiffs must, using publicly available facts, adduce admissible evidence that the contents of their communications or the metadata regarding those communications were subject to the intelligence-collection activities they challenge in this case. Plaintiffs must demonstrate that they "personally suffered a concrete and particularized injury in connection with the conduct about which [they] complain." *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018); *see also Clapper*, 568 U.S. at 411 ("[R]espondents fail to offer any evidence that their communications have been monitored under § 1881a, a failure that substantially undermines their standing theory."); *Halkin*, 690 F.2d at 999-1000 (holding that the absence of proof of actual acquisition of appellants' communications was fatal to their claims).

In *Clapper*, the Court found that allegations that plaintiffs' communications would be intercepted were too speculative, attenuated, and indirect to establish injury in fact that was fairly traceable to the governmental surveillance activities. 568 U.S. at 408-13. The *Clapper* Court held that plaintiffs lacked standing to challenge the NSA's surveillance under FISA because their "highly speculative fear" that they would be targeted by surveillance relied on a "speculative chain of possibilities" insufficient to establish a "certainly impending" injury. *Id.*

For their claim under the Wiretap Act, Plaintiffs must demonstrate an injury-in-fact occurred for each and every plaintiff where any communication traveling on the Internet backbone was intercepted, copied, or redirected, diverting it from its normal course. *See George v. Carusone*, 849 F. Supp. 159, 163 (D. Conn. 1994) (quoting *United States v. Rodriguez*, 968 F.2d 130, 136 (2d Cir. 1992), *cert. denied*, 506 U.S. 847 (1992)). For a claim under the Stored Communications Act, Plaintiffs must demonstrate an "injury from the collection, and maintenance in a government database, of records relating to them." *American Civil Liberties Union v. Clapper*, 785 F.3d 787, 801 (2d Cir. 2015); *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (construing "intercept" in light of ordinary meaning, *i.e.*,, "to stop, or interrupt in progress or course before arrival.") (citation omitted).

///

///

10

**United States District Court**
For the Northern District of California

1    **C.    Legal Standard on State Secrets Privilege.**

2         The state secrets privilege has two applications:  as a rule of evidentiary privilege,

3    barring only the secret evidence from exposure during litigation, and as a rule of non-

4    justiciability, when the subject matter of the lawsuit is itself a state secret, necessitating

5    dismissal.  *See Fazaga*, 916 F.3d at 1227; *see also American Civil Liberties Union v. National*

6    *Security Agency*, 493 F.3d 644, 650 n.2 (6th Cir. 2007).  The first application of evidentiary

7    withholding can serve to remove only certain specific pieces of evidence or can be applied to

8    compel the removal of a sufficiently broad swath of evidence which may have the consequence

9    of requiring dismissal of the entire suit.  Such a dismissal may be necessitated by the instances

10   in which the removal of evidence disables a plaintiff from the ability to establish the *prima facie*

11   elements of a claim without resort to privileged information or instances in which the removed

12   evidence bars the defendant from establishing a defense.  *See Kasza v. Browner*, 133 F.3d 1159,

13   1166 (9th Cir. 1998).

14        Once documents pursuant to a successful claim of privilege are withheld, the case may

15   proceed with the omission of the secret or closely entangled evidence.  Alternatively, if

16   application of the state secrets bars too much, the court may be required to dismiss the action in

17   its entirety.  Such instances include when, without the secret evidence, a plaintiff is unable to

18   prove the *prima facie* elements of a claim with nonprivileged evidence.  *See id*.  Or the privilege

19   may apply to bar information that would otherwise give the defendant a valid defense to the

20   claim, thus requiring dismissal.  *See id.*  Lastly, the court may be compelled to dismiss when,

21   although the claims and defenses may be stated without reference to privileged evidence, "it

22   may be impossible to proceed with the litigation because – privileged evidence being

23   inseparable from nonprivileged information that will be necessary to the claims or defenses –

24   litigating the case to a judgment on the merits would present an unacceptable risk of disclosing

25   state secrets."  *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1083 (9th Cir. 2009) (en

26   banc) (citations omitted); *see also Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 279-80

27   (4th Cir. 1980) (en banc) (per curiam) (Phillips, J., specially concurring and dissenting)

28   (concluding that "litigation should be entirely foreclosed at the outset by dismissal of the

11

United States District Court

For the Northern District of California

1    action" if it appears that "the danger of inadvertent compromise of the protected state secrets

2    outweighs the public and private interests in attempting formally to resolve the dispute while

3    honoring the privilege").

4          Alternatively, the state secrets privilege may be invoked to bar litigation of the matter in

5    its entirety where "the trial of which would inevitably lead to the disclosure of matters which

6    the law itself regards as confidential, and respecting which it will not allow the confidence to be

7    violated." *Totten v. United States*, 92 U.S. 105, 107 (1875). Where the very subject matter of

8    the lawsuit is a matter of state secret, the action must be dismissed without reaching the

9    question of evidence. *See Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1197

10   (9th Cir. 2007) ("*Al-Haramain*") (citations omitted); *see also Sterling v. Tenet*, 416 F.3d 338,

11   348 (4th Cir. 2005) (holding that dismissal is proper where "sensitive military secrets will be so

12   central to the subject matter of the litigation that any attempt to proceed will threaten disclosure

13   of the privileged matters.").

**D.    Analysis of Plaintiffs' Standing.**

15         The Court finds that two of the required elements for standing are at issue at this

16   procedural posture: the question whether any individual plaintiff suffered any concrete and

17   particularized injury as well as the issue whether any potential injury could possibly be found to

18   be redressable by a favorable judgment. The Court addresses both elements in order.

19              **1.    Plaintiffs' Evidentiary Proffer of Their Alleged Injury.**

20         Throughout the pendency of this action, Plaintiffs have consistently argued that they

21   have suffered injury by the creation of a large, untargeted, dragnet surveillance program

22   designed to "intercept all or substantially all of its customers' communications, . . . [which]

23   necessarily inflicts a concrete injury that affects each customer in a distinct way, depending on

24   the content of that customer's communications and the time that customer spends using AT&T

25   services." *Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 1001 (N.D. Cal. 2006). In this matter,

26   the Ninth Circuit has held that although the harm alleged by Plaintiffs is widely shared, that

27   does not necessarily render it a generalized grievance. *See Jewel*, 673 F.3d at 909-10 ("[W]e

28

United States District Court

For the Northern District of California

1    conclude that Jewel alleged a sufficiently concrete and particularized injury, Jewel's allegations

2    are highly specific and lay out concrete harms arising from the warrantless searches.").

3         However, at the summary judgment stage where their allegations must be supported by

4    specific facts, Plaintiffs continue to maintain that the NSA's surveillance programs must have

5    been comprehensive to be effective.  Plaintiffs assert that their allegations regarding whether

6    their communications were intercepted in mass surveillance efforts are more likely than not true

7    because of the large, untargeted nature of the program.  Precisely this argument was rejected by

8    the court in *Obama v. Klayman*, in which the court found that the assertions of standing based

9    on mass comprehensive surveillance were too speculative and ultimately unpersuasive.  800

10   F.3d at 567 (holding that plaintiffs' "assertion that NSA's collection must be comprehensive in

11   order for the program to be most effective is no stronger than the *Clapper* plaintiffs' assertions

12   regarding the government's motive and capacity to target their communications.").  In the

13   absence of a factual predicate to establish any particular harm on behalf of any specific

14   individual plaintiff, the Court must review and adjudicate the effect of the classified evidence

15   regarding Plaintiffs' standing to sue.  That review and adjudication is contained in the Court's

16   Classified Order filed herewith.

17        In their attempt to establish the specific factual predicate based on public evidence for

18   their contention that Plaintiffs have, as specific named individuals, been injured by interception

19   of their communications, Plaintiffs rely in large part on the declarations of Mark Klein and

20   James W. Russell and their proffered experts, as well as an additional former AT&T employee

21   to present the relevant operational details of the surveillance program.  Just as they had before

22   when contesting the violation of their Fourth Amendment rights, Plaintiffs assert that these

23   declarations support the contention that customers' communications were the subject of a

24   dragnet seizure and search program, controlled by or at the direction of the Defendants.  Having

25   reviewed the factual record in its entirety, the Court finds the Plaintiffs' evidence does not

26   support this claim.

27        Plaintiffs again rely on the declaration of Klein, a former AT&T technician who

28   executed a declaration in 2006 about his observations involving the creation of a secure room at

                                                    13

the AT&T facility at Folsom Street in San Francisco. (Dkt. No. 84-2, Declaration of Mark Klein ("Klein Decl.") ¶¶ 8-18.) However, the Court confirms its earlier finding that Klein cannot establish the content, function, or purpose of the secure room at the AT&T site based on his own independent knowledge. *See* Fed. R. Civ. P. 56(c)(4). The limited knowledge that Klein does possess firsthand does not support Plaintiffs' contention about the actual operation of the data collection process or the alleged agency role of AT&T. Klein can only speculate about what data were actually processed and by whom in the secure room and how and for what purpose, as he was never involved in its operation. Lastly, the documents attached to Klein's declaration are not excepted from the hearsay objection on the basis that they are admissible business records. (Dkt. No. 84-3, 84-4, 84-5, 84-6, Klein Decl. Exs. A-C.) The timing of the creation of these attachments indicate that they were not simultaneous records of acts or events that were occurring at or around the time of the documents' creation. *See* Fed. R. Evid. 803(6).

Plaintiffs again propound the declaration of James Russell who relies on the Klein declaration and attached exhibits with regard to the interconnections between AT&T and other internet providers. (Dkt. No. 84-1, Declaration of James W. Russell ¶¶ 5, 6, 10, 12, 19-22.) Having twice found those exhibits inadmissible for the truth of the matters asserted therein, the Court similarly finds Russell's proffered conclusions unreliable.

To this existing evidentiary record, Plaintiffs now add the declaration of another former technician at AT&T, Phillip Long, who declares that without explanation, "sometime in the first half of the 2000s," he was directed to reroute AT&T's Internet backbone connections through the Folsom Street facility, "rather than through the nearest frame relay or ATM switch." (Dkt. No. 417-5, Declaration of Phillip Long ¶¶ 11, 12.) Long declares that he can offer no engineering or business reason for this reconfiguration. (*Id.* at ¶ 15.) The addition of Long's declaration does not serve to corroborate AT&T's participation in the alleged governmental collection program.

Plaintiffs' previously-disclosed experts, J. Scott Marcus and Dr. Brian Reid, rely upon Klein's observations and documents to formulate their expert opinions. Just as the Court determined in the context of the Fourth Amendment cross-motions for summary judgment with

1  regard to the Marcus opinion, the Court finds that these expert conclusions are not based on

2  sufficient facts or data where the underlying declaration is based on hearsay and speculation.

3  For example, Dr. Reid, relying upon the description of the Folsom facility furnished by Klein,

4  offers an opinion about the likelihood that Plaintiffs' communications "passed through the

5  peering site at AT&T's Facility . . . along with the rest of the traffic passing over all of the

6  peering-link fibers into which splitters were installed . . . were replicated." (Dkt. No. 417-6,

7  Declaration of Brian Reid ¶¶ 2, 20-23.)  As the Court has found, the evidence relied upon by

8  Plaintiffs' experts regarding the purpose and function of the secure equipment at AT&T and

9  assumed operational details of the program is not probative as it is not based on sufficient facts

10  or data.  *See* Fed. R. Evid. 702(b).

11        In addition to these experts, Plaintiffs now proffer the opinions of two more experts,

12  Ashkan Soltani and Matthew Blaze.  Like the experts earlier proffered by Plaintiffs, Professor

13  Blaze opines that, after review of the Klein declaration and exhibits, he believes "it is highly

14  likely that the [internet] communications of all plaintiffs passed through peering-link fibers

15  connected to the splitter . . . at the AT&T Folsom Street Facility."  (Dkt. No. 417-7, Declaration

16  of Matthew Blaze ¶¶ 2, 11, 41-46.)  Again the Court has found that the evidence relied upon by

17  Plaintiffs' expert regarding the purpose and function of the secure equipment at AT&T and

18  assumed operational details of the program is not probative as it is not based on sufficient facts

19  or data.  *See* Fed. R. Evid. 702(b).  Lastly, Plaintiffs proffer Mr. Soltani as an expert who opines

20  that a surveillance network of the type Plaintiffs conjecture would also likely intercept the

21  communications of users of cloud-based email applications such as Google's gmail or Yahoo

22  mail.  (Dkt. No. 417-8, Declaration of Ashkan Soltani ¶ 16.)  This unquantified likelihood of

23  interception regarding some users' email based on the posited Internet surveillance connection

24  points and collection process is insufficient to constitute specific evidence of injury.  Further,

25  the premise upon which Mr. Soltani's opinion derives is not based on sufficient facts or data.

26  *See* Fed. R. Evid. 702(b).

27        Plaintiffs further make the unsupported allegation that AT&T, Verizon, Verizon

28  Wireless, and Sprint were acting in concert with or as agents of Defendants to produce phone

United States District Court

For the Northern District of California

records in bulk.[1]  Plaintiffs contend that the Government has admitted that these large service

providers were participants in the NSA bulk collection of telephony metadata.   In support of

this contention, Plaintiffs submit a Primary Order issued by the Foreign Intelligence

Surveillance Court ("FISC") authorizing the NSA to collect such bulk data for a 90-day period,

from unidentified, redacted telecommunications service providers.  (Dkt. No. 417-4,

Declaration of Richard R. Weibe, Ex. A at 1.)  This redacted order was issued in FISC docket

Business Records ("BR") 10-10 and was declassified and publicly released by the Director of

National Intelligence.  (*Id.* at ¶ 3.)  Plaintiffs also offer a copy of an excerpt from an NSA

Inspector General compliance audit report which includes a letter regarding a non-compliance

incident in the telephone call records program.  (*See id.*, Ex. B at 28-29.)  The excerpt of the

report and attached letter were released in response to a Freedom of Information Act ("FOIA")

lawsuit brought by the New York Times against the National Security Administration in 2015.

(*See id.* at ¶ 4.)  The letter, filed with the FISC, identifies in the caption the telecommunications

companies, including AT&T, Verizon, Verizon Wireless, and Sprint, that were compelled by

the Primary Order BR 10-10 to produce records.  (*Id.,* Ex. B at 28.)

          In response, Defendants contend that, although the redacted Primary Order from the

FISC (in which the names of the providers were redacted) was authenticated by the

Government, the second letter (which purports to identify the names of those providers) has not

been authenticated by the Government.[2]  Because the letter was inadvertently disclosed in an

---

[1] Plaintiffs have only been able to establish that the Government has admitted to
working with Verizon Business Network Systems for a brief period of time, which does not
indicate that data from other network providers were ever collected.  *See Obama*, 800 F.3d at
563 (holding that because "plaintiffs are Verizon *Wireless* subscribers and not Verizon
*Business Network Systems* subscribers . . . the facts marshaled by plaintiff do not fully
establish that their own metadata was ever collected.").

[2] Defendants also argue that the letter has no evidentiary value as it was downloaded
by Plaintiffs from the New York Times article written about the FOIA lawsuit.  *See Schwarz
v. Lassen County ex rel. Lassen County Jail*, 2013 WL 5425102, at *10 (E.D. Cal. Sept. 27,
2013) ("evidence procured off the Internet is adequate for almost nothing" without
authentication).  However, in response, Plaintiffs proffer the affidavit of an attorney for the
New York Times in the FOIA lawsuit, who declares that the excerpt and attached letter were
produced by the NSA in August 2015 in that matter.  (*See* Dkt. No. 431, Declaration of
David E. McGraw, ¶¶ 2, 5-6.)  Mr. McGraw indicates that the attorneys representing the
NSA at the Department of Justice notified him that the letter contained in the audit report had
been "inadvertently produced" and had asked for its return.  (*Id.* at ¶ 7.)

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    unrelated matter and has not been authenticated by the Government, the Court finds it cannot

2    rely on it.  *See, e.g., Al-Haramain*, 507 F.3d at 1205.  Further, there has been no waiver of the

3    state secret privilege over the document.  The Court accepts Defendants' representation that

4    whether or not the letter is authentic is itself classified information the disclosure of which

5    could reasonably be expected to cause grave harm to national security.  (*See also* Dkt. No. 422,

6    Notice of Lodging of Classified Materials for *In Camera*, *Ex Parte* Review at 2, Declaration of

7    Jonathan Darby, National Security Agency Director of Operations, ¶¶ 16-20.)

8           Lastly, Plaintiffs seek to introduce what is labeled a working draft of a report prepared

9    by the Office of the Inspector General for the National Security Agency ("Draft OIG Report")

10   with a supporting declaration from Edward Snowden.  (Dkt. No. 432, Declaration of Edward J.

11   Snowden, Ex. 1; Dkt. No. 147, Declaration of Richard R. Wiebe, Ex. A.)  The Draft OIG Report

12   does not in fact name AT&T or Verizon as participants in any possible collection efforts, it is

13   labeled as a draft, and Defendants do not authenticate the exhibit.  Accordingly, the Court finds

14   it cannot rely on it.  *See, e.g., Al-Haramain*, 507 F.3d at 1205.  Plaintiffs' contention that

15   Snowden may authenticate the purported NSA document is not persuasive, either by way of his

16   current declaration or in the future through live testimony.  *See Orr*, 285 F.3d at 773 (holding

17   that a trial court may only consider admissible evidence on ruling on a motion for summary

18   judgment and authentication is a "condition precedent to admissibility").  Further, there has

19   been no waiver of the state secret privilege over the document and Defendants have objected on

20   the basis of the privilege to Plaintiffs' requests for admissions regarding the authenticity of this

21   document.  (Dkt. No. 414-1, Government Defendants' Supplemental and Revised Response to

22   Plaintiffs' Revised First Set of Requests for Admission Limited to Standing, at 70-73.)

23          The underlying premise that AT&T worked in the capacity of an agent for Defendants is

24   without factual or substantive evidentiary support.  And Plaintiffs have still not adduced

25   admissible evidence of the actual equipment installed in the secure room or the activities

26   conducted there.  After review of the entirety of the evidentiary record, the Court finds the

27   propounded evidence is not probative or admissible as to the actual conditions or purposes of

28   the apparatus at the AT&T facility or their role at the time at issue in this case.

United States District Court

For the Northern District of California

1    The Court finds that Plaintiffs have failed to proffer sufficient admissible evidence to

2    indicate that records of their communications were among those affected by Defendants.

3    Although there are materials in the public record that allude to possible surveillance programs,

4    the Court finds that the "argument that 'the cat is already out of the bag' is unsupported by the

5    record and contrary to the government's" classified submissions.  *See Military Audit Project v.*

6    *Casey*, 656 F.2d 724, 744-45 (D.C. Cir. 1981).  Although in this public order, the Court is

7    unable to address the sum of all evidence relevant to standing, the Court has addressed the

8    classified evidence relating to standing in detail in its Classified Order, filed in conjunction with

9    this one.  (*See* Classified Order Section I.)  Although neither the Court nor Defendants can

10   confirm or deny the allegations as made by Plaintiffs in their proffer of evidence in support of

11   standing, the Court addresses the operative, but classified, facts separately in detail.

12   In addition, having reviewed the classified portion of the record, the Court concludes

13   that even if the public evidence proffered by Plaintiffs were sufficiently probative to establish

14   standing, adjudication of the standing issue could not proceed without risking exceptionally

15   grave damage to national security.  The details of the alleged data collection process that are

16   subject to the Defendants' assertion of the state secrets privilege are necessary to address

17   Plaintiffs' theory of standing as well as to engage in a full and fair adjudication of Defendants'

18   substantive defenses.

19   **2.      Redressability.**

20   Another necessary element to establish Article III standing is the requirement that any

21   concrete and particularized injury be "redressable by a favorable ruling.'"  *Clapper*, 568 U.S. at

22   409.  Here, the Court cannot issue a judgment without exposing classified information.  And, by

23   evaluating the classified information, the Court has determined that it cannot render a judgment

24   either as to the merits or as to any defense on the issue of standing.  Any finding or final

25   judgment would disclose information that might imperil the national security.  *See, e.g.,*

26   *Klayman*, 800 F.3d at 568 (finding that "the government's silence regarding the scope of bulk

27   collection is a feature of the program, not a bug.") (citing *Clapper*, 568 U.S. at 412 n.4 ("the

28   court's postdisclosure decision about whether to dismiss the suit for lack of standing would

United States District Court

For the Northern District of California

1    surely signal to the terrorist whether his name was on the list of surveillance targets.")).  The

2    same "considerations apply with equal force here, where the government has sought to maintain

3    a similarly strategic silence regarding the scope of its bulk collection."  *Id.*  In order to issue a

4    dispositive decision on the standing issue, a finding of standing would necessitate disclosure of

5    possible interception of plaintiffs' communications, thereby signaling injury.  Such a disclosure

6    may imperil national security.  Any attempt to prove the specific facts of the programs at issue,

7    or to defend against the Plaintiffs' analysis of the programs would risk disclosure of the

8    locations, sources, methods, assisting providers, and other operational details of Defendants'

9    intelligence-gathering activities.  At this advanced procedural posture, the Court is bound to

10   accept the Defendants' representation that disclosure of these details reasonably could be

11   expected to cause exceptionally grave damage to national security.

12          Even if, utilizing only public evidence, the Plaintiffs could ostensibly plead sufficient

13   facts to support their claim of standing to pursue their remaining statutory causes of action, the

14   Court finds that it faces the intractable problem that proceeding further with this case would

15   cause exceptionally grave harm to the national security.  The Court cannot issue any

16   determinative finding on the issue of whether or not Plaintiffs have standing without taking the

17   risk that such a ruling may result in potentially devastating national security consequences.  *See,*

18   *e.g., Clapper*, 568 U.S. at 412 n.4.  Notwithstanding the fact that this Court has thoroughly

19   reviewed all of the evidence submitted with regard to Plaintiffs' standing, making any

20   determination to address Plaintiffs' allegations regarding the scope of the data collection

21   program would risk informing adversaries of the specific nature and operational details of the

22   process and scope of Defendants' participation in the program.  Accordingly, the Court finds

23   that Plaintiffs are unable to show either that they have suffered a concrete and particularized

24   injury or that any such potential injury could be redressable by a favorable ruling.  As the Ninth

25   Circuit predicted early on in the development of this case, "procedural, evidentiary, and

26   substantive barriers" might ultimately doom Plaintiffs' proof of standing.  *Jewel*, 673 F.3d at

27   911.  This Court found, and the Ninth Circuit has affirmed, that the assertion of the state secrets

28   privilege did not warrant dismissal at the pleadings stage without a thorough and complete

1  investigation of the evidence. *Jewel*, 965 F. Supp. 2d 1090, 1105-06 (N.D. Cal. 2013); *Jewel*,

2  673 F.3d at 909-10; *see also Fazaga*, 916 F.3d at 1226, 1232, 1234. However, the Court, after

3  extensive *in camera* review of the classified materials and a similarly thorough review of the

4  public evidence, finds that making any particularized determination on standing in order to

5  continue with this litigation may imperil the national security.[3] The Court also addresses this

6  finding in its Classified Order.

7  **E.      Defendants' Assertion of the State Secrets Privilege.**

8          The privilege asserted by Defendants here seeks to protect information vital to the

9  national security and may be invoked by the Government where it is shown, "from all the

10  circumstances of the case, that there is a reasonable danger that compulsion of the evidence will

11  expose . . . matters which, in the interest of national security, should not be divulged." *United*

12  *States v. Reynolds*, 345 U.S. 1, 6-7 (1953).

13          The analysis of whether the state secrets privilege applies involves three distinct steps.

14  First, the Court must ascertain whether the procedural requirements for invoking the privilege

15  have been satisfied. *Jeppesen*, 614 F.3d at 1080 (quoting *Al-Haramain*, 507 F.3d at 1202).

16  Second, the Court must make an independent determination whether the information is

17  privileged. In determining whether the privilege attaches, the Court may consider a party's

18  need for access to the allegedly privileged materials. *See Reynolds*, 345 U.S. at 11. Lastly, the

19  "ultimate question to be resolved is how the matter should proceed in light of the successful

20  privilege claim." *El-Masri v. United States*, 479 F.3d 296, 304 (4th Cir. 2007).

21          In order to satisfy the requirements of the first step, the Government must submit a

22  "formal claim of privilege, lodged by the head of the department which has control over the

23  matter, after actual personal consideration by that officer." *Id.* (quoting *Reynolds*, 345 U.S. at

24  7-8). The assertion of privilege "must by presented in sufficient detail for the court to make an

25

26  ———————

27          [3] After thorough review of the evidence submitted in relation to Plaintiffs' statutory
       claims and marshaled by Defendants to satisfy the Court's broader order regarding the
       threshold standing issue, the Court is satisfied that its analysis of the Fourth Amendment
28  standing to sue remains law of the case and rests on solid legal ground. *See Jewel v.*
       *National Security Agency*, 2015 WL 545925, at *5 (N.D. Cal. Feb. 10, 2015). Therefore,
       Plaintiffs' request to reconsider that decision is DENIED.

1    independent determination of the validity of the claim of privilege and the scope of the evidence

2    subject to the privilege." *Id.* Such an invocation must be made only after "serious, considered

3    judgment, not simply [as] an administrative formality." *United States v. W.R. Grace*, 526 F.3d

4    499, 507-08 (9th Cir. 2008) (en banc). "The formal claim must reflect the certifying official's

5    personal judgment . . . [and] must be presented in sufficient detail for the court to make an

6    independent determination of the validity of the claim of privilege and the scope of the evidence

7    subject to the privilege." *Jeppesen*, 614 F.3d at 1080.

8         The Court finds that this step has been satisfied by the submission of the public

9    declaration of the Principal Deputy Director of National Intelligence, serving as Acting Director

10   of National Intelligence and acting head of the Intelligence Community, following her personal

11   consideration of the matters at issue here. (*See* Dkt. No. 388-2, Declaration of Principal Deputy

12   Director of National Intelligence, ¶¶ 8, 19; Dkt. No. 104, Declaration of James R. Clapper ¶ 2;

13   Dkt. No. 168, Declaration of James R. Clapper ¶ 2.) This claim of privilege is further supported

14   by the declaration of Admiral Michael Rogers, in which he explains the nature of the evidence

15   itself and details the specific harms that could be expected to result from disclosure of the

16   information. (*See* Dkt. No. 389, Rogers Decl. ¶¶ 2, 331; *see also* Classified Order at n.1.)

17        In order to satisfy the requirements of the second step, the Court is able to assess

18   independently, based on both the public and classified submissions by Defendants, and from all

19   of the evidence in the record accumulated over the years of litigating this case, that there is a

20   reasonable danger the disclosure of the information at issue here would be harmful to national

21   security. *See, e.g., Jewel*, 965 F. Supp. 2d at 1103; *Jewel*, 2015 WL 545925, at *1, *5. The

22   Court must "sustain a claim of privilege when it is satisfied, 'from all the circumstances of the

23   case, that there is a reasonable danger that compulsion of the evidence will expose . . . matters

24   which, in the interest of national security, should not be divulged.'" *Jeppesen*, 614 F.3d at 1081

25   (quoting *Reynolds*, 345 U.S. at 10). Here, the Court has made "an independent determination

26   whether the information is privileged." *Al-Haramain*, 507 F.3d at 1202. In making this

27   determination, the Court must strike the appropriate balance "between protecting national

28   security matters and preserving an open court system." *Id.* at 1203. "This inquiry is a difficult

21

1    one, for it pits the judiciary's search for truth against the Executive's duty to maintain the

2    nation's security." *El-Masri*, 479 F.3d at 304.  In evaluating the need for secrecy, the Court

3    must defer to the Executive on matters of foreign policy and national security.  *See Jeppesen*,

4    614 F.3d at 1081-82.  However, the assertion of the state secrets doctrine does not "represent a

5    complete surrender of judicial control over access to the courts."  *El-Masri*, 479 F.3d at 312.

6    Rather, in order to ensure that the doctrine is not asserted more frequently and sweepingly than

7    necessary, "it is essential that the courts continue critically to examine instances of its

8    invocation."  *Ellsberg v. Mitchell*, 709 F.2d 51, 58 (D.C. Cir. 1983).  However, should the Court

9    find that the materials must not be divulged, "the evidence is absolutely privileged, irrespective

10   of the plaintiffs' countervailing need for it."  *See Jeppesen*, 614 F.3d at 1081 (citing *Reynolds*,

11   345 U.S. at 11).

12        The final element of the determination regarding the Government's assertion of the state

13   secrets privilege is the court answering the ultimate question regarding how the matter should

14   proceed in light of the legitimate claim of privilege.  *See Jeppesen*, 614 F.3d at 1080.  "The

15   court must assess whether it is feasible for the litigation to proceed without the protected

16   evidence and, if so, how."  *Id.* at 1082.  When the Government successfully invokes the state

17   secrets privilege, "the evidence is completely removed from the case."  *Kasza*, 133 F.3d at

18   1166.  The court is then tasked with disentangling the nonsensitive information from the

19   privileged evidence.  Often, after the privileged evidence is excluded, "the case will proceed

20   accordingly, with no consequences save those resulting from the loss of evidence."  *Al-*

21   *Haramain*, 507 F.3d at 1204 (quoting *Ellsberg*, 709 F.3d at 64).  However, there "will be

22   occasions when, as a practical matter, secret and nonsecret information cannot be separated.  In

23   some cases, therefore, 'it is appropriate that the courts restrict the parties' access not only to

24   evidence which itself risks the disclosure of a state secret, but also those pieces of evidence or

25   areas of questioning which press so closely upon highly sensitive material that they create a

26   high risk of inadvertent or indirect disclosures.'"  *Jeppesen*, 614 F.3d at 1082 (quoting *Bareford*

27   *v. Gen. Dynamics Corp.*, 973 F.2d 1138, 1143-44 (5th Cir. 1992)); *see also Kasza*, 133 F.3d at

28   1166 ("[I]f seemingly innocuous information is part of a . . . mosaic, the state secrets privilege

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    may be invoked to bar its disclosure and the court cannot order the government to disentangle

2    this information from other [*i.e.*, secret] information.")

3           Plaintiffs maintain that the Ninth Circuit's recent decision in *Fazaga* precludes the Court

4    from dismissing this case on state secrets grounds, and that the Court must use the procedures of

5    Section 1806(f) to decide Plaintiffs' statutory claims notwithstanding Defendants' assertions

6    that even a finding on the threshold question of standing will cause grave harm to national

7    security. *Fazaga* addressed a challenge to an allegedly unlawful FBI counter-terrorism

8    investigation involving electronic surveillance. 916 F.3d at 1210-11. The district court

9    dismissed all but one of plaintiff's claims at the pleading stage without further discovery based

10   on the Government's assertion of the state secrets privilege. *Id.* at 1211. The Ninth Circuit

11   reversed, concluding that Section 1806(f)'s procedures are to be used when "aggrieved persons"

12   challenge the legality of electronic surveillance and that the district court erred by dismissing

13   the case without reviewing the evidence, "including the evidence over which the Attorney

14   General asserted the state secrets privilege, to determine whether the electronic surveillance was

15   lawfully authorized and conducted." *Id.* at 1238, 1252.

16          Defendants contend that the *ex parte*, *in camera* procedures authorized under Section

17   1806(f) apply only to the determination of whether alleged electronic surveillance was lawful,

18   and not to the threshold determination of whether Plaintiffs are "aggrieved persons" who have

19   been subject to surveillance in the first place. *See, e.g., Wikimedia Foundation v. National

20   Security Agency*, 335 F. Supp. 3d 772, 786 (D. Md. 2018). In other words, in Defendants' view,

21   Section 1806(f) displaces the state secrets privilege only as to a determination of lawfulness

22   *after* Plaintiffs' standing has been demonstrated using non-classified evidence. The Court notes

23   that in the procedural posture in which *Fazaga* reached the Ninth Circuit, the plaintiff's status

24   as an aggrieved person had not yet been tested through discovery. Thus, the Ninth Circuit was

25   not presented with the issue of what to do when, as here, the answer to the question of whether a

26   particular plaintiff was subjected to surveillance – *i.e.,* is an "aggrieved person" under Section

27   1806(f) – is the very information over which the Government seeks to assert the state secrets

28   privilege. Instead, in remanding for further proceedings, the court in *Fazaga* held that "[t]he

1    complaint's allegations are sufficient *if proven* to establish that Plaintiffs are 'aggrieved

2    persons.'" *Id.* at 1216 (emphasis added).

3            This Court owes significant deference to the Executive's determination that, as

4    described at oral argument, even a simple "yea or nay" as to whether Plaintiffs have standing to

5    proceed on their statutory claims would do grave harm to national security. *See Jeppesen*, 614

6    F.3d at 1081-82 ("In evaluating the need for secrecy, 'we acknowledge the need to defer to the

7    Executive on matters of foreign policy and national security and surely cannot legitimately find

8    ourselves second guessing the Executive in this arena.'") (quoting *Al-Haramain*, 507 F.3d at

9    1203); *see also Al-Haramain*, 507 F.3d at 1203 ("[A]t some level, the question whether Al-

10   Haramain has been subject to NSA surveillance may seem, without more, somewhat innocuous

11   . . . . But our judicial intuition about this proposition is no substitute for documented risks and

12   threats posed by the potential disclosure of national security information."). The Court has not

13   "accept[ed] at face value the government's claim or justification of privilege" on the issue of

14   Plaintiffs' standing to pursue their remaining statutory claims, but instead has reviewed all of

15   the classified evidence submitted by Defendants in response to Plaintiffs' discovery requests

16   and this Court's orders. *See id.* That comprehensive review distinguishes this case from

17   *Fazaga*, and in fact from any other case involving state secrets cited by the parties or known to

18   this Court. Under the unique procedural posture of this case, and where the very issue of

19   standing implicates state secrets, the Court finds that it is not foreclosed under the holding in

20   *Fazaga* and Section 1806(f) from now dismissing on state secrets grounds.

21           Here, having reviewed the materials submitted and having considered the claims alleged

22   and the record as a whole, the Court finds that, just as they did when disputing the violation of

23   the Fourth Amendment in the parties' previous cross-motions for summary judgment,

24   Defendants have again successfully invoked the state secrets privilege. This Court has

25   previously found and maintains that, given the multiple public disclosures of information

26   regarding the surveillance program, the very subject matter of the suit does not constitute a state

27   secret. However, at this procedural posture and with the development of a full and extensive

28

United States District Court

For the Northern District of California

1    record on the threshold issue of standing, the Court finds that permitting further proceedings

2    would jeopardize the national security.

3          The Court finds that because a fair and full adjudication of the Plaintiffs' claims and the

4    Defendants' defenses would require potentially harmful disclosures of national security

5    information that are protected by the state secrets privilege, the Court must exclude such

6    evidence from the case. *See Jeppesen*, 614 F.3d at 1083 (holding that "application of the

7    privilege may require dismissal" of a claim if, for example, "the privilege deprives the plaintiff

8    of information needed to set forth a prima facie case, or the defendant of information that would

9    otherwise give the defendant a valid defense to the claim"). Addressing any defenses involves a

10   significant risk of potentially harmful effects any disclosures could have on national security.

11   *See Kasza*, 133 F.3d at 1166.

12         Having allowed the full development of the record and having reviewed the universe of

13   documents and declarations produced by both parties to this action both publicly and under the

14   procedures of Section 1806(f) of FISA, the Court finds that it has reached the threshold at which

15   it can go no further. The Court accepts the assertion of the state secrets privilege at this

16   procedural juncture to mandate the dismissal of this action. Accordingly, based on both the

17   determination that it cannot rule whether or not Plaintiffs have standing to proceed and that the

18   well-founded assertion of privilege mandates dismissal, the Court GRANTS Defendants'

19   motion for summary judgment and DENIES Plaintiffs' cross-motion to proceed to resolution on

20   the merits.[4]

21   **F.      Plaintiffs' Request for Additional Discovery and for Discovery Sanctions.**

22         Further, having reviewed the universe of classified and public documents produced by

23   Defendants, the Court is satisfied that Defendants have met their discovery obligations.

24   (*See* Classified Order at 2.) The Court finds that no evidentiary sanction for evidence spoliation

25

26   ───────────────

27         [4] As to all remaining claims, judgment is entered against Government officials in
     their personal capacities for both damages and equitable relief under the Constitutional and
     statutory provisions. The personal-capacity claims were stayed pending "resolution of any
28   dispositive motion by the Government Defendants." (Order granting stipulation, Dkt. No. 93
     at 1-2.) Having granted summary judgment in favor of Defendants, all personal-capacity
     claims are resolved in Defendants' favor as well.

United States District Court
For the Northern District of California

is warranted and there is no basis to grant Plaintiffs' request to continue the resolution of the cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(d). In light of the Court's determination that this action cannot proceed further, under Section 1806(f) or otherwise, disclosure to the Plaintiffs of the classified evidence submitted by Defendants is not "necessary to make an accurate determination of the legality of the surveillance." 50 U.S.C. § 1806(f). Accordingly, Plaintiffs' renewed requests for access to the classified evidence Defendants have submitted, for a further declassification review of that evidence, and for further discovery or evidentiary sanctions are DENIED.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' cross-motion for summary judgment. The Court shall issue a separate classified order which shall be preserved in the Court's sealed record pending any further proceeding. All classified evidence lodged with the Court by Defendants shall also be so preserved in the sealed record. A separate judgment will issue and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 25, 2019

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE