**MAYER BROWN LLP**
ANDREW JOHN PINCUS (*Pro Hac Vice*)
apincus@mayerbrown.com
1999 K Street, NW
Washington, DC 20006
Tel: (202) 263-3220 / Fax: (202) 263-3300

**MAYER BROWN LLP**
LEE H. RUBIN (SBN 141331)
lrubin@mayerbrown.com
DONALD M. FALK (SBN 150256)
dfalk@mayerbrown.com
SAMANTHA C. BOOTH (SBN 298852)
sbooth@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Tel: (650) 331-2000 / Fax: (650) 331-2060

*Attorneys for Plaintiff Twitter, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| TWITTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM P. BARR, United States Attorney General, *et al.*, <br><br> Defendants. | Case No. 14-cv-4480-YGR <br><br> **TWITTER'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT** |

Pursuant to this Court's Standing Order in Civil Cases, section 9.C.1., Plaintiff Twitter, Inc. ("Twitter") submits this Supporting Separate Statement in Support of its Cross-Motion for Summary Judgment.

| Claim Nos. | Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|---|
| I-III | Fact 1: On January 27, 2014, the Director of National Intelligence ("DNI") issued a memorandum authorizing electronic communications service providers ("ECSPs") to disclose aggregate data about their receipt of orders under the Foreign Intelligence Surveillance Act ("FISA") and national security letters ("NSLs"), but only if they did so in accordance with predetermined, broad reporting bands (*e.g.*, 0–249 or 0–499 orders received).<br><br>Rubin Decl. ¶ 3, Ex. 1. | |
| I-III | Fact 2: On April 1, 2014, Twitter submitted to the FBI for pre-publication review a draft Transparency Report. The Transparency Report contained *aggregate* data and statistics about the total amount of NSLs and FISA orders, respectively, (collectively, "national security process") that Twitter had received in 2012 and 2013, focusing in particular on the period running from July 1 to December 31, 2013.<br><br>Rubin Decl. ¶ 2, Ex. 4 (unclassified version). | |
| I-III | Fact 3: With its Transparency Report, Twitter submitted to the FBI a cover letter from counsel, which explained that Twitter did "not see itself as 'similarly situated' to the five communications providers" with whom the Government had reached the agreement memorialized in the January 27, 2014 DNI memorandum.<br><br>Rubin Decl. ¶¶ 3–4, Ex. 2. | |
| I-III | Fact 4: The Government responded to Twitter's publication request via letter from FBI General Counsel, James A. Baker, on September 9, 2014.<br><br>Rubin Decl. ¶ 5, Ex. 3. | |

1

| | | |
|---|---|---|
| I-III | Fact 5: The FBI's September 2014 letter stated that the FBI denied Twitter's publication request and stated that Twitter's Transparency Report would disclose "classified" data because "Twitter's proposed transparency report seeks to publish data regarding any process it may have received under FISA in ways … that go beyond what the government has permitted other companies to report" and in a manner "inconsistent with the January 27th framework."<br><br>Rubin Decl. Ex. 3. | |
| I-III | Fact 6: On November 17, 2014, the Department of Justice ("DOJ") conveyed to Twitter an "unclassified" version of Twitter's 2014 draft Transparency Report, from which all aggregate data about Twitter's receipt of national security process and some descriptive information about the same topic had been redacted as "classified."<br><br>Rubin Decl. ¶ 6, Ex. 4. | |
| I-III | Fact 7:  To date, the Government has not exercised its discretion to limit—on a case-by-case basis—the temporal scope of its prohibitions on all aggregate reporting regarding a recipient's receipt of national security process that is more granular than the USAFA bands.<br><br>Rubin Decl. Ex. 5 (Response Nos. 9–11). | |
| I-III | Fact 8:  In a letter dated June 14, 2013, the FBI responded to a request from Microsoft to disclose aggregate data about its receipt of national security process; in that letter, the FBI stated that it did not intend to initiate any enforcement proceedings "so long as Microsoft agrees to aggregate data for all of the legal process it received in intervals of six months, beginning with the period ending December 31, 2012, from any and all | |

| | | |
|---|---|---|
| | | government entities in the United States … into bands of 1000, starting at zero." Rubin Decl. Ex. 7. | |
| I-III | Fact 9: In a letter dated June 14, 2013, the FBI responded to a request from Facebook to disclose aggregate data about its receipt of national security process; that letter was materially identical to the one to Microsoft, and likewise stated that the FBI did not intend to initiate any enforcement proceedings "so long as Facebook agrees to aggregate data for all of the legal process it received for intervals of six months, beginning with the period ending December 31, 2012, from any and all government entities in the United States … into bands of 1000, starting at zero." Rubin Decl. Ex. 6. | |
| I-III | Fact 10: In a letter dated June 15, 2013, the FBI responded to a request from Apple to disclose aggregate data about its receipt of national security process; that letter was materially identical to the ones sent to Microsoft and Facebook, and similarly stated that the FBI did not intend to initiate any enforcement proceedings "so long as Apple aggregates data for all of the legal process it received for intervals of six months, beginning with the period ending May 31, 2013, from any and all government entities in the United States … into bands of 1000, starting at zero." Rubin Decl. Ex. 8. | |
| I-III | Fact 11: In a letter dated June 17, 2013, the FBI responded to a request from Yahoo to disclose aggregate data about its receipt of national security process; that letter was materially identical to the ones sent to Microsoft, Facebook, and Apple, and similarly stated that the FBI did not intend to initiate any enforcement proceedings "so long as Yahoo aggregates | |

| | | | |
|---|---|---|---|
| | | data for all of the legal process it received for intervals of six months, with the first period covering December 1, 2012, through May 31, 2013, from any and all government entities in the United States … into bands of 1000, starting at zero." Rubin Decl. Ex. 10 (at 14CV4480TV001726). | |
| | I-III | Fact 12: In a draft letter dated June 17, 2013, the FBI responded to a request from AOL to disclose aggregate data about its receipt of national security process; in that letter, the FBI stated that it did not intend to initiate any enforcement proceedings "so long as X Company aggregates data for all of the legal process it received for intervals of six months, beginning with the period ending December 31, 2012, from any and all government entities in the United States … into bands of 1000, starting at zero." Rubin Decl. Ex. 9. | |
| | I-III | Fact 13: The FBI's June 17, 2013 letter to AOL was materially identical to the ones sent to Microsoft, Facebook, Apple, and Yahoo, except that in the place of any company-specific information it used placeholders like "ADDRESS" and "X Company." Rubin Decl. Ex. 9. | |
| | I-III | Fact 14: A 2013 audit conducted by the Office of the Inspector General found evidence of overclassification and "persistent misunderstanding and lack of knowledge of certain classification processes by officials within various DOJ components." Rubin Decl. Ex. 11, at 13. | |
| | I-III | Fact 15: Twitter has published 14 individual NSLs it has received from the Government dating back to 2009. | |

| | | |
|---|---|---|
| | | Rubin Decl. Ex. 13 (Declaration ¶¶ 3–6, Exs. A–C). |
| I-III | Fact 16: Each published NSL discloses to the public a detailed list of the "types of information" that the Government sought to collect regarding the account identified in the NSL.<br><br>Rubin Decl. 13 (Exs. A–C, at p. 3). | |
| I-III | Fact 17: For many years, multiple federal agencies—including the Administrative Office of the United States Courts ("AOUSC"), the U.S. Department of Justice Office of Legal Affairs ("OLA"), and the Office of the Director of National Intelligence—have published annual reports about the Government's use of national security process and continue to do so.<br><br>RJN Exs. A–N. | |
| I-III | Fact 18: Those reports, especially when viewed collectively, disclose information such as (i) the total number of accounts or identifiers targeted via specific types of national security process (*e.g.*, NSLs versus FISA orders, as well as under specific titles of the FISA); and (ii) the total number of different types of national security process the Government issued per year, including the total national security process issued under specific titles of the FISA.<br><br>RJN Exs. A–N. | |
| I-III | Fact 19: Those reports, both individually and collectively, disclose macro trends in the Government's use of national security process, including how the Government's focus has changed over time.<br><br>RJN Exs. A–N. | |

| | | |
|---|---|---|
| I-III | Fact 20: For example, the ODNI's 2018[1] report shows that the total number of orders issued under FISA Title IV (authorizing pen registers and trap and trace devices) has fallen from 319 targets in 2013 to only 29 targets in 2018. Over the same time period, the number of persons targeted under FISA Section 702 (which broadly authorizes surveillance of non-U.S. targets by "'tasking' selectors (*e.g.*, telephone numbers and email addresses)" has risen from 89,138 in 2013 to 164,770 in 2018.<br><br>RJN Ex. I, at 4. | |

I attest that the evidence cited herein fairly and accurately supports the facts as asserted.

Dated: October 25, 2019

MAYER BROWN LLP

/s/ Lee H. Rubin
LEE H. RUBIN (SBN 141331)
lrubin@mayerbrown.com
SAMANTHA C. BOOTH (SBN 298852)
sbooth@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone:   (650) 331-2000
Facsimile:     (650) 331-2060

*Attorneys for Plaintiff Twitter, Inc.*

---

[1] In referring to this and the other ODNI, AOUSC, and OLA reports referenced herein, Twitter references the year covered by the report, not the year of publication (which is generally the following year).