**MAYER BROWN LLP**
ANDREW JOHN PINCUS (*Pro Hac Vice*)
apincus@mayerbrown.com
1999 K Street, NW
Washington, DC 20006
Tel: (202) 263-3220 / Fax: (202) 263-3300

**MAYER BROWN LLP**
LEE H. RUBIN (SBN 141331)
lrubin@mayerbrown.com
DONALD M. FALK (SBN 150256)
dfalk@mayerbrown.com
SAMANTHA C. BOOTH (SBN 298852)
sbooth@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Tel: (650) 331-2000 / Fax: (650) 331-2060

*Attorneys for Plaintiff Twitter, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| TWITTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM P. BARR, United States Attorney General, *et al.*, <br><br> Defendants. | Case No. 14-cv-4480-YGR <br><br> **TWITTER'S RESPONSIVE SEPARATE STATEMENT IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Pursuant to this Court's Standing Order in Civil Cases, section 9.C.2., Plaintiff Twitter, Inc. ("Twitter") submits this Responsive Separate Statement in Support of its Opposition to Defendants' Motion for Summary Judgment.

| Claim Nos. | Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|---|
| I–III[1] | Fact 1: Twitter has received national security process, either in the form of one or more NSL(s), or in the form of one or more orders or directives issued pursuant to the Foreign Intelligence Surveillance Act ("FISA").[2]<br><br>Tabb Decl. Ex. 1 (draft Transparency Report) at 2. | Undisputed. However, the Government's characterization of Twitter's complaint (fn. 1) is disputed as set forth in Twitter's Memorandum in Opposition to the Government's Motion, at 4, 15–16. |
| I–III | Fact 2: Twitter is under nondisclosure obligations in connection with national security process that it has received.<br><br>Tabb Decl. Ex. 1 (draft Transparency Report) at 2; Tabb Decl. Ex. 2 (ODNI Memorandum for Distribution (ES 2015-00366)) at 1. | Undisputed. However, Twitter challenges the constitutionality of those nondisclosure obligations. *See generally* SAC. |
| I–III | Fact 3: Nondisclosure requirements in connection with national security process reflect a recognition that often—and in the case of FISA process, always—secrecy is essential to the effectiveness of these critical tools to protect national security.<br><br>Tabb Decl. ¶ 11. | Disputed. This is not a "fact," but a legal argument. And it is disputed to the extent that the Government is suggesting that the challenged restriction of Twitter's speech was necessary to protect national security.<br><br>*See* Rubin Decl. Exs. 5–11, 13; RJN Exs. A–N.<br><br>Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; |

---

[1] As explained in the Defendants' Renewed Motion for Summary Judgment, *see* Defs' Renewed Mot. For Summary J. at 12, all three counts pled in Plaintiff's Second Amended Complaint turn on whether Plaintiff has a First Amendment right to publish the data at issue. Thus, the undisputed facts enumerated herein all relate to this single dispositive issue.

[2] As with Defendants' other submissions in this litigation, the discussion herein of FISA process that Plaintiff could have received is not intended to confirm or deny that Plaintiff has, in fact, received any such national security legal process.

| | | | |
|---|---|---|---|
| | | | because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| | I–III | Fact 4: In its draft Transparency Report, and for subsequent periods, Twitter seeks to disclose the actual aggregate number of each type of process it received, and to disclose that it received "zero" of a particular type of process for a given period if that circumstance is true.<br><br>Second Am. Compl. ¶ 4. | Undisputed. |
| | I–III | Fact 5: EAD Tabb, as the head of the FBI's National Security Branch, is responsible for overseeing, *inter alia*, the national security operations of the FBI's Counterintelligence Division, Counterterrorism Division, High-Value Detainee Interrogation Group, Terrorist Screening Center, and Weapons of Mass Destruction Directorate.<br><br>Tabb Decl. ¶ 2. | Twitter lacks the information necessary to verify the truth of this statement. |
| | I–III | Fact 6: EAD Tabb determined that the unauthorized disclosure of the data Plaintiff seeks to disclose reasonably could be expected to result in serious damage to the national security.<br><br>Tabb Decl. ¶ 5. | Undisputed that Tabb offered this opinion but disputed that this opinion is accurate or supported by sufficient evidence to carry the Government's legal burden of showing that Twitter's proposed disclosure would *in fact* be expected to result in grave and imminent damage to national security.<br><br>*See* Rubin Decl. Exs. 5–11, 13; RJN Exs. A–N.<br><br>Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to |

| | | | |
|---|---|---|---|
| | | | carry that burden, no competing facts are required to deny summary judgment. |
| | I–III | Fact 7: EAD Tabb determined that disclosure of the information Twitter seeks to disclose here would provide international terrorists, terrorist organizations, foreign intelligence services, cyber threat actors, and other persons or entities who pose a threat to the national security (collectively, "adversaries") a roadmap to the existence or extent of Government surveillance and capabilities associated with Twitter.<br><br>Tabb Decl. ¶¶ 5, 7. | Undisputed that Tabb offered this opinion but disputed that this opinion is accurate or supported by sufficient evidence to carry the Government's legal burden of showing that Twitter's proposed disclosure would *in fact* be expected to result in grave and imminent damage to national security. The Government cannot show that disclosure of a discrete set of six-year-old data would *in fact* provide bad actors with a "roadmap" regarding the Government's surveillance capabilities associated with Twitter.<br><br>*See* Rubin Decl. Exs. 5–11, 13; RJN Exs. A–N.<br><br>Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| | I–III | Fact 8: EAD Tabb determined that disclosure of the information at issue would reveal or tend to reveal the extent, scope, and reach of the Government's national security collection capabilities and investigative interests.<br><br>Tabb Decl. ¶ 16. | Undisputed that Tabb offered this opinion but disputed that this opinion is accurate or supported by sufficient evidence to carry the Government's legal burden of showing that Twitter's proposed disclosure would *in fact* be expected to result in grave and imminent damage to national security. The Government cannot show that disclosure of a discrete set of six-year-old data would reveal non-public information about the extent, scope, and reach of the Government's national security |

| | | | |
|---|---|---|---|
| | | | collection capabilities in a meaningful way.<br><br>*See* Rubin Decl. Exs. 5–11, 13; RJN Exs. A–N.<br><br>Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| | I–III | Fact 9: EAD Tabb determined that the disclosure of the information at issue would allow adversaries significant insight into the Government's counterterrorism and counterintelligence efforts and capabilities—or, significantly, the lack thereof—and into particular sources and methods.<br><br>Tabb Decl. ¶ 16. | Undisputed that Tabb offered this opinion but disputed that this opinion is accurate or supported by sufficient evidence to carry the Government's legal burden of showing that Twitter's proposed disclosure would *in fact* be expected to result in grave and imminent damage to national security. The Government cannot show that disclosure of a discrete set of six-year-old data would reveal meaningful non-public insights into the Government's counterterrorism and counterintelligence efforts or capabilities.<br><br>*See* Rubin Decl. Exs. 5–11, 13; RJN Exs. A–N.<br><br>Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| | I–III | Fact 10: EAD Tabb determined that disclosure of the information at issue would reveal such information as: (i) incremental increases or decreases in collection over time, which would | Undisputed that EAD Tabb offered this opinion but disputed that this opinion is accurate or supported by sufficient admissible evidence to carry the Government's legal burden |

| | | | |
|---|---|---|---|
| | | show whether the Government has a significant presence or investigative focus on a particular platform; (ii) the collection of content or non-content information, which would show whether and to what extent the Government is collecting certain types of information on the platform; and (iii) the fact of whether or when the recipient received a particular type of process at all, which may reflect different collection capabilities and focus on that platform, different types of information collected, and locations of FBI targets.<br><br>Tabb Decl. ¶ 17. | of showing that Twitter's proposed disclosure would *in fact* be expected to result in grave and imminent damage to national security.<br><br>Further, this opinion lacks foundation. EAD Tabb's determination rests on speculative assumptions that publication of Twitter's proposed speech would necessarily prompt other speakers to seek to make similar publications *in the future*, and that, even if that occurred, the Government could not constitutionally justify nondisclosure. But the Government has offered no non-speculative factual basis upon which a factfinder could conclude that publication of the classified information in *Twitter's 2014 Transparency Report* would reveal *non-public* information about (i) incremental increases or decreases in collection *over time*; (ii) the type of information the Government is collecting from Twitter; and (iii) the fact of whether Twitter is a recipient of national security process.<br><br>*See* Rubin Decl. Exs. 5–11, 13; RJN Exs. A–N.<br><br>Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| | I–III | Fact 11: EAD Tabb determined that disclosure of the information at issue, by detailing the amount, if any, of each particular type of process that Twitter received during a particular period, would reveal over time the extent to which Twitter was or was | Undisputed that EAD Tabb offered this opinion but disputed that this opinion is accurate or supported by sufficient evidence to carry the Government's legal burden of showing that Twitter's proposed disclosure would *in fact* be expected |

| | | | |
|---|---|---|---|
| | | not a safe channel of communication for our adversaries.<br><br>Tabb Decl. ¶¶ 18, 7. | to result in grave and imminent damage to national security. The Government cannot show that disclosure of a discrete set of six-year-old, aggregated data would *in fact* reveal non-public information about whether Twitter is a "safe" channel for communications for our adversaries that would have any material impact on national security. Adversaries already know—due to Twitter's Transparency Reporting and publication of individual NSLs—that Twitter is a recipient of national security process.<br><br>*See* Rubin Decl. Exs. 5–11, 13; RJN Exs. A–N.<br><br>Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| | I–III | **Fact 12**: EAD Tabb determined that disclosure of the information at issue would tend to reveal whether or to what extent the United States is or is not aware of the activities of its adversaries.<br><br>Tabb Decl. ¶ 7. | Undisputed that EAD Tabb offered this opinion but disputed that this opinion is accurate or supported by sufficient evidence to carry the Government's legal burden of showing that Twitter's proposed disclosure would *in fact* be expected to result in grave and imminent damage to national security. The Government cannot show that disclosure of a discrete set of six-year-old, aggregated data would *in fact* reveal non-public information about the extent of the United States' awareness of adversaries activities that would materially enhance any risk to national security. This is especially true given the significant |

| | | | |
|---|---|---|---|
| | | | information on this topic already in the public domain.<br><br>*See* Rubin Decl. Exs. 5–11, 13; RJN Exs. A–N.<br><br>Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| | I–III | Fact 13: In EAD Tabb's judgment, if the Court were to grant Twitter the relief it seeks in this case, other providers would almost certainly seek to make the same types of disaggregated, granular disclosures.<br><br>Tabb Decl. ¶¶ 8, 20. | Undisputed that EAD Tabb offered this opinion but disputed as to the accuracy or admissibility of this opinion, which lacks foundation. The Government has offered no non-speculative, factual basis upon which a factfinder could conclude that publication of the classified information in *Twitter's 2014 Transparency Report* would necessarily prompt other speakers to seek to make similar publications, and that, even if that occurred, the Government could not constitutionally justify nondisclosure in those circumstances.<br><br>The Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| | I–III | Fact 14: EAD Tabb determined that if other providers were to disclose information analogous to the data at issue here, these disclosures would provide a comprehensive picture of the Government's use of national | Undisputed that EAD Tabb offered this opinion, but disputed as to the accuracy or admissibility of this opinion, which lacks foundation. The Government has offered no non-speculative, factual basis upon which |

| | | | |
|---|---|---|---|
| | | security process that adversaries would use to evaluate the Government's collection capabilities and vulnerabilities, as well as its investigative practices.<br><br>Tabb Decl. ¶ 20. | a factfinder could conclude that publication of the classified information in *Twitter's 2014 Transparency Report* would necessarily prompt other speakers to seek to make similar publications, and that, even if that occurred, the Government could not constitutionally justify nondisclosure in those circumstances.<br><br>Further, the Government cannot show that disclosure of a discrete set of six-year-old, aggregated data would *in fact* provide a "comprehensive picture of the Government's use of national security process," its "vulnerabilities," or its "investigative practices." This is especially true given the significant information on this topic already in the public domain.<br><br>*See* Rubin Decl. Exs. 5–11, 13; RJN Exs. A–N.<br><br>Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| | I–III | Fact 15: EAD Tabb determined that if other providers were to disclose information analogous to the data at issue here, these disclosures would enable adversaries to take operational security measures to avoid and thwart continued and future investigation and to seek more secure means of communication.<br><br>Tabb Decl. ¶ 20. | Undisputed that EAD Tabb offered this opinion, but disputed as to the accuracy or admissibility of this opinion, which lacks foundation. The Government has offered no non-speculative, factual basis upon which a factfinder could conclude that publication of the classified information in *Twitter's 2014 Transparency Report* would necessarily prompt other speakers to seek to make similar publications, and that, even if that occurred, the |

| | | | |
|---|---|---|---|
| | | | Government could not constitutionally justify nondisclosure in those circumstances. |
| | | | Further, the Government cannot show that disclosure of a discrete set of six-year-old, aggregated data would *in fact* materially aid adversaries' ability to "avoid and thwart continued and future investigation and to seek more secure means of communication"—especially given that the public is already aware that Twitter is a recipient of national security process. |
| | | | *See* Rubin Decl. Exs. 5–11, 13; RJN Exs. A–N. |
| | | | Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| | I–III | Fact 16: The FBI has long known that adversaries gather publicly available information to learn sources, methods, and techniques of U.S. intelligence and law enforcement agencies, in order to take countermeasures to attempt to limit the effectiveness of or thwart these sources, methods, and techniques.<br><br>Tabb Decl. ¶ 24. | Twitter lacks the information necessary to verify the truth of this statement. |
| | I–III | Fact 17: EAD Tabb determined that we must expect our adversaries to obtain and exploit information regarding national security process contained within transparency reporting, including the draft Transparency Report that Twitter seeks to publish here. | Disputed to the extent EAD Tabb's opinion suggests that adversaries could glean anything from Twitter's 2014 Transparency Report that would materially increase any national security risk. |

| | | Tabb Decl. ¶ 26. | Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
|---|---|---|---|
| | I–III | Fact 18: EAD Tabb determined that, using the kind of detailed information about Twitter's receipt of national security process contained in Twitter's draft Transparency Report, adversaries reasonably can be expected to take operational security measures to conceal their activities, alter their methods of communication to exploit secure channels of communication, or otherwise counter, thwart or frustrate efforts by the Government to obtain foreign intelligence and to detect, obtain information about, or prevent or protect against threats to the national security.<br><br>Tabb Decl. ¶ 19. | Undisputed that Tabb offered this opinion but disputed that this opinion is accurate or supported by sufficient evidence to carry the Government's legal burden of showing that Twitter's proposed disclosure would *in fact* be expected to result in grave and imminent damage to national security. In particular, EAD Tabb's opinion fails to take into account the abundance of publicly available information about the Government's use of FISA process and NSLs.<br><br>*See* Rubin Decl. Exs. 5–11, 13; RJN Exs. A–N.<br><br>Further disputed because this opinion lacks foundation. EAD Tabb's determination rests on speculative assumptions that publication of Twitter's proposed speech would necessarily prompt other speakers to seek to publish in the future "the kind of detailed information" that Twitter seeks to publish here, and that, if that occurred, the Government could not constitutionally justify nondisclosure. But the Government has offered no non-speculative factual basis upon which a factfinder could conclude that publication of the classified information in *Twitter's 2014 Transparency Report* would reveal non-public information that would meaningfully advance adversaries' ability to "conceal their activities, alter their methods of communication |

| | | | |
|---|---|---|---|
| | | | to exploit secure channels of communication, or otherwise counter, thwart or frustrate efforts by the Government to obtain foreign intelligence." |
| | | | Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| | I-III | Fact 19: EAD Tabb determined that using the kind of detailed information about Twitter's receipt of national security process contained in Twitter's draft Transparency Report, adversaries can engage in deceptive tactics or disinformation campaigns that could undermine lawful intelligence operations of the United States, and carry out hostile actions that would expose Government personnel and their families to the risk of physical harm.<br><br>Tabb Decl. ¶ 9. | Undisputed that Tabb offered this opinion but disputed that this opinion is accurate and supported by sufficient evidence to carry the Government's burden of showing that Twitter's proposed disclosure would *in fact* be expected to result in grave and imminent damage to national security.  In particular, EAD Tabb's opinion fails to take into account the abundance of publicly available information about the Government's use of FISA process and NSLs.<br><br>*See* Rubin Decl. Exs. 5–11, 13; RJN Exs. A–N.<br><br>Further disputed because this opinion lacks foundation.  EAD Tabb's determination rests on speculative assumptions that publication of Twitter's proposed speech would necessarily prompt other speakers to seek to publish in the future "the kind of detailed information" that Twitter seeks to publish here, and that, if that occurred, the Government could not constitutionally justify nondisclosure. But the Government has offered no non-speculative factual basis upon which a factfinder could conclude that publication of the classified information in *Twitter's 2014* |

| | | | |
|---|---|---|---|
| | | | *Transparency Report* would reveal non-public information that would meaningfully advance adversaries' ability to "undermine lawful intelligence operations of the United States, and carry out hostile actions that would expose Government personnel and their families to the risk of physical harm."<br><br>Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| | I-III | Fact 20: Terrorist organizations and other adversaries of the United States use social media, including Twitter, to further their illicit aims and efforts to harm the United States.<br><br>Tabb Decl. ¶ 22. | Disputed to the extent this "fact" overlooks that Twitter prohibits the threatening or promotion of terrorism or violent extremism on its platform and employs robust policies and procedures to detect and block use of its platform by or for the promotion of terrorism, which have reduced the risk of unlawful or unauthorized use of Twitter's platform by terrorist groups. |
| | I-III | Fact 21: EAD Tabb's determination regarding the potential harm of disclosing the information Plaintiff seeks to publish is informed by the use of social media, including Twitter, by terrorist organizations such as the Islamic State of Iraq and Syria ("ISIS").<br><br>Tabb Decl. ¶ 22. | Disputed to the extent this "fact" overlooks that Twitter prohibits the threatening or promotion of terrorism or violent extremism on its platform and employs robust policies and procedures to detect and block use of its platform by or for the promotion of terrorism, which have reduced the risk of unlawful or unauthorized use of Twitter's platform by terrorist groups, including ISIS. |
| | I-III | Fact 22: EAD Tabb determined that, given the use and exploitation of social media like Twitter by terrorist adversaries, it is imperative that the Government maintain the capability | Disputed to the extent this "fact" overlooks that Twitter prohibits the threatening or promotion of terrorism or violent extremism on its platform and employs robust policies and |

| | | | |
|---|---|---|---|
| | | to monitor communications platforms, as authorized, without disclosures related to national security legal process that would reveal the extent and nature of such surveillance and capabilities.<br><br>Tabb Decl. ¶ 23. | procedures to detect and block use of its platform by or for the promotion of terrorism, which have reduced the risk of unlawful or unauthorized use of Twitter's platform by terrorist groups.<br><br>Further disputed that this opinion is accurate and supported by sufficient evidence to carry the Government's legal burden of showing that Twitter's proposed disclosure would *in fact* be expected to result in grave and imminent damage to national security.<br><br>Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| | I-III | Fact 23: EAD Tabb, as the head of the FBI's National Security Branch, exercises original classification authority delegated by the Director of the FBI.<br><br>Tabb Decl. ¶ 2. | Twitter lacks the information necessary to verify the truth of this statement. |
| | I-III | Fact 24: EAD Tabb determined that the information that Plaintiff seeks to disclose meets the standards for classification under Executive Order 13526.<br><br>Tabb Decl. ¶¶ 27, 29. | Disputed that the information Twitter seeks to disclose *in fact* meets the classification standard in Executive Order 13526, given the Government's inability to show that Twitter's proposed disclosures would in fact be expected to result in grave and imminent damage to national security.<br><br>Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; |

| | | | |
|---|---|---|---|
| | | | because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| | I-III | Fact 25:  Information concerning national security legal process served on Twitter was produced by and for the United States Government during the course of and in furtherance of national security investigations.<br><br>Tabb Decl.  ¶ 30. | Undisputed that national security legal process requests originate from the Government.  Disputed, however, to the extent the Government suggests that information about Twitter's *own experience* as the recipient of national security process somehow belongs to the Government. |
| | I-III | Fact 26:  EAD Tabb determined that the information that Twitter seeks to disclose pertains to intelligence activities; foreign relations or foreign activities of the United States; and vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security, as defined under Executive Order 13526, Section 1.4.<br><br>Tabb Decl.  ¶ 30. | Undisputed that aggregate data about Twitter's receipt of national security process "pertains to" the Government's intelligence activities and foreign relations or foreign activities of the United States.<br><br>Disputed to the extent that the Government suggests that mere disclosure of a discrete set of *six-year-old* aggregate data would reveal anything that would pose a risk of harm to national security relating to the Government's "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to national security."<br><br>Moreover, the Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| | I–III | Fact 27:  The reporting framework described in Section 603 of the USA FREEDOM Act allows electronic communication service providers and others who are subject to national | Inadmissible legal characterization of a statute on which EAD Tabb is not qualified to opine.  Under the best evidence rule, the statute speaks for itself. |

TWITTER'S RESPONSIVE SEPARATE STATEMENT ISO ITS OPPOSITION TO DEFENDANTS' MSJ
- Case No. 14-cv-4480-YGR

| | | | |
|---|---|---|---|
| 1 2 3 | | security process latitude to describe the process that they have received.<br><br>Tabb Decl. ¶ 15. | |
| 4 5 6 7 8 9 10 11 12 13 14 15 | I–III | Fact 28: Although the DNI concluded that the aggregate quantities of data reflected in the USA FREEDOM Act were properly classified because disclosure reasonably could be expected to harm national security, he exercised his discretion to declassify that information in the interests of transparency and in light of the impact of secrecy on providers.<br><br>Tabb Decl. ¶ 13, n.3; Tabb Decl. Ex. 2 (ODNI Memorandum for Distribution (ES 2015-00366)) at 1. | Undisputed that the DNI concluded that the aggregate quantities of data reflected in the USA FREEDOM Act were classified and could be expected to harm national security. Disputed that this classification was "proper." Further disputed to the extent the Government erroneously suggests that the DNI has the "discretion" to define the contours of constitutionally permissible and impermissible speech.<br><br>The Government bears the burden to establish that its restrictions on Twitter's speech are narrowly tailored to preventing grave and imminent harm to national security; because the Government has failed to carry that burden, no competing facts are required to deny summary judgment. |
| 16 | **OPPOSING PARTY'S ADDITIONAL MATERIAL FACTS** | | |
| 17 18 19 20 | I–III | Additional Fact 29: Though Defendants spent months producing documents supposedly responsive to Twitter's discovery requests, the Government redacted virtually all non-public, substantive content from those documents. | Rubin Decl. ¶ 9. |
| 21 22 23 24 | I–III | Additional Fact 30: The Department of Justice ("DOJ") conducted a background investigation of Twitter's lead counsel, Lee H. Rubin, in order to determine Mr. Rubin's eligibility to receive a security clearance. | Rubin Decl. ¶ 16. |
| 25 26 27 | I–III | Additional Fact 31: On September 17, 2018, the DOJ informed Mr. Rubin that his background investigation had been "favorably adjudicated" but that he would not be | Rubin Decl. ¶ 17. |

| | | granted a security clearance unless "the government's attorneys" determine that Mr. Rubin had a "'need-to-know' the particular classified information in this case." | |
|---|---|---|---|
| | I–III | Additional Fact 32: The Government has taken the position in this litigation that Mr. Rubin has no "need to know" the classified information offered into evidence in this case. | Rubin Decl. ¶ 17. |
| | I–III | Additional Fact 33: Twitter incorporates by references all the facts set forth in its Separate Statement of Undisputed Facts offered in support of its Cross-Motion for Summary Judgment. | *See generally* Rubin Decl. Exs. 1–13; Twitter RJN, Exs. A–N. |

I attest that the evidence cited herein fairly and accurately disputes the facts as asserted.

Dated: October 25, 2019            MAYER BROWN LLP

/s/ Lee H. Rubin
LEE H. RUBIN (SBN 141331)
lrubin@mayerbrown.com
SAMANTHA C. BOOTH (SBN 298852)
sbooth@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone:    (650) 331-2000
Facsimile:    (650) 331-2060

*Attorneys for Plaintiff Twitter, Inc.*