JOSEPH H. HUNT
Assistant Attorney General
DAVID L. ANDERSON
United States Attorney
ANTHONY J. COPPOLINO
Deputy Branch Director
JULIA A. HEIMAN
Senior Counsel
CHRISTOPHER HEALY
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch

  P.O. Box 883
  Washington, D.C.  20044
  Telephone:  (202) 616-8480
  Facsimile:  (202) 616-8470
  Email: julia.heiman@usdoj.gov

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWITTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General of the United States, *et al.*, <br><br> Defendants. | Case No. 14-cv-4480-YGR <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS** <br><br> No Hearing Scheduled <br><br> Courtroom 1, Fourth Floor <br> Hon. Yvonne Gonzalez Rogers |

| Claim Nos. | Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence[1] |
|---|---|---|
| I-III | **Fact 1**: On January 27, 2014, the Director of National Intelligence ("DNI") issued a memorandum authorizing electronic communications service providers ("ECSPs") to disclose aggregate data about their receipt of orders under the Foreign Intelligence Surveillance Act ("FISA") and national security letters ("NSLs"), but only if they did so in accordance with predetermined, broad reporting bands (*e.g.*, 0–249 or 0–499 orders received). Rubin Decl. ¶ 3, Ex. 1. | Undisputed insofar as, on January 27, 2014, the DNI issued a memorandum declassifying aggregate data about a provider's receipt of national security legal process if that data was reported in certain specified formats; disputed as to Plaintiff's characterizations of the DNI's declassification as merely "authorizing" and the declassified bands as "predetermined" and "broad." |
| I-III | **Fact 2**: On April 1, 2014, Twitter submitted to the FBI for pre-publication review a draft Transparency Report. The Transparency Report contained *aggregate* data and statistics about the total amount of NSLs and FISA orders, respectively, (collectively, "national security process") that Twitter had received in 2012 and 2013, focusing in particular on the period running from July 1 to December 31, 2013. Rubin Decl. ¶ 2, Ex. 4 (unclassified version). | Undisputed insofar as Plaintiff sought "a determination as to exactly which, if any, parts of its Transparency Report are classified or, in the Department's view, otherwise may not lawfully be published online." Rubin Decl., Ex. 2 at 1. Also undisputed insofar as Plaintiff's draft Transparency Report included, among other information, the data described in Fact 2. Disputed insofar as Fact 2 implies that the aggregate data described therein was the only data included in the draft Transparency Report. Tabb Decl., Ex. 1 |
| I-III | **Fact 3**: With its Transparency Report, Twitter submitted to the FBI a cover letter from counsel, which explained that | Undisputed as to the description of the contents of Plaintiff's letter, but disputed as to the |

---

[1] As to every fact proffered by Plaintiff except Fact 2, Defendants dispute its materiality. As this Court has recognized, the question before the Court is whether Defendants have demonstrated that disclosure of the data that Plaintiff seeks to publish poses a risk of harm to national security sufficient to justify the restraint on Plaintiff's speech. *See* ECF No. 301 at 2 (discussing the Government's burden). Accordingly, previously declassified reporting bands, agreements with other companies, and Government-wide reporting all are immaterial.

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR
Defendants' Response to Plaintiff's Separate Statement of Undisputed Facts                                     1

| | | | |
|---|---|---|---|
| | | Twitter did "not see itself as 'similarly situated' to the five communications providers" with whom the Government had reached the agreement memorialized in the January 27, 2014 DNI memorandum.<br><br>Rubin Decl. ¶¶ 3–4, Ex. 2. | characterization of the DNI's declassification memorandum as memorializing an agreement. |
| | I-III | Fact 4: The Government responded to Twitter's publication request via letter from FBI General Counsel, James A. Baker, on September 9, 2014.<br><br>Rubin Decl. ¶ 5, Ex. 3. | Undisputed. |
| | I-III | Fact 5: The FBI's September 2014 letter stated that the FBI denied Twitter's publication request and stated that Twitter's Transparency Report would disclose "classified" data because "Twitter's proposed transparency report seeks to publish data regarding any process it may have received under FISA in ways … that go beyond what the government has permitted other companies to report" and in a manner "inconsistent with the January 27th framework."<br><br>Rubin Decl. Ex. 3. | Disputed that the FBI's September 2014 letter "denied Twitter's publication request" or stated that the data was classified "because" it would go beyond what other companies had been permitted to report.<br><br>Rubin Decl. Ex. 3.<br><br>The FBI's September 2014 letter states that the FBI "concluded that information contained in the report is classified and cannot be publicly released . . . . Twitter's proposed transparency report seeks to publish data regarding any process it may have received under FISA in ways that would reveal classified details about the surveillance and that go beyond what the government has permitted other companies to report.  More specifically, it would disclose specific numbers of orders received, including characterizing the numbers in fractions or percentages, and would break out particular types of process received.  This is inconsistent with the January 27th framework and discloses properly classified information." |

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR
Defendants' Response to Plaintiff's Separate Statement of Undisputed Facts     2

| | | | |
|---|---|---|---|
| | | | *Id.* at 1.<br><br>The letter further explains that "Twitter is permitted to *qualify* its description of the total number of accounts affected by all national security legal process it has received but it cannot *quantify* that description with the specific detail that goes well beyond what is allowed under the January 27th framework and that discloses properly classified information."<br><br>*Id.* at 2 (emphasis in original). |
| | I-III | <u>Fact 6</u>: On November 17, 2014, the Department of Justice ("DOJ") conveyed to Twitter an "unclassified" version of Twitter's 2014 draft Transparency Report, from which all aggregate data about Twitter's receipt of national security process and some descriptive information about the same topic had been redacted as "classified."<br>Rubin Decl. ¶ 6, Ex. 4. | Disputed because not all aggregate data was redacted from the report.  The redacted report indicates that Twitter received only a portion "of the 249 requests that the government would have Twitter suggest" and that just some number of "millionths of one percent of [Twitter's active] users" were affected by national security process.<br><br>Tabb Decl., Ex. 1<br><br>Also disputed to the extent quotation marks are placed around "unclassified" and "classified." |
| | I-III | <u>Fact 7</u>:  To date, the Government has not exercised its discretion to limit—on a case-by-case basis—the temporal scope of its prohibitions on all aggregate reporting regarding a recipient's receipt of national security process that is more granular than the USAFA bands.<br>Rubin Decl. Ex. 5 (Response Nos. 9–11). | Disputed insofar as Fact 7 implies there is no durational limit to the restrictions on reporting of aggregate data. Classification is not and cannot be indefinite.<br><br>Exec. Order 13526, § 1.5(d) |

*Twitter, Inc. v. Barr, et al.,* Case No. 14-cv-4480-YGR
Defendants' Response to Plaintiff's Separate Statement of Undisputed Facts        3

| | | | |
|---|---|---|---|
| | | | Undisputed only to the extent Fact 7 indicates that the Government has not declassified in any instance aggregate data about a company's receipt of national security process that is more granular than the reporting bands that have currently been declassified, reflected in the USA FREEDOM Act. |
| | I-III | Fact 8: In a letter dated June 14, 2013, the FBI responded to a request from Microsoft to disclose aggregate data about its receipt of national security process; in that letter, the FBI stated that it did not intend to initiate any enforcement proceedings "so long as Microsoft agrees to aggregate data for all of the legal process it received in intervals of six months, beginning with the period ending December 31, 2012, from any and all government entities in the United States … into bands of 1000, starting at zero." Rubin Decl. Ex. 7. | Undisputed. |
| | I-III | Fact 9: In a letter dated June 14, 2013, the FBI responded to a request from Facebook to disclose aggregate data about its receipt of national security process; that letter was materially identical to the one to Microsoft, and likewise stated that the FBI did not intend to initiate any enforcement proceedings "so long as Facebook agrees to aggregate data for all of the legal process it received for intervals of six months, beginning with the period ending December 31, 2012, from any and all government entities in the United States … into bands of 1000, starting at zero." Rubin Decl. Ex. 6. | Undisputed. |
| | I-III | Fact 10: In a letter dated June 15, 2013, the FBI responded to a request from Apple to disclose aggregate data about its receipt of national security process; that letter was materially identical to the ones sent to Microsoft and Facebook, and | Undisputed. |

| | | | |
|---|---|---|---|
| | | similarly stated that the FBI did not intend to initiate any enforcement proceedings "so long as Apple aggregates data for all of the legal process it received for intervals of six months, beginning with the period ending May 31, 2013, from any and all government entities in the United States … into bands of 1000, starting at zero." Rubin Decl. Ex. 8. | |
| | I-III | Fact 11: In a letter dated June 17, 2013, the FBI responded to a request from Yahoo to disclose aggregate data about its receipt of national security process; that letter was materially identical to the ones sent to Microsoft, Facebook, and Apple, and similarly stated that the FBI did not intend to initiate any enforcement proceedings "so long as Yahoo aggregates data for all of the legal process it received for intervals of six months, with the first period covering December 1, 2012, through May 31, 2013, from any and all government entities in the United States … into bands of 1000, starting at zero." Rubin Decl. Ex. 10 (at 14CV4480TV001726). | Undisputed. |
| | I-III | Fact 12: In a draft letter dated June 17, 2013, the FBI responded to a request from AOL to disclose aggregate data about its receipt of national security process; in that letter, the FBI stated that it did not intend to initiate any enforcement proceedings "so long as X Company aggregates data for all of the legal process it received for intervals of six months, beginning with the period ending December 31, 2012, from any and all government entities in the United States … into bands of 1000, starting at zero." Rubin Decl. Ex. 9. | Undisputed. |
| | I-III | Fact 13: The FBI's June 17, 2013 letter to AOL was materially identical to the ones sent to Microsoft, Facebook, Apple, and Yahoo, except that in the place of any | Undisputed. |

| | | | |
|---|---|---|---|
| | | company-specific information it used placeholders like "ADDRESS" and "X Company." Rubin Decl. Ex. 9. | |
| | I-III | Fact 14: A 2013 audit conducted by the Office of the Inspector General found evidence of overclassification and "persistent misunderstanding and lack of knowledge of certain classification processes by officials within various DOJ components." Rubin Decl. Ex. 11, at 13. | Disputed to the extent Fact 14 implies that overclassification was found to be a trend. The relevant sentence of the report, in full, reads: "Although our review of a small sample of documents *did not* find indications of widespread misclassification, we did identify deficiencies with the implementation of DOJ's classification program, including persistent misunderstanding and lack of knowledge of certain classification processes by officials within various DOJ components." Rubin Decl. Ex. 11, at 13 (emphasis added). |
| | I-III | Fact 15: Twitter has published 14 individual NSLs it has received from the Government dating back to 2009. Rubin Decl. Ex. 13 (Declaration ¶¶ 3–6, Exs. A–C). | Undisputed. |
| | I-III | Fact 16: Each published NSL discloses to the public a detailed list of the "types of information" that the Government sought to collect regarding the account identified in the NSL. Rubin Decl. 13 (Exs. A–C, at p. 3). | Undisputed. |
| | I-III | Fact 17: For many years, multiple federal agencies—including the Administrative Office of the United States Courts ("AOUSC"), the U.S. Department of Justice Office of Legal Affairs ("OLA"), and the Office of the Director of National Intelligence—have published annual reports about the Government's use of | Undisputed. |

*Twitter, Inc. v. Barr, et al.*, Case No. 14-cv-4480-YGR
Defendants' Response to Plaintiff's Separate Statement of Undisputed Facts        6

| | | | |
|---|---|---|---|
| | | national security process and continue to do so.<br><br>RJN Exs. A–N. | |
| | I-III | Fact 18: Those reports, especially when viewed collectively, disclose information such as (i) the total number of accounts or identifiers targeted via specific types of national security process (*e.g.*, NSLs versus FISA orders, as well as under specific titles of the FISA); and (ii) the total number of different types of national security process the Government issued per year, including the total national security process issued under specific titles of the FISA.<br><br>RJN Exs. A–N. | Undisputed. |
| | I-III | Fact 19: Those reports, both individually and collectively, disclose macro trends in the Government's use of national security process, including how the Government's focus has changed over time.<br><br>RJN Exs. A–N. | Undisputed. |
| | I-III | Fact 20: For example, the ODNI's 2018[2] report shows that the total number of orders issued under FISA Title IV (authorizing pen registers and trap and trace devices) has fallen from 319 targets in 2013 to only 29 targets in 2018. Over the same time period, the number of persons targeted under FISA Section 702 (which broadly authorizes surveillance of non-U.S. targets by "'tasking' selectors (*e.g.*, telephone numbers and email addresses)" has risen from 89,138 in 2013 to 164,770 in 2018.<br><br>RJN Ex. I, at 4. | Undisputed except to the extent that FISA Section 702 is characterized as "broadly authoriz[ing] surveillance." Congress specifically delineated the authority provided by FISA Section 702 in 50 U.S.C. § 1881a. |

I attest that the evidence cited herein fairly and accurately disputes the facts as asserted.

---

[2] In referring to this and the other ODNI, AOUSC, and OLA reports referenced herein, Twitter references the year covered by the report, not the year of publication (which is generally the following year).

Dated: November 22, 2019			Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

DAVID L. ANDERSON
United States Attorney

ANTHONY J. COPPOLINO
Deputy Branch Director

    */s/ Julia A. Heiman*
JULIA A. HEIMAN, Bar No. 241415
Senior Counsel
CHRISTOPHER HEALY
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
julia.heiman@usdoj.gov
*Attorneys for Defendants*