**MAYER BROWN LLP**
ANDREW JOHN PINCUS (*Pro Hac Vice*)
apincus@mayerbrown.com
1999 K Street, NW
Washington, DC 20006
Tel: (202) 263-3220 / Fax: (202) 263-3300

**MAYER BROWN LLP**
LEE H. RUBIN (SBN 141331)
lrubin@mayerbrown.com
DONALD M. FALK (SBN 150256)
dfalk@mayerbrown.com
SAMANTHA C. BOOTH (SBN 298852)
sbooth@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Tel: (650) 331-2000 / Fax: (650) 331-2060

*Attorneys for Plaintiff Twitter, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| TWITTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM P. BARR, United States Attorney General, *et al.*,<br><br>Defendants. | Case No. 14-cv-4480-YGR<br><br>**TWITTER'S SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT & REPLY IN SUPPORT THEREOF**<br><br>Date:  To Be Determined By the Court<br>Time:  2:00 PM<br>Courtroom 1, Fourth Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

1    PLEASE TAKE NOTICE that, pursuant to Federal Rule of Evidence 201, Plaintiff Twitter,

2    Inc. ("Twitter") hereby respectfully requests that, in considering Twitter's Cross-Motion for

3    Summary Judgment and its Reply in support thereof, the Court take judicial notice of the fact that

4    the following transparency reports have been published by Adobe, Cisco, Automattic, Wickr, and

5    Nest respectively (collectively the "Reports"), and that the information therein remains in the

6    public domain:

7    A.    Government Requests Transparency Report: Fiscal Year 2017 (December 1, 2016–

8    November   30,   2017),   ADOBE   (last   visited   Dec.   11,   2019),

9    https://www.adobe.com/legal/lawenforcementrequests/transparency-2017.html, a true and correct

10   copy of which is attached hereto as **Exhibit A**.

11   B.    The Numbers (January 1, 2015–June 30, 2015), CISCO (last visited Dec. 11, 2019),

12   https://trustportal.cisco.com/c/dam/r/ctp/docs/transparency/lawful-enforcement-requests-jan-jun-

13   2015.pdf, a true and correct copy of which is attached hereto as **Exhibit B**.

14   C.    National Security (January 1, 2010–June 30, 2019), AUTOMATTIC (last visited

15   Dec. 11, 2019), https://transparency.automattic.com/national-security/, a true and correct copy of

16   which is attached hereto as **Exhibit C**.

17   D.    Privacy By Design (January 1, 2018–June 30, 2018), WICKR (last visited Dec. 11,

18   2019),  https://wickr.com/privacy/,  a  true  and  correct  copy  of  which  is  attached  hereto  as

19   **Exhibit D**.

20   E.    Transparency Report (June 15, 2015–December 31, 2018), NEST (last visited Dec.

21   18, 2019), https://nest.com/legal/transparency-report/ a true and correct copy of which is attached

22   hereto as **Exhibit E**.

23   In particular, Twitter requests that the Court take judicial notice of the fact that, in each of

24   these Reports, the publisher (Adobe, Cisco, Automattic, Wickr, and Nest) states that it has received

25   zero national security process requests, including zero requests for both content and non-content

26   customer information (Ex. E), during one or more reporting periods.  Automattic, in particular,

27   disclosed this information over nearly a full decade.  *See* Ex. C.  The fact that such disclosures

28

*exist* in the public sphere is "not subject to reasonable dispute," and is therefore a judicially noticeable fact. *See* Fed. R. Evid. 201(b)(2). Courts routinely take judicial notice of the fact that corporate filings and press releases exist, and that therefore the content of those documents is available in the public domain. *E.g.*, *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (taking "judicial notice [of the fact] that the market was aware of [certain] information contained in news articles submitted by [one party]"); *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (finding that a lower court properly took judicial notice of one party's "reported stock price history and other publicly available financial documents, including a number of . . . SEC filings").

Critically, Twitter is not asking this Court to take notice of the *truth* of the information in the Reports—only that the Reports (whether or not accurate) are publicly available and thus known to the Government and accessible to foreign adversaries of the United States. Courts, including this one, have routinely taken judicial notice in these circumstances. *See, e.g.*, *In re Intel Corp. Sec. Litig.*, No. 18-cv-00507-YGR, 2019 U.S. Dist. LEXIS 54615, at *18 (N.D. Cal. Mar. 29, 2019) ("The Court concludes that it may properly take judicial notice of [Intel's Product Security Center Advisories], not for the truth of its content, but to 'indicate what was in the public realm at the time.'"); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1062 (C.D. Cal. 2012) ("Taking judicial notice of news reports and press releases is appropriate for show 'that the market was aware of the information contained in news articles . . . .'" (quoting *Heliotrope*, 189 F.3d at 981 n.18)); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006))).

Accordingly, judicial notice of these facts is proper, and Twitter respectfully requests this Court take judicial notice of the fact that the documents attached hereto as Exhibits A, B, C, D, and E exist in the public domain.

//

1      //

2   Dated:  December 18, 2019                MAYER BROWN LLP

3

4                                           /s/ Lee H. Rubin
                                            LEE H. RUBIN (SBN 141331)
5                                           lrubin@mayerbrown.com
                                            SAMANTHA C. BOOTH (SBN 298852)
6                                           sbooth@mayerbrown.com
                                            Two Palo Alto Square, Suite 300
7                                           3000 El Camino Real
                                            Palo Alto, CA 94306-2112
8                                           Telephone:     (650) 331-2000
                                            Facsimile:     (650) 331-2060

9                                           *Attorneys for Plaintiff Twitter, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A
## to Twitter's Supplemental Request for Judicial Notice



≡                                                                                                                Sign In

**INTELLECTUAL PROPERTY TAKEDOWNS REPORT** ⌄

# Government Requests Transparency Report

**Fiscal Year 2017**
**(December 1, 2016 - November 30, 2017)**

Last Updated: January 18, 2018

Adobe, like all hosted service providers, is required to disclose customer data when we receive valid legal process from a government agency with jurisdiction. In this – our fourth annual transparency report -- we disclose information about all government requests seeking access to Adobe customer data that we received during our fiscal year 2017 (FY 2017), the services to which they relate, the country of origin, and how we responded. Every request we receive is carefully scrutinized by the Adobe Trust & Safety team to ensure law enforcement is entitled to the data they seek with the type of process they have obtained, and is managed in accordance with our law enforcement response policies, which you will find here.

Government Requests By Service: During FY 2017, most government requests we received related to users of our Photoshop Mix photo editing service (11 requests), our Creative Cloud service (6 requests), or to customer Adobe ID accounts or Adobe store transactions (3 requests). The remaining government requests received sought information about users of the following apps or services: Adobe Acrobat (3 requests), our Lightroom photo storage service (3 requests), Adobe Sign (2 requests), Adobe AIR (1 request), and Behance (1 request). Some requests we received sought data about users with accounts on multiple Adobe services.

Government Requests By Country of Origin: We received two requests from international governments this year (one each from France and Spain). This year, we made no disclosures in response to those requests because none adhered to Adobe's policy requiring service of process on Adobe Systems Software Ireland Limited when seeking data about customers who reside outside of North America. As a result, all disclosures we made this year were in response to legal process received from U.S. federal or state authorities.

Some Additional Interesting Facts:

- No Enterprise Customer Data Disclosed: As in previous years, all disclosures made in FY 2017 related to individual consumer accounts. We received no requests, and made no disclosures, related to enterprise customer accounts.



Sign In

**INTELLECTUAL PROPERTY TAKEDOWNS REPORT** ⌄

- No National Security Requests Received: As of the end of FY 2017, Adobe still has not received any form of national security process, such as a National Security Letter (NSL) or Foreign Intelligence Surveillance Act (FISA) order.
- No Delaying Customer Notice Unless We Are Legally Obligated To Do So: As we did in previous years, this year we rejected a number of requests from governments to delay notice to our users because the requests were made informally. We only delay notice to our customers where we are legally obligated to do so -- for example, when we receive a delayed notice order (DNO) issued by a court. We then notify our customer of the government request for their data after the DNO expires.
- No Permanent Gag Orders: Sometimes Adobe receives DNOs that are permanent (i.e., they expressly never expire) or indefinite (i.e., they say they will expire 'on further order of the court'). Permanent or indefinite gag orders are unconstitutional prior restraints on speech and we challenge them in court. In FY 2017, we won this court ruling supporting our position.
- No Backdoors: Adobe has not built 'backdoors' for any government – foreign or domestic – into our products or services. All government requests for user data need to come through the front door (i.e., by serving valid legal process upon the appropriate Adobe legal department). Adobe vigorously opposes legislation in the US and overseas that would in any way weaken the security of our products or our users' privacy protections.

## Government Requests Received

| Type of Request Received | Number of Requests | Number of user accounts impacted |
|---|---|---|
| Subpoenas | 19 | 32 |
| Search Warrants | 12 | 12 |
| International Requests | 2 | 2 |
| National Security Requests | 0 | 0 |
| Imminent Harm Requests | 0 | 0 |
| Court Orders | 2 | 2 |
| Total | 35 | 48 |



Sign In

**INTELLECTUAL PROPERTY TAKEDOWNS REPORT** ⌄

# Adobe Response

| Type of Request Received | Number of Requests | Number of user accounts impacted |
|---|---|---|
| Account Doesn't Exist | 5 | 5 |
| Customer Registration or Transactional Information Disclosed | 13 | 25 |
| Customer Content Disclosed | 12 | 12 |
| Request Rejected/No Information Provided | 5 | 6 |
| Total | 25 | 48 |

You can access Adobe's previous Transparency Reports here:

- FY 2014
- FY 2015
- FY 2016

Privacy Center ›
Security ›
Corporate governance ›

Investor Relations ›
Government relations ›
Anti-piracy ›

Report piracy ›
Report a security issue ›
Law enforcement requests ›
Customer support ›



    Sign In

**INTELLECTUAL PROPERTY TAKEDOWNS REPORT** ˅

Products ▾

Blogs & Community ▾

Support ▾

Adobe ▾

 Adobe Acrobat Reader DC     Adobe Flash Player     Adobe AIR

 Change region ˅

Copyright © 2019 Adobe. All rights reserved.   /

Privacy (UPDATED)   /   Terms of Use   /   Cookies   /    AdChoices



EXHIBIT B
to Twitter's Supplemental Request for
Judicial Notice



# The Numbers

| Reporting Period | Total Requests for Customer Data | No Customer Data Disclosed | Some Customer Data Disclosed |
|---|---|---|---|
| January 1, 2015-June 30, 2015 | # | # | # |
| US law enforcement agencies: | 1 | 1 | 0 |
| Non-US law enforcement agencies: | 0 | 0 | 0 |
| US national security agencies*: | 0 | 0 | 0 |
| Non-US national security agencies: | 0 | 0 | 0 |

* Includes Foreign Intelligence Surveillance Act (FISA) court orders, warrants and directives, and FBI National Security Letters.



**Americas Headquarters**
Cisco Systems, Inc.
San Jose, CA

**Asia Pacific Headquarters**
Cisco Systems (USA) Pte. Ltd.
Singapore

**Europe Headquarters**
Cisco Systems International BV Amsterdam,
The Netherlands

Cisco has more than 200 offices worldwide. Addresses, phone numbers, and fax numbers are listed on the Cisco Website at **www.cisco.com/go/offices.**

Cisco and the Cisco logo are trademarks or registered trademarks of Cisco and/or its affiliates in the U.S. and other countries. To view a list of Cisco trademarks, go to this URL: www.cisco.com/go/trademarks. Third party trademarks mentioned are the property of their respective owners. The use of the word partner does not imply a partnership relationship between Cisco and any other company. (1110R)

© 2016 Cisco and/or its affiliates. All rights reserved. This document is Cisco Public Information.

EXHIBIT C
to Twitter's Supplemental Request for
Judicial Notice

# National Security

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

 **transparency.automattic.com**/national-security

The table below summarizes the National Security Requests we received during the six month periods between January 1, 2010 – June 30, 2019. "National Security Requests" include National Security Letters and FISA court orders.

|  | National Security Requests Received | User Accounts Affected |
|---|---|---|
| **2019: Jan 1 – Jun 30** | None. | None. |
| **2018: Jul 1 – Dec 31** | None. | None. |
| **2018: Jan 1 – Jun 30** | None. | None. |
| **2017: Jul 1 – Dec 31** | None. | None. |
| **2017: Jan 1 – Jun 30** | None. | None. |
| **2016: Jul 1 – Dec 31** | 0-249 | 0-249 |
| **2016: Jan 1 – Jun 30** | None. | None. |
| **2015: Jul 1 – Dec 31** | None. | None. |
| **2015: Jan 1 – Jun 30** | None. | None. |
| **2014: Jul 1 – Dec 31** | None. | None. |
| **2014: Jan 1 – Jun 30** | None. | None. |

| | | |
|---|---|---|
| **2013:** Jul 1 – Dec 31 | None. | None. |
| **2013:** Jan 1 – Jun 30 | 1-249 | 5-249 |
| **2012:** Jul 1 – Dec 31 | 2-249 | 9-249 |
| **2012:** Jan 1 – Jun 30 | None. | None. |
| **2011:** Jul 1 – Dec 31 | None. | None. |
| **2011:** Jan 1 – Jun 30 | None. | None. |
| **2010:** Jul 1 – Dec 31 | None. | None. |
| **2010:** Jan 1 – Jun 30 | 2-249 | 2-249 |

We are pleased to report that we received no National Security Requests during 2011, 2014, 2015, 2017, 2018, and so far in 2019.

For other periods, we don't think the disclosures allowed by current Justice Department rules allow us to paint a truthful picture. Reporting National Security Requests in bands of 250 obfuscates rather than clarifies the volume of National Security Requests we and other small tech companies receive. While the disclosure regime may work well for larger companies with a high volume of requests, like the ones that worked with the Justice Department to craft these rules, they do not work well for smaller companies like Automattic.

Twitter is currently suing the Justice Department to disclose full, truthful information about the number of National Security Requests they receive. We fully agree with Twitter's position in this lawsuit and joined with other companies to file this amicus brief to support their case.

By preventing us from sharing a more precise number of requests, the current disclosure rules diminish the trust that our users place in us and our services. For now, we are disclosing the maximum amount of information allowed by law.

It is our policy to invoke the "reciprocal notice" procedure in 18 U.S.C. § 3511 for any

national security letters (NSLs) served on Automattic. This process ensures that a court will review all nondisclosure restrictions issued with NSLs we may receive. If and when a nondisclosure restriction is lifted, our policy is to share the contents of the NSL with any affected users (where possible), as well as to publish a redacted version of the NSL.

In 2017, we shared some information about the process we followed to lift the nondisclosure restrictions associated with five NSLs received in previous years and provide copies of our correspondence with the government on this subject here. We hope this information will be useful to other companies who may wish to take advantage of the legal options that are currently available to challenge NSL nondisclosure orders.

Based on our correspondence with the government, we've developed a form reciprocal notice request here in Google Docs format. If your company has received an NSL in the past and you would like the government to review the letter's nondisclosure requirement, this form may be useful to you.

EXHIBIT D
to Twitter's Supplemental Request for
Judicial Notice

# Privacy by Design

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

▨ **wickr.com**/privacy

Wickr is committed to meeting and exceeding industry standards for <u>transparency reporting</u>. In this report you will discover the details of the past six months of our receipt and responses to user information requests or legal processes from January 1, 2018 until June 30, 2018. Additional information can be found in our Legal Process Guidelines.

---

**Our Philosophy and Impact**

At Wickr, we hold a long-standing belief that transparency is a prerequisite to earning our users' trust and growing our platform. And while the messages we secure will never be outwardly visible, our practices, policies and philosophies – especially as they relate to how our privacy practices – should be front and center. Our semi-annual transparency reporting practice is designed to inform users about requests for their account information.

**FAQs**

When Does Wickr Provide Law Enforcement with Details on its Subscriber Accounts?

Wickr cooperates with law enforcement by providing information related to its users' accounts only when properly served with legal process or in life-or-death situations.

What Kinds of Information Does Wickr Turn Over on Those Accounts?

Wickr can provide non-content information describing an account such as: date of its creation, the date of last use, the total number of messages sent and/or received, the type of device on which the account was created. See our Legal Process Guidelines for the full list.

When Does Wickr Provide Law Enforcement with Subscriber Content?

Never! Our system is designed to protect our users' privacy such that we never have access to our users' decrypted message content so can't pass it on to anyone else.

July 1, 2019 Reporting Statistics [1]

[1]  Wickr is committed to sharing information about the requests it receives for its users' account information. Above is a table detailing requests received for our users' information from January 1, 2019-June 27, 2019.

| | | July 1, 2019 **Reporting Statistics**[1] | | |
|---|---|---|---|---|
| Reporting Period | Types of Requests Received | Numbers of Requests Received | Accounts Associated with Requests Received | Accounts Receiving Notice of Request |
| | **United States** | | | |
| | Search Warrants | 5 | 8 | 0 |
| | Court Orders | 49 | 75 | 0 |
| | Law Enforcement Subpoena | 40 | 59 | 0 |
| January 1, 2019 – June 30, 2019 | National Security Requests | 0 | 0 | N/A |
| | Other Requests | 21 | 21 | 0 |
| | **Non-United States** | | | |
| | Non-U.S. Requests | 4 | 4 | 0 |

[2] Wickr notifies users of requests for their information including providing a copy of the legal process, unless required by a non-disclosure order not to do so or when disclosure is not practicable or would not be fruitful such as when a user does not exist, a request is withdrawn, or in an emergency situation such as a missing person investigation or where there is a danger of death or serious physical injury.

[3] "Warrants" are used to obtain information which may be similar to information available to a requestor through a subpoena or court order except that requestors often seek the content of the communications through the use of a warrant. Therefore, in order to get a warrant, law enforcement must demonstrate 'probable cause' to a court that the requested information evidences a crime.

[4] "Orders" are signed by a judge and may include the following: Non-Disclosure Orders requiring us to keep private a request for users' account information, 2703(d) Orders under the Electronic Communications Privacy Act (the federal law that regulates law enforcements' access to customer data and content) in both civil and criminal cases, as well as Pen Register Orders which provide for real-time disclosure of non-content data.

[5] "National Security Orders" includes orders authorized and issued under the Foreign Intelligence Surveillance Act (FISA) and National Security Letters authorized by the Stored Communications Act (SCA).

> As of the date of this report, Wickr has not received an order to keep any secrets that are not in this transparency report as part of a national security request.

[6] "Other Requests" may include Preservation Requests, Emergency Disclosure Requests, and Civil Requests including Subpoenas. Preservation Requests are requests by law enforcement for preservation of a users' non-content account information for up to 90 days until such time that it serves the proper legal process to receive such information. Emergency Disclosure Requests are requests from a government agency in exigent circumstances involving life or death. We review and process emergency requests upon a showing that the information provided will help save lives.

[7] "Non-U.S. Requests" include formal legal processes deriving from foreign governments. We require that any such requests conform to the Mutual Legal Assistance Treaty (M.L.A.T.) or letters rogatory process.

EXHIBIT E
to Twitter's Supplemental Request for
Judicial Notice

Nestooricas muraumeringagesstoforemail



## Legal Items

Transparency Report ▼

## Legal Items

- [Privacy Policy for Nest Web Sites](#)
- [Privacy Statement for Nest Products and Services](#)
- [Authorized Professional Reseller Brand Features License Agreement](#)
- [Terms of Service](#)
- [End User License Agreement](#)
- [Limited Warranty](#)
- [Pro Checkup Service Terms and Conditions](#)
- [Open Source Compliance](#)
- [Sales Terms](#)
- [Intellectual Property and Other Notices](#)
- [Community Forum Agreement](#)
- [FCC Compliance Notice](#)
- [Customer Agreements for Rush Hour Rewards](#)
- [Customer Agreements for Rebates](#)
- [Customer Agreements for Safety Rewards](#)
- [Installation Terms and Conditions](#)
- [Transparency Report](#)
- [Modern Slavery Statement](#)

# Transparency Report

## Requests for user information

Just like many other technology companies, Nest may get requests or orders from governments and courts around the world to hand over user data. We made this page to shed some light on these requests and how we process and handle them.

When we get a request for user information, we review it carefully and only provide information within the scope and authority of the request. Privacy and security are incredibly important to us. Before complying with a request, we make sure it follows the law and Nest's policies. We notify users about legal demands when appropriate, unless prohibited by law or court order. And if we think a request is overly broad, we'll seek to narrow it. For example, if a US government agency presented us with a search warrant to investigate a crime they think was captured on a Nest Cam, we wouldn't just hand over user data. We'd analyze the request to be sure the warrant wasn't overly broad, then we'd make sure the information they requested was within the scope of the warrant.

We continue to look for new ways to organize information and provide more detail. For example, starting with the July–December 2015 reporting period, we began to disclose the number of users or accounts about which data was requested and the percentages of user data requests we comply with in whole or in part.

We have never received any National Security Letters or orders for user content or non-content information under the Foreign Intelligence Surveillance Act (FISA).

## Requests for user information



We did not start providing information about users/accounts specified in data requests until the July–December 2015 reporting period.

**Percentage of requests where some data was produced**



We did not start providing information about the percentage of user data requests where we provided some data until the July-December 2015 reporting period.

Google and Google Home are trademarks of Google LLC.

 CHANGE ›

© 2019 Nest Labs
Legal   |   Privacy