UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TWITTER, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **WILLIAM P. BARR**, *ET AL.*, <br><br> Defendants. | Case No.  14-cv-04480-YGR <br><br> **ORDER GRANTING GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT; DENYING TWITTER'S CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> **DKT. NOS. 309, 311** |

This long-pending case has morphed through myriad iterations and legislative changes. That plaintiff has continued to pursue the action merely underscores the tension between the First Amendment and national security and the future impact of the proceedings. The Court now addresses the cross-motions of plaintiff Twitter, Inc. ("Twitter") and defendants William P. Barr, *et al.* ("the Government") for summary judgment. (Dkt. Nos. 309, 311.) The Court having considered the parties' briefing in support of and in opposition to the cross-motions, the admissible evidence[1] (including evidence presented *in camera*[2]), and the prior proceedings and

---

[1] Twitter requests judicial notice of publicly available reports prepared by the Director of the Administrative Office of the U.S. Courts, Office of the Director of National Intelligence, and the U.S. Department of Justice Office of Legislative Affairs (Dkt. No. 315) in support of Twitter's cross-motion and opposition. In connection with its reply briefing, Twitter also filed a supplemental request for judicial notice of transparency reports published by five companies (Adobe, Cisco, Automattic, Wickr, and Nest) and that such reports include statements that they companies have received zero national security process requests during one or more reporting periods. (Dkt. No. 327.) The Government did not oppose either request. The Court finds that it is proper to take judicial notice of the fact of these reports and their contents, not the truth of any statements therein. The requests for judicial notice are **GRANTED**.

[2] Twitter argues that the Government's motion should be denied for the further reason that it needs access to the Classified Tabb Declaration in order to meaningfully counter the Government's claim that the restrictions it has imposed on the Draft Transparency Report pass constitutional muster. The Court finds that the classified declaration of EAD Tabb cannot be disclosed to counsel for Twitter based upon the national security concerns it raises, despite counsel's clearance approval. Thus, Twitter's motion for summary judgment on these alternative grounds, as well as its motion for access of cleared counsel, are **DENIED**.

arguments in this matter, and for the reasons stated herein, **ORDERS** that the Government's motion for summary judgment is **GRANTED** and Twitter's cross-motion for summary judgment is **DENIED**.

## I. BACKGROUND

### A. Allegations of the Operative Complaint

Twitter's Second Amended Complaint (Dkt. No. 114, "SAC") is the operative pleading in this action. The SAC seeks declaratory and injunctive relief based upon the Government's alleged "prohibitions on [Twitter's] speech in violation of the First Amendment," specifically the Government's prohibition on publishing its Draft Transparency Report "describing the *amount* of national security legal process[3] it received, if any for the period July 1 to December 31, 2013." (SAC ¶ 1, 4, emphasis in original.) Twitter further alleges that it "seeks to disclose that it received 'zero' FISA orders, or 'zero' of a specific *kind* of FISA order, for that period, if either of those circumstances is true." (*Id*. ¶ 4, emphasis in original.) More particularly, Twitter alleges that it seeks to publish a report disclosing the following categories of quantitative data to its users for the relevant period:

> a. The number of NSLs and FISA orders Twitter received, if any, in actual aggregate numbers (including "zero," to the extent that that number was applicable to an aggregate number of NSLs or FISA orders or to specific *kinds* of FISA orders that Twitter may have received);
> b. The number of NSLs and FISA orders received, if any, reported separately, in ranges of one hundred, beginning with 1–99;
> c. The combined number of NSLs and FISA orders received, if any, in ranges of twenty-five, beginning with 1–24;
> d. A comparison of Twitter's proposed (i.e., smaller) ranges with those authorized by the [Government in its earlier communication from then-Deputy Attorney General James M. Cole to the General Counsels for Facebook, Google, LinkedIn, Microsoft and Yahoo!, referred to as the] DAG Letter;
> e. A comparison of the aggregate numbers of NSLs and FISA orders received, if any, by Twitter and the five providers to whom the DAG Letter was addressed; and
> f. A descriptive statement about Twitter's exposure to national security surveillance, if any, to express the overall degree of government surveillance it is or may be subject to.

(*Id*. ¶ 56, emphasis in original.)

The Government has prohibited publication of that Draft Transparency Report since

---

[3] Those national security legal process requests include national security letters ("NSLs") and other orders under the Foreign Intelligence Surveillance Act ("FISA").

1  Twitter submitted it for review on April 1, 2014, asserting that certain portions of the report
2  contained classified information. (*Id.* ¶¶ 55, 57, 58.) In two counts of the SAC, Twitter alleges
3  that the Government has classified information in the Draft Transparency Report improperly and
4  therefore put unlawful prior restraints on its speech in violation of the First Amendment. Twitter
5  alleges that these actions are both violations of the First Amendment and "final agency action"
6  subject to challenge under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* (SAC at ¶¶
7  71-86 and 87-91.)[4]

### B. Procedural History

The lengthy procedural history of this case is detailed in the Court's prior orders. (*See* October 14, 2015 Order Denying Motion to Dismiss as Moot (Dkt. No. 85); May 2, 2016 Order Granting In Part and Denying In Part Motion to Dismiss Amended Complaint (Dkt. No. 113); July 6, 2017 Order Denying Government's Motion for Summary Judgment Without Prejudice; Granting Twitter's Motion for Order Directing Defendants to Expedite Security Clearance (Dkt. No. 172)); November 27, 2017 Order Denying Motion for Reconsideration (Dkt. No. 186). The Court sets forth herein an abbreviated summary of the history as relevant to the instant motions.

The Government previously moved for summary judgment (Dkt. No. 145) based upon a classified and a redacted declaration of Michael Steinbach, Executive Assistant Director ("EAD") of the National Security Branch of the Federal Bureau of Investigation ("FBI"). (*See* Notice of Lodging of Classified Declaration of Michael Steinbach for *In Camera*, *Ex Parte* Review, Dkt. No. 144.) The Court reviewed the Classified Steinbach Declaration *in camera* and, based upon that review, denied the Government's motion without prejudice. The Court found that, under the applicable constitutional standards, the Classified Steinbach declaration was inadequate to meet the Government's burden to overcome the strong presumption of unconstitutionality of its content-based prior restrictions on Twitter's speech. (Dkt. No. 172 at 17-18.) The Court found:

> The Government's restrictions on Twitter's speech are content-based prior

---

[4] Twitter alleges a third count seeking injunctive relief barring Government prosecution under the Espionage Act, 18 U.S.C. § 793(d) should Twitter disclose information in the Draft Transparency Report. (SAC ¶¶ 92-96.)

>restraints subject to the highest level of scrutiny under the First Amendment. The restrictions are not narrowly tailored to prohibit only speech that would pose a clear and present danger or imminent harm to national security. The Government argues that the limitations imposed on Twitter are necessary because disclosure of data concerning the number and type of national security legal process that it received in a time period would impair national security interests and is properly classified. However, the Government has not presented evidence, beyond a generalized explanation, to demonstrate that disclosure of the information in the Draft Transparency Report would present such a grave and serious threat of damage to national security as to meet the applicable strict scrutiny standard.

(*Id*. at 2.) The Court denied the motion without prejudice, offering the Government leave to submit additional evidence to support its restrictions. (*See, e.g.,* Dkt. No. 182, Transcript of Case Management Conference, at 4:3-23.) The Government declined to do so. (*Id*.)

Following a formal request by Twitter (Dkt. No. 250), the Court issued an Order to Show Cause ("OSC") why the Classified Steinbach Declaration should not be disclosed to Twitter's counsel who had been granted a security clearance. (Dkt. No. 261.) The Government filed a response to the OSC which included a motion to dismiss the action based on an assertion of the state secrets privilege. (Dkt. No. 281.) In connection with that response, the Government submitted *in camera* the Classified Declaration of Acting EAD Michael C. McGarrity. (*See* Dkt. No. 282, Notice of Lodging of Classified Declaration of Michael C. McGarrity for *Ex Parte In Camera* Review.) Drafted in support of the Government's assertion of the state secrets privilege, the Classified Declaration of EAD McGarrity provided a more complete explanation and justification of the Government's basis for restricting the information that may be published in the Draft Transparency Report, and the grave and imminent harm that could reasonably be expected to arise from its disclosure, in far greater detail than the Government provided previously.

After considering McGarrity's declaration provided *in camera*, the Court, on June 21, 2019, issued an OSC indicating it was inclined to reconsider its prior order denying the Government's summary judgment motion (Dkt. No. 301), stating:

>The Court is inclined to find that classified McGarrity Declaration meets the Government's burden under strict scrutiny to justify classification and restrict disclosure of information in the Draft Transparency Report, based upon a reasonable expectation that its disclosure would pose grave or imminent harm to national security, and that no more narrow tailoring of the restrictions can be made. Further, the Court is inclined to conclude that the classified McGarrity Declaration cannot be disclosed to counsel for Twitter based upon the national security concerns it raises.

4

(*Id*. at 2.)  On August 23, 2019, the parties jointly responded to the June 21, 2019 Order to Show Cause and asked that the classified McGarrity declaration not be used to inform the Court's reconsideration of the Government's motion for summary judgment.  Instead, the Government requested to submit a new summary judgment motion supported by a new declaration, which would incorporate aspects of the information proffered in the Classified McGarrity Declaration germane to the merits of the case.  (Dkt. No. 306 at 2–3.)  The Court granted the Government's request as well as Twitter's request to file a cross-motion for summary judgment.

### C. The Instant Cross-Motions

The Government filed its motion seeking summary judgment on all claims in Twitter's SAC on the grounds that the newly submitted classified and unclassified declarations of Jay S. Tabb, Jr., EAD of the National Security Branch of the FBI to establish that disclosure of the data contained in Twitter's 2014 Draft Transparency Report reasonably could be expected to result in national security harms such that the Government's restrictions on the report are constitutionally valid.  Twitter's cross-motion contests the Government's arguments and seeks summary judgment on the grounds that: (1) the Government has not satisfied strict scrutiny under the *Pentagon Papers*[5] standard; (2) the Government's decision to restrict the disclosures in Twitter's 2014 Draft Transparency Report lacked any of the procedural safeguards required by *Freedman v. Maryland*, 380 U.S. 51 (1965); and (3) Twitter's cleared counsel[6] must be given access to the classified version of the Tabb Declaration in order for it to respond fully to the Government's arguments.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own

---

[5] *N.Y. Times Co. v. United States*, 403 U.S. 713 (1971), commonly referred to as the *Pentagon Papers* case.

[6] Twitter's lead counsel Lee H. Rubin has had his security clearance "favorably adjudicated" by the FBI as of September 17, 2018. (Dkt. No. 250-1, Rubin Decl. Exh. A.)

merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (alteration and internal quotation marks omitted).  Thus, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Id.* (quoting Wright, *et al.*, FEDERAL PRACTICE AND PROCEDURE § 2720, at 335–36 (3d ed. 1998)).  However, the court must consider the evidence proffered by both sets of motions before ruling on either one.  *Riverside Two*, 249 F.3d at 1135–36; *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011) ("Because the parties filed cross-motions for summary judgment, we consider each party's evidence to evaluate whether summary judgment was appropriate.")  "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge." *George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014) (alteration in original) (quotation omitted).

      As a general matter, where the party moving for summary judgment would bear the burden of proof at trial, that moving party bears the initial burden of proof at summary judgment as to each material fact to be established in the complaint and must show that no reasonable jury could find other than for the moving party. *See S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) *(citing* William W Schwarzer, et al., CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL (Rutter Group) § 14:124–127 (2001)).  Where the moving party would not bear the burden at trial, the motion need only specify the basis for summary judgment and identify those portions of the record, if any, which it believes demonstrate the absence of a genuine issue of material fact on some essential element of the claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986).  The burden then shifts to the opposing party to establish the existence of material disputes of fact that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

      In the context of a First Amendment challenge, however, the ultimate burdens of proof are placed upon the Government.  When the Government restricts speech, it bears the burden of proving the constitutionality of its actions. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816–17 (2000) (citing *Greater New Orleans Broadcasting Assn., Inc. v. United States,* 527

1  U.S. 173, 183 (1999); *Reno v. American Civil Liberties Union*, 521 U.S. 844, 879 (1997)). "When the Government seeks to restrict speech based on its content, the usual presumption of constitutionality afforded [to its actions] is reversed." *Playboy*, 529 U.S. at 816–17. Because "[c]ontent-based regulations are presumptively invalid," *R.A.V. v. St. Paul,* 505 U.S. 377, 382 (1992), "the Government bears the burden to rebut that presumption." *Playboy*, 529 U.S. at 817. "When First Amendment compliance is the point to be proved, the risk of nonpersuasion— operative in all trials—must rest with the Government, not with the citizen." *Id*. at 818 (internal citation omitted).

### III.  DISCUSSION

#### A.  Strict Scrutiny Standard

##### 1.  *Strict Scrutiny Applies*

The Government argues that it is entitled to summary judgment on several grounds. First, it argues that, although it disagrees with the Court on the applicable constitutional standard, it nevertheless has met the strict scrutiny standard since its restrictions on Twitter's speech are sufficiently "narrowly tailored to serve a compelling state interest" (quoting *In re NSL*, 863 F.3d 1110, 1123 (9th Cir. 2017) and *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2226 (2015)). Twitter counters that this Court previously decided the applicable standard is strict scrutiny, and the Government has not met it.

In denying the Government's original motion for summary judgment, the Court determined that the restrictions on Twitter's speech are subject to strict scrutiny as a content-based restriction and a prior restraint. (Dkt. No. 172 at 15, citing numerous cases.) That is the law of the case and the Government provides no substantive reason to revisit that determination.

##### 2.  *The Declarations In the Record Satisfy the Government's Substantive Burden Under Strict Scrutiny*

The Court applies the strict scrutiny standard to the challenged restrictions and finds that the Government's restrictions on the information Twitter may report are, in fact, narrowly tailored in substance. The Court bases its decision on the *totality* of the evidence provided in this case, including the classified declarations of EAD Steinbach, Acting EAD McGarrity and EAD Tabb.

7

1   Each built on the same basis for the Government's position, and each bring a perspective to the
2   Court's analysis to resolve this action.  The Court sees no reason to disregard any of the
3   previously submitted declarations.  The declarations explain the gravity of the risks inherent in
4   disclosure of the information that the Government has prohibited Twitter from stating in its Draft
5   Transparency Report, including a sufficiently specific explanation of the reasons disclosure of
6   mere aggregate numbers, even years after the relevant time period in the Draft Transparency
7   Report, could be expected to give rise to grave or imminent harm to the national security.  The
8   Court finds that the declarations contain sufficient factual detail to justify the Government's
9   classification of the aggregate information in Twitter's 2014 Draft Transparency Report on the
10  grounds that the information would be likely to lead to grave or imminent harm to the national
11  security, and that no more narrow tailoring of the restrictions can be made.

### B.   *Freedman*'s Procedural Safeguards

Twitter argues that, in the alternative, it is entitled to summary judgment because the procedures under which portions of its 2014 Draft Transparency Report were classified and restricted do not satisfy the procedural safeguards required for such a prior restraint of speech under *Freedman v. Maryland* and its progeny.  More specifically, Twitter argues that *Freedman* requires an expedited, government-initiated judicial review of a restraint on aggregate reporting, and that such requirements are not met by the classification guidelines that the Government applied nor the "statutory authority under which that classification review was conducted." (Twitter's Cross-Motion for Summary Judgment, Dkt. No. 311, at 2:12-13, citing 50 U.S.C. § 1874(c)).[7]

The Government counters on two grounds.  First, it contends that Twitter has not alleged a challenge under *Freedman* in the SAC.  Further, the Government argues the procedural

---

[7] Twitter's characterization of the section 1874(c) is incorrect.  The Government's classification authority under Executive Order 13526 is completely distinct from its authority under section 1874(c) to allow persons subject to nondisclosure provisions to report legal process and orders received in a different manner than the numerical bands scheme set forth in section 1874(a) and (b).  *See* 50 U.S.C. § 1874(c) ("Nothing in this section prohibits the Government and any person from jointly agreeing to the publication of information referred to in this subsection in a time, form, or manner other than as described in this section.").

protections required by *Freedman* do not apply to its decision that the information in the Draft Transparency Report was national security information properly classified under Executive Order 13526.

As a general matter, and as the Court previously determined, even if a particular content-based restriction is permitted under the strict scrutiny standard, "the government does not have unfettered freedom to implement such a restriction through 'a system of prior administrative restraints.'" *In re NSL*, 863 F.3d at 1122 (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 (1963)). The government's restrictions must have "narrow, objective, and definite standards to guide" them, as well as procedural safeguards to reduce the dangers of excessive restriction. *See Thomas v. Chi. Park Dist.*, 534 U.S. 316, 321 (2002) (citing *Freedman*, 380 U.S. at 58–60). With respect to such a system of prior restraints, *Freedman* requires that: (1) any restraint imposed prior to judicial review must be limited to "a specified brief period"; (2) any further restraint prior to a final judicial determination must be limited to "the shortest fixed period compatible with sound judicial resolution"; and (3) the burden of going to court to suppress speech and the burden of proof in court must be placed on the government. *See Freedman,* 380 U.S. at 58–59; *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 227 (1990)); *Thomas v. Chicago Park District,* 534 U.S. 316, 321 (2002); *John Doe, Inc. v. Mukasey*, 549 F.3d 861, 871 (2d Cir. 2008), *as modified* (Mar. 26, 2009).

Thus, in *In re Nat'l Sec. Letter*, the Ninth Circuit considered whether nondisclosure requirements as to specific national security process requests were constitutional. The *In re Nat'l Sec. Letter* case was a facial challenge to the NSL statutes.[8] The Ninth Circuit held that the NSL law met all the procedural safeguard requirements of *Freedman* because the 2015 revisions implemented a system of judicial review of a nondisclosure decision on an expedited basis, and required the government to initiate the review and carry the burden of substantiating the nondisclosure at the request of a contesting party. *In re Nat'l Sec. Letter*, 863 F.3d at 1129-31 (questioning whether *Freedman* applied to individuals who did not "intend to speak" before

---

[8] The Ninth Circuit held that plaintiffs were raising a facial challenge to the NSL law, rather than an as-applied challenge to a particular application of the law to their speech. *Id*. at 1121.

9

1    receiving the government's prohibition, but nevertheless finding procedural protections satisfied
2    *Freedman*).
3        Here, Twitter's SAC does not allege a challenge, facial or otherwise, based upon the
4    principles in *Freedman*. Count 1 of the SAC alleges that the information in the Draft
5    Transparency Report was not properly classified under Executive Order No. 13526, and that the
6    Government cannot demonstrate that the information poses a threat to national security. (SAC ¶¶
7    76, 79.) Count 2 of the SAC alleges that the Government's decision regarding the Draft
8    Transparency Report was a "final agency action" that violated the First Amendment. Nowhere in
9    the SAC does Twitter seek declaratory or injunctive relief requiring the Government to comply
10   with any procedural safeguards, such as temporal limitations on prohibition orders, or
11   government-initiated judicial review, required by *Freedman*. The SAC does not direct a challenge
12   to lack of procedural safeguards in Executive Order 13526 itself, nor does it challenge the lack of
13   process with respect to the specific application of Executive Order 13526 to the Draft
14   Transparency Report.[9] Likewise, to the extent Twitter asserts that any restrictions on it emanate
15   from the statutory reporting scheme set forth in 50 U.S.C. section 1874, the SAC does not
16   challenge the lack of procedural safeguards therein. In short, nothing in the SAC challenges a
17   "system of prior restraints" as in *Freedman*. Consequently, the Court cannot grant Twitter
18   affirmative relief based upon lack of compliance with the procedural protections in *Freedman*.[10]

---

[9] The Court notes that Section 1.8 of Executive Order 13526 provides that "[a]uthorized holders of information who, in good faith, believe that its classification status is improper are encouraged and expected to challenge the classification status of the information in accordance with agency procedures established under paragraph (b) of this section." Executive Order 13526 § 1.8(a). Those procedures should cover all authorized holders of information "including authorized holders outside the classifying agency." *Id.* § 1.8(b). Neither party has cited to or argued for application of any regulations governing a challenge to the classification here. However, the Court notes that federal regulations implementing Executive Order 13526 have been enacted at 6 C.F.R., Chapter I, Part 7, subpart B; *see, e.g.*, 6 C.F.R. § 7.31(a) ("Authorized holders may submit classification challenges in writing to the original classification authority with jurisdiction over the information in question. If an original classification authority cannot be determined, the challenge shall be submitted to the Office of the Chief Security Officer, Administrative Security Division").

[10] The SAC alleges a facial constitutional challenge to FISA's secrecy provisions to the extent they categorically prohibit the reporting of aggregate data. The Court does not find that they do so restrict the aggregate data at issue here. The Government has, in part, argued that FISA's statutory nondisclosure provisions, applicable to the existence and contents of individual orders, logically prohibit reporting of aggregate data about the number of such orders. The Court has never found the Government's logic persuasive on this point. The requirement not to disclose

Because the Court finds that Twitter has not alleged an affirmative claim for relief based upon *Freedman*, it need not reach the question of whether the Government's decision here satisfied those procedural safeguards.[11]

### IV. CONCLUSION

In sum, given the specific reasons identified in the classified declarations submitted, the Court finds that strict scrutiny is satisfied both substantively and procedurally. The Government's motion for summary judgment is **GRANTED** and Twitter's motion for summary judgment is **DENIED**.[12]

The Court leaves for another action whether the procedural safeguards—if any—applicable to a system of prior constraints premised upon deeming information "classified" pursuant to Executive Order 13526 meets the standards set forth in *Freedman*.

This terminates Docket Nos. 309, 311.

**IT IS SO ORDERED.**

Dated: April 17, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

---

a *particular* order is completely distinct from disclosing the *aggregate number* of orders. And, indeed, that logic is contradicted by the statutory provision for aggregate data reporting set forth in 50 U.S.C. § 1874, which permits "a person *subject to a nondisclosure requirement* accompanying an order . . . or a national security letter" to report publicly the aggregate number of such orders or letters within certain numerical bands. 50 U.S.C. § 1874(a) (emphasis supplied). Regardless, these allegations are not directed at a lack of procedural safeguards as required by *Freedman*.

[11] The Court notes that the Ninth Circuit in *In re Nat'l Sec. Letter* emphasized that *Freedman*'s procedural safeguards have been extended to a variety of situations in which the government "requires a speaker to submit proposed speech for review and approval" before publicizing it. *In re Nat'l Sec. Letter*, 863 F.3d 1110, 1128 (9th Cir. 2017); *see also John Doe, Inc. v. Mukasey*, 549 F.3d 861, 871 (2d Cir. 2008) ("Where expression is conditioned on governmental permission . . . the First Amendment generally requires procedural protections to guard against impermissible censorship."). The sort of pre-disclosure review and approval process that restricts speech about metadata compiled by a recipient closely resembles the censorship systems raised in *Freedman* and its progeny. The Government here offered no applicable procedural protections similar to those cited with approval in *In re Nat'l Security Letter* or *Doe v. Mukaskey*.

[12] In light of this Order, the third count is dismissed as moot.